## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SMARTMATIC USA CORP., SMARTMATIC INTERNATIONAL HOLDING B.V., and SGO CORPORATION LIMITED | ) ) ) | |
| Plaintiffs, | ) ) | No. 1: 21-cv-02995-CJN |
| v. | ) ) | |
| SIDNEY POWELL, | ) ) | |
| Defendant. | ) ) | |

## <u>MEMORADUM OF LAW IN SUPPORT OF</u>
## <u>DEFENDANT SIDNEY POWELL'S MOTION TO DISMISS</u>

Joshua A. Mooney DC Bar No. 471866
Kennedys CMK LLP
1600 Market Street, Suite 1410
Philadelphia, PA 19103
Tel: 267-479-6700
Joshua.Mooney@kennedyslaw.com

Marc Casarino, pro hac vice pending
Kennedys CMK LLP
919 N. Market Street, Suite 1550
Wilmington, DE 19801
Tel: 302-308-6647
Email: marc.casarino@kennedyslaw.

Michael J. Tricarico, pro hac vice pending
Kennedys CMK LLP
570 Lexington Avenue, 8th Floor
New York, New York 10022
Tel: (646) 625-3952
Email: Michael.tricarico@kennedyslaw.com

Lawrence J. Joseph, DC Bar No. 464777
Law Office of Lawrence J. Joseph
1250 Connecticut Ave, NW, Suite 700-1A
Washington, DC 20036
Tel: 202-355-9452
Fax: 202-318-2254
Email: ljoseph@larryjoseph.com

*Counsel for Defendant Sidney Powell*

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

BACKGROUND ....................................................................................................... 3

GOVERNING STANDARDS .................................................................................. 8

CHOICE OF LAW ................................................................................................... 9

LEGAL ARGUMENT ............................................................................................ 10

I.    THE COMPLAINT VIOLATES FEDERAL PLEADING STANDARDS ................... 10
   A.   The Complaint Should be Dismissed under Federal Rules 8 and 41 ................................ 10
   B.   The Complaint Should be Dismissed under Federal Rule 12(f) ....................................... 13

II.   SMARTMATIC B.V. AND SGO LACK STANDING ................................................ 15

III.  THE INJURIOUS FALSEHOOD CLAIMS SHOULD BE DIMISSED .................... 18
   A.   The Single Publication/Action Rule Warrants Dismissal .............................................. 18
   B.   Smartmatic Must Plead Special Damages ..................................................................... 21

IV.   SEVERAL DEFAMATION CLAIMS ARE REALLY CLAIMS FOR INJURIOUS
      FALSHOOD ......................................................................................................... 22

V.    SEVERAL CLAIMS RELY ON STATEMENTS MADE BY OTHERS ..................... 24

VI.   SMARTMATIC'S ALLEGATIONS DO NOT ESTABLISH PERSONAL
      JURISDICTION .................................................................................................... 28
   A.   The "Government Contacts" Exception Excludes Some Alleged Contacts. ...................... 30
   B.   Ms. Powell's Representation Of Gen. Flynn Is *Constitutionally* Irrelevant. ................... 32
   C.   This Court's Decision In The *Dominion* Case Is Not Controlling.................................... 33
   D.   Fundraising Websites Are Irrelevant To Personal Jurisdiction Over Ms. Powell. ........... 34
   E.   The Longarm Statute's Subsections Are Limited By Subsection (B). ............................. 35
      *1.   Personal jurisdiction is lacking under § 13-423(a)(1).* .............................................. 36
      *2.   Personal jurisdiction is lacking under § 13-423(a)(3).* .............................................. 38
      *3.   Personal jurisdiction is lacking under § 13-423(a)(4).* .............................................. 39

VII.  VENUE IS IMPROPER. ........................................................................................ 41

CONCLUSION ....................................................................................................... 43

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*2215 Fifth St. Assocs. v. U-Haul Int'l, Inc.*,
148 F.Supp.2d 50 (D.D.C. 2001) ............................................................ 9

*A. I. Trade Fin. v. Petra Int'l Banking Corp.*,
62 F.3d 1454 (D.C. Cir. 1995) ................................................................ 9

*Achagzai v. Broadcasting Board of Governors*,
109 F. Supp. 3d 67 (D.D.C. 2015) ..................................................... 11, 14

*Akhmetshin v. Browder*,
983 F.3d 542 (D.C. Cir. 2020) ........................................................... 39-40

*Akhmetshin v. Browder*,
993 F.3d 922 (D.C. Cir. 2021) ........................................................... 29, 30

*Akhmetshin v. Browder*
2022 WL 1670987(D.C. May 26, 2022) ......................................... 32-33, 41

*Am. Elec. Power Co. v. Connecticut*,
564 U.S. 410 (2011) ............................................................................ 34

*Art Metal-U.S.A., Inc. v. United States*,
753 F.2d 1151 (D.C. Cir. 1985) ......................................................... 38-39

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................. 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................... 8, 11, 24

*Bigelow v. Garrett*,
299 F.Supp.3d 34 (D.D.C. 2018) ......................................................... 37

*Bothmann v. Harrington*,
458 So. 2d 1163 (Fla. Dist. Ct. App. 1984) ........................................... 23

*Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*,
831 So. 2d 204 (Fla. Dist. Ct. App. 2002) ........................................ 18, 23

*Cherdak v. Am. Arbitration Ass'n*,
443 F.Supp.3d 134 (D.D.C. 2020) ....................................................... 29

*Ciralsky v C.I.A.*,
  355 F.3d 661 (D.C. Cir. 2004)..................................................................10-11, 14

*Citizens Nat. Bank of St. Petersburg v. Peters*,
  175 So. 2d 54 (Fla. Dist. Ct. App. 1965).........................................................15-16

*Collier County Pub. Co., Inc. v. Chapman*,
  318 So.2d 492 (Fla. Dist. Ct. App. 1975)........................................................21-22

*Collingsworth v. Drummond Co.*,
  839 F. App'x 567 (D.C. Cir. 2021) ...................................................................... 36

*Cooper Indus., Inc. v. Aviall Serv., Inc.*,
  543 U.S. 157 (2004) ............................................................................................ 34

*Crane v. New York Zoological Society*,
  894 F.2d 454 (D.C. Cir. 1990)............................................................................... 9

*Curling v. Raffensberger*,
  493 F. Supp. 3d 1264 (N.D. Ga. 2020) ............................................................... 10

*E.V. v. Robinson*,
  200 F.Supp.3d 108 (D.D.C. 2016)....................................................................... 42

*Elemary v. Holzmann*,
  533 F. Supp. 2d 144 (D.D.C. 2008)..................................................................... 29

*Envtl. Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.*,
  355 A.2d 808 (D.C. 1976) ................................................................................... 31

*Exelon Generation Co. v. Grumbles*,
  380 F.Supp.3d 1 (D.D.C. 2019)........................................................................... 42

*Fin. Info. Techs., Inc. v. iControl Sys., USA, LLC*,
  2018 WL 3391379 (M.D. Fla. June 12, 2018*)* ................................................. 18

*Fiorentine v. Sarton P.R., LLC*,
  486 F. Supp. 3d 377 (D.D.C. 2020)..................................................................... 37

*Five For Ent. S.A. v. El Cartel Recs., Inc.*,
  646 Fed. App'x 714 (11th Cir. 2016) .................................................................. 21

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*,
  141 S. Ct. 1017 (2021)...........................................................................33, 37-38, 41

*Forras v. Rauf*,
  812 F.3d 1102 (D.C. Cir. 2016)........................................................................38-39

*Franchise Tax Bd. v. Alcan Aluminium Ltd.*,
  493 U.S. 331 (1990) ........................................................................ 15

*Fridovich v. Fridovich*,
  598 So. 2d 65 (Fla. 1992) ................................................................ 18

*Funny Cide Ventures, LLC v. Miami Herald Publishing Co.*,
  955 So. 2d 1241 (Fla. Dist. Ct. App. 2007) .................................... 21

*Gaines v. Kelly*,
  235 S.W.3d 179 (Tex. 2007) ............................................................ 35

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011) ........................................................................ 28

*Gorman v. Ameritrade Holding Corp.*,
  293 F.3d 506, 509 (D.C. Cir. 2002) ................................................ 36

*GTE New Media Servs. v. BellSouth Corp.*,
  199 F.3d 1343 (D.C. Cir. 2000) ...................................................... 37

*Harrington v. Batchelor*,
  781 So. 2d 1135 (Fla. Dist. Ct. App. 2001) .................................... 15

*Hatfill v. Foster*,
  401 F.Supp.2d 320 (S.D.N.Y. 2005) ................................................ 19

*Helmer v. Doletskaya*,
  393 F.3d 201 (D.C. Cir. 2004) ........................................................ 36

*Henderson v. Charles E. Smith Management, Inc.*,
  567 A.2d 59 (D.C. 1989) .................................................................. 35

*Hepp v. Facebook*,
  14 F.4th 204 (3d Cir. 2021) ............................................................ 33

*Hercules & Co v. Shama Rest. Corp.*,
  566 A.2d 31 (D.C. 1989) .................................................................. 10

*Holder v. Haarmann & Reimer Corp.*,
  779 A.2d 264 (D.C. 2001) .......................................................... 34, 36

*Hourani v. PsyberSolutions LLC*,
  164 F. Supp. 3d 128 (D.D.C 2016) .................................................. 10

*IMAPizza LLC v. At Pizza, Ltd.*,
  334 F.Supp.3d 95 (D.D.C. 2018) ...................................................... 34

iv

*Inv. Co. Inst. v. United States*,
   550 F.Supp.1213 (D.D.C. 1982) ......................................................... 31-32

*Islamic Am. Relief Agency v. Unidentified FBI Agents*,
   394 F.Supp.2d 34 (D.D.C. 2005) .......................................................... 36

*Jerome Stevens Pharms., Inc. v. FDA*,
   402 F.3d 1249 (D.C. Cir. 2005) ............................................................ 9

*Jia Di Feng v. Lim*,
   786 F. Supp. 2d 96 (D.D.C. 2011) ....................................................... 29

*Judicial Watch, Inc. v. U.S. Dep't of Commerce*,
   224 F.R.D. 261 (D.D.C. 2004) ............................................................. 14

*Jung v. Ass'n of Am. Med. Colleges*,
   300 F.Supp.2d 119 (D.D.C. 2004) ....................................................... 32

*Karten v. Woltin*,
   23 So. 3d 839 (Fla. 4th Dist. Ct. App. 2009) ........................................ 16

*Kaspersky Lab, Inc. v. United States Dep't of Homeland Sec.*,
   909 F.3d 446 (D.C. Cir. 2018) ............................................................. 38

*Lamont v. Haig*,
   590 F.2d 1124 (D.C. Cir. 1978) ........................................................... 42

*Lehman v. Goldin*,
   36 So. 2d 259 (Fla. 1948) ................................................................... 22

*Lewy v. Southern Poverty Law Ctr., Inc.*,
   723 F. Supp. 2d 116 (D.D.C. 2010) ..................................................... 40

*Lex Tex Ltd., Inc. v. Skillman*,
   579 A.2d 244 (D.C. 1990) ................................................................... 40

*Lynch v. Shapko Stores Operating Co., LLC*,
   2007 WL 4358335 (E.D. Wisc. Dec. 11, 2007) ..................................... 11

*Margoles v. Johns*,
   483 F.2d 1212 (D.C. Cir. 1973) ........................................................... 38

*Mar-Jac Poultry, Inc. v. Katz*,
   773 F. Supp. 2d 103 (D.D.C. 2011) ..................................................... 10

*Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*,
   62 F.Supp.2d 13 (D.D.C. 1999) .......................................................... 33

*McCain v. Bank of America*,
   13 F.Supp.3d 45 (D.D.C. 2014)................................................................... 9

*MCO Airport Concessions, LLC v. Gtr. Orlando Aviation Auth.*,
   2012 WL 12896558 (M.D. Fla. Feb. 14, 2012) *aff'd*, 508 F. App'x 920 (11th Cir. 2013)....... 16

*Moncrief v. Lexington Herald-Leader Co.*,
   807 F.2d 217 (D.C. Cir. 1986).................................................................. 36

