**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| SMARTMATIC USA CORP., SMARTMATIC INTERNATIONAL HOLDING B.V., and SGO CORPORATION LIMITED, | ) ) ) ) ) | Case No. 21-cv-02995-CJN |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| SIDNEY POWELL, | ) ) | |
| Defendant. | ) ) | |

**SMARTMATIC'S OPPOSITION TO**
**DEFENDANT SIDNEY POWELL'S MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... iii

INTRODUCTION ............................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND.......................................................... 2

ARGUMENT ...................................................................................................................... 6

I.      The District of Columbia Is a Proper Forum for Smartmatic's Lawsuit. ........................... 6

        A.      Powell is subject to personal jurisdiction in the District of
                Columbia................................................................................................................ 7

                1.      Legal standard. ............................................................................................ 7

                2.      The Court has already asserted jurisdiction over Powell
                        based on substantially similar allegations.................................................. 8

                3.      The Court has jurisdiction over Powell because she
                        transacted business in the District of Columbia........................................ 9

                4.      This Court has jurisdiction over Powell because she caused
                        tortious injury in the District of Columbia................................................ 15

                        a.      Jurisdiction is proper under Section 13-423(a)(3). ...................... 15

                        b.      Jurisdiction is proper under Section 13-423(a)(4). ...................... 17

                        c.      Jurisdiction is proper under the Due Process Clause. ................... 19

        B.      Venue is proper in the District of Columbia. ....................................................... 20

II.     Smartmatic's Complaint Complies with the Pleading Standards Provided
        in the Federal Rules of Civil Procedure. ........................................................................... 21

        A.      Smartmatic's complaint complies with Rule 8 of the Federal Rules
                of Civil Procedure. ............................................................................................... 21

        B.      The Court should deny Powell's Motion To Strike pursuant to Rule
                12(f)........................................................................................................................ 25

III.    Smartmatic B.V. and SGO Have Standing To Sue Powell............................................... 27

        A.      Smartmatic B.V. and SGO were independently harmed by
                Powell's statements............................................................................................... 27

        B.      Powell's reliance on the NY Suit is untenable...................................................... 30

IV.     Powell's Arguments Regarding the Merits of Smartmatic's Claims Fail......................... 32

        A.      Legal standard. ...................................................................................................... 32

        B.      District of Columbia law applies by default. ....................................................... 33

        C.      The "single publication" rule does not bar Smartmatic's injurious
                falsehood claims.................................................................................................... 34

1.      Smartmatic can plead defamation and injurious falsehood claims in the alternative. .......................................................... 34

2.      Powell's Florida cases are inapposite. ....................................... 36

D.      Smartmatic has adequately pleaded special damages in support of its injurious falsehood claims ................................................................. 38

1.      Counts II–V and VII are not injurious falsehood claims "dressed" as defamation claims. ............................................. 39

2.      Smartmatic has sufficiently alleged special damages. ............................. 41

E.      Smartmatic sufficiently alleges claims in Counts II, IV, VIII, and X. .............................................................................................. 42

CONCLUSION ........................................................................................... 43

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3M Co. v. Boulter*,
  842 F. Supp. 2d 85 (D.D.C. 2012) ..............................................................................43

*Abbas v. Foreign Policy Grp., LLC*,
  783 F.3d 1328 (D.C. Cir. 2015) ................................................................................34

*Achagzai v. Broadcasting Board of Governors*,
  109 F. Supp. 3d 67 (D.D.C. 2015) ............................................................................23

*Akbar v. N.Y. Magazine Co.*,
  490 F. Supp. 60 (D.D.C. 1980) ..................................................................................21

*Akhmetshin v. Browder*,
  275 A.3d 290 (D.C. 2022) ..........................................................................................13

*Akhmetshin v. Browder*,
  983 F.3d 542 (D.C. Cir. 2020) ...................................................................................19

*\*Associated Producers, Ltd. v. Vanderbilt Univ.*,
  76 F. Supp. 3d 154 (D.D.C. 2014) .......................................................................10, 12

*Atlas Brew Works, LLC v. Barr*,
  391 F. Supp. 3d 6 (D.D.C. 2019) ...............................................................................32

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...............................................................................................32, 33

*Benz v. Wash. Newspaper Publ'g Co., LLC*,
  2006 WL 2844896 (D.D.C. Sep. 29, 2006) ...............................................................36

*Bhatt v. Hoffman*,
  716 F. App'x 124 (3d Cir. 2017) ...............................................................................23

*Bigelow v. Garrett*,
  299 F. Supp. 3d 34 (D.D.C. 2018) .............................................................................12

*Bledsoe v. Crowley*,
  849 F.2d 639 (D.C. Cir. 1988) ...................................................................................33

*Blumenthal v. Drudge*,
  992 F. Supp. 44 (D.D.C. 1998) .............................................................................17, 18

*Brown v. Broad. Bd. of Governors*,
   2009 WL 2704586 (D.D.C. 2009) ........................................................................25

*Browning v. Clinton*,
   292 F.3d 235 (D.C. Cir. 2002) ............................................................................41

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985).............................................................................................19

*Burke v. Air Serv Int'l, Inc.*,
   685 F.3d 1102 (D.C. Cir. 2012) ..........................................................................35

*Callaway Land & Cattle Co., Inc. v. Banyon Lakes C. Corp.*,
   831 So. 2d 204 (Fla. 2002)............................................................................37, 38

*Chandler v. Berlin*,
   998 F.3d 965 (D.C. Cir. 2021) ............................................................................25

*\*Ciralsky v. CIA*,
   355 F.3d 661 (D.C. Cir. 2004) ......................................................................22, 23

*Cobb v. Washington Metro. Area Transit Auth.*,
   2021 WL 2935891 (D.D.C. July 13, 2021)....................................................35, 36

*Cobell v. Norton*,
   2003 WL 721477 (D.D.C. Mar. 3, 2003) .......................................................25, 27

*Companhia Brasileira Carbureto De Calcio v. Applied Indus. Materials Corp.*,
   35 A.3d 1127 (D.C. 2012) ...................................................................................14

*Crane v. Carr*,
   814 F.2d 758 (D.C. Cir. 1987) ............................................................................17

*Crane v. N.Y. Zoological Soc'y*,
   894 F.2d 454 (D.C. Cir. 1990) ..............................................................................8

*Edmond v. U.S. Postal Serv. Gen. Counsel*,
   949 F.2d 415 (D.C. Cir. 1991) ..............................................................................8

*Eli Lilly & Co. v. Home Ins. Co.*,
   764 F.2d 876 (D.C. Cir. 1985) ............................................................................33

*Eng'd Framing Sys. v. Vescom Structures, Inc.*,
   2005 WL 8174971 (D.N.J. Nov. 1, 2005) ...........................................................40

*Exelon Generation Co. v. Grumbles*,
   380 F. Supp. 3d 1 (D.D.C. 2019)........................................................................20

*Fin. Info. Techs., Inc. v. iControl Sys., USA, LLC*,
   2018 WL 3391379 (M.D. Fla. June 12, 2018) ...................................................... 36

*Fiorentine v. Sarton P.R., LLC*,
   486 F. Supp. 3d 377 (D.D.C. 2020) .................................................................... 12

*Fisher v. Bander*,
   519 A.2d 162 (D.C. 1986) .................................................................................. 19

*Fling v. Martin*,
   2020 WL 4569335 (D.D.C. Aug. 7, 2020) (Nichols, J.) .................................. 42, 43

*Fridman v. Bean LLC*,
   2019 WL 231751 (D.D.C. Jan. 15, 2019) ....................................................... 40, 41

*Fridovich v. Fridovich*,
   598 So. 2d 65 (Fla. 1992) .................................................................................. 37

*Gertz v. Robert Welch, Inc.*,
   418 U.S. 323 (1974) .......................................................................................... 14

*Glob. Truss Am. LLC v. GLP German Light Prods.*,
   2011 WL 13220296 (C.D. Cal. Dec. 1, 2011) ...................................................... 39

*Golden Palace, Inc. v. Nat'l Broad. Co.*,
   386 F. Supp. 107 (D.D.C. 1974), *aff'd*, 530 F.2d 1094 (D.C. Cir. 1976) .............. 33

*GTE New Media Servs. Inc. v. BellSouth Corp.*,
   199 F.3d 1343 (D.C. Cir. 2000) ..................................................................... 8, 19

*Harrington v. Batchelor*,
   781 So. 2d 1135 (Fla. Ct. App. 2001) ................................................................ 30

*Hatfill v. Foster*,
   401 F. Supp. 2d 320 (S.D.N.Y. 2005) ................................................................ 36

*Hatfill v. Foster*,
   415 F. Supp. 2d 353 (S.D.N.Y. 2006) ................................................................ 36

*Holder v. Haarmann & Reimer Corp.*,
   779 A.2d 264 (D.C. 2001) ................................................................................... 9

*Holy Land Found. for Relief & Dev. v. Ashcroft*,
   333 F.3d 156 (D.C. Cir. 2003) ........................................................................... 32

*Howser v. Pearson*,
   95 F. Supp. 936 (D.D.C. 1951) .......................................................................... 15

*IMAPizza, LLC v. At Pizza Ltd.*,
   334 F. Supp. 3d 95 (D.D.C. 2018) ...........................................................................10, 11, 12

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945) ...........................................................................................................19

*Inv. Co. Inst. v. United States*,
   550 F. Supp. 1213 (D.D.C. 1982) ......................................................................................14

*Jews for Jesus, Inc. v. Rapp*,
   997 So. 2d 1098 (Fla. 2008) ..............................................................................................33

*Johns v. Rozet*,
   770 F. Supp. 11 (D.D.C. 1991) ....................................................................................13, 14

*Johnson v. Panetta*,
   953 F. Supp. 2d 244 (D.D.C. 2013) ...................................................................................42

*Jung v. Ass'n of Am. Med. Colleges*,
   300 F. Supp. 2d 119 (D.D.C. 2004) ...................................................................................14

*United States ex rel. K & R Ltd. P'ship v. Mass. Hous. Fin. Agency*,
   456 F. Supp. 2d 46 (D.D.C. 2006) .....................................................................................25

*Keeton v. Hustler Magazine, Inc.*,
   465 U.S. 770 (1984) ...........................................................................................................17

*Lapointe v. Van Note*,
   2004 WL 3609346 (D.D.C. Nov. 9, 2004) ........................................................................16

*Leavitt v. Cole*,
   291 F. Supp. 2d 1338 (M.D. Fla. 2003) .............................................................................33

*Lewy v. S. Poverty Law Ctr., Inc.*,
   723 F. Supp. 2d 116 (D.D.C. 2010) ..............................................................................17, 18

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ...........................................................................................................27

*Lynch v. Shopko Stores Operating Co., LLC*,
   2007 WL 4358335 (E.D. Wisc. Dec. 11, 2007) .................................................................23

*Mackie v. Awtry*,
   2016 WL 5391182 (N.D. Ill. Sep. 27, 2016) .....................................................................39

*Manifold v. Wolf Coach, Inc.*,
   231 F. Supp. 2d 58 (D.D.C. 2002) .....................................................................................12

*Margolis v. U-Haul Int'l, Inc.*,
  818 F. Supp. 2d 91 (D.D.C. 2011) ......................................................................33

*Maynard v. Melton*,
  2021 WL 6845008 (D.D.C. Apr. 7, 2021) ................................................22, 23, 25

*McNamara v. Picken*,
  950 F. Supp. 2d 125 (D.D.C. 2013) ....................................................................35

*MCO Airport Concessions, LLC v. Greater Orlando Aviation Auth.*,
  2012 WL 12896558 (M.D. Fla. Feb. 14, 2012) ...................................................30

*Middlebrooks v. St. Coletta of Greater Wash.*,
  2009 WL 3163061 (D.D.C. Sep. 30, 2009) .....................................................23, 25

*Morgan v. Richmond Sch. of Health & Tech., Inc.*,
  857 F. Supp. 2d 104 (D.D.C. 2012) ....................................................................13

*Mwani v. bin Laden*,
  417 F.3d 1 (D.C. Cir. 2005) ..................................................................................8

*Navab-Safavi v. Broad. Bd. of Governors*,
  650 F. Supp. 2d 40 (D.D.C. 2009) ......................................................................16

*Nunes v. WP Co. LLC*,
  2021 WL 3550896 (D.D.C. Aug. 11, 2021) ....................................................39, 43

*Odom v. District of Columbia*,
  248 F. Supp. 3d 260 (D.D.C. 2017) ................................................................35, 36

*Oparaugo v. Watts*,
  884 A.2d 63 (D.C. 2005) ................................................................................33, 39

*Orlando Sports Stadium, Inc. v. Sentinel Star Co.*,
  316 So. 2d 607 (Fla. Dist. Ct. App. 1975) ..........................................................37

*Ovadia v. Bloom*,
  756 So. 2d 137 (Fla. Dist. Ct. App. 2000) ..........................................................37

*Owens v. Republic of Sudan*,
  826 F. Supp. 2d 128 (D.D.C. 2011) ....................................................................34

*Parnigoni v. St. Columba's Nursery Sch.*,
  681 F. Supp. 2d 1 (D.D.C. 2010) ........................................................................35

*Parsons v. Mains*,
  580 A.2d 1329 (D.C. 1990) ................................................................................19

*Patton Boggs, LLP v. Chevron Corp.*,
  791 F. Supp. 2d 13 (D.D.C. 2011), *aff'd*, 683 F.3d 397 (D.C. Cir. 2012)..............................26

*Peacock v. District of Columbia*,
  682 F.3d 77 (D.C. Cir. 2012) ..................................................................................................27

