# Exhibit A

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

|  |  |  |
|---|---|---|
| SMARTMATIC USA CORP., SMARTMATIC INTERNATIONAL HOLDING B.V., and SGO CORPORATION LIMITED, | ) ) ) ) | |
| | ) | Index No. 151136/2021 |
| *Plaintiffs,* | ) ) | Motion Seq. #008 |
| -against- | ) ) ) | |
| FOX CORPORATION, FOX NEWS NETWORK, LLC, LOU DOBBS, MARIA BARTIROMO, JEANINE PIRRO, RUDOLPH GIULIANI, and SIDNEY POWELL, | ) ) ) ) ) | |
| *Defendants.* | ) ) | |

<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT**</u>
<u>**SIDNEY POWELL'S MOTION TO DISMISS**</u>

HOWARD KLEINHENDLER ESQUIRE
369 LEXINGTON AVENUE, 12TH FLOOR
NEW YORK, NEW YORK 10017
(917) 793-1188
howard@kleinhendler.com
www.kleinhendler.com

*Attorney for Sidney Powell*

## Table of Contents

INTRODUCTION ......................................................................................................... 1

SUMMARY OF ALLEGATIONS IN THE COMPLAINT .......................................... 2

ARGUMENT ............................................................................................................... 3

I.      THIS COURT LACKS PERSONAL JURISDICTION OVER SIDNEY POWELL ........ 3

        A. Standard of Review………………………………………………………………3

        B. This Court Lacks Jurisdiction Under CPLR 302(a)(1)……………………………..5

        C. The Complaint Fails to Allege "Conspiracy" Jurisdiction……………………………9

        D. The Exercise of Jurisdiction Would Not Comport With Due Process……………… 10

II.     THE COMPLAINT SHOULD BE DISMISSED PURSUANT
        TO NEW YORK'S ANTI-SLAPP LAW ........................................................ 11

III.    THE SPEECH AT ISSUE IS PROTECTED AND NOT ACTIONABLE……….....      17

CONCLUSION............................................................................................................ 24

CERTIFICATE OF COMPLIANCE ………………………………………………………25

## <u>TABLE OF AUTHORITIES</u>

## CASES

*Angel v. Bank of Tokyo-Mitsubishi, Ltd.,* 39 A.D.3d 368 (1st Dept. 2007) ................................... 7

*Belco Petroleum Corp. v. Aig Oil Rig,* 164 A.D.2d 583 (1st Dept. 1991) .................................... 7

*Best Van Lines, Inc. v. Walker,* 490 F.3d 239 (2d Cir. 2007) .................................... 5, 6

*Bowyer v. Ducey*, USDC D.AZ, Case No. 2-20-cv-02321 ........................................... 3

*Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 ........................................ 4

*California Transport v. Trucking Unlimited*, 404 U.S. 508 (1972) ............................................ 22

*Cardno Chemrisk, LLC v Foytlin*, 2015 N.Y. Misc. LEXIS 1027 (2015) .................................... 6

*Coast to Coast Energy, Inc. v. Gasarch,* 149 A.D.3d 485 (1st Dept. 2017) ............................. 3, 7

*Copp v. Ramirez,* 62 A.D.3d 23 (1st Dept. 2009) ................................................................ *passim*

*Courtroom TV Network v. Focus Media,* 264 A.D.2d 351 (1st Dept. 1999) ................................. 8

*Cuker Indus, Inc. v. Crow Constr. Co.,* 6 A.D.2d 415 (1st Dept. 1958) ........................................ 9

*Deutsche Bank Sec. Inc. v. Montana Bd. of Invs.,* 7 N.Y.3d 65, 71 (2006) …………………….…5

*Ehrenfeld v. Bin Mahfouz,* 9 N.Y.3d 501 (2007) .......................................................... 6

*Feehan v. Wisconsin Elections Comm'n, et al.,* USDC E.D.WI Case No. 2:20-cv-1771 ............. 3

*Findlay v. Duthuit,* 86 A.D.2d 789 (1st Dept. 1982) ....................................................... 4

*Front, Inc. v. Khalil,* 24 N.Y.3d 713 (2015) ............................................................. 23

*Garrison v. Louisiana*, 379 U.S. 64 (1964) .................................................. 14, 17

*George Reiner & Co. v. Schwartz,* 41 N.Y.2d 648 (1977) ......................................... 3, 7

*Glob. Fin. Corp. v. Triarc Corp.,* 93 N.Y.2d 525 (1999) ............................................. 10

*Gross v. New York Times Co.*, 281 A.D.2d 299 (1st Dept. 2001) .............................. 16

*Gross v. New York Times Co.,* 82 N.Y.2d 146 (1993) ........................................... *passim*

*Hanson v. Deckla,* 357 U.S. 235 (1958) ................................................................. 4, 11

*Hariri v. Amper*, 51 A.D.3d 146 (1st Dept. 2008) ...................................................... 11

*Harte-Hanks Communications, Inc. v. Connaughton,* 491 U.S. 657 (1989) ................................ 16

*Hickey v. Travelers Ins. Co.,* 158 A.D.2d 112 (1st Dept. 1990) ......................................... 9

*Hotchner v. Castillo-Puche,* 551 F.2d 910 (2d Cir. 1977) ................................................ 22

*Immuno, AG v. Moor-Jankowski,* 145 A.D.2d 114 (1st Dept. 1989) ......................................... 17

*Int'l Shoe v. Washington,* 326 U.S. 310 (1945) .......................................................... 11

*Jiminez v. United Fed'n of Teachers,* 239 A.D.2d 265 (1st Dept. 1997) ................................... 13

*Khan v. New York Times Co.*, 269 A.D.2d 74 (1st Dept. 2000) ............................................ 15

*King v. Whitmer*, USDC E.D. MI. Case No. 20-cv-13134 .................................................... 3

*LaMarc v. Pak-Mor Mfg., Co.,* 95 N.Y.2d 210 (2000) ..................................................... 10

*Lawati v. Montague Morgan Slade Ltd.,* 102 A.D.3d 427 (1st Dept. 2013) ................................. 10

*Legros v. Irving,* 38 A.D.2d 53 (1st Dept. 1971) ....................................................... 4, 9

*Lemberg v. John Blair Communs.,* 258 A.D.2d 291 (1st Dept. 1999) ........................................ 23

*Matter of James v. iFinex Inc.,* 185 A.D.3d 22 (1st Dept. 2020) .......................................... 3

*McGill v. Parker,* 179 A.D. 2d 98 (1st Dept. 1992) ....................................................... 18

