# Exhibit D

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:     **HON. DAVID B. COHEN, J.S.C.**          PART     58

*Justice*

--------------------------------------------------------------------------X

INDEX NO.          151136/2021

SMARTMATIC USA CORP., SMARTMATIC
INTERNATIONAL HOLDING B.V., and SGO
CORPORATION LIMITED,

                              Plaintiffs,

                                                        MOTION SEQ. NO.     001, 002, 003,
                                                                            004, 008, and
                                                                            009

- v -

FOX CORPORATION, FOX NEWS NETWORK LLC, LOU
DOBBS, MARIA BARTIROMO, JEANINE PIRRO,          **DECISION + ORDER ON**
RUDOLPH GIULIANI, and SIDNEY POWELL,          **MOTION**

                              Defendants.

--------------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 001) 178, 179, 180, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 241, 242, 243, 244, 257, 284, 285, 305, 306, 307, 308, 309, 310, 311, 312, 313, 314, 315, 316, 317, 318, 319, 320, 321, 322, 323, 324, 325, 326, 327, 328, 329, 330, 331, 332, 333, 334, 335, 336, 337, 338, 339, 340, 341, 342, 343, 344, 345, 346, 347, 348, 349, 350, 351, 352, 353, 354, 355, 356, 357, 358, 359, 360, 361, 362, 363, 364, 365, 366, 367, 368, 369, 370, 371, 372, 373, 374, 375, 376, 377, 378, 379, 380, 381, 382, 383, 384, 385, 386, 387, 388, 389, 390, 391, 392, 393, 394, 395, 396, 678, 679, 680, 681, 682, 683, 810, 811, 827, 828

were read on this motion to/for _____ DISMISS _____.

The following e-filed documents, listed by NYSCEF document number (Motion 002) 209, 210, 211, 212, 213, 214, 215, 216, 217, 218, 219, 245, 246, 247, 254, 258, 286, 397, 398, 399, 400, 401, 402, 403, 404, 405, 406, 407, 408, 409, 410, 411, 412, 413, 414, 415, 416, 417, 418, 419, 420, 421, 422, 423, 424, 425, 426, 427, 428, 429, 430, 431, 432, 433, 434, 435, 436, 437, 438, 439, 440, 441, 442, 443, 444, 445, 446, 447, 448, 449, 450, 451, 452, 453, 454, 455, 456, 457, 458, 459, 460, 461, 462, 463, 464, 465, 466, 467, 468, 469, 470, 471, 472, 473, 474, 475, 476, 477, 478, 479, 480, 481, 482, 483, 484, 485, 486, 487, 488, 684, 685, 686, 812, 813, 829, 830

were read on this motion to/for _____ DISMISSAL _____.

The following e-filed documents, listed by NYSCEF document number (Motion 003) 220, 221, 222, 223, 224, 248, 249, 250, 255, 259, 287, 586, 587, 588, 589, 590, 591, 592, 593, 594, 595, 596, 597, 598, 599, 600, 601, 602, 603, 604, 605, 606, 607, 608, 609, 610, 611, 612, 613, 614, 615, 616, 617, 618, 619, 620, 621, 622, 623, 624, 625, 626, 627, 628, 629, 630, 631, 632, 633, 634, 635, 636, 637, 638, 639, 640, 641, 642, 643, 644, 645, 646, 647, 648, 649, 650, 651, 652, 653, 654, 655, 656, 657, 658, 659, 660, 661, 662, 663, 664, 665, 666, 667, 668, 669, 670, 671, 672, 673, 674, 675, 676, 677, 687, 688, 689, 690, 814, 815, 833, 834

were read on this motion to/for _____ DISMISSAL _____.

The following e-filed documents, listed by NYSCEF document number (Motion 004) 225, 226, 227, 228, 229, 251, 252, 253, 256, 260, 288, 489, 490, 491, 492, 493, 494, 495, 496, 497, 498, 499, 500, 501, 502,

**151136/2021  SMARTMATIC USA CORP. vs. FOX CORPORATION**          **Page 1 of 61**
**Motion No.  001 002 003 004 008 009**

1 of 61

503, 504, 505, 506, 507, 508, 509, 510, 511, 512, 513, 514, 515, 516, 517, 518, 519, 520, 521, 522, 523, 524, 525, 526, 527, 528, 529, 530, 531, 532, 533, 534, 535, 536, 537, 538, 539, 540, 541, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 554, 555, 556, 557, 558, 559, 560, 561, 562, 563, 564, 565, 566, 567, 568, 569, 570, 571, 572, 573, 574, 575, 576, 577, 578, 579, 580, 581, 582, 583, 584, 585, 691, 692, 693, 694, 695, 816, 817, 835, 836

were read on this motion to/for _____ DISMISSAL _____.

The following e-filed documents, listed by NYSCEF document number (Motion 008) 289, 290, 291, 292, 293, 294, 295, 296, 297, 702, 704, 743, 744, 745, 746, 747, 748, 749, 750, 751, 752, 753, 754, 755, 756, 757, 758, 759, 760, 761, 762, 763, 764, 765, 766, 767, 768, 769, 770, 771, 772, 773, 774, 775, 776, 777, 778, 779, 780, 781, 782, 783, 784, 785, 786, 787, 788, 789, 790, 791, 792, 793, 794, 795, 796, 797, 798, 799, 800, 801, 802, 803, 804, 805, 806, 808, 818, 819, 824, 825, 826, 837, 838

were read on this motion to/for _____ DISMISSAL _____.

The following e-filed documents, listed by NYSCEF document number (Motion 009) 298, 299, 300, 301, 302, 303, 304, 703, 705, 709, 710, 711, 712, 713, 714, 715, 716, 717, 718, 719, 720, 721, 722, 723, 724, 725, 726, 727, 728, 729, 730, 731, 732, 733, 734, 735, 736, 737, 738, 739, 740, 741, 807, 809, 820, 821, 822, 841, 842

were read on this motion to/for _____ DISMISSAL _____.


     In this defamation action commenced by plaintiffs Smartmatic USA Corp., Smartmatic International Holding B.V., and SGO Corporation Limited, defendants Fox Corporation and Fox News Network LLC move (mot. seq. 001), pursuant to CPLR 3211(a)(1), (a)(7), and (g), to dismiss the complaint.  Defendants Maria Bartiromo, Lou Dobbs, and Jeanine Pirro, employees of Fox Corporation and/or Fox News Network LLC, adopt the arguments made by those defendants and also move (mot. seq. nos. 002-004, respectively) to dismiss the complaint pursuant to CPLR 3211(g) and Civil Rights Law ("CRL") §76-a (1) (a).  Defendant Sidney Powell moves (mot. seq. 008) to dismiss the complaint pursuant to CPLR 3211(a)(1), (7), and (8) and 3211(g).  Defendant Rudolph Giuliani moves (mot. seq. 009) to dismiss the complaint pursuant to CPLR 3211(a)(1), (a)(2), (a)(3), (a)(7), and (g), as well as CRL § 76-a.  Plaintiffs oppose each of the motions.  After consideration of the parties' contentions, as well as a review of the relevant statutes and case law, the motions are decided as follows.

151136/2021   SMARTMATIC USA CORP. vs. FOX CORPORATION
Motion No.  001 002 003 004 008 009

Page 2 of 61

2 of 61

Case 1:21-cv-02995-CJN   Document 27-7   Filed 07/11/22   Page 4 of 62

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Smartmatic USA Corp. ("SUSA"), Smartmatic International Holding B.V. ("SIH"), and SGO Corporation Limited ("SGO") (collectively "plaintiffs") commenced this action by filing a summons and complaint on February 4, 2021. Doc. 1.  SUSA was an election technology and software company which provided services *solely* to Los Angeles County, California in connection with the 2020 presidential election ("the election").[1]  In the complaint, plaintiffs alleged that, in an attempt to boost ratings by capitalizing on the popularity of former President Donald Trump, defendants Fox Corporation and Fox News Network LLC (collectively "Fox News") fabricated a story that the election was stolen.  A key part of the alleged fabrication was that SUSA's software caused President Trump to lose the election.

In November and December 2020, Fox News broadcasted 13 reports in which it stated or implied that SUSA stole the election, and repeated the stories in articles and social media postings. Fox News, its employees and/or guests claimed, among other things, that: SUSA was a Venezuelan company under the control of corrupt dictators from socialist and communist countries (Doc. 1 at par. 6); its election technology was used in six "swing" or "battleground" states with close outcomes (Nevada, Arizona, Georgia, Pennsylvania, Michigan and Wisconsin) (Doc. 1 at par. 132); SUSA's software was designed to "rig" elections, and did so by switching votes from President Trump, the Republican candidate, to Joseph Biden, the Democratic candidate, who won the election and is now President (Doc. 1 at pars. 165, 169); SUSA's software was used in voting machines manufactured by Dominion Voting Systems Corporation ("Dominion") (Doc. 1 at pars. 199, 223); SUSA sent votes to foreign countries for tabulation and manipulation (Doc. 1 at par.

---

[1] Plaintiffs claimed that SIH owned SUSA and that SGO owned SIH.

**151136/2021   SMARTMATIC USA CORP. vs. FOX CORPORATION**                      **Page 3 of 61**
**Motion No.   001 002 003 004 008 009**

3 of 61

567); SUSA's software was hacked (Doc. 1 at par. 582); and that SUSA had been banned from participating in prior elections in the United States (Doc. 1 at par. 612).

Plaintiffs claimed that defendants' intentional lies: 1) led millions of people to believe that the election had been stolen (Doc. 1 at par. 145); 2) resulted in hate mail and death threats to SUSA's employees (Doc. 1 at par. 9); and 3) caused SUSA's reputation, which took years to burnish, to become irreparably harmed (Doc. 1 at par. 9). Additionally, plaintiffs alleged that defendants Fox News and its employees, Maria Bartiromo, Lou Dobbs, and Jeanine Pirro,[2] used the story to preserve Fox News' viewership and that the Fox anchor defendants used it to earn money.[3] Doc. 1 at pars. 135, 147. Plaintiffs further alleged that attorneys Rudolph Giuliani and Sidney Powell also profited by promoting this false narrative, which has since become known as "The Big Lie", both on Fox News and elsewhere. Doc. 1 at pars. 10, 147, 219.

In their complaint, plaintiffs meticulously set forth the allegedly defamatory language used by the defendants. Initially, they claimed that Giuliani appeared on Fox News on November 12, 2020 and told Dobbs that Dominion was owned by SUSA and that all of its machines used SUSA software. Doc. 1 at par. 157. Giuliani also said, without any evidence, that SUSA was formed by three Venezuelans close to the country's former dictator, Hugo Chavez, and the country's current dictator, Nicholas Maduro; that SUSA was created to fix elections; and that votes cast on Dominion machines were sent to Barcelona, Spain to be counted. Doc. 1 at par. 199. Dobbs then stated, without any basis, that SUSA and Dominion sent votes out of the country to be counted so that the results would not be auditable. Doc. 1 at par. 97. Giuliani added that over 623,000 and 320,000

---

[2] Dobbs, Bartiromo and Pirro are collectively referred to as "the Fox anchor defendants." Fox News and the Fox anchor defendants are referred to collectively as "the Fox defendants".

[3] Plaintiffs claimed that Fox News had to take steps to preserve its viewership because it infuriated President Trump and many of his supporters by declaring on election night that President Biden had won the vote in Arizona. Doc. 1 at par. 95.

151136/2021   SMARTMATIC USA CORP. vs. FOX CORPORATION    Page 4 of 61
Motion No.  001 002 003 004 008 009

4 of 61

Case 1:21-cv-02995-CJN Document 27-7 Filed 07/11/22 Page 6 of 62

illegal votes were cast in Pennsylvania and Michigan, respectively, and that the same pattern existed in Nevada, Arizona, Georgia, and Wisconsin. Doc. 1 at par. 98. He also questioned why Georgia had used SUSA's software in the election, since it was "extremely hackable" and the company had "a terrible record." Doc. 1 at par. 149.

On November 14, 2020, Powell appeared on Pirro's show on Fox News and claimed, without any evidence, that there was "massive" election fraud in the swing states and beyond resulting from changing "millions of votes" by "different means of manipulating the Dominion and [SUSA] software." Doc. 1 at par. 208. She further claimed that the money used to create SUSA came from Venezuela or Cuba for the express purpose of securing the re-election of Chavez and that the company was part of a "huge criminal conspiracy" which should be "investigated by military intelligence". Doc. 1 at pars. 102, 208. Pirro agreed and said she hoped the Department of Justice would investigate as well, allegedly implying that SUSA engaged in a criminal conspiracy. Doc. 1 at par. 103. In addition, Powell said that the Dominion machines and SUSA software "dumped" votes for President Trump and "flipped" those votes to President Biden. Doc. 1 at par. 157. She also said that there was "mathematical", "statistical", and "forensic" evidence, as well as witnesses, to prove the vote manipulation, and asked viewers to donate to the website for Defending the Republic ("DTR"), her political action committee ("PAC"),[4] which money, alleged plaintiffs, was used to fund her disinformation campaign. Doc. 1 at pars. 103, 142.

On November 14, 2020, Dobbs posted on Twitter: "[r]ead all about Dominion and [SUSA] voting companies and you'll soon understand how pervasive this Democrat electoral fraud is, and why there is no way in the world the 2020 Presidential election was either free or fair." Doc. 1 at par. 133.

---

[4] https://defendingtherepublicpac.com

**151136/2021   SMARTMATIC USA CORP. vs. FOX CORPORATION**          **Page 5 of 61**
**Motion No.   001 002 003 004 008 009**

5 of 61

On November 15, 2020, Bartiromo had Giuliani and Powell as guests on her Fox News show. Giuliani claimed that President Trump had "gotten more evidence of the rigging" of the election; that Dominion "did the votes" in 27 states using SUSA's software, which had been used to steal elections in other countries; that SUSA was founded by Chavez and two of his allies, which allies still owned it; that SUSA had been banned in the United States about a decade before and had returned as a subcontractor to other companies and "sorta hides in the weeds"; that Dominion "sends everything to [SUSA]"; that SUSA had "tried and true methods for fixing elections"; and that SUSA was a "very dangerous foreign company" with close ties to Venezuela and China. Doc. 1 at par. 104.

Bartiromo then said that, according to a source, SUSA's software had a "back door" used to determine how many votes needed to be switched to rig an election. Doc. 1 at par. 105. Giuliani agreed and said that there was "proof of some of the connections" to the back door. Doc. 1 at par. 105. Giuliani also said that he knew of witnesses who could prove that votes were changed in Michigan; that this also occurred in big cities "which had corrupt machines that [would] protect them" such as Philadelphia, Pittsburgh, and Detroit; that votes were "absolutely" changed in Phoenix and Milwaukee; and that Michigan votes were counted by a Venezuelan company, "which almost should be illegal per se". Doc. 1 at par. 105. He also said that SUSA employed the same tactics that it used in prior elections "in which [it was] disqualified." Doc. 1 at par. 105. Bartiromo also showed a graphic of swing states in which she claimed SUSA software was used, despite having no evidence to support her statement. Doc. 1 at par. 105. Powell then stated that former Admiral Peter Neffenger, a member of SUSA's board, was on President Biden's transition team; that SUSA software shifted millions of votes to President Biden; that there was "sworn witness testimony" that the software was designed expressly for the purpose of rigging elections (Doc. 1

151136/2021   SMARTMATIC USA CORP. vs. FOX CORPORATION
Motion No.  001 002 003 004 008 009

Page 6 of 61

6 of 61

at par. 107); that there was evidence that SUSA rigged votes in California in 2016 (Doc. 1 at par. 208); and that SUSA's own manual explained how votes could be "wiped away". Doc. 1 at par. 208; Doc. 7 at 17.  Powell added that the CIA, FBI, and other government agencies had "received multiple reports of wrongdoing and failures and vulnerabilities" in the software used in the election.[5] Doc. 1 at par. 157; Doc. 7 at 20.

