IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |  | |
|---|---|---|---|
| SMARTMATIC USA CORP., et al., | ) | | |
| | ) | | |
| Plaintiffs, | ) | | |
| | ) | | No. 1: 21-cv-02995-CJN |
| v. | ) | | |
| | ) | | |
| SIDNEY POWELL, | ) | | |
| | ) | | |
| Defendant. | ) | | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT SIDENY POWELL's MOTION FOR STAY**

Under Fed. Civ. Pro. Rule 7(b), Defendant Sidney Powell moves for a **90-day stay** of this litigation. On August 14, 2023, Ms. Powell was indicted on multiple charges in *State of Georgia v. Donald J. Trump, et al*, Case No. 23-SC-188947 (Super. Ct., Fulton County). One week ago, Ms. Powell demanded a speedy trial. Accordingly, the criminal trial against Ms. Powell should be set for October 23, but no later than November 3, 2023.

To avoid being placed in the "significant dilemma" of having to defend both lawsuits simultaneously and whether to assert or waive rights under the Fifth Amendment of the United States Constitution here, Ms. Powell requests a stay. The United States Court of Appeals for the D.C. Circuit has identified four factors to consider, all of which favor Ms. Powell's request.

**1.** Both actions are based on many of the same underlying events, legal theories, and other allegations to form a close relationship.

**2.** A momentary stay would prevent unnecessary litigation and promote better judicial efficiency.

**3.** Any hardship would be minimal for Smartmatic if a stay were granted and far greater for Ms. Powell if the stay were denied.

**4.** Ms. Powell's request is for only 90 days is "relatively insignificant."

For the reasons explained in greater detail below, Ms. Powell respectfully requests the Court to grant her motion.

I.     BACKGROUND

On August 14, 2023, Ms. Powell was indicted on multiple charges in *State of Georgia v. Donald J. Trump, et al*, Case No. 23-SC-188947 (Super. Ct., Fulton County) ("Fulton Action"). The Fulton Action alleges that Ms. Powell, Rudolph Giuliani, Donald Trump, and other defendants participated in a multi-state conspiracy to overturn the results of the 2020 Presidential Election. Ms. Powell has been accused of seven violations of Georgia law, including violation of Georgia's Racketeer Influenced and Corrupt Originations Act ("RICO") under O.C.G.A. § 16-14-4(c), two counts of Conspiracy to Commit Election Fraud under O.C.G.A. § 22-2-603 & 21-2-566, Conspiracy to Commit Computer Theft under O.C.G.A. § 16-4-8 & 16-9-93(a), Conspiracy to Commit Computer Trespass under O.C.G.A. § 16-4-8 & 16-9-93(b), Conspiracy to Commit Computer Invasion of Privacy under O.C.G.A. § 16-4-8 & 16-9-93(c), and Conspiracy to Defraud the State under O.C.G.A. § 16-10-21. *See* Indictment 23SC188947 (filed August 23, 2023) ("Indictment"). The Indictment also alleges that Ms. Powell undertook multiple acts in furtherance of a criminal RICO enterprise which implicate this lawsuit.

One week ago in the Fulton Action, Ms. Powell demanded a speedy trial. (Ex. A.)[1] Accordingly, the Fulton Action, as it pertains to Ms. Powell, should be set for trial on October 23, but no later than November 3, 2023. In order to avoid being placed in the dilemma of having to defend both lawsuits simultaneously and the potential undermining of her rights under the Fifth Amendment, Ms. Powell requests a **90-day stay** of this litigation.

---

[1] A true and correct copy of the demand, as filed, is enclosed as Exhibit A.

## II.      GOVERING STANDARDS

Whether to grant a stay rests with the broad discretion of the Court, looking to "the interest of justice and in the light of the particular circumstances of the case." *Doe v. Sipper*, 869 F. Supp. 2d 113, 115 (D.D.C. 2012) (internal quotes omitted); *Sec. & Exch. Comm'n v. Dresser Indus. Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980). A court may "stay civil proceedings, postpone civil discovery or impose protective orders and conditions[.]" *Kurd v. Republic of Turkey*, 2022 WL 17961245, at *1 (D.D.C. Dec. 27, 2022). The Court's authority "is incidental to the power inherent in every court to control the disposition of the causes on its docket." *Sipper*, *supra.*

## III.     ARGUMENT

Absent a brief stay of this action,[2] Ms. Powell will be placed in the "significant dilemma" of having to defend both lawsuits simultaneously, thereby implicating her rights under the Fifth Amendment. When determining whether to stay a civil litigation in the face of an ongoing, parallel criminal litigation, the Court in this district looks to four factors: (a) the relationship between the civil and criminal actions; (b) the burden on the court; (c) the hardships or inequalities the parties would face if a stay was granted (or the balance on interest); and (d) the duration of the requested stay. *Doe v. Sipper*, 869 F. Supp. 2d 113, 116 (D.D.C. 2012) (citing cases).

