**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SMARTMATIC USA CORP., SMARTMATIC INTERNATIONAL HOLDING B.V., and SGO CORPORATION LIMITED, | ) ) ) ) ) | Case No. 21-cv-02995-CJN |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| SIDNEY POWELL, | ) ) | |
| Defendant. | ) ) | |

**SMARTMATIC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO
COMPEL JURISDICTIONAL DISCOVERY**

## TABLE OF CONTENT

Page

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

    A.    Smartmatic's Jurisdictional Allegations ................................................ 2

    B.    Powell's Document Production to and Testimony Before the
January 6 Committee .............................................................................. 2

    C.    The Court's Memorandum Opinion ......................................................... 2

    D.    Powell's Refusal to Produce Relevant Jurisdictional Discovery ............. 4

ARGUMENT ..................................................................................................................... 5

I.    The Court Already Has Pendent Jurisdiction Over Powell for the
Defamatory Statements She Made About Smartmatic on November 14, 15
and 16 ............................................................................................................... 5

II.    The Court Should Compel Powell to Produce Documents and Information
Responsive to Smartmatic's Jurisdictional Discovery Requests. ....................... 9

    A.    Powell Is Improperly Refusing Discovery That Bears on the
Court's Jurisdiction Under D.C. Code § 13-423(a)(1). .......................... 9

    B.    Powell Is Improperly Refusing Discovery That Bears on the
Court's Jurisdiction Under D.C. Code § 13-423(a)(4). ........................ 21

    C.    The Court Should Overrule Powell's Privilege Objections or
Compel Her to Provide a Privilege Log ............................................... 23

    D.    The Court Should Compel Powell to Appear for a Deposition ............. 25

CONCLUSION ................................................................................................................. 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Associated Producers, LTD v. Vanderbilt Univ.*,
    76 F. Supp. 3d 154 (D.D.C. 2014) ..............................................................11, 14, 16

*Blumenthal v. Drudge*,
    992 F. Supp. 44 (D.D.C. 1998) ...................................................................22, 23

*Cohane v. Arpeja-California, Inc.*,
    385 A.2d 153 (D.C. 1978) ................................................................................7

*Coomer v. Donald J. Trump for President, Inc.*,
    No. 2020-cv-34319 (Colo. Dist. Ct. Denver Cnty) ..........................................12, 23

*Crane v. Carr*,
    814 F.2d 758 (D.C. Cir. 1987) .........................................................................25

*DL v. D.C.*, 251 F.R.D. 38 (D.D.C. 2008) .....................................................................24

*Doe I v. State of Israel*,
    400 F. Supp. 2d 86 (D.D.C. 2005) ...............................................................18, 19, 20

*Etchebarne-Bourdin v. Radice*,
    982 A.2d 752 (D.C. 2009) ................................................................................23

*Fam. Fed'n for World Peace v. Hyun Jin Moon*,
    129 A.3d 234 (D.C. 2015) ................................................................................19

*Geier v. Conway, Homer & Chin-Caplan, P.C.*,
    983 F. Supp. 2d 22 (D.D.C. 2013) .....................................................................6

*GTE New Media Servs. Inc. v. BellSouth Corp.*,
    199 F.3d 1343 (D.C. Cir. 2000) ......................................................................4, 25

*Hainey v. World AM Communications, Inc.*,
    263 F. Supp. 2d 338 (D.R.I. 2003) ..................................................................6, 10

*Heroes, Inc. v. Heroes Found.*,
    958 F. Supp. 1 (D.D.C. 1996) ..........................................................................18

*IMAPizza, LLC v. At Pizza Ltd.*,
    334 F. Supp. 3d 95 (D.D.C. 2018) ................................................................ *passim*

*Lewy v. S. Poverty L. Ctr., Inc.*,
　　723 F. Supp. 2d 116 (D.D.C. 2010) ...................................................21, 22, 23

*Lohrenz v. Donnelly*,
　　187 F.R.D. 1 (D.D.C.1999)................................................................................24

*Manifold v. Wolf Coach, Inc.*,
　　231 F. Supp. 2d 58 (D.D.C. 2002)..............................................................15, 17

*Martin & Assocs., P.L.L.C. v. Malouf*,
　　No. 03-cv-1281, 2006 WL 279105 (D.D.C. Feb. 6, 2006).................................7

*Oetiker v. Jurid Werke, G. m. b.*,
　　556 F.2d 1 (D.C. Cir. 1977)..............................................................................7

*PeaceTech Lab, Inc. v. C5 Accelerate LLC*,
　　No. 20-cv-922, 2021 WL 106718 (D.D.C. Jan. 12, 2021)..............................19

*Pension Advisory Grp., Ltd. v. Country Life Ins. Co.*,
　　771 F. Supp. 2d 680 (S.D. Tex. 2011) .............................................................6

*U.S. ex rel. Pogue v. Diabetes Treatment Centers of America, Inc.*,
　　235 F.R.D. 521 (D.D.C.2006)..........................................................................24

*Poling v. Farrah*,
　　131 F. Supp. 2d 191 ....................................................................................6, 7

*Quality Air Servs., L.L.C. v. Milwaukee Valve Co.*,
　　567 F. Supp. 2d 96 (D.D.C. 2008)..............................................................10, 15

*Seiferth v. Helicopteros Atuneros, Inc.*,
　　472 F.3d 266 (5th Cir. 2006) ...........................................................................6

*Shoppers Food Warehouse v. Moreno*,
　　746 A.2d 320 (D.C. 2000) .........................................................................10, 20

*Steinberg v. Int'l Crim. Police Org.*,
　　672 F.2d 927 (D.C. Cir. 1981) ........................................................................7

*Urquhart-Bradley v. Mobley*,
　　964 F.3d 36 (D.C. Cir. 2020) .........................................................................25

*US Dominion, Inc. v. Powell*,
　　554 F. Supp. 3d 42 (D.D.C. 2021) ..............................................................9, 23

*Zeman v. Lotus Heart, Inc.*,
　　717 F. Supp. 373 (D. Md. 1989)......................................................................20

**Statutes**

28 U.S.C. § 1367 ........................................................................................................................ 7

D.C. Code § 13-423 ............................................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 26 ...................................................................................................................... 24

Fed. R. Civ. P. 30 .................................................................................................................. 25, 26

**INTRODUCTION**

Smartmatic brought this action to hold Defendant Sidney Powell accountable for the false defamatory accusations she disseminated following the 2020 U.S. election. Powell told hundreds of millions of people—through nationally televised appearances on Fox News and in meetings in this District—that Smartmatic rigged the 2020 U.S. presidential election. The Complaint alleges that Powell knew that her statements were false but made them anyway to enrich herself and further her career. Powell used her statements to convince supporters of former President Trump that she was "defending the republic" but needed their donations to finance her "work."

