**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

SMARTMATIC USA CORP.,  et al.,       )
                                             )
       Plaintiffs,                  )
                                             )     No. 1: 21-cv-02995-CJN
       v.                       )
                                             )
SIDNEY POWELL,                    )
                                           )
       Defendant.                 )

**OPPOSITION OF DEFENDANT SIDNEY POWELL
TO MOTION TO COMPEL**

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

BACKGROUND ..................................................................................................2

ARGUMENT........................................................................................................4

I.      THE MOTION SHOULD BE DENIED AS MERIT DISCOVERY.......................4

II.     SMARTMATIC'S MOTION FOR DISCOVERY UNDER § 13-423(a)(4)
        SHOULD BE DENIED BECAUSE THERE IS NO
        INJURY IN THE DISTRICT .................................................................6

III.    SMARTMATIC'S MOTION FOR DISCOVERY UNDER § 13-423(a)(1)
        SHOULD BE DENIED BECAUSE IT IS NOT SPECIFICALLY
        TAILORED ...........................................................................................8

        A.      Ms. Powell's media appearances conducted in the District.................. 11

        B.      Ms. Powell's hotel stays in the District…………………………………11

        C.      Donation solicitations to District residents…………………………..12

        D.      Ms. Powell's travel to the District  …………………………………13

        E.      The Cases cited by Smartmatic are inapposite…………………………15

IV.     MS. POWELL'S DEPOSITION S UNNECESSARY…………………………… 22

V.      THERE IS NO PENDENT JURISDICTION………………………………………23

VI.     CONCLUSION………………………………………………………………24

## <u>TABLE OF AUTHORITIES</u>

*Art Metal-U.S.A., Inc. v. United States*,
 753 F.2d 1151 (D.C. Cir. 1985) ................................................................................. 7

*Associated Producers, Ltd. v. Vanderbilt University*,
 76 F. Supp. 3d 154 (D.D.C. 2014) ...................................................................... 15, 16

*Baptist Mem'l Hosp. v. Johnson*,
 603 F. Supp. 2d 40 (D.D.C. 2009) ......................................................................... 22

*Barone v. Rich Bros. Interstate Display Fireworks Co*.,
 25 F.3d 610 (8th Cir.1994)................................................................................... 19

*Bristol–Myers Squibb Co. v. Superior Court of California, San Francisco C'ty*,
 137 S.Ct. 1773 (2017) .......................................................................................... 10

*Cheyenne Arapaho Tribes of Oklahoma v. United States*,
 558 F.3d 592 (D.C. Cir. 2009) ............................................................................. 22

*City of Moundridge v. Exxon Mobil Corp.*,
 244 F.R.D. 10 (D.D.C. 2007).................................................................................. 4

*CJS Sols. Grp., LLC v. Tokarz*,
 2021 WL 848159 (M.D. Fla. Mar. 5, 2021)............................................................ 8

*Coal. for Mercury–Free Drugs v. Sebelius*,
 725 F. Supp. 2d 1 (D.D.C. 2010) ........................................................................... 4

*Cockrum v. Donald J. Trump for President, Inc.*,
 319 F. Supp. 3d 158 (D.D.C. 2018) ....................................................................... 4

*Env't Mfg. Sols., LLC v. Fluid Grp., Ltd.*,
 2018 WL 3635112 (M.D. Fla. May 9, 2018) .......................................................... 7

*Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.*,
 638 F. Supp. 2d 1 (D.D.C. 2009) ........................................................................... 7

*FC Inv. Group LC v. IFX Mkts., Ltd.*,
 529 F.3d 1087............................................................................................................ 17

*Gibbons & Co., Inc. v. Roskamp Inst.*,
 2006 WL 2506646 (D.D.C. Aug. 28, 2006)............................................................ 17

*IMAPizza, LLC v. At Pizza Ltd.*,
 334 F. Supp. 3d 95 (D.D.C. 2018) ..................................................................... 9, 17

*Kaspersky Lab, Inc. v. United States Dep't of Homeland Sec.*,
909 F.3d 446 (D.C. Cir. 2018) ................................................. 7

*Livnat v. Palestinian Auth.*,
851 F.3d 45 (D.C. Cir. 2017) ................................................. 22

*Manifold v. Wolf Coach, Inc.*,
231 F. Supp. 2d 58 (D.D.C. 2002) ......................................... 21

*Med. Sols., Inc. v. C Change Surgical LLC*,
468 F. Supp. 2d 130 (D.D.C. 2006) ............................... 11, 22

*Mouzavires v. Baxter*,
434 A.2d 988 (D.C.1981) ..................................................... 19

*Nat'l R.R. Passenger Corp. v. R. & R Visual, Inc.*,
2007 WL 2071652 (D.D.C. July 19, 2007) ........................... 24

*NBC-USA Housing, Inc. Twenty-Six v. Donavan*,
741 F. Supp. 2d 55 (D.D.C. 2010) .......................................... 4

*Oetiker v. Jurid Werke, G.m.b.H*,
556 F.2d 1 (D.C. Cir. 1977) ................................................. 23

*Quality Air Servs., L.L.C. v. Milwaukee Valve Co.*,
567 F. Supp. 2d 96 (D.D.C. 2008) .................................. 18, 19

*Reuber v. United States*,
750 F.2d 1039 (D.C. Cir. 1984) .............................................. 7

*Shoppers Food Warehouse v. Moreno*,
746 A.2d 320 (D.C. 2000) .................................................... 20

*Slinger Mfg. Co. v. Nemak, S.A.*,
2008 WL 4425889 (E.D. Wis. Sept. 24, 2008) ...................... 24

*Stelax Indus., Ltd. v. Donahue*,
2004 WL 733844 (N.D. Tex. Mar. 25, 2004) ........................ 24

*Thompson Hine, LLP v. Taieb*,
734 F.3d 1187 (D.C. Cir. 2013) ........................................... 16

*Walden v. Fiore*,
134 S.Ct. 1115 (2014) ......................................................... 10

iii

Statutes

D.C. Code § 13-423 ................................................................................................... *passim*

Rules

Fed. R. Civ. Pro. 4............................................................................................................ 23

## INTRODUCTION

From its opening, Smartmatic asserts that Ms. Powell "selected the District of Columbia as the epicenter of her disinformation campaign" and that "*[t]o execute this campaign*, Powell traveled to the District of Columbia, stayed in hotels in the District, conducted media appearances in the District in which she defamed Smartmatic, and solicited donations from District residents to finance her efforts to undermine the election." ECF 42 at 2. Smartmatic explicitly and repeatedly bases its lawsuit on this assertion. Smartmatic marries it with claims of personal jurisdiction under D.C. Code §§ 13-423(a)(1) and (a)(4) because Ms. Powell "transacted business" in the District through her hotel stays, media appearances, donations, and travel.

