**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SMARTMATIC USA CORP., SMARTMATIC INTERNATIONAL HOLDING B.V., and SGO CORPORATION LIMITED,<br><br>    Plaintiffs,<br><br>        v.<br><br>SIDNEY POWELL,<br><br>    Defendant. | Case No. 21-cv-02995-CJN |

**SMARTMATIC'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
SIDNEY POWELL'S MOTION TO STAY**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................................................... ii

INTRODUCTION ................................................................................................................. 1

OVERVIEW OF ARGUMENT ........................................................................................... 1

BACKGROUND ................................................................................................................... 3

     A.    Powell Has Already Provided the Same Discovery Smartmatic Seeks to
          Others. ............................................................................................................... 3

     B.    Powell Refused to Reproduce That Same Information to Smartmatic and Is
          Now Using the *Fulton* Action to Delay Jurisdictional Discovery........................... 4

LEGAL STANDARD ........................................................................................................... 6

ARGUMENT ......................................................................................................................... 7

I.     Powell Admits That The Court Has Personal Jurisdiction in Her Motion to Stay. ............. 7

II.    The Court Should Deny Powell's Motion for Stay. ........................................................ 7

     A.    A Stay Is Inappropriate Because Powell's Alleged Crimes Are Not
          "Substantially Similar" to the Jurisdictional  Discovery Smartmatic Seeks........... 7

     B.    The Court's Interest in Resolving This Case Weighs Against a Stay.................... 12

     C.    The Balance of Hardships Weighs Against a Stay. ............................................... 13

          1.    Powell Will Suffer No Harm If Jurisdictional Discovery Proceeds.......... 13

          2.    Smartmatic Will Suffer Hardship If This Case Is Stayed. ........................ 18

     D.    A Blanket Stay Is Inappropriate Because Powell Will Ask to Extend It. ............. 19

CONCLUSION..................................................................................................................... 19

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Barry Farm Resident Council, Inc. v. U.S. Dep't of Navy*,
  No. 96-cv-1450, 1997 WL 118412 (D.D.C. Feb. 18, 1997)..................................................6, 18

*Dist. Title v. Warren*,
  265 F. Supp. 3d 17 (D.D.C. 2017) .....................................................................................15, 16

*Doe v. D.C.*,
  No. 19-cv-1173, 2021 WL 11132750 (D.D.C. Aug. 19, 2021).................................15, 16, 17

*Doe v. Glanzer*,
  232 F.3d 1258 (9th Cir. 2000) ..................................................................................................16

*GolTV, Inc. v. Fox Sports Latin Am. Ltd.*,
  No. 16-cv-24431, 2017 WL 5175600 (S.D. Fla. May 25, 2017)......................................12, 13

*Gordon v. Fed. Deposit Ins. Corp.*,
  427 F.2d 578 (D.C. Cir. 1970)....................................................................................................6

*Horn v. D.C.*,
  210 F.R.D. 13 (D.D.C. 2002)........................................................................................ *passim*

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936).............................................................................................................6, 19

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
  676 F.3d 83 (2d Cir. 2012)........................................................................................13, 17, 18

*McSurely v. McClellan*,
  426 F.2d 664 (D.C. Cir. 1970) .................................................................................................19

*Meier v. Comm'r*,
  91 T.C. 273 (1988)....................................................................................................................16

*Poling v. Farrah*,
  131 F. Supp. 2d 191 (D.D.C. 2001) ...........................................................................................7

*S.E.C. v. Parkersburg Wireless Liab. Co.*,
  156 F.R.D. 529 (D.D.C. 1994)..................................................................................................15

*Sandvig v. Sessions*,
  No. 16-cv-1368, 2018 WL 11410069 (D.D.C. Oct. 30, 2018) .........................................14, 15

ii

*Skinner v. Armet Armored Vehicles, Inc.*,
    No. 12-cv-45, 2015 WL 540156 (W.D. Va. Feb. 10, 2015)........................................... *passim*

*State of Georgia v. Donald J. Trump, et al*,
    Case No. 23-SC-188947 (Super. Ct., Fulton County) ..................................................... *passim*

*U.S. v. White*,
    846 F.2d 678 (11th Cir.1988) ..................................................................................15

*United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*,
    312 F.R.D. 16 (D.D.C. 2015)....................................................................................14

*US Dominion, Inc., et al. v. Sidney Powell, et al.*,
    C.A. No. 1:21-cv-00040 (CJN) (D.D.C.).................................................................4

*US Dominion, Inc. v. Fox News Network, LLC*,
    No. N21C-03-257 EMD (Del. Super. Ct.) ........................................................4, 14

*In re Vitamins Antitrust Litig.*,
    120 F. Supp. 2d 58 (D.D.C. 2000) .........................................................................14

## INTRODUCTION

Almost three years have passed since Defendant Sidney Powell defamed Smartmatic, and it is no closer to getting justice for the damage she caused. Since the outset of this case, Powell has done everything she can to delay: objecting to personal jurisdiction even though she admits to having defamed Smartmatic in this District; stonewalling the jurisdictional discovery that the Court authorized; objecting to a status conference to monitor her participation in discovery; opposing Smartmatic's request for leave to move to compel; requesting staggered briefing on her motion to stay before Smartmatic could move to compel; and now requesting a stay. At every turn, Powell has sought delay. No more. Her motion should be denied. The best course is to: (a) let jurisdictional discovery finish; (b) adjudicate Powell's personal jurisdiction defense; and (c) assess whether a stay is necessary at that juncture. If Powell's criminal trial has concluded by then, merits discovery here could go forward. This approach strikes the balance that Powell's motion for stay fails to achieve.