*Mouzavires v. Baxter*,
   434 A.2d 988 (D.C. 1981)...................................................................... 36

*Myers v. Holiday Inns, Inc.*,
   915 F.Supp.2d 136 (D.D.C. 2013)............................................................... 9

*Orlando Sports Stadium, Inc. v. Sentinel Star Co.*,
   316 So. 2d 607 (Fla. Dist. Ct. App. 1975)................................................... 19

*Ovadia v. Bloom*,
   756 So. 2d 137 (Fla. Dist. Ct. App. 2000)................................................... 18

*Oveissi v. Islamic Republic of Iran*,
   573 F.3d 835 (D.C. Cir. 2009)................................................................ 9

*Parsons v. Mains*,
   580 A.2d 1329 (D.C. 1990).................................................................. 39-40

*Perlmutter v. Varone*,
   59 F.Supp.3d 107 (D.D.C. 2014)............................................................... 42

*Rawoof v. Texor Petroleum Co.*,
   521 F.3d 750 (7th Cir. 2008)................................................................. 15

*Reuber v. United States*,
   750 F.2d 1039 (D.C. Cir. 1984)............................................................... 38

*Rundquist v. Vapiano SE*,
   798 F.Supp.2d 102 (D.D.C. 2011)............................................................ 36-37

*Sailboat Key, Inc. v. Gardner*,
   378 So. 2d 47 (Fla. Dist. Ct. App. 1979).................................................... 23

*Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*,
   742 So.2d 381 (Fla. Dist. Ct. App. 1999)................................................. 21, 22

*Second Amendment Foundation v. U.S. Conference of Mayors*,
   274 F.3d 521 (D.C. Cir. 2001)............................................................. 9, 29

*Security Bank v. Tauber*,
   347 F. Supp. 511 (D.D.C. 1972)................................................................................39-40

*Shoppers Food Warehouse v. Moreno*,
   746 A.2d 320 (D.C. 2000) .....................................................................................35-36

*Siam Kraft Paper Co. v. Parsons & Whittemore, Inc.*,
   400 F. Supp. 810 (D.D.C. 1975)..................................................................................39

*Stutsman v. Kaiser Found. Health Plan of the Mid-Atlantic States*,
   546 A.2d 367 (D.C. 1988) ...........................................................................................10

*Terrell v. Mr. Cooper Group, Inc.*,
   2021 WL 2778542 (D.D.C. July 2, 2021) ...........................................................11, 14

*The Urban Inst. v. FINCON Servs.*,
   681 F. Supp. 2d 41 (D.D.C. 2010)...............................................................................40

*Trerotola v. Cotter*,
   601 A.2d 60 (D.C. 1991) ..............................................................................................35

*United Therapeutics Corp. v. Vanderbilt Univ.*,
   278 F.Supp.3d 407 (D.D.C. 2017)................................................................................32

*US Dominion, Inc. v. Powell*,
   554 F Supp.3d 42 (D.D.C. 2021).........................................................................*Passim*

*Walden v. Fiore*,
   571 U.S. 277 (2014) .....................................................................................................29

*Wash. Tennis & Educ. Found., Inc. v. Clark Nexsen, Inc.*,
   270 F. Supp. 3d 158 (D.D.C. 2017).............................................................................15

*Williams v. Chu*,
   2010 WL 11575517 (D.D.C. Sept. 30, 2010)..........................................................13-14

*Williams v. GEICO Corp.*,
   792 F.Supp.2d 58 (D.D.C. 2011)....................................................................................9

*Witherspoon v. Phillip Morris, Inc.*,
   946 F. Supp. 455 (D.D.C. 1997)..................................................................................15

*World Wide Minerals Ltd. v. Republic of Kazakhstahn*,
   116 F.Supp.2d 98 (D.D.C. 2000).................................................................................32

**Statutes**

28 U.S.C. § 1391(b) ............................................................................................ 3, 41-43

28 U.S.C. § 1406(a) ...................................................................................................... 1

D.C. Code § 13-423(a) ............................................................................................... 35

D.C. Code § 13-423(a)(1) ......................................................................... 29, 32, 34, 36-38

D.C. Code § 13-423(a)(3) .............................................................................. 29, 38-39

D.C. Code § 13-423(a)(4) ......................................................................... 29, 32-33, 39-41

D.C. Code § 13-423(b) ............................................................................................... 35

**Rules**

Fed. R. Civ. P. 12(b)(2) (b)(3), and (b)(6) .................................................................. 1, 8-9

Fed. R. Civ. P. 8 ......................................................................................... 1, 2, 10, 11

Fed. R. Civ. P. 41 ............................................................................................ 1-2 11

DC LCvR 83.2(d)(5) ................................................................................................... 40

**Other Authorities**

*Restatement (Second) of Torts* § 623A (1977) ............................................................ 23

## INTRODUCTION

Sidney Powell is the sole defendant in this case. Yet, in lieu of filing a lawsuit focused on her, Smartmatic instead has recycled the omni-lawsuit currently pending in New York against various non-party individuals and organizations. The result is a prolix complaint filled with improperly pleaded claims. Ms. Powell respectfully moves for their dismissal under Fed. Civ. Pro. Rules 8, 12(b)(6), 12(f), and 41(b). Ms. Powell also moves to dismiss for lack of personal jurisdiction and venue under FED. R. CIV. P. 12(b)(2), (b)(3), and (b)(6), and 28 U.S.C. § 1406(a).

Smartmatic's complaint is filled with conflicting, self-gratifying tropes. For example, Smartmatic brags that it is a giant, "industry-leading" organization, but then insists that its 2020 sphere of influence was a single US county. Smartmatic touts its recognition as "one of the best election technology and software companies in the world," but then cites a kudos received almost 20 years ago. "Smartmatic" simultaneously is meant to refer to one organization and to three. Smartmatic also claims that it plummeted $2 billion (66%) in value after the 2020 Election, and blames the loss on Ms. Powell, conveniently failing to note that it *lost* $19 million on its own in 2019. This court should not be dragged into Smartmatic's desperate gambit to make a profit with an unsupported $2.7 billion damages claim—through a last-minute copy-paste job of the omnibus New York complaint—with the accompanying waste its judicial resources to separate the claims against one defendant here and those simultaneously being pursued in New York.

Ms. Powell's voice was one of many, a veritable chorus of rising criticism about the dangers of electronic voting machines that predates the 2020 and 2016 elections. Yet, lost in the darkness of Smartmatic's deep forest is the undisputed fact that Ms. Powell's statements were neither numerous nor pervasive. Instead, as set forth in the complaint, they involved a mere five television appearances, four occurring roughly two weeks after the 2020 Election. Smartmatic may have filed

suit against a lone voice, but it has pleaded a case against a choir. Hidden in the trees – or stalls if we mix metaphors – is a collection of improperly pleaded claims.

**First**, under Rules 8, 12(f), and 41(b), a plaintiff must file a pleading that contains a short and plain statement of each claim. Each averment must be simple, concise, and direct, and they must demonstrate an emphasis on clarity and brevity. Here, the complaint recites pages on pages of alleged statements Smartmatic does not contend Ms. Powell made, and actions that Smartmatic does not allege Ms. Powell undertook. Smartmatic admits it repurposed its omni-lawsuit complaint, but in doing so, it violated federal pleading requirements to their core.

**Second**, plaintiffs Smartmatic International Holdings B.V. and SGO Corporation Ltd. lack standing because they are parent corporations whose claims are wholly derivative of their subsidiary. Indeed, they were dismissed from the New York omni-lawsuit and should be here, too.

**Third**, the injurious falsehood claims cannot survive for two independent reasons. First, Florida's single publication/action rule prohibits multiple claims based on the same publication. Second, a plaintiff must plead special damages. In its vast complaint, Smartmatic does not.

**Fourth**, Counts II, III, IV,V and VII sound in injurious falsehood, not defamation, because the alleged statements were about Smartmatic's products and their quality. Smartmatic cannot avoid pleading requirements for injurious falsehood claims, including special damages, by camouflaging the claims as defamation.

**Fifth**, the alleged defamatory statements that serve as the bases for Counts II, IV, VIII and X were, according to the complaint, made by Giuliani and/or Fox hosts, *not* Ms. Powell.

**Sixth**, there is no personal jurisdiction established in Smartmatic's complaint. Ms. Powell's limited interaction in the District, as alleged in the complaint, does not satisfy the requirements of Due Process or the District's longarm statute. Yet, even if this Court finds personal jurisdiction

based on Ms. Powell's media interviews from the District of Columbia, the nationwide disinformation campaign that Smartmatic alleges dwarf these minor District-based contacts. Ms. Powell's few District-based media interactions therefore do not constitute a "substantial part of the events or omissions giving rise to the claim" that 28 U.S.C. § 1391(b)(2) requires for venue over nonresident defendants.

## BACKGROUND

Smartmatic USA Corp., and its parents Smartmatic International Holding B.V., and SGO Corporation Ltd., collectively defined in the complaint as "Smartmatic" (Compl. ¶¶ 1-4.), filed an omni-lawsuit in New York state court against Ms. Powell and numerous other parties. When Ms. Powell moved to dismiss the claims against her, Smartmatic filed in this Court what it concedes is a "materially identical" lawsuit as a "prophylactic measure," naming Ms. Powell as the sole defendant. (*Id.*, Opening Statement.) The New York court thereafter granted Ms. Powell's motion. Although Smartmatic pursues the present lawsuit against Ms. Powell only, the instant complaint rehashes the New York omni-lawsuit, and focuses less on Ms. Powell and more on others.

This lawsuit alleges claims against Ms. Powell from alleged "false statements" made during five short media appearances described in a mere 12 paragraphs:

- November 14, 2020 *Justice with Judge Jeanine* (Compl. ¶¶ 84-85.);

- November 15, 2020 *Sunday Morning Futures with Maria Bartiromo* (*Id.* ¶¶ 90-91);

- November 16, 2020 *Lou Dobbs Tonight* (*Id.* ¶¶ 94-95);

- November 19, 2020 *Lou Dobbs Tonight* (*Id.* ¶¶ 101-03);

- December 10, 2020 *Lou Dobbs Tonight* (*Id.* ¶¶ 109, 111-12).

The complaint, however, does not reflect the clarity and brevity of such a limited action. The above allegedly "false statements" are recited collectively in 6 more paragraphs. (Compl. ¶¶ 132, 140, 149, 166, 182, 191.) Yet, the complaint itself is 198 pages and consists of 544 numbered paragraphs (808 paragraphs and subparagraphs). Although Ms. Powell is the sole defendant, the complaint focuses upon numerous other individuals and organizations, including Fox Corporation, Lou Dobbs, Maria Bartiromo, and Rudolph Giuliani, and asserts dozens of allegations against each. (Compl. ¶¶ 2, 6-14.) Of its 380 non-cause of action numbered paragraphs, less than half expressly refer to Ms. Powell.[1] Of the 643 pre-cause of action paragraphs and subparagraphs:

- **181** recite statements Smartmatic does not allege Ms. Powell made.[2]

- **100** assert actions Smartmatic does not allege Ms. Powell undertook.[3]

- **47** describe court filings, none of which are cited in the causes of action.[4]

This lawsuit involves five media appearances by Ms. Powell, but alleges 12 causes of action. They are: "Defamation for False Statements and Implications that Smartmatic Participated in a Criminal Conspiracy to Fix, Rig, and Steal the 2020 U.S. Election" (**Count I**, Compl. at 171-73); "Defamation for False Statements and Implications that Smartmatic's Election Technology

---

[1] Excluding jurisdictional allegations – Compl. ¶¶ 5, 14, 21, 72-80, 83-87, 90-92, 9-95, 998-11, 101-04, 106-07, 109, 111-16, 118, 121-22, 125-35, 139-43, 148-52, 157, 159-60, 165—69, 173, 175-76, 181-85, 190-94, 200-07, 209-10, 212-15, 217, 291-20, 222, 233, 236-38, 240-41, 247, 249, 278, 284-85, 289, 292, 301, 307, 313, 319-22, 326, 330-34, 337-42, 344, 348-49, 351, 356-68, 373-80.