*Pendleton v. Mukasey*,
  552 F. Supp. 2d 14 (D.D.C. 2008) ..........................................................................................20

*Q Int'l Courier, Inc. v. Seagraves*,
  1999 WL 1027034 (D.D.C. Feb. 26, 1999) .............................................................................40

*Quality Air Servs., L.L.C. v. Milwaukee Valve Co.*,
  567 F. Supp. 2d 96 (D.D.C. 2008) ..........................................................................................10

*Robertson v. McCloskey*,
  680 F. Supp. 414 (D.D.C. 1988) .............................................................................................41

*Roemer v. Comm'r*,
  716 F.2d 693 (9th Cir. 1983) ..................................................................................................39

*Rose v. Silver*,
  394 A.2d 1368 (D.C. 1978) ..............................................................................................13, 14

*Rundquist v. Vapiano SE*,
  798 F. Supp. 2d 102 (D.D.C. 2011) ........................................................................................12

*Rushing v. U.S. Soc. Sec. Admin.*,
  2021 U.S. Dist. LEXIS 150058 (D.D.C. Aug. 4, 2021) ...........................................................22

*Samuel v. Wells Fargo & Co.*,
  311 F. Supp. 3d 10 (D.D.C. 2018) ..........................................................................................37

*Sec. Indus. & Fin. Mkts. Ass'n v. U.S. Commodity Futures Trading Comm'n*,
  67 F. Supp. 3d 373 (D.D.C. 2014) ..........................................................................................30

*Sheraton Operating Corp. v. Just Corp. Travel*,
  984 F. Supp. 22 (D.D.C. 1997) ...............................................................................................21

*Shoen v. Washington Post*,
  246 F.2d 670 (D.C. Cir. 1957) ................................................................................................42

*Shoppers Food Warehouse v. Moreno*,
  746 A.2d 320 (D.C. 2000) ...................................................................................10, 11, 12, 20

*Smartmatic USA Corp., et al. v. Fox Corp., et al.*,
  No. 151136/2021..............................................................................................................2, 3, 31

viii

*Smartmatic USA Corp. v. Herring Networks, Inc.*,
  2022 WL 2208913 (D.D.C. June 21, 2022) ....................................................................15, 17

*Solers, Inc. v. Doe*,
  977 A.2d 941 (D.C. 2009) ...........................................................................................16

*Stanbury Law Firm v. I.R.S.*,
  221 F.3d 1059 (8th Cir. 2000) ....................................................................................26

*Stovell v. James*,
  965 F. Supp. 2d 97 (D.D.C. 2013) ..............................................................................37

*Swedberg v. Goldfinger's S., Inc.*,
  2022 WL 791024 (Fla. Dist. Ct. App. 2022) ..............................................................37

*\*T.M. v. District of Columbia*,
  961 F. Supp. 2d 169 (D.D.C. 2013) .......................................................................23, 25

*Terrell v. Mr. Cooper Group, Inc.*,
  2021 WL 2778542 (D.D.C. July 2, 2021)....................................................................23

*Thayer/Patricof Educ. Funding v. Pryor Res. Inc.*,
  196 F. Supp. 2d 21 (D.D.C. 2002)...............................................................................21

*Trump v. Comm. on Ways & Means*,
  415 F. Supp. 3d 98 (D.D.C. 2019)..................................................................................7

*U.S. Dominion, Inc., et al. v. Powell, et al.*,
  No. 21-cv-00040 (D.D.C. filed Jan. 8, 2021) .......................................1, 15, 20, 43

*United Therapeutics Corp. v. Vanderbilt Univ.*,
  278 F. Supp. 3d 407 (D.D.C. 2017) ............................................................................14

*Urban Inst. v. FINCON Servs.*,
  681 F. Supp. 2d 41 (D.D.C. 2010) ..............................................................................18

*US Dominion, Inc. v. Byrne*,
  2022 WL 1165935 (D.D.C. Apr. 20, 2022) ................................................................24

*US Dominion, Inc. v. MyPillow, Inc.*,
  2022 WL 1597420 (D.D.C. May 19, 2022) ................................................................33

*\*US Dominion, Inc. v. Powell*,
  554 F. Supp. 3d 42 (D.D.C. 2021)....................................................................... *passim*

*Washington Tennis & Educ. Found., Inc. v. Clark Nexsen, Inc.*,
  270 F. Supp. 3d 158 (D.D.C. 2017) ............................................................................30

*Westfahl v. District of Columbia*,
 75 F. Supp. 3d 365 (D.D.C. 2014) ......................................................................40

*\*Weyrich v. New Republic, Inc.*,
 235 F.3d 617 (D.C. Cir. 2001) ......................................................................35, 36

*White v. Fraternal Order of Police*,
 909 F.2d 512 (D.C. Cir. 1990) ..........................................................................39

*Williams v. Chu*,
 2010 WL 11575517 (D.D.C. Sep. 30, 2010) ..................................................25, 26

*Witherspoon v. Philip Morris, Inc.*,
 964 F. Supp. 455 (D.D.C. 1997) ........................................................................26

*World Wide Minerals Ltd. v. Republic of Kazakhstahn*,
 116 F. Supp. 2d 98 (D.D.C. 2000) ....................................................................14

*World-Wide Volkswagen Corp. v. Woodson*,
 444 U.S. 286 (1980) ........................................................................................19

*Wormley v. United States*,
 601 F. Supp. 2d 27 (D.D.C. 2009) ................................................................16, 17

*\*Zimmerman v. Al Jazeera Am., LLC*,
 246 F. Supp. 3d 257 (D.D.C. 2017) ..............................................................24, 26

**Statutes**

28 U.S.C. § 1391(b) ..............................................................................................20

D.C. Code § 13-423(a) ..........................................................................................15

D.C. Code § 13-423(a)(1) ..........................................................................7, 8, 9, 12

D.C. Code § 13-423(a)(3) ........................................................................7, 8, 15, 16

D.C. Code § 13-423(a)(4) ............................................................................7, 8, 15

**Other Authorities**

5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1217
 (4th ed. 2008) ..................................................................................................23

Fed. R. Civ. P. 4(k)(1)(A) ........................................................................................7

Fed. R. Civ. P. 8 ..............................................................................................*passim*

Fed. R. Civ. P. 8(a) ................................................................................................21

Fed. R. Civ. P. 8(d)(2)................................................................................................34, 35

Fed. R. Civ. P. 12.......................................................................................................21

Fed. R. Civ. P. 12(b)(6)..............................................................................................32

Fed. R. Civ. P. 12(f)...................................................................................................25

## INTRODUCTION

Defendant Sidney Powell concedes that Smartmatic[1] has sufficiently pleaded substantially every element of its defamation claims against her.  She does not dispute that Smartmatic sufficiently alleged that she falsely stated to hundreds of millions of people that Smartmatic rigged the 2020 U.S. presidential election in favor of President Joseph R. Biden.  She does not dispute that Smartmatic sufficiently alleged that she knew her lies about Smartmatic were false when she made them, *i.e.*, that she acted with actual malice.  Nor does she argue that Smartmatic failed to adequately plead that she caused it to suffer damages.  In short, Powell all but concedes that Smartmatic can proceed to discovery on its claims that she attempted to subvert the outcome of the 2020 election by destroying Smartmatic's reputation.

Unable to attack Smartmatic's complaint on its merits, Powell falls back on a series of meritless procedural arguments, including several that this Court already rejected in Dominion's lawsuit against her.[2]  For example, she attempts to evade this Court's jurisdiction (again) even though she chose the District of Columbia as the epicenter of her multi-platform disinformation campaign in which she defamed Smartmatic.  The backdrop of the Capitol gave credibility to her false claims that the 2020 election had been stolen from former President Trump and that Smartmatic was the culprit.  Thus, in live press conferences within the District, and during media appearances in which Powell was either in the District or purporting to be in the District, Powell told the world that Smartmatic had conspired with others to undermine the results of a U.S.

---

[1] "Smartmatic" refers to Plaintiffs Smartmatic USA Corp., Smartmatic International Holding B.V., and SGO Corporation Limited, collectively.

[2] "Dominion" refers to US Dominion, Inc., Dominion Voting Systems, Inc., and Dominion Voting Systems Corp., collectively, and the "Dominion Suit" refers to *U.S. Dominion, Inc., et al. v. Powell, et al.*, No. 21-cv-00040 (D.D.C. filed Jan. 8, 2021).

presidential election.  Powell cannot reasonably claim that a District of Columbia court lacks authority to hold her accountable for her misconduct.

Powell's other arguments fare no better.  She attempts to strip Smartmatic's complaint of all allegations that mention her partners in her disinformation campaign, Rudolph Giuliani and Fox News ("Fox").  Powell's argument fails, though, because Smartmatic's complaint clearly put her on fair notice of its claims.  Indeed, it was so thorough that Powell ostensibly determined that any challenge to the merits of Smartmatic's defamation claims would be futile.  Smartmatic's allegations related to Giuliani and Fox are also relevant because, among other reasons, they establish that Powell, Giuliani, and Fox, worked together to fabricate their false narrative regarding Smartmatic, which is evidence of Powell's actual malice.  The Court should, thus, reject Powell's attempt to distance herself from the actors who assisted her.

Finally, Powell's few substantive challenges to Smartmatic's claims fail.  She argues, for example, that Smartmatic has not adequately pleaded special damages in support of its injurious falsehood claims.  Even a cursory review of Smartmatic's complaint, however, reveals that it alleged it suffered various forms of pecuniary harm that this Court already recognized as sufficient in Dominion's lawsuit.  None of Powell's arguments have any merit, and the Court should allow Smartmatic's case to proceed to discovery.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 4, 2021, Smartmatic sued Fox Corporation, Fox News Network LLC, Lou Dobbs, Maria Bartiromo, Jeanine Pirro, Rudolph Giuliani, and Sidney Powell in the Supreme Court of the State of New York.  *See Smartmatic USA Corp., et al. v. Fox Corp., et al.*, No. 151136/2021 ("NY Suit").  Powell moved to dismiss that complaint on the basis that the New York court lacked personal jurisdiction over her.  *See* **Ex. A**, Powell Mem. of Law in NY Suit,

NYSCEF No. 290 (filed Apr. 8, 2021).[3]  Smartmatic also filed suit against Powell in this Court in case the NY Suit court determined it did not have personal jurisdiction over her.  On March 8, 2022, the court granted Powell's motion to dismiss for lack of personal jurisdiction.

Antonio Mugica and Roger Piñate founded Smartmatic in 2000 in Florida.  *See* Compl. & Demand for Jury Trial, ECF No. 1 ("Compl.") ¶ 22.  After observing the "hanging chad" debacle of the 2000 U.S. election, they wanted to bring secure technology to elections and build an election technology company that could ensure accuracy, transparency, and auditability.  *Id.* ¶ 23.  They dedicated the next 20 years of their lives to that endeavor and were successful.  *Id.* ¶¶ 24, 29–43.  Smartmatic has processed more than 5 billion votes in more than 25 countries on five continents.  *Id.* ¶ 24.  Smartmatic has never had a security breach.  *Id.* ¶ 44.  Each of the elections using Smartmatic's technology included an auditable paper trail that demonstrates they were not rigged, hacked, or stolen.  *Id.*  As a result of these efforts, Smartmatic became known as one of the best election technology companies in the world.  *Id.* ¶ 47.

2020 was the most important year in Smartmatic's history.  Despite its many successes, Smartmatic had not played a major role in local, state, or federal elections in the United States.  *Id.* ¶¶ 29–47.  That was about to change.  In June 2018, Los Angeles County selected Smartmatic as its partner to develop Voting Solutions for All People.  *Id.* ¶ 48.  Success in Los Angeles County with that initiative positioned Smartmatic to market its election technology to other counties and states in the United States (and across the world) who were inclined to follow Los Angeles County's lead.  *Id.*  And it was a success.  Smartmatic provided election technology and support to Los Angeles County during the 2020 election without incident.  *Id.* ¶ 59.  The results in Los Angeles County were secure, reliable, and auditable.  *Id.*

---

[3] All exhibits referenced herein are attached to the Declaration of Attorney Lauren C. Tortorella, filed contemporaneously with these papers.

Joe Biden and Kamala Harris won the 2020 U.S. presidential election.   Compl. ¶ 65. This was a disappointment for the 74 million people who voted for and supported President Trump.   *Id.*   Powell saw an opportunity in their disappointment.   *Id.* ¶ 72.   Shortly after the election, she decided to join forces with Giuliani to spread a story that the 2020 election had been rigged and stolen from President Trump.   *Id.* ¶¶ 72, 75.   They also decided that their story would involve the fraudulent manipulation of election technology.   *Id.* ¶ 76.   Ultimately, they decided that Smartmatic and Dominion would serve as the villains in their story.   *Id.*   They launched a disinformation campaign centered on Smartmatic and Dominion, partnering with Fox News and other conservative media outlets to spread false information and sow doubt about the 2020 presidential election results.   *Id.* at ¶¶ 72–128.   This disinformation campaign would go on to irreparably harm the reputations of Smartmatic and its election technology and software.   *Id.* ¶¶ 366–380.

Often speaking from hotels and other locations within the District of Columbia, Powell asserted the following statements, among many others, in which she defamed Smartmatic:

- "I am working on the massive aspect of **system wide election fraud**, definitely impacting the swing states and likely going far beyond that.   We're talking about the **alteration and changes in millions of votes**, some being dumped that were for President Trump, some being flipped that were for President Trump.   Computers being overwritten to ignore signatures.   **All kinds of different means of manipulating the Dominion and Smartmatic software, that of course, we would not expect Dominion and Smartmatic to admit**. . . ."   *Id.* ¶ 84, detailing November 14 appearance by Powell on *Justice with Judge Jeanine*, whereby Powell was interviewed, upon information and belief, in Washington, D.C.