*Members of City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789 (1984). ......... 17

*Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 18 (1990) ................................................. 17

*N.Y. Times v. Sullivan,* 376 U.S. 254 (1964) ...................................................... *passim*

*NAACP v. Button*, 371 U.S. 415 (1963) ............................................................... 23, 24

*Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361 (2018) ............................. 21

*Old Dominion Branch No. 496 v. Austin,* 418 U.S. 264 (1974) ............................................. 15

*Palin v. N.Y. Times Co.* 2020 U.S. Dist. LEXIS 243595 (S.D.N.Y. Dec. 29, 2020) ................... 12

iii

*Park Knoll Assoc. v. Schmidt*, 59 N.Y.2d 205 (1983) ................................................................ 23

*Pearson, et al. v. Kemp, et al.,* USDC N.D. GA Case No. 120-cv-4809 ....................................... 3

*People ex rel. Spitzer v. Grasso*, 54 A.D.3d 180 (1st Dept. 2008) ............................................. 14

*Prozeralik v. Capital Cities Communs.*, 82 N.Y.2d 466 (1993) .................................................. 17

*Purcell v. Navient Sols.*, 2019 U.S. Dist. LEXIS 6469 (S.D.N.Y. January 14, 2019) ................. 16

*Rivera v. Time Warner Inc.*, 56 A.D.3d 298 (1st Dept. 2008) .................................................... 13

*Sandals Resorts Intl. Ltd. v. Google, Inc.,* 86 A.D.3d 32 (1st Dept. 2011) ........................... 18, 21

*SPCA of Upstate N.Y., Inc. v. American Working Collie Assn.,* 18 N.Y.3d 400 (2012) ............... 5

*St. Amant v. Thompson,* 397 U.S. 727 (1968) ................................................................. 14, 15, 16

*Steinhilber v. Alphonse,* 68 N.Y.2d 283 (1986) ......................................................................... 22

*Stewart v. Volkswagen of Am., Inc.,* 81 N.Y.2d 203 (1993) ........................................................ 3

*Strelsin v. Barrett,* 320 N.Y.S.2d 885 (1971) .............................................................................. 6

*Suozzi v. Parente*, 202 A.D.2d 94 (1st Dept. 1994) ................................................................... 16

*Sweeney v. Prisoners' Legal Servs. of N.Y.,* 84 N.Y.2d 786 (1995) ........................................... 14

*Thomas v. Collins*, 323 U.S. 516 (1945) .................................................................................... 23

*United States v. Alvarez*, 567 U.S. 709 (2012) .......................................................................... 21

*Watts v. United States,* 394 U.S. 705 (1969) ............................................................................. 22

*Wiener v. Weintraub,* 22 N.Y.2d 330 (1968) .............................................................................. 23

*Zimmerman v. Hanks,* 2000 U.S. App. LEXIS 33710 (7th Cir. Dec. 19, 2000) ......................... 16

iv

**OTHER AUTHORITIES**

CIV. RIGHTS LAW 76-a ......................................................................................................... 11, 12

**RULES**

CPLR 302 ................................................................................................................... *passim*

CPLR 3211(a)…………………………………………………………………………………….8

CPLR 3211(g) ..................................................................................................................... 8, 11

v

## INTRODUCTION

Plaintiffs are two foreign and one domestic corporation (collectively "Smartmatic") with one thing in common: they have nothing to do with New York. They do not reside here, own real estate here, nor conduct business here. They bring this defamation suit against the Fox Corporation and its subsidiary Fox News Network LLC, a multi-billion dollar publicly traded corporation controlled by Rupert Murdoch and his family (collectively, "Fox"). Fox operates from its headquarters on 6th Avenue in Manhattan. Other defendants include three Fox broadcasters who operate from Fox's New York facilities and Rudy Giuliani, a former mayor of New York who resides in Manhattan. And then there's defendant Sidney Powell (hereinafter, "Powell"). A Texas lawyer, who resides in Texas, is only licensed to practice law in Texas, does not own any real estate in New York, and does not conduct any business in New York.

This court has no jurisdiction over Powell.

One would think that a complaint spanning 754 paragraphs over 276 pages would have considered that New York does not permit long arm jurisdiction over out of state residents in defamation cases. But it does not. Instead, it concocts a civil conspiracy basis for jurisdiction which claims, with no underlying factual allegations, that Sidney Powell authorized and approved the content of Fox's broadcasts and conspired with these Fox defendants to defame and disparage Smartmatic's business. Really? There's no mention of this control in any of Fox's public filings with the SEC. There are no statements from Rupert Murdoch and his family acknowledging this vast control in the hands of a single lawyer from Texas. There are no credits displayed on any of the Fox broadcasts around the country acknowledging Powell's influence. Let's just call this what it is: Foolhardy pleadings from a desperate plaintiff that *lost* $17 million in 2019 and hopes to

1

INDEX NO. 151136/2021

RECEIVED NYSCEF: 04/08/2021

make a profit with its unsupported demand for $2.7 billion in damages.  The court should not be drawn into this miserable theatre of the absurd.

Should the court disagree and find that it has personal jurisdiction over Powell, the complaint must be dismissed under New York's anti-SLAPP statute that protects Powell's statements referred to by the plaintiffs because they all relate to election integrity and the fraud that pervaded the 2020 general election.  Powell's statements are also protected under the privilege attendant to court filings, as all her statements were made based on evidence submitted in various court filings around the country.

## SUMMARY OF ALLEGATIONS IN THE COMPLAINT

Plaintiff Smartmatic USA Corp. is a Delaware corporation with its principal place of business in Boca Raton, Florida. Compl. ¶14. Plaintiff Smartmatic International Holding, B.V., which owns Smartmatic USA Corp., is a Netherlands corporation with its principal place of business in Amsterdam. *Id.* ¶15. Plaintiff SGO Corporation Limited, which owns Smartmatic International Holding, B.V., is a United Kingdom corporation with its principal place of business in London. *Id.* ¶16. There is no allegation that any of these entities has a presence in or transacts any business in New York.

Defendant Sidney Powell is a lawyer who resides in Dallas, Texas. *Id.* ¶26. Powell is only licensed to practice law in Texas.  She does not own any real estate in New York or conduct any business in New York. (Powell Affidavit, ¶¶2-6).