While Bartiromo showed a graphic on the screen indicating that Dominion machines were used in the "swing" or "battleground" states of Arizona, Georgia, Michigan, Nevada, Pennsylvania, and Wisconsin, she simultaneously stated that SUSA's software was used in those jurisdictions.  Doc. 1 at par. 157.  Bartiromo also stated that "Texas rejected using Dominion software three times, raising concerns that the system was not safe from fraudulent and unauthorized manipulation"[6] (Doc. 7 at 15), implying that the SUSA software used in the Dominion machines was unsafe, when in fact Texas had never rejected the company's software. Further, Bartiromo said that she had spoken to a "few whistleblowers", one of whom was an IT specialist, who told her that SUSA's software had an "unusual patch" which allowed votes to be switched through a "back door." Doc. 1 at 20-21.

On November 16, 2020, Dobbs stated on Fox News that there has never been "so much clear evidence of fraud" in an American election. Doc. 1 at par. 110.  He said that Dominion worked with SUSA, a voting technology company with ties to Hugo Chavez.  Doc. 1 at par. 110. He also said to Ronna McDaniel, the Chair of the RNC, that what President Trump's legal team

---

[5] It is unclear whether Powell was referring to software used by Dominion, SUSA, or both. Doc. 7 at p. 20.
[6] Since Giuliani repeatedly said that Dominion machines used SUSA's software, plaintiffs asserted that this could be reasonably understood to disparage SUSA.  Similarly, plaintiffs alleged that Powell's representation that she had evidence of some "kickbacks" to those who purchased Dominion's machines could have been reasonably understood to disparage SUSA.

151136/2021   SMARTMATIC USA CORP. vs. FOX CORPORATION
Motion No.  001 002 003 004 008 009

Page 7 of 61

7 of 61

Case 1:21-cv-02995-CJN   Document 27-7   Filed 07/11/22   Page 9 of 62

was discovering about Dominion and SUSA gave rise to "probable cause for a complete and thorough investigation." Doc. 16 at 4.

Dobbs then cited a March 2020 article in Politico which, he claimed, reported that the California Secretary of State and "outside computer experts" found numerous security flaws in SUSA's software. Doc. 16 at 3. After Dobbs introduced Powell as a member of President Trump's legal team, she stated that she had just learned from a high ranking military officer that SUSA's software was designed, at the request of Chavez, to "change the vote of each voter without being detected." Doc. 1 at par. 142.  Powell further stated that SUSA's software was "in the DNA of every vote tabulating company's software and systems." Doc. 1 at par. 142.

On November 16, 2020, Dobbs tweeted that Powell said she had "firsthand information" that SUSA's software was designed to change votes without detection. Doc. 1 at par. 208.

On November 16, 2020, Fox News reached out to SUSA for the first time to ask which jurisdictions used SUSA's technology and software in the election. Doc. 1 at pars. 254-255.  The following day, *Fox Ne*ws asked SUSA whether it had any response to a November 12, 2020 statement by election officials and experts on the U.S. Elections Infrastructure Government Coordinating Council and the Election Infrastructure Sector Coordinating Executive Committees that the election was the "the most secure in American history." Doc. 1 at par. 298; Doc. 132.  On November 16, 2020, a group of election security specialists also issued a statement saying that there was no credible evidence of fraud in the November election; that there was no evidence that the election had been rigged; and that such claims were unsubstantiated or technically incoherent. Doc. 1 at par. 370.

**151136/2021   SMARTMATIC USA CORP. vs. FOX CORPORATION**
**Motion No.  001 002 003 004 008 009**

**Page 8 of 61**

8 of 61

On November 17, 2020, Bartiromo said to Giuliani that, when they last spoke, they were discussing SUSA's software "that was changing . . . votes from Trump to [President] Biden." Doc. 1 at par. 114.

On November 18, 2020, Dobbs, relying on what he said was the affidavit of an unnamed whistleblower, said on Fox News that the results of the election were "eerily reminiscent of what happened with [SUSA] software – electronically changing votes in the 2013 presidential election in Venezuela." Doc. 1 at par. 115. Giuliani then stated again that SUSA was founded "for the specific purpose of fixing elections. That's their expertise.  How to fix elections." Doc. 1 at par. 116.  Giuliani also said that SUSA had fixed elections "a number of times" in Venezuela and also in Argentina, and that the company was up to its "old tricks" on election night. Doc. 1. at par. 116. He also claimed that SUSA "switched votes around subtly, maybe ten per district, so you don't notice it."[7] Doc. 1 at par. 116.  Additionally, Giuliani said that, in 27 or 28 states, Dominion sent votes to Germany and Spain to be counted by SUSA. Doc. 1 at par. 116.  Dobbs added that SUSA and Dominion "were denied use in the state of Texas, which called them out for what they are." Doc. 1 at par. 117; Doc. 440 at 14.

The same day, Dobbs posted his interview with Giuliani to Twitter, including Giuliani's representation that votes in 28 states were sent to Germany and Spain for counting by SUSA. Doc. 1 at par. 208.

On November 19, 2020, Dobbs said that Powell, a member of President Trump's legal team, was going to appear on his show and that she would be "providing more details on how Dominion vote machines and [SUSA] software were used to help [President] Biden." Doc. 27 at 5.

---

[7] Curiously, Giuliani refers to SUSA's pattern of fraud as "subtl[e]", whereas Powell describes it as "massive."  Doc. 1 at pars. 107, 116.

**151136/2021   SMARTMATIC USA CORP. vs. FOX CORPORATION**                    **Page 9 of 61**
**Motion No.  001 002 003 004 008 009**

That day on Dobbs' show, Powell said that Dominion and SUSA were "definitely linked". Doc. 1 at par. 119; Doc. 27 at 11. She also said that one of the "most characteristic features" of SUSA's software was its "ability to flip votes.  It can set and run an algorithm that probably ran all over the country to take a certain percentage of votes from [President Trump] and flip them to [President Biden], which we might never have uncovered, had the votes for [President Trump] not been so overwhelming in so many of these states that it broke the algorithm that had been plugged into the system." Doc. 1 at par. 208; Doc. 27 at 4-5.  Powell accused SUSA of fabricating mail-in ballots and stated that Dominion and SUSA were "inextricably intertwined" and that Dominion machines "run the [SUSA] software and/or part of the key code of it [which is] what allows [SUSA] to manipulate the votes…"  Doc. 1 at par. 119; Doc. 27 at 11.  Powell then said that there were "thousands of people in federal prison on far less evidence of criminal conduct than we have already against [SUSA] and Dominion. Doc. 1 at par. 120; Doc. 27 at 13-14.

Later on November 19, Dobbs posted his video of his interview with Powell on Twitter with a caption stating, inter alia, that Powell "has no doubt that Dominion voting machines run [SUSA]'s software which allows [it] to manipulate the votes. Doc. 1 at par. 133; Doc. 29.  The same day, Tucker Carlson, a Fox News host who is "arguably the single most influential conservative media personality in the United States"[8], wrote an article stating that, if what Powell said about stolen votes were true, it would be "the single greatest crime in American history", and he thus called on her to provide the evidence she claimed she had. Doc. 138.  However, Powell never provided the evidence requested.  Carlson also checked with members of President Trump's campaign and they, too, advised him that they had never seen such evidence.  Indeed, Carlson

---

[8] Alexander Cooley and Daniel H. Nexon, *The Real Crisis of Global Order*, Foreign Affairs (Jan./Feb. 2022).

**151136/2021   SMARTMATIC USA CORP. vs. FOX CORPORATION**                     **Page 10 of 61**
**Motion No.  001 002 003 004 008 009**

10 of 61

Case 1:21-cv-02995-CJN Document 27-7 Filed 07/11/22 Page 12 of 62

admitted that Powell never demonstrated that a single vote was flipped from President Trump to President Biden. Doc. 1 at pars. 251-252.

On November 21, 2020, Pirro said on Fox News that President Trump's lawyers claimed that Dominion, which they said started in Venezuela with Cuban money, used SUSA's software to flip votes to President Biden. Doc. 1 at par. 121. She also said that President Trump's lawyers claimed that the votes were counted in a foreign country. Doc. 1 at par. 121. Pirro further claimed that President Trump's lawyers "offered evidence by way of affidavits" which, she explained, were sworn statements made under the penalty of prosecution.[9] Doc. 1 at par. 121. She added that "Georgia uses Dominion Voting Systems, which has a history of technical glitches." Doc. 30 at 5. Further, she stated that, in Wisconsin on the day after the election, 143,000 votes were "dumped" for President Biden at 3:42 a.m., suggesting "there was a pause and then a filling-in the needed votes to win." Doc. 30 at 5.

On November 22, 2020, Bartiromo said that, according to Powell, SUSA was founded in Venezuela with porous security, which enabled an election administrator to override the results. Doc. 1 at par. 183.

On November 26, 2020, Dobbs attacked the joint statement issued by election officials on November 12, 2020, in which they referred to the election as "the most secure in American history." Doc. 1 at par. 125. Dobbs claimed that Dominion and SUSA had close ties to a government agency which found no irregularities in the election. Doc. 1 at par. 125. Dobbs also said that Fox News had reported on, and detailed, "documented issues with [SUSA's] voting machine software." Doc. 1 at par. 125.

---

[9] As of the time of that broadcast, no affidavits had been filed containing allegations against SUSA.

**151136/2021  SMARTMATIC USA CORP. vs. FOX CORPORATION                         Page 11 of 61**
**Motion No.  001 002 003 004 008 009**

Case 1:21-cv-02995-CJN   Document 27-7   Filed 07/11/22   Page 13 of 62

On November 29, 2020, Christopher Krebs, former director of the Department of Homeland Security's Cybersecurity and Infrastructure Agency, stated that there was no evidence of any hacking into, or compromise of, the election system. Doc. 1 at par. 301.

On December 10, 2020, Dobbs said Powell had named four individuals, including Antonio Mugica, CEO of SGO, who rigged the election. Doc. 1 at par. 126. Powell then said that "reams and reams of actual documents" existed "including evidence that [SUSA and Dominion] planned and executed" the vote manipulation. Doc. 1 at par. 126. She further stated that SUSA obtained $400 million from China a few weeks prior to the election (which she referred to as a "cyber Pearl Harbor") and that George Soros, a billionaire investor and philanthropist known for his liberal and progressive views, was involved in the scheme. Doc. 1 at par. 126. Additionally, Powell stated that a SUSA executive went to Tarrant County, Texas and turned it blue (Democratic). Doc. 1 at par. 126. She also represented that she had evidence of how SUSA flipped votes and that the company's software was developed to rig elections so that Chavez could remain in power. Doc. 1 at par. 126. Dobbs said that, although "[w]e have tremendous evidence already of fraud in this election", he would "be glad" to discuss on his broadcast any other evidence Powell had. Doc. 1 at par. 142.

Dobbs posted his interview with Powell on Twitter and Facebook. In his posts, Dobbs said, inter alia, that Powell had revealed "groundbreaking new evidence indicating that [the election] came under massive cyber-attacked [sic] orchestrated with the help of Dominion, [SUSA], and foreign adversaries." Doc. 1 at par. 166.[10]

On December 18, 2020, after receiving a retraction demand letter from SUSA, Dobbs played a prerecorded interview with Eddie Perez, the Global Director of the Open Source Election

---

[10] It is incongruous that Dobbs emphasized "evidence" of fraud referred to by Powell while there is no indication that Carlson ever received any substantiation of her claims.

151136/2021   SMARTMATIC USA CORP. vs. FOX CORPORATION                    Page 12 of 61
Motion No.  001 002 003 004 008 009

12 of 61

Case 1:21-cv-02995-CJN Document 27-7 Filed 07/11/22 Page 14 of 62

Technology Institute,[11] who stated that there was no evidence to support the claims the defendants had been making about SUSA. Doc. 1 at par. 131. Bartiromo and Pirro played the interview on December 20, 2020. Doc. 1 at par. 131.

Plaintiffs further alleged in the complaint that SUSA was founded by Mugica and Roger Pinate in Florida in 2000 and that the company had a reputation for secure, reliable and auditable election technology. Doc. 1 at pars. 204, 354. In 2018, SUSA was selected to help implement a new election system for Los Angeles County, the largest voting jurisdiction in the United States, an opportunity which had the potential to enhance its ability to market to other states and countries. Doc. 1 at par. 65. Following the March 2020 presidential primary, a poll revealed that 57.5% of voters in Los Angeles County found SUSA's new technology made it much easier to vote and that 51.7% of voters greatly trusted that their votes would be counted accurately. Doc. 1 at par. 73. The November 2020 election then went smoothly in Los Angeles County, with no issues arising regarding security, reliability, or auditability of the results. Doc. 1 at par. 76. The same was true nationally and, in a joint statement issued November 12, 2020, election officials and experts referred to the election as "the most secure in American history." Doc. 1 at par. 125.

Plaintiffs alleged that, although defendants claimed that they had evidence that SUSA committed election fraud, such statements were blatantly false. Doc. 1 at par. 100. Specifically, they maintained that SUSA's software was not used in the election anywhere other than Los Angeles County (Doc. 1 at pars. 110, 146); the software was not used in the election by Dominion, its competitor, or by any other voting technology company (Doc. 1 at par. 146); SUSA did not work in conjunction with any other voting technology company in connection with the election

---

[11] According to its website (https://www.osetinstitute.org), the "nonpartisan, nonprofit mission" of the Open Source Technology Institute "is to increase confidence in elections and their outcomes in order to preserve the operational continuity of democracy - ultimately worldwide."

**151136/2021   SMARTMATIC USA CORP. vs. FOX CORPORATION**                                          **Page 13 of 61**
**Motion No.  001 002 003 004 008 009**

Case 1:21-cv-02995-CJN   Document 27-7   Filed 07/11/22   Page 15 of 62

(Doc. 1 at 154-155); SUSA's software ensured auditability and was not designed or used to steal the election, and could not have been used in such manner given that it was only used in one county in the entire country (Doc. 1 at pars. 189, 211-212, 221); its software did not have a built in feature which allowed for the overriding of security features or a "back door" which allowed for votes to be changed in real time (Doc. 1 at par. 188); SUSA did not send votes to foreign countries for tabulation and manipulation (Doc. 1 at par. 225); SUSA's technology was not hacked during the election (Doc. 1 at par. 226); SUSA has been involved in thousands of elections over the last 20 years and has never been banned in an election in any county, state, or country (Doc. 1 at pars. 228, 340); no government agency, including the CIA and FBI, received complaints about SUSA's software before or after the election (Doc. 1 at par. 196); SUSA was not founded by any dictator(s); the company never received funding from China, Venezuela or Cuba (Doc. 1 at pars. 198, 205); and it stopped working in Venezuela in 2017, when it denounced the government for announcing false election results. Doc. 1 at par. 206.

Plaintiffs alleged that defendants acted with reckless disregard of the truth and with actual malice, since they knew that the information they were disseminating was false. Doc. 1 at par. 217. For instance, before defendants started their misinformation campaign, they could have checked publicly available information to ascertain which company's software and technology was used in each county in the country. Doc. 1 at par. 260. Such checking would have revealed that SUSA's technology was not used in Georgia, Pennsylvania or Michigan in the 2020 election, contrary to what Giuliani said on Dobbs' program on November 12, 2020. Doc. 1 at pars. 262-263. It also would have revealed that SUSA's technology and software were not used by Dominion in the 2020 election. Doc. 1 at par. 265.

**151136/2021   SMARTMATIC USA CORP. vs. FOX CORPORATION**          **Page 14 of 61**
**Motion No.  001 002 003 004 008 009**

14 of 61

Additionally, plaintiffs claimed that defendants knew, or should have known, based on lawsuits filed by Powell in Georgia, Michigan, Wisconsin, and Arizona, which sought to overturn the vote and were dismissed, that neither she nor Giuliani could substantiate any of their claims regarding SUSA. Doc. 1 at pars. 377-421.  Indeed, although Powell claimed "widespread ballot fraud" in each of the election lawsuits she commenced, she did not allege in any of those actions that SUSA participated in the alleged fraud. Doc. 1 at par. 399.