The Court may give each factor as much weight as it determines to be necessary. *Id.* Here, all four factors weigh in favor of granting Ms. Powell's request.

---

[2] Ms. Powell and Dominion are in the process of meeting and conferring in connection with a potential stay of the Dominion litigation against Ms. Powell.

A. **The Close Relationship of Both Actions Favors a Stay**

The allegations against Ms. Powell in both actions are based upon many of the same alleged underlying events, legal theories, and other allegations. The Smartmatic lawsuit, especially given how Smartmatic has chosen to prosecute it, cannot be litigated without implicating the Fulton Action. Given this close relationship, this factor weighs in favor of a stay.

The necessity of a stay is most compelling when there is a "close relationship" between the civil and criminal actions that implicates a defendant's Fifth Amendment rights. *Sipper*, 869 F. Supp. 2d at 116; *see also Sec. & Exch. Comm'n v. Dresser Indus. Inc.*, 628 F.2d 1368, 1375-76 (D.C. Cir. 1980) ("noncriminal proceeding, if not deferred, might undermine the party's Fifth Amendment privilege"); *Kurd v. Republic of Turkey*, 2022 WL 17961245, at *2 (D.D.C. Dec. 27, 2022) ("the D.C. Circuit has recognized that 'the strongest case for deferring civil proceedings until after completion of criminal proceedings is where,' as here, 'a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter'"); *Am. Express Bus. Fin. Corp. v. RW Pro. Leasing Servs. Corp.*, 225 F. Supp. 2d 263, 265 (E.D.N.Y. 2002) (the "risk of impairing the party's Fifth Amendment rights presents a stronger case for staying discovery, particularly when there are similar issues between the civil and criminal cases").

Under this factor, courts look to see if the civil and criminal actions arise from the same set of events. *Sipper*, 869 F. Supp. 2d at 116; *Dresser,* 628 F.2d at 1375–76 (strongest case for stay is where both actions involve same matter).[3] "A close relationship between the two actions,

---

[3] *See also Volmar Distributors, Inc. v. New York Post Co., Inc.,* 152 F.R.D. 36 (S.D.N.Y. 1993) (granting stay where indictment against defendants arose from same factual background alleged in civil complaint); *Walsh Securities, Inc. v. Cristo Property Management, Ltd.,* 7 F. Supp. 2d 523, 527 (D.N.J. 1998) (staying civil proceeding where civil and criminal actions involved many of the same real estate transactions).

furthermore, is often viewed as the most significant factor in the balancing test." *Sipper*, 869 F. Supp. 2d at 116.

Here, this lawsuit and the Fulton Action have close relationships as both arise from the same or closely associated alleged facts, events, and legal theories. The Fulton Action alleges that Ms. Powell conspired with Giuliani, Trump, the Trump Campaign, and others to overturn the 2020 Presidential Election. The crux of the Indictment relies on several purported predicate acts to support the RICO claims made against her. *E.g., Mosley v. State*, 560 S.E.2d 305, 308 (Ga. App. Ct. 2002) ("To prove a RICO violation, the state must show that the defendant committed two or more predicate criminal acts of the type included in the RICO statute as part of an enterprise engaging in a pattern of racketeering activity."). Many of the identified predicate acts implicate the Smartmatic lawsuit.

- The Indictment identifies statements made by Ms. Powell at the November 19, 2020 RNC press conference as a predicate act.[4] (Indictment at 14, 20).

- The Indictment alleges that Ms. Powell made "false statements and writings" while operating in Georgia, other states, and DC. (Indictment at 15.)

- The Indictment identifies meetings Ms. Powell had in DC, meetings that Smartmatic now claims are germane to it argument for personal jurisdiction in this lawsuit. (Indictment at 43.)[5]

---

[4] *See* Indictment at 20 ("alleging "appearing at a press conference at the Republic National Committee Headquarters [on November 19, 2020] on behalf of DONALD JOHN TRUMP and Donald J. Trump for President, Inc…and made false statements concerning fraud in the November 3, 2020, presidential election in Georgia and elsewhere.").

[5] *See* Indictment at 43 (alleging December 18, 2020, White House meeting between Ms. Powell, Giuliani, and Trump to discuss "certain strategies and theories intended to influence the outcome of the November 3, 2020 presidential election, including seizing voting equipment and appointing [Ms. Powell] as special counsel with broad authority to investigate allegations of voter fraud in Georgia and elsewhere").