After Powell moved to dismiss, this Court determined on May 24, 2023 (a) that Smartmatic had sufficiently alleged personal jurisdiction over statements that Powell made in the District of Columbia and (b) that jurisdictional discovery was necessary regarding Powell's "contacts with the District with respect to her allegedly defamatory statements" that she claims she made outside of the District. (Mem. Op., ECF No. 38 at 9). Smartmatic now needs the Court's assistance because Powell is refusing to provide this discovery. Powell will only produce discovery regarding her physical location when she defamed Smartmatic on three dates: on November 14, 15, and 16, 2020.

Smartmatic is entitled to all relevant discovery that Powell is withholding and could easily produce. Indeed, Powell has already produced the same information to the U.S. House of Representatives Select Committee to Investigate the January 6th Attack on the United States Capitol ("January 6 Committee") and potentially in other ongoing litigation too. Burden is not the obstacle here. Powell is obstructing to restrict the information available to the Court for its personal jurisdiction inquiry. The narrower the discovery, the more likely Powell believes she can avoid or minimize her liability. Smartmatic accordingly moves to compel Powell to produce the relevant discovery she is withholding, provide a privilege log, and attend a deposition.

## BACKGROUND

### A.     Smartmatic's Jurisdictional Allegations

Smartmatic has alleged that Powell selected the District of Columbia as the epicenter of her disinformation campaign. In November and December 2020, Powell repeatedly represented to District residents and others that Smartmatic engaged in a conspiracy to undermine the 2020 U.S. presidential election. (Compl. ¶¶ 16–18, 77, 84, 86, 90, 94, 101, 109, 363, 365). To execute this campaign, Powell traveled to the District of Columbia, stayed in hotels in the District, conducted media appearances in the District in which she defamed Smartmatic, and solicited donations from District residents to finance her efforts to undermine the election. (*Id.*) Powell used the District to defame Smartmatic in front of influential elected officials and other District residents. (*Id.* ¶¶ 361–365).

### B.     Powell's Document Production to and Testimony Before the January 6 Committee

On May 7, 2022, Powell testified before the January 6 Committee and produced approximately "20,000 documents" responsive to a subpoena from the committee. *See* Ex. 1 at 9:1-19, 36:20–21). Powell's testimony reveals persistent contacts with the District, including significant contacts related to her defamatory statements. Neither Smartmatic nor the Court had this information when considering Powell's motion to dismiss. (ECF No. 23).

### C.     The Court's May 24, 2023 Memorandum Opinion

On May 24, 2023, the Court ruled on Powell's motion to dismiss by granting Smartmatic leave to take jurisdictional discovery. Mem. Op., ECF No. 38 at 7–9. The Court authorized "jurisdictional discovery on the question of Powell's contacts with the District with respect to" the allegedly defamatory statements Powell made on "November 14, 15, and 16, and during the interview on November 19." *Id.* at 7.

The Court distinguished those statements from the statements that Powell concedes she made in the District. First, as the Court found, "Powell's declaration concedes that she was in the District for the December 10 interview" she conducted on *Lou Dobbs Tonight*. *Id.* at 7 (citing Powell Decl. ¶ 20). Second, Powell's reply in support of her motion to dismiss "concedes that she was in the District for the November 19 press conference as well." *Id.* (citing Powell Reply at 2 n.2, ECF No. 34). "Thus, for the reasons given in *Powell I*," the Court concluded that "Smartmatic has sufficiently pleaded personal jurisdiction for claims related to Powell's statements at the November 19 press conference and during the December 10 interview." *Id.*

The Court, however, declined to exercise jurisdiction over Powell for (i) her statements that she made on Fox News on November 14, 15, and 16, because she declared that she left the District and was staying at her hotel in Alexandria, Virginia (ECF No. 23-3 ¶ 19); or (ii) her statements that she made on Fox News on November 19 after her press conference, because it was unclear from the Complaint whether Powell was within or outside the District during that Fox appearance. (*Id.* at 3, 7). For these statements, the Court determined that "each separate defamatory statement [by Powell] itself constitutes a separate and distinct cause of action." Mem. Op. at 7 (citing *Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909, 917 (E.D. Va. 2004)). Powell did not make this argument in her motion to dismiss. (*See generally* ECF Nos. 23-2, 34). The Court further posited that, "because specific personal jurisdiction is claim-specific, it must be established for each claim." *Id.* (citing *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274–75 (5th Cir. 2006)). Smartmatic had no opportunity to brief this proposition because Powell did not raise it. (*See* ECF Nos. 23-2, 34). Distinguishing between the statements Powell allegedly made within and outside the District, the Court found that

"Smartmatic must establish claim-specific forum contacts" for its claim that arises from Powell's statements "on November 14, 15, and 16, and during the interview on November 19." (*Id.*)

### D.    Powell's Refusal to Produce Relevant Jurisdictional Discovery

On July 26, 2023, Powell served her Answers and Objections to Smartmatic's First Set of Requests for Production (Ex. 3) and Interrogatories (Ex. 4). Powell objected to all of Smartmatic's requests and produced only 112 pages of documents. Powell responded that she would provide discovery only regarding where she physically stood when she defamed Smartmatic on November 14, 15 and 16. Powell is withholding all other information that bears on the Court's exercise of personal jurisdiction. She also (a) failed to provide a privilege log for the documents she is withholding as privileged and (b) is refusing to appear for a deposition. *See* Ex. 4, Aug. 15, 2023 Joint Email Summary of Discovery Dispute (Powell confirming that she "opposes a deposition because the interrogatory responses, documents, and the sworn declaration provided disclose her location in connection with her alleged defamatory statements" on November 14, 15 and 16).

Powell is materially prejudicing Smartmatic by stonewalling the jurisdictional discovery this Court authorized. Smartmatic cannot be limited to the 112 pages Powell produced. Her selective disclosure omits substantial, relevant information that bears on the Court's exercise of personal jurisdiction. Smartmatic is entitled to that discovery and a deposition of Powell to examine her contacts with this District.[1]

---

[1] Smartmatic is **not** moving to compel discovery regarding the Predicate Acts alleged against Powell in the indictment pending in Fulton Superior Court, State of Georgia. Besides, any allegations in the indictment that involve Powell's contacts in D.C. are already publicly known. Powell testified *extensively* about them before the January 6 Committee. *See, e.g.,* Ex. 1 at 48:21–49:18, 76:11–85:3, 103:20–104:17, 142:25–145:14.

**ARGUMENT**

The Court "must engage in a two-part inquiry" to determine whether it has personal jurisdiction:  "first examine whether jurisdiction is applicable under the [D.C.] long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000).[2]  The D.C. long-arm statute authorizes specific personal jurisdiction, in pertinent part, "over a person, who acts directly or by an agent, as to a claim for relief arising from the person's . . . (1) transacting any business in the District of Columbia . . . (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia . . . [or] (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he [i] regularly does or solicits business, [ii] engages in any other persistent course of conduct, or [iii] derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia[.]"  D.C. CODE § 13-423(a)(1), (3)–(4).

Here, Smartmatic seeks discovery regarding Powell's contacts with the District to satisfy § 13-423(a)(1) and (4) for the defamatory statements she allegedly made outside of the District on November 14, 15 and 16. Before addressing that discovery, however, Smartmatic briefly explains why the Court already has personal jurisdiction over Powell for those statements.