Accordingly, under the Court's May 23, 2023 Order, discovery should have been tailored to these purported "business transactions." They were not and still are not. Smartmatic still moves for full responses to its unmodified discovery. ECF 42, 42-11. It seeks comprehensive merit discovery, asking for all communications with alleged co-conspirators, all productions of documents in other litigations, tax returns, non-party corporate documents, Ms. Powell's testimony on any topic, and information relating to how Ms. Powell's present defense is being paid – just to illustrate a few examples. This is beyond a fishing expedition. It's an armada of fishermen. The law prohibits it, and Smartmatic's motion should be denied.

Smartmatic's motion to compel should be denied for other reasons, too.

- § 13-432(a)(4) of the District's longarm statute does not apply because there must be *tortious injury within* the District. Because Smartmatic is a Florida company with *no operations in the District*, it is impossible for Smartmatic to suffer injury here.

- Smartmatic has waived its opportunity to attempt to establish jurisdiction under § 13-432(a)(1) of the District's longarm statute ("transacting business") because the cases cited by Smartmatic are inapposite and its discovery requests are not narrowly tailored.

- Ms. Powell's J6 deposition transcript prevents Smartmatic's need to depose Ms. Powell, alleviates its failure to craft tailored discovery, and provides Smartmatic with sufficient information upon which to amend its jurisdictional allegations, if appropriate.

- Pendent jurisdiction does not exist because this case does not involve a federal question. ***Not a single case cited by Smartmatic*** says otherwise.

Finally, Smartmatic's motion is rife with factual inaccuracies, some of which appear purposefully misleading. The remainder of Smartmatic's motion is distraction.

## BACKGROUND

Smartmatic sued Ms. Powell for defamation for statements made on "nationally televised appearances on Fox News" that Smartmatic rigged the 2020 presidential election. ECF 42-1 at 1. According to Smartmatic's complaint, Ms. Powell "selected the District of Columbia as the epicenter of her disinformation campaign," and that "[t]o execute this campaign, Powell traveled to the District of Columbia, stayed in hotels in the District, conducted media appearances in the District in which she defamed Smartmatic, and solicited donations from District residents to finance her efforts to undermine the election." *Id.* at 2 (citing ECF 1). These assertions are both the complaint's and the motion's sole basis of personal jurisdiction.

Ms. Powell moved to dismiss on multiple grounds, including lack of personal jurisdiction. Contrary to Smartmatic's claim, the District was not an "epicenter." Except for very limited instances conceded by Ms. Powell, Ms. Powell did not travel to the District in connection with her statements about Smartmatic, she did not conduct media appearances in the District, she did not stay at District hotels, and she did not target District residents for donations. ECF 23-2 at 7, 8. Following briefing, this Court held that "for its claims based on statements Powell made on November 14, 15, and 16, and during the interview on November 19, Smartmatic must establish

claim-specific forum contacts." ECF 38 at 6, 7.[1] The Court permitted Smartmatic either to amend its complaint or to serve limited discovery "on the question of Powell's contacts with the District with respect to her allegedly defamatory statements[.]" ECF 37. Smartmatic chose the latter.

Smartmatic should have served discovery tailored to the District contacts it alleged Ms. Powell had to execute her purported campaign. Instead, Smartmatic propounded comprehensive merit discovery. The interrogatories and document requests were not limited to or directed at Ms. Powell's alleged contacts with the District. Nor were they limited to "her campaign." Nor did they involve the period of her alleged "campaign."[2] Many requests matched third-party discovery Smartmatic has sought to serve on Ms. Powell elsewhere. (Ex. C.) Ms. Powell propounded responses and objections and served documents. ECF 42-4, 42-5.

On August 16, 2023, the Court authorized Smartmatic to move to compel, but instructed Smartmatic to provide "quite express and clear" reasoning as to what discovery it exactly sought, the theory of personal jurisdiction it would support, and clear legal authority that supported its position. These instructions were emphasized and explicit. Smartmatic filed its motion, again asserting that Ms. Powell chose the District as an "epicenter" through her travel to the District, media appearances there, use of its hotels, and solicitation of donations from District residents. *E.g.,* ECF 42-1 at 2. Yet, it continues to seek every fish in the sea by seeking to compel its discovery, untailored and unmodified.

---

[1] Ms. Powell conceded that she was in the District during the RNC press conference (November 19) and during her interview on the *Lou Dobbs Tonight* (December 10).  She was in South Carolina much of November and into December.

[2] For example, the default "relevant" period was from "January 1, 2020 *through the present*." ECF 42-4, 42-5, Instruction 1.

3

## ARGUMENT

### I.     THE MOTION SHOULD BE DENIED AS MERIT DISCOVERY

Despite this Court's warning, Smartmatic continues to insist on comprehensive, broad-based merit discovery. ECF 42, 42-11. For this reason, its motion should be denied.

"To obtain jurisdictional discovery a plaintiff must request discovery in a detailed manner[.]" *Cockrum v. Donald J. Trump for President, Inc.*, 319 F. Supp. 3d 158, 187 (D.D.C. 2018) (quoting *City of Moundridge v. Exxon Mobil Corp.*, 244 F.R.D. 10, 14 (D.D.C. 2007)). "A plaintiff seeking jurisdictional discovery must explain in detail what discovery she wishes to conduct and what results she anticipates it would produce." *Id.* at 188 (citing *NBC-USA Housing, Inc. Twenty-Six v. Donavan*, 741 F. Supp. 2d 55, 60-61 (D.D.C. 2010) ("a plaintiff must make a detailed showing of what discovery it wishes to conduct and what results it thinks such discovery would produce")); *see also Coal. for Mercury–Free Drugs v. Sebelius*, 725 F. Supp. 2d 1, 5 (D.D.C. 2010), *aff'd*, 671 F.3d 1275 (D.C. Cir. 2012) ("The Court also concludes that the plaintiffs' request for jurisdictional discovery was not narrowly tailored to produce information relevant to the issue of standing and thus ordering jurisdiction discovery is not warranted."). Disguising merit discovery in the sheepskin of jurisdictional discovery, as Smartmatic does here, is inappropriate. This Court's decision in *Cockrum* is illustrative.

*Cockrum* involved conspiracy claims against the Trump Campaign and Roger Stone in connection with unidentified Russian agents, WikiLeaks, and published hacked DNC emails. Plaintiffs, Democratic donors, moved for jurisdictional discovery. Because plaintiffs failed to describe the discovery it sought in a "detailed manner," or narrowly tailor its request, this Court denied the motion. *Id.* at 188.