## OVERVIEW OF ARGUMENT

To obtain a stay, Powell needed to make a "clear showing" that one is necessary. She has come nowhere close. Every factor that this Circuit considers weighs against a stay.

*First*, the issues in *State of Georgia v. Donald J. Trump, et al*, Case No. 23-SC-188947 (Super. Ct., Fulton County) ("Fulton Action") are not "substantially similar" to the jurisdictional discovery Smartmatic seeks. Powell's Indictment centers on crimes she allegedly committed in Georgia. Only two of the dozen Predicate Acts alleged against Powell relate to this District: Powell's November 19, 2020 press conference (where she defamed Smartmatic in D.C.) and the December 18, 2020 meeting Powell attended at the White House. Smartmatic agrees not to pursue jurisdictional discovery about those Predicate Acts. Nor will Smartmatic seek any testimony from Powell regarding the merits of its defamation claim, such as the falsity of her statements or her

1

knowledge of falsity. That discovery can wait for another day. Without such merits discovery looming, Powell has no "real" fear of self-incrimination. The lack of overlap between the Fulton Action and Smartmatic's jurisdictional discovery weighs against a stay.

*Second*, the Court's interest in advancing its docket cuts against a stay. Rather than put this case on hold, the Court can resolve Powell's personal jurisdiction defense. Then, the Court and the parties can regroup, check the status of the Fulton Action, and determine whether to proceed with merits discovery and on what schedule. By then, Powell's criminal trial may be over. Resolving Powell's personal jurisdiction objection in the interim will put this case in a position to move forward most expeditiously. A stay would prevent that progress.

*Third*, the balance of hardships weighs against a stay. Powell will suffer no harm participating in jurisdictional discovery because: (a) Smartmatic seeks the same documents she has already produced to the Select Committee to Investigate the January 6th Attack on the U.S. Capitol, U.S. House of Representatives, Washington, D.C. ("January 6 Committee") and to other defamation plaintiffs; (b) Powell has waived her Fifth Amendment rights regarding her contacts with the District through those productions and her testimony before the January 6 Committee; (c) Powell has no right to make a blanket assertion of the Fifth Amendment to all questions Smartmatic may ask regarding her contacts with the District; (d) Powell does not risk an adverse inference on liability if she invokes the Fifth Amendment; and (e) the Court could safeguard any Fifth Amendment privilege Powell still has by entering a protective order.

Smartmatic, on the other hand, would suffer hardship if this case is stayed. Smartmatic seeks relief to restore its reputation and combat the lies Powell disseminated to millions of people. The longer those lies linger, the more indelible they become.

*Fourth*, the duration of the stay is uncertain and, therefore, unreasonable. Powell is seeking a 90-day stay, but she will surely seek an extension if she is found guilty. An appeal could take years. The only stay that could satisfy Powell's criminal liability concerns is an indefinite one. The uncertain duration of the stay Powell needs weighs against her motion. It should be denied.

## BACKGROUND

### A.    Powell Has Already Provided the Same Discovery Smartmatic Seeks to Others.

While this case been pending, Powell has produced documents and testified in other proceedings about her contacts with the District of Columbia. Ordering Powell to reproduce this same material would streamline jurisdictional discovery here without any burden to Powell.

*January 6 Committee.* On May 7, 2022, Powell testified before the January 6 Committee. *See* ECF No. 42-3. Five attorneys represented her. *Id.* at 3:9–14. Before she testified, Powell was instructed that she may "refuse to answer a question based on privilege." *Id.* at 5:5. The Committee informed Powell that it could release her transcript. *Id.* at 4:6–24. Powell understood. *Id.* at 4:24. She provided 170 pages of testimony concerning facts relating to, *inter alia:* "how [she] first bec[a]me involved in challenges to the 2020 Presidential election"; dates when she stayed in D.C. to further those challenges; meetings that she attended and persons, including federal officials, with whom she met in D.C. regarding the 2020 election; statements that she made disputing the legitimacy of the election, including her false accusations of voting machine fraud; funds that she solicited and received to finance election subversion efforts; and the January 6 attack on the Capitol. *See generally Id.* (highlighted in pertinent part on the docket).

Powell also provided the January 6 Committee with "20,000 documents" before she testified. *Id.* at 36:20–21. She made the production pursuant to a subpoena the January 6 Committee had issued to her. *Id.* at 8:12–12:5. Powell authorized her attorneys to produce "everything we could find to comply with the subpoena." *Id.* at 9:3–4. Powell "handed over

everything needed" for her "lawyers to look at" and conducted her "own review of" her work email "to make sure [the Committee] got transmissions to the White House." *Id.* at 9:8–12. Powell confirmed that she provided her attorneys access to her computers, "all [her] email accounts," and two of the phones she used during the relevant timeframe. *Id.* at 9:13–24. Powell admitted that she used another phone but claimed that she did not remember the number or have access to its records. *Id.* at 9:22–10:12. Powell indicated that she would provide the January 6 Committee a "privilege log" to identify any responsive documents that were withheld from her production. *Id.* at 12:3–5.