[2] Compl. ¶¶ 79-83, 87-89, 92-93, 96-101, 125, 127, 132, 140, 149, 157-164, 166, 173-180, 182, 191, 220-25, 251-77, 281-83, 289-91, 295-300, 366-70.

[3] Compl. ¶¶ 83, 95, 103-08, 110-11, 114, 116-120, 123-24, 133, 216-18, 226-48.

[4] Compl. ¶¶ 319-365.

and Software were Widely Used in the 2020 U.S. Election, Including in Contested States" (**Count II**, *Id.* at 173-75); "Defamation for False Statements and Implications that Smartmatic's Election Technology and Software were Used to Fix, Rig, and Steal the 2020 U.S. Election" (**Count III**, *Id.* at 175-77); "Defamation for False Statements and Implications that Smartmatic's Election Technology and Software were Compromised and Hacked during the 2020 U.S. Election" (**Count IV**, *Id.* at 177-79); "Defamation for False Statements and Implications that Smartmatic's Election Technology and Software were Used by Dominion during the 2020 U.S. Election" (**Count V**, *Id.* at 179-81); "Defamation for False Statements and Implications that Smartmatic was a Venezuelan Company Founded and Funded by Corrupt Dictators" (**Count VI**, *Id.* at 182-84); "Defamation for False Statements and Implications that Smartmatic's Election Technology and Software were Designed and Used to Fix, Rig, and Steal Elections" (**Count VII**, *Id.* at 184-86); "Injurious Falsehood for False Statements and Implications that Smartmatic's Election Technology and Software were Widely Used in the 2020 U.S. Election, Including in Contested States" (**Count VIII**, *Id.* at 186-88); "Injurious Falsehood for False Statements and Implications that Smartmatic's Election Technology and Software were Used to Fix, Rig, and Steal the 2020 U.S. Election" (**Count IX**, *Id.* at 188-90); "Injurious Falsehood for False Statements and Implications that Smartmatic's Election Technology and Software were Compromised and Hacked during the 2020 U.S. Election" (**Count X**, *Id.* at 190-92); "Injurious Falsehood for False Statements and Implications that Smartmatic's Election Technology and Software Were Used by Dominion during the 2020 U.S. Election" (**Count XI**, *Id.* at 192-94); "Injurious Falsehood for False Statements and Implications that Smartmatic's Election Technology and Software were Designed and Used to Fix, Rig, and Steal Elections" (**Count XII**, *Id.* at 194-96).

The complaint asserts that Ms. Powell disparaged Smartmatic using eight different themes.

5

(Compl. ¶ 115.) Yet, for two themes, the complaint expressly states that Ms. Powell "did not make any statements or implication in this category[.]" (*Id.* ¶¶ 157 n.6, 173 n.7.) For the remaining six themes,[5] Smartmatic asserts different causes of action based on the same statements.

- Counts II and VIII seek relief for the identical "false statements" pleaded in paragraph 132. (*Compare* Compl. ¶ 396 *with* ¶ 480.)

- Counts III and IX seek relief for the identical "false statements" pleaded in paragraph 149. (*Compare* Compl. ¶ 410 *with* ¶ 493.)

- Counts IV and X seek relief for the identical "false statements" pleaded in paragraph 166. (*Compare* Compl. ¶ 424 *with* ¶ 506.)

- Counts V and IX seek relief for the identical "false statements" pleaded in paragraph 140. (*Compare* Compl. ¶ 438 *with* ¶ 519.)

- Counts VII and XII seek relief for the identical "false statements" pleaded in paragraph 191. (*Compare* Compl. ¶ 466 *with* ¶ 519.)

- Counts VII and XII seek relief for the identical "false statements" pleaded in paragraph 191. (*Compare* Compl. ¶ 466 *with* ¶ 519.)

The counts also seek the exact same damages. (*Id.* ¶¶ 392-394, 406-408, 420-422, 434-436, 448-450, 462-464, 476-478, 489-491, 502-504, 515-517, 528-530, 541-543.)

An apparent legacy of the New York omni-lawsuit, several of Smartmatic's claims (Counts II, IV, VIII and X) rely on statements allegedly made by persons other than Ms. Powell. In addition,

---

[5] The six themes are that Smartmatic's election technology and software were (i) widely used in the 2020 US election; (ii) used by Dominion during the 2020 US election; (iii) used to steal the 2020 US election; (iv) compromised and hacked during the 2020 US election; (v) were designed to rig and fix elections; and (vi) Smartmatic is a Venezuelan company founded and funded by corrupt dictators. Compl. ¶ 115.

six of the claims for defamation, (Counts II-V, VII) are based on alleged statements about Smartmatic's product, not at the company itself. (*E.g.,* Compl. ¶¶ 396, 410, 424, 438, 466.) The complaint also asserts damages resulting from "false statements" allegedly collectively made by Ms. Powell and many others. (*Id.* ¶¶ 366-68, 373, 379.)

Smartmatic alleges several interrelated factual bases for this Court's personal jurisdiction over Ms. Powell. They are:

- At various times in November and December of 2020, Ms. Powell made allegedly defamatory statements about Smartmatic from within the District of Columbia after traveling to the District shortly after the 2020 U.S. election. (Compl. ¶ 17.)

- Ms. Powell stayed in the Trump International Hotel in Washington, D.C. during much of the time period relevant to this case. (*Id.* ¶ 17.)

- Ms. Powell regularly travels to and transacts business within the District of Columbia, and derives substantial revenue from such services rendered within the District of Columbia, including by soliciting funds to her fundraising websites and by representing Michael Flynn in the District Court for the District of Columbia. (*Id.*)

- "Ms. Powell avails herself of numerous privileges in the District of Columbia, including those set forth above." (*Id.* ¶ 18.)

- "Ms. Powell would set up websites soliciting money from President Trump's followers[.]" (*Id.* ¶ 77.)

7

- "This Court found personal jurisdiction over Ms. Powell in a related lawsuit for claims arising out of substantially similar events." (*Id.* ¶ 19 (citing *US Dominion, Inc. v. Powell*, 554 F Supp.3d 42, 66-67 (D.D.C. 2021)).)[6]

In addition to listing four media events in the District of Columbia (Compl. ¶¶ 17-18, 101-103 (Nov. 19), 83 (Nov. 14), 87 (Nov. 15), 109-112 (Dec. 10)), the Complaint also lists **39** other media events not alleged to have taken place in the District. (*Id.* ¶¶ 116(a)-116(qq).) Moreover, several of the media events that allegedly took place in the District actually took place in Virginia. *See* Powell Decl. ¶ 19 (**Ex. A**). Smartmatic does not make any specific factual allegations about venue beyond those that it makes about personal jurisdiction: "a substantial part of the events giving rise to the claims in this Complaint occurred in this District and, as discussed above, … Ms. Powell is subject to the Court's personal jurisdiction in this District." (*Id.* ¶ 20.)

## GOVERNING STANDARDS

Although a court must treat a complaint's factual allegations as true in a Rule 12(b)(6) motion to dismiss, the allegations must be well-pleaded and "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim must be "plausible on its face." *Id.* at 570. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Legal conclusions and conclusory allegations are not entitled to the assumption of truth. *Id.* at 680-81.

---

[6] Although not expressly tying the allegation to personal jurisdiction, Smartmatic also alleges that its election technology and software were used in the District of Columbia between 2005-2007. (Compl. ¶ 30.)

Under Rule 12(b)(2), plaintiffs bear the burden of "establishing a factual basis for the [Court's] exercise of personal jurisdiction over the defendant." *Crane v. New York Zoological Society*, 894 F.2d 454, 456 (D.C. Cir. 1990). To meet that burden, plaintiffs must allege specific facts that connect a defendant to the forum. *Second Amendment Foundation v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001). Although courts must resolve "factual discrepancies appearing in the record … in favor of the plaintiff, *New York Zoological Society*, 894 F.2d at 456, courts "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

Further, plaintiffs bear the burden of proving that venue is proper, *Myers v. Holiday Inns, Inc.*, 915 F.Supp.2d 136, 144 (D.D.C. 2013), because "it is the plaintiff's obligation to institute the action in a permissible forum[.]" *McCain v. Bank of America*, 13 F.Supp.3d 45, 51 (D.D.C. 2014) (quoting *Williams v. GEICO Corp.*, 792 F.Supp.2d 58, 62 (D.D.C. 2011)). In evaluating venue, "a court should accept the plaintiff's well-pled factual allegations as true, resolve any factual conflicts in the plaintiff's favor, and draw all reasonable inferences in favor of the plaintiff." *Myers*, 915 F.Supp.2d at 144 (citation omitted). A court need not accept a plaintiff's legal conclusions as true. *See 2215 Fifth St. Assocs. v. U-Haul Int'l, Inc.*, 148 F.Supp.2d 50, 54 (D.D.C. 2001).

## CHOICE OF LAW

District of Columbia courts employ a "governmental interests analysis" test, looking to the state that has the "most significant relationship." *Oveissi v. Islamic Republic of Iran,* 573 F.3d 835, 842 (D.C. Cir. 2009).[7] Under the factors set forth in § 145 of the *Restatement (Second) of*

---

[7] As this Court sits in diversity, the District of Columbia's choice of law rules apply. *E.g., A. I. Trade Fin. v. Petra Int'l Banking Corp.*, 62 F.3d 1454, 1458 (D.C. Cir. 1995).

*Conflict of Laws*, a court must determine which jurisdiction's policy would be most advanced by having its law applied. *Id.* (quoting *Hercules & Co v. Shama Rest. Corp.,* 566 A.2d 31, 40-41 (D.C. 1989)). In the context of defamation torts, courts in this Circuit have applied the law of the place of the plaintiff's injury. *E.g., Hourani v. PsyberSolutions LLC,* 164 F. Supp. 3d 128, 140 (D.D.C 2016) *aff'd,* 690 Fed. App'x 1 (D.C. Cir. 2017). In a defamation tort case, the place of injury is the plaintiff's domicile. *Id.; Mar-Jac Poultry, Inc. v. Katz,* 773 F. Supp. 2d 103, 112 (D.D.C. 2011); *Dowd v. Calabrese,* 589 F.Supp. 1206, 1210 (D.D.C.1984). Smartmatic USA's domicile is Florida. (Compl. ¶ 1.) Therefore, Florida law governs Smartmatic's substantive claims.[8]

## LEGAL ARGUMENT

## I.      THE COMPLAINT VIOLATES FEDERAL PLEADING STANDARDS

The complaint should be dismissed because it violates federal pleading standards. It is inarguable that Ms. Powell has not been the sole voice raising serious concern over the reliability of voting machines. *E.g., Curling v. Raffensberger*, 493 F. Supp. 3d 1264 (N.D. Ga. 2020). Smartmatic's complaint itself underscores that fact. However, that does not license Smartmatic to file a prolix complaint bloated by an astounding 808 paragraphs and subparagraphs. Its pre-count sections alone is 643 paragraphs and subparagraphs, 48 bullet points, and 35 footnotes, most of which do not pertain to Ms. Powell. Courts have dismissed complaints for far less.

### A.      The Complaint Should be Dismissed under Federal Rules 8 and 41.

Federal Rule 8(a) states that a pleading "shall contain ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief." *Ciralsky v C.I.A.*, 355 F.3d 661, 668-69

---

[8] The District recognizes *depecage*, which allows different jurisdictions' law to control different issues: *Stutsman v. Kaiser Found. Health Plan of the Mid-Atlantic States*, 546 A.2d 367, 373 (D.C. 1988).

10

(D.C. Cir. 2004). Rule 8(e)(1) requires that "[e]ach averment of a pleading shall be simple, concise, and direct." *Id.* "Taken together, Rules 8(a) and 8(e)(1) underscore the emphasis placed on clarity and brevity by the federal pleading rules." *Id.* at 669*; see Achagzai v. Broadcasting Board of Governors*, 109 F. Supp. 3d 67, 69 (D.D.C. 2015); *Terrell v. Mr. Cooper Group, Inc.*, 2021 WL 2778542, at *6 (D.D.C. July 2, 2021). Enforcing these rules is a matter for the trial court's discretion; Rule 41(b) authorizes the court to dismiss either a claim or an action because on the plaintiff's failure to comply with them. *Ciralsky*, 355 F.3d at 669 (affirming dismissal of initial 119 page, 367-paragraph complaint that had been amended to 61 pages and 105 paragraphs).