- "And President Trump won by not just hundreds of thousands of votes, but by millions of votes that were shifted by this software that was designed expressly for that purpose.   We have sworn witness testimony of why the software was designed. It was designed to rig elections. . . **[T]his is a massive election fraud.   And I'm very concerned it involved not only Dominion and its Smartmatic software, but that the software essentially was used by other election machines also** . . . We've identified mathematically the exact algorithms they used and plan to use from the beginning to modify the votes in this case to make sure Biden won. . . ."   *Id.* ¶ 90, detailing

November 15 appearance by Powell on *Sunday Morning Futures with Maria Bartiromo*, whereby Powell was interviewed, upon information and belief, in Washington, D.C.

- "The software itself was created with so many variables and so many backdoors that can be hooked up to the Internet or a thumb drive stuck in it or whatever.  But one of its most characteristic features is its ability to flip votes.  ***It can set and run an algorithm that probably ran all over the country to take a certain percentage of votes from President Trump and flip them to President Biden***, which we might never have uncovered, had the votes for President Trump not been so overwhelming in so many of these states that it broke the algorithm that had been plugged into the system. . . ."  *Id.* ¶ 101, detailing November 19 press conference held by Powell and Giuliani in Washington, D.C.

- "[T]hey designed and develop[ed] the Smartmatic and Dominion programs and machines that include a controller module that allows people to log in and manipulate the votes even as it's happening.  We're finding more and more evidence of this.  ***We now have reams and reams of actual documents from Smartmatic and Dominion, including evidence that they planned and executed all of this*** . . . [W]e've known from early on in our independent investigation that the entire system was created for the benefit of Venezuela and Hugo Chávez to rig elections to make sure he continued winning.  And then it was passed onto Mr. Maduro to do the same."  *Id.* ¶ 109, detailing December 10 appearance by Powell on *Lou Dobbs Tonight*, whereby Powell was interviewed from a hotel room she rented in the Trump International Hotel in Washington, D.C.

In making these statements (and other statements set forth in the Complaint), Powell falsely stated and implied that: (1) Smartmatic's election technology and software were widely used in the 2020 election; (2) Dominion used Smartmatic's election technology and software during the 2020 election; (3) Smartmatic fixed, rigged, and stole the 2020 election for Joe Biden and Kamala Harris; (4) Smartmatic sent votes to foreign countries for tabulation during the 2020 election; (5) Smartmatic's election technology and software were compromised or hacked during the 2020 election; (6) Smartmatic was previously banned from providing election technology and software in the U.S.; (7) Smartmatic is a Venezuelan company founded and funded by corrupt dictators from socialist and communist countries; and (8) Smartmatic's election technology and software was designed to fix, rig, and steal elections.  *See* Compl. ¶¶ 129–199.  Powell knew that

she had no support for her statements, knew that her statements were false, and knew that her statements contradicted all credible evidence. *Id.* ¶¶ 200–365.

Smartmatic was not the only election technology company to file suit against Powell in this Court.  Dominion also filed a defamation suit against Powell in the District Court for the District of Columbia.  *See* **Ex. B**, Compl. filed in Dominion Suit.  Because this lawsuit and the Dominion Suit grow out of the same event—Powell's disinformation campaign—this case was designated as related to the Dominion Suit when it was filed.  *See* Notice of Designation of Related Civil Cases, ECF No. 3.

## ARGUMENT

Powell's arguments fall into four categories: (1) the District of Columbia is not a proper forum for Smartmatic's lawsuit because this Court does not have personal jurisdiction over her and venue is improper; (2) Smartmatic's complaint violates pleading rules in the Federal Rules of Civil Procedure because it alleges that she worked with Giuliani and Fox to concoct and disseminate her lies concerning Smartmatic; (3) plaintiffs Smartmatic International Holding B.V. ("Smartmatic B.V.") and SGO Corporation Limited ("SGO") do not have standing to sue Powell; and (4) some of Smartmatic's defamation and injurious falsehood claims suffer from various defects.  None of Powell's arguments have any merit.

## I.   The District of Columbia Is a Proper Forum for Smartmatic's Lawsuit.

Powell attempts to relitigate this Court's determinations in the Dominion Suit that it has jurisdiction over her and that venue is proper in the District of Columbia.  She claims that her *new* arguments compel a different result.  Mem. of Law in Supp. of Def. Sidney Powell's Mot. To Dismiss, ECF No. 23-2 ("Mem.") at 34.  They do not.  Smartmatic, like Dominion, has alleged that Powell selected the District of Columbia as the epicenter of her disinformation campaign in which she repeatedly represented to District residents and others that Smartmatic

engaged in a conspiracy to undermine the 2020 U.S. presidential election.  To execute her disinformation campaign, Powell traveled to the District of Columbia, stayed in hotels in the District, conducted media appearances in the District in which she defamed Smartmatic, and solicited donations from District residents to finance her efforts to undermine the election. Powell used the District to defame Smartmatic in front of influential elected officials, and the Court can now hold her accountable for her actions.

### A.      Powell is subject to personal jurisdiction in the District of Columbia.

The D.C. long-arm statute authorizes specific personal jurisdiction, in pertinent part, "over a person, who acts directly or by an agent, as to a claim for relief arising from the person's . . . (1) transacting any business in the District of Columbia . . . (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia . . . [or] (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he [i] regularly does or solicits business, [ii] engages in any other persistent course of conduct, or [iii] derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia[.]"  D.C. CODE § 13-423(a)(1), (3)–(4).  Although Smartmatic needs to satisfy only one of those prongs, *see id*., it has established that jurisdiction is proper under all three of them.

### 1.      Legal standard.

A federal court has jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."  FED. R. CIV. P. 4(k)(1)(A); *US Dominion, Inc. v. Powell*, 554 F. Supp. 3d 42, 65 (D.D.C. 2021) ("*Powell*").  If a District of Columbia court could exercise jurisdiction over Powell, then so can the Court.  *Trump v. Comm. on Ways & Means*, 415 F. Supp. 3d 98, 105 (D.D.C. 2019).  The Court "must engage in a two-part inquiry: . . . first examine whether jurisdiction is applicable under the [D.C.] long-

arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000) (citation omitted).

The plaintiff must make a "prima facie showing" of specific and pertinent jurisdictional facts. *Edmond v. U.S. Postal Serv. Gen. Counsel*, 949 F.2d 415, 424 (D.C. Cir. 1991). To establish a prima facie showing, "plaintiffs are not limited to evidence that meets the standards of admissibility required by the district court" and "may rest their argument on their pleadings, bolstered by such affidavits and other written materials as they can otherwise obtain." *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005). In determining whether the plaintiff has established a factual basis for the exercise of personal jurisdiction over the defendant, "factual discrepancies appearing in the record must be resolved in favor of the plaintiff." *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990).

### 2.    The Court has already asserted jurisdiction over Powell based on substantially similar allegations.

The Court has already examined allegations substantially similar to Smartmatic's in the Dominion Suit and determined that it has personal jurisdiction over Powell. *Powell*, 554 F. Supp. 3d at 66–67. It ruled that Powell "transacted business" in the District within the meaning of Section 13-423(a)(1) by traveling to the District, renting hotel rooms in the District, representing Michael Flynn in the District, and conducting interviews in which she made allegedly defamatory statements. *Id.* at 66. It similarly ruled that jurisdiction was proper under Sections 13-423(a)(3) and Sections 13-423(a)(4) because Powell caused tortious injury in the District. Specifically, it ruled that Dominion suffered injury in the District when Powell spoke there, noting that Powell allegedly defamed Dominion in the District because it "is where elected officials—some of whom have influence over decisions about elections and government

contracts—conduct their business, and it is where Powell could avail herself of audiences with President Trump and the Trump campaign." *Id.* at 67.

The Court has jurisdiction over Powell in this case for the same reasons. Smartmatic alleges that Powell defamed it through many of the same media appearances and public statements in the District that Dominion alleged in its complaint. *See* Compl. ¶¶ 16–18, 77, 84, 86, 90, 94, 101, 109, 363, 365. Likewise, it alleges that Powell rented hotel rooms in the District, and her representation of Michael Flynn—which was used to lend her credibility with viewers of her disinformation campaign—was based there. *Id.* at ¶¶ 94, 363. Further, Smartmatic, like Dominion, is a voting machine provider and thus has an interest in "maintaining its reputation with the federal government and the state governments that might be influenced by federal employees." *Powell*, 554 F. Supp. 3d at 67. Based on the similarities between the allegations in the Dominion Suit and this lawsuit, the Court clearly has jurisdiction over Powell.

### 3. The Court has jurisdiction over Powell because she transacted business in the District of Columbia.

Powell is subject to this Court's jurisdiction because, among other reasons discussed below, she transacted business in this District. *See* D.C. CODE § 13-423(a)(1). Section 13-423(a)(1) has been "interpreted to be coextensive with the Constitution's due process requirements." *Powell*, 554 F. Supp. 3d at 66 n.14 (quotation omitted). It authorizes jurisdiction where "the defendant has purposefully engaged in some type of commercial or business-related activity directed at District residents." *Holder v. Haarmann & Reimer Corp.*, 779 A.2d 264, 270–71 (D.C. 2001). It also covers "business transactions" in the everyday sense of commercial deal-making activities, such as advertising, operating office space, and performing contracts. *Powell*, 554 F. Supp. 3d at 66; *see also Quality Air Servs., L.L.C. v. Milwaukee Valve Co.*, 567 F. Supp. 2d 96, 100 (D.D.C. 2008) (noting that "a single act may be sufficient to constitute

transacting business, so long as that contact is voluntary and deliberate, rather than fortuitous")
(quotation omitted); *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 331 (D.C. 2000)
("Even a small amount of in-jurisdiction business activity is generally enough to permit the
conclusion that a nonresident defendant has transacted business here.") (internal citation and
quotation omitted).

Smartmatic alleges numerous instances in which Powell transacted business in the
District for purposes of her disinformation campaign.  *First*, Powell engaged in traditional
transactions, including traveling to the District and renting hotel rooms in it, where she addressed
District citizens and made on-air appearances in which she defamed Smartmatic for her own
pecuniary, political, and personal gain.  Compl. ¶¶ 16–18, 77, 84, 86, 90, 101, 109, 365.  For
example, Powell participated in a press conference held at the Republican National Committee
headquarters in Washington, D.C. on November 19, where she made false statements about
Smartmatic.  Compl. ¶ 101.  Similarly, Powell defamed Smartmatic in interviews from the
District, including December 10, 2020 (*see* Ex. A to Mot. To Dismiss, Decl. of Sidney Powell,
ECF No. 23-3 ("Powell Decl.") ¶ 20) and December 12, 2020 interviews on *Lou Dobbs Tonight*.
Compl. ¶ 109.  Those contacts with the District are more than sufficient to establish a
"discernible relationship" between Powell and this forum.  *See IMAPizza, LLC v. At Pizza Ltd.*,
334 F. Supp. 3d 95, 110 (D.D.C. 2018) (collecting cases) ("business transactions" include
meetings and engaging in legal representation in the District); *Associated Producers, Ltd. v.
Vanderbilt Univ.*, 76 F. Supp. 3d 154, 165 (D.D.C. 2014) (asserting jurisdiction over defendant
who transacted business in the District in connection with defamation campaign).

*Second*, Powell provided legal representation to Michael Flynn in the District Court for
the District of Columbia.  Compl. ¶¶ 17, 94, 363.  Powell argues that her representation of Flynn

was "constitutionally irrelevant" because it is not related to the "election-related claims alleged by Smartmatic." Mem. at 32–33. That is false. Powell, and the reporters who introduced her, touted her representation of Flynn in the District of Columbia to add credibility to her defamatory statements and her disinformation campaign, generally. *See* Compl. ¶¶ 94, 363; *see also Powell*, 554 F. Supp. 3d at 66–67 (asserting personal jurisdiction over Powell, in part, because "her representation of Michael Flynn occurred here").