The Complaint alleges that Powell, while appearing as a guest on the Fox defendants' network, disparaged Plaintiffs while discussing the 2020 presidential election and the lawsuits she

Case 1:21-cv-02995-CJN   Document 27-4   Filed 07/11/22   Page 10 of 32

ultimately filed challenging the voting results in Michigan, Arizona, Wisconsin, and Georgia.[1]
*See, e.g.,* Compl. ¶¶372-390. Among other things, the Complaint alleges that Powell disparaged
Plaintiffs by claiming that their technology and software was widely used in the 2020 U.S. election,
that Dominion Voting Systems used Plaintiffs' technology and software in the election, that the
technology and software was either hacked or rigged in order to steal the election, and that the
technology and software were used to send votes overseas during the election. *See, e.g.,* Compl.
¶393. Plaintiffs allege that these statements by Powell are all part of an overarching conspiracy
with the other defendants to disparage Plaintiffs' business.  Compl. ¶36.

## ARGUMENT

### I. THIS COURT LACKS PERSONAL JURISDICTION OVER SIDNEY POWELL

#### A.      Standard of Review

"On a motion pursuant to CPLR 3211(a)(8) to dismiss for lack of personal jurisdiction, the
party asserting jurisdiction bears the burden of demonstrating 'satisfaction of statutory and due
process prerequisites.'" *Matter of James v. iFinex Inc.,* 185 A.D.3d 22, 28-29 (1st Dept. 2020)
(quoting *Stewart v. Volkswagen of Am., Inc.,* 81 N.Y.2d 203, 207 (1993)).  It is the plaintiffs'
burden to present sufficient evidence, through affidavits or other relevant documents, to
demonstrate jurisdiction. *Coast to Coast Energy, Inc. v. Gasarch,* 149 A.D.3d 485, 486 (1st Dept.
2017).

In order to comport with due process, the assertion of personal jurisdiction must be
predicated on the defendant's "minimal contacts" with New York. *George Reiner & Co. v.*

---

[1] *See King v. Whitmer*, USDC E.D. MI, Case No. 20-cv-13134; *Bowyer v. Ducey*, USDC D. AZ
Case No. 2-20-cv-02321; *Feehan v. Wisconsin Elections Comm'n,* USDC E.D. WI, Case No. 2:20-
cv-1771; *Pearson v. Kemp,* USDC N.D. GA, Case No. 120-cv-4809.

Case 1:21-cv-02995-CJN   Document 27-4   Filed 07/11/22   Page 11 of 32

*Schwartz,* 41 N.Y.2d 648, 649-50 (1977). To establish such contacts, "*it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State*, thus invoking the benefits and protection of its laws." *Id.* at 651 (quoting *Hanson v. Deckla,* 357 U.S. 235, 253 (1958)) (emphasis in *Schwartz*). Moreover, a lawsuit must "aris[e] out of or relat[e] to the defendant's contacts with the forum" for a court to gain specific jurisdiction over a defendant. *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017).

Because Powell is a resident of Texas, she cannot be subject to personal jurisdiction unless Plaintiffs establish that New York's long arm statute confers jurisdiction by virtue of her contacts with the state. *Copp v. Ramirez,* 62 A.D.3d 23, 28 (1st Dept. 2009). Plaintiffs claim that this court has personal jurisdiction over Powell pursuant to CPLR 302, but do not identify what subsection might provide jurisdiction. Compl. ¶¶34-35. Although §§ 302(a)(2) and (a)(3) permit jurisdiction for tortious acts committed within New York or outside of New York causing in-state injuries, they explicitly exempt any causes of action based on defamation or sounding in defamation. *Id.* (jurisdiction where one "commits a tortious act . . . *except to a cause of action for defamation of character arising from the act.*") (emphasis added)*; see also Findlay v. Duthuit,* 86 A.D.2d 789, 790 (1st Dept. 1982) (no jurisdiction under §§ 302(a)(2) and (a)(3) where complaint sounds in defamation, regardless of what the claim is called). These exceptions reflected the Legislature's intent "to avoid unnecessary inhibitions of freedom of speech or the press. These important liberties are entitled to special protections lest procedural burdens shackle them." *Legros v. Irving,* 38 A.D.2d 53, 55 (1st Dept. 1971).

Here, the claims against Powell are all for false statements or disparagement, *i.e.,* defamation, Compl. Counts 1-3, 5-6, 8-11, 12-13 & 16, and thus the tortious conduct provisions

4

of the long-arm statute do not apply. Nor does the Complaint allege that Powell owns, uses or possesses any real property in the state, as required for jurisdiction under § 302(a)(4). Thus, jurisdiction must lie, if at all, under § 302(a)(1). As demonstrated below, it does not.

**B.     This Court Lacks Jurisdiction Under CPLR 302(a)(1)**

There is no basis for jurisdiction under 302(a)(1)In order to determine whether jurisdiction lies under this section, New York courts assess i) whether the defendant has "transacted any business" in the state, and ii) whether the cause of action arises from that business. *Deutsche Bank Sec. Inc. v. Montana Bd. of Invs.,* 7 N.Y.3d 65, 71 (2006).

With respect to the first factor, "New York Courts construe 'transacts any business within the state' more narrowly in defamation cases than they do in the context of other sorts of litigation." *SPCA of Upstate N.Y., Inc. v. American Working Collie Assn.,* 18 N.Y.3d 400, 405 (2012) (quoting *Best Van Lines, Inc. v. Walker,* 490 F.3d 239, 248 (2d Cir. 2007)). As the Court of Appeals noted in *SPCA,*

> Through CPLR 302, the Legislature has manifested its intention to treat the tort of defamation differently from other causes of action and we believe that, as a result, particular care must be taken to make certain that non-domiciliaries are not haled into court in a manner that potentially chills free speech without an appropriate showing that they purposefully transacted business here and that the proper nexus exists between the transactions and the defamatory statements at issue.

*SPCA,* 18 N.Y.3d at 405-06.

The mere utterance of a defamatory statement in New York is insufficient to establish personal jurisdiction in a defamation action. "[W]here the defamatory publication itself constitutes the alleged 'transact[ion] of business' for the purposes of section 302(a)(1), more than the distribution of the libelous statement must be made within the state to establish long-arm jurisdiction over the person distributing it." *Best Van Lines,* 490 F.3d at 248. Thus, long-arm

5

jurisdiction cannot be based the mere publication of statements made elsewhere on a New York television broadcast. *See Strelsin v. Barrett,* 320 N.Y.S.2d 885 (1971) (broadcasting in New York of defamatory statements recorded in California not transacting business); *cf. Copp v. Ramirez,* 62 A.D.3d 23 (1st Dept. 2009) (New Mexico residents' alleged defamatory statements broadcast on *NBC Nightline* too attenuated from alleged "transaction of business" in New York which had occurred years earlier). The same is true for statements published on a website. *Ehrenfeld v. Bin Mahfouz,* 9 N.Y.3d 501, 510 n.7 (2007) (posting of defamatory statements on website accessible in New York not "transacting business"); *Cardno Chemrisk, LLC v Foytlin*, 2015 N.Y. Misc. LEXIS 1027, *4, (2015) (posting an article on the *Huffington Post* website, a New York corporation, had no relation to New York and did not constitute transacting business in New York).