Plaintiffs further alleged that the Fox defendants violated accepted standards of journalism in order to make a profit. Doc. 1 at pars. 450-465.  On December 10, 2020, SUSA wrote to Fox News to demand a retraction of all of the false information aired by the network. Doc. 1 at par. 520; Doc. 79. Although Fox News did not issue a retraction, on December 18, 2020 it aired an interview with an election software expert, Perez, on Dobbs' show, and Perez confirmed that the information spread by the defendants was false. Doc. 1 at par. 131.  On December 20, 2020, the same video was played by Pirro and Bartiromo on their respective shows. Doc. 1 at pars 235, 238. However, none of the Fox anchor defendants acknowledged that they had spread false information or that they encouraged Powell and Giuliani to do so. Doc. 1 at par. 239.

SUSA further claimed that it was irreparably harmed by the defendants' disinformation campaign, which sought to destroy its reputation and undermine confidence in the election.  This, urged SUSA, decimated its future business prospects. Doc. 1 at par. 470.  Specifically, it asserted that it forecasted over $500-690 million in lost profits for the 5 years ending December 31, 2025. Doc. 1 at par. 471.  It further maintained that the value of SGO and its subsidiaries was damaged in an amount not less than $2.7 billion. Doc. 1 at par. 471.

As a first cause of action against the Fox defendants, Powell, and Giuliani, plaintiffs alleged defamation per se based on the defendants' false statements and implications that SUSA

151136/2021   SMARTMATIC USA CORP. vs. FOX CORPORATION    Page 15 of 61
Motion No.  001 002 003 004 008 009

15 of 61

Case 1:21-cv-02995-CJN  Document 27-7  Filed 07/11/22  Page 17 of 62

participated in a criminal conspiracy to rig the election. Doc. 1 at pars. 521-535. Plaintiffs claimed that defendants acted with actual malice and/or reckless disregard of the truth since they knew their statements were false. Doc. 1 at par. 529.

As a second cause of action against the same defendants, plaintiffs alleged defamation based on the defendants' false statements that SUSA's technology and software were widely used during the election. Doc. 1 at pars. 536-550.

As a third cause of action against the same defendants, plaintiffs alleged defamation arising from false statements and implications that SUSA's election technology and software was used to rig the election. Doc. 1 at pars. 551-565.

As a fourth cause of action of action against all of the same defendants except Powell, plaintiffs alleged defamation arising from defendants' claim that SUSA sent votes to foreign countries to be tabulated and manipulated. Doc. 1 at pars. 566-580.

As a fifth cause of action the Fox defendants, Powell, and Giuliani, plaintiffs claimed that defendants defamed them by falsely stating and implying that SUSA's technology and software were hacked during the election. Doc. 1 at pars. 581-595.

As a sixth cause of action against the same defendants, plaintiffs claimed that defendants defamed them by stating and implying that SUSA's election technology and software was used by Dominion during the election.  Doc. 1 at pars. 596-610.

As a seventh cause of action, plaintiffs claimed that defendants Fox News, Dobbs, Bartiromo and Giuliani defamed them by stating and implying that SUSA was banned from doing business in the United States. Doc. 1 at pars. 611-625.

**151136/2021   SMARTMATIC USA CORP. vs. FOX CORPORATION**
**Motion No.  001 002 003 004 008 009**

**Page 16 of 61**

16 of 61

As an eighth cause of action against the Fox defendants, Giuliani, and Powell, plaintiffs claimed that they were defamed by said defendants when they said that SUSA was a Venezuelan company founded by corrupt dictators. Doc. 1 at pars. 626-640.

As a ninth cause of action, plaintiffs claimed that they were defamed by the Fox defendants, Giuliani, and Powell when they said that SUSA's technology and software were designed to fix, rig, and steal elections. Doc. 1 at pars. 641-655.

As a tenth cause of action, plaintiffs claimed that SUSA's goods and services were disparaged by the Fox defendants, Giuliani, and Powell when they said that the company's technology and software were widely used in the 2020 election, including in closely contested states. Doc. 1 at pars. 656-669.

As an eleventh cause of action, plaintiffs claimed that the Fox defendants, Dobbs, Bartiromo, Pirro, Giuliani, and Powell disparaged them with false statements and implications that SUSA's technology and software were used to fix, rig and steal the election. Doc. 1 at pars. 670-683.

As a twelfth cause of action against the Fox defendants and Giuliani, plaintiffs claimed that they were disparaged by false statements and implications that SUSA's technology and software sent votes cast in the U.S. to foreign countries for tabulation and manipulation. Doc. 1 at pars. 684-697.

As a thirteenth cause of action against the Fox defendants, Giuliani, and Powell, plaintiffs claimed that they were disparaged by false statements and implications that SUSA's technology and software were compromised and hacked during the election. Doc. 1 at pars. 698-711.

**151136/2021   SMARTMATIC USA CORP. vs. FOX CORPORATION**                    **Page 17 of 61**
**Motion No.  001 002 003 004 008 009**

17 of 61

As a fourteenth cause of action against the Fox defendants, Powell, and Giuliani, plaintiffs claimed that they were disparaged by false statements and implications that SUSA's technology and software were used by Dominion during the election. Doc. 1 at pars. 712-725.

As a fifteenth cause of action against Fox News, Dobbs, Bartiromo, and Giuliani, plaintiffs claimed that they were disparaged by false statements and implications that SUSA had been banned from doing business in the United States.  Doc. 1 at pars. 726-739.

As a sixteenth cause of action against the Fox defendants, Powell, and Giuliani, plaintiffs claimed that they were disparaged by false statements and implications that SUSA's technology and software were designed and used to fix, rig and steal elections. Doc. 1 at pars. 740-753.

As a result of the foregoing, plaintiffs claimed that they were entitled, inter alia, to damages for lost profits of $500-690 million during the 5 years ending December 31, 2025 (Doc. 1 at par. 471); that SUSA's parent company, SGO, would lose more than $843.3 million in decreased revenues and increased expenses during the next five years (Doc. 1 at par. 494 n. 42), and that they sustained actual, consequential and special damages "in an amount to be determined at trial, but no less than $2.7 billion" Doc. 1 at par. 754.

**Fox News' Motion to Dismiss (Seq. 001)**

Fox News now moves to dismiss pursuant to CPLR 3211(a)(1), (a)(7), and (g), asserting that there is no viable claim against it since it merely reported on newsworthy events surrounding President Trump's unconventional efforts to challenge the results of the election. Docs. 178, 206. It argues that, because SUSA is a limited purpose public figure, it must prove actual malice in order to prevail herein.  It further asserts that plaintiffs have not identified any defamatory statement made by Fox News and fail to allege in the complaint that the allegedly defamatory statements were published with actual malice. Doc. 1 at pars. 217-218.  Further, Fox News

**151136/2021   SMARTMATIC USA CORP. vs. FOX CORPORATION**
**Page 18 of 61**
**Motion No.  001 002 003 004 008 009**

18 of 61

maintains that, since this claim implicates "the constitutional right of free speech in connection with an issue of public interest", it triggers New York's anti-SLAPP (strategic lawsuit against public participation) statute (Civil Rights Law ["CRL"] §76-a; CPLR 3211[g][1]) and, thus, the case cannot proceed unless plaintiffs allege that Fox News knowingly or recklessly falsified its coverage.

Fox News maintains that it repeatedly pressed Powell and Giuliani to substantiate their claims regarding SUSA and that they failed to do so. It further argues that, after SUSA demanded a retraction, Perez appeared on Dobbs', Pirro's and Bartiromo's shows and stated that there was no evidence that SUSA software was used to manipulate votes in the 2020 election. Docs. 47-49. Perez also stated, among other things, that SUSA's technology was used only in Los Angeles County in the 2020 election; that SUSA and Dominion were separate companies; that SUSA did not send votes overseas for tabulation; and that no state had banned SUSA technology in 2020. Docs. 47-49.

Fox News does not deny that, on November 16 and 17, 2020, SUSA emailed Alex Hooper, the producer of Dobbs' show, to advise that its technology was only used in Los Angeles County and that its software did not tabulate votes. Nevertheless, Fox News maintains that this does not establish actual malice because Bartiromo and Pirro did not know about SUSA's emails (and thus could not have knowingly disseminated false information) and Dobbs informed the viewers about the emails, thus proving that he did not disregard the information.

**Bartiromo's Motion (Seq. 002)**

Bartiromo, reiterating the arguments made by Fox News, asserts that the claims against her must be dismissed since plaintiffs failed to allege facts establishing that she acted with actual malice. Docs. 209, 219. She further asserts that the claims against her must be dismissed pursuant

151136/2021  SMARTMATIC USA CORP. vs. FOX CORPORATION

Motion No.  001 002 003 004 008 009

Page 19 of 61

19 of 61

to CPLR 3211(g)(1) and Civil Rights Law §76-a because this action is a SLAPP suit alleging defamation based on lawful conduct in furtherance of the exercise of free speech. She also maintains that her statements consisted of constitutionally protected reporting on newsworthy events.

In addition, Bartiromo maintains that, since she repeatedly pressed Powell and Giuliani regarding whether they would be able to prove their claims of wrongdoing by SUSA, she did not defame the company. She also claimed that her balanced reporting on the subject was evidenced by the fact that she played an interview with Perez, in which he represented that SUSA's software was not used to change votes, that SUSA did not send votes abroad to be tabulated, and that SUSA's involvement in the election was limited to Los Angeles County. Additionally, claims Bartiromo, SUSA did not allege that she had actual knowledge that what Powell and Giuliani said was false.

**Dobbs' Motion (Seq. 003)**

Dobbs argues that he is entitled to dismissal based on the same grounds set forth by Fox News. Docs. 220, 224. He further argues that the claims against him challenge speech protected by the First Amendment, specifically his right as a member of the press to report on President Trump's objection to the election results, since this is a matter of public interest. Additionally, Dobbs maintains that plaintiffs fail to allege that he acted with actual malice.

Additionally, Dobbs maintains that he advised his viewers that SUSA had denied some of the allegations against it. Specifically, he asserts, inter alia, that: 1) on November 16, 2020, he stated that SUSA advised Fox News that it only provided technology and software for the election in Los Angeles County; 2) on November 19, 2020, he said that SUSA denied the claims of election fraud and asked Powell when she would be prepared to come forward with evidence establishing

151136/2021  SMARTMATIC USA CORP. vs. FOX CORPORATION                     Page 20 of 61
Motion No.  001 002 003 004 008 009

20 of 61

Case 1:21-cv-02995-CJN   Document 27-7   Filed 07/11/22   Page 22 of 62

a basis for overturning results in battleground states; and on December 10, 2020 he again asked Powell what evidence she had of election fraud.

Although Dobbs stated on his show that the election was, in essence, the culmination of a 4 ½ year effort to overthrow President Trump; that he was glad that President Trump was willing to fight until questions about irregularities in the election were answered; and was critical of government officials and agencies which said that President Biden was fairly elected, he insisted that this was simply commentary about the election.

Dobbs does not dispute that he tweeted that Powell said she had "firsthand evidence" that SUSA software was designed to change votes without detection and that Giuliani said that votes in 28 states were sent to Germany and Spain to be counted by SUSA.  However, he claims that this was simply reporting on a matter of public interest and that his reporting was fair because he played an interview of Perez on his program in which the latter said that SUSA had a limited role in the election and did not manipulate the vote.   In fact, claims Dobbs, he made it clear that the allegations of vote manipulation came from President Trump and his attorneys, Powell and Giuliani.

Further, Dobbs claims that the complaint must be dismissed pursuant to CPLR 3211(g) and CRL §76-a(1)(a) since this action violates New York's anti-SLAPP law.  Specifically, he claims that plaintiffs assert a defamation claim based on "lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest."  He insists that he cannot be held liable for defamation where it was Powell and Giuliani, and not he, who made the disparaging comments about SUSA.

Additionally, Dobbs argues that the complaint must be dismissed because plaintiffs fail to demonstrate that he acted with actual malice.   He maintains that, since he told viewers about the

**151136/2021   SMARTMATIC USA CORP. vs. FOX CORPORATION**
**Motion No.  001 002 003 004 008 009**

**Page 21 of 61**

21 of 61

Case 1:21-cv-02995-CJN   Document 27-7   Filed 07/11/22   Page 23 of 62

information SUSA sent to Hooper, he proved that he did not act with reckless disregard of the truth, thereby dooming the claim of actual malice.

## Pirro's Motion (Seq. 004)

Pirro also incorporates by reference the arguments made by Fox News and her contentions substantially reiterate those made by Bartiromo and Dobbs.  Docs. 225, 229.  She asserts that her statements are protected because she was merely reporting on President Trump's challenge to the election results, which was clearly newsworthy; that her statements of opinion are protected by the First Amendment; that she did not represent that SUSA did anything improper, but rather asked Powell and Giuliani what they knew about the company's possible involvement in misconduct related to the election and whether they had evidence to support their beliefs; she merely characterized the responses by Powell and Giuliani as suggesting that SUSA had acted improperly; and even aired the interview with Perez in which he said that SUSA had committed no wrongdoing.

Additionally, Pirro maintains that she did not act with actual malice and that the complaint must be dismissed pursuant to CPLR 3211(g) and CRL §76-a (1) (a) since this is a SLAPP suit.  Thus, urges Pirro, plaintiffs cannot prevail unless they can show that she made the allegedly defamatory comments with the knowledge that they were false or with reckless disregard for their truth.

## Powell's Motion (Seq. 008)

Powell argues that the complaint must be dismissed pursuant to CPLR 3211(a)(1), (7), and (8) and 3211(g).  Docs. 289-290.  She claims that there is no personal jurisdiction over her pursuant to CPLR 302(a)(1) since she is a Texas resident who does not transact business in New York.  Specifically, she maintains that the statements she made on Fox News shows broadcast from New York City do not confer long-arm jurisdiction over her.  Further, she asserts that where, as here, a

**151136/2021   SMARTMATIC USA CORP. vs. FOX CORPORATION**                    **Page 22 of 61**
**Motion No.  001 002 003 004 008 009**

22 of 61

Case 1:21-cv-02995-CJN   Document 27-7   Filed 07/11/22   Page 24 of 62

plaintiff's damages are purely economic, the place of injury is where plaintiff resides, and plaintiffs do not reside in New York. Powell also maintains that due process requires that the complaint be dismissed since she had no expectation of being sued in New York.

In addition, Powell argues that the complaint must be dismissed pursuant to CPLR 3211(g) and New York's anti-SLAPP statute, CRL §76-a (1) (a), because plaintiffs cannot prove by clear and convincing evidence that she made any statements with knowledge or reckless disregard of their falsity. Powell claims that, since she made statements based on sworn affidavits, plaintiffs cannot prove that she made the statements with a high degree of awareness of their probable falsity or entertained serious doubts as to their truth. Indeed, she claims that "she believed the allegations then and she believes them now." (Doc. 290 at 15).

Powell further maintains that any failure on her part to investigate the veracity of her statements does not constitute actual malice; that the claims against her must be dismissed since her statements about SUSA expressed only her opinions; and that her statements are protected because they were made during the course of litigation.

**Giuliani's Motion (Seq. 009)**

Giuliani argues that the complaint must be dismissed pursuant to CPLR 3211(a)(1), (a)(2), (a)(3), (a)(7), and (g) as well as CRL §76-a. Docs. 298-299. He primarily asserts that the claims against him must be dismissed because plaintiffs cannot establish that he acted with actual malice. He further argues that SIH and SGO lack standing to sue him for defamation because none of his statements were "of and concerning" them and because they cannot sue to recover for damages on behalf of SUSA. Additionally, Giuliani asserts that his statements are absolutely privileged because they were made during the scope of his representation of President Trump in litigation related to the election. He further maintains that causes of action 2, 3, 4, 5, 6 and 9 must be

151136/2021   SMARTMATIC USA CORP. vs. FOX CORPORATION                    Page 23 of 61
Motion No.  001 002 003 004 008 009

23 of 61

dismissed because they sound in product disparagement and not defamation. Additionally, he asserts that SUSA has failed to properly allege special damages, as it is required to do in a product disparagement claim, since it has not identified the customers it claims it lost.