The Indictment also identifies as a purported predicate act alleged false testimony given by Ms. Powell during her deposition by the January 6th Commission regarding the efforts and participation levels of other defendants, including Giuliani, to access voting machines in Georgia and overturn the election. (Indictment at 69.) Smartmatic has sought related discovery from Ms. Powell regarding the January 6 Commission on three separate occasions.[6]

Smartmatic's claims and litigation tactics involve the same events and theories. Smartmatic alleges that Ms. Powell engaged in a conspiracy with others, including Giuliani and the Trump campaign, to smear Smartmatic as part of an overall effort to overturn the 2020 Presidential Election. (*E.g.,* ECF 1 ¶¶ 14, 72-74, 77, 94, 148). Presently, a majority of its case relies on statements made by Ms. Powell at the November 19 RNC press conference. (ECF 1 ¶¶ 18, 101-03.) This Court found that it may exercise personal jurisdiction over Ms. Powell for Smartmatic's claims as they involve the November 19 press conference. (EFC 38 at 7.) Smartmatic also alleges that Ms. Powell falsely claimed that Smartmatic software was intended to flip votes as part of an effort to undermine the Presidential Election results, and that such software was used in Dominion voting machines. (ECF 1 ¶¶ 191.d, 191.u). The Fulton Action involves Dominion voting machines and a purported conspiracy to overturn the election through vote flipping and vote creating.

Smartmatic's outstanding discovery requests (for which it is filing its motion to compel) implicate the Fulton Action. The discovery includes:

- All communications with any member of the Trump Campaign (Ex. B, Requests for Production ("RFP") 1);

---

[6] In its First Set of Request for Production, Smartmatic requested all documents and testimony given to the January 6th Committee. (Requests 18-20.) Notably, trying to circumvent this Court's stay, Smartmatic has tried to serve third-party discovery on Ms. Powell seeking the same documents. See Ex. B, enclosing true and correct copies of Smartmatic's document requests.

- All communications with Trump and the Trump Administration (*id.*, RFP 2);

- All communications with Giuliani (*id.*, RFP 10);

- All communications related to the 2020 presidential election (*id.*, RFP 4);

- All communications with Trump, the Trump Campaign, or the Trump Administration, regarding Ms. Powell's possible role as special counsel investigating irregularities in the 2020 presidential election (*id.*, RFP 5);

- All communications with news organizations related to the 2020 presidential election (*id.*, RFP 6);

- All documents and communications related to any meeting where allegations of fraud or irregularities in the 2020 presidential election were discussed (*id.*, RFP 9);

- Any recordings of meetings or communications with Giuliani, Trump, the Trump Campaign, or the Trump Administration (*id.*, RFP 14);

- Any documents or communications reflecting compensation Ms. Powell received from Trump or the Trump Campaign. (*id.*, RFP 25);

- Description of Ms. Powell's relationship with the Trump campaign and what transpired at Trump campaign meetings she attended (Ex. C, Interrogatories 6-7)[7];

- Description of any meeting, including topics discussed, and who attended, Ms. Powell attended at the White House (*id.*, Interrogatory 9).

In addition, Smartmatic has informed Ms. Powell and the Court that it intends to depose Ms. Powell (and is moving to compel her deposition) regarding Ms. Powell's activities and meetings/communications with Giuliani, Trump, the Trump campaign, and others indicted or implicated in the Fulton Action.

Smartmatic's claims, the basis of its claims, and the discovery Smartmatic has propounded and will propound on Ms. Powell each and all implicate the Fulton Action.

---

[7] Enclosed as Exhibit C is a true and correct copy of Smartmatic's First Set of Interrogatories.

The information could be used as evidence that Ms. Powell participated in a criminal RICO enterprise. Given the close relationship between the civil and criminal actions based on the overlapping events, without a stay, Ms. Powell would be forced to either make statements in the civil action before the October 2023 criminal trial, or assert her rights under the Fifth Amendment. Accordingly, as the same events, theories, and allegations are central in both actions, this factor weighs in favor of a stay.

### B. The Burden on the Court Factors Weighs in Favor of a Stay

Judicial economy favors staying civil actions when the defendant faces a parallel criminal investigation. "While not as significant as some of the other factors," a court "has an interest in preventing unnecessary conflict and litigation that may otherwise cloud its docket and hamper judicial economy." *Est. of Gaither ex rel. Gaither v. D.C.*, 2005 WL 3272130, at *5 (D.D.C. Dec. 2, 2005) (maintain stay where lifting it "would-in all likelihood-result in a significant amount of discovery-related litigation relating to motions for protective orders, claims of privilege, and conflicts over witness availability"). The trial of a criminal matter first also may assist in streamlining civil discovery in the civil case. *See Kurd*, 2022 WL 17961245 at *2 (stay facilitates judicial economy by avoiding "unnecessary litigation").