## I.    The Court Already Has Pendent Jurisdiction Over Powell for the Defamatory Statements She Made About Smartmatic on November 14, 15 and 16.

When the Court authorized Smartmatic to take jurisdictional discovery, neither party had briefed whether the Court had jurisdiction over Powell's November 14, 15 and 16 statements through the doctrine of pendent personal jurisdiction. Powell did not argue that each of her

---

[2] All internal citations and quotation marks have been omitted, and emphasis added, unless otherwise noted.

statements must be evaluated separately for personal jurisdiction. (*See generally* ECF No. 23-2). Smartmatic thus raises the Court's pendent personal jurisdiction now because: there was no prior opportunity to do so; Smartmatic will raise the doctrine when the parties re-brief personal jurisdiction; and the adversarial process works best when parties disclose all relevant information. Smartmatic is showing its cards to be above board with the Court. In light of the Court's May 24, 2023 Order, Smartmatic must pursue the discovery it needs to protect its case and prevent Powell from evading this Court's jurisdiction for her actionable statements.

Smartmatic respectfully submits that the Court erred in declining to exercise jurisdiction over Powell for all her defamatory statements in November–December 2020. Under D.C. Circuit law, the Court may exercise supplemental jurisdiction over Powell for her defamatory statements on November 14, 15, 16 pursuant to the doctrine of pendent personal jurisdiction. *See Geier v. Conway, Homer & Chin-Caplan, P.C.*, 983 F. Supp. 2d 22, 31 (D.D.C. 2013) ("The D.C. Circuit has adopted the doctrine of 'pendent personal jurisdiction,' whereby a court may assert personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction.").[3]

---

[3] For the proposition that specific personal jurisdiction "must be established for each claim," the Court cited *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274–75 (5th Cir. 2006) and Wright & Arthur R. Miller, Federal Practice and Procedure § 1351. *Seiferth*, however, did not reject pendent personal jurisdiction. Rather, the court there held that "[a] plaintiff bringing multiple claims *that arise out of different forum contacts* of the defendant must establish specific jurisdiction for each claim." 472 F.3d at 274. Notably, courts in the Fifth Circuit have recognized that "the Fifth Circuit *has not yet expressly ruled on pendent personal jurisdiction.*" *Pension Advisory Grp., Ltd. v. Country Life Ins. Co.*, 771 F. Supp. 2d 680, 696 (S.D. Tex. 2011). Fifth Circuit courts thus look to precedent from "other circuits to consider the issue," which "have *uniformly approved* pendent personal jurisdiction." *Id.* (citing rulings from the Second, Fourth, Ninth, Seventh, and Federal Circuits). Additionally, Wright & Arthur R. Miller, Federal Practice and Procedure § 1351 relies upon *Hainey v. World AM Communications, Inc.*, 263 F. Supp. 2d 338 (D.R.I. 2003). But *Hainey* cites a single First Circuit case that is consistent with pendent

Courts in this Circuit have consistently applied the doctrine of pendent personal jurisdiction and exercised jurisdiction over related state law claims. *See, e.g., Poling v. Farrah*, 131 F. Supp. 2d 191, 194 (holding that "[b]ecause the Court has [personal] jurisdiction over [the defendant] with respect to Counts I and II of the complaint, it may exercise supplemental jurisdiction over the remaining counts under 28 U.S.C. § 1367 as well"); *Steinberg v. Int'l Crim. Police Org.*, 672 F.2d 927, 931 fn. 8 (D.C. Cir. 1981) (same, where plaintiff "allege[d] [defendant] defamed him in other locations as well as in the District of Columbia," and "[t]he District of Columbia Court of Appeals…has noted that '(t)he concept of cause of action or claim for relief (in subsection (b)) should be broadly construed to cover an entire transaction so that, when possible, the entire dispute may be settled in a single litigation'"); *Oetiker v. Jurid Werke, G. m. b.* H., 556 F.2d 1, 4 (D.C. Cir. 1977) (same, where the Court's exercise of "personal jurisdiction over the foreign defendant with respect to [plaintiff's] claims of patent invalidity and noninfringement…enabled plaintiff to obtain personal jurisdiction over the defendant with respect to any of his claims that arose out of the same core of operative fact as those claims"); *Cohane v. Arpeja-California, Inc.,* 385 A.2d 153, 158–59 (D.C. 1978) (same, because once a "claim is related to acts in the District, s 13-423 does not require that the scope of the claim be limited to activity within this jurisdiction").

The test that governs pendent personal jurisdiction is whether the claims at issue "relate to the same operative facts." Poling, 131 F. Supp. 2d at 194 (exercising pendent jurisdiction because "[a]ll of the counts of the complaint relate to the same operative facts," and "the Court

---

personal jurisdiction. The court found that "claim-specific jurisdictional analysis should apply with equal force to separate contract-based claims *that are founded in distinct factual allegations.*" *Id.* at 344. That precedent is inapposite here because Smartmatic's defamation claim is founded on one set of core operative facts involving defamatory statements Powell made against Smartmatic.

can perceive no hardship to defendant in requiring that these additional counts be litigated in the District of Columbia because [defendant] must come to this Court to defend against the first two counts of the complaint"); accord *Martin & Assocs., P.L.L.C. v. Malouf,* No. 03-cv-1281, 2006 WL 279105, at *2 (D.D.C. Feb. 6, 2006) ("Supplemental personal jurisdiction exists for Plaintiff's non-SEA claims, because they arise out of the same transaction as the SEA claims. See 28 U.S.C. § 1367(a).").

Here, the Court has pendent personal jurisdiction over Powell's defamatory statements on November 14, 15, 16 because they "relate to the same operative facts" as her other at-issue statements. In its Memorandum Opinion, the Court found that Smartmatic sufficiently alleged personal jurisdiction for the statements Powell made in D.C. at a press conference on November 19, 2020 and during her appearance on Fox News on December 10, 2020. Mem. Op. at 7. Additionally, Powell has since admitted that she was in D.C. during her appearance with Fox News on November 19, 2020 after she conducted her press conference. See Ex. B, Nos. 8–10 (admitting that Powell was still at the RNC headquarters in D.C. when she made her statements on Fox on November 19 after the press conference).

Those statements confer jurisdiction over Powell for her November 14, 15 and 16 statements because they arise from the same nucleus of operative facts. Indeed, this Court has already found that Powell's defamatory statements are all substantively similar. See Mem. Op. at 3 (finding that "[r]egardless of her location, Powell's statements on air were similar"). The statements are intertwined, occurred over the same two-month period, concern the same facts, and target the same defamation victim: Smartmatic. This case presents as clear a situation to exercise pendent personal jurisdiction as any case Smartmatic cited above.

Smartmatic nevertheless seeks jurisdictional discovery because of: (a) the Court's Memorandum Opinion and any doubts the Court has regarding its jurisdiction over Powell for her statements on November 14, 15 and 16; and (b) Powell's refusal to consent to jurisdiction. This case is too important to let Powell evade the Court's authority. Smartmatic therefore moves to compel Powell's production of discovery that will confirm her November 14, 15, and 16 statements independently satisfy the D.C. long-arm statute.