> ***Plaintiffs have failed to specifically tailor their discovery requests to jurisdictional matters.*** [citations omitted.] Instead, they are

4

seeking merits discovery. Plaintiffs want to serve defendants with discovery requests for material related to "Relevant Forum Contact" defined as:

> any in-person meeting, telephone conversation, or other communication, including electronic communications, conducted in the District of Columbia involving any Defendant, or between any Defendant and any Russian or Russian agent or any agent of WikiLeaks, in which any form of assistance by Russia or Russian agents to the Trump Campaign was discussed or facilitated, including but not limited to any discussions of the DNC emails, publication of the DNC emails by WikiLeaks, or the resulting impact on the Clinton campaign.

> * * *

> [Plaintiffs also request] all contacts in the District of Columbia (1) between the Defendants, (2) between the Defendants and Russians or Russian agents or agents of WikiLeaks, or (3) attended by Russians, Russian agents, agents of WikiLeaks, or others acting in concert with them, in which any form of assistance by Russians or Russian agents to the Trump Campaign was discussed or facilitated including but not limited to any discussions of the DNC emails, publication of the DNC emails by WikiLeaks, or the resulting impact on the Clinton campaign.

*Id*. at 188-189 (emphasis added). Denying plaintiffs' motion, this Court held that "[t]hese requests do not constitute the required detailed showing of what discovery [plaintiffs] wish to conduct or what result [plaintiffs] think such discovery would produce." *Id.*

Here, Smartmatic's requests are similarly wide-ranging, comprehensive merit discovery. It includes ***all communications*** with alleged co-conspirators, ***all discovery produced in*** the ***Dominion*** litigation, the ***Coomer*** litigation, ***all documents*** provided to the ***J6 Commission***, ***tax returns***, ***corporate documents*** for non-parties, Ms. Powell's testimony ***on any topic*** related to the presidential election in other litigation, including ***her disciplinary actions***, and information relating

5

to the **funding of Ms. Powell's present defense** and **other litigation matters**.[3] They involve time periods beyond Ms. Powell's November-December 2020 "campaign," including documents from "January 1, 2020 **through the present**." (Ex. A and B.) In fact, many of the requests matched third-party discovery Smartmatic has sought to serve on Ms. Powell. (Ex. C.)

While at times in its argument, Smartmatic concedes that its jurisdictional discovery should be narrowed, in the end, Smartmatic still demands full responses to its unmodified, untailored discovery. ECF 42, 42-11. Accordingly, Smartmatic's motion should be denied.

## II.      SMARTMATIC'S MOTION FOR DISCOVERY UNDER § 13-423(a)(4) SHOULD BE DENIED BECAUSE THERE IS NO INJURY IN THE DISTRICT

Discovery to show jurisdiction under D.C. Code § 13-423(a)(4) should be denied because Smartmatic cannot show injury in the District.

The District's long arm statute provides in relevant part:

> (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's —
>
> * * *
>
> (4) causing tortious injury **in the District of Columbia** by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of

---

[3] A non-exhaustive list of the discovery sought includes all of Ms. Powell's devices, "all sources of information" of her alleged defamatory statements, Ms. Powell's relationship with the Trump Campaign (located in Virginia), all documents relating to Dominion, all document produced in the *Dominion* and *Coomer* litigations (on any topic), and to the J6 Commission (same), all communications with Giuliani, all communications with Trump and government officials, all communications relating to the presidential election (from September 1, 2020 *to the present*); all documents relating to Smartmatic, all documents relating to any news entity, all documents related to the funding of Ms. Powell's defense, all testimony given by Ms. Powell on any topic in any forum, Ms. Powell's ownership/interest/relationship with DTR, Ms. Powell's ownership and interest in her law firm, DTR's and Powell PC's tax returns documents relating to their banks. (Ex A, Interrogatories 1, 4, 6-7, 11-15; Ex. B, Requests 1-6, 14, 16-23, 26-39.)

6

conduct, or derives substantial revenue from goods used or
consumed, or services rendered, in the District of Columbia; …

D.C. Code § 13-423(a)(4) (emphasis added). This section requires tortious injury "*in* the District."
*Reuber v. United States*, 750 F.2d 1039, 1049-50, n.12 (D.C. Cir. 1984) (language "clearly requires
more than an 'act' that causes harm in the District; it requires that both the 'act' and the injury
occur in the District"). Because Smartmatic is neither incorporated in the District nor has its
principal place of business here, it cannot show injury here.

A company cannot suffer cognizable intangible reputational harm; alleged harm can ***only
take the form of monetary loss***. *Kaspersky Lab, Inc. v. United States Dep't of Homeland Sec.*, 909
F.3d 446, 461–62 (D.C. Cir. 2018) (injury to corporations must take the form of monetary loss);
*Art Metal-U.S.A., Inc. v. United States*, 753 F.2d 1151, 1156 (D.C. Cir. 1985) ("a corporation suing
for defamation … may only recover actual damages in the form of lost profits"). ***A company can
only show monetary loss where it is located.*** *Exponential Biotherapies, Inc. v. Houthoff Buruma
N.V.*, 638 F. Supp. 2d 1, 10 (D.D.C. 2009); *Env't Mfg. Sols., LLC v. Fluid Grp., Ltd.*, 2018 WL
3635112, at *5 (M.D. Fla. May 9, 2018), *report and recommendation adopted sub nom*., *Env't
Mfg. Sols., LLC v. Fluid Energy Grp., Ltd.*, 2018 WL 6264836 (M.D. Fla. Nov. 30, 2018). Because
Smartmatic is a Delaware company with a Florida principal place of business. ***Smartmatic is not
located in the District*** to suffer injury here.

In *Exponential Biotherapies*, which is directly on-point, this Court dismissed plaintiff's
claims for lack of personal jurisdiction because the plaintiff, a Delaware company with its principal
place of business in Virginia, could not show it was "injured in D.C. for the purpose of § 13–
423(a)(4)." 638 F. Supp. 2d at 10 (holding that as Delaware company with Virginia principal place
of business, plaintiff "could have only suffered its financial losses, if any, in Virginia, not in
D.C."). Similarly, in *Env't Mfg. Sols.,* and in factual contrast but legal concurrence to *Exponential*

*Biotherapies*, the Florida federal court held jurisdiction existed under a mirror image longarm statute where the defendant had engaged in misconduct outside of Florida, but the plaintiff – a Florida company – was injured in Florida. The dispositive difference between *Env't Mfg. Sols.* and here is that the *Env't Mfg. Sols* plaintiff filed suit in the venue where it was incorporated. *Env't Mfg. Sols.*, 2018 WL 3635112 at *5 (jurisdiction under Fla. Stat. § 48.193(1)(a)(1) met because plaintiff, a Florida LLC with its principal place of business there, deemed to suffer tortious injury in Florida); *see also CJS Sols. Grp., LLC v. Tokarz,* 2021 WL 848159, at *9 (M.D. Fla. Mar. 5, 2021) (holding injury occurred in Florida where plaintiff company was organized and had principal place of business in Florida).