***Dominion Litigation.*** Powell has also produced substantial documents to Dominion. First, Powell produced documents through a subpoena she received in *US Dominion, Inc. v. Fox News Network, LLC*, No. N21C-03-257 EMD (Del. Super. Ct.). On October 14, 2022, Dominion moved to compel compliance with that subpoena. Powell opposed the motion because she purportedly agreed to produce responsive documents. Ex. 1 at 2. As Powell explained:

> following the parties' September 16, 2022 agreement to search terms, approximately 145,000 pages of documents had been identified as potentially responsive, 35,000 pages had been reviewed for false hits, patent irrelevance and privilege, and that documents were now being produced.

*Id.* at 1. Second, Powell has made productions to Dominion through *US Dominion, Inc., et al. v. Sidney Powell, et al.*, C.A. No. 1:21-cv-00040 (CJN) (D.D.C.). *Id.* at 2. Powell admits that she has produced at least "17,400 pages of non-privileged responsive documents." *Id.* at 3.

## B.    Powell Refused to Reproduce That Same Information to Smartmatic and Is Now Using the *Fulton* Action to Delay Jurisdictional Discovery.

After jurisdictional discovery commenced in May 2023, the parties submitted a Joint Status Report to the Court. ECF No. 40. In the report, Smartmatic requested a status conference so that the Court could monitor Powell's participation in discovery. Smartmatic also informed the Court that Powell refused to sit for a deposition. Powell, in turn, opposed both a status conference and a

deposition. ECF No. 40. She told the Court that a status conference was "unnecessary in light of" all the discovery she was about to provide to Smartmatic. *Id.*

Soon thereafter, Powell served her responses to Smartmatic's jurisdictional discovery requests and objected to all of Smartmatic's requests. She contended that Smartmatic was entitled only to "discrete" discovery regarding where she physically stood when she defamed Smartmatic. *See* Ex. 2, Aug. 10, 2023 email from J. Mooney. Powell's prior comment to the Court—that a status conference was "unnecessary"—was misleading because it suggested that she would be disclosing her jurisdictional contacts. Instead, she did the opposite.

On July 25, 2023, the Court granted Smartmatic's request for a status conference over Powell's objection. The day before the parties appeared, they submitted an email summary of their discovery disputes. Ex. 3. In that summary, Smartmatic sought leave to move to compel Powell (a) to produce responsive jurisdictional discovery and (b) to attend a deposition. Powell opposed Smartmatic's request for leave, but not because of any Fifth Amendment concern. Critically, by then, Powell had already been indicted. *See* Ex. 4, Aug. 14, 2023 Indictment. Yet, she did not raise the Indictment or state that she would seek a stay. Instead, Powell opposed Smartmatic's request for leave because Smartmatic could "not produce a scintilla of evidence suggesting a connection between Powell and DC for her statements in opposition to Powell's motion to dismiss." Ex. 3.

When the parties appeared the following day, the Court: rejected Powell's contention; granted Smartmatic's request for leave; and asked the parties to confer on a briefing schedule. At that point, having failed to defeat Smartmatic's request for leave, Powell notified the Court that she would be moving to stay. The motion was her fallback option. But it is supported by neither the facts nor the law. The motion fails in every respect and should be denied.

**LEGAL STANDARD**

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the dispositions of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.,* 299 U.S. 248, 254–55 (1936). Where parallel civil and criminal proceedings exist, courts do not reflexively stay the civil action but instead endeavor to strike a balance. *See Horn v. D.C.,* 210 F.R.D. 13, 15 (D.D.C. 2002) ("[T]he mere relationship between criminal and civil proceedings, and the resulting prospect that discovery in the civil case could prejudice the criminal proceedings, does not establish the requisite good cause for a stay."); *Barry Farm Resident Council, Inc. v. U.S. Dep't of Navy*, No. 96-cv-1450, 1997 WL 118412, at *1 (D.D.C. Feb. 18, 1997) ("Nothing in the Constitution or the laws requires a stay of civil proceedings pending the outcome of parallel criminal proceedings.").[1] As the D.C. Circuit has posited:

> that a man is indicted cannot give him a blank check to block all civil litigation on the same or related underlying subject matter. Justice is meted out in both civil and criminal litigation. The overall interest of the courts that justice be done may very well require that the compensation and remedy due a civil plaintiff should not be delayed (and possibly denied). The court, in its sound discretion, must assess and balance the nature and substantiality of the injustices claimed on either side.

*Gordon v. Fed. Deposit Ins. Corp.*, 427 F.2d 578, 580 (D.C. Cir. 1970). *See* Mot. for Stay at 9 (citing *Louis Vuitton Malletier S.A. v. LY USA, Inc*., 676 F.3d 83, 97 (2d Cir. 2012) ("A stay of [a] civil case to permit conclusion of a related criminal prosecution" is "*an extraordinary remedy*.")).