The purpose and spirit of Rule 8 are to not unduly burden the defendant or the court. "Where a complaint is insufficiently focused, it places an undue burden on the defendant to answer or move and it invites unnecessary delay and confusion in the proceedings." *Achagzai*, 109 F. Supp. 3d at 69 (dismissing 886-paragraph, 226-page complaint). The rules "ensure that defendants receive fair notice of the claims raised against them; a complaint that is excessively long, rambling, disjointed, incoherent, or full of irrelevant and confusing material does not meet the Rule's liberal pleading requirement." *Terrell*, 2021 WL 2778542 at *5 (dismissing 150-page, 400-paragraph complaint) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Requiring a response to each paragraph of an excessively long complaint "would be both wasteful and unfair at [pleading] stage of the proceedings." *Lynch v. Shapko Stores Operating Co., LLC*, 2007 WL 4358335, at *1 (E.D. Wisc. Dec. 11, 2007). As explained by the Wisconsin federal district when confronted with a prolix complaint, "[t]he defendant, in sum, has a right to insist that the litigation proceed at the pace and under the process dictated by the Federal Rules, and he need not be forced to drop everything merely because the plaintiff has chosen to file a very wordy complaint." *Id.* The *Lynch* court noted additional reasons for the requirements of a "short and plain

statement" of the claim, including duplication of filings and depriving parties of an opportunity to investigate:

> An excess of detail can force the defendant to admit or deny numerous assertions without the benefit of the time or investigation that the plaintiff has had to prepare his own complaint. Moreover, the filing of such extensive pleadings can lead to expenditures and filings that will only be duplicated in later stages of the litigation. Moreover, the mere filing of a complaint can sometimes effectuate settlement negotiations, which may prove impossible if the defendant is forced essentially to mount a full defense by the time his answer is due in as little as twenty days.

*Lynch*, 2007 WL 4358335 at *1.

Here, Smartmatic's repeated violation of Rule 8 are patent. Smartmatic expends roughly 808 paragraphs and subparagraphs in its complaint, most on matters that are extraneous to the claims against Ms. Powell. According to Smartmatic's own drafting, pages upon pages of the pre-count allegations do not pertain to Ms. Powell. For instance, **133** paragraphs and subparagraphs recite statements Smartmatic does ***not*** allege Ms. Powell made.[9] Paragraph 149, for example, recites seven subparagraphs of statements attributed to Rudolph Giuliani and ten subparagraphs of statements made by Fox hosts.[10] Paragraphs 157-64, 173-80 allege themes of statements that Smartmatic expressly states Ms. Powell "did not make."[11]

Another **48** paragraphs and subparagraphs recite statements Smartmatic alleges were made by organizations or individuals other than Ms. Powell.[12] Another **100** paragraphs and

---

[9] Compl. ¶¶ 79-83, 87-89, 92-93, 96-101, 125, 127, 132, 140, 149, 157-164, 166, 173-180, 182, 191, 220-25.

[10] Compl. ¶ 149c-f, i, k-u, ww.

[11] Compl. ¶ 157 n.6, ¶ 173 n.7.

[12] Compl. ¶¶ 251-77, 281-83, 289-91, 295-300, 366-70.

subparagraphs assert actions Smartmatic does ***not*** allege Ms. Powell undertook.[13] For instance, paragraph 116 recites 39 subparagraphs of actions taken by Fox hosts.[14] **<u>47</u>** paragraphs and subparagraphs describe filings in lawsuits that are not are cited in the subsequent causes of action.[15] They are gratuitous and immaterial.[16] **<u>9</u>** paragraphs describe non-parties who are defendants in another lawsuit. (Compl. ¶¶ 6-14.) Other pages are repetitive in content.[17] For example, paragraphs 109, 125q, 125o, 125n, 149v, and 191v each repeat part or all of the same statement allegedly made by Ms. Powell. Paragraphs 90, 149a, 149g, and 149h repeat another alleged statement. Paragraphs 94, 125f, and 125d repeat the same statement. The complaint's lack of clarity and brevity warrants dismissal.

### B.     The Complaint Should be Dismissed under Federal Rule 12(f)

In the alternative, the Court should strike the complaint under Rule 12(f) for matter that is redundant, immaterial, and impertinent.

A redundant matter "refers to an "allegation of more than is necessary to a simple and concise statement of the essential facts ... and includes ... unnecessary repetition, the detailed statement of evidential matters, useless verbiage, or undue prolixity." *Williams v. Chu*, 2010 WL

---

[13] Compl. ¶¶ 83, 95, 103-08, 110-11, 114, 116-120, 123-24, 133, 216-18, 226-48.

[14] Compl. ¶ 116a-b, d-n, p-x, z, aa-kk, mm-qq.

[15] Compl. ¶¶ 319-365.

[16] The complaint also spends another 53 paragraphs and subparagraphs on allegations so intertwined between Ms. Powell, Giuliani, and Fox personalities, that the allegation cannot be de-tangled to determine what is alleged against Ms. Powell. Compl. ¶¶ 21, 72, 73, 76-78, 115, 122, 125-31, 134-35, 139, 142-43, 148, 165, 167-69, 150, 181, 184-85, 190, 193-94, 200, 203-215, 219-20, 236-38, 240-43, 249, 278, 284, 292, 310, 307, 313, 366.

[17] Content in paragraphs 84-85 are repeated at paragraphs 116c, 125a, 132d, 140d, 182b, 191d, e. Content in paragraph 90 is repeated at paragraphs 132b, 140k, 149a, b, g, h, 191 b, j, l, n. Content in paragraphs 94-95 is repeated at paragraphs 116o, 125f, 127d, 191o.

11575517, at *2 (D.D.C. Sept. 30, 2010) (citation omitted). A matter is immaterial or impertinent "when it is not relevant to the resolution of the issue at hand." *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 224 F.R.D. 261, 263 (D.D.C. 2004). Some courts have held that an immaterial or impertinent matter also must prejudice a party for the matter to be struck, and the interests of efficient judicial administration, unnecessary burden, and clarity identified in the *Achagzai*, *Terrell*, and *Lynch* courts above detail the prejudice inflicted upon a party by a "bloated mass of unnecessary detail." *Ciralsky*, 355 F.3d at 669.

Here, a majority of the paragraphs alleged in Smartmatic's complaint are immaterial and impertinent. They also are redundant. As noted above, **281** paragraphs and subparagraphs do not recite statements or actions alleged to have been made or undertaken by Ms. Powell. *Supra.* Another **47** paragraphs and subparagraphs involve statements made in court filings that do not later serve the basis of Smartmatic's causes of action. *Supra.* For example:

- Paragraph 78 includes Powell by name, but the paragraph is about Fox News' motivations to join a "conspiracy";

- Paragraph 98 is about actions taken by Lou Dobbs.

- Paragraphs 157-164, 173-180 are all related to a themes of statements that do not include any statements made by Ms. Powell, as conceded by Smartmatic in the complaint itself.

In addition, the following paragraphs reference non-parties, thereby intertwining the allegations with them: paragraphs 21, 72-78, 83, 115, 116-118, 121, 122, 126, 128-131, 133-135, 139, 141-143, 148, 150-152, 157, 159, 165, 167-169, 173, 175-177, 181, 183-185, 190, 192-194, 200, 203-215, 219, 220, 222, 236-238, 240, 241, 249, 278, 284, 285, 292, 301, 307, 313, 319, 366, 367, 370, and 379. Paragraphs 101, 125, 127, 132, 140, 149, 166, 174, 182, and 191 consist of

subparagraphs that either restate statements allegedly made by Ms. Powell or statements made by others and unrelated to her). At the very least, references to the other parties should be struck as immaterial and impertinent. *E.g., Witherspoon v. Phillip Morris, Inc.*, 946 F. Supp. 455, 468 (D.D.C. 1997) (striking under Rule 12(f) all paragraphs that "refer to tobacco companies without reference to defend ant [Phillip Morris]"). For these reasons too, the complaint should be struck.

## II.        SMARTMATIC B.V. AND SGO LACK STANDING

The claims brought by plaintiffs Smartmatic International Holdings B.V. (Smartmatic BV) and SGO Corporation Ltd. (SGO) should be dismissed. As an intermediary parent and ultimate parent of Smartmatic USA, neither company has standing. Indeed, since filing this lawsuit, the New York supreme court has dismissed claims brought by Smartmatic B.V. and SGO against non-parties on the very same grounds. **(Ex. B)** Smartmatic should have already dismissed those parties itself and revised its complaint to remove allegations that have nothing to do with Ms. Powell.

It is long-established that a shareholder cannot sue in the shareholder's name for injuries suffered by a corporation "unless there is a special duty between the wrongdoer and the shareholder, and the shareholder has suffered an injury separate and distinct from that suffered by other shareholders." *Harrington v. Batchelor*, 781 So. 2d 1135-36 (Fla. Dist. Ct. App. 2001); *see also Wash. Tennis & Educ. Found., Inc. v. Clark Nexsen, Inc.*, 270 F. Supp. 3d 158, 164-65 (D.D.C. 2017) (holding claim for injury to subsidiary belongs to subsidiary, not shareholder); *Franchise Tax Bd. v. Alcan Aluminium Ltd.,* 493 U.S. 331, 336 (1990). The rule is rooted in the "principle that a litigant cannot sue in federal court to enforce the rights of third parties." *Rawoof v. Texor Petroleum Co.,* 521 F.3d 750, 757 (7th Cir. 2008).

Under Florida law, a shareholder may only bring a suit in his own right for an injury "sustained *directly* by him, and which is *separate and distinct* from that sustained by other

stockholders." *Citizens Nat. Bank of St. Petersburg v. Peters*, 175 So. 2d 54, 56 (Fla. Dist. Ct. App. 1965) (emphasis added). "If, however, the injury is primarily against the corporation, or the stockholders generally, then the cause of action is in the corporation and the individual's right to bring it is derived from the corporation," and the shareholder *cannot* bring an individual claim. *Id.* (emphasis added); *see also MCO Airport Concessions, LLC v. Gtr. Orlando Aviation Auth.*, 2012 WL 12896558, at \*4 (M.D. Fla. Feb. 14, 2012) ("Courts universally recognize that a holder of an ownership interest in a corporate entity cannot maintain a direct action in his or her own name for damages to the corporate entity."), *aff'd*, 508 F. App'x 920 (11th Cir. 2013). A court determines whether the alleged injury is direct to the shareholder or to the corporation by looking to the body of the complaint. *MCO Airport Concessions, supra* (citing *Karten v. Woltin*, 23 So. 3d 839, 841 (Fla. 4th Dist. Ct. App. 2009)).

*MCO Airport Concessions*, a federal case, is illustrative. In that case, MCO Airport Concessions brought suit against the Greater Orlando Airport Authority after MCO's subsidiary, Orlando Hometown Concessions, LLC (OHC), lost a bid to operate and manage an expanded food and beverage concession at Airside 3 of the Orlando International Airport (the Airside 3 contract). *MCO Airport Concessions*, 2012 WL 12896558 at \*1-2. Granting the motion to dismiss, the federal court observed that the lawsuit alleged damages to be sustained by MCO from the lost profits that would have derived from the subsidiary OHC's business at the airport and alleged defamatory statements – suggesting MCO owners' connections with terrorists – made during the bidding process. These alleged injuries were not independent of injuries OHC would have sustained from the lost contract bid to provide MCO with standing:

> However, the gravamen of the complaint is the alleged
> improper award of the Airside 3 contract to A/H–JV. Even
> as framed by Plaintiffs, the lost opportunity to operate the

> three MCO food and beverage concepts *is still an injury
> suffered primarily by OHC and its members generally*.

*Id.* at *4 (emphasis added). As a result, the claims were dismissed.