*Third*, in connection with her disinformation campaign against Smartmatic, Powell solicited donations from District of Columbia residents and promoted her website, which she uses to sell books and t-shirts. Compl. ¶¶ 17, 77, 86, 125(s), 365; *see also, e.g.*, *Shoppers Food Warehouse*, 746 A.2d at 331 (jurisdiction established based on advertising in the District); *IMAPizza*, 334 F. Supp. 3d at 111 (jurisdiction established based on travel to District for market research). Those transactions were all aimed at raising money from Trump supporters so she could continue to defame Smartmatic and attempt to subvert the results of the 2020 U.S. presidential election. Compl. ¶¶ 361–365. She even solicited donations and promoted her websites while present in the District or purporting to be present in the District. Compl. ¶¶ 84–86, 125(s).[4]

Powell argues that she is not an "agent" of the websites she promoted (Mem. at 34–35), but her argument is irrelevant because she directed traffic from District residents to those websites to serve her own causes and she represented that she was affiliated with them. Compl. ¶¶ 86, 125(s), 365; *see also Shoppers Food Warehouse*, 746 A.2d at 331. Her argument that "mere accessibility" of her law firm's website in the District of Columbia does not establish

---

[4] To the extent the Court determines that Smartmatic has not sufficiently pleaded that jurisdiction over Powell is proper, Smartmatic requests leave to either replead or take jurisdictional discovery regarding Powell's contacts with the District of Columbia during her disinformation campaign.

jurisdiction (Mem. at 37) is similarly misplaced because it ignores that: (1) she perpetuated her disinformation campaign in the District through her fundraising efforts; and (2) the maintenance of a website available in the District can support jurisdiction where, as here, other relevant contacts exist.  *See Manifold v. Wolf Coach, Inc.*, 231 F. Supp. 2d 58, 62 (D.D.C. 2002).[5]

Powell asserts two additional arguments to evade this Court's jurisdiction under Section 13-423(a)(1), but both are misplaced.  *First*, she argues that her contacts and transactions, "*by themselves*, are wholly unrelated to [her] election litigation or media interviews."  Mem. at 37 (emphasis in original).  Powell apparently attempts to parse out her transactions that supported her disinformation campaign, *e.g.*, staying in hotel rooms in the District of Columbia, from the actual disinformation campaign itself.  *See id.*  But Smartmatic must allege only a "discernible relationship" between Powell's contacts with the District of Columbia and its claims.  *See IMAPizza*, 334 F. Supp. 3d at 112; *see also Associated Producers*, 76 F. Supp. 3d at 164 (rejecting defendant's attempt to "pars[e]" various transactions that were actually part of a single course of conduct).  Smartmatic's allegations that, for example, Powell traveled to the District, rented hotel rooms in the District, and conducted defamatory media appearances from those hotel rooms, all show a course of conduct and sufficient nexus between Powell's District contacts and Smartmatic's claims.  *Powell*, 554 F. Supp. 3d at 66–67.

---

[5] These facts distinguish this case from the cases cited by Powell.  *See Bigelow v. Garrett,* 299 F. Supp. 3d 34, 42–48 (D.D.C. 2018) (no jurisdiction in D.C. because contacts in D.C., including website, were not connected to plaintiff's claims for relief); *Fiorentine v. Sarton P.R., LLC*, 486 F. Supp. 3d 377, 382–85 (D.D.C. 2020) (text message advertisements to D.C. residents, alone, were insufficient); *Rundquist v. Vapiano SE*, 798 F. Supp. 2d 102, 111–21 (D.D.C. 2011) (jurisdictional discovery permitted to determine whether there was personal jurisdiction over German affiliate based on multiple alleged contacts, including use of interactive website directed at D.C. citizens, directly and through American subsidiary).

*Second*, Powell erroneously argues that the "government contacts" exception shields many of her transactions. Mem. at 31–32.[6]  The government contacts exception "deems one not to be transacting business in the District of Columbia . . . if the *sole contact* with the District consists of dealing with a federal instrumentality." *Rose v. Silver*, 394 A.2d 1368, 1373 (D.C. 1978) (citation and internal quotation omitted) (emphasis added).  It applies, for example, "where a defendant was in administrative receivership and therefore managed by the Department of Housing and Urban Development . . . and where a defendant visited the Environmental Protection Agency to procure grants." *Morgan v. Richmond Sch. of Health & Tech., Inc.*, 857 F. Supp. 2d 104, 108 (D.D.C. 2012) (citations omitted).  The exception is inapplicable, though, if the defendant had contacts with the District outside of dealing with a federal instrumentality. *Johns v. Rozet*, 770 F. Supp. 11, 19 (D.D.C. 1991) (rejecting exception where defendants retained counsel in the District "for more than merely facilitating governmental action").

Powell's reliance on this doctrine is misplaced.  As a threshold matter, she did not merely contact a federal instrumentality.  She claims that her visits to the District in November and December 2020 "*involved* meetings or events with members of the federal government," (Powell Decl. ¶¶ 17, 20 (emphasis added)), but she conveniently omits that those same visits also "involved" her appearances on national television in which she defamed Smartmatic from hotels and other venues in the District of Columbia.  Compl. ¶¶ 16–18, 77, 84, 86, 90, 94, 101, 109, 365.  In her media appearances, she even used backdrops of District of Columbia landmarks to ensure that viewers understood that she was speaking from the nation's capital and was, therefore, credible.  *Id.* ¶¶ 84, 90; *see also* Powell Decl. ¶ 19 (explaining that images of the

---

[6] Powell admits (Mem. at 32 n.21) that courts only apply this exception to the "transacting business" prong of the long-arm statute, and that it has no application to the "tortious conduct" prongs.  *Akhmetshin v. Browder*, 275 A.3d 290, 293 (D.C. 2022).

District were superimposed behind her to create a "Washington-themed background").  Thus, she

did not merely "deal[] with a government instrumentality."  *Rose*, 394 A.2d at 1373; *Johns*, 770

F. Supp. at 19.[7]

Moreover, defendants who enter the District to disseminate "known lie[s]" cannot rely on

the government contracts exception.  *See Companhia Brasileira Carbureto De Calcio v. Applied*

*Indus. Materials Corp*., 35 A.3d 1127, 1133 (D.C. 2012).  "First Amendment rights may not be

used as the means or the pretext for achieving 'substantive evils' which the legislature has the

power to control."  *Id.*  Accordingly, courts do not permit defendants to "cloak[] themselves in

the government contacts doctrine" when they defraud government instrumentalities.  *Id.* at 1133–

34.  Nor should this exception apply where Powell entered the District to assert a different kind

of unprotected speech: defamatory falsehoods.  *See id.*; *see also Gertz v. Robert Welch, Inc*., 418

U.S. 323, 340 (1974) ("[T]here is no constitutional value in false statements of fact.").

### 4. This Court has jurisdiction over Powell because she caused tortious injury in the District of Columbia.

Powell is also subject to this Court's jurisdiction because she caused tortious injury in the

District of Columbia and jurisdiction over her comports with due process.  *See* D.C. CODE §§ 13-

423(a)(3), 13-423(a)(4).

---

[7] The cases Powell cites are all distinguishable because the defendants had no relevant contacts with the District other than their communications with federal instrumentalities. *See World Wide Minerals Ltd. v. Republic of Kazakhstahn*, 116 F. Supp. 2d 98, 106 (D.D.C. 2000) (no other contacts with the District had a sufficient nexus to the claim); *Inv. Co. Inst. v. United States*, 550 F. Supp. 1213, 1217–18 (D.D.C. 1982) (SEC registration and relationships with "public and semi-public" banking associations were only alleged contacts); *United Therapeutics Corp. v. Vanderbilt Univ.*, 278 F. Supp. 3d 407, 418–19 (D.D.C. 2017) (one fax and one email were only non-government contacts and insufficient to establish jurisdiction); *Jung v. Ass'n of Am. Med. Colleges*, 300 F. Supp. 2d 119, 139 (D.D.C. 2004) (other contacts de minimis; analysis conducted under Section 12 of the Clayton Act, not the long-arm statute).

a.        **Jurisdiction is proper under Section 13-423(a)(3).**

The Court has jurisdiction over Powell because she "caus[ed] tortious injury in the District of Columbia by an act or omission in the District of Columbia." *Id.* § 13-423(a)(3).  The Court has asserted jurisdiction over Powell, Mike Lindell, and Herring Networks d/b/a OANN under this prong because they defamed Smartmatic and Dominion in the same disinformation campaign at issue in this case.  *See Powell*, 554 F. Supp. 3d at 66–69; *Smartmatic USA Corp. v. Herring Networks, Inc.*, 2022 WL 2208913 at *3–5 (D.D.C. June 21, 2022) ("*OANN*").  Powell does not assert a single reason why the Court should reach a different result here.

*First*, it is beyond dispute that Powell caused Smartmatic to sustain tortious injury "in the District of Columbia."  *See* D.C. CODE § 13-423(a).  In the Dominion Suit, Powell argued that Dominion did not suffer tortious injury "in the District of Columbia" because it did not allege that it suffered any specific injuries in the District and a defamation plaintiff's injury "occurs [only] where the plaintiff lives and works."  *See* **Ex. C**, Mem. of Law in Supp. of Mot. To Dismiss in *Powell* (filed Mar. 22, 2021), ECF No. 22-2, at 12.  But the Court rejected her argument.  *Powell*, 554 F. Supp. 3d at 66–67.

Powell now repackages that same argument, claiming that Smartmatic can suffer economic harm only at its offices.  Mem. at 38–39.  But Smartmatic suffered injury in the District as well.  *See Powell*, 554 F. Supp. 3d at 66–67; *Howser v. Pearson*, 95 F. Supp. 936, 938 (D.D.C. 1951) ("Libel and slander take place where the defamatory statement is communicated."); *Lapointe v. Van Note*, 2004 WL 3609346 at *6 (D.D.C. Nov. 9, 2004) ("An injury by libel occurs at the site of publication.").  When corporate plaintiffs are defamed, they are harmed in the conduct of their business and from others being deterred from dealing with them.  *See Solers, Inc. v. Doe*, 977 A.2d 941, 949 (D.C. 2009) (plaintiff stated defamation claim where it alleged that it "has been deprived of its good commercial reputation, subject[ed] to

contempt and . . . [that] others within [its] industry [have been deterred] from dealing with it"). Here, Smartmatic alleges that it suffered such injury in the District—it operates in the voting machine and software industry, and elected officials who operate in the District are uniquely positioned to influence its success.  *See* Compl. ¶¶ 368 (Powell's statements were a "substantial cause of Smartmatic's name and brand becoming synonymous with election fraud with members of the general public and government officials"), 372 (government officials, including those "directly or indirectly involved in the selection of the voting system used in their jurisdiction," began to oppose the use of electronic voting systems, including Smartmatic's); *see also id.* ¶¶ 16–18, 77, 84, 86, 90, 101, 109, 365.

*Second*, Powell committed "an act or omission in the District of Columbia" that caused Smartmatic's injury.  *See* D.C. CODE § 13-423(a)(3).  To satisfy this element, "it is enough that defendants were physically within the District when they took the alleged actions giving rise to" the plaintiff's claims.  *Navab-Safavi v. Broad. Bd. of Governors*, 650 F. Supp. 2d 40, 52 (D.D.C. 2009); *see also Wormley v. United States*, 601 F. Supp. 2d 27, 33 (D.D.C. 2009) (finding jurisdiction under § 13-423(a)(3) and the due process clause satisfied where defendants "were physically within the District when they took the alleged actions").  Smartmatic has alleged that Powell asserted many of her defamatory statements while she was in the District of Columbia. Compl. ¶¶ 84, 90, 101, 109.  She argues that "publishing or projecting into the District from *outside the District* does not implicate subsection (a)(3)."  Mem. at 38.  Her argument, even if true, is irrelevant because Smartmatic alleged that she asserted defamatory statements within the District.  *See Wormley*, 601 F. Supp. 2d at 33.[8]

---

[8] Powell's claim that the longarm statute only protects "resident plaintiffs" (Mem. at 39 n.24) is meritless.  *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780–81 (1984) ("There is no justification for restricting libel actions to the plaintiff's home forum.  The victim of a libel . . .

### b.    Jurisdiction is proper under Section 13-423(a)(4).

The Court also has jurisdiction over Powell under Section 13-423(a)(4).  Smartmatic established above that it adequately alleges it suffered injury "in the District of Columbia."  It also properly alleges that at least one of the three "plus factors" showing a persistent course of conduct is met.  *See Lewy v. S. Poverty Law Ctr., Inc.*, 723 F. Supp. 2d 116, 123 (D.D.C. 2010).

"The 'plus factor' or factors need not be related to the act that caused the injury; all that is required is 'some other reasonable connection between the defendant and the forum.'"  *Blumenthal v. Drudge*, 992 F. Supp. 44, 54 (D.D.C. 1998) (quoting *Crane v. Carr*, 814 F.2d 758, 762–63 (D.C. Cir. 1987)); *Lewy*, 723 F. Supp. 2d at 124 (to satisfy Section 13-423(a)(4), "a defendant's contacts need not be great," and they need not even be "related to the tortious act outside the forum that causes the injury").  Moreover, courts consider the "totality" of the defendant's contacts—they do not view contacts in isolation.  *OANN*, 2022 WL 2208914 at *3–4 (citing *Lewy*, 723 F. Supp. 2d at 126).  In *Lewy*, for example, the court determined that Section 13-423(a)(4) was satisfied in a defamation case because, among other contacts with the District, the defendant maintained a website available to District residents, solicited donations from District residents, and its employees visited the District for conferences and meetings.  *Lewy*, 723 F. Supp. 2d at 128; *see also Blumenthal*, 992 F. Supp. at 57 (totality of defendant's contacts, including maintenance of website available to District residents, solicitation and receipt of contributions from District residents, and travel to the District for an interview, established a persistent course of conduct).

Here, Powell has similarly engaged in a persistent course of conduct in the District through at least the following actions:

---

may choose to bring suit in any forum with which . . . the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'").

- While either present in the District of Columbia, purporting to be present in the District of Columbia, or both, Powell solicited District residents for donations through her website to help spread her lies concerning Smartmatic and Dominion, and to file frivolous lawsuits about the 2020 U.S. presidential election (Compl. ¶¶ 17, 77, 86, 365);

- Powell encouraged District residents to interact with her websites and "look at the real evidence" concerning the outcome of the 2020 U.S. presidential election (*id.* ¶ 125(s));

- Powell formed fundraising organizations that solicited donations from District residents to help her undermine the outcome of the 2020 U.S. presidential election (*id.* ¶ 365);

- Powell visited the District of Columbia on many occasions, including visits related to her representation of Michael Flynn in proceedings in the District of Columbia and visits related to her disinformation campaign designed to undermine the outcome of the 2020 U.S. presidential election (*id.* ¶¶ 17, 84, 90, 94, 101, 109, 363; *see also* Powell Decl. ¶¶ 9, 20); and

- Powell conveyed false statements regarding Smartmatic to District residents and used the District as the centerpiece of her disinformation campaign because she knew that the District has uniquely strong ties to elections and election integrity (Compl. ¶ 84; *see also* Powell Decl. ¶ 19).