Here, Plaintiffs' claims against Powell are based entirely on her appearances on various television shows broadcast by the Fox defendants, and thus jurisdiction does not lie. Powell is not alleged to have been present in New York for any of these broadcasts. If such appearances alone constituted the "transaction of business" under § 302(a)(1), the exceptions for defamation found in subsections (a)(2) and (a)(3) of the statute would be rendered meaningless.

No doubt recognizing that defamatory statements alone do not support jurisdiction, Plaintiffs resort to a series of irrelevant and spurious allegations. Plaintiffs allege, for example, that Powell made statements "knowing and intending for them to be broadcast (verbal) and published (written/posted) from New York, by a New York-based organization," and that she "authorized and approved" the broadcast. Compl. ¶34. But those are just spruced-up allegations that her out-of-forum statements were published in New York, which is insufficient for jurisdiction, *see Best, Copp* and *Ehrenfeld.* Allegations that Powell "authorized and approved" publication are not only unsupported by any facts, but also irrelevant. If publishing the statements

Case 1:21-cv-02995-CJN   Document 27-4   Filed 07/11/22   Page 14 of 32

oneself is not sufficient, authorizing and approving publication by someone else surely can't be, either.

Plaintiffs allege "on information and belief" that Powell "coordinated with New York-based reporters and employees of Fox. Compl. ¶35. But Plaintiffs do not identify a single fact to support this allegation, and it does not establish jurisdiction. *Coast to Coast Energy,* 149 A.D.3d at 486. At a minimum, Plaintiffs are required to identify the factual and other evidentiary basis for their "information and belief." *See, e.g., Belco Petroleum Corp. v. Aig Oil Rig,* 164 A.D.2d 583, 599 (1st Dept. 1991) (requiring plaintiff to identify the factual bases for its allegations at the pleading stage); *Angel v. Bank of Tokyo-Mitsubishi, Ltd.,* 39 A.D.3d 368, 370 (1st Dept. 2007) (complaint's allegation upon information and belief insufficient to support fraudulent inducement claim).

Plaintiffs allege that Powell used her alleged "disinformation campaign" to solicit money from individuals – "including those located in New York" – for her legal defense fund and Super PAC. *See, e.g.,* Compl. ¶34. But, again, Plaintiffs fail to allege any facts suggesting that Powell directed such activity at New York, either specifically or exclusively, such that she purposefully availed herself of the privilege of conducting activities within New York. *George Reiner & Co.,* 41 N.Y.2d at 649-50. Nor do Plaintiffs allege any connection between the purported solicitations and the injuries they claim to have suffered, all of which relate to the alleged defamatory statements, not any fundraising activities. *See Copp,* 62 A.D.3d at 29 (activities alleged to constitute transacting business bore no relationship to defamatory statements that were the subject of plaintiff's claims).

The assertion that Powell "took advantage of New York's unique resources" to "disseminate the disinformation campaign and profit from the disinformation campaign," Compl.

at ¶34, is another Hail Mary pass. Unlike the decision in *Courtroom TV Network v. Focus Media*, 264 A.D.2d 351 (1st Dept. 1999), where the court premised § 302(a)(1) jurisdiction on the defendant's contracting with plaintiff Courtroom TV television network to broadcast defendant's client's advertising tapes, this case is different. *Courtroom TV* was a *breach of contract action*, not defamation, and the foreign party had signed a contract with Courtroom TV, a New York business, for the broadcast of over 300 advertisements. *Id.* at 353-54.

Here, Powell never entered a commercial relationship with Plaintiffs, so there is no relationship "amount[ing] to doing business in New York." Nor did Powell transact any business with the Fox defendants. Rather, the Fox defendants sought out Powell because Powell was in the news, and they are in the news business.[2]

The Complaint also recognizes that Powell and others appearing on the Fox shows were "guests," not merchants. *See* Compl. ¶247 ("Fox News knew its anchors and guests were making baseless claims against Smartmatic."). Nothing in the Complaint suggests that Powell was "transacting business" in New York at all, much less so in the manner or at the level conducted by the Defendant in *Courtroom TV*.

In short, Plaintiffs have not identified conduct by Powell that took place in New York; there are no allegations that she contracted to "supply goods or services in the state" as contemplated by § 302(a)(1). The First Department long ago held, "[t]here is a clear distinction between a situation where the only act which occurred in New York was the mere utterance of the libelous material and on the other hand, a situation where purposeful business transactions have

---

[2]   As the Fox defendants have themselves argued, Powell was invited onto their shows because her lawsuits concerning the election were themselves newsworthy. *See* Fox Defendants' Motion To Dismiss Pursuant to the First Amendment and CPLR §§ 3211(a), (a)(7), and (g), Doc. No. 206 at 2, 11, 13-14, 16 and 17.

taken place in New York giving rise to the cause of action." *Legros,* 38 A.D.2d at 55. Accordingly, this court lacks personal jurisdiction.

### C.   The Complaint Fails to Allege "Conspiracy" Jurisdiction

In a desperate attempt to claim personal jurisdiction, Plaintiffs suggest that Powell was part of a civil conspiracy to harm them. *See, e.g.,* Compl. ¶¶12, 27, 35, 36. For several reasons, this effort is stillborn.

First, as Plaintiffs must recognize, civil conspiracy is not an independent tort in New York. *Hickey v. Travelers Ins. Co.,* 158 A.D.2d 112, 118 (1st Dept. 1990). "The actionable wrong lies in the commission of a tortious act, or a legal one by wrongful means, but never upon the agreement to commit the prohibited act standing alone." *Id.* (quoting *Cuker Indus, Inc. v. Crow Constr. Co.,* 6 A.D.2d 415, 417 (1st Dept. 1958)).