**Plaintiffs' Opposition To The Motions By The Fox Defendants (Mot. Seqs. 001-004)**

In opposition to the Fox defendants' motions (mot. seqs. 001-004), plaintiffs argue that the First Amendment does not protect said defendants from defaming them. Doc. 378. Plaintiffs maintain that, viewing the statements of the Fox defendants in their totality, it is clear that they defamed and disparaged them, and that they adequately pleaded actual malice and special damages. Specifically, plaintiffs argue that they pleaded actual malice by alleging that the Fox defendants: 1) had no support for the published claims about SUSA; 2) knew that the statements they made about SUSA were false; 3) had obvious reasons to doubt the information they obtained from Powell and Giuliani including, but not limited to, the fact that neither of those attorneys provided any evidence of their claims, knew that the said attorneys' claims had been refuted by election specialists and officials; 4) violated accepted journalistic standards; and 5) had improper motives for publishing their reports about SUSA.

In support of their argument, plaintiffs, relying on *Harte-Hanks Comms. v Connaughton*, 491 US 657, 692 (1989), assert that "[a]lthough a failure to investigate will not alone support a finding of actual malice, the purposeful avoidance of the truth is in a different category." They further cite *St. Amant v Thompson*, 390 US 727, 733 (1968) for the proposition that a finder of fact "must determine whether the publication was indeed made in good faith" and that one publishing a defamatory statement is unlikely to prevail where "the publisher's allegations are so inherently improbable that only a reckless [person] would have them put in circulation." Additionally, plaintiffs maintain, relying on *Greenberg v Spitzer*, 155 AD3d 27, 55 (2d Dept 2017), that the Fox

151136/2021   SMARTMATIC USA CORP. vs. FOX CORPORATION                     Page 24 of 61
Motion No.  001 002 003 004 008 009

24 of 61

defendants acted with actual malice since they made the defamatory statements with the intent to discredit SUSA, bolster their own careers, and/or to boost the ratings of Fox News.[12]

Plaintiffs further allege that Fox News and its anchors, Pirro, Bartiromo, and Dobbs, conspired with Powell and Giuliani to falsely claim that it rigged the election.

In addition, plaintiffs assert that the Fox defendants are not protected by the neutral reporting privilege,[13] which is not recognized in New York and that, even if it were, defendants have failed to establish that it is applicable herein given, inter alia, that SUSA is not a public figure. Relying on *Lasky v Am. Broadcasting Companies*, 631 F Supp 962, 971 (SDNY 1986), plaintiffs maintain that, if SUSA could somehow be deemed a public figure, it is only because of the controversy created around it by the Fox defendants. Contrary to the Fox defendants' contention, plaintiffs assert that SUSA did not inject itself into a public controversy since its work on the election in Los Angeles County is unrelated to the coverage for which the Fox defendants are being sued.

Plaintiffs further maintain that: the Fox defendants are not protected by the fair reporting privilege given, inter alia, that their statements were not "fair and true" reports about an official proceeding; the statements by the Fox defendants are actionable because they were defamatory and did not constitute opinion and the Fox defendants are liable for the defamatory statements made by Powell and Giuliani since they were active participants in soliciting and creating the defamatory statements on their programs.

Further, plaintiffs claim that Fox News is responsible for all defamatory statements and implications made by the Fox anchor defendants, Powell, and Giuliani. Relying on *Cianci v New*

---

[12] Plaintiffs also note that Pirro's husband received a pardon from President Trump after her reporting on its software.

[13] The neutral reporting privilege immunizes one who republishes defamatory statements from liability, so long as the statements were made about a public figure and were reported on accurately and without bias.

151136/2021    SMARTMATIC USA CORP. vs. FOX CORPORATION    Page 25 of 61
Motion No.   001 002 003 004 008 009

25 of 61

*Times Pub. Co.*, 639 F2d 54, 60 (2d Cir. 1980) ("one who repeats or otherwise republishes a libel is subject to liability just as if he had published it originally") (citations omitted), they assert that the Fox anchor defendants cannot escape liability merely by stating that they were repeating what Powell and Giuliani said.   They further argue that Fox News is also liable because it rebroadcasted the defamatory material on television and online in order to defame SUSA to a larger audience. Plaintiffs also maintain that Dobbs, Bartiromo, and Pirro cannot escape liability merely because they occasionally mentioned that SUSA denied their representations (*See Dempsey v Time, Inc*., 43 Misc3d 754, 757 [Sup Ct NY County 1964], *aff'd* 22 AD2d 854 [1st Dept 1964] ["the suggestion that a libel be excused because a denial made by the subject thereof is also published, is patently absurd."]).   Plaintiffs also maintain that Dobbs, Pirro and Bartiromo contributed to the defamatory remarks by Powell and Giuliani by failing to correct them and that the Fox defendants failed to submit any documentary evidence warranting dismissal under CPLR 3211(a)(1).

Plaintiffs further contend that the complaint is not subject to dismissal pursuant to New York's anti-SLAPP statute (CRL § 76-a) since it sets forth a substantial basis in law for its claims. They also assert that the Fox defendants' publications were not related to an "issue of public interest" since nobody knew who they were until the defendants made false statements about them. Finally, they argue that the complaint cannot be dismissed pursuant to CRL §76-a or CPLR 3211(g) because the First Amendment does not protect false and defamatory statements, even if they are made in the context of a public debate about issues of general concern.

**The Fox Defendants' Reply (Mot. Seq. 001-004)**

In reply, the Fox defendants reiterate that the complaint must be dismissed since their speech is protected by the First Amendment.   They further assert that plaintiffs failed to allege actual malice.  Doc. 683.

151136/2021   SMARTMATIC USA CORP. vs. FOX CORPORATION                    Page 26 of 61
Motion No.  001 002 003 004 008 009

26 of 61

Case 1:21-cv-02995-CJN Document 27-7 Filed 07/11/22 Page 28 of 62

**Plaintiffs' Opposition to Powell's Motion and Their**
**Cross Motion to Compel Jurisdictional Discovery (Mot. Seq. 008)**

In opposition to Powell's motion to dismiss, plaintiffs argue that personal jurisdiction exists over Powell in New York pursuant to CPLR 302(a)(1) because she used DTR's website to solicit donations in the state. Doc. 743.[14]  Relying on *Legros v Irving*, 38 AD2d 53, 55 (1st Dept 1971), in which significant actions, culminating in the publication of a book containing allegedly libelous material, occurred in New York, plaintiffs maintain that Powell is subject to jurisdiction in New York because she engaged in "purposeful business transactions" in this state, including coordinating with the Fox anchor defendants to have her statements published from New York. Further, relying on *Courtroom TV Network v Focus Media*, 264 AD2d 351, 354 (1st Dept 1999), plaintiffs argue that there is personal jurisdiction over Powell because she "[took] advantage of New York's unique resources in the entertainment industry [and thus] purposefully availed [herself] of the benefits of conducting business in the State, such that long-arm jurisdiction may be asserted where the cause of action arises out of that transaction (citation omitted)."  Plaintiffs, relying on *Dixon v Mack*, 507 F Supp 345, 352 (SDNY 1980), also argue that there is personal jurisdiction over Powell because she conspired with the Fox defendants and Giuliani, who committed torts in this state.

Plaintiffs further maintain that Powell's comments are actionable because they were falsies she held out as facts and did not constitute her opinion.  Alternatively, they argue that, even if Powell's comments could be construed as opinion, her comments would still be actionable since she implied that they were based on facts undisclosed to those to whom her statements were published.

---

[14] Plaintiffs specifically alleged in the complaint that Powell used her disinformation campaign "to solicit money from individuals and corporations" in New York and elsewhere for "contributions to her so-called 'legal defense' fund and Super PAC." Doc. 1 at par. 34.

151136/2021  SMARTMATIC USA CORP. vs. FOX CORPORATION                    Page 27 of 61
Motion No.  001 002 003 004 008 009

27 of 61

Additionally, plaintiffs argue that they are not required to plead actual malice since SUSA is neither a public figure nor a limited purpose public figure. Nevertheless, argue plaintiffs, relying on *Prozeralik v Cap. Cities Commns.*, Inc., 181 AD3d 556, 557 (2d Dept 2020), they have adequately pleaded actual malice by alleging that Powell knowingly made false statements about SUSA, without any factual basis, which defamed it and disparaged its software. Plaintiffs further assert, relying on *St. Amant v Thompson*, 390 US at 732, *supra*, that, although Powell claims that she believed that what she said was true (Powell Mem. at 16), this does not preclude a finding of actual malice. They also claim that none of Powell's statements were protected by any privilege.

Plaintiffs also cross-move, pursuant to CPLR 3211(d), for an order directing that jurisdictional discovery be conducted regarding whether Powell transacted business in New York such that she should be subject to personal jurisdiction in the state or, in the alternative, denying the branch of Powell's motion seeking to dismiss based on lack of personal jurisdiction without prejudice to her alleging said defense in her answer. Docs. 742-743. In asserting that they are entitled to jurisdictional discovery, plaintiffs claim that they are entitled to seek information regarding Powell's communications with the Fox defendants; the operation of the website for her PAC, DTR; donations she received from New York residents; and sales she made to New York residents. Doc. 743 at 17.

### Plaintiffs' Opposition to Giuliani's Motion (Mot. Seq. 009)

In opposition to Giuliani's motion, plaintiffs argue that New York's anti-SLAPP statute does not apply to his remarks because Fox News is not a public forum and their role in the 2020 election was not an issue of public interest until defendants made it into one and that, even if the statute applied, their claims are not barred since they have a substantial basis in law. They further assert that: Giuliani's statements were false; since SUSA is not a public figure, it is not required

151136/2021  SMARTMATIC USA CORP. vs. FOX CORPORATION    Page 28 of 61
Motion No.  001 002 003 004 008 009

28 of 61

Case 1:21-cv-02995-CJN   Document 27-7   Filed 07/11/22   Page 30 of 62

to allege actual malice and, even if it were a public figure, it has adequately alleged such actual malice; his statements are not privileged; they give rise to claims for defamation and product disparagement and such claims are adequately pleaded; they are not required to claim special damages for defamation since they adequately pleaded defamation *per se*; and they adequately pleaded special damages for product disparagement.

Plaintiffs further assert that, contrary to Giuliani's contention, his comments were "of and concerning" SUSA, SIH, and SGO, since an average person hearing the same could reasonably conclude, in light of the surrounding circumstances, that they pertained to each of those entities.[15] Specifically, note plaintiffs, Giuliani referred to "Smartmatic", which name is included in the full name of SUSA and SIH. Additionally, Giuliani and Powell stated that Lord Malloch Brown owned "Smartmatic" when, in fact, he was the former Chairman of SGO. In any event, assert plaintiffs, the question of whether Giuliani's statements were "of and concerning" one or more of the said entities is a question for the jury.[16]

Further, plaintiffs assert that SIH, the owner of SUSA, and SGO, which owns SIH, have standing to sue because they each are claiming damages for their own respective injuries.

**Powell's Reply (Mot. Seq. 008)**

In reply, Powell argues that there is no personal jurisdiction over her in New York; that plaintiffs have failed to establish jurisdiction over her based on a conspiracy; that a finding of jurisdiction over her would not be consistent with due process; that there is no basis for

---

[15] Although plaintiffs do not specifically allege that the defendants' statements were "of and concerning" SUSA, SIH, and/or SGO, they refer to all three entities collectively as Smartmatic in the complaint, and allege that Giuliani's "false statements and implications could reasonably be understood to be statements of fact about Smartmatic." Doc. 1 at 1; Doc. 1 at par. 568.

[16] Giuliani is the only defendant to argue that his statements were not "of and concerning" SIH and SGO.

**151136/2021   SMARTMATIC USA CORP. vs. FOX CORPORATION                    Page 29 of 61**
**Motion No.   001 002 003 004 008 009**

Case 1:21-cv-02995-CJN   Document 27-7   Filed 07/11/22   Page 31 of 62

jurisdictional discovery; that New York's anti-SLAPP law bars plaintiffs' claims since they have failed to establish malice; and that her speech was not actionable. Doc. 808.

**Giuliani's Reply (Mot. Seq. 009)**

In his reply, Giuliani argues that plaintiffs' claims are barred by New York's anti-SLAPP law; that plaintiffs fail to adequately allege actual malice; that his statements are protected by the litigation privilege; that SUSA's products cannot be defamed; that the claims against SIH and SGO must be dismissed since his statements were not "of and concerning" them; and that SUSA failed to adequately plead special damages on its defamation and product disparagement claims. Doc. 809.

**Powell's Supplemental Submission (Mot. Seq. 008)**

This Court granted Powell leave to file a supplemental letter in support of her motion in connection with the issue of possible jurisdictional discovery. By correspondence filed August 6, 2021, Powell's attorney, quoting *Pramer S.C.A. v Abaplus Intl. Corp.*, 76 AD3d 89, 95-96 (1st Dept 2010), argued that "claims against a corporate defendant, if jurisdictionally viable, do not provide a basis for personal jurisdiction over a corporate official or employee who acts on behalf of the corporation" (citation omitted). Thus, argues Powell, there can be no personal jurisdiction over her in New York even if she used DTR's website to raise money in New York. Doc. 825.

**Plaintiffs' Supplemental Submission (Mot. Seq. 008)**

In an August 9, 2021 correspondence responding to the letter by Powell's attorney, plaintiffs assert that Powell cannot rely on *Pramer* since the Court of Appeals rejected the "fiduciary shield" doctrine in *Kreutter v McFadden Oil Corp.*, 71 NY2d 460, 472 (1988), in which it held that the rule was not available to defeat jurisdiction pursuant to CPLR 302. Plaintiffs maintain that their argument is based on actions Powell took on her own behalf, and

**151136/2021   SMARTMATIC USA CORP. vs. FOX CORPORATION**           **Page 30 of 61**
**Motion No.   001 002 003 004 008 009**

30 of 61

not on behalf of DTR.  Further, they assert that Powell's solicitations of contributions on Fox News on November 10 and 14, 2020 could not have been on behalf of DTR since that entity was not even founded until December 1, 2020, after most of the broadcasts at issue herein. Moreover, it claims that they are entitled to discovery regarding whether Powell transacted business in New York given her denial that she did so in 2020 or 2021. Doc. 826.

## LEGAL CONCLUSIONS

**Applicable Legal Standards**

**Defamation**

Defamation is "the making of a false statement that 'tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society.'" (*Manfredonia v Weiss*, 37 AD3d 286, 286 [1st Dept 2007], *quoting Sydney v. MacFadden Newspaper Publ. Corp.*, 242 N.Y. 208, 211-212 [1926]).  In order to state a claim for defamation, a plaintiff must allege: (1) a false statement that is (2) published to a third party without privilege or authorization (3) constituting fault as judged by, at a minimum, a negligence standard and that (4) causes special harm, unless the statement constitutes defamation per se, in which case damages are presumed (*Stepanov v Dow Jones & Co., Inc.*, 120 AD3d 28, 34 [1st Dept 2014]; *Frechtman v Gutterman*, 115 AD3d 102, 104 [1st Dept 2014]).  Four types of statements constitute defamation per se, two of which are relevant herein: those which "tend to injure [a] plaintiff in [its] trade, business or profession" and those accusing a plaintiff of committing a serious crime (*Nolan v State*, 158 AD3d 186, 195 [1st Dept 2018]).[17]

---

[17] Special damages need not be alleged where a claim arises from defamatory statements which tend to injure a party in his or her business or profession since the law presumes that such damage results when a person's business reputation is impugned by statements accusing one of improper conduct or improper performance of one's duties

**151136/2021   SMARTMATIC USA CORP. vs. FOX CORPORATION**                                    **Page 31 of 61**
**Motion No.  001 002 003 004 008 009**

31 of 61

Case 1:21-cv-02995-CJN Document 27-7 Filed 07/11/22 Page 33 of 62

In order to withstand a motion to dismiss, a claim for defamation must be pleaded with sufficient particularity (*See* CPLR 3016 [a]).  "Whether particular words are defamatory presents a legal question to be resolved by the court in the first instance." (*Aronson v Wiersma*, 65 NY2d 592, 593 [1985]). "The words must be construed in the context of the entire statement or publication as a whole, tested against the understanding of the average reader, and if not reasonably susceptible of a defamatory meaning, they are not actionable and cannot be made so by a strained or artificial construction." (*Id.*; *Immuno AG. v Moor-Jankowski*, 77 NY2d 235, 250 [1991]).