Here, allowing the criminal trial to proceed first would avoid anticipated discovery disputes, and sought for (or challenged) protective orders. Some of the discovery Smartmatic seeks may be produced in the criminal litigation, thereby removing disputes over it. This factor weighs in favor of a stay.

### C. The Balance of Interests Favors a Stay

This factor looks to the hardships or inequalities that the parties would face if a stay were granted or not granted. *Sipper*, 869 F. Supp. 2d at 116. Because the hardships would be minimal for Smartmatic and far greater for Ms. Powell, this factor weighs in favor of a stay.

Having to litigate both the Fulton Action and this lawsuit at the same time would require Ms. Powell, prior to the October criminal trial, to choose to waive or assert her rights under the Fifth Amendment. This Court has labeled this scenario a "significant dilemma." *Kurd*, 2022 WL 17961245 at *2 ("The balance of hardships faced by the parties should a stay be granted favors Defendants for one main reason: discovery in this civil case could impact the criminal case to a significant degree. Discovery here could possibly implicate the Fifth Amendment rights of [defendants], which courts have recognized to be a 'significant dilemma.'"); *Sipper*, 869 F. Supp. 2d at 117 (calling scenario "significant dilemma" and weighing in favor of staying civil action); *see also Wehling v. Columbia Broad. Sys.,* 608 F.2d 1084, 1088–89 (5th Cir.1979) (concluding it is unfair to force party to choose between Fifth Amendment privilege and the civil action).

If Ms. Powell were to invoke the Fifth Amendment right and decline to answer questions, this invocation could be used against her to establish civil liability. *Sipper*, 869 F. Supp. 2d at 117–18 (citing *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 98 (2d Cir. 2012)). Likewise, public interests favor granting the stay because "[t]he public has an interest in ensuring that the criminal discovery process is not subverted" through complications caused by a parallel civil action. *Gaither*, 2005 WL 3272130 at *5. This litigation would also require Ms. Powell and her criminal defense counsel to divert their attention for the upcoming criminal trial and tight briefing schedule to prepare for responses, testimony, or other procedures in this litigation to Ms. Powell's disadvantage in both cases.

9

On the other hand, the stay would not inflict hardship on Smartmatic. Ms. Powell only seeks a 90-day stay, a length this Court has called "is relatively insignificant." *Gaither*, 2005 WL 3272130 at *4. While the stay may inconvenience Smartmatic, it would not create undue hardship or prejudice. This factor weighs in favor of a stay.

### D. The Brief Duration of the Requested Stay Weighs in Favor of Granting It

"A stay with a limited duration, as presented here, is more likely to be granted than an indefinite one." *Kurd*, 2022 WL 17961245 at *4 (finding "short duration of the requested stay also weighs in favor of Defendants"); *Sipper*, 869 F. Supp. 2d at 118 (granting 90-day stay). Smartmatic previously has complained of the inconvenience conjured by any delay, as Ms. Powell's alleged defamatory statements were made three years ago. However, as noted by this Court in *Gaither*, "a delay of only three (3) additional months, when roughly thirty-five (35) months have already passed, is relatively insignificant[.]" *Gaither*, 2005 WL 3272130 at *4. Here, the short duration requested by Ms. Powell is only a pause of breath by comparison and weighs in favor of a stay.

## IV.     CONCLUSON

Ms. Powell moves for a **90-day stay** to provide her time to prepare for her October 2023 criminal trial and to avoid the "significant dilemma" of having to defend both lawsuits simultaneously and determining whether to assert or waive her rights under the Fifth Amendment. The four factors considered in this Circuit each and collectively favor a stay: both matters have a close relationship, arising form the same underlying events, legal theories, and allegations, a stay would promote judicial efficiency, the hardship on Smartmatic would be minimal and great on Ms. Powell, and the requested duration of the stay is brief.

For these reasons, Ms. Powell respectfully requests the Court to grant her motion.

Dated: September 1, 2023　　　　　　　　**KENNEDYS CMK LLP**

By:/s *Joshua A. Mooney*

Joshua A. Mooney DC Bar No. 471866
1600 Market Street, Suite 1410
Philadelphia, PA 19103
Tel: 267-479-6700
Joshua.Mooney@kennedyslaw.com

Marc Casarino, pro hac vice
919 N. Market Street, Suite 1550
Wilmington, DE 19801
Tel: 302-308-6647
Email: marc.casarino@kennedyslaw.com

Michael J. Tricarico, pro hac vice
570 Lexington Avenue, 8th Floor
New York, New York 10022
Tel: (646) 625-3952
Email: Michael.tricarico@kennedyslaw.com

*Attorneys for Defendant Sidney Powell*

## Certificate of Service

I hereby certify on this 1st day of September 2023, I caused to have electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which I understand to have served counsel of record for the parties.

/s/ Joshua A. Mooney
Joshua A. Mooney