## II.   The Court Should Compel Powell to Produce Documents and Information Responsive to Smartmatic's Jurisdictional Discovery Requests.

Smartmatic seeks jurisdictional discovery to show that "Powell's contacts with the District" are sufficient to confer jurisdiction over Powell for the statements she allegedly made outside of D.C. on November 14, 15 and 16. Powell is attempting to avoid jurisdiction for those statements. Even if Powell made them outside of the District, she remains subject to the Court's jurisdiction for them because she: (i) transacted business in the District under D.C. Code § 13-423(a)(1); and (ii) had a "persistent course of conduct" under § 13-423(a)(4). All the discovery Smartmatic seeks is relevant under these two sub-provisions. Powell has no burden providing any of the requested discovery either because she has already produced it elsewhere.

### A.   Powell Is Improperly Refusing Discovery That Bears on the Court's Jurisdiction Under D.C. CODE § 13-423(a)(1).

As alleged in the Complaint, Smartmatic seeks discovery to show that Powell is subject to the Court's jurisdiction under D.C. Code § 13-423(a)(1). See Compl. ¶ 16 (alleging that the Court has personal jurisdiction over Powell because she "transacted business within the District"). "§ 13-423(a)(1) covers *any transaction of business in the District of Columbia* that can be reached jurisdictionally without offending the due process clause." *IMAPizza, LLC v. At Pizza Ltd.*, 334 F. Supp. 3d 95, 111 (D.D.C. 2018) (emphasis in original). Sub-provision(a) "certainly covers 'business transactions' in the everyday sense of commercial deal-making

activities like negotiating or performing contracts," as well as advertising, operating office space, holding meetings, and making business decisions in the District. *US Dominion, Inc. v. Powell*, 554 F. Supp. 3d 42, 66 (D.D.C. 2021) (canvassing this District's case law).

To be sure, "it is not enough…to show that [a] Defendant[] engaged in business transactions in the District. [The plaintiff] must also show that its claims 'aris[e] from' these business transactions." *IMAPizza, LLC v. At Pizza Ltd.*, 334 F. Supp. 3d 95, 112–13 (D.D.C. 2018). But the "District of Columbia law sets a relatively low bar for suit-relatedness, requiring only a 'discernible relationship' between the defendant's contacts and the plaintiff's claims." Id. "The District of Columbia Court of Appeals has concluded that the 'discernible relationship' test is sufficient to satisfy the U.S. Constitution's Due Process Clause." Id. While "other courts have applied different tests," [] the 'discernible relationship' test is the least demanding—that is, it requires the loosest fit between a defendant's forum contacts and a plaintiff's claim.4 See, e.g., *Quality Air Servs., L.L.C. v. Milwaukee Valve Co.*, 567 F. Supp. 2d 96, 100 (D.D.C. 2008) (noting that "a single act may be sufficient to constitute transacting business, so long as that contact is voluntary and deliberate, rather than fortuitous"); *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 331 (D.C. 2000) ("Even a small amount of in-jurisdiction business activity is generally enough to permit the conclusion that a nonresident defendant has transacted business here.")

Here, Smartmatic seeks discovery from Powell regarding the same types of contacts that have conferred jurisdiction over a defendant under D.C. Circuit precedent applying § 13-

---

[4] "Other courts have generally adopted one of three approaches. The first requires the forum contacts to be something like the 'proximate cause' of the plaintiff's claim. The second imposes a looser standard more akin to factual (or 'but-for') causation. *Id.* The third is the 'discernable relation' test (the same one the District of Columbia Court of Appeals has adopted). The first test is the most demanding, and the third the least." *IMAPizza*, 334 F. Supp. 3d at 113–14.

423(a)(1). Powell cannot reasonably argue that Smartmatic is requesting "irrelevant" discovery when the same information in other cases has established suit-relatedness.

***Discovery Concerning the Connections Between Powell's In-District Statements and Her Statements on November 14, 15 and 16, 2020***. Discovery concerning the disinformation campaign and Powell's role in it will demonstrate that Powell's November 14, 15 and 16 defamatory statements "were not a separate and distinct act from [her defamatory statements in D.C.], but part of a single course of conduct" under § 13-423(a)(1). *See Associated Producers, LTD v. Vanderbilt Univ.*, 76 F. Supp. 3d 154, 164 (D.D.C. 2014) (holding that defendant's "agree[ment] to ... put [Plaintiffs] out of business" and use of "her voice" by sending "allegedly defamatory emails" were "sufficient facts to establish that Defendant" transacted business in the District and that "Plaintiffs' claims arose out of these business transactions"); *see also IMAPizza*, 334 F. Supp. 3d at 114–115 (finding that defendants transacted business within § 13-423(a)(1) because their "contacts with the District" and "the timing of" their trip to the District "played a close and significant role in carrying out…their [tortious] scheme").

To establish jurisdiction under § 13-423(a)(1) here, Smartmatic seeks discovery from Powell concerning her role in the disinformation campaign that she and her co-conspirators coordinated and executed to convince millions of people that Smartmatic rigged the 2020 U.S. presidential election**.** Compl. ¶¶ 21, 72–128. (See Ex. 2, Nos. 1–14, 16–23, 25, 29, 32; Ex. 3, Nos. 1–10). Smartmatic has alleged that Powell worked with Rudolph Giuliani to engineer the lies that both would later publish concerning Smartmatic**.** Compl. ¶¶ 72–77**.** Powell and Giuliani then found a willing partner in Fox News to disseminate and champion their falsehoods about Smartmatic**.** *Id.* ¶ 78**.** For over a month, Powell, Giuliani, and Fox saturated the airwaves and internet with the falsehoods that Powell and Giuliani had created**.** *Id.* ¶¶ 79–114, 116**.** Powell's

defamatory statements—including those she made on November 14, 15 and 16—are probative under § 13-423(a)(1) because they "were an indispensable part of a plan" to undermine the outcome of the 2020 election. *IMAPizza*, 334 F. Supp. 3d at 114–115. Hence, Smartmatic has requested documents and information in Powell's possession concerning the 2020 Presidential Election, Smartmatic, Dominion, the Trump Campaign, Giuliani, and the media outlets that interviewed Powell over the relevant timeframe.

Critically, Powell has already produced much, if not all, of this information to the January 6 Committee and, potentially, the plaintiffs in *Coomer v. Donald J. Trump for President, Inc.*, 2020-cv-34319 (Colo. Dist. Ct. Denver Cnty) and *US Dominion, Inc. v. Powell*, No. 21-cv-40-CJN (D.D.C.). This same discovery will further confirm that Powell's defamatory statements on November 14, 15, and 16 were part of a single transaction. Powell used all her statements to "defend the republic" by concocting and disseminating false accusations of voting machine fraud to enrich herself and secure access to power.