Smartmatic admits that none of the plaintiffs are incorporated in the District or have their principal place of business there. ECF 1 ¶¶ 1-4. It also admits that its only U.S. operations, for that matter, were in Los Angeles County. *Id.* As a matter of law, it cannot have suffered tortious injury in the District to satisfy § 13-423(a)(4). Accordingly, Smartmatic's motion to compel discovery to demonstrate jurisdiction under § 13-423(a)(4) should be denied.

## III.    SMARTMATIC'S MOTION FOR DISCOVERY UNDER § 13-423(a)(1) SHOULD BE DENIED BECAUSE IT IS NOT SPECIFICALLY TAILORED

Smartmatic's motion for discovery under D.C. Code § 13-423(a)(1) should be denied because it is not specifically tailored to the contours of Smartmatic's case. In the alternative, any discovery permitted should be tailored to the business transactions identified by Smartmatic as having been undertaken by Ms. Powell to "execute her campaign" against it, specifically, Ms. Powell's hotel stays, media appearances, donations and travel connected to the District for the purpose of her alleged "campaign."

To demonstrate personal jurisdiction, Smartmatic must show that jurisdiction is proper under **both** (1) the District's longarm statute and (2) the Due Process Clause. *IMAPizza, LLC v. At Pizza Ltd.,* 334 F. Supp. 3d 95, 110 (D.D.C. 2018). The longarm statute states in relevant part:

> (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's —
>
> > (1) ***transacting any business in*** the District of Columbia;
>
> * * *
>
> (b) When jurisdiction over a person is based solely upon this section***, only a claim for relief arising from acts enumerated in this section*** may be asserted against him.

D.C. Code § 13-423(a)(1), (b) (emphasis added). Thus, Smartmatic must show that Ms. Powell engaged in business transactions from which its defamation claims arose, and then show a substantial connection with the District under Due Process. *IMAPizza*, 334 F. Supp. 3d at 112-13.

Smartmatic must first make a threshold showing that Ms. Powell "has purposefully engaged in some type of *commercial or business-related activity* directed at District residents." *IMAPizza*, 334 F. Supp. 3d at 111 (emphasis in original). This excludes personal activities and professional activities. *Id.* "Indeed, not even 'the *in-state* commission of a tort is defined as 'doing business'" to invoke the statute. *Id.* Smartmatic must then show that its defamation claims arose from Ms. Powell's "business transactions" identified in its complaint. It *also* must show a substantial nexus between Ms. Powell's business transactions, its claims, and the District. *Id.*

Smartmatic concedes "it is not enough" to show that Ms. Powell engaged in business transactions in the District, ECF 42-1 at 10, but the "discernable relationship" test it urges does not satisfy Due Process. *Cockrum*, 319 F. Supp. 3d at 175 ("A plaintiff must show ***a more exacting nexus*** between a defendant's contacts and the plaintiff's claims to support a finding of specific jurisdiction.") (emphasis added)). "Specific personal jurisdiction must focus on *defendants'*

contacts with the forum *related* to the specific claims raised in plaintiffs' complaint." *Cockrum*, 319 F. Supp. 3d at 175 (emphasis in original); *Bristol–Myers Squibb Co. v. Superior Court of California, San Francisco C'ty*, 137 S.Ct. 1773, 1780 (2017) ("Specific jurisdiction requires that a plaintiff's suit arise out of or relate 'to the defendant's contacts with the forum.'"). "Holding otherwise would eviscerate the due process limitations on specific jurisdiction." *Id.* at 177 ("plaintiffs fail to distinguish defendants' contacts with D.C.—such as Campaign-related activity—from suit-related contacts, and thereby they impermissibly 'blur[ ] the distinction between specific and general jurisdiction.'").

Thus, to find personal jurisdiction, Ms. Powell's suit-related conduct must be "business transactions." In addition, such "suit-related conduct must create a substantial connection with the District," under Due Process, and the "contours of plaintiffs' claims dictate what constitutes suit-related conduct" for the Court to examine. *Cockrum*, 319 F. Supp. 3d at 175 (quoting *Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014)). These required guardrails are specific, and they are ignored by Smartmatic. They require  jurisdictional discovery to be tailored to the contours of the suit-related conduct, which Smartmatic repeatedly identifies as: "to execute [her] campaign," "Powell [i] ***traveled to the District of Columbia***, [ii] ***stayed in hotels in the District***, [iii] ***conducted media appearances in the District*** in which she defamed Smartmatic, and [iv] ***solicited donations from District residents*** to finance her efforts to undermine the election." ECF 42-2 at 2 (citing paragraphs throughout complaint, ECF 1). To the extent the Court does not deny Smartmatic's motion to compel – and it should – respectfully, any discovery permitted should be limited to this suit-related conduct alleged to execute Ms. Powell's "campaign" between November and early December, 2020.

**A. Ms. Powell's media appearances conducted in the District.**

Smartmatic alleges that Ms. Powell executed her campaign against Smartmatic by making media appearances in the District. Ms. Powell concedes that she was in the District during her November 19, 2020 RNC appearance and during the December 10, 2020 *Lou Dobbs Tonight* interview while she was at the Trump Hotel.[4]

Ms. Powell produced documents showing where she was located when she made the media appearances identified by Smartmatic. Ms. Powell also has produced a sworn declaration and sworn interrogatory responses. A deposition of Ms. Powell and additional discovery regarding Ms. Powell's media appearances would show nothing new with respect to her location or even whether the media appearances constitute "transacting business" in the District for purposes of the longarm statute. *Med. Sols., Inc. v. C Change Surgical LLC*, 468 F. Supp. 2d 130, 135 (D.D.C. 2006), *aff'd*, 541 F.3d 1136 (Fed. Cir. 2008) (jurisdictional discovery inappropriate "[w]here there is no showing of how jurisdictional discovery would help plaintiff discover anything new"). Further discovery on Ms. Powell's media appearances should be denied.

**B. Ms. Powell's hotel stays in the District.**

Smartmatic alleges that Ms. Powell executed her campaign against Smartmatic by staying at hotels in the District. Ms. Powell has produced documents responsive to this request.

_____

[4] Smartmatic represents to the Court that Ms. Powell concedes that she was in the District for the November 19, 2020 TV interview. ECF 42-1 at 8. Smartmatic appears to cite Ms. Powell's responses to Interrogatories 8-10, which it highlighted in yellow. ECF 42-5. Those responses state that "only times Powell was in the District of Columbia in connection with her identified statements, to the best of her recollection, were the statements she made on November 19, 2020 *at the RNC* and statements she made from the Trump Hotel on the December 10, 2020 Lou Dobbs Fox broadcast." It is unclear how Smartmatic twists that response into an "additional concession."