To obtain a stay, Powell must: "1) make a clear showing, by direct or indirect proof, that the issues in the civil action are 'related' as well as 'substantially similar' to the issues in the criminal investigation; (2)...make a clear showing of hardship or inequality if required to go

---

[1] Internal citations and quotation marks have been omitted, and emphasis added, unless noted.

forward with the civil case while the criminal investigation is pending; and (3)... establish that the duration of the requested stay is not immoderate or unreasonable." *Horn*, 210 F.R.D. at 15.

## ARGUMENT

### I.     Powell Admits That The Court Has Personal Jurisdiction in Her Motion to Stay.

In its Motion to Compel Jurisdictional Discovery, Smartmatic explained how this Court has pendent personal jurisdiction over Powell for the defamatory statements she allegedly made in Virginia on November 14, 15 and 16. ECF No. 42-1 at 5–8. The Court may assert pendent personal jurisdiction over Powell's defamatory statements on November 14, 15, 16 because they "relate to the same operative facts" as the statements she made in D.C. *Poling v. Farrah*, 131 F. Supp. 2d 191, 194 (D.D.C. 2001). *See* Smartmatic's Mem. Of Law in Support of Mot. to Compel Jurisdictional Discovery, ECF No. 42-1 at 5–9.

Powell's motion to stay cements this conclusion. She concedes that her defamatory statements arise from "the same alleged underlying events" and raise the same "legal theories." ECF No. 41-1 at 4. She also acknowledges that "Smartmatic's claims…involve the same events and theories." *Id.* at 5. Powell even connects the statements she made about Smartmatic "at the November 19 RNC press conference"—over which she concedes the Court has personal jurisdiction—to the statements she made on Fox News on November 14. *Id.* at 6 (citing ECF 1 ¶ 191.d). These admissions expose Powell's motion to stay as a farce. This Court has jurisdiction over her for all of the defamatory statements she made about Smartmatic.

### II.    The Court Should Deny Powell's Motion for Stay.

#### A.     A Stay Is Inappropriate Because Powell's Alleged Crimes Are Not "Substantially Similar" to the Jurisdictional Discovery Smartmatic Seeks.

Powell has failed to satisfy the first prong of the test: a showing that the criminal allegations against her are "substantially similar" to the jurisdictional discovery Smartmatic has moved to

compel. Powell had to "make a clear showing" that the criminal allegations intersect with that discovery. *Cf. Horn*, 210 F.R.D. at 15 (movant failed to show substantial similarity where "most" of the criminal allegations "ha[d] no relevance to [plaintiff's] allegations"). Powell botched this inquiry by focusing on Smartmatic's *theories of liability*, not its *personal jurisdiction allegations*. The parties will address Powell's liability—whether her statements were false and whether she knew they were false—in due time. For now, the sole question is whether Powell has "claim-specific forum contacts" to confer jurisdiction for the statements she allegedly made in Virginia on November 14, 15 and 16. ECF No. 38 at 7. Powell needed to make a "clear showing" that Smartmatic's discovery requests about *those contacts* are "substantially similar" to the issues in the Fulton Action. By addressing Smartmatic's theories of liability, not its personal jurisdiction allegations, Powell made the wrong showing.

Powell could not make the requisite showing anyhow because the Fulton Action involves distinct issues than those the Court must evaluate to determine personal jurisdiction. ***First***, every criminal charge centers on Powell's commission of crimes *in Georgia*, not D.C. *See* Ex. 4 at 14. Powell was charged with seven counts: violation of the Georgia RICO Act (Count 1); conspiracy to commit election fraud in Fulton County by willfully tampering with electronic ballot markers and tabulating machines in the State of Georgia (Count 32); conspiracy to commit election fraud in Fulton County by causing conspiracy members who were not public officials to possess official ballots outside of the polling place in the State of Georgia (Count 33); conspiracy to commit computer theft of Dominion Voting System Corporation's ("Dominion") information, data and software in Fulton County (Count 34); conspiracy to commit computer trespass in Fulton County by removing voter data and Dominion's data from a computer without authorization (Count 35); conspiracy to commit computer invasion of property in Fulton County by paying SullivanStrickler

to use a computer "with the intention of examining personal voter data" without authority (Count 36); and conspiring to defraud the State of Georgia through "theft of voter data" under the control of Georgia Secretary of State Brad Raffensperger (Count 37). The locus of these crimes is Georgia, not D.C.

**Second**, Powell's alleged Predicate Acts for the RICO charge also predominate in Georgia. She is charged with committing Predicate Acts 2, 33, 90, 91, 144, 145, 146, 147, 148, 149, 155, 159. Of these 12 Predicate Acts, *10* target Powell's Georgia conduct. Powell allegedly:

- entered into a contract with SullivanStrickler, a forensic data firm located in Fulton County, which performed "computer forensic collections and analytics on" Dominion's equipment and breached election equipment in Coffee County, Georgia (Act 33);

- sent an e-mail to SullivanStrickler's Chief Operations Officer and instructed him "to immediately 'receive a copy all data'" from Dominion's equipment (Act 91);

- tampered with ballot markers and tabulating machines in Coffee County (Act 144);

- unlawfully possessed ballots outside of the polling place in Coffee County (Act 145);

- unlawfully used a computer with the intention of taking and appropriating Dominion's information, data and software in Coffee County (Act 146);

- used a computer without authorization to remove voter data in Coffee County (Act 147);

- examined personal data without authority in Coffee County (Act 148);

- conspired to steal voter data under Secretary of State Raffensperger's control (Act 149);

- sent an e-mail to SullivanTrickler's COO "directing him to transmit all data copied from" Dominion equipment "at the Coffee County Board of Elections & Registration Office in Coffee County, Georgia" to an unindicted co-conspirator (Act 155); and

- gave false testimony to the January 6 Committee by stating (i) "[t]hat she didn't have any role in really setting up efforts to access voting machines in Coffee County, Georgia and (ii) that "[s]he was aware there was an effort by some people to get access to voting machines in Georgia but that she did not know what happened with that and did not remember whether that was Rudy or other folks." (Act 159).