Here, Smartmatic BV and SGO do not allege injury "separate and distinct" from Smartmatic USA. As a preliminary matter, plaintiffs plead "Smartmatic" as a defined term for Smartmatic USA, Smartmatic BV, and SGO. (Compl. ¶¶ 1-4.) By that definition, each and every alleged injury focuses upon and inextricably interweaves Smartmatic USA's injury with its direct and indirect shareholders – there are no injuries that are separate and distinct. (*E.g.,* Compl. ¶¶ 368, 370-72, 381-545.) Further, although Smartmatic does pepper its complaint with such phrases as "particularly those in the United States" and "in" or "across" "the world" (*e.g.,* Compl. ¶¶ 47, 60, 368, 371, 375), there is no clouding the fact that Smartmatic's allegations remain focused on the "US market" and the US 2020 Election. In addition, "Smartmatic" – whether Smartmatic USA, Smartmatic BV, or SGO, or all three – admit that Smartmatic BV's and SGO's "profits" derive from other worldwide subsidiaries and are not earned directly:

> Smartmatic's business pipeline includes sales and opportunities through subsidiaries wholly owned by Smartmatic International Holding B.V. in the United States, Barbados, Australia, United Kingdom, Panama, Haiti, Belgium, Singapore, Netherlands, Mexico, Ecuador, Brazil, Estonia, Taiwan, and the Philippines as well as branches in Colombia, Argentina, Honduras, Pakistan, Italy, Jamaica, and El Salvador.

(Compl. ¶ 379 n.36.) In other words, to the extent Smartmatic BV or SGO suffered injury outside the US, those injuries are not separate or distinct from its subsidiaries. For these reasons,

Smartmatic BV and SGO should be dismissed as parties for lack of standing.

## III.      THE INJURIOUS FALSEHOOD CLAIMS SHOULD BE DIMISSED

Smartmatic's injurious falsehood claims suffer from two separate and independent flaws, either of which alone supports dismissal. First, under Florida's single publication/action rule, Smartmatic cannot assert claims for both defamation and injurious falsehood based on the same statements. Second, Smartmatic's injurious falsehood claims fail to plead special damages.

### A.      The Single Publication/Action Rule Warrants Dismissal

Smartmatic's complaint alleges seven claims for defamation and five claims for injurious falsehood, but bases them on the same alleged statements. This is impermissible under Florida's single publication/action rule.

Under Florida law, a single publication gives rise to a <u>single</u> cause of action only. *E.g., Fridovich v. Fridovich*, 598 So. 2d 65, 70 (Fla. 1992); *see also Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 209–10 (Fla. Dist. Ct. App. 2002) ("we cannot conclude that a plaintiff in an action for slander of title should not also be subject to the single action/single publication rule as is a plaintiff in a personal defamation claim"). Federal and state courts in Florida have adhered to this rule. *E.g., Ovadia v. Bloom*, 756 So. 2d 137, 140–41 (Fla. Dist. Ct. App. 2000) (affirming dismissal of invasion of privacy, conspiracy, and interference claims because single publication/action rule "does ***not*** permit multiple actions to be maintained when they arise from the same publication") (emphasis in original); *Fin. Info. Techs., Inc. v. iControl Sys., USA, LLC*, 2018 WL 3391379, at *8 (M.D. Fla. June 12, 2018*), report and recommendation adopted as modified*, 2018 WL 4771060 (M.D. Fla. Oct. 3, 2018) (finding claims premised on the same facts and defamatory statements cannot be viable independent torts).

The Florida appellate court's reasoning in *Orlando Sports Stadium, Inc.* is illustrative and should control here. In that case, appellants appealed from the entry of a final judgment dismissing with prejudice their amended complaint that sought damages in separate claims for malicious interference with business and libel. *Orlando Sports Stadium, Inc. v. Sentinel Star Co.*, 316 So. 2d 607, 608 (Fla. Dist. Ct. App. 1975). Appellants had alleged that newspaper articles published about them were false, defamatory, and calculated to damage their business and reputation. *Id.* On appeal, they argued that the malicious interference with business claims were separate causes of action from the libel, and therefore should not have been dismissed. The appellate court disagreed, holding that the claims warranted dismissal because they were based on and alleged "damage flowing from" the same "numerous news articles" as the libel claim, thus making them improper under the single action/publication rule. The court explained:

> The thrust of appellants' complaint in both counts is that said news articles were injurious to appellants' reputation. The appellants contend that counts one and two are two separate causes of action. This court cannot agree with such contention as such actions are nothing more than separate elements *of damage flowing from the alleged wrongful publications.*

*Id.* at 609 (emphasis added) (citation omitted).[18] The court further reasoned that "Florida courts have held that *a single wrongful act gives rise to a single cause of action*, and that the various injuries resulting from it are merely items of damage arising from the same wrong." *Id.* (emphasis added).

---

[18] The same is true in New York, where Smartmatic previously filed its lawsuit. *E.g., Hatfill v. Foster*, 401 F.Supp.2d 320 (S.D.N.Y. 2005) ("should plaintiff prevail, his damages for the alleged libel would be the same as his damages for injurious falsehood. I therefore dismiss those counts as against all defendants.").

The result should be no different here. Competing causes of action asserted by Smartmatic impermissibly seek recovery from the *same* publication/action:

- **Counts II and VIII** both seek relief for the identical claim of "False Statements and Implications that Smartmatic's Election Technology and Software were Widely Used in the 2020 U.S. Election, Including in Contested States," and rely upon "false statements" pleaded in paragraph 132. (*Compare* Compl. ¶ 396 *with* ¶ 480.)

- **Counts III and IX** both seek relief for the identical claim of "False Statements and Implications that Smartmatic's Election Technology and Software were Used to Fix, Rig, and Steal the 2020 U.S. Election," and rely upon "false statements" pleaded in paragraph 149. (*Compare* Compl. ¶ 410 *with* ¶ 493.)

- **Counts IV and X** both seek relief for the identical claim of "False Statements and Implications that Smartmatic's Election Technology and Software were Compromised and Hacked during the 2020 U.S. Election," and rely upon "false statements" pleaded in paragraph 166. (*Compare* Compl. ¶ 424 *with* ¶ 506.)

- **Counts V and XI** both seek relief for the identical claim of "False Statements and Implications that Smartmatic's Election Technology and Software Were Used by Dominion during the 2020 U.S. Election," and rely upon "false statements" pleaded in paragraph 140. (*Compare* Compl. ¶ 438 *with* ¶ 519.)

- **Counts VII and XII** both seek relief for the identical claim of "False Statements and Implications that Smartmatic's Election Technology and Software were Designed and Used to Fix, Rig, and Steal Elections," and rely upon "false statements" pleaded in paragraph 191. (*Compare* Compl. ¶ 466 *with* ¶ 519.)

In addition, all seven defamation claims and all five injurious falsehood claims seek, *verbatim*, the exact same damages: compensatory, consequential, special, and punitive damages.[19]

Smartmatic's defamation and injurious falsehood claims rely on the same publications. As a result, the injurious falsehood claims should be dismissed.

### B.    Smartmatic Must Plead Special Damages

The injurious falsehood claims also should be dismissed because Smartmatic fails to plead special damages.

Under Florida law, slander of title, disparagement of property, and trade libel are all classified under the collective title of "injurious falsehood." *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.,* 742 So.2d 381, 386 (Fla. Dist. Ct. App. 1999). A plaintiff must plead special damages for its injurious falsehood claim. *E.g., Five for Ent. S.A. v. Ayala Rodriguez*, 2014 WL 12503331, at *2 (S.D. Fla. Aug. 15, 2014), *aff'd sub nom. Five For Ent. S.A. v. El Cartel Recs., Inc.*, 646 Fed. App'x 714 (11th Cir. 2016); *Funny Cide Ventures, LLC v. Miami Herald Publishing Co.,* 955 So. 2d 1241, 1246 (Fla. Dist. Ct. App. 2007).

The "special damage rule requires the plaintiff to establish pecuniary loss that has been realized or liquidated, as in the case of specific lost sales." *Salit*, 742 So. 2d at 388; *see also Collier*

---

[19] Compl. ¶¶ 392-394, 406-408, 420-422, 434-436, 448-450, 462-464, 476-478, 489-491, 502-504, 515-517, 528-530, 541-543.

*County Pub. Co., Inc. v. Chapman,* 318 So.2d 492, 495 (Fla. Dist. Ct. App. 1975) ("Damages recoverable in an action for trade libel are the plaintiff's pecuniary losses."). Lost value does *not* satisfy the special damages pleading requirement. *Prosser and Keeton on The Law of Torts* § 128 at 971 n. 3 (5th ed.1984) (where plaintiff sought recovery for decline in land's market value in a slander of title case, claim deemed an item of general damages, not special damages).

Here, Smartmatic does not allege or otherwise identify special damages as required. Instead, it baldly asserts that where once it was worth $3 billion, it now is "valued at less than $1 billion," and $1.2 million in unspecified out-of-pocket expenses. (Compl. ¶¶ 373, 379.) Nothing more. The complaint does not reveal any "realized loss," that characteristic of "special damage" that is a crucial element of the cause of action. As a result, this Court should dismiss *all* of Smartmatic's injurious falsehood claims.

## IV.   SEVERAL DEFAMATION CLAIMS ARE REALLY CLAIMS FOR INJURIOUS FALSHOOD

Counts II-V and VII should be dismissed because the claims sound in injurious falsehood, *not* defamation, and Smartmatic has not plead required special damages.

Under Florida law, slander of title, disparagement of property, and trade libel are all classified under the collective title of "injurious falsehood." *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.,* 742 So.2d 381, 386 (Fla. Dist. Ct. App. 1999). "The gist of the tort of injurious falsehood is the 'intentional interference with another's economic relations.'" *Id.* (citation omitted). The Florida Supreme Court adopted sections 624–626 of the *Restatement of Torts* for tort of injurious falsehood, which applies to disparaging statements about another's or the quality of another's property, land, or chattel. *Id.* at 387 (citing *Lehman v. Goldin,* 36 So. 2d 259, 260 (Fla. 1948)).

22

A defamation action involves the personal reputation of the injured party, whereas an action for injurious falsehood involves the person's product. *See Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 209 (Fla. Dist. Ct. App. 2002) *(citing Restatement (Second) of Torts* § 623A (1977)). *Compare Bothmann v. Harrington*, 458 So. 2d 1163, 1168 (Fla. Dist. Ct. App. 1984) ("The basis of a disparagement of property action arises out of an injurious falsehood or false statement concerning one's property.") *with Sailboat Key, Inc. v. Gardner*, 378 So. 2d 47, 48 (Fla. Dist. Ct. App. 1979) ("Libel and slander involve defamation of personal reputation.").

Five of Smartmatic's defamation claims (Counts II-V, VII) are directed toward Smartmatic's "election technology and software," and thus concern Smartmatic's products and their quality, and not the company itself. Specifically:

- **Count II** asserts that "Ms. Powell, Mr. Giuliani, and Fox published and/or republished false statements and implications during news broadcasts, in online reports, and on social media that **Smartmatic's election technology and software** were widely used in the 2020 U.S. election[.]" (Compl. ¶ 396 (emphasis added).)

- **Count III** asserts that "Ms. Powell, Mr. Giuliani, and Fox published and/or republished false statements and implications during news broadcasts, in online reports, and on social media that **Smartmatic's election technology and software** were used to rig, fix and steal the 2020 U.S. election[.]" (*Id.* ¶ 410 (emphasis added).)

- **Count IV** asserts that "Ms. Powell, Mr. Giuliani, and Fox published and/or republished false statements and implications during news broadcasts, in

23

online reports, and on social media that **Smartmatic's election technology and software** were compromised and hacked during the 2020 U.S. election. (*Id.* ¶ 424 (emphasis added).)

- **Count V** asserts that "Ms. Powell, Mr. Giuliani, and Fox published and/or republished false statements and implications during news broadcasts, in online reports, and on social media that **Smartmatic's election technology and software** were used by Dominion during the 2020 U.S. election for election fraud." (*Id.* ¶ 438 (emphasis added).)

- **Count VII** asserts that "Ms. Powell, Mr. Giuliani, and Fox published and/or republished false statements and implications during news broadcasts, in online reports, and on social media that **Smartmatic's election technology** was designed and used to fix, rig, and steal elections." (*Id.* ¶ 466 (emphasis added).)