Based on the totality of Powell's contacts with the District, she engaged in a persistent course of conduct in the District under Section 13-423(a)(4) and can therefore be held liable for her disinformation campaign in this District.  *See Lewy*, 723 F. Supp. 2d at 128; *Blumenthal*, 992 F. Supp. at 57.[9]

### c.    Jurisdiction is proper under the Due Process Clause.

This Court's jurisdiction over Powell comports with the constitutional requirements under the Due Process Clause, and Powell does not argue otherwise.  Mem. at 28–41.  The

---

[9] The cases cited by Powell are all distinguishable because the defendants had isolated contacts with the District, as opposed to many contacts that, in totality, established a persistent course of conduct.  *See Urban Inst. v. FINCON Servs.*, 681 F. Supp. 2d 41, 48 (D.D.C. 2010) (three visits to the District insufficient); *Parsons v. Mains*, 580 A.2d 1329, 1330 (D.C. 1990) (three appearances as counsel in District cases in ten-year period insufficient); *cf. Akhmetshin v. Browder*, 983 F.3d 542, 557 (D.C. Cir. 2020) (granting jurisdictional discovery on defendant's course of conduct where he visited District two or three times to promote his book).

exercise of personal jurisdiction is within the permissible bounds of the Due Process Clause if the defendant has sufficient "minimum contacts" with the forum "establishing that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *GTE New Media*, 199 F.3d at 1347 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Courts must ensure that defendant's minimum contacts with the forum "are such that he should reasonably anticipate being haled into court there." *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). The "fair warning" requirement is satisfied "if the defendant has 'purposefully directed' his activities at residents of the forum, [ ] and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Fisher v. Bander*, 519 A.2d 162, 163 (D.C. 1986) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

Powell's repeated contacts with the District are more than sufficient. *See GTE New Media*, 199 F.3d at 1347. Powell traveled to the District of Columbia, where she conducted media appearances in which she repeatedly defamed Smartmatic for her own gain. Compl. ¶¶ 16–18, 77, 84, 86, 90, 101, 109, 365. She also solicited donations from District residents to finance her disinformation campaign against Smartmatic, which she strategically based in the District of Columbia. *Id.* ¶¶ 86, 135(s), 365. These were not "random, fortuitous, accidental, or attenuated" contacts, but rather "of such quality and nature that they manifest[ed] a deliberate and voluntary association with" the nation's capital. *Shoppers Food Warehouse*, 746 A.2d at 331 (internal citation omitted). Accordingly, she purposefully availed herself of the District and should reasonably have anticipated being haled into court there. *Id.*

## B. Venue is proper in the District of Columbia.

Powell also recycles her erroneous argument from the Dominion Suit that the District is an improper venue for this lawsuit. Venue is proper, in pertinent part, in a district where "a

substantial part" of the events giving rise to this lawsuit occurred.  28 U.S.C. § 1391(b).  The question presented to the Court is not "which district is the 'best' venue" or which "has the most significant connection" to the case, but "whether the district the plaintiff chose had a substantial connection to the claim."  *Exelon Generation Co. v. Grumbles*, 380 F. Supp. 3d 1, 11 (D.D.C. 2019) (citation omitted).  In considering a motion to dismiss, the Court must "accept[] the plaintiff's well-pled factual allegations regarding venue as true, draw[] all reasonable inferences from those allegations in the plaintiff's favor, and resolve[] any factual conflicts in the plaintiff's favor."  *Pendleton v. Mukasey*, 552 F. Supp. 2d 14, 17 (D.D.C. 2008) (citation omitted).

Powell argues that venue is improper in the District only because she defamed Smartmatic and spread other disinformation about the 2020 presidential election in many venues *in addition to* the District.  Mem. at 42–43.  According to Powell, she published her false statements concerning Smartmatic in so many other jurisdictions that her false statements in the District are not a "substantial" proportion of *all* of her false statements.  *See id.*  The Court rejected this argument in *Powell*, *see* 554 F. Supp. 3d at 68–70, and it should do so again here.

Powell deliberately chose the District of Columbia as the epicenter of her disinformation campaign.  She traveled to the District, where she conducted in-person, televised, and digital broadcast appearances in which she defamed Smartmatic.  *See supra* Parts I.A.3, I.A.4.  She also rented hotel rooms in the District, including rooms at the Trump International Hotel, where she made defamatory statements about Smartmatic.  *See* Compl. ¶ 109.  The lies she published about Smartmatic in the District were then republished and repeated in mediums all across the country.  *Id.* ¶ 116.  Even if Powell also asserted frivolous legal claims "in Wisconsin, Pennsylvania, Georgia, and Michigan" about Smartmatic and the 2020 U.S. presidential election (Mem. at 42), those meritless lawsuits do not change the fact that the District has a substantial connection to

Smartmatic's claims.  *See Powell*, 554 F. Supp. 3d at 68–70; *see also Thayer/Patricof Educ. Funding v. Pryor Res. Inc.*, 196 F. Supp. 2d 21, 27–28 (D.D.C. 2002) (venue proper where defendant traveled to Washington D.C. and chose to do business there); *Sheraton Operating Corp. v. Just Corp. Travel*, 984 F. Supp. 22, 27 (D.D.C. 1997) (same); *Akbar v. N.Y. Magazine Co.*, 490 F. Supp. 60, 67 (D.D.C. 1980) (venue proper where defamation defendant conducted business activities and traveled to discuss the subject of his defamatory statements).

## II.     Smartmatic's Complaint Complies with the Pleading Standards Provided in the Federal Rules of Civil Procedure.

Powell argues that Smartmatic's complaint should be dismissed because its description of her disinformation campaign is too long and too detailed.  Mem. at 10–15.  This argument fails for two reasons.  *First*, Rules 8 and 12 of the Federal Rules of Civil Procedure require Smartmatic to merely put Powell on fair notice of its claims against her, and Smartmatic's complaint clearly meets that burden.  *Second*, although Powell claims that Smartmatic has alleged "gratuitous and immaterial" facts, all of its allegations are relevant to its claims that she defamed Smartmatic.

### A.     Smartmatic's complaint complies with Rule 8 of the Federal Rules of Civil Procedure.

Rule 8(a) of the Federal Rules of Civil Procedure requires complaints to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a).  This standard "ensures that defendants receive fair notice of the claim being asserted so that they can prepare a responsive answer and an adequate defense and determine whether the doctrine of res judicata applies."  *Rushing v. U.S. Soc. Sec. Admin.*, 2021 U.S. Dist. LEXIS 150058 at *1 (D.D.C. Aug. 4, 2021) (Nichols, J.) (citation omitted).  Thus, a complaint satisfies Rule 8 as long as it puts the defendant on fair notice of the claims against it.  *Ciralsky v. CIA*, 355 F.3d 661, 670 (D.C. Cir. 2004) (cited by Powell); *see also Maynard v. Melton*, 2021 WL

6845008 at *5 (D.D.C. Apr. 7, 2021) (rejecting Rule 8 challenge because the complaint put defendant on notice of the claims against him and the facts supporting each claim).  Even where a complaint does not comply with Rule 8, the proper remedy is a dismissal with leave to replead rather than a dismissal with prejudice.  *See Ciralsky*, 355 F.3d at 669–70.

Powell's argument that Smartmatic's complaint fails to comply with Rule 8 fails for multiple reasons.  *First*, she does not, and indeed, cannot, claim that the Complaint fails to put her on fair notice of Smartmatic's claims.  Mem. at 10–15.  She argues that Smartmatic's complaint is lengthy and includes facts that relate to her partners in her disinformation campaign.  *Id.*  She does not argue, though, that the Complaint is unintelligible, or that she otherwise does not understand the basis for Smartmatic's claims.  *Id.*  In fact, Smartmatic's allegations are so comprehensive that Powell conceded that Smartmatic has sufficiently pleaded substantially every element of its claims, including that she acted with actual malice.[10]  *See generally id.*  Thus, her argument fails.  *See Ciralsky*, 355 F.3d at 670 n.9 (dismissal under Rule 8 "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised"); *Maynard*, 2021 WL 6845008 at *5 (rejecting Rule 8 challenge because defendant was on notice of claims).[11]

*Second*, Rule 8 does not arbitrarily restrict the length of a plaintiff's complaint.  *Ciralsky*, 355 F.3d at 670 ("Rule 8 does not require a short and plain *complaint*, but rather a short and

---

[10] Smartmatic does not concede that it is a public figure or that it must establish that Powell defamed it with actual malice to prevail on its claims at trial.

[11] The cases Powell cites are distinguishable.  In *Terrell v. Mr. Cooper Group, Inc.*, the plaintiff's complaint was "incomprehensible." 2021 WL 2778542 at *5–6 (D.D.C. July 2, 2021). In *Lynch v. Shopko Stores Operating Co., LLC*, the plaintiff brought a breach of contract action that could have been "set forth in as few as three or four sentences" instead of 79 pages.  2007 WL 4358335 at *1 (E.D. Wisc. Dec. 11, 2007).  Finally, in *Achgzai v. Broadcasting Board of Governors*, the plaintiff's complaint was "confusing."  109 F. Supp. 3d 67, 71 (D.D.C. 2015). Powell asserts no such objections to Smartmatic's complaint.

plain statement of the *claim*."); *T.M. v. District of Columbia*, 961 F. Supp. 2d 169, 175–76 (D.D.C. 2013) (denying motion to dismiss because Rule 8's "short and plain statement" standard is a *minimum* standard for pleadings and "any superfluous details scattered throughout the complaint [were] certainly not so extreme as to render the allegations unintelligible, as would be needed to warrant dismissal"); *Middlebrooks v. St. Coletta of Greater Wash*., 2009 WL 3163061 at *1 (D.D.C. Sep. 30, 2009) (denying motion to strike complaint where "plaintiff's complaint [was] lengthy, [but] not incomprehensible"); *see also, e.g.*, *Bhatt v. Hoffman*, 716 F. App'x 124, 127 (3d Cir. 2017) ("[A]lthough Bhatt's amended complaint is long and repetitive in some respects, it is clearly written, logically organized, and clearly reveals the nature of her claims."). "What constitutes a short and plain statement must be determined in each case on the basis of the nature of the action, the relief sought, and the respective positions of the parties in terms of the availability of information and a number of other pragmatic matters."  5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1217 (4th ed. 2008).

In this case, the length of Smartmatic's complaint was dictated by the nature of Powell's misconduct—publishing lies about Smartmatic to undermine the outcome of a U.S. presidential election.   Smartmatic alleges that Powell, working with Giuliani and Fox, engaged in a coordinated disinformation campaign to convince millions of people that Smartmatic rigged the 2020 U.S. presidential election.   Compl. ¶¶ 21, 72–128.   As such, allegations that relate to Powell's counterparts are essential to Smartmatic's claims against Powell.   For example, Smartmatic has alleged that Powell worked with Giuliani to engineer the lies that both would later publish concerning Smartmatic.  *Id.* ¶¶ 72–77.   Powell and Giuliani then found a willing partner in Fox to disseminate and champion their falsehoods about Smartmatic.  *Id.* ¶ 78.   For

over a month, Powell, Giuliani, and Fox then worked in tandem to saturate the airwaves and internet with the falsehoods that Powell and Giuliani had created.  *Id.* ¶¶ 79–114.

Powell claims that Smartmatic's allegations related to Giuliani and Fox are "extraneous," "gratuitous," and "immaterial," but her argument rings hollow.  Mem. at 13–15.  Smartmatic cannot fully explain Powell's disinformation campaign to the jury, including her planning and execution of it, without submitting evidence of Giuliani's role and Fox's role.  *See Zimmerman v. Al Jazeera Am., LLC*, 246 F. Supp. 3d 257, 276 (D.D.C. 2017) ("Context is critical because it is in part the settings of the speech in question that makes their . . . nature apparent, and which helps determine the way in which the intended audience will receive them.") (internal quotation marks and citation omitted).  Smartmatic's allegations also show that Powell worked with Giuliani and Fox to *fabricate* their false statements.  *See, e.g.*, Compl. ¶¶ 21, 72–128.  That is hallmark evidence of Powell's actual malice.  *See US Dominion, Inc. v. Byrne*, 2022 WL 1165935 at *5 (D.D.C. Apr. 20, 2022) (Nichols, J.).

The following are additional examples of allegations that Powell argues are "extraneous" and "gratuitous," but which actually support Smartmatic's claims:

- Smartmatic alleges that Fox and Giuliani repeated Powell's false statements.  *See, e.g.*, Compl. ¶¶ 101, 106, 116(q), 116(r), 116(aa), 116(nn), 116(oo), 116(pp), 116(qq).  For example, Lou Dobbs (Fox News) and Giuliani repeated a false claim that Powell made two days earlier.  Compl. ¶ 98.  These allegations are relevant because: (1) they show that Powell fabricated her false statements; and (2) Powell is liable for any foreseeable republications of her defamatory falsehoods.  *See Chandler v. Berlin*, 998 F.3d 965, 976 (D.C. Cir. 2021).

- Smartmatic alleges that Powell filed several frivolous lawsuits in which she claimed that the 2020 U.S. presidential election had been stolen.  *See* Compl. ¶¶ 319–365.  Although Powell claimed in her media appearances that Smartmatic "rigged" the election, she did not make any such claims about Smartmatic in her actual lawsuits to subvert the election.  *Id.* ¶¶ 331–39.  That is circumstantial evidence that she knew her statements in the media about Smartmatic were false.