Further, to the extent that "conspiracy jurisdiction" can be invoked to avoid the defamation-based restrictions of § 302(a)(3) jurisdiction, Plaintiffs have failed to adequately allege it. New York courts discussing the concept have noted its application only where conspirators have allegedly i) committed overt tortious acts in the state; ii) the non-domiciliary defendant had an awareness of the effects in New York of its activity; iii) the activity of the co-conspirators in New York was to the benefit of the out-of-state conspirators; and iv) the in-state co-conspirators acted at the direction and control, or on behalf and at the request of the out-of-state conspirators. *Lawati v. Montague Morgan Slade Ltd.,* 102 A.D.3d 427, 428 (1st Dept. 2013).

The Complaint contains no such allegations. There are no allegations that any of the in-state defendants acted at the direction and control of Powell. There are no allegations that they acted on behalf or at the request of Powell. And there are no allegations that they acted for the express benefit of Powell, rather for their own benefit. Indeed, Fox is a multi-billion dollar publicly

traded business with thousands of employees.[3] The suggestion that Powell has control over Fox's broadcast content is absurd.

More to the point, "conspiracy jurisdiction" cannot apply here because there is no allegation that Powell was aware of any purported in-state effects of her conduct. Indeed, Plaintiffs cannot make such an allegation, because the claimed defamatory statements had no legally cognizable impact in New York. As noted, none of the Plaintiffs resides or has a principal place of business here. All of their claimed damages are economic. Compl. ¶¶486-494. Thus, if Plaintiffs were injured at all, that injury did not occur in New York. *See Glob. Fin. Corp. v. Triarc Corp.,* 93 N.Y.2d 525, 529 (1999) (where alleged injury is purely economic, the place of injury is where the plaintiff resides).

Since there was no injury in New York, Powell could not possibly have been aware that her actions might cause injury here. Absent an in-state injury, Plaintiffs cannot bootstrap a conspiracy claim to jurisdiction under § 302(a)(3), because that provision, by its express terms, does not provide jurisdiction absent injury in New York.

### D.    The Exercise of Jurisdiction Would Not Comport with Due Process

Finally, even were this Court to conclude that there is a statutory basis to exercise personal jurisdiction, doing so must still be compatible with due process. *Copp,* 62 A.D.3d at 30-31. Due process is satisfied if a defendant has minimum contacts with New York such that she could reasonably foresee having to defend a suit here, and the prospect of defending a suit comports with "traditional notions of fair play and substantial justice." *Id.* (quoting *LaMarc v. Pak-Mor Mfg.,*

---

[3] For example, *see* Fox Corp. Annual Report (Form 10-K) (Fiscal Year Ended June 30, 2019). Attached as Exhibit 2 to Affirmation of Howard Kleinhendler ("Kleinhendler Aff.").

10

*Co.,* 95 N.Y.2d 210, 216 (2000) and *Int'l Shoe v. Washington,* 326 U.S. 310, 316 (1945)). Such contacts are absent here.

Simply put, this is a case where Plaintiffs (who have no alleged presence or business in New York), seek to force Powell (who likewise has no alleged presence or business in New York), to defend an action in New York courts based entirely on her out-of-state conduct that caused them no injury in New York. The argument that jurisdiction exists on such facts is meritless. The Complaint fails to allege facts suggesting that Powell purposefully availed herself of the privilege of conducting activities in New York, thus invoking the benefits and protection of its laws. *Hanson,* 357 U.S. at 253. Accordingly, this Court may not exercise personal jurisdiction over her consistent with due process.

## II. THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO NEW YORK'S ANTI-SLAPP LAW

Plaintiffs' Complaint is subject to New York's anti-SLAPP laws because it alleges defamation claims against Powell regarding "lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest," namely the 2020 presidential election. CIV. RIGHTS LAW 76-a(1). When a defendant's motion under CPLR 3211(a)(7) seeks dismissal of a SLAPP "action involving public petition and participation," the plaintiff must demonstrate, in addition to satisfying all other pleading requirements, that the "cause of action has a substantial basis in law or is supported by a substantial argument for an extension, modification or reversal of existing law." CPLR 3211(g)(1); *see also Hariri v. Amper*, 51 A.D.3d 146, 150–51 (1st Dept. 2008).

Here, Plaintiffs' Complaint makes no showing that there is a "substantial basis in law," or a "substantial argument" for changing existing law that would support the defamation causes of action alleged against Powell. Thus, unless Plaintiffs can demonstrate otherwise in their response,

the Complaint should be dismissed.

To survive this motion, Plaintiffs must demonstrate that Powell acted with actual malice when making the challenged statements, regardless of whether Smartmatic qualifies as a public figure under *N.Y. Times v. Sullivan,* 376 U.S. 254 (1964).[4] And while not necessary to invoke the statute, Smartmatic in fact *is* a public figure.

Smartmatic, by its own admission is a public figure as it has received wide-spread press of its allegations: "Voting-machine company Smartmatic USA Corp. sued Fox Corp.'s Fox News, seeking $2.7 billion in damages for what it alleges were defamatory on-air comments about the company's products in the aftermath of the presidential election."[5]

Further, Smartmatic was subject to public scrutiny over its foreign ownership: "Voting-machine company Smartmatic Corp. said it would sell its U.S. subsidiary to end a review by the Committee on Foreign Investment in the U.S. into whether Smartmatic is partially owned by the Venezuelan government."[6] Indeed, Chief Executive Anthony Mugica stated, "[s]ince its purchase by Smartmatic, Sequoia's sales have risen sharply to a projected $200 million in 2006." *Id.* Prior

---

[4] *See* Civ. Rights Law 76-a. New York's anti-SLAPP law always required a showing of malice, but prior to amendments enacted in November 2020, the law limited the actual malice requirement to cases initiated by plaintiffs involved in public application or permit controversies. *Palin v. N.Y. Times Co.* 2020 U.S. Dist. LEXIS 243595 at *4 (S.D.N.Y. Dec. 29, 2020). The November 2020 amendments "substantially broadened the reach of the actual malice rule" to apply in any case involving matters of public interest. *Id.* at *4-5 (stating that a plaintiff may only prevail in a SLAPP suit if "in addition to all other necessary elements, [the plaintiff] shall have established by clear and convincing evidence that any communication which gives rise to the action was made with knowledge of its falsity or with reckless disregard of whether it was false."). The statute makes no distinction between public-figure plaintiffs and non-public-figure plaintiffs.

[5] Benjamin Mullin and Alexa Corse, *Voting Machine Company Smartmatic Sues Fox News Over Election Claims*, WSJ (Feb. 4, 2021). Kleinhendler Aff. Ex. 3.