When televised statements are analyzed for alleged defamatory content, "the court must consider the program as a whole." (*Lasky v American Broadcasting Companies, Inc.*, 631 F Supp 962, 970 [SDNY 1986]).  The court cannot merely read a transcript of the program and "confine its analysis to the words alone," but must also consider the impact of the audio and video portions of the program to interpret "the meaning or meanings intended." (Id.)

**New York's Anti-SLAPP Statute**

> In 1992, legislation was enacted to address "a rising concern about the use of civil litigation, primarily defamation suits, to intimidate or silence those who speak out at public meetings against proposed land use development and other activities requiring approval of public boards. Termed SLAPP suits—strategic lawsuits against public participation—such actions are characterized as having little legal merit but are filed nonetheless to burden opponents with legal defense costs and the threat of liability and to discourage those who might wish to speak out in the future" (*600 W. 115th St. Corp. v Von Gutfeld*, 80 NY2d 130, 137 [1992]; *see* L 1992, ch 767; [CRL] §§ 70-a, 76-a). The legislation was specifically aimed at broadening the protection of citizens facing litigation arising from their public petition and participation (*see* L 1992, ch 767, § 1; *600 W. 115th St. Corp. v Von Gutfeld*, 80 NY2d at 137 n 1).

(*Mable Assets v Rachmanov*, 192 AD3d 998, 999-1000 [2d Dept 2021]).

---

(*See Chiavarelli v Williams*, 256 AD2d 111, 113 [1st Dept 1998] [citations omitted]).

151136/2021  SMARTMATIC USA CORP. vs. FOX CORPORATION
Motion No.  001 002 003 004 008 009

Page 32 of 61

32 of 61

Case 1:21-cv-02995-CJN Document 27-7 Filed 07/11/22 Page 34 of 62

On November 10, 2020, CRL §§ 70-a and 76-a were amended "to broaden the scope of the law and afford greater protections to citizens facing litigation arising from their public petition and participation (*see* L 2020, ch 250)" (*Mable Assets*, 192 AD3d at 1000). The amendment expands the definition of an "action involving public petition and participation" set forth in CRL §76-a to include: "1) any communication in a place open to the public or a public forum in connection with an issue of public interest; or 2) any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest, or in furtherance of the exercise of the constitutional right of petition" (CRL § 76-a[1], [2]). The statute provides that "'[p]ublic interest' shall be construed broadly, and shall mean any subject other than a purely private matter" (CRL § 76-a[1][d]). Additionally, "damages may only be recovered if the plaintiff, in addition to all other necessary elements, shall have established by clear and convincing evidence that any communication which gives rise to the action was made with knowledge of its falsity or with reckless disregard of whether it was false…" (CRL § 76-a [2]; *see Mable Assets*, 192 AD3d at 1001).

Given the foregoing, in order to recover damages in this action, plaintiffs must prove actual malice, i.e, that one or more of the defendants "acted out of personal spite or ill will, with reckless disregard for [a] statement's truth or falsity, or with a high degree [of] belief that [the] statements were probably false" (*Sagaille v Carrega*, 194 AD3d 92, 95 [1st Dept 2021]; *see New York Times Co. v Sullivan*, 376 US 254, 279-280 [1964] [actual malice defined by the U.S. Supreme Court as knowledge of falsity or reckless disregard for the truth]). A defendant's "high degree of awareness of falsity" or "serious doubts as to the truth" may be proven "inferentially" (*Sprewell v NYP Holdings, Inc.*, 43 AD3d 16, 21 [1st Dept 2007] [citation omitted]). This is "because [malice] is a matter of the defendant's subjective mental state, revolves around facts usually within the

151136/2021   SMARTMATIC USA CORP. vs. FOX CORPORATION                    Page 33 of 61
Motion No.  001 002 003 004 008 009

33 of 61

Case 1:21-cv-02995-CJN   Document 27-7   Filed 07/11/22   Page 35 of 62

defendant's knowledge and control, and rarely is admitted" (*Dalbec v Gentleman's Companion, Inc.*, 828 F 2d 921, 927 [2d Cir 1987]).  Factors considered in determining whether a defendant acted with actual malice include "(1) whether a story is fabricated or based on an unverified, anonymous source; (2) whether the allegations at issue are so inherently improbable that only a reckless person would have put them in circulation; and (3) whether there are any obvious reasons to doubt the truthfulness of the defendant's source or the accuracy of the source's report" (*Sweigert v Goodman*, 2021 US Dist LEXIS 251325, at *37-38 [SDNY Oct. 29, 2021, No. 1:18-cv-08653] quoting *Stern v Cosby*, 645 F Supp 2d 258, 278 [SDNY 2009]).

CRL §70-a was also amended to create an affirmative cause of action to recover damages from plaintiff, including attorneys' fees, as well as other damages in certain circumstances, if the defendant can show that the action "was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law" (CRL §70-a[1][a]).

CPLR 3211(g) was amended simultaneously with the CRL to provide that, where a defendant moves to dismiss pursuant to CPLR 3211(a)(7) for failure to state a cause of action, and the moving party has demonstrated that the action involves "public petition and participation" as defined in CRL §76-a, the motion "shall be granted unless the party responding to the motion demonstrates that the cause of action has a substantial basis in law or is supported by a substantial argument for an extension, modification or reversal of existing law" (CPLR 3211[g][1]).  Since CPLR 3211(g) was only recently enacted, there is a paucity of case law interpreting it.  However, CPLR 3211(h), which governs the standards for motions to dismiss involving licensed architects, engineers, land surveyors and landscape architects, contains the same "substantial basis in law" language as CPLR 3211(g).  In deciding a motion to dismiss filed pursuant to CPLR 3211(h), the

**151136/2021   SMARTMATIC USA CORP. vs. FOX CORPORATION**                    **Page 34 of 61**
**Motion No.  001 002 003 004 008 009**

34 of 61

Case 1:21-cv-02995-CJN   Document 27-7   Filed 07/11/22   Page 36 of 62

Appellate Division held that a court reviewing the sufficiency of a complaint under that section

"must . . . determine whether the claim alleged is supported by such relevant proof as a reasonable

mind may accept as adequate to support a conclusion or ultimate fact" and that, although a plaintiff

need not establish that the claim is supported by a preponderance of the evidence, it "must adduce

allegations and evidence that demonstrate the existence of triable issues of fact" (*Golby v N & P*

*Engineers & Land Surveyor*, PLLC, 185 AD3d 792, 793-794 [2d Dept 2020] [citations omitted]).[18]

The anti-SLAPP law also requires courts to consider, in addition to the pleadings, affidavits and

other evidence (CPLR 3211[g][2]).

   This Court finds that this "action involve[es] public petition and participation" as defined

in CRL §76-a (1) (a) (1) since it arises from communications made in "a public forum" - television

- and, contrary to plaintiffs' contention, is related to "an issue of public interest" - the 2020

presidential election.[19] Therefore, in determining whether plaintiffs' claims can withstand

dismissal, this Court is required to examine whether they have a substantial basis in law (CPLR

3211[g][1]).[20]

**Fox News' Motion To Dismiss (Mot. Seq. 001)**

   Plaintiffs allege that, in November and December 2020, Fox News broadcasted 13 reports

in which it stated or implied that SUSA was responsible for stealing the election, and repeated the

---

[18] Some trial court decisions have held that a plaintiff opposing a motion to dismiss pursuant to CPLR 3211(g) must establish by clear and convincing evidence that there is a substantial basis in fact and law for the claim (*see, e.g., Sackler v American Broadcasting Cos., Inc*., 71 Misc3d 693 [Sup Ct New York County 2021]; *Epoch Group Inc. v Politico, LLC*, 2021 Misc LEXIS 6367, 2021 NY Slip Op 32644 [U] [Sup Ct New York County 2021]).  However, the statute contains no such requirement (*see Project Veritas v N.Y. Times Co*., 2021 Misc LEXIS 2264, 2021 NY Slip Op 31908 [U] [Sup Ct Westchester County 2021]).  Although the clear and convincing standard is applicable in determining whether a plaintiff in an action involving public petition and participation is ultimately entitled to *damages* (*See* CRL 76-a [2]), it is irrelevant in determining whether such an action can withstand a motion to dismiss.
[19] Given that this action falls within the scope of CRL 76-a, and thus requires plaintiffs to establish actual malice in order to recover damages, this Court need not address the parties' contentions regarding whether SUSA was a "public figure."
[20] Plaintiffs do not argue that their claims are "supported by a substantial argument for an extension, modification or reversal of existing law" (CPLR 3211[g][1]).

**151136/2021   SMARTMATIC USA CORP. vs. FOX CORPORATION**                  **Page 35 of 61**
**Motion No.  001 002 003 004 008 009**

35 of 61

stories in articles and social media postings.   Fox News, its employees and/or guests claimed, among other things, that: SUSA was a Venezuelan company under the control of corrupt dictators from socialist and communist countries (Doc. 1 at par. 6); its election technology was used in six "swing" or "battleground" states with close outcomes (Nevada, Arizona, Georgia, Pennsylvania, Michigan and Wisconsin) (Doc. 1 at par. 132); SUSA's software was designed to "rig" elections, and did so by switching votes from President Trump to President Biden (Doc. 1 at pars. 165, 169); SUSA's software was used in voting machines manufactured by Dominion (Doc. 1 at pars. 199, 223); SUSA sent votes to foreign countries for tabulation and manipulation (Doc. 1 at par. 567); SUSA's software was hacked (Doc. 1 at par. 582); and SUSA had been banned from participating in prior elections in the United States (Doc. 1 at par. 612).

In opposing Fox News' motion, plaintiffs correctly rely on *Harte-Hanks Comms. v Connaughton*, 491 US 657, 692 (1989), in which the Supreme Court held that "[a]lthough a failure to investigate will not alone support a finding of actual malice, the purposeful avoidance of the truth is in a different category."  "[E]vidence that defendants purposefully avoided the truth may support a finding of actual malice if supported by evidence that defendants' 'inaction was a product of a deliberate decision not to acquire knowledge of facts that might confirm the probable falsity' of the published statement.  In other words, defendants' failure to investigate cannot amount to 'purposeful avoidance' unless it evidences an intent to avoid the truth." (*Sweeney v Prisoners' Legal Servs*., 84 NY2d 786, 793 [1995] quoting *Harte-Hanks*, 491 U.S. at 692-693).

Plaintiffs also cite *St. Amant v Thompson*, 390 US 727 (1968), in which the Supreme Court held that a publisher's "[f]ailure to investigate [a story] does not in itself establish bad faith" (Id. at 733).  However, the Court held that actual malice may be established "where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous

151136/2021   SMARTMATIC USA CORP. vs. FOX CORPORATION          Page 36 of 61
Motion No.  001 002 003 004 008 009

36 of 61

telephone call.  Nor will [a publisher] be likely to prevail when [its] allegations are so inherently improbable that only a reckless [person] would have put them in circulation.   Likewise, recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." (Id. at 732).   The Court held that "[p]ublishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice" (Id. at 731).

This Court finds that plaintiffs have adequately pleaded that their claims against Fox News have a sufficient basis in law so as to withstand the burden imposed by CPLR 3211(g).  They allege that Fox News acted with actual malice by broadcasting information proffered by Powell, Giuliani, and the Fox anchor defendants which it knew was false and that, even if Fox News did not know the information was false, it had reason to doubt the veracity of the same since it was unsupported by any facts and was refuted by election specialists and officials.  Plaintiffs also plead that Fox News acted with ill will towards them by making them scapegoats for President Trump's loss of the election and by broadcasting material intended to bolster its ratings at the expense of their reputation (*See Greenberg v Spitzer*, 155 AD3d 27, 55 [2d Dept 2017]).   In reaching this conclusion, this Court notes that, on this motion to dismiss pursuant to CPLR 3211, plaintiffs "are not obligated to   show evidentiary facts to   support   their   allegations   of [actual]   malice (*see Arts4All, Ltd. v Hancock*, 5 AD3d 106, 109 [1st Dept 2004])" (*Weiss v Lowenberg*, 95 AD3d 405, 406 [1st Dept 2012]) and, as noted previously, plaintiffs are not required to demonstrate actual malice by clear and convincing evidence in opposing this motion. Additionally, since the statements broadcasted, if false, defamed plaintiffs in their profession and/or trade and accused them of committing a serious crime, they are defamatory per se (*See Nolan v State*, 158 AD3d 186, 195 [1st Dept 2018]).

151136/2021   SMARTMATIC USA CORP. vs. FOX CORPORATION
Motion No.   001 002 003 004 008 009

Page 37 of 61

37 of 61

Case 1:21-cv-02995-CJN Document 27-7 Filed 07/11/22 Page 39 of 62

Fox News attempts to distance itself from the allegedly defamatory statements made by Powell and Giuliani by claiming that it repeatedly asked those defendants for proof substantiating their accusations about plaintiffs and they failed to produce any. However, this fact can also support plaintiffs' claim that Fox News had reason to suspect that what it was broadcasting was false, and nevertheless continued to allow Powell and Giuliani to appear on its network, specifically on shows hosted by Dobbs, Bartiromo, and Pirro, to promote completely unfounded claims that plaintiffs' software enabled President Biden to steal the election.[21] Even assuming that Fox News did not intentionally allow this false narrative to be broadcasted, there is a substantial basis for plaintiffs' claim that, at a minimum, Fox News turned a blind eye to a litany of outrageous claims about plaintiffs, unprecedented in the history of American elections, so inherently improbable that it evinced a reckless disregard for the truth.

As noted above, in determining actual malice, a court may consider, inter alia, whether a story is fabricated or based on an unverified, anonymous source and whether there are obvious reasons to doubt the truthfulness of the defendant's source (*See Sweigert v Goodman, supra*). Here, Powell said on Fox News that: she learned from a high-ranking military official that SUSA software was designed, with money from Cuba or Venezuela, to change votes to help Chavez become re-elected; SUSA changed votes in California in the 2016 election; there was (unspecified) evidence that the votes in the 2020 election were manipulated; there was sworn testimony (by unspecified persons) that SUSA's software was designed to fix elections; SUSA software was designed to change votes without detection; the CIA, FBI and other agencies reported that SUSA's software had multiple failures and vulnerabilities; and that there are "reams and reams" of documents which prove that the election was rigged.

---

[21] Bartiromo, Dobbs, and Pirro also attempt to shift any responsibility they may have to Powell and Giuliani.

151136/2021  SMARTMATIC USA CORP. vs. FOX CORPORATION                    Page 38 of 61
Motion No.  001 002 003 004 008 009

38 of 61

On Fox News, Giuliani said, among other things, that: SUSA was formed for the purpose of fixing elections; he had witnesses who saw votes changed in Michigan; and that President Trump had obtained "more evidence" that the election was rigged. Bartiromo stated on Fox News that she learned from unnamed whistleblowers, one of whom was an IT specialist, that SUSA software had an "unusual patch" which allowed it to change votes through a "back door." Dobbs stated on Fox News that a whistleblower told him that the rigging of the election was reminiscent of the 2013 Venezuelan election, in which SUSA software was used to change votes. Given the questionable sources of much of this information, as well as the gravity and unprecedented nature of the claims against SUSA, a jury could determine that these claims were fabricated or, at the very least, that there were reasons to doubt the sources of this information.