Powell's testimony before the January 6 Committee, alone, bespeaks the interconnectedness between her confirmed in-District statements and her statements on November 14, 15, 16. They all trace back to Election Night. Powell testified that she "watch[ed] the election returns at the White House" on "the night of the election" and "just wound up in the middle of all of it." Ex. 1 at 12:8–14, 17:9–22. By then, of course, Powell had publicly questioned the legitimacy of "mail-in ballots and the ability of computerized voting to be manipulated." (*Id.* at 13:15–24, 15:2–24). Although Powell avoided answering when she first became involved in the disinformation campaign, she acknowledged attending "a big meeting at the White House" and "being at campaign headquarters" after Election Day. (*Id.* at 7–17).

The documents that Powell's counsel produced (less than 48 hours before she testified) confirm that this meeting took place on **November 8, 2020**. (*Id.*at 23:19-24:5). Powell, Giuliani, members of the Trump Campaign, and Trump administration officials attended it. Based on Powell's testimony, there is no doubt that this meeting formed or furthered the conspiracy the Complaint alleges to undermine faith in the 2020 election by defaming Smartmatic. (*See, e.g.,* Compl. ¶¶ 14, 78–121, 148). Testifying about the November 8, 2020 meeting, Powell recalled:

> Q.    What do you remember about the first meeting at the White House after the election?
>
> A.    [I]t was general and chaotic and widespread recognition of something having been very wrong.
>
> * * * * *
>
> Q.    Do you remember when you were asked to participate in this election challenge work on behalf of the President?
>
> A.    I was probably asked to be some kind of part of it at that meeting[.]

*Id.* at 24:5–17, 25:7–11.

That same day—November 8, 2020—was when Powell first appeared on Fox News to propagate voting machine fraud accusations. She was Maria Bartiromo's guest on *Sunday Morning Futures*, along with Rudy Giuliani.[5] *See Trump legal team to file new ballot lawsuits* (Fox News Nov. 8, 2020), https://www.foxnews.com/transcript/trump-legal-team-to-file-new-ballot-lawsuits ("Coming up, Rudy Giuliani and Sidney Powell make the president's case right here."). Bartiromo introduced Powell as a member of "the president's legal team." *Id.* Powell did not correct Bartiromo.[6] Instead, Powell embraced that role and delivered the goods Bartiromo

---

[5] Powell testified before the January 6 Committee that she has no recollection of this nationally televised appearance. (Ex. 1 at 27:24-28:3).[5]

[6] Powell was introduced as a member of the Trump legal team in her November 2020 appearances on Fox. Giuliani also introduced her as a member of the Trump legal team at the

had promised. Powell told Fox viewers: "The computer glitches could not and should not have happened at all. That's where the fraud took place, where they were flipping votes in the computer system, or adding votes that did not exist." *Id.* Bartiromo concluded the segment: "Sidney, these are incredible charges that you are making this morning. We, of course, will be following this. And we thank you for joining me today. Please come back soon, Sidney Powell."

The statements Powell made on November 14, 15 and 16 picked up where she left off on November 8, except Powell defamed Smartmatic by name on November 14, 15 and 16. Compl. ¶¶ 84–95. In between those dates, Powell stayed in D.C. (Ex. 1, at 37:15–19). Powell then defamed more Smartmatic in her televised appearances on November 19, 2020 (both at the press conference and during her Fox News interview) and December 10, 2020. The discovery Smartmatic seeks—relevant communications and documents from the operative timeframe with persons involved in the disinformation campaign—is not only relevant, but will decisively establish the Court's jurisdiction over Powell for her statements on November 14, 15 and 16 as part of a "single transaction" under § 13-423(a)(1).

***Powell's Travelling into D.C. to Attend Meetings in D.C.*** Smartmatic seeks discovery regarding Powell's travel into and out of the District, accommodations in the District, and the meetings she held in the District because she conducted those activities to amplify the lie that voting machine fraud invalidated the 2020 Presidential Election. *See IMAPizza*, 334 F. Supp. 3d 95, 113 (D.D.C. 2018) (holding that "visits" and "physical entry into" the District are "certainly [] relevant contact[s]" under § 13-423(a)(1) because they reflect "purposeful conduct that could constitute minimum contacts with the District of Columbia"); *Associated Producers*, 76 F. Supp.

---

November 19, 2020 press conference. Not once did Powell correct anyone—until the Trump Campaign disavowed her on November 22, 2020. Any suggestion by Powell that she had no relationship with the Trump Campaign is not believable. She is merely trying to rewrite history and separate herself from the role she played to avoid the Court's jurisdiction.

3d at 163 (exercising specific jurisdiction over the defendant, in part, because he had relevant "business interactions" at a meeting in the District, and "Plaintiffs' claims arose out of these business transactions"). Courts in this District have also heeded a party's staying in Virginia and travel into and out of the D.C. because such activities indicate a party's availment of the District. *See Quality Air Servs., L.L.C. v. Milwaukee Valve Co*., 567 F. Supp. 2d 96, 100 (D.D.C. 2008) (finding that defendant "was well aware that it was accessing and benefiting from the D.C. market" by transacting business in Virginia and "target[ing]…the Washington metropolitan area"); *Manifold v. Wolf Coach, Inc*., 231 F. Supp. 2d 58, 63 (D.D.C. 2002) (same, where business activities "in areas immediately surrounding the District (e.g., Alexandria, Virginia)" had a "direct and foreseeable" "path to this jurisdiction").

Powell's testimony before the January 6 Committee confirms that she engaged in all of these activities: travel to the District, lodging in the District, and participation in business meetings in the District. Powell testified that she "***set up base in Washington***" after the November 8 meeting at the White House, gathered information and "would send it to Mr. Giuliani" and her other colleagues who were working to "take the country back."[7] *See* Ex. 1 at 37:15-24. Powell also interacted with members of Congress regarding the work she did to prevent electoral certification. Ex. 1 at 58:5-59:24 (testifying about a meeting she attended in a "room full of people" in "early to mid November" while she "was in DC" in a "building that's up behind Congress" to discuss "what [she] was seeing and finding at that point"), 156:16–157:8 (admitting that she "participated in a meeting" on January 4, 2021 where she

---

[7] *See* C-Span, *Trump Campaign News Conference on Legal Challenges* (Nov. 19, 2020), https://www.c-span.org/video/?478246-1/trump-campaign-news-conference-legal-challenges (Powell stating 00:39:02, "We are going to take this country back. We are not going to be intimidated. We are not going to back down. We are going to clean this mess up now. President Trump won by a landslide. We are going to prove it, and we are going to reclaim the United States of America for the people who vote for freedom.").

gave "Congress people" a "rundown" on her voting machine fraud "evidence" at the Trump Hotel in the District).

Powell's 112-page production in this case also confirms meetings that Powell attended in the District. *See, e.g.,* Ex. 5 (Powell texting that she has to go to the "WH" on November 20, 2020), Ex. 6 (Outlook invitation confirming Powell's stay at the Trump hotel in D.C. from December 9, 2020 through December 15, 2020 and attendance at a White House reception), Ex. 7 (December 2020 email chain wherein Powell tells Lou Dobbs's producer, Robert Regan, that she "will be in DC next several days—confidential")). On November 9, Powell even wrote that she was "***in DC nonstop***" and "***[w]orking 24-7.***" *See* Ex. 8.