The only District hotel Ms. Powell stayed at during her alleged "campaign" was the Trump Hotel in early December 2020. It was from the Trump Hotel that Ms. Powell  appeared on the December 10, 2020 *Lou Dobbs Tonight* show, the final statement made about Smartmatic in Smartmatic's complaint. As noted in her publicly available J6 testimony, Ms. Powell stayed at the Orient Hotel in the District the evening of the presidential election. ECF 42-3 at 39:4-12. But Ms. Powell also testified that **she later left that hotel** for the Westin in Arlington, Virginia. *E.g., id.* at 38:3-13. This was before the first statement alleged in Smartmatic's complaint. ECF 1 ¶ 84. Ms. Powell also spent time at Tomotley, South  Carolina, in November 2020 and into December, and again in Virginia after December 15, 2020. ECF 42-3 at 52:19-21.

Smartmatic represents to the Court that Ms. Powell testified she had "stayed in D.C." between November 14-16, 2020 and "set up base" in the District. ECF 42-1 at 14, 15. This is a misleading reading of Ms. Powell's J6 testimony. Ms. Powell was asked "did you set up base in Washington?," which she understood to mean to include Virginia, as is readily evident **in the next several pages** of her testimony. (*Compare* Mot. Ex. 1 at 37:18 *with id.* at 38:5-7 ("I rented a hotel suite at the Weston Hotel. I think it was the Weston in Arlington."), 39:15-16 ("I can tell you he kept showing up in my work area at the Weston, and I had to keep asking him to leave."), 40:9-10 ("Q. And Howard Kline Hendler. Were there any other attorneys working in your space or where you were working at the Weston? A.  I can't think of any others."). It is clear where Ms. Powell stayed. Further discovery of the issue, including a deposition of Ms. Powell, should be denied.

### C.  Donation solicitations to District residents.

Smartmatic alleges that Ms. Powell executed her campaign against Smartmatic by targeting District residents for donations. To illustrate the point, Smartmatic spends pages discussing a donation from Julia Fancelli, the well-known Publix heiress. (Mot. at 18-19.) It is therefore more

than a little ironic that a quick internet search shows that Ms. Fancelli is ***not*** a resident of the District.[5]

It is also reminiscent of Smartmatic's failed jurisdictional argument in the New York litigation. There, Smartmatic argued that general on-air statements were by their nature targeted to New York residents, thereby implicating personal jurisdiction, because New York residents would have heard them. The New York court disagreed, holding that Smartmatic had to show specific statements specifically targeting New York residents. *Smartmatic USA Corp. v. Fox Corp.*, Index No. 151136/2021, 49 (Sup. Ct., NY County 2021). For the same reasons, Smartmatic's argument should fail again. On air statements do not equal specific targeting. Nor has Smartmatic even shown that they would be "business transactions" for purposes of the longarm statute.

Subject to Ms. Powell's pending Motion for Stay and any legal rights she may have under the Constitution and District law, Ms. Powell is willing to provide documents, if any, pertaining to donations targeted from District residents during "her campaign." Smartmatic's motion to compel discovery otherwise on this topic, including a deposition of Ms. Powell, should be denied.

**D.  Ms. Powell's travel to the District.**

Smartmatic alleges that Ms. Powell executed her campaign against Smartmatic by traveling to the District. But its argument is self-contradictory.

Smartmatic emphasizes, if not wholly relies upon, the well-publicized December 18, and December 21-22, 2020 White House meetings as evidence of Ms. Powell's business travels to the District to execute "her disinformation campaign." ECF 42-3 at 49:1-13, 64:20-25, 65:1-12, 23-25, 66:1-4, 79:8-19, 104:2-17, 142:15-17. However, Smartmatic cannot rely on conduct happening

---

[5] https://en.wikipedia.org/wiki/Julie_Fancelli. Ms. Fancelli resides in Florida and Italy.

*after* Ms. Powell's alleged defamatory statements to show personal jurisdiction. *Cockrum*, 319 F. Supp. 3d at 178–79 ("Activities that occur after the injury occurred could be circumstantial evidence that conspiracies had existed, but these acts do not constitute in-forum contacts for purposes of establishing specific jurisdiction."). Therefore, events taking place *after* December 10, 2020, are inappropriate and irrelevant for personal jurisdiction. For this reason alone, the discovery should be denied.

However, Smartmatic also ignores that the December 18 meeting had nothing to do with it. ECF 42-3 at 49:1-13; 142:15-17 (meeting about "looking at the possibility, and I drafted the foreign interference findings if I remember correctly or at least had a hand in writing those, to support the use of Executive Order 13848"). Smartmatic also ignores that Ms. Powell was *excluded from White House after December 18. Id.* at 64:20-25. 65:1-12, 23-25, 66:1-4.[6] These meetings had nothing to do with Smartmatic. Even if they constituted "business transactions," they are not sufficiently connected with Smartmatic's claims to meet the requirements under § 13-423(b) and Due Process. *Cockrum*, 319 F. Supp. 3d at 178–79 ("Yet, plaintiffs do not allege anything more than that there was a March meeting at a D.C. hotel where the Trump Campaign adopted a favorable approach to Russia and an April meeting at another D.C. hotel where high-level Trump Campaign officials talked to the Russian Ambassador …. there is no indication that the two

---

[6] Smartmatic also emphasizes communications with Giuliani, but ignores that Mr. Giuliani is a New York resident, not the District, and that Ms. Powell and Giuliani didn't really talk. ECF 42-3 at 100:11-12, 22:23, 107:3, 9, 134:23-24, 135:4-6; *see also id.* at 126:9-17 (Ms. Powell knew nothing of any plan or Giuliani's discussions with Trump). It also ignores that Ms. Powell didn't speak to Trump after December 18, 2020 except for a social call check-in. *Id.* at 136:10-13; 136:17-20. While Smartmatic also relies on alleged meetings with the Trump Campaign, it ignores that the Trump Campaign was headquartered in Virginia, *not* the District, and that Ms. Powell was unwelcome there. *Id.* at 40:18-20, 41:3-12, 53:6-7, 53:11-13, 19:20.

meetings that occurred in the District related in any way to the emails or to discussions about working with Russian agents to publish those [Clinton] emails").

Meetings with members of Congress are beyond the scope of discovery because (i) they involved their potential involvement as plaintiffs in the election litigation Ms. Powell filed, making such communications privileged, and (ii) those lawsuits *are not part of Smartmatic's claims*. ECF 42-3 58:18-25, 12:23-137. Smartmatic's motion should be denied.