All of these Predicate Acts orbit around Powell's conduct in Georgia.

Only **two** of Powell's Predicate Acts relate to her activities in D.C.—Predicate Acts 2 and 90—and Smartmatic agrees not to seek any jurisdictional discovery regarding them. Predicate Act No. 2 charges Powell, Rudy Giuliani, and Jenna Ellis with appearing at a press conference at the RNC Headquarters on behalf of former president Trump and the Trump Campaign and making "false statements concerning fraud in" the 2020 election. Smartmatic needs no discovery about this press conference because Powell does not dispute its relevance. She conceded: (a) that she made statements about Smartmatic at that press conference, and (b) that it took place in this District. *See* ECF No. 38 at 7 (finding that Powell's motion to dismiss "reply brief concedes that she was in the District for the November 19 press conference"). The Court has already determined that it has personal jurisdiction over Powell for those statements. *Id.* Predicate Act 2 thus fails to warrant a stay because it is not part of the discovery Smartmatic is moving to compel.

The only other relevant Predicate Act (Act 90) likewise fails to support a stay. Act 90 alleges that Powell attended a meeting at the White House on December 18, 2020. Ex. 4 at 43. She allegedly "discussed certain strategies and theories intended to influence the outcome of the November 3, 2020, presidential election, including seizing voting equipment." *Id.* She also discussed her appointment "as special counsel with broad authority to investigate allegations of voter fraud in Georgia and elsewhere." *Id.* Smartmatic needs no discovery about this meeting because Powell has conceded: that it occurred in D.C.; that she attended it; and that it addressed seizing voting equipment and appointing her as special counsel. *See* ECF No. 42-3 at 48:21–49:18, 72:3–5, 79:8–81:25, 84:12–20, 103:11–104:17. Through this testimony, Powell has already furnished sufficient information about the meeting to know how it affects the Court's exercise of jurisdiction. No more discovery is needed about Predicate Act 90. It therefore cannot justify a stay.

None of the "connections" Powell identifies between the Fulton Action and this case move the needle. ***First***, Powell cites the statements she made at the November 19, 2020 press conference. *See* Mot. for Stay at 5. But they are irrelevant because Smartmatic will refrain from seeking discovery about the press conference. Powell also exaggerates the role of the press conference in Smartmatic's Complaint: she asserts that "a *majority* of [Smartmatic's] case relies on" her statements at the press conference. *Id.* at 6. Not true. While the Complaint has some allegations about the presser, the gravamen is that Powell used her appearances on Fox News to spread false accusations about Smartmatic. *See* Compl. ¶¶ 78–114.

***Second***, Powell cites the Indictment's allegation that she made "'false statements and writings' while operating in Georgia, other states and DC." Mot. for Stay at 5. But Smartmatic is not seeking merits discovery. Nor do Powell's false statements about the election in places outside D.C. matter. They are immaterial to the Court's personal jurisdiction. Whatever false statements Powell made are also public. In no way do they support a stay of jurisdictional discovery.

***Third***, Powell argues that the "Indictment identifies meetings [she] had in DC, meetings that Smartmatic now claims are germane to it [sic] argument for personal jurisdiction in this lawsuit." *Id.* at 5 (citing Indictment at 43). But Powell misstates the Indictment. It references not several "meetings" in D.C., but one meeting—the December 18, 2020 meeting that Powell attended at the White House with Giuliani—as alleged in Predicate Act 90. But that meeting does not justify a stay because Powell testified about it and conceded the facts that are relevant to personal jurisdiction (*i.e.*, that she attended the meeting, that it was in D.C., and the subject matters that the attendees discussed).

***Last***, Powell cites Predicate Act 159, which alleges that she falsely testified before the January 6 Committee regarding her activities in Georgia. Smartmatic seeks no jurisdictional

discovery about this Predicate Act. Any perjury Powell committed has no bearing on the Court's personal jurisdiction. Smartmatic requested the documents that Powell produced to the January 6 Committee not to show that she perjured herself, but because: (a) they contain relevant information about Powell's contacts with the District; and (b) Powell has no burden sending that production to Smartmatic. *See* Mot. for Stay, Ex. B, Request No. 18. It is burden-free discovery that has the information Smartmatic needs to depose Powell about her contacts with the District.

At bottom, Powell fails to show how Smartmatic's jurisdictional discovery substantially relates to the Fulton Action. Powell's failure to demonstrate substantial similarity dooms her motion for stay. *See Horn*, 210 F.R.D. at 15.