As injurious falsehood claims Smartmatic must plead special damages for each claim. *E.g., Salit,* 742 So.2d at 388. Ms. Powell anticipates that Smartmatic has dressed these claims as "defamation" claims because it cannot plead special damages. It's ability to do so, however, should not prevent the claims' dismissal.

## V.        SEVERAL CLAIMS RELY ON STATEMENTS MADE BY OTHERS

An apparent legacy of the New York omni-lawsuit, several of Smartmatic's claims (Counts II, IV, VIII and X) rely on statements allegedly made by Giuliani or Fox hosts, ***not*** Ms. Powell. As a result, they do not state a viable claim against Ms. Powell and should be dismissed. *E.g., Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (allegations "must be enough to raise a right to relief above the speculative level" and claim "plausible on its face").

**Counts II and VIII** identically allege that between November 12, 2020, and December 20, 2020, "Ms. Powell, Mr. Giuliani, and Fox published and/or republished false statements and implications … that Smartmatic's election technology and software were widely used in the 2020 U.S. election including in contested states where claims of election fraud were made," and cite paragraph 132 to identify the statements at issue, as Smartmatic must do. (Compl. ¶¶ 396, 480.) Out of the nine statements recited in paragraph 132, two are attributed to Ms. Powell and neither involve the contention that Smartmatic's election technology and software were widely used:

> b. Sidney Powell: "Definitely hundreds of thousands have stepped forward with their different experiences of voter fraud, but **this is a massive election fraud**. And I'm very concerned it involved, not only **Dominion and its Smartmatic software**, but that the **software essentially was used by other election machines also**." (*Sunday Morning Futures with Maria Bartiromo*, November 15, 2020 (Exhibit 5).)

> * * *

> d. Sidney Powell: "We're talking about the alteration and changes in millions of votes, some being dumped that were for President Trump, some being flipped that were for President Trump. Computers being overwritten to ignore signatures. All kinds of different means of manipulating the **Dominion and Smartmatic software**, that of course, we would not expect Dominion or Smartmatic to admit." (*Justice with Judge Jeanine*, November 14, 20202 (Exhibit 3)).

(Compl. ¶ 132 (emphasis in original).)

In contrast, Giuliani (according to the complaint) stated that Smartmatic's election technology and software were "widely used in the 2020 U.S. election including, in contested states where claims of election fraud were made":

- Rudy Giuliani: "They did it in big cities where they have corrupt machines that will protect them, meaning in **Pennsylvania, Philadelphia, and**

**Pittsburgh**, [and] in **Detroit**. They didn't have to do it in **Chicago**, in **New York** or **Boston**. They could have, they have corrupt machines there. They did it absolutely in **Phoenix, Arizona**. They did it absolutely in **Milwaukee, Wisconsin**." (*Sunday Morning Futures with Maria Bartiromo*, November 15, 2020 (Exhibit 5)) (Compl. ¶ 132c (emphasis added).)

- Rudy Giuliani: "I can prove that ***they did it in Michigan***. I can prove it with witnesses…Now, they didn't do it everywhere. They did it in big cities where they have corrupt machines that will protect them. Meaning in ***Pennsylvania, Philadelphia, and Pittsburgh, [and] in Detroit***. ….***They did it absolutely in Phoenix, Arizona***. They did it absolutely in ***Milwaukee, Wisconsin***. (*Sunday Morning Futures with Maria Bartiromo*, November 15, 2020 (Exhibit 5)) (Compl. ¶ 132g (emphasis in original).)

- Rudy Giuliani: "Lou, I don't know if people can appreciate this but I think when they do, they're going to be outraged. Our votes in ***27 [or] 28 states*** that [are] counted by Dominion, and calculated and analyzed. They're sent outside the United States. And they're not sent to Canada. They're sent to Germany and Spain. And ***the company counting, it is not Dominion, it's Smartmatic***, which is a company that was founded in 2005 in Venezuela for the specific purpose of fixing elections." (*Lou Dobbs Tonight*, November 18, 2020 (Exhibit 23) (emphasis in original). (Compl. ¶ 132i (emphasis in original).)

**Counts IV and X** identically allege that between November 12, 2020, and December 20, 2020, "Ms. Powell, Mr. Giuliani, and Fox published and/or republished false statements and implications … that Smartmatic's election technology and software were compromised and hacked during the 2020 U.S. election." (Compl. ¶¶ 424, 506.) As Smartmatic must identify the statements, it cites paragraph 166 in support. Out of the 13 statements recited in paragraph 166, two are attributed to Ms. Powell. They do not contend that Smartmatic's election technology and software was hacked during the 2020 election:

> h. Maria Bartiromo: "What is the CIA's role? Why do you think Gina Haspel should be fired immediately? You're saying the CIA is behind the Dominion or Smartmatic voting software as well?" Sidney Powell: "Well, ***the CIA and the FBI and other government organizations have received***

26

*multiple reports of wrongdoing and failures and vulnerabilities in this company's product.*" (*Sunday Morning Futures with Maria Bartiromo*, November 15, 2020 (Exhibit 5)). (Compl. ¶ 166h (emphasis in original.)

\* \* \*

j. Sidney Powell: "And every time there was a glitch, as they called it, or connection to the Internet, they also violated state laws that required the machines to be certified and nothing to be changed before the votes. There are any number of legal grounds on which the use of those machines has to be stopped and the votes invalidated." (*Lou Dobbs Tonight*, November 19, 2020 (Exhibit 25)). (Compl. ¶ 166j.)

Again, and in contrast, the only alleged statements pleaded that suggest a 2020 hacking event are attributable to Giuliani and to Fox hosts:

- Rudy Giuliani: "[F]irst of all, *the machines can be hacked*. There's no question about that. Their machines can be hacked, but it's far worse than that." (*Lou Dobbs Tonight*, November 12, 2020 (Exhibit 1)). (Compl. ¶ 166a (emphasis in original).)

- Rudy Giuliani: "They have a terrible record and they are *extremely hackable*. So, Texas made the right decision. What the heck was Georgia doing hiring this company?" (*Lou Dobbs Tonight*, November 12, 2020 (Exhibit 1)). (Compl. ¶ 166a (emphasis in original).)

- Rudy Giuliani: "And yes, *they can be hacked*, and yes, they can change votes." (*Lou Dobbs Tonight*, November 12, 2020 (Exhibit 1)). (Compl. ¶ 166a (emphasis in original).)

- Maria Bartiromo: "One source says that the key point to understand is that the *Smartmatic system has a back door*, that allows it to be [], or that allows the votes to be mirrored and monitored, allowing an intervening party a real-time understanding of how many votes will be needed to gain an electoral advantage." (*Sunday Morning Futures with Maria Bartiromo*, November 15, 2020 (Exhibit 5)). (Compl. ¶ 166f (emphasis in original).)

- Rudy Giuliani: "Republicans were shut out from enough of the count, so they could accomplish what Smartmatic wanted to do…[W]e have evidence

that that's the same pattern Smartmatic used in other elections in which they were disqualified. In other words, this is their pattern of activity, and, yes, ***there is a backdoor [] and we actually have proof of some of the connections to it***." (*Sunday Morning Futures with Maria Bartiromo*, November 15, 2020 (Exhibit 5)). (Compl. ¶ 166g (emphasis in original).)

- Lou Dobbs: "Smartmatic, once the subject of a Treasury Department investigation into its connections with the Venezuelan government. Three of their employees were also charged in 2016 with illegally altering code on an election server in the Philippines' national election…And in a 2015 interview on Filipino television, Malloch-Brown said part of their technology is licensed from Dominion Voting Systems. Smartmatic now says that isn't true … A Politico article from March, in fact, documents that ***numerous security flaws were discovered in Smartmatic's software*** by California's Secretary of State and outside computer experts." (*Lou Dobbs Tonight*, November 16, 2020 (Exhibit 14)). (Compl. ¶ 166i (emphasis in original).)

As none of these claims identify a statement in support that purportedly was made by Ms. Powell, they should be dismissed.

## VI.  SMARTMATIC'S ALLEGATIONS DO NOT ESTABLISH PERSONAL JURISDICTION

Smartmatic's allegations about Ms. Powell's involvement with the District of Columbia are insufficient to support personal jurisdiction or venue. The Due Process Clause recognizes two forms of personal jurisdiction, "general or all-purpose jurisdiction, and specific or case-linked jurisdiction," with general jurisdiction requiring defendants' contact with the forum to be "so 'continuous and systematic' as to render them essentially at home in the forum." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Because Ms. Powell is not "at home" in the District, Smartmatic seeks to assert specific jurisdiction under the District's longarm statute.

The District of Columbia's longarm statute includes three relevant clauses:

(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's —

(1) transacting any business in the District of Columbia; …

(3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia; …

(b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

D.C. CODE § 13-423(a)(1), (a)(3)-(4), (b); *see* Compl. ¶ 16 (citing (a)(1), (a)(3) and (a)(4) as basis for personal jurisdiction).

In addition to the longarm statute, the Due Process Clause also governs, which requires that even on the pleadings, a plaintiff "cannot rest on bare allegations or conclusory statements but 'must allege specific acts connecting the defendant with the forum..." *Cherdak v. Am. Arbitration Ass'n*, 443 F.Supp.3d 134, 142 (D.D.C. 2020) (quoting *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001)) (alterations omitted). "The proper focus of the minimum contacts inquiry in intentional-tort cases is the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 291 (2014) (internal quotation marks omitted).

Here, although courts evaluate personal jurisdiction and venue independently for each count,[20] the analysis is the same all twelve counts. Smartmatic alleges the following facts to base its assertion for this Court's personal jurisdiction over Ms. Powell.

---

[20] *E.g., Elemary v. Holzmann*, 533 F. Supp. 2d 144, 149 (D.D.C. 2008) ("a plaintiff must demonstrate proper venue with respect to each cause of action"); *Jia Di Feng v. Lim*, 786 F. Supp. 2d 96, 101 (D.D.C. 2011) (same for personal jurisdiction).

- At various times in November and December of 2020, Ms. Powell made allegedly defamatory statements about Smartmatic from within the District of Columbia after traveling to the District shortly after the 2020 U.S. election. (Compl. ¶ 17.)

- Ms. Powell stayed in the Trump International Hotel in Washington, D.C. during much of the time period relevant to this case. (*Id.* ¶ 17.)

- Ms. Powell regularly travels to and transacts business within the District of Columbia, and derives substantial revenue from such services rendered within the District of Columbia, including by soliciting funds to her fundraising websites and by representing Michael Flynn in the District Court for the District of Columbia. (*Id.*)

- "Ms. Powell avails herself of numerous privileges in the District of Columbia, including those set forth above." (*Id.* ¶ 18.)

- "Ms. Powell would set up websites soliciting money from President Trump's followers[.]" (*Id.* ¶ 77.)

- "This Court found personal jurisdiction over Ms. Powell in a related lawsuit for claims arising out of substantially similar events." (*Id.* ¶ 19 (citing *US Dominion, Inc. v. Powell*, 554 F Supp.3d 42, 66-67 (D.D.C. 2021)).)

Focusing on these jurisdictional allegations, it is clear that Smartmatic has not established personal jurisdiction over Ms. Powell under the District's longarm statute or the Due Process Clause.

## A.    The "Government Contacts" Exception Excludes Some Alleged Contacts.

The District of Columbia longarm statute incorporates a "government contacts" exception that precludes reliance on many of the complaint's allegations from being considered in a personal jurisdiction analysis. *Envtl. Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d 808, 813 (D.C. 1976) (*en banc*); *Akhmetshin v. Browder*, 993 F.3d 922, 927 (D.C. Cir. 2021). The government contacts doctrine immunizes a defendant's entry into (and contacts with) the District to petition or otherwise contact the United States government from being used as a predicate for the exercise of personal jurisdiction. As explained by the D.C. Court of Appeals:

> [The "government contacts" exception or doctrine] finds its source in the unique character of the District as the seat of national government and in the correlative need for unfettered access to federal departments and agencies for the entire national citizenry. To permit our local courts to assert personal jurisdiction over nonresidents whose sole contact with the District consists of dealing with a federal instrumentality not only would pose a threat to free public participation in government, but also would threaten to convert the District of Columbia into a national judicial forum.