- Powell argues that Smartmatic improperly "repeat[s]" her false statements, but it only repeats a statement where necessary to establish different elements and aspects of its

claims.  *See, e.g.*, Compl. ¶¶ 109 (statement presented as factual background), 125(q) (statement establishes that Powell presented her false statements as facts rather than opinions), 191(v) (statement establishes that Powell created the false impression that Smartmatic's technology and software were designed to fix, rig, and steal elections).

Powell might prefer to answer a shorter complaint, but Smartmatic's allegations are all relevant, comprehensible, and put her on notice of Smartmatic's claims against her.  Thus, the Complaint complies with Rule 8.  *See T.M.*, 961 F. Supp. 2d at 175–76; *Maynard*, 2021 WL 6845008 at *5; *Middlebrooks*, 2009 WL 3163061 at *1.

**B.      The Court should deny Powell's Motion To Strike pursuant to Rule 12(f).**

Powell's argument under Federal Rule of Civil Procedure 12(f) also misses the mark. Motions to strike under Rule 12(f) are "strongly disfavored."  *United States ex rel. K & R Ltd. P'ship v. Mass. Hous. Fin. Agency*, 456 F. Supp. 2d 46, 51 (D.D.C. 2006); *see also Brown v. Broad. Bd. of Governors*, 2009 WL 2704586 at *9 (D.D.C. 2009) ("[S]triking pleadings is an extreme and disfavored remedy.").  In fact, they are considered "time wasters" because they are uniformly denied and are only granted when "allegations have no possible relation to the controversy and may cause prejudice to one of the parties."  *Cobell v. Norton*, 2003 WL 721477 at *1 (D.D.C. Mar. 3, 2003); *see also Williams v. Chu,* 2010 WL 11575517 at *2 (D.D.C. Sep. 30, 2010) (cited by Powell) ("Matters are neither irrelevant nor prejudicial when there is any possibility that they are within the scope of litigation or are probative of issues within that scope.").

Smartmatic's allegations are anything but "immaterial," "impertinent," or "redundant." *See* Mem. at 14.  *First*, as discussed above, Smartmatic's allegations are relevant.  *Second*, even if Smartmatic's allegations were not relevant, they would still be permissible because they provide necessary context to Smartmatic's defamation claims.  *Zimmerman*, 246 F. Supp. 3d at 276.  The context of Powell's coordination with Giuliani and Fox is particularly necessary to

25

ensure that the Court, and ultimately the jury, understand how audiences received and interpreted Powell's false statements.  *See Patton Boggs, LLP v. Chevron Corp.*, 791 F. Supp. 2d 13, 22 (D.D.C. 2011), *aff'd*, 683 F.3d 397 (D.C. Cir. 2012) ("[I]t is routine for parties to provide the Court with a certain amount of background information that is not directly relevant to the merits of the claim or motion at issue.  This practice ensures that the Court understands the context in which the dispute arose."); *Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000) (reversing order granting motion to strike because the allegations at issue "provide[d] important context and background to [the] suit").

The cases cited by Powell are inapposite.  In *Williams v. Chu*, the court struck allegations that were completely irrelevant and prejudicial.  2010 WL 11575517 at *3 (striking paragraphs containing "various allegations regarding the criminal background of a colleague that do nothing to support the plaintiff's claims for relief" and "have the potential to unnecessarily do harm to the reputation" of that colleague).  Similarly, in *Witherspoon v. Philip Morris, Inc.*, the court struck allegations related to non-parties that had no bearing on defendant's liability.  964 F. Supp. 455, 468 (D.D.C. 1997).  Powell's motion, by contrast, is a "time waster" because Smartmatic's allegations substantiate its claims and provide context.  *See Cobell*, 2003 WL 721477 at *1.

## III.    Smartmatic B.V. and SGO Have Standing To Sue Powell.

Powell's argument that Smartmatic B.V. and SGO do not have standing (Mem. at 15–17) is also misplaced.  As a general matter, a plaintiff satisfies constitutional standing requirements when it demonstrates (1) an injury in fact that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) the injury is "fairly traceable to the challenged action of the defendant"; and (3) that it is "likely" rather than merely "speculative" that the injury will be redressed by a favorable decision.  *Peacock v. District of Columbia*, 682 F.3d 77, 81

(D.C. Cir. 2012) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).  Powell argues

that Smartmatic B.V. and SGO do not meet this requirement because they are suing as

"shareholders" of Smartmatic USA Corp. ("Smartmatic USA") and allege only a derivative

injury.  Mem. at 15–17.  Powell's argument is misplaced, though, because each plaintiff

Smartmatic entity, including Smartmatic B.V. and SGO, has alleged that it directly suffered

harm from her false statements.

### A.       Smartmatic B.V. and SGO were independently harmed by Powell's statements.

As a threshold matter, the Court should reject Powell's standing argument because its

entire premise is flawed.  Powell claims that Smartmatic B.V. and SGO sued her only in their

capacity as "an intermediary parent and ultimate parent of Smartmatic USA," and they have only

been *derivatively* harmed based on Smartmatic USA's injuries.  Mem. at 15–17.  Powell is

wrong, though, because Smartmatic has alleged that her false and defamatory statement directly

harmed each of the plaintiff entities, including Smartmatic B.V. and SGO.

*First*, the Complaint defines the term "Smartmatic" as collectively representing all three

plaintiff entities.  Compl. ¶ 4.  "Smartmatic," as used in the Complaint, expressly includes

Smartmatic USA, a U.S.-based entity that operated in Los Angeles County during the 2020 U.S.

presidential election; Smartmatic B.V., a foreign-based entity that owns Smartmatic USA; and

SGO, a foreign-based entity that owns Smartmatic B.V.  *Id.* ¶¶ 1–4.  Based on the definition of

Smartmatic in the Complaint, wherever Smartmatic alleges that it suffered harm, it asserts that

Smartmatic USA, Smartmatic B.V., and SGO *all* suffered harm.  *See, e.g.*, *id.* ¶ 393.

*Second*, Smartmatic has alleged that all three plaintiffs suffered harm because they are

inseparably intertwined with the "Smartmatic" brand.  For example, Powell characterized

"Smartmatic" as the company run by SGO's former Chairman, Lord Malloch Brown, whom she

maligned as having "connections" to George Soros in her media appearances.  Compl. ¶ 149(v).

Additionally, Powell used the name "Smartmatic" in all of her defamatory statements without

distinguishing between entities.  *See id.* ¶¶ 132, 140, 149, 166, 182, 191.  In doing so, she clearly

implicated Smartmatic B.V. and SGO when she emphasized Smartmatic's "foreign" ownership

and dealings.  Indeed, she falsely asserted that Smartmatic sent votes to foreign countries and

that Smartmatic was a Venezuelan company founded by Hugo Chavez.  *See id.* ¶¶ 157–64, 181–

89.  For example, Powell stated:

> Lord Malloch-Brown's name has been taken off the website for the company that
> he runs through the U.K. and Canada - that has a role in this.  It's either Symantec
> or Smartmatic or the two, there - one is a subsidiary of the other.  ***It's all***
> ***inexplicably intertwined***.  ***The money creating it came out of Venezuela and***
> ***Cuba. It was created for the express purpose of being able to alter votes and***
> ***secure the reelection of Hugo Chávez.  And then Maduro.***  *Id.* ¶ 182(b), Ex. 3.

***

> I mean that's just logic.  It's been, this affidavit also explains, had been used to
> change election results all over the world.  And ***it's all Venezuelan and Cuban***
> ***and essentially communist money that's been doing this.  It's a foreign-owned***
> ***company*** as you mentioned earlier.  *Id.* ¶ 182(h), Ex. 15.

***

> Smartmatic agreed to create such a [voting] system and produce the software and
> hardware that accomplished the result for President Chávez.  After the Smartmatic
> [] electoral management system was put in place, he closely observed several
> elections where the results were manipulated using the Smartmatic software.  One
> such election was December 2006, when Chávez was running against Rosales.
> Chávez won in a landslide over Rosales . . . .  In 2013, he witnessed another
> Venezuelan national election where ***the Smartmatic management system was***
> ***used to manipulate and change the results for Chávez.***  *Id.* ¶ 182(j), Ex. 15.

***

> Well we've known from early on in our independent investigation that ***the entire***
> ***system was created for the benefit of Venezuela and Hugo Chávez to rig***
> ***elections*** to make sure he continued winning.  And then it was passed onto Mr.
> Maduro to do the same.  And we know it was exported to other countries by
> virtue of some of the Dominion executives that proceeded to go about and
> essentially sell elections to the highest bidder.  *Id.* ¶ 182(o), Ex. 38.

*** 

> We are still reviewing the massive amount of documents that we have . . . .  It's a massive amount of additional information to go through . . . .  ***And then also the connections to the Chinese and other countries that were attacking us*** in this massive cyber Pearl Harbor, as we called it.  *Id.* ¶ 182(p), Ex. 38.

By fabricating facts about Smartmatic's foreign operations, Powell veered outside the scope of Smartmatic USA's minimal involvement in the 2020 U.S. election, and she was clearly linking Smartmatic B.V. and SGO to her lies.  This resulted in disastrous real-world consequences for Smartmatic USA, Smartmatic B.V., and SGO.  *Id.* ¶¶ 373 (Smartmatic incurred over $1 million in out-of-pocket expenses because its reputation was irreparably tarnished, its officers and employees have been threatened, and its operations have come under attack—physically and electronically), 375 (Powell's false statements caused Smartmatic to suffer "diminished business value and prospects"), 376 (Powell's false statements harmed Smartmatic's reputation).  Accordingly, Smartmatic has alleged that Smartmatic B.V. and SGO sustained concrete and particularized injuries due to Powell's defamatory statements, and they have standing to seek redress for those injuries.  *See Powell,* 554 F. Supp. 3d at 72 n.23 (ruling that Dominion sufficiently alleged injury in fact based on substantially similar allegations).[12]

The Florida cases Powell cites and analogous cases in this District are all distinguishable.  Mem. at 15–17.[13]  They stand for the narrow proposition that a parent corporation cannot sue ***on***

---

[12] Smartmatic did not plead, as Powell contends, that Smartmatic B.V's revenue is derived only from the enumerated subsidiaries.  Compl. ¶ 379 n.36.  Even if it did, though, Smartmatic's allegations that Smartmatic B.V. and SGO suffered other pecuniary harm sufficiently establish injury in fact.  *See Powell,* 554 F. Supp. 3d at 74.

[13] Powell does not identify a conflict between D.C. and Florida law concerning standing.  *Compare Harrington v. Batchelor*, 781 So. 2d 1133, 1135 (Fla. Ct. App. 2001) (articulating shareholder standing rule) *and Washington Tennis & Educ. Found., Inc. v. Clark Nexsen, Inc.*, 270 F. Supp. 3d 158, 164–65 (D.D.C. 2017) (same) (cited by Powell).  Accordingly, D.C. law governs.  *See infra* Part IV.B.

*behalf of* a subsidiary.  *See Washington Tennis & Educ. Found.*, 270 F. Supp. 3d at 164–65 (shareholder standing rule prevents suits brought "on behalf of" a corporation's subsidiary); *MCO Airport Concessions, LLC v. Greater Orlando Aviation Auth.*, 2012 WL 12896558 at *4 (M.D. Fla. Feb. 14, 2012) ("[A] shareholder can assert [] rights only through the corporation."); *Sec. Indus. & Fin. Mkts. Ass'n v. U.S. Commodity Futures Trading Comm'n*, 67 F. Supp. 3d 373, 407 (D.D.C. 2014) ("[A] subsidiary cannot bring a suit on behalf of its parent."); *Harrington*, 781 So. 2d at 1135–36 (shareholders generally cannot sue for injuries to their corporations). Smartmatic has alleged, though, that Smartmatic B.V. and SGO were directly implicated by Powell's false statements and harmed by them.  *See Powell*, 554 F. Supp. 3d at 72 (rejecting Giuliani's argument that Dominion pleaded a "single business enterprise" theory of damages).

### B.  Powell's reliance on the NY Suit is untenable.

Although Smartmatic alleges that Smartmatic B.V. and SGO were independently harmed by Powell's false statements, Powell claims that the Court should dismiss Smartmatic B.V. and SGO's claims because they were dismissed "on the very same grounds" in the New York Suit. Mem. at 15.  Powell's reliance on that case is misplaced, though, because this Court has already rejected the New York court's reasoning.

In the New York Suit, the court determined that the Smartmatic plaintiffs had insufficiently alleged that Giuliani's statements were "of and concerning" Smartmatic B.V. and SGO.  *See* **Ex. D**, Decision & Order on Mot. To Dismiss in NY Suit, NYSCEF No. 860 (Mar. 8, 2022) ("NY Suit MTD Order").  As here, Smartmatic defined the plaintiff entities, Smartmatic USA, Smartmatic B.V., and SGO, collectively as "Smartmatic."  *See* **Ex. E**, Compl. filed in NY Suit, NYSCEF No. 1 at ¶ 17.  The court mistakenly understood, though, that Smartmatic had pleaded allegations that related only to Smartmatic USA, and it dismissed Smartmatic B.V.'s and SGO's claims on that basis.  *See* **Ex. D**, NY Suit MTD Order at 59 ("Since neither [Smartmatic

B.V.] nor SGO pleaded this allegation, their defamation claims against Giuliani must be dismissed.   Given this finding, this Court need not address Giuliani's contention that [Smartmatic B.V.] and SGO lack standing to sue him.").   Smartmatic has appealed that aspect of the court's ruling.