[6] Bob Davis, *Smartmatic to Shed U.S. Unit, End Probe Into Venezuelan Links*, WSJ (Dec. 22, 2006). Kleinhendler Aff. Ex. 4.

to that time, the *Wall Street Journal* reported that "[f]ederal investigators are looking into whether Smartmatic Corp., a voting-machine company whose equipment is used widely in the U.S. and abroad, paid bribes to win a Venezuela election contract in 2004."[7]

Moreover, Plaintiffs aver that During the 2020 U.S. election, Smartmatic USA Corp provided election technology and software for Los Angeles County with over 4 million voters. *See* Compl. ¶14.

Under these circumstances, Plaintiffs must show that Powell made each challenged statement with "knowledge of its falsity or with reckless disregard of whether it was false." CIV. RIGHTS LAW 76-a(2); *see also*, *N.Y. Times Co.*, 376 U.S. at 280; *Rivera v. Time Warner Inc.*, 56 A.D.3d 298 (1st Dept. 2008) (reckless disregard is "a high degree of awareness of probable falsity.")

Even at the pleading stage, Plaintiffs are required "to allege facts sufficient to show actual malice with convincing clarity." *Jiminez v. United Fed'n of Teachers,* 239 A.D.2d 265, 266 (1st Dept. 1997). This, Plaintiffs have not done. Indeed, the Complaint concedes that Powell relied on sworn declarations that supported her statements regarding the vulnerability and manipulability of the Smartmatic voting software. *See, e.g.,* Compl. ¶121 (referring to "affidavits" Powell had used to support her claims about Smartmatic). As the Complaint acknowledges, these declarations were made under oath and many of them were filed in courts across the country. Public statements based on sworn declarations cannot, as a matter of law, support a finding that Defendant made the allegedly defamatory statements "with the high degree of awareness of their probable falsity demanded by *New York Times,*" or that Defendant "entertained serious doubts as to [their] truth."

---

[7] Bob Davis and Glenn Simpson, *U.S. Authorities Probe How Smartmatic Won Venezuela Election Pact*, WSJ (Dec. 1, 2006). Kleinhendler Aff. Ex. 5.

13

Case 1:21-cv-02995-CJN Document 27-4 Filed 07/11/22 Page 21 of 32

*People ex rel. Spitzer v. Grasso*, 54 A.D.3d 180, 213 (1st Dept. 2008) (citing *Sweeney v. Prisoners' Legal Servs. of N.Y.,* 84 N.Y.2d 786, 793 (1995) (internal quotations omitted)); *see also Garrison v. Louisiana*, 379 U.S. 64, 74 (1964).

Plaintiffs' attempts to impugn the various declarations as unreliable, attack the veracity or reliability of various declarants, or point to later statements that are arguably inconsistent (*see, e.g.,* Compl. ¶¶401-422) are beside the point. Journalists usually repeat statements from sources (usually unsworn, often anonymous) on whom they rely for their stories, and sometimes those statements turn out not to be true. Yet much of the protection afforded to the press by *N.Y. Times v. Sullivan* would be lost if newspapers and television stations could be drawn into long court battles designed to deconstruct the accuracy of sources on which they rely. Journalists must be free to rely on sources they deem to be credible, without being second-guessed by irate public figures who believe that the journalists should have been more skeptical.

Lawyers involved in fast-moving litigation concerning matters of transcendent public importance, who rely on sworn declarations, are entitled to no less protection. If malice, as that term is defined by *N. Y. Times v. Sullivan*, is to be judged by the kind of hindsight proffered by Plaintiffs in their Complaint, it will render *N. Y. Times v. Sullivan* a dead letter. The true victim will be the public, which will be denied the "uninhibited, robust, and wide-open" discourse that the Supreme Court contemplated. *N.Y. Times*, 376 U.S. at 270.

Fortunately, the protections provided by the First Amendment are far more robust. As the Supreme Court spelled out in *St. Amant v. Thompson,* 397 U.S. 727 (1968),

> reckless conduct is not measured by whether a reasonably prudent man would have published or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that *the defendant in fact entertained serious doubts as to the truth of his publication*. Publishing with such doubts shows

Case 1:21-cv-02995-CJN   Document 27-4   Filed 07/11/22   Page 22 of 32

> reckless disregard for truth or falsity and demonstrates actual
> malice.

*Id.* at 731 (emphasis added); *see also Khan v. New York Times Co.*, 269 A.D.2d 74, 77 (1st Dept. 2000) (quoting *St. Amant*).

The Complaint comes nowhere close to meeting this daunting standard. It alleges no facts that, if proven by clear and convincing evidence, would show that Powell knew her statements were false (assuming arguendo that they were indeed false, which Powell disputes). Nor have Plaintiffs alleged any facts showing that she "in fact entertained serious doubts as to the truth of h[er] publication." Indeed, she believed the allegations then and she believes them now. She was so confident of her evidence that, as Plaintiffs acknowledge, she filed numerous cases based on those allegations and the sworn declarations she had to support them.

Suffice to say, the Complaint's allegations about lawsuits filed by Powell do not document Plaintiffs' bald allegations of her malice against Plaintiffs, nor do Plaintiffs' claims regarding the dismissal of the election complaints. Compl. ¶382. Lawyers would be reluctant to provide representation to plaintiffs if they could be charged with malice by parties not involved in the litigation for filing lawsuits that are dismissed on pleading grounds.

Plaintiffs also allege that Powell had improper motives for making the statements at issue, claiming that she did so to raise funds, to raise her public profile, and to curry favor with Donald Trump supporters. *See, e.g.,* Compl. ¶¶10, 27, 92, 448, 449. But Plaintiffs offer no facts to support these allegations and, in any event, ill-will or improper motive are not elements of the actual malice standard, and are insufficient, in and of themselves, to establish actual malice. *Old Dominion Branch No. 496 v. Austin,* 418 U.S. 264, 281 (1974).

The Complaint is also replete with allegations that Powell had access to, but either ignored or did not review, information that purportedly showed her claims about the 2020 election were

15

not true. *See, e.g.,* Compl. ¶¶218, 290-302. However, even assuming arguendo Plaintiffs' assertions, actual malice cannot be based on a "mere failure to conduct further investigation." *Suozzi v. Parente*, 202 A.D.2d 94, 101-102 (1st Dept. 1994) (citing *St. Amant,* 390 U.S. at 731); *see also Harte-Hanks Communications, Inc. v. Connaughton,* 491 U.S. 657, 665 (1989) ("[E]ven an extreme departure from professional standards is insufficient to prove actual malice on its own.").