Additionally, on November 16, 2020, a group of election security specialists issued a statement saying that there was no credible evidence of fraud in the November election; that there was no evidence that the election had been rigged; and that such claims were unsubstantiated or technically incoherent. Doc. 1 at par. 370. This, alone, was enough to put any reputable news organization on notice that the claims against SUSA could be dubious. Additionally, on November 17, 2020, Fox News asked SUSA if it had any response to a November 12, 2020 statement by election officials and experts on the United States Elections Infrastructure Government Coordinating Council and the Election Infrastructure Sector Coordinating Executive Committees that the election was the "the most secure in American history." Doc. 1 at par. 298; Doc. 132. Thus, there is a substantial basis for plaintiffs' claim that Fox News actually had information undermining any claim that the election was rigged and willfully disregarded the same.

Ironically, the statements of Tucker Carlson, perhaps the most popular Fox News host, militate most strongly in favor of a possible finding that there is a substantial basis that Fox News

151136/2021   SMARTMATIC USA CORP. vs. FOX CORPORATION          Page 39 of 61
Motion No.  001 002 003 004 008 009

39 of 61

acted with actual malice. As noted above, on November 19, 2020, Dobbs posted a video of he and Powell on Twitter with a caption stating, inter alia, that Powell "has no doubt that Dominion voting machines run [SUSA]'s software which allows [it] to manipulate the votes." Doc. 1 at par. 133; Doc. 29. The same day, Carlson wrote an article stating that, for over a week, Powell had been claiming that the election had been stolen and that, if Powell were correct, it would be the greatest crime in American history, and he thus asked her to substantiate her comments. However, Powell never provided the evidence requested by Carlson, and President Trump's campaign advised Carlson that it knew of no such evidence. Therefore, there are sufficient allegations that Fox News knew, or should have known, that Powell's claim was false, and purposefully ignored the efforts of its most prominent anchor to obtain substantiation of claims of wrongdoing by SUSA.[22]

Fox News' contention that the claims against it must be dismissed because plaintiffs failed to plead that the network itself made any specific defamatory statements about SUSA is without merit. This is because one who "repeats [a] defamatory statement is responsible for the resulting damages" (*Geraci v Probst*, 15 NY3d 336, 342 [2010]; *see also Solstein v Mirra*, 488 F Supp 3d 86, 99 [SDNY 2020]). Since Fox News allowed allegedly defamatory statements about SUSA to be repeated on its network, a jury may therefore find that it acted with intent or reckless disregard of the truth.

Further, Fox News maintains that, after SUSA demanded a retraction, Perez appeared on Dobbs', Pirro's and Bartiromo's shows and stated that there was no evidence that SUSA's software was used to manipulate votes in the 2020 election. Docs. 47-49. Perez also stated, among other things, that SUSA technology was used only in Los Angeles County in the 2020 election; that SUSA and Dominion are separate companies; that SUSA did not send U.S. votes overseas for

---

[22] Indeed, Carlson admitted that Powell never demonstrated that a single vote was flipped from President Trump to President Biden. Doc. 1 at pars. 251-252.

151136/2021   SMARTMATIC USA CORP. vs. FOX CORPORATION                    Page 40 of 61
Motion No.   001 002 003 004 008 009

40 of 61

Case 1:21-cv-02995-CJN  Document 27-7  Filed 07/11/22  Page 42 of 62

tabulation; and that no state banned Smartmatic technology in 2020. Docs. 47-49.[23]  Additionally,

Fox News does not deny that, on November 16 and 17, 2020, SUSA emailed Hooper, the producer

of Dobbs' show, to advise that its technology was only used in Los Angeles County and that its

software did not tabulate votes.  Nevertheless, Fox News maintains that this does not establish

actual malice because Bartiromo and Pirro did not know about SUSA's emails and Dobbs

informed his viewers about the emails, thus proving that he did not disregard the information.

However, as plaintiffs assert, Fox News cannot escape liability merely because the Fox anchor

defendants occasionally mentioned that SUSA denied their representations (*See Dempsey v Time,*

*Inc.*, 43 Misc3d 754, 757 [Sup Ct NY County 1964], *aff'd* 22 AD2d 854 [1st Dept 1964] ["the

suggestion that a libel be excused because a denial made by the subject thereof is also published,

is patently absurd."]).  Fox News sets forth no reason why it did not advise Bartiromo and Pirro

about SUSA's email, and it is possible that it deliberately decided to prevent them from learning

facts which could or would have confirmed the probable falsity of the statements broadcast on

their shows (*See Sweeney v Prisoners' Legal Servs.*, 84 NY2d at 793).   At this nascent stage of

the litigation, this Court finds that plaintiffs have pleaded facts sufficient to allow a jury to infer

that Fox News acted with actual malice, since it conceivably had a "high degree of awareness of

falsity" or "serious doubts as to the truth" of the statements made (*See Sprewell v NYP Holdings,*

*Inc.*, 43 AD3d at 21).

Finally, to the extent that plaintiffs claim that the defamatory comments accuse plaintiffs

of committing a crime (election fraud) and tend to injure them in their business or trade, they are,

if false, defamatory per se and special damages need not be alleged (*Nolan v State*, 158 AD3d 186,

195 [1st Dept 2018]).   Thus, Fox News' motion is denied.

---

[23] Neither Fox News nor any of the Fox anchor defendants ever issued a retraction.

**151136/2021   SMARTMATIC USA CORP. vs. FOX CORPORATION**                    **Page 41 of 61**
**Motion No.  001 002 003 004 008 009**

41 of 61

Case 1:21-cv-02995-CJN Document 27-7 Filed 07/11/22 Page 43 of 62

**Bartiromo's Motion to Dismiss (Mot. Seq. 002)**

Bartiromo, adopting the arguments set forth by Fox News, moves to dismiss the claims against her. She claims that her speech was protected by the First Amendment and that plaintiffs fail to allege that she acted with actual malice. Doc. 219.

As noted previously, Bartiromo: said that, according to a "source", SUSA's software had a "back door" used to determine how many votes needed to be switched to rig an election (Doc. 1 at par. 105); that SUSA's software changed votes from President Trump to President Biden (Doc. 1 at par. 114); showed a graphic of swing states in which SUSA software was allegedly used, despite having no evidence to support her statement (Doc. 1 at par. 105); showed a graphic on the screen indicating that Dominion machines were used in the "swing" or "battleground" states of Arizona, Georgia, Michigan, Nevada, Pennsylvania, and Wisconsin, and simultaneously said that SUSA's software was used in those jurisdictions as well, despite the fact that it was only used in Los Angeles County, California (Doc. 1 at par. 157). These statements, if false, are defamatory per se insofar as they concern plaintiffs' "trade, business or profession" and suggest that they committed a serious crime (*See Nolan v State*, 158 AD3d at 195).

Additionally, this Court finds that plaintiffs have adequately pleaded a substantial basis for their claim that Bartiromo acted with reckless disregard for the truth or falsity of the statements she made, and/or with a high degree of belief that the said information was false (*Sagaille v Carrega*, 194 AD3d at 95). In reaching this conclusion, this Court notes that: Bartiromo's representation about a "back door" may be a fabrication insofar as she did not name the "source" she referred to;[24] and her claim that SUSA's software converted votes for President Trump to votes for President Biden, if false, could be found "so inherently improbable that only a reckless person

---

[24] Bartiromo's motion papers are devoid of any indication that the source was verified.

**151136/2021  SMARTMATIC USA CORP. vs. FOX CORPORATION**                         **Page 42 of 61**
**Motion No.  001 002 003 004 008 009**

42 of 61

would have put [it] in circulation" (*Sweigert v Goodman*, *supra*).   Additionally, viewing the broadcast as a whole (*See Lasky v American Broadcasting Companies, Inc.*, 631 F Supp at 970), Bartiromo's representation that SUSA software was used in Dominion machines in swing states which, according to plaintiffs, it was not, implied that the software helped President Biden steal the election from President Trump.   Thus, Bartiromo's motion is denied.

**Dobbs' Motion to Dismiss (Mot. Seq. 003)**

Dobbs made repeated statements regarding plaintiffs on his Fox News show as well as on social media.  On his November 12, 2020 show, he said that SUSA and Dominion sent votes out of the country to be counted so that the results would not be auditable (Doc. 1 at par. 97); on November 16, 2020, he stated that Dominion worked with SUSA, a voting technology company with ties to former Venezuelan dictator Hugo Chavez (Doc. 1 at par. 110); on November 16, 2020, he said that what President Trump's legal team was discovering about Dominion and SUSA gave rise to "probable cause for a complete and thorough investigation" (Doc. 1 at par. 166 [l]); on November 18, 2020, he said that SUSA "electronically chang[ed] votes in the 2013 presidential election in Venezuela" (Doc. 1 at par. 115); and on November 26, 2020, he said that SUSA had "documented issues with [its] voting machine software" (Doc. 1 at par. 125).

On Twitter, Dobbs accused Dominion and SUSA of "Democrat electoral fraud" on November 14, 2020 (Doc. 1 at par. 133); on November 16, 2020, he stated that Powell said she had "firsthand evidence" that SUSA's software was designed to change votes without detection (Doc. 1 at par. 208[s]); on December 10, 2020, he said that Powell had revealed "groundbreaking new evidence indicating that [the election] came under massive cyber-attack orchestrated with the help of Dominion, [SUSA], and foreign adversaries" (Doc. 1 at par. 166 [w]).

**151136/2021   SMARTMATIC USA CORP. vs. FOX CORPORATION**                                    **Page 43 of 61**
**Motion No.  001 002 003 004 008 009**

43 of 61

These statements, if false, are defamatory per se insofar as they concern plaintiffs' "trade, business or profession" and suggest that they committed a serious crime (*See Nolan v State*, 158 AD3d at 195).

Plaintiffs have also adequately pleaded a substantial basis for their claim that Dobbs acted with reckless disregard for the truth of his statements and with a high degree of belief that the said information was false (*Sagaille v Carrega*, 194 AD3d at 95). Dobbs' extremely serious claims that SUSA sent votes out of the country to be counted, that SUSA changed votes in the Venezuelan election of 2013, that there was probable cause to investigate the company, that SUSA's software was designed to change votes without detection, and that SUSA was involved in a cyberattack on the election could be found to be "so inherently improbable that only a reckless person would have put [them] in circulation" (*See Sweigert v Goodman*, *supra*).[25]

As noted above, Dobbs relied on Powell's representation that she had "firsthand evidence" that SUSA's software was designed to change votes without detection (Doc. 1 at par. 208[s]) and that Powell had revealed "groundbreaking new evidence indicating that [the election] came under massive cyber-attack orchestrated with the help of Dominion, [SUSA], and foreign adversaries" (Doc. 1 at par. 166 [w]). Although proof that these events occurred would have been of the utmost importance, Dobbs was conspicuously silent regarding what this evidence was or who provided it. Thus, he could be found to have had obvious reasons to doubt the truthfulness of what Powell told him (*See Sweigert v Goodman*, *supra*).

Dobbs insists that he could not have acted with reckless disregard of the truth because he informed his viewers about the emails his producer Hooper received from SUSA on November 16 and 17, 2020. As stated previously, SUSA represented in those emails that its technology was

---

[25] These claims are not only serious but likely unprecedented in the history of American elections.

151136/2021  SMARTMATIC USA CORP. vs. FOX CORPORATION                    Page 44 of 61
Motion No.  001 002 003 004 008 009

44 of 61

used in the election only in Los Angeles County and that its software does not tabulate votes. However, Dobbs cannot be exculpated simply because he mentioned that SUSA denied his comments (*See Dempsey v Time, Inc*., 43 Misc3d at 757). Moreover, since Dobbs continued to disseminate allegedly false information about SUSA *after* he told his viewing audience about the emails, there is a substantial basis for SUSA's allegation that he acted with reckless disregard for the truth (*See Golby v N & P Engineers & Land Surveyor*, PLLC, 185 AD3d at 793-794).

This Court rejects Dobbs' argument that his statements are not defamatory because they constitute his opinion. The question of whether a statement constitutes an opinion "is one of law for the court and one which must be answered on the basis of what the average person hearing or reading the communication would take it to mean." (*Steinhilber v Alphonse*, 68 NY2d 283, 290 [1986] [citations omitted]). When a "statement of opinion implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it, it is a 'mixed opinion' and is actionable." (*Id. at* 290 [citations omitted]). "The actionable element of a 'mixed opinion' is not the false opinion itself - - it is the implication that the speaker knows certain facts, unknown to his audience, which support his opinion and are detrimental to the person about whom he is speaking." (*Id. at* 290 [citations omitted]). The court's "essential task is to decide whether the words complained of, considered in the context of the entire communication and of the circumstances in which they were . . . [disseminated], may be reasonably understood as implying the assertion of undisclosed facts justifying the opinion." (*Id. at* 290 [citation omitted]). If the statement reasonably would be understood as implying undisclosed facts then it is not protected opinion under New York's constitution. (*Id. at* 290).

Dobbs stated that: SUSA and Dominion sent votes out of the country to be counted so that the results would not be auditable (Doc. 1 at par. 97); the California Secretary of State and "outside

151136/2021 SMARTMATIC USA CORP. vs. FOX CORPORATION Page 45 of 61
Motion No. 001 002 003 004 008 009

45 of 61

Case 1:21-cv-02995-CJN   Document 27-7   Filed 07/11/22   Page 47 of 62

computer experts" found numerous security flaws in SUSA's software (Doc. 16 at 3); and Powell, a member of President Trump's legal team, was going to appear on his show to "provid[e] more details on how Dominion vote machines and [SUSA] software were used to help [President] Biden." Doc. 27 at 5.  He also tweeted that Powell said she had "firsthand information" that SUSA's software was designed to change votes without detection (Doc. 1 at par. 208).  Since these were statements of fact by Dobbs which clearly implied that he knew of certain other information, unknown to his audience, which supported what he said, and the statements were detrimental to plaintiffs, they were not protected opinions (*See Steinhilber v Alphonse*, 68 NY2d at 290).   Thus, Dobbs' motion is denied.

**Pirro's Motion to Dismiss (Mot. Seq. 004)**

According to the transcript of her November 21, 2020 show on Fox News, Pirro said that President Trump's lawyers were "alleging [that] a company called Dominion, which they say started in Venezuela with Cuban money and with the assistance of [SUSA] software, [has a] backdoor [which] is capable of flipping votes." Doc. 30 at 3. Construing the statement in the context of the entire transcript, it is not reasonably susceptible of a meaning defamatory to plaintiffs "and cannot be made so by a strained or artificial construction" (*See Aronson v Wiersma*, 65 NY2d at 593).  This statement, which contains the sole mention of SUSA in the transcript, appears on its face to mean that Dominion was founded in Venezuela with Cuban money, that SUSA software assisted in establishing Dominion, and that Dominion had a backdoor capable of flipping votes.  Although Pirro states elsewhere that the Democrats "stole votes" (Doc. 30 at 4), she does not specify that the votes were stolen by using SUSA software.  Therefore, the complaint is dismissed as against Pirro.

151136/2021   SMARTMATIC USA CORP. vs. FOX CORPORATION                    Page 46 of 61
Motion No.  001 002 003 004 008 009

46 of 61

**Powell's Motion to Dismiss (Mot. Seq. 008)**

Powell argues that the complaint must be dismissed against her because she is not subject to personal jurisdiction in New York. Docs. 289-297. Plaintiffs oppose the motion and cross-move, pursuant to CPLR 3211(d), for an order allowing them to conduct jurisdictional discovery or, in the alternative, to deny Powell's motion without prejudice to allow her to assert lack of personal jurisdiction in her answer. Docs. 742-805.