Smartmatic moves to compel because Powell is refusing to provide a complete disclosure regarding her travel, lodging, and meetings in the District of Columbia during the relevant timeframe. Powell's selective disclosure prejudices Smartmatic by narrowing the information available to the Court for its personal jurisdiction determination. The discovery Smartmatic seeks is relevant under § 13-423(a)(1) and must be produced.

***Powell's Communications into D.C.*** Smartmatic seeks discovery regarding Powell's communications into the District because they are "qualitatively significant" and inform her activities in the District**.** *See Associated Producers, LTD v. Vanderbilt Univ.*, 76 F. Supp. 3d 154, 168 (D.D.C. 2014) (finding a "meeting and the subsequent emails and phone calls as part of one continuing business transaction arising out of [Defendant's] consulting role" because defendant was "direct[ing] her consulting activity at the District of Columbia"); *Manifold v. Wolf Coach, Inc.*, 231 F. Supp. 2d 58, 62 (D.D.C. 2002) (finding "the defendant's business transaction" encompasses "faxes and phone calls" into the District and a meeting in the District").

Here, Powell's testimony before the January 6th Committee addresses emails that Powell sent or received that directed her activity at the District. *See, e.g.,* Ex. 1 at 69:11-20 (testifying regarding Exhibit 46, a December 2020 email chain wherein Powell writes to Mark Meadows, "It's imperative I be included in the meetings scheduled today with you, Rudy, and with the President, about the machines and any of these issues"). But Powell has refused to produce all of the exhibits to her deposition. Smartmatic is entitled to Powell's communications involving the District to show that its claims arose out of those communications.

***Powell's Research for Her Statements in D.C.*** Conducting research in the District for business purposes supports jurisdiction under § 13-423(a)(1). *See IMAPizza*, 334 F. Supp. 3d at 114–15 (traveling to D.C. as part of a [party's] "due diligence and research process" conferred jurisdiction because, but for the defendant's "detailed study," there would have been no "alleged" wrongdoing). Powell has already admitted in her January 6th Committee testimony that she conducted research and met with "sources" in the District regarding her defamatory statements. *See, e.g.,* Ex. 1 at 37:15-24 (testifying that she "set up base in Washington," gathered information and "would send it to Mr. Giuliani" and her other colleagues who were working to "take the country back"); *id.* at 62:4-63:4 (testifying that Connie Hair, former chief of staff to GOP Rep. Louie Gohmert of Texas, helped Powell "collect some information" regarding "concerns or claims of election fraud"); *id.* at 126:2–6 (testifying that she "would have shared" information she knew "about the Venezuela connection to Smartmatic and Dominion" with Giuliani). If Powell has information about research she conducted or sources she interacted with in D.C., that discovery is probative and must be produced.

***Powell's Solicitations of Donations and Use of Those Funds to Finance Her Election Subversion Efforts.*** Powell's solicitation of donations in D.C., receipt of donations from D.C.

residents, and payment of those funds to individuals who aided her in D.C. are all business transactions under § 13-423(a)(1), yet she is refusing to provide discovery on these topics. (*See* Ex. 2, Nos. RFP Nos. 16, 17, 18, 19, 20; Ex. 3, Nos. 11–15). *First*, public reporting indicates that Powell solicited and raised more than $14 million "from donors inspired by her fight to reverse the outcome of the vote."[8] Before the January 6th Committee, Powell admitted that she received substantial donations, including in the District, to finance her election subversion work. For example, exhibit 68 to her deposition was a check from the Julia Fancelli Living Trust. Powell acknowledged that the check was "a significant contribution to" Powell's law firm in the amount of $100,000 on November 30, 2020. (Ex. 1 at 111:11-22). Powell obtained the check after her client, Michael Flynn, introduced Powell to Fancelli. (*Id.*) Any solicitations in D.C. and/or from D.C. residents confer jurisdiction because they show that Powell "purposefully avail[ed] [herself] of the privilege of conducting activities within the District." *Compare Heroes, Inc. v. Heroes Found.*, 958 F. Supp. 1, 5 (D.D.C. 1996) (personal jurisdiction existed where defendant solicited donations in D.C. and received "substantial contributions") *with Doe I v. State of Israel*, 400 F. Supp. 2d 86, 121 (D.D.C. 2005) (no personal jurisdiction because "[t]he complaint never asserts that donations were made from within the District of Columbia, were solicited here, or were made by District of Columbia residents").

*Second*, each donation Powell received in D.C. and/or from a D.C. resident constituted a binding contract, i.e., a business transaction, within the scope of § 13-423(a)(1). *See Fam. Fed'n for World Peace v. Hyun Jin Moon*, 129 A.3d 234, 246–47 (D.C. 2015) ("Like any other transaction, there is no inherent reason why funds could not be provided to a corporation,

---

[8] Emma Brown, Rosalind S. Helderman, Isaac Stanley-Becker, and Josh Dawsey, *Sidney Powell group raised more than $14 million spreading election falsehood* (Wash. Post. Dec. 6, 2021), https://www.washingtonpost.com/investigations/sidney-powell-defending-republic-donations/2021/12/06/61bdb004-53ef-11ec-8769-2f4ecdf7a2ad_story.html

charitable or otherwise, with a contractual understanding as to how the funds were to be used and thus standing is established with respect to enforcing the restriction on the donations.”); *PeaceTech Lab, Inc. v. C5 Accelerate LLC*, No. 20-cv-922, 2021 WL 106718, at *10 (D.D.C. Jan. 12, 2021) (exercising specific personal jurisdiction over [the defendant] under D.C. Code § 13-423(a)(1) because [he] [was] a signatory to the Gift Agreement,” which was “a binding contract” and “‘business-related’ even though it involves a charitable donation”). Here, for instance, the memo line on the $100,000 check Powell secured from the Julia Fancelli Living Trust states: “**Contribution Defending the Republic Election Integrity Fund**.” *Id.* at 112:13–15. The memo line memorializes a “contractual understanding as to how the funds were to be used.” *Fam. Fed'n for World Peace*, 129 A.3d at 246–47. The donor gave Powell $100,000 to “defend the republic,” which Powell purportedly was doing when she defamed Smartmatic on November 14, 15 and 16. Every donation that Powell solicited either in the District or from District residents is relevant to her transacting business under § 13-423(a)(1).