### E.  The Cases cited by Smartmatic are inapposite.

Smartmatic's argument misstates this Court's holding in *Associated Producers, Ltd. v. Vanderbilt University*, 76 F. Supp. 3d 154 (D.D.C. 2014). The case is inapposite. Smartmatic states that the Court "held that Defendant's agreement to…put plaintiffs out of business" and use of "her voice" by sending "allegedly defamatory emails" were "sufficient facts to establish that defendant 'transacted business' in the District" and that "plaintiff's claims arose out of the business transactions" ECF 42-1 at 16. But Smartmatic ignores the critical importance of the state citizenship of the parties and third parties involved in the alleged business transaction in a court's determination of whether the defendant "transacted business" in the District within the meaning of the longarm statute.

In *Associated Producers, Ltd.*, this Court found jurisdiction over the defendant for alleged defamatory comments made to National Geographic on the basis that she was employed as a consultant by National Geographic, National Geographic was headquartered in the District, that plaintiff had traveled to meetings at National Geographic to serve on its documentary consulting panel, and had emailed/phoned National Geographic in the District during her employment from which plaintiff's claims arose. *Associated Producers, Ltd.,* 76 F. Supp. 3d, at 164-65. This Court explained:

> Defendant Jensen was retained by National Geographic to serve as a consultant about Plaintiffs' documentary. Defendant Jensen traveled to the District of Columbia to serve on the National Geographic consulting panel. Defendant Jensen's subsequent emails were not a separate and distinct act from this consulting relationship, but part of a single course of conduct with Defendant Jensen's other consulting activities. Indeed, as Plaintiffs allege, "Defendant Jensen agreed to ... put [Plaintiffs] out of business by using ... her voice as a consultant to National Geographic" and, thus, sent her allegedly defamatory emails to National Geographic officials and "*other National Geographic panel members.*"

*Id.* at 164 (emphasis in original).

Here, in contrast, Ms. Powell was not hired or retained by anyone located in the District. She was not retained by the White House or part of Trump's legal team. *E.g.,* ECF 42-5, Interrogatory 6-7.[7] The Trump Campaign is in Virginia. ECF 42-3 at 53:6-10. It was the employment relationship with a District company out of which the claims arose that created the requisite "substantial" nexus with the District in *Associate Producers* to allow jurisdiction under section 13-423(a)(1). *Id.*[8] No such relationship existed here.

_____

[7] While Smartmatic also believes it is highly relevant to its motion to compel that Ms. Powell met with Rudy Giuliani and the Trump Campaign, neither is a resident of the District. Therefore, such allegation does not further Smartmatic's argument under *Associated Producers*. It is telling that Smartmatic ignores the close relationship that defendant had with the District stemming from her contract with National Geographic and out of which the lawsuit arose. *Associated Producers, LTD v. Vanderbilt Univ.,* 76 F. Supp. 3d 154, 162–67 (D.D.C. 2014).

[8] This Court noted in *Associated Producers* that similar conduct without the connection created by employment was insufficient to satisfy Due Process for personal jurisdiction under § 13-423(a)(1). *Id.* at 165 ("Defendants are correct that email and telephone communications sent into the District of Columbia are not sufficient to constitute business transactions in themselves, even if they are made pursuant to an underlying contract between a resident business and a nonresident Defendant.") (citing *Thompson Hine, LLP v. Taieb,* 734 F.3d 1187, 1192 (D.C. Cir. 2013) (finding

16

Smartmatic's repeated reliance on *IMAPizza, LLC v. At Pizza, Ltd*., 334 F. Supp. 3d 95, 111 (D.D.C. 2018) is similarly misplaced and misleading because the determinative facts of that case are omitted. Specifically, Smartmatic states that the *IMAPizza* Court found that Defendants transacted business within § 13-423(a)(1) "because their contacts within the District and 'the timing of' their trip to the District 'played a close and significant role in carrying out…their [tortious] scheme.'" ECF 42-1 at 16. This statement ignores the most significant factors in the Court's analysis – the plaintiff being a District corporation – and the Court's inherent interest in protecting its citizens and companies headquartered in the District. *Id.* at 112.

In *IMAPizza, LLC,* the owner of a pizza chain headquartered in District sued the owners of a pizza restaurant in Scotland for claims including copyright and trademark infringement. *Id.* at 105, 106. After "tour[ing] a number of &pizza locations in Washington, D.C.," the defendants allegedly "[r]ealiz[ed] the uniqueness of &pizza's restaurant chain" and decided to copy it by taking pictures, notes, *etc*. *Id.* at 106. Calling it a "close call," this Court ultimately concluded that the copying of the District restaurant in the District was enough for personal jurisdiction under the longarm statute. *Id.* at 116. This Court explained:

> When IMAPizza is given the benefit of all disputed facts and reasonable inferences, it has eked out a *prima facie* showing of personal jurisdiction. But it is unclear whether discovery will bear out all of IMAPizza's claims about Defendants' contacts with the

"at least ten emails" sent by non-resident defendant to law firm in the District retained by defendant did not establish basis for personal jurisdiction); *FC Inv. Group LC v. IFX Mkts., Ltd.,* 529 F.3d 1087, 1095n.8 (D.C. Cir. 2008) (regular telephone calls by defendant London-based broker to assist District company with investments insufficient to show personal jurisdiction); *Gibbons & Co., Inc. v. Roskamp Inst.,* 2006 WL 2506646, at *3 (D.D.C. Aug. 28, 2006) (defendant's transmission of fifty to seventy-five emails and seventy-five phone calls to District company with whom it had lobbying contract did "not constitute a deliberate and voluntary association with the District that rises to the level of transacting business within the District" to satisfy longarm statute).

> District of Columbia, or if it could prevail at an evidentiary hearing
> on the matter. Moreover, Defendants may ultimately be able to show
> that jurisdiction is unreasonable despite their contacts with the
> District of Columbia.

*Id.*

Here, the "mission to copy a DC restaurant" is not even factually close to the alleged defamatory statements Ms. Powell made outside of the District.[9] Nor is the "detailed research" conducted in the District by the alleged copyright infringer in *IMAPizza* analogous to her alleged "detailed research" conducted in the District. The research conducted by the alleged copyright infringer in *IMAPizza* pertained to the intellectual property rights of a District corporation.[10] The instant case is clearly distinguishable because Smartmatic *is not* a District corporation, but a Delaware corporation headquartered in Florida. Ms. Powell is not a citizen of a foreign country but rather a citizen of Texas, therefore, an alternative suitable jurisdiction for Smartmatic's case exists.