### B.    The Court's Interest in Resolving This Case Weighs Against a Stay.

The Court's interest "in the speedy resolution of civil disputes" weighs against a stay. *See GolTV, Inc. v. Fox Sports Latin Am. Ltd*., No. 16-cv-24431, 2017 WL 5175600, at *4 (S.D. Fla. May 25, 2017); *Skinner v. Armet Armored Vehicles, Inc*., No. 12-cv-45, 2015 WL 540156, at *4–5 (W.D. Va. Feb. 10, 2015) ("The Court has a policy of efficient and expeditious resolution of cases."). A stay here would undermine that policy. The parties would be suspending the jurisdictional discovery they need to complete. The Court's resolution of whether it has jurisdiction would remain on hold. And, this case would stay on the Court's calendar longer, as new cases augment the docket and tax the Court's resources. A stay does not help the Court.

Powell contends that "judicial economy" considerations favor a stay, but she fails to meaningfully apply them. For instance, contrary to Powell's assertion, a stay will not prevent "unnecessary conflict" or "discovery-related litigation." Mot. for Stay at 8. The parties are already briefing the jurisdictional discovery that Powell refused to provide before she was indicted. That conflict is ripe and can be decided now. Powell also wrongly implies that jurisdictional discovery will involve "significant" "claims of privilege." *Id.* Not so. Powell has given no indication that she

will make "significant" privilege claims. Rather, Powell disavowed having an attorney-client relationship with former President Trump or the Trump Campaign. *See* Ex. 5, Powell's Responses to Interrogatory Nos. 6 and 7. Indeed, Powell produced no privilege log with the production she made on August 14, 2023; if she had "significant" privilege claims, she would have logged at least one document. Nor is "witness availability" a concern. It is perplexing that Powell would make this point: she is the only witness, and she is refusing to attend a deposition despite Smartmatic's offer to depose her near her residence, sparing her from having to travel to this District.

The last point that Powell makes—that "allowing the criminal trial to proceed will assist streamlining" discovery here—is empty rhetoric. Mot. for Stay at 8. Powell has identified no discovery that the Fulton County prosecutors requested from her *about her D.C. contacts*. Nor has Powell demonstrated that she agreed to provide such discovery, or that the trial will explore her contacts with this District. Denying Powell's motion fulfills the Court's "policy of efficient and expeditious resolution of cases"; a stay does not. *Skinner*, 2015 WL 540156, at *4–5.

### C.     The Balance of Hardships Weighs Against a Stay.

#### 1.     Powell Will Suffer No Harm If Jurisdictional Discovery Proceeds.

Powell has failed to make "a clear showing of hardship or inequality if required to go forward with the civil case while the criminal investigation is pending[.]" *Cf. Horn*, 210 F.R.D. at 15 (U.S. Supreme Court "places the *heavy burden* of establishing entitlement to a stay on the movant to show a *clear* case of hardship on being required to go forward."). Powell assumes that her indictment entitles her to a stay, but courts often reject stay requests from litigants who have been indicted. *See, e.g., Louis Vuitton Malletier*, 676 F.3d at 100–01 (denying stay motion even though defendants "had been indicted" because their "plainly dilatory tactics in tendering discovery even prior to their indictments" belied their protestations of hardship); *GolTV*, 2017 WL 5175600, at *3 (denying stay motion despite "the substantial overlap between the civil and criminal

proceedings and the fact an indictment has been returned in the criminal case" because "remaining considerations counsel against issuing the stay").

Here, the only "hardship" Powell identifies is having "to choose to waive or assert her rights under the Fifth Amendment" if jurisdictional discovery proceeds (Mot. for Stay at 9), but she overstates that risk in four ways. ***First***, Powell is not facing any "significant dilemma" over exercising her Fifth Amendment rights because she has already waived them.   "It is well-established that a party may not invoke the privilege against self-incrimination to pick and choose what aspects of a particular subject to discuss." *Sandvig v. Sessions*, No. 16-cv-1368, 2018 WL 11410069, at *2 (D.D.C. Oct. 30, 2018); *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 312 F.R.D. 16, 21 (D.D.C. 2015) ("It is well-settled that a party may waive his right against self-incrimination by voluntary disclosure of the statements purportedly protected."); *In re Vitamins Antitrust Litig.*, 120 F. Supp. 2d 58, 66 (D.D.C. 2000) ("There is no doubt that a waiver of the Fifth Amendment's privilege against self-incrimination may…be inferred from a witness's prior statements with respect to the subject matter of the case."). Courts have no duty to "take affirmative steps to protect a claimant/defendant's privilege (*i.e.,* to grant a stay) when the claimant/defendant, by his words or actions, has chosen to waive the privilege." *All Assets Held at Bank Julius Baer*, 312 F.R.D. at 21.

Here, Powell has waived any Fifth Amendment claim she may have had that intersects with Smartmatic's jurisdictional discovery requests by producing information to the January 6 Committee and the *Dominion* plaintiffs. Powell produced over 20,000 documents, including emails showing her contacts with the District, to the January 6 Committee. *See* ECF No. 42-3 at 36:20–21. Powell has no Fifth Amendment right to withhold that same discovery from Smartmatic. *See Sandvig*, 2018 WL 11410069, at *2 (parties waived their Fifth Amendment rights when they

"voluntarily testified about their past research activities" and "provided [the government] with ... 7,800 pages of documents"); *All Assets Held at Bank Julius Baer,* 312 F.R.D. at 21 (same, because the litigant "respond[ed] to the government's discovery requests" and "did not invoke his right against self-incrimination in his responses").