*Envtl. Research*, 355 A.2d at 813 (footnote omitted).

Where the doctrine applies, contacts with the District of Columbia "do not enter the calculus of minimum contacts with the District of Columbia for jurisdictional purposes." *Inv. Co. Inst. v. United States*, 550 F.Supp.1213, 1216 (D.D.C. 1982). The rationale is to avoid having this District become a "national judicial forum" based on the District's role as the seat of the federal government. *Envtl. Research*, 355 A.2d at 813 ("To permit our local courts to assert personal jurisdiction over nonresidents whose sole contact with the District consists of dealing with a federal instrumentality not only would *pose a threat to free public participation in government*, but also would threaten to convert the District of Columbia into a *national judicial forum*.") (emphasis added). This exception shields many of the contacts with the District of Columbia that Smartmatic alleges against Ms. Powell.

31

Ms. Powell's trips to the White House hit the dead center of the government-contacts exception, as they are "contacts with the federal government." *Id.* at 814. The exception also applies to Ms. Powell's appearance at the Republican National Committee ("RNC"). Courts have applied the government-contacts exception to both federal government and trade associations located within the District. *See*, *e.g.*, *World Wide Minerals Ltd. v. Republic of Kazakhstahn*, 116 F.Supp.2d 98, 106 (D.D.C. 2000); *Investment Co.*, 550 F.Supp. at 1217 n.6; *United Therapeutics Corp. v. Vanderbilt Univ.*, 278 F.Supp.3d 407, 418-19 (D.D.C. 2017); *Jung v. Ass'n of Am. Med. Colleges*, 300 F.Supp.2d 119, 139 (D.D.C. 2004). The exception also applies to Ms. Powell's media appearances, as they "advance[d] [the] policy agenda" underlying the government contact. *See United Therapeutics Corp.*, 278 F.Supp.3d at 418. The media appearances also do not qualify as transacting business within the meaning of subsection (a)(1) of the longarm statute.[21]

### B.   Ms. Powell's Representation Of Gen. Flynn Is *Constitutionally* Irrelevant.

President Trump had offered to pardon General Flynn long before the 2020 election. Powell Decl. ¶ 16. Although the *Dominion* plaintiffs implied a *quid pro quo* link between the timing of General Flynn's pardon and Ms. Powell's election litigation, *Dominion*, 554 F. Supp. 3d at 62 ("President Trump pardoned her client, Michael Flynn, on the same day she filed her first lawsuit challenging the results of the 2020 election") (citing Compl. ¶ 80), there was no link.[22] Nor can her representing General Flynn serve as a basis of personal jurisdiction. Powell Decl. ¶ 16.

---

[21] The D.C. Court of Appeals recently held that the government-contacts exemption has applied only to subsection (a)(1) and declined to extend it to subsection (a)(4). *Akhmetshin v. Browder*, 2022 WL 1670987, at *4 (D.C. May 26, 2022).

[22] The timing of the pardon simply reflected that the district judge had not yet granted the United States' motion to dismiss and that President Trump wanted to grant the pardon—which he had

Under the Due Process Clause, to establish specific jurisdiction, a defendant must have purposefully availed itself of the forum (*e.g.*, transacting business or using the forum's legal system), ***and*** the "plaintiff 's claims … must arise out of or relate to the defendant's contacts with the forum." *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1024-25 (2021) (internal quotation marks omitted). Under this second prong, "there must be 'a strong relationship among the defendant, the forum, and the litigation.'" *Hepp v. Facebook*, 14 F.4th 204, 208 (3d Cir. 2021) (quoting *Ford*, *supra,* at 1028). As the United States Supreme Court explained, while the link need not rise to the level of causation, it incorporates *real* limits:

> The first half of that standard asks about causation; but the back half, after the "or," contemplates that some relationships will support jurisdiction without a causal showing. That does not mean anything goes. In the sphere of specific jurisdiction, the phrase "relate to" incorporates real limits, as it must to adequately protect defendants foreign to a forum.

*Ford*, 141 S. Ct. at 1026. Ms. Powell's representation of General Flynn is wholly unrelated to personal jurisdiction over Ms. Powell for election-related claims alleged by Smartmatic here.

Even if this Court were to find Ms. Powell's revenue for the few hours of services she rendered in the District to qualify as "substantial" under subsection (a)(4), those services were wholly unrelated to election issues. Finding jurisdiction under the District's longarm is a two-step process: A claim must fall not only within the statute's terms but also within the Due Process Clause. *See Akhmetshin,* 2022 WL 1670987, at *5 n. 6. The *Flynn* litigation is insufficiently related to Ms. Powell's election litigation under the Due Process Clause.

### C.     This Court's Decision In The *Dominion* Case Is Not Controlling.

---

long before decided to grant if the district judge did not dismiss the case—before he left office and prior to Thanksgiving.

Although Smartmatic cites this Court's having "found personal jurisdiction over Ms. Powell," Compl. ¶ 19, Smartmatic does not and cannot allege that a prior district court decision *controls* the personal-jurisdiction issue here. *Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 428 (2011) ("federal district judges, sitting as sole adjudicators, lack authority to render precedential decisions binding other judges, even members of the same court"). Nor does or can Smartmatic assert *res judicata*. The Dominion allegations and Smartmatic allegations are different. Ms. Powell makes different arguments here than she made in *Dominion*. These different issues pending before this Court obviously could alter the outcome.

> Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.

*Cooper Indus., Inc. v. Aviall Serv., Inc.*, 543 U.S. 157, 170 (2004) (interior quotation marks omitted). Smartmatic's meager allegation at paragraph 19 does not compel this Court to ignore appellate authority or new factual issues not raised in the *Dominion* litigation.

### D.    Fundraising Websites Are Irrelevant To Personal Jurisdiction Over Ms. Powell.

The allegation that Ms. Powell "set up websites soliciting money from President Trump's followers," Compl. ¶ 77, is insufficient to establish personal jurisdiction. Subsection (a)(1) of the District's longarm statute applies to transacting business in the District, and requires commercial or business-related activities. *Holder v. Haarmann & Reimer Corp.*, 779 A.2d 264, 270-71 (D.C. 2001); *IMAPizza LLC v. At Pizza, Ltd.*, 334 F.Supp.3d 95, 111 (D.D.C. 2018) ("transacting business refers to 'business transactions' in the everyday sense of commercial deal-making activities like negotiating or performing contracts").

To the extent that the allegation refers to websites of organizations with which Ms. Powell is affiliated, Smartmatic alleges neither agency itself nor the scope of Ms. Powell's agency. "The relevant issue then is not merely the existence of an agency relationship, but rather the scope of that agency." *Gaines v. Kelly*, 235 S.W.3d 179, 184 (Tex. 2007); *cf. Henderson v. Charles E. Smith Management, Inc.*, 567 A.2d 59, 62 (D.C. 1989) ("existence of an agency relationship is a question of fact, for which the person asserting the relationship has the burden of proof"); *Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*, 62 F.Supp.2d 13, 21 (D.D.C. 1999) ("[b]are allegations of agency … are insufficient"). To the extent that Smartmatic's vague pleading refers to websites other than Ms. Powell's law firm website, the allegations are insufficient for personal jurisdiction or liability over Ms. Powell.

### E.      The Longarm Statute's Subsections Are Limited By Subsection (B).

Subsection 423(a) is limited to claims "arising from" the defendant's relevant act or omission: "When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him." D.C. CODE § 13-423(b). In Subsections 423(a)-(b), the phrase "arising from" is used "flexibly and synonymously" as equivalent to the "'relate to' or having a 'substantial connection with'" language used in the U.S. Supreme Court's jurisdictional analysis under the Due Process Clause. *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 335 (D.C. 2000) (*en banc*). For specific jurisdiction, the defendant's contact with the District of Columbia requires a "discernible relationship" to the plaintiff's claim to satisfy Subsections 423(a)-(b) and the Due Process Clause. *Trerotola v. Cotter*, 601 A.2d 60, 64 (D.C. 1991).

> The limitation in § 13-423 (b) … is meant to prevent the assertion of claims in the forum state that do not bear some relationship to the acts in the forum state relied upon to confer jurisdiction.

*Shoppers Food Warehouse*, 746 A.2d at 326 (internal quotation marks omitted); *accord Islamic Am. Relief Agency v. Unidentified FBI Agents*, 394 F.Supp.2d 34, 57 n.25 (D.D.C. 2005).

### 1.  *Personal jurisdiction is lacking under § 13-423(a)(1).*

Subsection (a)(1) of the District's longarm statute applies to transacting business in the District, D.C. CODE § 13-423(a)(1), and requires commercial or business-related activities. *Holder*, 779 A.2d at 270-71. Subsection (a)(1) is coextensive with the Due Process Clause, *Helmer v. Doletskaya*, 393 F.3d 201, 205 (D.C. Cir. 2004), but only where subsection (a)(1) applies. *Collingsworth v. Drummond Co.*, 839 F. App'x 567, 568 (D.C. Cir. 2021) (quoting *Holder*, 779 A.2d at 270 & n.5; *Mouzavires v. Baxter*, 434 A.2d 988, 990-93 (D.C. 1981)) (alterations in *Collingsworth*). In other words, subsection (a)(1) does not simply mimic the Due Process Clause; it merely extends the District's jurisdiction over the transaction of business in the District to the reach that the Due Process Clause provides for those claims, subject to subsection (b).

Combining subsections (a)(1) and (b), then, this provision applies to the limits of the Due Process Clause, but only for claims arising out of the transaction of business within the District:

> This subsection of the long-arm statute is applicable when three requirements are satisfied: (1) the defendant must have transacted business in the District; (2) the plaintiff's claims must have arisen from the business transacted in the District; and (3) the defendant must have minimum contacts with the District such that exercise of personal jurisdiction would not offend traditional notions of fair play and substantial justice.

*Rundquist v. Vapiano SE*, 798 F.Supp.2d 102, 113 (D.D.C. 2011); *accord Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 509 (D.C. Cir. 2002). Each of these restrictions are fatal to one or more the bases that Smartmatic cites for personal jurisdiction.

With respect to Ms. Powell's law firm website, "mere accessibility of a website in the District is insufficient to establish minimum contacts" under subsection (a)(1). *Bigelow v. Garrett*, 299 F.Supp.3d 34, 45 (D.D.C. 2018); *accord Fiorentine v. Sarton P.R., LLC*, 486 F. Supp. 3d 377, 384-85 (D.D.C. 2020); *Rundquist v. Vapiano SE*, 798 F. Supp. 2d 102, 115-16 (D.D.C. 2011) ("the Court focuses on the defendant's use of the Internet to solicit or transact business with users in the District"). While interactive in the sense of allowing contact, Ms. Powell's law firm website does not target the District by directing traffic to or soliciting searches from users in the District. Powell Decl. ¶ 5. There is nothing unique about website advertising that makes every law firm in the nation subject to personal jurisdiction everywhere with an internet connection:

> This theory simply cannot hold water. Indeed, under this view, personal jurisdiction in Internet-related cases would almost always be found in any forum in the country. We do not believe that the advent of advanced technology, say, as with the Internet, should vitiate long-held and inviolate principles of federal court jurisdiction.

*GTE New Media Servs. v. BellSouth Corp.*, 199 F.3d 1343, 1350 (D.C. Cir. 2000). Ms. Powell's law firm website—the only one she herself controls—does not establish personal jurisdiction.

With respect to Ms. Powell's representation of Gen. Flynn, there is simply no relationship between the *Flynn* case and her election litigation or media interviews. With respect to Ms. Powell's media interviews from within the District, these interviews do not qualify as transacting "business" under subsection (a)(1). The few instances in which Ms. Powell found herself in the District—as opposed to at home or traveling elsewhere—related to the District's status as the seat of the federal government. Powell Decl. ¶¶ 17. 20. To the extent that these contacts qualify as transacting business at all, they are exempt under the government-contacts exemption. With respect to Ms. Powell's staying in District hotels or traveling to here, these actions, *by themselves*, are wholly unrelated to Ms. Powell's election litigation or media interviews. *Ford*, 141 S.Ct. at

1026. They simply lack the strong relationship to Smartmatic's claims that the Due Process Clause requires. *Ford*, 141 S.Ct. at 1028.