This Court already rejected the New York court's reasoning in Dominion's lawsuit against Giuliani.   In that case, the plaintiffs, US Dominion, Inc., Dominion Voting Systems, Inc., and Dominion Voting Systems Corp., collectively referred to themselves as "Dominion" in their complaint, and they alleged that Giuliani's false statements injured "Dominion."   *Powell*, 554 F. Supp. 3d at 72.   They did not parse out the injuries that each entity allegedly suffered.   *Id.* Giuliani argued that, by alleging injuries suffered collectively by "Dominion," plaintiffs failed to allege that they had suffered injury in fact and therefore lacked standing.   *Id.*   The Court rejected Giuliani's argument, ruling that all three plaintiffs had sufficiently alleged injury in fact based on their allegation that "Dominion" was harmed.   *Id.*

Powell's arguments that two Smartmatic entities do not have standing are nearly identical to Giuliani's arguments regarding Dominion.   Like Dominion, Smartmatic alleged that the plaintiff entities were collectively harmed because Smartmatic employees were threatened, it was forced to upgrade security measures, its reputation was harmed, and it suffered lost profits. Compl. ¶¶ 372–79.   The Court should, thus, reject Powell's argument and her citation to the court's order in the New York Suit.   *See Powell*, 554 F. Supp. 3d at 72.

## IV.   Powell's Arguments Regarding the Merits of Smartmatic's Claims Fail.

Turning to the merits of Smartmatic's claims, Powell argues that various counts should be dismissed for an assortment of baseless and sometimes conflicting reasons.   Specifically, she argues that (1) Smartmatic's injurious falsehood claims are barred by the "single publication" rule; (2) Smartmatic's injurious falsehood claims, including its defamation claims that Powell

claims it "dressed" as injurious falsehood claims, fail because it did not plead special damages; and (3) Smartmatic did not plead that Powell asserted any false statements in support of its claims in Counts II, IV, XIII, and X.  All of Powell's arguments are misplaced.

### A.    Legal standard.

When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged."  *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003) (internal quotation omitted).  A court treats the "complaint's factual allegations as true and afford[s] the plaintiff the benefit of all inferences that can be derived from the facts alleged."  *Atlas Brew Works, LLC v. Barr*, 391 F. Supp. 3d 6, 11 (D.D.C. 2019) (quotation omitted).  Although the Court accepts all well-pleaded facts in the complaint as true, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The claim to relief must be "plausible on its face," and a plaintiff's pleadings must "nudge[ the] claims across the line from conceivable to plausible."  *Id*. at 570.

### B.    District of Columbia law applies by default.

In diversity actions in the D.C. Circuit, "the forum must apply the choice of law principles of the state or jurisdiction in which it sits."  *Bledsoe v. Crowley*, 849 F.2d 639, 641 (D.C. Cir. 1988).  The Court first determines whether there is a conflict between the laws of the relevant jurisdictions.  *Eli Lilly & Co. v. Home Ins. Co*., 764 F.2d 876, 882 (D.C. Cir. 1985).  If no conflict exists, the law of the District of Columbia applies by default.  *US Dominion, Inc. v. MyPillow, Inc.*, 2022 WL 1597420 at *3 n.2 (D.D.C. May 19, 2022) (Nichols, J.).  If a conflict does exist, courts employ a "modified governmental interests analysis which seeks to identify the

jurisdiction with the most significant relationship to the dispute." *Margolis v. U-Haul Int'l, Inc.*, 818 F. Supp. 2d 91, 100 (D.D.C. 2011).

Powell argues that "Florida law governs Smartmatic's substantive claims" because Smartmatic USA is domiciled in Florida.  Mem. at 10.  But she does not identify a conflict in District of Columbia law and Florida law that would require this Court to perform a choice-of-law analysis in the first place.  *Id.* at 9–10.  Nor is there any such conflict.  The elements of Smartmatic's defamation claims are substantially the same under both District of Columbia law and Florida law.  *Compare Oparaugo v. Watts*, 884 A.2d 63, 76 (D.C. 2005) *with Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1105–06 (Fla. 2008).  The same is true with respect to Smartmatic's injurious falsehood claims.  *Compare Golden Palace, Inc. v. Nat'l Broad. Co.*, 386 F. Supp. 107, 109 (D.D.C. 1974), *aff'd*, 530 F.2d 1094 (D.C. Cir. 1976) *with Leavitt v. Cole*, 291 F. Supp. 2d 1338, 1345 (M.D. Fla. 2003).  Because the legal standards are the same, the Court applies DC law by default.  *Powell*, 554 F. Supp. 3d at 57, n.6.

Even if Powell had identified a conflict between the laws of the District of Columbia and Florida, the District likely has a more significant relationship to this dispute.  Courts consider "where the injury occurred, where the conduct causing the injury occurred, the domicile, residence, nationality, place of incorporation and place of business of the parties, and the place where the relationship is centered."  *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1338 n.6 (D.C. Cir. 2015) (applying D.C. law in defamation action).  Powell argues that Florida law should apply only because one plaintiff, Smartmatic USA, is domiciled there.  Mem. at 9–10.  Smartmatic's complaint, however, relates to Powell's attempts in the District of Columbia—the seat of the federal government—and elsewhere to undermine the results of the 2020 U.S. presidential election by falsely accusing Smartmatic of fraud.  *See Owens v. Republic of Sudan*,

826 F. Supp. 2d 128, 156 (D.D.C. 2011) (terrorist bombings of U.S. embassies had strong connection to District of Columbia because it is the seat of the federal government).

### C.     The "single publication" rule does not bar Smartmatic's injurious falsehood claims.

Powell argues that Smartmatic's injurious falsehood claims must be dismissed because under Florida's "single publication" rule, it cannot recover for both defamation and injurious falsehood.  Mem. at 18–21.  Powell's argument is misplaced for multiple reasons.  *First*, federal procedural law controls, and it permits Smartmatic to plead defamation and injurious falsehood in the alternative.  *Second*, the single publication rule is inapplicable because Smartmatic has not pleaded injurious falsehood to evade a meritorious defense.

### 1.     Smartmatic can plead defamation and injurious falsehood claims in the alternative.

Under Rule 8 of the Federal Rules of Civil Procedure, "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."  FED. R. CIV. P. 8(d)(2).  In other words, "a plaintiff may plead inconsistent theories of liability, and may even argue alternative claims to a jury."  *McNamara v. Picken*, 950 F. Supp. 2d 125, 128 (D.D.C. 2013).  A plaintiff "need not use particular words to plead in the alternative as long as it can be reasonably inferred that this is what it was doing."  *Id.* (citation and internal brackets omitted).

Courts sitting in diversity jurisdiction apply federal procedural law and state substantive law.  *Burke v. Air Serv Int'l, Inc.*, 685 F.3d 1102, 1107 (D.C. Cir. 2012).  Accordingly, in diversity cases, they apply Rule 8(d)(2) even if the plaintiff has asserted substantially similar claims or "torts that represent the same claim."  *Odom v. District of Columbia*, 248 F. Supp. 3d 260, 269 (D.D.C. 2017) ("Because Rule 8 is a procedural, rather than a substantive rule, the court will apply the federal rule . . . Whether Plaintiff's theories of liability are alternatives under D.C.

law, or constitute different torts that represent the same claim, the court will allow both at this stage."). Where double recovery is a concern, "[t]he appropriate method . . . is not to dismiss a plaintiff's properly pled alternative theory of liability but rather to reduce the judgment by the amount of the duplication after a jury has actually awarded . . . duplicate damages." *Cobb v. Washington Metro. Area Transit Auth.*, 2021 WL 2935891 at *4 (D.D.C. July 13, 2021) (denying motion to dismiss where defendant argued that plaintiff's claims sought duplicative relief).

The D.C. Circuit applies that principle to the single publication rule. In *Weyrich v. New Republic, Inc.*, where the court sat in diversity jurisdiction and applied D.C. law, the plaintiff asserted claims for defamation and false light invasion of privacy. 235 F.3d 617, 620, 626 (D.C. Cir. 2001). The court acknowledged that because the two torts are so similar, the single publication rule applied and the plaintiff could "only recover on one of the two theories." *Id.* at 628. Nevertheless, the plaintiff was "free to plead them in the alternative" under Rule 8. *Weyrich*, 235 F.3d at 628 (citation omitted); *see also Parnigoni v. St. Columba's Nursery Sch.*, 681 F. Supp. 2d 1, 19 (D.D.C. 2010) (same); *Benz v. Wash. Newspaper Publ'g Co., LLC*, 2006 WL 2844896 at *6 (D.D.C. Sep. 29, 2006) (same).

*Weyrich* compels the same result here. Smartmatic has asserted claims for both defamation and injurious falsehood. Even assuming *arguendo* that the single publication rule applies—whether under Florida law, D.C. law, or the law of any other jurisdiction—and that Smartmatic can "only recover on one of the two theories," Smartmatic is "free to plead them in the alternative." *Weyrich*, 235 F.3d at 628; *see also Odom*, 248 F. Supp. 3d at 269; *Cobb*, 2021 WL 2935891 at *4. If Smartmatic prevails on both theories and the Court determines that the jury's award was duplicative, it can simply reduce the judgment by the amount of the duplication. *Cobb*, 2021 WL 2935891 at *4.

Powell cites a case in which the Middle District of Florida applied Florida's single publication rule at summary judgment. *See Fin. Info. Techs., Inc. v. iControl Sys., USA, LLC*, 2018 WL 3391379 at *8–9 (M.D. Fla. June 12, 2018). In that case, though, the plaintiff did not oppose defendant's argument that the single publication rule applied, and the court refused to assert any arguments on plaintiff's behalf. *Id.* Moreover, the court's decision to apply the single publication rule instead of permitting the plaintiff to prosecute both claims cannot be reconciled with the D.C. Circuit's binding decision in *Weyrich*. *Id.*[14]

### 2.   Powell's Florida cases are inapposite.

Powell argues that Florida law compels this Court to dismiss Smartmatic's claims under the single publication rule. Mem. at 18–21. The Court should ignore her authorities for several reasons. *First*, as discussed above, Smartmatic can plead defamation and injurious falsehood claims in the alternative. *Second*, Powell has not even attempted to identify a conflict between D.C. law and Florida law that would necessitate a choice-of-law analysis. *Powell*, 554 F. Supp. 3d at 57 n.6. In fact, there is no conflict because both Florida and the District of Columbia recognize the single publication rule. *See Samuel v. Wells Fargo & Co*., 311 F. Supp. 3d 10, 21 (D.D.C. 2018) (under D.C. law, publication of defamatory matter "gives rise to but one cause of action for libel") (citation omitted).

*Finally*, the singe publication rule has no application under the circumstances of this case. It is rooted in the statute of limitations. *Swedberg v. Goldfinger's S., Inc*., 2022 WL 791024 (Fla. Dist. Ct. App. 2022); *see also Stovell v. James*, 965 F. Supp. 2d 97, 101 (D.D.C. 2013) (single publication rule exists "for purposes of the statute of limitations in defamation claims"). And it

---

[14] The same holds true for *Hatfill v. Foster*, 401 F. Supp. 2d 320 (S.D.N.Y. 2005), cited by Powell, which, in any event, was reversed on reconsideration. *See Hatfill v. Foster*, 415 F. Supp. 2d 353 (S.D.N.Y. 2006).

is designed to protect a defendant "from a multiplicity of suits, an almost endless tolling of the statute of limitations, and diversity in applicable substantive law." *Swedberg*, 2022 WL 791024 at *2 (quotation marks and citation omitted).  Consistent with that purpose, and as cases cited by Powell show, courts have used the single publication rule to prevent plaintiffs from reviving failed defamation claims through different causes of action.  *See, e.g.*, *Fridovich v. Fridovich*, 598 So. 2d 65, 70 (Fla. 1992) (dismissed defamation claim re-pleaded as intentional infliction of emotional distress claim); *Callaway Land & Cattle Co., Inc. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. 2002) (plaintiff re-pleaded time-barred disparagement of title claim as tortious interference claim); *Ovadia v. Bloom*, 756 So. 2d 137, 140 (Fla. Dist. Ct. App. 2000) (time-barred defamation claim re-pleaded as conspiracy to defame claim);[15] *Orlando Sports Stadium, Inc. v. Sentinel Star Co.*, 316 So. 2d 607, 609 (Fla. Dist. Ct. App. 1975) (dismissing complaint for failing to state a claim where the plaintiff did not comply with certain statutory requirements regarding libel claims).

Whether the single publication rule exists to reinforce the statute of limitations or to bar plaintiffs from circumventing other meritorious defenses, it has no application here.  Powell does not argue that Smartmatic's defamation claims are barred by the statute of limitations.  *See generally* Mem.  Nor does she argue that Smartmatic asserted injurious falsehood claims to circumvent defects in its defamation claims.  *See id.*; *see also Callaway*, 831 So. 2d at 208 (the single publication doctrine prevents plaintiffs from "circumventing a valid defense to defamation by recasting essentially the same facts into several causes of action all meant to compensate for

---

[15] Powell cites *Ovadia* for the proposition that the single publication Rule "does ***not*** permit multiple actions to be maintained when they arise from the same publication."  Mem. at 18 (emphasis supplied by Powell).  But the court actually stated that the rule "does not permit multiple actions to be maintained when they arise from the same publication ***upon which a failed defamation claim is based***."  *Ovadia*, 756 So. 2d at 140–41 (emphasis added).

the same harm").  In fact, she argues the *opposite*—she claims (erroneously) that Smartmatic has disguised its injurious falsehood claims as *defamation* claims.  Mem. at 22–24.  As such, Powell does not assert any reason why the single publication rule applies here—in contravention of binding D.C. Circuit authority, no less.  *Id.*

> **D.**     **Smartmatic has adequately pleaded special damages in support of its injurious falsehood claims.**

Powell argues that Smartmatic "dressed" injurious falsehood claims as defamation claims in Counts II–V and VII to avoid pleading special damages, Mem. at 22–24, and that *all* of its injurious falsehood claims (including the injurious falsehood claims "dressed" as defamation claims) should be dismissed because Smartmatic does not plead special damages.[16]  Mem. at 21–24.  Her arguments fail, though, because Smartmatic has adequately pleaded defamation claims in Counts II–V and VII, and it has adequately pleaded special damages in support of its actual injurious falsehood claims.