At the end of the day, Plaintiffs' claims of actual malice are reduced to allegations that Powell's evidence and witnesses were unreliable or should not have been believed. *See, e.g.,* Compl. at ¶¶201-209. In support, Plaintiffs allege that certain witnesses did not draft their own declarations, but rather that they were drafted by counsel. *Id.* at ¶¶413-414. The suggestion that this undermines credibility is risible. *See, e.g., Purcell v. Navient Sols.,* 2019 U.S. Dist. LEXIS 6469 at *14-15 (S.D.N.Y. January 14, 2019) ("It is common practice for lawyers to draft affidavits for their client's signature; we know of no court that refuses to consider an affidavit simply because it is not personally written by the witness.") (quoting *Zimmerman v. Hanks,* 2000 U.S. App. LEXIS 33710, at *6 (7th Cir. Dec. 19, 2000)).

Likewise, Plaintiffs' claim that Powell's legal contentions and conclusions are unsupported by the evidence does not demonstrate malice; rather it is a legal conclusion itself. Plaintiffs were required to allege facts that would "permit the conclusion that [Powell] *in fact entertained serious doubts* as to the truth of [her] publication," which they failed to do. *St. Amant,* 390 U.S. at 731 (emphasis added); *see also, Gross v. New York Times Co.*, 281 A.D.2d 299, 300 (1st Dept. 2001) (citing *Sweeney,* 84 N.Y.2d at 793). Accordingly, the Complaint should be dismissed under New York's anti- SLAPP laws.

Case 1:21-cv-02995-CJN   Document 27-4   Filed 07/11/22   Page 24 of 32

## III.   THE SPEECH AT ISSUE IS PROTECTED AND NOT ACTIONABLE

The United States Supreme Court has recognized the "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on [public figures]." *N.Y. Times v. Sullivan,* 376 U.S. at 270; *see also Prozeralik v. Capital Cities Communs.,* 82 N.Y.2d 466, 474 (1993) (quoting *N.Y. Times*). As the Supreme Court has also noted, "speech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison,* 379 U.S. at 74-75. Consequently, courts have consistently ruled that political speech "is entitled to the fullest possible measure of constitutional protection." *Members of City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 816 (1984).

In order to be actionable, a statement must be capable of being proven true or false. "[A] statement of opinion relating to matters of public concern which does not contain a provably false factual connotation, or which cannot reasonably [be] interpreted as stating actual facts about an individual, continues to receive full constitutional protection." *Gross v. New York Times Co.,* 82 N.Y.2d 146, 152 (1993) (quoting *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 18, 20 (1990)).

The ultimate question to be answered in determining whether a statement is one of fact or of opinion is "how it would be perceived by an average member of the audience to whom it is directed." *Immuno, AG v. Moor-Jankowski,* 145 A.D.2d 114, 123 (1st Dept. 1989). This inquiry, which is determined as a matter of law, *id.* at 124, requires an examination of the statements with a view toward "(1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social

context and surrounding circumstances are such as to signal … readers or listeners that what is

being read or heard is likely to be opinion, not fact." *Gross,* 82 N.Y.2d at 153.

     *Sandals Resorts Intl. Ltd. v. Google, Inc.,* 86 A.D.3d 32 (1st Dept. 2011), described the

inquiry as follows:

> The question of whether a defamation claim may be maintained
> does not turn on whether the writing contains assertions that may be
> understood to state facts. Even apparent statements of fact may
> assume the character of statements of opinion, and thus be
> privileged, when made in public debate, heated labor dispute, or
> other circumstances in which an audience may anticipate [the use]
> of epithets, fiery rhetoric or hyperbole. Moreover, sifting through a
> communication for the purpose of isolating and identifying
> assertions of fact should not be the central inquiry. Rather, it is
> necessary to consider the writing as a whole, as well as the over-all
> context of the publication, to determine whether the reasonable
> reader would have believed that the challenged statements were
> conveying facts about the libel plaintiff. Courts must consider the
> content of the communication as a whole, as well as its tone and
> apparent purpose.

*Id.* at 41-42 (internal quotations and citations omitted).

     The importance of context was cogently analyzed by the court in *McGill v. Parker,* 179

A.D. 2d 98, 110 (1st Dept. 1992). In *McGill,* the plaintiff claimed that several letters published by

defendants regarding the treatment of New York City carriage horses were libelous. In finding that

the letters were constitutionally protected, the court observed as follows:

> In *Immuno,* which involved a letter written by the chairperson of
> an animal rights group to the editor of a scientific journal critical of
> a plan to establish a facility for hepatitis research using
> chimpanzees, the court noted that, by examining the context of the
> letter as a whole and the underlying controversy, it would be plain
> to the reasonable reader * * * that [the writer of the letter] was
> voicing no more than a highly partisan point of view and, by
> implication, was not making factual assertions.
>
> The same analysis applies here.  The reasonable reader of the
> allegedly defamatory statements – that the veterinary care was
> inadequate and that the horses were maintained under inhumane

conditions – would recognize that they represented opinion expressed as part of an ongoing controversy and designed primarily to persuade. No reasonable person reading the letters and leaflets in their entirety would find these conclusions to be anything other than highly partisan expressions of opinion by an animal rights activist.

*Id.* at 110.

The statements at issue in this case fit precisely in this mold. They *all* concern the 2020 presidential election, which was both a bitter and controversial matter of public concern. Indeed, the very first statement attributed to Powell is from November 14, 2020, during an appearance on the Fox News program *Justice with Judge Jeanine.* Compl. ¶101. As the screen-capture reproduced in the Complaint makes clear, her appearance there was to discuss the topic "Trump's Election Legal Fight Continues":



*Id.*

Furthermore, it is clear that Powell's statements were made as an attorney-advocate for her preferred candidate and in support of her legal and political positions. This was repeatedly confirmed in other appearances screenshotted in the Complaint:

"New Trump Lawsuit Targets Voting Machine Firm":

19



*Id.* at ¶107.

"Sidney Powell, Member of Trump's Legal Team":



*Id.* at ¶111.

"On the Phone: Sidney Powell: Member of President Trump's Legal Team":

20



*Id.* at ¶120.

Thus, statements made by Powell in court filings and on news shows would be understood by readers and listeners as expressions of opinion by an advocate and consequently, are not actionable. *Sandals Resort Int'l*, 86 A.D.3d at 41 ("Even apparent statements of fact may assume the character of statements of opinion, and thus be privileged, when made in public debate, heated labor dispute, or other circumstances in which an audience may anticipate [the use] of epithets, fiery rhetoric or hyperbole.").