The burden of establishing jurisdiction rests on plaintiff as the party asserting it (*O'Brien v. Hackensack Univ. Med. Ctr.*, 305 AD2d 199 [1st Dept 2003]). Long-arm jurisdiction in defamation actions is governed by CPLR 302(a)(1), which provides that a court may exercise personal jurisdiction over a non-domiciliary who "transacts any business within the state" so long as the claim arises from the transactions (*See Rushaid v Pictet & Cie*, 28 NY3d 316, 323 [2016]). "New York Courts construe 'transacts any business within the state' more narrowly in defamation cases than they do in the context of other sorts of litigation" (*SPCA of Upstate N.Y., Inc.*, 18 NY3d 400, 405; *Best Van Lines, Inc. v Walker*, 490 F3d 239, 248 [2d Cir 2007]). The Court of Appeals has held that "care must be taken to make certain that non-domiciliaries are not haled into court in a manner that potentially chills free speech" (*SPCA of Upstate N.Y., Inc.*, 18 NY3d at 406). Thus, a plaintiff seeking to invoke jurisdiction under this provision must show that the out-of-state defendant engaged in purposeful activities in New York that would justify bringing it before New York courts and that there is a "substantial relationship" between the in-state activities and the defamation (*Id.* at 404). Additionally, "jurisdiction over a claim for defamation will lie [under CPLR 302(a)(1)] only if the plaintiff shows that: (1) the defamatory utterance was purposefully directed at New York, as opposed to reaching New York fortuitously; and (2) the defendant transacted other business in New York that was directly connected to the claim

151136/2021  SMARTMATIC USA CORP. vs. FOX CORPORATION     Page 47 of 61
Motion No.  001 002 003 004 008 009

47 of 61

asserted" (*Symmetra Pty Ltd. v Human Facets, LLC*, 2013 U.S. Dist. LEXIS 83428, 2013 WL 2896876 at *9 [SDNY 2013]).

Plaintiffs claim that Powell repeatedly defamed plaintiffs on numerous occasions by stating, inter alia, that SUSA's software was designed to fix elections and that it used the software for this purpose by changing votes for President Trump to votes for President Biden.[26] However, there is no jurisdiction over Powell in New York since her contacts in New York "are not as significant as [those in] the few cases finding long-arm jurisdiction when defamation was asserted" (*see SPCA of Upstate N.Y., Inc. v American Working Collie Assn.*, 74 AD3d 1464, 1466 [3d Dept 2010], *affd* 18 NY3d 400, 403-404 [2012]; *see also Trachtenberg v Failedmessiah.com*, 43 F Supp 3d 198, 202 [EDNY 2014] [noting that New York courts have only found transaction of business in New York in satisfaction of CPLR 302(a)(1) "when the content in question was based on research physically conducted in New York"]; *Montgomery v Minarcin*, 263 AD2d 665 [3d Dept 1999] [personal jurisdiction under CPLR 302(a)(1) found where defamatory news broadcast was shown "by a local television station" in New York and was "researched, written, [and] produced" in New York]; *Legros v Irving*, 38 AD2d 53 [1st Dept 1971] [jurisdiction existed under CPLR 302(a)(1) where "virtually all the work attendant upon publication of the [allegedly defamatory]

---

[26] This Court notes that Dominion filed a defamation action, styled *U.S. Dominion, Inc. v Powell*, No. 1:21-cv-00040 (DDC filed Jan. 8, 2021), against Powell and DTR in the United States District Court for the D.C. Circuit ("the D.C. action"). The D.C. action was based, in part, on Dominion's claim that Powell defamed and disparaged it in an action styled *King v Whitmer*, 2021 US Dist LEXIS 160532 (ED Mich Aug. 25, 2021, No. 20-13134) ("the Michigan action"). In the Michigan action, registered voters and Republican nominees seeking to be presidential electors on behalf of the state, who were represented by Powell, among others, asked the court to decertify the election results and issue an order declaring that Michigan's electors chose President Trump. The plaintiffs in the Michigan action alleged, inter alia, that SUSA and Dominion were "founded by foreign oligarchs and dictators" and that President Trump lost in the state due to defects in Dominion's voting machines which, among other things, flipped votes from President Trump to President Biden. In response to the defamation claims in the D.C. action, Powell maintained that her statements were "'opinions' which reasonable people would not accept . . . as fact." (*King v Whitmer*, *supra*, at *87). This, in itself, reflects that the statements made by Powell, and repeated by Fox News, Dobbs, and Bartiromo, could be deemed by a jury to have been made with reckless disregard for the truth. Despite the quote in the previous sentence, Powell argues in support of her motion that she believed the statements she made about SUSA "then and she believes them now." Doc. 290 at 15.

**151136/2021  SMARTMATIC USA CORP. vs. FOX CORPORATION**                                            **Page 48 of 61**
**Motion No.  001 002 003 004 008 009**

48 of 61

Case 1:21-cv-02995-CJN   Document 27-7   Filed 07/11/22   Page 50 of 62

book occurred in New York", including research, negotiation, the execution of the contract, and the printing of the book]).

Powell has only minimal and attenuated New York contacts. Her only defamation-related contacts with this state were her appearances on Fox News, which is broadcast from its studios in New York City, and there is no allegation that she came to New York to personally appear on Fox News (*see Talbot v Johnson Newspaper Corp.*, 71 NY2d 827, 829 [1988] [no jurisdiction over individual who participated in phone interview from California]). Despite appearing on a broadcast emanating from New York, her defamatory utterance was not specifically targeted at this state given that Fox News is broadcasted across the country (*See Symmetra Pty Ltd. v Human Facets, LLC*, *supra*; *see also Best Van Lines, Inc.*, 490 F3d at 249 ["courts have found jurisdiction (pursuant to CPLR 302[a][1]) in cases where the defendants' out-of-state conduct involved defamatory statements projected into New York and targeting New Yorkers, but only where the conduct also included something more"]). That SUSA, the principal target of Powell's comments, is incorporated in Delaware and has a principal place of business in Florida, also undermines plaintiffs' claim that Powell's comments were targeted at New York. Doc. 1 at par. 14.

In contending that there is jurisdiction over Powell in New York, plaintiffs primarily assert that she solicits contributions from, and sells merchandise to, New Yorkers on her DTR website. Doc. 743 at 11-12. However, courts have repeatedly held that placing defamatory content on the internet and making it generally accessible to members of the public does not constitute the transaction of business in New York, even when it is likely the material will be read by New Yorkers (*see e.g. SPCA of Upstate N.Y., Inc.*, 18 NY3d at 402 [no personal jurisdiction in action based on placement of comments on a website despite the fact that defendant had members in New

**151136/2021   SMARTMATIC USA CORP. vs. FOX CORPORATION**
**Motion No.  001 002 003 004 008 009**

**Page 49 of 61**

49 of 61

York]; *Best Van Lines, Inc.*, 409 F3d at 250; *Rakofsky v The Washington Post*, 39 Misc 3d 1226 [A], 971 NYS2d 74, 2013 NY Slip Op 50739[U] [Sup Ct, NY County 2013] ["it is insufficient to gauge the overall commercial activity of the defendant on its website alone, without determining whether such purposeful activities in this state were substantially related to the defamatory statements" -- there were no purposeful activities in New York since "defendants neither wrote the alleged defamatory statements in this state nor did they direct them to our state alone" but rather the "statements were posted on the internet with potential world-wide accessibility"]).  Here, plaintiffs do not even allege that Powell defamed SUSA on the DTR website.  Rather, they allege that Powell used her appearances on Fox News, during which she defamed plaintiffs, to promote the DTR website. Doc. 1 at par. 449.  Thus, even assuming that Powell transacted business in New York by means of the DTR website, she cannot be subject to jurisdiction in this state pursuant to CPLR 302(a)(1) since plaintiffs' defamation claims do not arise from her internet solicitation (*See Rushaid v Pictet & Cie*, 28 NY3d at 323).

Further, in order for solicitation in New York by a non-domiciliary to constitute a "transaction of business" for the purposes of CPLR 302(a)(1), it must be accompanied by business transactions occurring in New York or by sufficient permanence and continuity in New York (*See O'Brien v Hackensack Univ. Med. Ctr.*, 305 AD2d at 201).  Here, any solicitation by Powell in New York was unaccompanied by the transaction of business or any measure of "permanence and continuity" in the state (*M. Shanken Communs., Inc. v Variant Events, LLC*, 2010 US Dist LEXIS 108923, at *15 [SDNY Oct. 6, 2010]).[27]

---

[27] Although Powell submits an affidavit in support of her motion in which she represents that she has "not conducted any business in the State of New York in 2020 or 2021", this is of no moment herein given that it is the "transacts any business" standard which is set forth in CPLR 302 (a)(1).  Doc. 291.

151136/2021  SMARTMATIC USA CORP. vs. FOX CORPORATION                        Page 50 of 61
Motion No.  001 002 003 004 008 009

50 of 61

Case 1:21-cv-02995-CJN Document 27-7 Filed 07/11/22 Page 52 of 62

Plaintiffs' argument that there is jurisdiction over Powell because she participated in a conspiracy with the New York-based Fox News defendants to defame them also fails. The conspiracy theory of jurisdiction is not available under section 302(a)(1), which is applicable to business transactions and not torts (*Suber v VVP Servs., LLC,* 2021 US Dist LEXIS 184529, at *16-17 [SDNY Sep. 27, 2021, No. 20-cv-08177 (AJN)] [citations omitted]). Additionally, in order to adequately plead a conspiracy, a plaintiff must allege facts which support "(1) a corrupt agreement between two or more parties; (2) an overt act in furtherance of the agreement, which constitutes an independent tort or wrongful act; (3) the defendant's intentional participation in the furtherance of the plan or purpose; and (4) resulting damages or injury" (*Williams v Sidley Austin Brown & Wood L.L.P.*, 13 Misc3d 1213[A], 2006 NY Slip Op 51810[U] at *3 [Sup Ct, NY Co, September 22, 2006], *affd* 38 AD3d 219 [1st Dept 2007]). Since plaintiffs have not alleged that Powell entered into a corrupt agreement to defame it, the claim fails for this reason as well (*See Sparrow Fund Mgmt. LP v. MiMedx Grp., Inc.*, No. 18-CV-4921, 2018 U.S. Dist. LEXIS 224028, 2018 WL 8545604, at *9 [S.D.N.Y. Dec. 14, 2018]).[28] Although plaintiffs rely on *Dixon v Mack, supra*, in asserting that there is jurisdiction over Powell in New York based on the theory that she engaged in a conspiracy to defame in this State, that decision specifically notes that its holding is not based on CPLR 302(a)(1) (*Dixon*, 507 F Supp at 352).

In opposing Powell's motion, plaintiffs also rely, inter alia, on *Courtroom Television Network v Focus Media, Inc.,* 264 AD2d 351 (1st Dept 1999). In that case, plaintiff, a television network located in New York, sued a California advertising firm for breach of contract, seeking to recover for unpaid advertising invoices. The IAS Court dismissed the action for lack of

---

[28] Despite this finding, however, no defendant cites any authority which would prevent liability from being imposed for republication of a defamatory statement by an individual, such as Powell, over whom there is no personal jurisdiction in New York.

**151136/2021 SMARTMATIC USA CORP. vs. FOX CORPORATION** **Page 51 of 61**
**Motion No. 001 002 003 004 008 009**

51 of 61

personal jurisdiction and the Appellate Division reversed, holding that, since defendant created

tapes of advertisements to be broadcast from a New York studio, sent the tapes to plaintiff in

New York, and intended that its contract be performed in New York, it "played a 'crucial role' in

creating the substance of the transaction, amounting to doing business in New York" (Id. at 353

[citation omitted]) and there was thus personal jurisdiction over defendant pursuant to CPLR

302(a)(1).   The Appellate Division also found that "New York [had] an interest in asserting

jurisdiction over defendant, as a State with a high concentration of media outlets which receive

materials from all over the country" and that "[b]roadcasters like plaintiff would be at a serious

disadvantage were they forced to litigate in the home States of every media buyer who created

programming for their networks" (id. at 353-354).   Thus, it concluded, "[a] nondomiciliary

which takes advantage of New York's unique resources in the entertainment industry has

purposefully availed itself of the benefits of conducting business in the State, such that long-arm

jurisdiction may be asserted where the cause of action arises out of that transaction" (id. at 354).

   *Courtroom Television Network* is clearly distinguishable from this case.   Initially, that case

is a breach of contract action and, as noted above, the courts of this state are much more

circumspect in finding personal jurisdiction pursuant to CPLR 302(a)(1) in defamation actions as

compared to other types of litigation (*SPCA of Upstate N.Y., Inc.*, 18 NY3d at 405; *Best Van Lines,*

*Inc. v Walker*, 490 F3d at 248 [2d Cir 2007]).   Additionally, by sending tapes to New York and

intending that its contract with plaintiff be performed in New York, the defendant in that action,

as opposed to Powell, transacted business in this state.   Moreover, plaintiffs' claim that there is

personal jurisdiction over Powell in New York because she took advantage of New York's unique

resources in the entertainment industry is without merit, since that portion of the Appellate

Division's opinion was clearly based on the fact that it would be impractical and unfair to force a

**151136/2021   SMARTMATIC USA CORP. vs. FOX CORPORATION**                **Page 52 of 61**
**Motion No.   001 002 003 004 008 009**

52 of 61

broadcaster to litigate in multiple states from which media buyers sent it materials. Powell's appearances on Fox News were not specifically related to New York's unique resources in the entertainment industry since they occurred while she was out of state and could have been broadcasted on a network headquartered anywhere.

Plaintiffs further rely on *Thomas Pub. Co. v. Indus. Quick Search, Inc.*, 237 F. Supp. 2d 489 (SDNY 2002). In *Thomas*, which also was not a defamation action, but rather one for copyright, trademark, and Lanham Act violations, there was "substantial" solicitation of business by defendant in New York through its interactive website, which was accessible in New York; the website listed "269 New York entities"; defendant contacted New York sales associates in an attempt to get them to sell ads for it, including more than 75 paid advertisers from New York; and defendant's agent visited New York on a series of occasions to further its business interests (*Id.* at 491). Thus, found the court, defendant was subject to personal jurisdiction pursuant to CPLR 302(a)(1) since it transacted business in New York and plaintiff's claims arose directly from the use of the allegedly infringing website.

It is evident that *Thomas* is distinguishable herein since there is no indication that Powell's solicitation of business in New York was substantial, as was the defendant's in that case. Nor does plaintiffs' defamation claim arise from Powell's solicitation on the DTR website (*See Rushaid v Pictet & Cie*, 28 NY3d at 323).

Given the foregoing analysis, this Court must grant Powell's motion seeking dismissal of the complaint pursuant to CPLR 3211(a)(8) due to lack of personal jurisdiction.[29]

---

[29] This Court notes that, on November 12, 2021, counsel for plaintiffs, apparently concerned about whether personal jurisdiction exists over Powell in New York, wrote to the undersigned to advise that plaintiffs had filed a "[p]recautionary [l]awsuit" against Powell in the United States District Court for the District of Columbia (1:21-cv-02995 [CJN]) ("the DC SUSA action"). Doc. 844. In his letter, counsel maintained that he filed the DC SUSA action "to guard against any statute of limitations issues with respect to [Powell] should this Court find that it lacks

151136/2021  SMARTMATIC USA CORP. vs. FOX CORPORATION    Page 53 of 61
Motion No.  001 002 003 004 008 009

53 of 61

Case 1:21-cv-02995-CJN   Document 27-7   Filed 07/11/22   Page 55 of 62

## Plaintiffs' Cross Motion For Jurisdictional Discovery (Mot. Seq. 008)

Plaintiffs' cross motion seeking jurisdictional discovery from Powell is denied. This Court has the discretion to grant jurisdictional discovery, but only where a plaintiff makes a "sufficient start" demonstrating that there is some basis for long-arm jurisdiction over the defendant (*See Royalty Network v Dishant.com*, 638 F Supp2d 410, 425 [SDNY 2009]; *American BankNote Corp. v Daniele*, 45 AD3d 338, 340 [1st Dept 2007] [plaintiff's pleadings and affidavits alleging that the non-domiciliary defendants used their New York bank accounts to further their misdeeds, contracted to provide goods for New York clients, and traveled to New York for business was a sufficient start to warrant jurisdictional discovery]). Since, as disccused in detail in the previous section, plaintiff's fail to establish any indicia of Powell's transaction of business in this state, they are not entitled to jurisdictional discovery from her.