*Third,* Powell used the donations she received to pay her election subversion staff. These additional transactions, whether express or implied, all have a discernible relationship with the District because Powell formed the agreements in the District, the staff worked in the District, and Powell paid them in the District with the donations she received. Powell has already admitted these underlying facts in her January 6th Committee testimony. According to Powell, “Defending the Republic Election Integrity Fund was not a separate entity. It was an account [she] set up at Morgan Stanley equivalent to a client trust fund” that “was for *us* to fund whatever *we* needed to do in *our* work on figuring out what happened in the election.” *Id.* at 112:16–25. Powell's use of “we” and “us” refer to the people she paid from her firm's trust fund for the work that they performed in D.C. for her. Ex. 1 at 42:3–43:1, 52:15–20 (identifying a “core

group" that she worked with "that wound up staying in Washington" and testifying that "there came a point in time where money came in to support our effort, and [Powell] got them all paid from that" through her law firm's bank account). Powell's payment of people working in D.C. who "defended the republic" with her is a relevant transaction within § 13-423(a)(1).

Powell may contend—as she has previously argued—that she was not an agent of Defending the Republic or her law firm, Powell P.C., so their receipt of donations cannot be imputed back to her for personal jurisdiction. But this position underscores Smartmatic's need for discovery regarding the control Powell exercised over these entities. *See* Ex. 2, Nos. 25–38; Ex. 3, Nos. 11–15. If Powell exercised control over and received benefits from DTR or Powell P.C., these facts would be probative of the Court's jurisdiction over her. *See Zeman v. Lotus Heart, Inc*., 717 F. Supp. 373, 377–78 (D. Md. 1989) (holding that it would "violate a sense of fairness to permit" the defendants "to solicit, negotiate, and consummate corporate business in" transactions "in which they personally had so direct and substantial an interest and then allow them to avoid responding…to legal charges addressed to them personally, which arise from those transactions" under the Maryland long-arm statute); *see also Shoppers Food Warehouse*, 746 A.2d at 325–26 (noting that the D.C. long-arm statute was modeled off the Maryland long-arm statute and that case law construing it is persuasive authority). As with the other documents Smartmatic requests, Powell has confirmed that she has responsive documents readily available for production. *See* Ex. at 124:22–24 (Powell testifying that, "We have been fully audited, and all the money that went to Defending the Republic has been accounted for, and our auditors haven't seen any problem that I'm aware of"). The absence of burden supports compelling Powell to comply with Smartmatic's discovery requests.

**B.      Powell Is Improperly Refusing Discovery That Bears on the Court's Jurisdiction Under D.C. CODE § 13-423(a)(4).**

Smartmatic seeks discovery to show that Powell is subject to the Court's jurisdiction under D.C. CODE § 13-423(a)(4). *See* Compl. ¶ 16. This provision "provides specific jurisdiction over non-resident defendants whose tortious acts outside the District of Columbia cause injury within the District if defendants satisfy one of the three enumerated 'plus factors': "regularly do[ing] or solicit[ing] business, engag[ing] in any other persistent course of conduct, or deriv[ing] substantial revenue from goods used or consumed, or services rendered, in the District of Columbia." *Lewy v. S. Poverty L. Ctr., Inc.*, 723 F. Supp. 2d 116, 123 (D.D.C. 2010). "[Federal courts have long held that the 'persistent course of conduct' required for jurisdiction under subsection (a)(4) need not be related to the tortious act outside the forum that causes the injury." *Id.* ("the claim need not arise from the 'plus factors' imposed by subsection (a)(4)"). Rather, the purpose of the plus factors is "to ensure that the party being haled into this jurisdiction's courts has more than a 'scant' connection to the forum." *Id.* "Thus, a defendant's contacts need not be great to satisfy subsection (a)(4); they need only be sufficient to establish a real connection to the District of Columbia such that a party might expect to be subjected to jurisdiction here." *Id.*

The same discovery that Smartmatic seeks to establish jurisdiction under subsection (a)(1) also bears on whether Powell engaged in a "persistent course of conduct" in the District under subsection (a)(4). Relevant contacts under subsection (a)(4) include Powell's: (a) travel into the District to attend meetings, including with District residents,[9] (b) conducting research in

---

[9] *Lewy*, 723 F. Supp. 2d at 128 (defendant "engaged in a 'persistent course of conduct' in the District of Columbia," including by attending "conferences and meetings" in the District); *Blumenthal v. Drudge*, 992 F. Supp. 44, 56 (D.D.C. 1998) (same, based on defendant's participation in "an interview with C–SPAN in Washington, D.C. and visit[] [to] the District of Columbia on at least one other occasion").

the District for her defamatory statements,[10] (c) participation in broadcasts that Powell intended and knew would be watched in the District,[11] (d) making phone calls and sending emails to members of Congress and other District residents to build relationships in the District[12]; (e) "soliciting and receiving millions of dollars [] from D.C. residents by mail, phone, and over the internet," including from Michael Flynn, whom she represented in the District (ECF No. 23-3 ¶¶ 6–15)[13]; and (f) "maintaining an interactive website available to D.C. residents 24 hours per day through which residents [could] sign up for information and donate to [DTR]" and purchase goods from Powell, including books and other merchandise (Compl. ¶¶ 17, 77, 86, 125(s), 365).[14]

---

[10] *Lewy*, 723 F. Supp. 2d at 128 (defendant "engaged in a 'persistent course of conduct' in the District of Columbia," including by "collecting information in the District for its website and national publications"); *Blumenthal*, 992 F. Supp. at 57 (D.D.C. 1998) (same, based on defendant's communications with "District of Columbia residents" to gather research for his publication).

[11] *Lewy*, 723 F. Supp. 2d at 127 (rejecting the argument that the "defamatory 'act'" for purposes of jurisdiction is only "the initial publication of [a] statement…and not its subsequent circulation" because "the circulation of materials to D.C. residents may be considered separately from the alleged defamatory conduct" under subsection (a)(4)).

[12] Powell admitted to the January 6th Committee that she has frequently interacted with Members of Congress over "the last 5 or 6 years." Ex. 1 at 60:16-24.

[13] *Lewy*, 723 F. Supp. 2d at 128 (defendant "engaged in a 'persistent course of conduct' in the District of Columbia," including by "soliciting millions of dollars in donations from D.C. residents through various means"); *Blumenthal*, 992 F. Supp. at 57 (D.D.C. 1998) (same, based on defendant's solicitation and receipt of contributions from D.C. residents — $250 received from 15 D.C. residents).

[14] *Lewy*, 723 F. Supp. 2d at 128 (defendant "engaged in a 'persistent course of conduct' in the District of Columbia," including "by maintaining a website that D.C. residents use to interact with" defendant); *Blumenthal*, 992 F. Supp. at 57 (D.D.C. 1998) (same, based on "the interactivity of the web site between the defendant [] and District residents" and "the availability of the web site to District residents 24 hours a day").

Importantly, there need be *no relationship* between these contacts and Smartmatic's defamation claim for them to be relevant under subsection (a)(4). *See Etchebarne-Bourdin v. Radice*, 982 A.2d 752, 763 (D.C. 2009) ("[A] claim need not arise, however, from the "plus factors" that are imposed by subsection (a)(4) on those claim-related acts or omissions."). The "plus factors" are "an additional due process safeguard, such as the requirement of "persistent course of conduct," to ensure that the party being haled into this jurisdiction's courts has more than a 'scant' connection to the forum." *Id.* Because no relationship is necessary, Powell cannot reasonably argue that Smartmatic's discovery requests are irrelevant under subsection (a)(4). Smartmatic must test Powell's assertions that she had minimal contacts with the District.