Similarly, Smartmatic's reliance on *Quality Air Servs., L.L.C. v. Milwaukee Valve Co.*, 567 F. Supp. 2d 96 (D.D.C. 2008) is misplaced. Smartmatic cites *Quality Air* for the proposition that a "single act may be sufficient to constitute transacting business within D.C." ECF 42-1 at 10. This is taken out of context. In *Quality Air*, plaintiff company was in the business of installing and repairing HVAC units and brought a products liability against the defendant manufacturer of

---

[9] Importantly, this Court previously decided that the issue of jurisdictional discovery is limited to the statements which Ms. Powell maintains were made outside of the District.

[10] That is what tethered the defendant's research activities to transacting business in the District. Here, research Powell is alleged to have conducted in the District pertained to elections not in the District, but in battleground states such as Michigan, Arizona, and Georgia. In addition, the *IMAPizza* Court reasoned that because the alleged infringer was located in a foreign country, there was "no alternative suitable jurisdiction" in the United States in which plaintiff could have brought its suit. *IMAPizza, LLC,* 334 F. Supp. 3d. at 111.

valves used in the HVAC systems. 567 F. Supp. 2d at 98. The defendant argued that it had not "transacted business" in the District because it was a Wisconsin company that did not affirmatively advertise its products there. While the Court noted that even " 'a single act may be sufficient to constitute transacting business,' so long as that contact is 'voluntary and deliberate, rather than fortuitous'" citing *Jackson*, 944 A.2d at 1093 (quoting *Mouzavires v. Baxter*, 434 A.2d 988, 992,995 (D.C.1981)) (internal citation omitted), this was not the basis of its decision. The Court concluded that although defendant had no physical presence in the District or direct advertising specifically at the District, the defendant had actively targeted the district for ten years. The defendant's network of authorized distributors included companies both in Maryland and Virginia which indisputably targeted, and were known by defendant to target, contractors like plaintiff who worked in the District. *Id.* at 100. This was clear, and defendant knew it was accessing and benefiting from the District market via sales to Virginia and Maryland distributors, because it complied with distributors' ***regular requests over the last ten years that it ship its products directly to job sites in the District***. *Id.* (citing *Barone v. Rich Bros. Interstate Display Fireworks Co*., 25 F.3d 610, 613–14 (8th Cir.1994) (personal jurisdiction proper over foreign defendant that made sales in forum through regional distributor)). Given defendant's awareness and encouragement of its distributors' sales into the District, this Court concluded that it "should reasonably have been on notice that it could be 'haled into court' here." *Id*.

Smartmatic's attempt to equate *Quality Air* and the instant case to the general proposition that a "single act may be sufficient to constitute transacting business within D.C." is misleading. ECF 42-1 at 10. This is not what *Quality Air* stands for. Moreover, here, any injury was not in the District. *See supra.* Ms. Powell testified that she was not in the District. *E.g.,* ECF 42-3 at 38:3-9; ECF 42-7 at 2. She had no decade-long contractual relationship with a network of distributors or

similar entities like the defendant *Quality Air*. Her statements were, according to Smartmatic's complaint, directed to billions of people worldwide. ECF 1 ¶ 118 ("Fox News ensured that that *billions* of people across the world heard, read, and saw the disinformation about Smartmatic.") (emphasis in original); *see also* ECF 42-1 at 26 ("Ms. Powell told billions of people across the world."); *id.* at 11 ("to establish jurisdiction under § 13-423(a)(1) here, Smartmatic seeks discovery from Powell concerning her role in disinformation campaign that *she and her co-conspirators coordinated and executed to convince millions of people* that Smartmatic rigged the 2020 U.S. presidential election.") (emphasis added). Ms. Powell also understands from other Smartmatic litigation that Smartmatic is alleging damages happening on a worldwide basis.

Smartmatic's reliance on *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320 (D.C. 2000), is also misplaced. In *Shoppers Food,* the court upheld a trial court's judgment that personal jurisdiction existed against a foreign grocery store chain for a personal injury case in which a District resident was injured. *Id.* at 323. The court reasoned that the defendant store chain, through its extensive advertising in *The Washington Post*, purposefully solicited District residents as customers for its nearby Maryland and Virginia locations  and thus transacted business in the District. *Id.* The ads for Shoppers' Maryland and Virginia stores contained pictures and prices of produce and other items (plaintiff slipped and fell on produce). *Id.* The Maryland Shoppers store (Takoma Park) where plaintiff was injured was within two miles of plaintiff's District home. *Id.*

In contrast, here, no District resident or entity has alleged the injury at issue. Instead, Smartmatic is a Delaware company headquartered in Florida. Nor is there advertising that directly targeted District residents. Instead, according to Smartmatic, Ms. Powell made the alleged defamatory statements to "millions of Americans" and "billions" of people worldwide via

national news broadcasts. ECF 42-1 at 2, 26; ECF 1 ¶ 118. The alleged statements *also* involved elections held in various battleground states, not the District.

Smartmatic's reliance on *Manifold v. Wolf Coach, Inc.*, 231 F. Supp. 2d 58 (D.D.C. 2002) also is misplaced and misleading. In *Manifold*, Geoffrey Manifold, a resident of Maryland, was a cameraman for Fox Television Stations a District corporation. *Id.* at 59. The news van he was assigned to use contained mobile broadcast equipment including a mast/antenna. *Id.* Plaintiff Manifold's assignment took him to Alexandria, Virginia, for a live broadcast and where ultimately, he was injured by power lines. *Id.* 59-60

The *Manifold* court agreed that the defendant van retrofitting company had purposefully transacted business within the District. *Id.* at 62. The defendant had a contract with a District-based corporation, for which it custom retrofitted and delivered the van involved in the plaintiff's accident. *Id.*at 61. The court further reasoned that not only did the defendant's business transaction with the District involve negotiations with Fox representatives in the District (including faxes and phone calls from Massachusetts to the District and a meeting in the District), but the end result of the contract was an ENG van to be used specifically for news gathering not only in the District but in the metropolitan area that Fox news covers. *Id.* Not only had the defendant negotiated directly with the Fox station located in the District, but the defendant had every reason to believe that the van was going to be used to cover news in the District and metropolitan area. *Id.* Finally, the court reasoned that the plaintiffs' claims "arose from" the defendant's business transactions with the jurisdiction since the van, or transaction, was itself related to the personal injury claims brought by the plaintiff. *Id.* at 60. None of these types of facts exist here.

**IV.**　　　　**MS. POWELL'S DEPOSITION IS UNNECESSARY**

Smartmatic fails to show in a detailed manner how a deposition of Ms. Powell would alter the Court's jurisdictional analysis or uncover something else, especially when it has a sworn declaration, sworn interrogatory responses, and a near 200-page deposition transcript of Ms. Powell regarding her activities in the District during the time period in question.