Nor does Powell have a Fifth Amendment right to selectively testify about her contacts with D.C. Powell's January 6 Committee testimony covered such topics as meetings she attended in D.C., business she conducted in D.C., and other purposeful activities she directed at the District, like soliciting donations that went into her law firm's trust account. *See, e.g.,* ECF No. 42-3 at 12:8–18, 17:9-18:15, 20:14–21:2, 22:11–14, 23:7–25:11, 29:4–6, 29:23–24, 31:6–25, 32:2–4. 37:15–19, 38:3–7, 39:4–9, 40:2–20, 42:1–43:1, 47:25–49:18, 52:15–54:20, 58:5–59:24, 60:16–24, 62:4–63:9, 65:2–66:4, 69:11–76:20, 78:10–81:22, 84:13–85:20, 87:18–89:6, 103:20–104:17, 107:9–21, 108:14–109:20, 110:11–118:19, 124:22–126:8, 142:25–145:14, 149:19–24, 156:16– 157:20. To let Powell "shield additional information on the same subject[s]" through the Fifth Amendment would "unduly disadvantage" Smartmatic "by allowing [her] selectively to introduce" and withhold relevant facts about her jurisdictional contacts. *Cf. Sandvig*, 2018 WL 11410069, at *2; *accord S.E.C. v. Parkersburg Wireless Liab. Co*., 156 F.R.D. 529, 536 (D.D.C. 1994) ("The Fifth Amendment cannot be used after later rumination as a sword to sever incriminating statements which were voluntarily made at the time of the deposition"); *U.S. v. White,* 846 F.2d 678, 690 (11th Cir.1988) ("[a] civil deponent cannot choose to answer questions with the expectation of later asserting the Fifth Amendment").

**Second**, Powell has no right to make a blanket assertion of the Fifth Amendment—which a stay effectively accomplishes. "There is a presumption against blanket assertions of Fifth Amendment privilege, and the law is clear that the privilege against self-incrimination must be

asserted on a question-by-question basis." *Dist. Title v. Warren*, 265 F. Supp. 3d 17, 21–22 (D.D.C. 2017) (ordering defendants' counsel to "sit for the deposition, and while he may assert the Fifth Amendment privilege in response to particular questions as appropriate, he must answer questions with the understanding that the danger of self-incrimination must be real, not remote or speculative"). As this Court noted in another matter, "a witness generally may not make a blanket assertion of his Fifth Amendment right and refuse to answer any questions or produce any documents in civil litigation" because self-incrimination "issues are context specific…." *Doe v. D.C.*, No. 19-cv-1173, 2021 WL 11132750, at *1–3 (D.D.C. Aug. 19, 2021) (Nichols, J.). "Instead, the privilege must be assessed on a 'question-by-question basis.'" *Id.; accord Doe v. Glanzer*, 232 F.3d 1258, 1263 (9th Cir. 2000) ("The only way the privilege [against self-incrimination] can be asserted is on a question-by-question basis, and thus, as to each question asked, the party has to decide whether or not to raise his Fifth Amendment right."); *Skinner*, 2015 WL 540156, at *2–3 ("[T]o invoke [the Fifth Amendment] privilege the party claiming it must not only affirmatively assert it, he must do so with sufficient particularity to allow an informed ruling on the claim…in specifics sufficient to provide the court with a record upon which to decide whether the privilege has been properly asserted as to each question.").

This precedent precludes Powell from making a blanket assertion of the Fifth Amendment, but it *does not* foreclose her from invoking her right. She may raise the privilege on a "question-by-question basis," *Doe*, 2021 WL 11132750, at *1–3, if "the danger of self-incrimination" is real. *Dist. Title*, 265 F. Supp. 3d at 21–22. *See Doe*, 2021 WL 11132750, at *1–3 (denying stay because there are "are some areas of inquiry…that are germane to the instant case but would not provide a link in the chain of evidence needed to prosecute"). Of course, it is exceedingly unlikely that the danger will be real on *any question*, much less *every question*, because Powell has waived the

16

privilege regarding her contacts through her prior productions and testimony. But either way, the prospect that Powell might assert her Fifth Amendment rights is no hardship; it is a protection the U.S. Constitution affords her. *See Meier v. Comm'r*, 91 T.C. 273, 290 (1988) ("Petitioner's position seems to be that there can never be a full and fair opportunity to litigate in a civil case so long as there is a related criminal action pending. Petitioner misapprehends the scope of the Fifth Amendment privilege. The Fifth Amendment protects against COMPULSORY self-incrimination.") (emphasis in original); *Skinner*, 2015 WL 540156, at *2–3 ("Contrary to Defendants' position, a stay of the civil case is not the only way to preserve [the individual defendant's] Fifth Amendment rights. The primary prophylactic is to invoke one's rights….").