### 2.  *Personal jurisdiction is lacking under § 13-423(a)(3).*

Subsection (a)(3) of the District's longarm statute applies to injury caused in the District by acts or omissions in the District. D.C. CODE § 13-423(a)(3). Unlike Subsection 423(a)(1), "Subsection (a)(3) is a precise and intentionally restricted tort section, which stops short of the outer limits of due process[.]" *Forras v. Rauf*, 812 F.3d 1102, 1107 (D.C. Cir. 2016). The subsection requires both injury and conduct in the District. *Reuber v. United States*, 750 F.2d 1039, 1049-50 & n.12 (D.C. Cir. 1984) (language "clearly requires more than an 'act' that causes harm in the District; it requires that both the 'act' and the injury occur *in the District*.") (emphasis added).

Calling, "Zooming," or otherwise publishing or projecting into the District from outside the District does not implicate subsection (a)(3). *Moncrief v. Lexington Herald-Leader Co.*, 807 F.2d 217, 220 (D.C. Cir. 1986); *Margoles v. Johns*, 483 F.2d 1212, 1218 (D.C. Cir. 1973) ("Unless we wish to delve into a magical mystery tour of 'projecting presences,' we must find that no jurisdiction can be afforded by virtue of section (a)(3)."). Subsection (a)(3) therefore applies only to Ms. Powell's conduct in the District and only to injury felt by Smartmatic in the District.[23]

Corporate defendants like Smartmatic that do not operate in the District cannot suffer cognizable intangible reputational harm in the District. *See Kaspersky Lab, Inc. v. United States Dep't of Homeland Sec.*, 909 F.3d 446, 461–62 (D.C. Cir. 2018) (injury to corporations must take the form of monetary loss); *Art Metal-U.S.A., Inc. v. United States*, 753 F.2d 1151, 1156 (D.C. Cir.

---

[23] In *Dominion*, this Court found personal jurisdiction under subsection (a)(3) because Ms. Powell spoke with the media from within in the District, *Dominion*, 554 F.Supp.3d at 67 n.16, but that is a necessary but not sufficient condition under subsection (a)(3). The defendant also must suffer injury *within the District*.

1985) ("a corporation suing for defamation … may only recover actual damages in the form of lost profits"). Indeed, the "distinction between [a corporation's] interest in its reputation … and its pecuniary interest" is "illusory." *Art Metal-U.S.A.*, 753 F.2d at 1156. If Smartmatic suffered reputational harm in the District that manifested itself in financial loss in Florida—or some other state or country in which Smartmatic operates—Smartmatic did not suffer injury *in the District* as Subsection 423(a)(3) requires.[24]

### 3. *Personal jurisdiction is lacking under § 13-423(a)(4).*

Subsection (a)(4) of the District's longarm statute applies to injuries caused in the District by acts or omissions outside the District, but only if the defendant "*regularly* does or solicits business, engages in any other *persistent* course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District." D.C. CODE § 13-423(a)(4) (emphasis added). Subsection (a)(4) is not as broad as the Due Process Clause. *Forras v. Rauf*, 812 F.3d 1102, 1107 (D.C. Cir. 2015). Courts refer to the three additional criteria (namely, regular business, persistent conduct, or substantial revenue) as "plus factors." *Akhmetshin v. Browder*, 983 F.3d 542, 557 (D.C. Cir. 2020). Each is absent here.

Because Ms. Powell's election litigation and representation of General Flynn both were transitory events, her travels to the District of Columbia incident to those cases was not the type of "continuing contact" contemplated by the first or second plus factors, which require "regular" and "persistent" contacts. *Parsons v. Mains*, 580 A.2d 1329, 1330 (D.C. 1990) (citing *Security*

---

[24]     Subsection (a)(3)'s focus makes sense because longarm statutes are intended to protect *resident* plaintiffs, not foreign corporations like Smartmatic. *Siam Kraft Paper Co. v. Parsons & Whittemore, Inc.*, 400 F. Supp. 810, 812 (D.D.C. 1975) ("the purpose of the 'long arm' statute in any jurisdiction, as in the District of Columbia here, is to *protect local citizens and enterprises* by securing jurisdiction to the local courts of all controversies arising out of activities in the particular area") (emphasis added).

*Bank v. Tauber*, 347 F. Supp. 511, 515 (D.D.C. 1972)); *accord Akhmetshin*, 983 F.3d at 557 (citing *Parsons*). Although a lawyer's appearing in a District of Columbia court can serve as the basis for personal jurisdiction, *Lex Tex Ltd., Inc. v. Skillman*, 579 A.2d 244, 249 (D.C. 1990), occasional appearances do not qualify as sufficiently continuing for the first two plus factors: "Whatever the concept of a 'continuous and persistent course of business' means, it is not satisfied by the defendant's entry of an appearance as counsel in two or at most three matters over a conceded period often years or longer." *Parsons*, 580 A.2d at 1330.

Consistent with this Court's Local Civil Rule 83.2(d)(5), Ms. Powell's declaration in support of the motion for her to appear *pro hac vice* provides that she had not previously been admitted *pro hac vice* in this Court. Powell Decl. ¶ 7. Nor has Ms. Powell filed an appearance in the District of Columbia's courts since the *Flynn* litigation. Powell Decl. ¶ 7. As such, Smartmatic cannot meet either of the first two "plus factors" under subsection (a)(4) for Ms. Powell's litigation practice.

For similar reasons, and regardless of whether the first or second plus factors reach her litigation practice, Ms. Powell's occasional media statements from within the District do not qualify as sufficiently continuous contacts under the first and second plus factors:

> [O]n at least three occasions in 2015, Browder appeared at events in the District to promote Red Notice. But such appearances, on their own, are not sufficient to establish that Browder was "regularly" soliciting business in the District under the first plus factor.

*Akhmetshin*, 983 F.3d at 557; *cf. Lewy v. Southern Poverty Law Ctr., Inc.*, 723 F. Supp. 2d 116, 124 (D.D.C. 2010) (occasional travel to District is not a persistent course of conduct); *The Urban Inst. v. FINCON Servs.*, 681 F. Supp. 2d 41, 48 (D.D.C. 2010) ("three trips for meetings at which no business was successfully conducted do not rise to the requisite level"). If subsection (a)(4) applies at all, it must apply via the third plus factor.

40

Under that third factor, Ms. Powell did not receive substantial revenue for services rendered in the District. The third plus factor requires "substantial revenue from goods used or consumed, or services rendered, in the District of Columbia." D.C. CODE § 13-423(a)(4). Because Ms. Powell was not compensated for her election-related media contacts in the District, Powell Decl. ¶ 18, the only basis for finding revenue—substantial or otherwise—would be her representation of Gen. Flynn. Ms. Powell had local counsel to handle e-filing, and most hearings were conducted via Zoom because of the COVID pandemic. Powell Decl. ¶ 9. Consequently, Ms. Powell rendered very little service that was actually *in the District of Columbia*. D.C. CODE § 13-423(a)(4). In addition, Ms. Powell charged Gen. Flynn a highly discounted rate based on his status as a retired military officer, making her overall revenue for services in the District less than $10,000. Powell Decl. ¶ 12. But even if the third plus factor were met, the Flynn still would need to—and does not—satisfy the relatedness criterion in *Ford*, 141 S.Ct. at 1028; *Akhmetshin*, 2022 WL 1670987, at *5 n.6. There is no connection or "relatedness."

## VII.        VENUE IS IMPROPER.

Under 28 U.S.C. § 1391(b), venue is proper in a defamation case against one nonresident defendant only if "a substantial part of the events or omissions giving rise to the claim occurred" in the district. 28 U.S.C. § 1391(b)(2).[25] That standard is not satisfied by Smartmatic's complaint.

A substantial part of Smartmatic's alleged nationwide "disinformation campaign" did not occur in the District. The complaint alleges that a significant portion of the allegedly defamatory and injuriously false actions occurred elsewhere. *See* Compl. ¶ 116(a)-116(qq) (media contacts,

---

[25] The other clauses of 28 U.S.C. § 1391(b) are inapposite because Ms. Powell does not reside in the District, 28 U.S.C. § 1391(b)(1), and the catchall provision for "any judicial district in which any defendant is subject to the court's personal jurisdiction" applies only "if there is no district in which an action may otherwise be brought." 28 U.S.C. § 1391(b)(3).

including 39 not alleged to be from the District). Indeed, the contacts that Smartmatic occurred in the District between November 14-16, 2020, actually occurred in Virginia. Powell Decl. ¶ 19. At bottom, Ms. Powell engaged in a *litigation* campaign involving suits in Wisconsin, Pennsylvania, Georgia, and Michigan.

The few media statements made by Ms. Powell in the District do not qualify as the "substantial part" required by § 1391(b)(2) for two reasons: (1) the litigation was the main issue, and it occurred elsewhere; and (2) the media coverage of the litigation occurred primarily outside the District, so Ms. Powell's few media statements that occurred in the District were not a "substantial part" of even the media coverage, much less of the overall election challenges.

Assessing whether a defendant's action or inaction form the "substantial part of the events or omissions giving rise to the claim" required for proper venue under 28 U.S.C. § 1391(b)(2) requires a "commonsense appraisal" of the "events having operative significance in the case." *Lamont v. Haig*, 590 F.2d 1124, at 1134 (D.C. Cir. 1978); *Exelon Generation Co. v. Grumbles*, 380 F.Supp.3d 1, 11 (D.D.C. 2019) (same, quoting *Lamont*). This substantial-part test means a district where "'a considerable portion of the events took place.'" *E.V. v. Robinson*, 200 F.Supp.3d 108, 113 & n.2 (D.D.C. 2016) (quoting *Perlmutter v. Varone*, 59 F.Supp.3d 107, 110 (D.D.C. 2014)); *see also Exelon Generation Co., LLC v. Grumbles*, 380 F.Supp.3d 1, 13 (D.D.C. 2019) ("this Court must only decide whether a 'substantial part of the events giving rise to the claim occurred' in the District of Columbia for venue to be proper here").

Here, Smartmatic's alleged injuries would be the same from the 2020 election litigation and media coverage, regardless of whether she ever set foot in the District of Columbia. In other words, the four District-based media interviews that Smartmatic alleges are not "substantial" *vis-à-vis* the 39 non-District media appearances admitted by Smartmatic plus the election litigation

outside the District. Indeed, only two of the media events actually occurred in the District, Powell

Decl. ¶. But whether two or four, in no way did Ms. Powell's few media appearances from the

District—assuming *arguendo* that they even count for purposes of venue—constitute a "substantial

part of the events or omissions giving rise to the claim" as required for proper venue under 28

U.S.C. § 1391(b)(2).

## CONCLUSION

For all the foregoing reasons, Defendant Sidney Powell respectfully requests that the

Complaint be dismissed.

Dated: June 3, 2022                                    Respectfully submitted,


                                                        /s/ Lawrence J. Joseph
Michael J. Tricarico, admitted *pro hac vice*          Marc Casarino, admitted *pro hac vice*
Kennedys CMK LLP                                       Kennedys CMK LLP
570 Lexington Avenue, 8th Floor                        919 N. Market Street, Suite 1550
New York, New York 10022                               Wilmington, DE 19801
Tel: (646) 625-3952                                    Tel: 302-308-6647
Email: Michael.tricarico@kennedyslaw.com               Email: marc.casarino@kennedyslaw.com

Joshua A. Mooney DC Bar No. 471866                     Lawrence J. Joseph, DC Bar No. 464777
Kennedys CMK LLP                                       Law Office of Lawrence J. Joseph
1600 Market Street, Suite 1410                         1250 Connecticut Ave, NW, Suite 700-1A
Philadelphia, PA 19103                                 Washington, DC 20036
Tel: 267-479-6700                                      Tel: 202-355-9452
Email: Joshua.Mooney@kennedyslaw.com                   Fax: 202-318-2254
                                                       Email: ljoseph@larryjoseph.com

                                                       *Counsel for Defendant Sidney Powell*