> **1.**     **Counts II–V and VII are not injurious falsehood claims "dressed" as defamation claims.**

To state a cause of action for defamation, Smartmatic must allege and prove, among other elements, that Powell made a false and defamatory statement concerning it.  *Oparaugo*, 884 A.2d at 76.  A statement is defamatory if it makes Smartmatic "appear odious, infamous, or ridiculous," or if it tends to injure Smartmatic "in [its] trade, profession or community standing, or lower [it] in the estimation of the community."  *See Nunes v. WP Co. LLC*, 2021 WL 3550896 at *4 (D.D.C. Aug. 11, 2021) (Nichols, J.) (citations omitted).  "[A] court's power to find that a statement is not defamatory as a matter of law is limited."  *White v. Fraternal Order of Police*, 909 F.2d 512, 518 (D.C. Cir. 1990).  A court can rule as a matter of law that a statement is not

---

[16] Powell relies on Florida law, but she identifies no conflict between D.C. law and Florida law. Thus, D.C. law applies.  *Powell*, 554 F. Supp. 3d at 57 n.6.

libelous "only when [it] can say that the publication is not reasonably capable of any defamatory meaning and cannot be reasonably understood in any defamatory sense." *Nunes*, 2021 WL 3550896 at *4 (citation omitted).

Powell claims that Counts II–V and VII are not defamation claims, and are, instead, injurious falsehood claims because she merely disparaged Smartmatic's products "and not the company itself." Mem. at 23. It is axiomatic, though, that false statements can both "attack a person's character as well as disparage a property interest," and that in those circumstances, a plaintiff can assert both defamation and injurious falsehood claims. *Roemer v. Comm'r*, 716 F.2d 693, 699 (9th Cir. 1983); *see also Mackie v. Awtry*, 2016 WL 5391182 at *3 (N.D. Ill. Sep. 27, 2016) ("[A] single statement can constitute both commercial disparagement and defamation."); *Glob. Truss Am. LLC v. GLP German Light Prods*., 2011 WL 13220296 at *14 (C.D. Cal. Dec. 1, 2011) ("Plaintiff's statements fall under both trade libel and defamation because the statements attack both the quality of Defendant GLP's products . . . and Defendant GLP's reputation."); *Eng'd Framing Sys. v. Vescom Structures, Inc*., 2005 WL 8174971 at *2 (D.N.J. Nov. 1, 2005) ("If . . . a statement about the poor quality of a product implies that the seller is fraudulent, then the statement may be actionable under both theories.").

That is the case here. To be sure, aspects of Powell's false statements and implications alleged in Counts II–V and VII falsely disparage Smartmatic's technology and software, which is why Smartmatic also asserted injurious falsehood claims. *See Q Int'l Courier, Inc. v. Seagraves*, 1999 WL 1027034 at *7 (D.D.C. Feb. 26, 1999) (injurious falsehood occurs where the defendant falsely disparaged plaintiff's product). But Powell's false statements and implications alleged in Counts II–V and VII are also capable of defamatory meaning because they could cause a reasonable person to believe that Smartmatic, the company, participated in a widespread fraud to

overthrow the 2020 election and is corrupt for other reasons.  *See, e.g.*, *Westfahl v. District of Columbia*, 75 F. Supp. 3d 365, 375 (D.D.C. 2014) ("A false allegation of criminal wrongdoing is defamation *per se*."); *Fridman v. Bean LLC*, 2019 WL 231751 at *4 (D.D.C. Jan. 15, 2019) (article reporting "a corrupt relationship between plaintiffs and Putin's government against the backdrop of the latter's attempt to interfere in the 2016 presidential election" was capable of defamatory meaning).  The following allegations are instructive:

- **Count II**: Powell stated and implied that Smartmatic's products and software were widely used in the election that she claimed was fraudulent.  Compl. ¶¶ 396, 131.  For example, Powell stated: "this is a massive election fraud . . . [a]nd I'm concerned it involved, not only Dominion and its Smartmatic software, but that the software essentially was used by other election machines also."  *Id.* ¶ 132(b).  A reasonable juror could conclude, based on Powell's statement, that because Smartmatic's products and software were widely used in the election that Powell contended was stolen, it (Smartmatic) participated in the fraud.

- **Count III**: Powell stated and implied that Smartmatic's software and technology were used to "rig" the election.  Compl. ¶¶ 410, 148.  For example, Powell stated: "And President Trump won by not just hundreds of thousands of votes, but by millions of votes that were shifted by this software that was expressly designed for that purpose."  *Id.* ¶ 149(a).  A reasonable juror could conclude, based on Powell's statement, that because Smartmatic's products and software were used to rig the election, Smartmatic participated in the rigging.

- **Count IV**: Powell stated and implied that Smartmatic's software was hacked and compromised in the election because it employed "backdoors" and other tools that made it easy to manipulate.  Compl. ¶¶ 424, 165.  For example, Powell stated that Smartmatic deliberately "violated state laws" concerning certification of its software.  *Id.* ¶ 166(j).  A reasonable juror could understand, based on Powell's statement, that because Smartmatic's software was hacked and Smartmatic violated laws in the certification process, it was complicit in efforts to steal the election.

- **Count V**: Powell stated and implied that Dominion used Smartmatic's software in the 2020 election.  Compl. ¶¶ 438, 139.  For example, Powell asserted that "Dominion and its Smartmatic software" could be used to "drag-and-drop Trump votes to a separate folder and then delete that folder."  *Id.* ¶ 140(k).  A reasonable juror could understand, based on Powell's statement, that because Smartmatic was connected with Dominion, it conspired with Dominion to steal the election.

- **Count VII**: Powell stated and implied that Smartmatic designed its products specifically to rig elections.  Compl. ¶¶ 466, 190.  For example, Powell stated that Smartmatic's products were "created for the express purpose of being able to alter votes and secure the re-election of Hugo Chávez."  *Id.* ¶ 191(e).  A reasonable juror

could understand, based on Powell's statement, that because Smartmatic designed its products to rig elections, it is a criminal and corrupt enterprise.

Powell's false statements and implications in Counts II–V and IV are clearly capable of defamatory meaning because a reasonable juror could conclude, based on Powell's statements in each claim, that Smartmatic participated in a fraud to steal the 2020 election and/or that it designs products specifically to steal elections. *See Fridman*, 2019 WL 231751 at *4.

### 2.    Smartmatic has sufficiently alleged special damages.

Powell's argument that Smartmatic has not adequately pleaded special damages in support of its injurious falsehood claims—whether or not those claims include Counts II–V and VII—also fails. Mem. at 21–22. An injurious falsehood claim requires that the plaintiff plead "special damages." *Browning v. Clinton*, 292 F.3d 235, 245 (D.C. Cir. 2002). Special damages are losses of an economic or pecuniary nature. *Robertson v. McCloskey*, 680 F. Supp. 414, 415 (D.D.C. 1988). A defamation or injurious falsehood plaintiff must set forth "the precise nature of [its] losses as well as the way in which the special damages resulted from the allegedly false publication." *Powell*, 554 F. Supp. 3d at 73–75 (quoting *Shoen v. Washington Post*, 246 F.2d 670, 672 (D.C. Cir. 1957)).

Powell claims that Smartmatic fails to allege special damages because it alleges only that its business value has declined. Mem. at 22. She ignores, though, that Smartmatic has alleged several forms of realized pecuniary harm. Smartmatic alleges that, as a direct result of Powell's false statements, its operations have come under attack, and people have threatened Smartmatic's employees and officers. Compl. ¶ 373. Smartmatic, therefore, suffered economic harm in the form of specific additional expenses, including in excess of: (1) $400,000 spent on public relations and crisis management services (Compl. ¶ 373(a)); (2) $100,000 in cybersecurity expenses (*id.* ¶ 373(b)); and (3) $700,000 in retention and recruitment expenses (*id.* ¶ 373(c)).

Moreover, Smartmatic has alleged that it lost future contracts as a result of Powell's defamatory statements. *Id.* ¶¶ 371–379). These allegations adequately plead special damages. *See Powell*, 554 F. Supp. 3d at 73–75.

   **E.   Smartmatic sufficiently alleges claims in Counts II, IV, VIII, and X.**

   Powell argues that Counts II and IV for defamation and Counts VIII and X for injurious falsehood must be dismissed because they "rely on statements allegedly made by Giuliani or Fox hosts." Mem. at 24–28. Powell ostensibly argues that her false statements Smartmatic has alleged in Counts II, IV, VIII, and X are not actionable, which leaves Smartmatic with only statements asserted by Giuliani or Fox to support its claims. Her argument is misplaced for multiple reasons.

   *First*, Powell waived her argument because she fails to cite a single authority. *Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are deemed waived."); *Fling v. Martin*, 2020 WL 4569335 at *2 n.5 (D.D.C. Aug. 7, 2020) (Nichols, J.) (same). Indeed, due to the lack of authority, Smartmatic and this Court cannot be certain of the argument she asserts. Thus, the Court should not consider it. *Id.*

   *Second*, even if the Court considers Powell's apparent argument, it fails on its merits. As discussed above, to state a cause of action for defamation, a plaintiff must plead, in pertinent part, a false and defamatory statement concerning the plaintiff. *Nunes*, 2021 WL 3550896 at *4. A claim for injurious falsehood similarly requires a plaintiff to allege that the defendant made an unprivileged publication of false statements concerning the plaintiff's property or products. *3M Co. v. Boulter*, 842 F. Supp. 2d 85, 118 (D.D.C. 2012).

   Smartmatic has sufficiently alleged that Powell asserted false and defamatory statements in Counts II and IV. *See supra* Part IV.D.1. Smartmatic has also sufficiently alleged in Counts

VIII and X that Powell asserted false statements regarding its products and software.  In Count

VIII, Smartmatic alleges, for example, that Powell falsely stated that Smartmatic's software was

used in Dominion's voting machines.  Compl. ¶ 132(b) (citing *Sunday Morning Futures with*

*Maria Bartiromo*, November 15, 2020 (Compl. Ex. 5)).  And, in Count X, Smartmatic alleges

that Powell falsely stated that the CIA, FBI, and other government organizations received

"multiple reports of wrongdoing and failures and vulnerabilities" in Smartmatic's products.

Compl. ¶ 166(i) (citing *Sunday Morning Futures with Maria Bartiromo*, November 15, 2020

(Compl. Ex 5)).  These false statements by ***Powell***, as opposed to Giuliani or Fox, are actionable

for injurious falsehood.  *See 3M Co.*, 842 F. Supp. 2d at 118.  Thus, Powell's argument fails.

## CONCLUSION

Defendant Sidney Powell concocted and executed a disinformation campaign of

unprecedented proportions in which she falsely told hundreds of millions of people that the 2020

U.S. presidential election was stolen for President Biden and that Smartmatic was to blame.  She

deliberately chose the District of Columbia as the epicenter of her disinformation campaign

because it is the seat of the federal government, and she knew that it would add credibility to her

false narrative.  As such, this Court has the authority to hold her accountable for her misconduct.

It should assert personal jurisdiction over her, deny her motion to dismiss, and allow this case to

proceed to discovery.

Dated:  July 8, 2022                                  Respectfully submitted,

                                                     s/ J. Erik Connolly
                                                     J. Erik Connolly (D.C. Bar No. IL0099)
                                                     Nicole E. Wrigley (D.C. Bar No. IL0101)
                                                     Lauren C. Tortorella (D.C. Bar No. IL0102)
                                                     Michael E. Bloom (*pro hac vice forthcoming*,
                                                     IL ARDC No. 6302422)
                                                     Kate Watson Moss (*pro hac vice forthcoming*,

IL ARDC No. 6321176)
BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: 312.212.4949
econnolly@beneschlaw.com
nwrigley@beneschlaw.com
ltortorella@beneschlaw.com

*Attorneys for the Plaintiffs Smartmatic USA
Corp., Smartmatic International Holding
B.V., and SGO Corporation Limited*

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of July, 2022, the foregoing Smartmatic's Opposition to Defendant Sidney Powell's Motion To Dismiss was served on all parties through the Court's ECF system.

Dated:  July 8, 2022

Respectfully submitted,

*s/ J. Erik Connolly*
J. Erik Connolly (D.C. Bar No. IL0099)
Nicole E. Wrigley (D.C. Bar No. IL0101)
Lauren C. Tortorella (D.C. Bar No. IL0102)
Michael E. Bloom (*pro hac vice forthcoming*,
IL ARDC No. 6302422)
Kate Watson Moss (*pro hac vice forthcoming*,
IL ARDC No. 6321176)
BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: 312.212.4949
econnolly@beneschlaw.com
nwrigley@beneschlaw.com
ltortorella@beneschlaw.com
mbloom@beneschlaw.com
kwatsonmoss@beneschlaw.com

*Attorneys for the Plaintiffs Smartmatic USA
Corp., Smartmatic International Holding
B.V., and SGO Corporation Limited*