Further, claims of defamation must be viewed through the lens of the First Amendment regardless of whether they are offensive to some. "Though few might find respondent's statements anything but contemptible, his right to make those statements is protected by the Constitution's guarantee of freedom of speech and expression." *United States v. Alvarez*, 567 U.S. 709, 727-28 (2012). And "[s]peech is not unprotected merely because it is uttered by 'professionals.'" *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2371-72 (2018).

The highly charged and political nature of the statements likewise underscores their political and hence partisan nature. According to the Complaint, Powell alleged that "Smartmatic had perpetuated a massive election fraud by using its electronic technology and software to steal

the 2020 U.S. election." Comp. ¶399. She also allegedly claimed that the election result was the product of "one huge criminal conspiracy that should be investigated by military intelligence for its national security implications." *Id.* ¶102.

Reasonable people understand that the "language of the political arena, like the language used in labor disputes … is often vituperative, abusive and inexact." *Watts v. United States,* 394 U.S. 705, 708 (1969). Given the highly charged and political context of the statements, it is clear that Powell was describing the evidence on which she based the lawsuits she filed in support of President Trump.

Furthermore, Powell disclosed the facts upon which her claims were based. This likewise supports classifying her statements as opinion as a matter of law. As the Court of Appeals has observed, "we continue to recognize and utilize the important distinction between a statement of opinion that implies a basis in facts which are not disclosed to the reader or listener, and a statement of opinion that is accompanied by a recitation of the facts on which it is based or one that does not imply the existence of undisclosed underlying facts." *Gross,* 82 N.Y.2d at 153 (citing *Hotchner v. Castillo-Puche,* 551 F.2d 910, 913 (2d Cir. 1977)). Where statements are based on disclosed facts, "the full context of the communication signal[s] . . . readers or listeners that what is being read or heard is likely to be opinion, not fact." *Id.* at 154 (quoting *Steinhilber v. Alphonse,* 68 N.Y.2d 283, 292 (1986)).

Finally, the statements in question are not actionable because they were made in the context of pending and impending litigation. The Supreme Court long ago recognized that "the right to petition extends to all departments of the Government. The right of access to the courts is indeed but one aspect of the right of petition." *California Transport v. Trucking Unlimited,* 404 U.S. 508, 510 (1972). First Amendment protections are not limited to filing lawsuits; they extend to activities

that precede or are concomitant with the litigation, such as soliciting clients, publicizing the possibility of legal redress, and gaining public support. *NAACP v. Button*, 371 U.S. 415 (1963). This is so because "'[f]ree trade in ideas' means free trade in the opportunity to persuade to action, not merely to describe facts." *Id.* at 437 (quoting *Thomas v. Collins*, 323 U.S. 516, 537 (1945)). First Amendment protections apply with particular force where a party "[r]esort[s] to the courts to seek vindication of constitutional rights" or "employs constitutionally privileged means of expression to secure constitutionally guaranteed civil rights." *Id.* at 443, 441. "The exercise … of First Amendment rights to enforce constitutional rights through litigation, as a matter of law, cannot be deemed malicious." *Id.* at 439.

New York courts have likewise recognized the important protections to be afforded statements made in connection with pending or existing litigation. First, statements made by attorneys in connection with a proceeding before a court are protected when the statements are material or pertinent to the matters involved. *See, e.g., Park Knoll Assoc. v. Schmidt,* 59 N.Y.2d 205, 209 (1983). This privilege applies irrespective of the attorney's motive for making the statements, *Wiener v. Weintraub,* 22 N.Y.2d 330, 331 (1968), and whether they were made in or out of court. *Lemberg v. John Blair Communs.,* 258 A.D.2d 291, 292-93 (1st Dept. 1999) (out of court exchange between two attorneys). Similarly, a qualified privilege attaches to pre-litigation communications, so long as the statements were pertinent to a good faith anticipated litigation. Here, there is no question that Powell's statements related to litigation that was, in fact, initiated. *Front, Inc. v. Khalil,* 24 N.Y.3d 713 (2015). Whether pre- or post-litigation, the statements at issue here are privileged.

Making public announcements as to the status of cases that affect the public interest is an accepted and time-honored means of keeping the public advised about litigation that may have a

Case 1:21-cv-02995-CJN Document 27-4 Filed 07/11/22 Page 31 of 32

profound effect on their lives. Such announcements are routine by lawyers engaged in public

interest litigation, including the U.S. Justice Department, https://www.justice.gov/news, state

attorneys general, *e.g.* https://ag.ny.gov/press-releases, https://oag.ca.gov/media/news and public

interest organizations, *e.g.* http://www.publiccounsel.org/press_releases, https://ij.org/press-

releases/.

       Keeping the public informed about ongoing litigation, particularly litigation that affects the

public interest, is not merely an accepted and widely practiced strategy in the legal profession, it

is an indispensable concomitant of pursuing the case in court. As the Supreme Court recognized

in *NAACP v. Button*, "broadly curtailing group activity leading to litigation may easily become a

weapon of oppression," 371 U.S. at 436, as it would pose "the gravest danger of smothering all

discussion looking to the eventual institution of litigation on behalf of the rights of members of an

unpopular minority." *Id.* at 434.

## CONCLUSION

       For all the foregoing reasons, Defendant Sidney Powell respectfully requests that the

Complaint be dismissed and that she be awarded reasonable attorney's fees and costs under the

New York anti-SLAPP law.

Dated: April 8, 2021           Respectfully submitted,

                        HOWARD KLEINHENDLER ESQUIRE

                        */s/ Howard Kleinhendler*

                        Howard Kleinhendler
                        369 Lexington Ave. 12th Floor
                        New York, New York 10017
                        Tel: (917) 793-1188
                        Email: howard@kleinhendler.com
                        *Counsel for Sidney Powell*

24

Case 1:21-cv-02995-CJN Document 27-4 Filed 07/11/22 Page 32 of 32

## **CERTIFICATE OF COMPLIANCE**

I hereby certify pursuant to NYCRR § 202.8-b, that the foregoing Memorandum of Law was prepared on a computer using Microsoft Office 365, was typed in Times New Roman at 12-point size with double spacing. The total number of words in this memorandum, exclusive of the caption, table of contents, table of authorities and signature block, is 6,933.

Dated: New York, New York
April 8, 2021

*/s/ Howard Kleinhendler*

Howard Kleinhendler

25