## Giuliani's Motion to Dismiss (Mot. Seq. 009)

Giuliani stated, inter alia, that SUSA was founded "for the specific purpose of fixing elections. That's their expertise. How to fix elections." Doc. 1 at par. 116. He further claimed that SUSA's software was used in other countries to steal elections and that it had "tried and true methods for fixing elections." Doc. 1 at par. 104. Since Giuliani represented that SUSA engaged in criminal activity, his comments, if false, were defamatory per se (*Nolan v State*, 158 AD3d at 195).

Giuliani maintains that, because he criticized SUSA's software, any claim against him must sound in product disparagement as opposed to defamation. Considering Giuliani's allegations in their totality, however, it is evident that his contention that "[d]isparaging [SUSA's software] does

---

personal jurisdiction over her." Doc. 844. By correspondence to the undersigned dated December 1, 2021, counsel for plaintiffs advised that he had successfully moved to stay the DC SUSA action pending the determination of Powell's instant motion to dismiss. Doc. 845.

**151136/2021   SMARTMATIC USA CORP. vs. FOX CORPORATION**                    **Page 54 of 61**
**Motion No.  001 002 003 004 008 009**

54 of 61

Case 1:21-cv-02995-CJN   Document 27-7   Filed 07/11/22   Page 56 of 62

not impugn the integrity of the company and vice versa" (Doc. 299 at 10) is specious. Specifically, he stated that SUSA's software was "extremely hackable" (Doc. 1 at par. 149); that in the battleground states of Georgia, Michigan, Pennsylvania, Arizona and Wisconsin, SUSA used the same tactics it had used in prior elections "in which [it was] disqualified" (Doc. 1 at pars. 105, 191[a], 262-263); SUSA had been banned from elections in the United States about a decade earlier (Doc. 1 at par. 104); SUSA was a "very dangerous foreign company" with close ties to Venezuela and China (Doc. 1 at par. 104); SUSA had fixed elections "a number of times" in Venezuela and Argentina and was up to its "old tricks" on election night (Doc. 1. at par. 116); SUSA and Dominion were banned from the State of Texas (Doc. 1 at par. 117); in 27 or 28 states, Dominion sent the votes to Germany and Spain to be counted by SUSA, which had been "founded in 2005 in Venezuela for the specific purpose of fixing elections" (Doc. 1 at pars. 116 and 149[i]); SUSA owned Dominion (Doc. 1 at pars. 157 [a] and [b]); all of the software used by Dominion was made by SUSA (Doc. 1 at par. 157 [c]); and that SUSA cheated for the Democrats because its chairman "is very very close to [George] Soros" (Doc. 1 at par. 166 [o]). These statements, too, if false, are defamatory per se insofar as they tend to injure SUSA in its trade, business, or profession (*Nolan v State*, 158 AD3d at 195).

Giuliani's barrage of statements about SUSA adequately provide a substantial basis for its claim that he acted with actual malice insofar as he evinced a reckless disregard for the truth of his statements and/or a high degree of belief that the said information was false (*Sagaille v Carrega*, 194 AD3d at 95).[30]    Indeed, there is a substantial basis upon which to find that Giuliani's

---

[30] In suspending Giuliani from the practice of law, the Appellate Division, First Department held that there was "uncontroverted evidence" that he "communicated demonstrably false and misleading statements to courts, lawmakers and the public at large in his capacity as lawyer for former President Trump and the Trump campaign in connection with [President] Trump's failed effort at reelection in 2020." (*In re Giuliani*, 146 AD3d 266, 268 [1st Dept 2021]).

**151136/2021   SMARTMATIC USA CORP. vs. FOX CORPORATION**                                      **Page 55 of 61**
**Motion No.  001 002 003 004 008 009**

55 of 61

Case 1:21-cv-02995-CJN   Document 27-7   Filed 07/11/22   Page 57 of 62

representations regarding SUSA are "so inherently improbable that only a reckless person would have put [them] in circulation" (*See Sweigert v Goodman*, *supra*).[31]

Giuliani's contention that his statements are protected by an absolute litigation privilege is without merit. "[T]he courts of this State have recognized that oral or written communications made in the course of a judicial proceeding are absolutely privileged and thus cannot serve as the basis for an action sounding in defamation (*Garr v Selden*, 4 NY 91 [1850])." (*Park Knoll Associates v Schmidt*, 89 AD2d 164, 169-170 [2d Dept 1982], *revd on other grounds* 59 NY2d 205 [1983]). Although Giuliani made the allegedly defamatory statements at the time he was representing President Trump in litigation related to the election, the statements were made on Fox News and thus were not "defamatory words spoken in a judicial proceeding" (*Park Knoll*, 59 NY2d at 209 [citations omitted]).

Next, Giuliani argues that plaintiffs' claim for product disparagement must be dismissed because they failed to adequately plead special damages. As noted above, if a statement impugns the basic integrity or creditworthiness of a business, a defamation claim is established and injury is conclusively presumed. However, if the statement denigrates only the quality of a business' goods or services, a claim of product disparagement can be established if the plaintiff can prove malice and special damages (*See Ruder & Finn, Inc. v Seaboard Sur. Co.*, 52 NY2d 663, 670-671 [1981]; *see also Drug Research Corp. v Curtis Pub. Co.*, 7 NY2d 435, 440 [1960]).

---

[31] In asserting that there was a basis in fact for his statements, Giuliani relies on a "declaration" by an individual who purports to have intimate knowledge of how SUSA's software was developed and represents that it was designed to fix elections in Venezuela. Although a copy of this document was submitted in support of Giuliani's motion, it was redacted to protect the identity of the declarant. Doc. 302. An unredacted copy was submitted to the undersigned for *in camera* inspection. The statements in the document are made "under penalty of perjury" but the declarant neither swears nor affirms the truth of the same. Further, although the declarant states that the document was prepared in Texas, there is no indication where it was executed and does not bear a notary stamp. Even assuming that the declaration was submitted in proper form, a cursory review of the same reveals that it is vague, contradictory, and conclusory, as SUSA alleges in its complaint, and, thus, it is of negligible probative value. Doc. 1 at pars. 402-409.

151136/2021  SMARTMATIC USA CORP. vs. FOX CORPORATION                Page 56 of 61
Motion No.  001 002 003 004 008 009

56 of 61

Case 1:21-cv-02995-CJN Document 27-7 Filed 07/11/22 Page 58 of 62

Product disparagement "can be seen as a subcategory of the tort of injurious falsehood" (*Caldera Holdings LTD v Apollo Global Mgt., LLC*, 2019 NY Slip Op 33734[U], *5-6 [Sup Ct, NY County 2019] *citing* Victor A. Kovner and Lance Koonce, New York Practice Series - Commercial Litigation in York State Courts § 110:8 [4th ed 2019]). The tort of "injurious falsehood requires the knowing publication of false and derogatory facts about the plaintiff's business of a kind calculated to prevent others from dealing with the plaintiff, to its demonstrable detriment" and the claim must allege special damages in the form of actual lost business dealings (*Caldera Holdings, supra*, quoting *Banco Popular N. Am. v Lieberman*, 75 AD3d 460, 462 [1st Dept 2010] [citation omitted]). The special damages, along with the alleged falsehood uttered, must be specified with particularity. (*Caldera Holdings, supra*, citing *BCRE 230 Riverside LLC v Fuchs*, 59 AD3d 282, 283 [1st Dept 2009]). "[G]eneral allegations of lost sales from unidentified lost customers" are insufficient to plead special damages (*Caldera Holdings, supra*, quoting *Vigoda v DCA Prods. Plus*, 293 AD2d 265, 266 [1st Dept 2002]). "[L]ost future income, conjectural in identity and speculative in amount" is also insufficient (*Id.*). Damages in "round figures with no attempt at itemization, must be deemed to be a representation of general damages" and not of special damages (*Drug Research Corp.,* 7 NY2d at 441 [1960] [citation omitted]).

The third, fifth and ninth causes of action, sounding in product disparagement, are dismissed against Giuliani since they seek damages in connection with lost customers but plaintiffs fail to plead special damages with the requisite specificity (*Prince v Fox Tel. Stas., Inc.*, 93 AD3d 614, 615 [1st Dept 2012] *citing Drug Research Corp.,* 7 NY2d at 440-441; *Christopher*

151136/2021 SMARTMATIC USA CORP. vs. FOX CORPORATION Page 57 of 61
Motion No. 001 002 003 004 008 009

57 of 61

*Lisa Matthew Policano, Inc. v North Am. Precis Syndicate*, 129 AD2d 488, 490 [1st Dept 1987]).[32] Plaintiffs merely plead, inter alia, that they will sustain lost profits of $500-690 during the 5 years ending December 31, 2025 (Doc. 1 at par. 471); that SUSA's parent company, SGO, will lose more than $843.3 million in decreased revenues and increased expenses during the next five years (Doc. 1 at par. 494 n. 42), and that plaintiffs sustained actual, consequential and special damages "in an amount to be determined at trial, but no less than $2.7 billion" Doc. 1 at par. 754.[33] Since these round figures are insufficient to state a claim for special damages, this Court dismisses plaintiffs' claim for product disparagement against Giuliani. However, this dismissal is without prejudice and this Court, in its discretion, grants plaintiffs the right to replead the product disparagement claim (*See Franklin v Daily Holdings, Inc.*, 135 AD3d 87, 92-93 [1st Dept 2015]). Leave to replead is warranted under the circumstances given the quantity and seemingly outrageous character of the accusations made by Giuliani.

Giuliani correctly asserts that the defamation claims against him by SIH and SGO must be dismissed since the statements he made were not "of and concerning" them. Although a plaintiff suing for defamation need not be specifically named in a defamatory publication, it "must plead and prove that the statement referred to [it] and that a person hearing or reading the statement reasonably could have interpreted [the statement] as such" (*Three Amigos SJL Rest., Inc. v CBS News Inc.*, 28 NY3d 82, 86 [2016]). "This burden is not a light one, and the question of whether an allegedly defamatory statement could reasonably be interpreted to be 'of and concerning' a particular plaintiff is a question of law for the courts to decide" (*Three Amigos,* 28 NY2d at 86-

---

[32] Although Giuliani also moves to dismiss the second, fourth and sixth causes of action, they do not sound in product disparagement. It is unclear from the motion papers why Giuliani did not seek dismissal of other causes of action which also appear to sound in product disparagement.

[33] Although plaintiffs submit as exhibits to the complaint what is characterized as an "Itemization of Smartmatic Lost Profits" for different business lines, it is unclear whether the Smartmatic entity referred to is SUSA or SIH.

151136/2021  SMARTMATIC USA CORP. vs. FOX CORPORATION
Motion No.  001 002 003 004 008 009

Page 58 of 61

58 of 61

87).  Since neither SIH nor SGO pleaded this allegation, their defamation claims against Giuliani must be dismissed.  Given this finding, this Court need not address Giuliani's contention that SIH and SGO lack the standing to sue him.  In any event, "one corporation will generally not have legal standing to exercise the rights of other associated corporations." (*Alexander & Alexander of N.Y. v Fritzen*, 114 AD2d 814, 815 [1st Dept 1985]).   Thus, Giuliani's motion is granted to the extent of dismissing the defamation claims by SIH and SGO.

The remainder of the parties' contentions are either without merit or need not be addressed given the findings above.

Accordingly, it is hereby:

ORDERED that the motion to dismiss by defendants Fox Corporation and Fox News Network LLC (mot. seq. 001) is denied; and it is further

ORDERED that the motion to dismiss by defendant Maria Bartiromo (mot. seq. 002) is denied; and it is further

ORDERED that the motion to dismiss by defendant Lou Dobbs (mot. seq. 003) is denied; and it is further

ORDERED that the motion to dismiss by defendant Jeanine Pirro (mot. seq. 004) is granted, and all claims against said defendant are dismissed; and it is further

ORDERED that the motion to dismiss by defendant Sidney Powell (mot. seq. 008) is granted, and all claims against said defendant are dismissed; and it is further

ORDERED that the cross motion by plaintiffs Smartmatic USA Corp., Smartmatic International Holding B.V., and SGO Corporation Limited, seeking to compel discovery relating to possible personal jurisdiction over defendant Sidney Powell, is denied; and it is further

151136/2021   SMARTMATIC USA CORP. vs. FOX CORPORATION          Page 59 of 61
Motion No.  001 002 003 004 008 009

59 of 61

Case 1:21-cv-02995-CJN   Document 27-7   Filed 07/11/22   Page 61 of 62

ORDERED that the claims against defendants Jeanine Pirro and Sidney Powell are severed and dismissed, and the Clerk shall enter judgment accordingly; and it is further

ORDERED that the motion to dismiss by defendant Rudolph Giuliani (mot. seq. 009) is granted to the extent that: a) plaintiffs' third, fifth and ninth causes of action, sounding in product disparagement, are dismissed as against said defendant, with leave to replead the same within 21 days after service on plaintiffs' attorney of a copy of this order with notice of entry; and b) the first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, and fifteenth causes of action asserted by plaintiffs Smartmatic International Holding B.V. and SGO Corporation Limited as against defendant Rudolph Giuliani, sounding in defamation, are dismissed, and the motion is otherwise denied; and it is further

ORDERED that, in the event that plaintiffs fail to serve and file an amended complaint in conformity with the deadline set forth herein, leave to replead shall be deemed denied and the Clerk of the Court, upon service (60 Centre Street, Room 141B) of a copy of this order with notice of entry and an affirmation/affidavit by defendant Rudolph Giuliani's counsel attesting to such non-compliance, is directed to enter judgment dismissing the third, fifth and ninth causes of action against defendant Rudolph Giuliani, with prejudice; and it is further

ORDERED that service upon the Clerk of the Court shall be made in accordance with the procedures set forth in the *Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases* (accessible at the "E-Filing" page on the court's website at the address www.nycourts.gov/supctmanh); and it is further

**151136/2021   SMARTMATIC USA CORP. vs. FOX CORPORATION          Page 60 of 61**
**Motion No.  001 002 003 004 008 009**

60 of 61

ORDERED that the defendants remaining in the action shall serve and file answers within 35 days of the service of this decision and order with notice of entry, except in the event of the filing of an amended complaint, in which case defendants' answers will be due within 20 days of the filing of such an amended complaint; and it is further

ORDERED that a preliminary conference will be held in this matter on May 18, 2022 at 11:00 a.m. unless the parties email a proposed preliminary conference order to the Part 58 Clerk (sfc-Part58-Clerk@nycourts.gov) on or before May 16, 2022.

| | | |
|---|---|---|
| **3/8/2022** | | |
| **DATE** | | **HON. DAVID B. COHEN, J.S.C.** |

| CHECK ONE: | ☐ CASE DISPOSED | ☒ NON-FINAL DISPOSITION |
|---|---|---|
| | ☐ GRANTED   ☐ DENIED | ☐ GRANTED IN PART   ☒ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | ☐ SUBMIT ORDER |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | ☐ FIDUCIARY APPOINTMENT   ☐ REFERENCE |

**151136/2021   SMARTMATIC USA CORP. vs. FOX CORPORATION**
**Motion No.  001 002 003 004 008 009**

**Page 61 of 61**

61 of 61