This discovery is reasonable as well, as Powell has already produced it to other parties, including the January 6 Committee and the *Dominion* and *Coomer* plaintiffs. Powell has no burden reproducing it here. Indeed, Powell has declared to this Court that she has "few" contacts with the District, so it should take little effort to produce it. For example, Powell avers that she was in the District from November to December 2020 on only a "few instances." (ECF No. 23-3 ¶ 17). Although her testimony before the January 6th Committee testimony belies that averment, Powell is nevertheless on the record minimizing the discoverable information she has. Powell has no basis to oppose Smartmatic's discovery requests because of any purported "burden."

## C.     The Court Should Overrule Powell's Privilege Objections or Compel Her to Provide a Privilege Log.

The Court should compel Powell to produce her a privilege log because she has invoked privilege to withhold relevant discovery, and her privilege claims are specious. "When a party withholds information otherwise discoverable by claiming that the information is privileged… the party must ... describe the nature of the documents, communications, or tangible things not produ*ced or disclosed*—and do so in a manner that ... will enable other parties to assess the

claim." *DL v. D.C.*, 251 F.R.D. 38, 45 (D.D.C. 2008) (citing Fed. R. Civ. P. 26(b)(5)). "This obligation is met through the provision of a privilege log." *Id.* (holding that the defendant "failed to satisfy its obligations under Rule 26(b)(5)" and overruling all of its "blanket objections on the basis of privilege); *accord U.S. ex rel. Pogue v. Diabetes Treatment Centers of America, Inc.,* 235 F.R.D. 521, 523 (D.D.C.2006) (rejecting "blanket objections on the basis of privilege" because the party "fail[ed] to file a privilege log" to "enable other parties to assess whether the privilege applies"); *Lohrenz v. Donnelly,* 187 F.R.D. 1, 6–7 (D.D.C.1999) (same).

Here, Powell has made all of her jurisdictional discovery responses subject to a boilerplate privilege objection. *See* Ex. 2, General Objection No. 5; Ex. 3, General Objection No. 5). Powell has also invoked privilege to refuse providing responsive information across Smartmatic's discovery requests. Yet, Powell simultaneously swears that she had *no relationship* that would justify a privilege assertion. *See* Ex. 3, Nos. 6 (averring that Powell "did not join the TRUMP CAMPAIGN" and had "no written or verbal agreements of engagement with either DONALD TRUMP or the TRUMP CAMPAIGN") *and* 7 (averring that "Powell was not a member of the legal team for the TRUMP CAMPAIGN"). Of course, Powell contradicted those averments in her testimony before the January 6th Committee. *See* Ex. 1 at 17:19–22 ("Q. And did you have a relationship with the President? A. Yes. Q. How did you know President Trump? A. I think that's attorney-client privileged.").

No matter the forum, Powell says what she believes will get her off the hook at that moment in time. This time, she has both invoked privilege to withhold responsive information and waived such privilege by (a) failing to provide a privilege log, (b) making blanket, boilerplate privilege objections, and (c) disavowing any attorney-client relationship

with former President Trump or his campaign. Powell's privilege objections should overruled, or at least she must provide a privilege log.

### D.     The Court Must Compel Powell to Appear for a Deposition.

The Court should order Powell to sit for a deposition after she completes her production of responsive documents and information. A party taking jurisdictional discovery "is entitled to a *fair opportunity*" to examine the Court's "assertion of adjudicatory authority." *Crane v. Carr*, 814 F.2d 758, 764 (D.C. Cir. 1987); *accord Urquhart-Bradley v. Mobley*, 964 F.3d 36, 48–49 (D.C. Cir. 2020) (remanding "to grant jurisdictional discovery to permit development of the record" because the plaintiff was "entitled to jurisdictional discovery *to flesh out the full picture* of [the defendant's] contacts with the District of Columbia"); *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351–52 (D.C. Cir. 2000) (holding that "[j]urisdictional discovery *will help to sort out*" the plaintiff's alleged theories of personal jurisdiction and "*present new* facts to bolster" them); *cf. Diamond Chem. Co. v. Atofina Chem*s., Inc., 268 F.Supp.2d 1, 15 (D.D.C.2003) (noting that "[t]his Circuit's standard for permitting jurisdictional discovery is quite liberal").

Here, Smartmatic would be materially impaired in conducting jurisdictional discovery without a deposition. Smartmatic needs a deposition of Powell to examine: the averments she made in her declaration; her prior testimony about her contacts with the District; and the documents she produces. Powell's refusal to sit for a deposition is not only unjustified, but unreasonable. It is unjustified because Fed. R. Civ. P. 30 authorizes a deposition of parties. Smartmatic cannot find any instance where a court in this Circuit permitted jurisdictional discovery and barred a deposition. *Cf. Jennings v. Family Mgmt.*, 201 F.R.D. 272, 275 (D.D.C. 2001) (holding that a "complete prohibition of a deposition [is] an 'extraordinary measure' which should be resorted to only in rare occasions"). Powell's refusal is unreasonable because

Smartmatic is willing to depose her near her residence in Texas, rather than compel her to travel to D.C. Powell's refusal despite this accommodation is obstructive. Smartmatic thus requests an order directing Powell to appear for a deposition upon reasonable notice pursuant to FRCP 30(b).

## CONCLUSION

Defendant Sidney Powell was a primary participant in a defamation campaign targeting Smartmatic. During her appearances on Fox News, including three she concedes were in the District, Ms. Powell told billions of people across the world that Smartmatic: had rigged the 2020 election; had rigged elections in other countries; and existed for the sole purpose of rigging elections. Everything Ms. Powell said was a lie. She is now trying to evade accountability by challenging this Court's jurisdiction for some, but not all, of her statements. At that same time, she is attempting to choke off the information necessary to examine her contacts with the District. Powell cannot have it both ways. She must either consent to the Court's jurisdiction or provide the discovery Smartmatic needs to inform the Court's inquiry under D.C. CODE § 13-423.

Dated:  September 1, 2023

Respectfully submitted,

*/s/  J. Erik Connolly*

J. Erik Connolly
   D.C. Bar No. IL0099
   Email: econnolly@beneschlaw.com
Nicole E. Wrigley
   D.C. Bar No. IL0101
   Email: nwrigley@beneschlaw.com
Lee B. Muench (*admitted pro hac vice*)
   Illinois ARDC No. 6305846
   Email: lmuench@beneschlaw.com

BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: 312.212.4949

*Attorneys for the Plaintiffs Smartmatic USA*
*Corp., Smartmatic International Holding*
*B.V., and SGO Corporation Limited*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of September, 2023, Smartmatic's Memorandum in Support of Its Motion to Compel Jurisdictional Discovery was filed with the Clerk of the Court using the CM/ECF filing system, which I understand to have served counsel for the parties.


Dated:  September 1, 2023                       _/s/  Lee B. Muench_                              
                                                Lee B. Muench