If proposed jurisdictional discovery is repetitive of what is known and would not address anything new or would not change a court's analysis, it should not be granted. *Livnat v. Palestinian Auth.*, 851 F.3d 45, 57 (D.C. Cir. 2017) (affirming denial of jurisdictional discovery because "the additional discovery requested ... would not change [the] analysis"); *see also Cheyenne Arapaho Tribes of Oklahoma v. United States*, 558 F.3d 592, 596 (D.C. Cir. 2009) (plaintiff's failure to "specify how the requested discovery would alter the court's" jurisdictional determination was fatal to their jurisdictional discovery request). Smartmatic already has discovery pertaining to the suit-related conduct it has identified.

Smartmatic also has a deposition transcript that it purports to "reveal[] persistent contacts with the District," and "alone, bespeaks the interconnectedness between her confirmed in-District statements and her statements on November 14, 15, 16." ECF 42-1 at 2, 12. These statements alone belie Smartmatic's purported need for additional discovery or that such discovery would uncover additional facts that might change the Court's analysis. By its own admission, Smartmatic knows from the testimony when Ms. Powell was in the District and why during the months of November and December 2020. Thus, it need not depose her. *Med. Sols., Inc. v. C Change Surgical LLC*, 468 F. Supp. 2d 130, 135 (D.D.C. 2006), *aff'd*, 541 F.3d 1136 (Fed. Cir. 2008) (jurisdictional discovery inappropriate "[w]here there is no showing of how jurisdictional discovery would help plaintiff discover anything new"); *Baptist Mem'l Hosp. v. Johnson*, 603 F. Supp. 2d 40, 44 (D.D.C. 2009),

*aff'd sub nom.*, *Baptist Mem'l Hosp. v. Sebelius*, 603 F.3d 57 (D.C. Cir. 2010) (denying jurisdictional discovery after plaintiff was unable to show how discovery it sought would change court's analysis). Smartmatic's motion to compel Ms. Powell's deposition should be denied.

## V.         THERE IS NO PENDENT JURISDICTION

Finally, Smartmatic begins its motion to compel with a flawed legal argument about personal jurisdiction. Recognizing that the District's longarm statute will not stretch to encompass Ms. Powell's November 14, 15, 16 and November 19 (non-RNC interview) statements, Smartmatic dedicates a large part of its motion (ECF 42-1 at 6-9) to circumvent it by arguing pendent jurisdiction.  Smartmatic now claims that it intends to argue that the Court erred by not exercising *pendent personal jurisdiction* over those statements – an argument that is neither ripe on this motion nor correct on the law.

In this Circuit, the doctrine of pendent personal jurisdiction allows federal courts that have original jurisdiction in ***federal question cases*** to assert personal jurisdiction over a defendant with respect to a state claim for which there is no independent basis of personal jurisdiction, so long as it arises out of a common nucleus of operative facts ***as to the federal question***. *Oetiker v. Jurid Werke, G.m.b.H*, 556 F.2d 1, 4–5 & n. 10 (D.C. Cir. 1977). The doctrine, which is grounded in Fed. R. Civ. Pro. 4(k)(1)(C) (***not*** state longarm statutes), governs statutory authorization for the court to exercise personal jurisdiction over a defendant with respect to state law claims that are pendent to a federal question. *See* FRCP 4(k)(1)(C).  However, in ***diversity cases*** such as this, the Federal Rules and Due Process ***require*** federal courts to apply the personal-jurisdiction law of the states in which they sit. *See e.g.* FRCP 4(k)(1)(A).

As a result, this Court cannot exercise personal jurisdiction – pendent or otherwise – over claims that do not satisfy the District's longarm statute. Indeed, neither this Court nor the District

of Columbia Circuit Court have ever extended the doctrine of pendent personal jurisdiction as Smartmatic now urges this Court to do. Doing so would be unconstitutional. *See e.g. Nat'l R.R. Passenger Corp. v. R. & R Visual, Inc.*, 2007 WL 2071652, at *2 (D.D.C. July 19, 2007) (for personal jurisdiction to exist, Due Process demands satisfaction of District's longarm statute); s*ee also Slinger Mfg. Co. v. Nemak, S.A.*, 2008 WL 4425889, (E.D. Wis. Sept. 24, 2008) (exercising pendent jurisdiction in a diversity matter would be unconstitutional if it captured claims that fall outside of the Fourteenth Amendment's Due Process limits on state longarm statute) (*citing* WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE 3D § 1069.7); *Stelax Indus., Ltd. v. Donahue,* 2004 WL 733844, at *9 (N.D. Tex. Mar. 25, 2004) (same).

Every case cited by Smartmatic involves the exercise of pendent jurisdiction ***in a federal question matter. This critical fact is ignored by Smartmatic resulting in continued uninformed and misleading arguments by Smartmatic to this Court***. If and when this issue is briefed, Ms. Powell will provide extensive authority from throughout the country that establishes that Smartmatic's attempted end-around the District longarm statute violates the core principles of Due Process and should be rejected.

## VI.      CONCLUSON

Smartmatic unwisely filed a lawsuit contending that Ms. Powell "selected the District of Columbia as the epicenter of her disinformation campaign" and that "*[t]o execute this campaign*, Powell traveled to the District of Columbia, stayed in hotels in the District, conducted media appearances in the District in which she defamed Smartmatic, and solicited donations from District residents to finance her efforts to undermine the election." The reality is that during November and early December 2020, the period in question, Ms. Powell spent little time in the District. She stayed in hotels in Virginia, traveled to South Carolina for weeks, and conducted most media

appearances remotely from outside the District. While she did travel to the District, that travel lacks the necessary relationship to Smartmatic's claims – that Ms. Powell defamed it on a handful of on-air appearances – to make such travel relevant or appropriate for the determination of personal jurisdiction.

Perhaps most telling, Smartmatic makes no effort to tailor its discovery to the suit-related conduct it expressly bases its claim upon in its complaint. The motive is perhaps not hard to see – realizing its mistake of choosing this second venue (as well as its first), Smartmatic now seeks to acquire as much merit discovery as possible for use elsewhere. That should not be permitted.

For all these reasons, Ms. Powell respectfully requests the Court to deny Smartmatic's motion.

Dated: September 15, 2023

**KENNEDYS CMK LLP**

By: */s Joshua A. Mooney*

Joshua A. Mooney DC Bar No. 471866
1600 Market Street, Suite 1410
Philadelphia, PA 19103
Tel: 267-479-6700
Joshua.Mooney@kennedyslaw.com

Marc Casarino, pro hac vice
919 N. Market Street, Suite 1550
Wilmington, DE 19801
Tel: 302-308-6647
Email: marc.casarino@kennedyslaw.com

Michael J. Tricarico, pro hac vice
570 Lexington Avenue, 8th Floor
New York, New York 10022
Tel: (646) 625-3952
Email: Michael.tricarico@kennedyslaw.com

*Attorneys for Defendant Sidney Powell*