*Third*, Powell does not risk an adverse inference on liability by invoking the Fifth Amendment, as she contends. Mot. for Stay at 9. Smartmatic is seeking *jurisdictional discovery*. If Powell invoked the Fifth Amendment to avoid answering a question, any adverse inference would run to the Court's exercise of jurisdiction, not her liability. And Powell has no right to withhold such discovery without repercussion. *See Skinner*, 2015 WL 540156, at *2–3 ("The fact that an adverse inference can be drawn against litigants who assert their Fifth Amendment rights in a civil proceeding does not justify staying this action. If it did, there would be no need for the plethora of case law on the Fifth Amendment in the civil context; courts would simply stay every case in which a defendant's Fifth Amendment rights may be implicated.").

*Fourth*, the Court can protect Powell's rights—to the extent they have not been waived—through a protective order. Precedent that Powell cites, *Louis Vuitton Malletier*, 676 F.3d at 102, notes the "alternative forms of relief, such as tailored stays, protective orders, quashing or modifying subpoenas, sealing confidential material, or even a renewed motion for a stay if specific impositions presented themselves" that provide "alternatives to a complete stay of the civil

proceedings." All of these alternatives are viable here. Smartmatic is seeking the reproduction of discovery Powell has provided elsewhere, whatever other responsive discovery Powell possesses, a privilege log for what she retains, and a deposition to examine her contacts and the declaration she submitted to oppose the Court's exercise of personal jurisdiction. The Court may enter a protective order or seal this information. On top of this, Smartmatic will agree not to ask Powell about the Predicate Acts alleged against her in the Fulton Action. *See Doe,* 2021 WL 11132750, at *1–3 (denying blanket stay because "Plaintiff's counsel has stipulated that it will forego questions or requests for documents regarding [the alleged crimes], unless [Defendant] waives privilege on those issues"). Powell may also renew her motion for stay after the Court adjudicates her personal jurisdiction defense. Each of these options is superior to a stay and minimizes any hardship to Powell (assuming, again, that she has not waived her Fifth Amendment rights).

### 2.      Smartmatic Will Suffer Hardship If This Case Is Stayed.

Staying jurisdictional discovery will prejudice Smartmatic. A stay would stop this case, filed in November 2021, from advancing beyond the pleading stage. That delay pushes the justice Smartmatic seeks further into the future. Smartmatic should not have to wait any longer than necessary to show that Powell is subject to jurisdiction. The delays Powell has created by objecting to personal jurisdiction and now seeking a stay compound each other and hurt Smartmatic, the victim of her defamation campaign. Smartmatic cannot clear its name without adjudicating Powell's personal jurisdiction defense first. *Cf. Barry Farm Resident Council, Inc. v. U.S. Dep't of Navy*, No. 96-01450, 1997 WL 118412, at *2 (D.D.C. Feb. 18, 1997) (denying stay because it would delay plaintiffs' receipt of relief); *Louis Vuitton Malletier*, 676 F.3d at 103–04 (same, because "a stay posed a particular risk to Vuitton's interest in the prompt resolution of its claims).

### D.      A Blanket Stay Is Inappropriate Because Powell Will Ask to Extend It.

The Court should take Powell's request for a "three month" stay with a grain of salt: she is lowballing the duration of the stay she will need to induce the Court to enter it. *See Skinner*, 2015 WL 540156, at *4–5 ("Contrary to Defendants' position, they *are* seeking an indefinite stay. Although they request a 60–or 90–day delay, there is no reason to think that the criminal case will be concluded in that amount of time, or that any of the Fifth Amendment concerns they assert will have abated at the conclusion of a two-or three-month delay. Thus, despite what they contend in their pleadings, Defendants want this case stayed until the criminal case has concluded. That process could take years (including trial, appeal, and collateral attacks)."). If Powell is concerned about her criminal liability, "[t]he only stay that could conceivably address [her] concerns is an indefinite one." *Id.* If she loses, she may appeal, and that process has no predictable timeline. *Cf. McSurely v. McClellan*, 426 F.2d 664, 672 (D.C. Cir. 1970) ("final resolution of [] criminal cases, including the resolution of any appeals if [a defendant is] convicted, may require considerable time"). This uncertainty weighs against a stay. *See Horn*, 210 F.R.D. at 15 (noting that a court in this Circuit "may abuse its discretion" by entering "a stay of indefinite duration in the absence of a pressing need"); *Skinner*, 2015 WL 540156, at *4 (indefinite stay "imposes an undue burden on Plaintiff and is an extreme measure which *Landis* strongly discourages").

## <u>CONCLUSION</u>

For these reasons, Smartmatic respectfully requests that the Court deny Powell's motion.

Dated:  September 15, 2023                    Respectfully submitted,


/s/  *J. Erik Connolly*

J. Erik Connolly
   D.C. Bar No. IL0099
   Email: econnolly@beneschlaw.com
Nicole E. Wrigley
   D.C. Bar No. IL0101
   Email: nwrigley@beneschlaw.com
Lee B. Muench (*admitted pro hac vice*)
   Illinois ARDC No. 6305846
   Email: lmuench@beneschlaw.com

BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: 312.212.4949

*Attorneys for the Plaintiffs Smartmatic USA
Corp., Smartmatic International Holding B.V.,
and SGO Corporation Limited*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of September, 2023, Smartmatic's Memorandum in Opposition to Defendant Sidney Powell's Motion to Stay was filed with the Clerk of the Court using the CM/ECF filing system, which I understand to have served counsel for the parties.


Dated:  September 15, 2023                    */s/  Lee B. Muench*
                                              Lee B. Muench