**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SMARTMATIC USA CORP., SMARTMATIC INTERNATIONAL HOLDING B.V., and SGO CORPORATION LIMITED, | ) ) ) ) | Case No. 21-cv-02995-CJN |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| SIDNEY POWELL, | ) ) | |
| Defendant. | ) ) | |

**SMARTMATIC'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO COMPEL
JURISDICTIONAL DISCOVERY**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 2

I.      Powell's Obstruction is Wasting Resources Because the Court Already
        Has Personal Jurisdiction Over Her for All of Her Defamatory Statements. ..................... 2

II.     Powell Has No Basis to Withold Evidence That Informs the Court's
        Jurisdiction Under D.C. CODE § 13-423(a)(1). ................................................. 5

III.    Powell Has No Basis to Withold Evidence That Informs the Court's
        Jurisdiction Under D.C. CODE § 13-423(a)(4). ............................................. 10

IV.     Powell Must Provide a Privilege Log. ............................................................. 11

V.      Powell Must Sit for a Deposition. ................................................................... 12

CONCLUSION .................................................................................................................. 14

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Associated Producers, LTD v. Vanderbilt Univ.*,
   76 F. Supp. 3d 154 (D.D.C. 2014) .................................................................6, 8

*Bazarian Int'l Fin. Assocs., L.L.C. v. Desarrollos Aerohotelco, C.A.*,
   168 F. Supp. 3d 1 (D.D.C. 2016) ....................................................................5

*Cockrum v. Donald J. Trump for President, Inc.*,
   319 F. Supp. 3d 158 (D.D.C. 2018) ................................................................7

*DL v. D.C.*,
   251 F.R.D. 38 (D.D.C. 2008) .........................................................................12

*Etchebarne-Bourdin v. Radice*,
   982 A.2d 752 (D.C. 2009) ...............................................................................10

*Helmer v. Doletskaya*,
   393 F.3d 201 (D.C. Cir. 2004) ........................................................................4

*Howser v. Pearson*,
   95 F. Supp. 936 (D.D.C. 1951) ......................................................................11

*IMAPizza, LLC v. At Pizza Ltd.*,
   334 F. Supp. 3d 95 (D.D.C. 2018) .................................................................5, 8

*King v. Whitmer*,
   505 F. Supp. 3d 720 (E.D. Mich. 2020) .........................................................14

*King v. Whitmer*,
   556 F. Supp. 3d 680 (E.D. Mich. 2021) .........................................................14

*Lapointe v. Van Note*,
   2004 WL 3609346 (D.D.C. Nov. 9, 2004) .....................................................11

*Lohrenz v. Donnelly*,
   187 F.R.D. 1 (D.D.C.1999) .............................................................................12

*Manifold v. Wolf Coach, Inc.*,
   231 F. Supp. 2d 58 (D.D.C. 2002) .................................................................8

*Nat'l R.R. Passenger Corp. v. R&R Visual, Inc.*,
   2007 WL 2071652 (D.D.C. July 19, 2007)....................................................4

*Oetiker v. Jurid Werke, G.m.b.H*,
  556 F. 2d 1 (D.C. Cir. 1997) ................................................................4

*Oparaugo v. Watts*,
  884 A.2d 63 (D.C. 2005) ..............................................................1, 2

*U.S. ex rel. Pogue v. Diabetes Treatment Centers of America, Inc.*,
  235 F.R.D. 521 (D.D.C.2006)....................................................12

*Quality Air Servs., L.L.C. v. Milwaukee Valve Co.*,
  567 F. Supp. 2d 96 (D.D.C. 2008) ..........................................5, 8

*Shoppers Food Warehouse v. Moreno*,
  746 A.2d 320 (D.C. 2000) ................................................................6

*Solers, Inc. v. Doe*,
  977 A.2d 941 (D.C. 2009) ..............................................................11

*US Dominion, Inc. v. Powell*,
  554 F. Supp. 3d 42 (D.D.C. 2021) ...................................6, 10, 11, 12

## Statutes

D.C. Code § 13-423 ...........................................................2, 5, 6, 10

## Other Authorities

Wright & Miller, 4A Fed. Prac. & Proc. Civ. § 1069.7 (4th ed.) ................................3, 4

# INTRODUCTION

Smartmatic seeks reasonable discovery to understand Defendant Sidney Powell's contacts with this District: (1) reproduction of documents she has already Bates-stamped and produced to others; (2) complete interrogatory answers using the information she has at her disposal; (3) a privilege log, if she is withholding relevant documents pursuant to a privilege; and (4) a deposition, so she can explain the documents she produces and inconsistencies in her statements regarding her jurisdictional contacts. These requests are fair. They will impose minimal burden on Powell and ensure that this Court has sufficient information to resolve her personal jurisdiction defense.

In her Opposition ("Opp."), Powell loses sight of the considerations that control this discovery dispute: the relevance of the requests at issue and the burden of compliance. Powell does not dispute that Smartmatic's requests seek *relevant* information. Smartmatic has tied every request to precedent from this Circuit that found the same information probative when conferring jurisdiction on a defendant. Nor does Powell make a meaningful burden objection. She is silent on burden because she can easily comply with Smartmatic's requests: Powell merely needs to supply the same information she has given to others and attend a deposition. It is not a heavy lift.

The main argument Powell makes is that Smartmatic's requests are overinclusive. She says that her communications with relevant fact witnesses will give Smartmatic too much discovery that overlaps with "merits" discovery. But Powell fails to appreciate that the Court's jurisdictional analysis overlaps with an element of Smartmatic's claim—specifically, the publication element.[1]

---

[1] In a defamation case, the "plaintiff must allege and prove four elements: "(1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) *that the defendant published the statement without privilege to a third party*; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm." *Oparaugo v. Watts*, 884 A.2d 63, 76 (D.C. 2005).

It is no surprise that some overlap exists. Discovery regarding Powell's jurisdictional contacts intersects with her defamatory publications and related communications. Powell exchanged communications in and out of the District of Columbia: to gather information to support her defamatory statements; to solicit funds to finance her election-related activities; to use those funds to compensate herself and those who assisted her in D.C.; and, ultimately, to make her defamatory statements on national television. Smartmatic seeks discovery regarding these contacts not to prove its claim, but because they show that Powell engaged (a) in a single course of conduct under D.C. Code § 13-423(a)(1), and (b) in a persistent course of conduct under D.C. Code § 13-423(a)(4).

Smartmatic is ***not*** seeking "merits" discovery. None of Smartmatic's discovery requests exceed contact-related information. While Powell generally refers to the "merits" of Smartmatic's claim, she ignores its elements. Smartmatic has not requested any discovery to prove that Powell's statements about Smartmatic were false and defamatory (element 1); that Powell was culpable for them (element 3); or that they harmed Smartmatic (element 4). *Oparaugo*, 884 A.2d 63, 76. Such merits discovery can wait. The discovery Smartmatic seeks now concerns Powell's contacts with the District and her use of it as the epicenter of her defamation campaign. Powell cannot be allowed to obstruct or delay this discovery any longer.

## ARGUMENT

### I.  Powell's Obstruction is Wasting Resources Because the Court Already Has Personal Jurisdiction Over Her for All of Her Defamatory Statements.

Powell's refusal to reproduce documents only delays their discovery, while depriving the Court of information it could use to assess its jurisdiction. Powell's refusal is dilatory because, under the pendent personal jurisdiction doctrine, this Court already has *in personam* jurisdiction over Powell for the statements she allegedly made after crossing into Virginia from D.C.

Powell does not dispute that the D.C. Circuit adopted the pendent personal jurisdiction doctrine, which has developed through federal common law.[2] Nor does Powell refute that the pendent personal jurisdiction doctrine would apply here because her statements on November 14, 15 and 16 arise from the same nucleus of operative facts as the statements she made on November 19 and December 10, 2020 in D.C. Powell makes no argument otherwise. This Court has pendent personal jurisdiction over Powell for her statements on November 14, 15 and 16, full stop.

The sole argument Powell makes to avoid pendent personal jurisdiction is purely legal and wrong. Powell asserts that the doctrine applies only when the Court (a) has federal question jurisdiction over a claim and personal jurisdiction over a party for the same claim, and (b) exercises jurisdiction over the non-federal question claims alleged against that same party.  While Powell accuses Smartmatic of misleading the Court, she should look in the mirror. As Professors Wright and Miller have explained,

> the pendent personal jurisdiction doctrine *in both the diversity and federal question contexts* is best articulated as follows: a district court has discretion to exercise personal jurisdiction over a claim that it ordinarily lacks personal jurisdiction over only when that claim arises out of the same common nucleus of operative fact as does a claim that is within the in personam jurisdiction power of the court.[3]

Wright & Miller, 4A Fed. Prac. & Proc. Civ. § 1069.7 (4th ed.). Exercising pendent personal jurisdiction applies in both diversity and federal question cases because, "*according to the weight*

---

[2] Powell gets every aspect of the doctrine wrong. At its core, it is not "grounded in" FRCP 4(k)(1)(C)," as Powell asserts. (Opp. at 23). Rather, the doctrine is "a creature of federal common law." Wright & Miller, 4A Fed. Prac. & Proc. Civ. § 1069.7 (4th ed.) Federal courts have developed it to balance (a) "fairness to the individual nonresident defendant" against "considerations of judicial efficiency, the federal policy against piecemeal litigation, and the plaintiff's convenience and need for a forum." *Id.*

[3] All internal citations and quotation marks have been omitted, and emphasis added, unless noted.

*of authority*, due process would not prevent obliging the defendant to defend against" the claims together. *Id.*

The D.C. Circuit follows this modern "weight of authority" and rejects the position that Powell advanced.[4] Courts in this Circuit have *repeatedly* applied the pendent personal jurisdiction doctrine in both federal question *and* diversity cases. For example, in *Helmer v. Doletskaya*, 393 F.3d 201, 203 (D.C. Cir. 2004), the D.C. Circuit reversed dismissal of a diversity case for lack of personal jurisdiction and directed the district court to consider "exercis[ing] pendent personal jurisdiction over the dismissed claims…." The only claim that survived dismissal was a state law "contract claim for repayment of credit card charges." *Id.* None of the other contractual claims had a sufficient connection with the District of Columbia to support personal jurisdiction. *Id.* Nevertheless, the court held that "the district court may have discretion to exercise pendent personal jurisdiction over the dismissed claims." *Id.* at 203, 210. Consistent with *Helmer*, the D.C. District Court has applied the pendent personal jurisdiction doctrine in diversity cases. *See, e.g.,*

---

[4] Powell cites *Oetiker v. Jurid Werke, G.m.b.H*, 556 F. 2d 1 (D.C. Cir. 1997) to argue that pendent personal jurisdiction is only applied in federal question cases in the D.C. Circuit. However, *Oetiker* does *not* limit the doctrine's application to federal question cases. Contrary to Powell's argument, the court in a footnote cites to cases from around the country where courts upheld the exercise of pendent personal jurisdiction, stating, "We believe these authorities are better reasoned than some older cases in other fields of law that disapproved of the concept of pendent personal jurisdiction." *Id*. at 4–5 & n. 10. Nowhere does the D.C. Circuit state that application of the doctrine is permitted exclusively in federal question cases.

The only other D.C. Circuit case that Powell cites is *Nat'l R.R. Passenger Corp. v. R&R Visual, Inc.*, 2007 WL 2071652 (D.D.C. July 19, 2007). However, the *Nat'l R.R. Passenger Corp.* court acknowledged that "pendent personal jurisdiction permits a court to entertain a claim against a defendant over whom it lacks personal jurisdiction, but *only if* that claim arises from a common nucleus of operative fact with a claim in the same suit for which the court *does* have personal jurisdiction over the defendant." *Id*. at *2 (citing Wright & Miller, Fed. Prac. & Proc. § 3523 n. 21 (3d ed.)). The court declined to apply the doctrine because it lacked personal jurisdiction over *any* claim against the defendant—whereas here, the Court has already established that personal jurisdiction exists for Powell's November 19, 2020 and December 10, 2020 defamatory statements.

*Bazarian Int'l Fin. Assocs., L.L.C. v. Desarrollos Aerohotelco, C.A.*, 168 F. Supp. 3d 1, 12 n. 6 (D.D.C. 2016) (exercising pendant personal jurisdiction in diversity action over defendant for plaintiff's quantum meruit claim because it "shares a common nucleus of operative facts with "plaintiff's breach of contract claim," and doing so "serves the interests of judicial economy, convenience and fairness to litigants so that the facts need only be litigated once").

Powell's refusal to accept that she is subject to personal jurisdiction is protracting this litigation. The futility of her defense warrants making her produce the relevant information she possesses. She has no burden providing it, and its disclosure will only enhance the Court's understanding of its jurisdiction. Letting Powell selectively carve out documents from her prior productions serves no interest that discovery aims to accomplish.

## II.   Powell Has No Basis to Withold Evidence That Informs the Court's Jurisdiction Under D.C. CODE § 13-423(a)(1).

Smartmatic is entitled to discovery from Powell about the business transactions she conducted in the District that have a discernible relationship to her defamatory statements. Powell is now attempting to restrict jurisdictional discovery to *subsets* of those transactions. Her approach is irreconcilable with § 13-423(a)(1) and D.C. Circuit precedent construing it.

***First***, Powell ignores the breadth of § 13-423(a)(1) and the types of transactions that courts have considered relevant. She does not dispute that the D.C. Circuit has adopted the "discernable relationship" test, which "requires the loosest fit between a defendant's forum contacts and a plaintiff's claim."[5] *Quality Air Servs., L.L.C. v. Milwaukee Valve Co.*, 567 F. Supp. 2d 96, 100

---

[5] Powell distorts the "discernible relationship" test to narrow the scope of jurisdictional discovery. She asserts—without any authority—that a "discernible relationship" requires a "substantial nexus" between Smartmatic's claims and Powell's business transactions. (Opp. at 9). But Powell is making up law. Under D.C. Circuit precedent, a discernible relationship "is a relatively low bar for suit-relatedness." *IMAPizza, LLC v. At Pizza Ltd.*, 334 F. Supp. 95, 112–13 (D.D.C. 2018). Powell cites no case that transforms a "discernible relationship" into a more heightened test.

5

(D.D.C. 2008). Nor does Powell dispute that "a small amount of in-jurisdiction business activity" is sufficient to conclude that "a nonresident defendant has transacted business here." *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 331 (D.C. 2000). Instead, Powell argues that the Court's exercise of personal jurisdiction under § 13-423(a)(1) does not comport with due process. But that is not the focus of the Court's present inquiry. Smartmatic needs jurisdictional discovery *to develop the record of Powell's contacts*. Then, the parties can litigate whether the exercise of personal jurisdiction over her for her November 14–16, 2020 statements is constitutional.[6] Powell's due process challenge puts the cart before the horse.

    ***Second***, Smartmatic designed its discovery requests to show that Powell's November 14, 15 and 16 statements "were not a separate and distinct act from [her defamatory statements in D.C.], but part of a single course of conduct" under § 13-423(a)(1). *Associated Producers, LTD v. Vanderbilt Univ.*, 76 F. Supp. 3d 154, 164 (D.D.C. 2014). Undoubtedly, they were. Powell's defamatory statements all arose from the same disinformation campaign that Powell and her co-conspirators coordinated and executed. Powell ignores this theory of personal jurisdiction in her opposition. She makes no attempt to distinguish her statements on November 14, 15, and 16 from the statements over which this Court has found it has jurisdiction. Smartmatic's jurisdictional discovery requests will connect the dots and establish that Powell's defamatory statements on November 14, 15, and 16 were part of a single transaction.

---

[6] In her opposition, Powell argues that the timeframe for jurisdictional discovery "should be limited" to "November and early December 2020." Opp. at 10. For purposes of resolving this motion, Smartmatic will accept the timeframes in the productions that Powell has already made to other parties. Based on publicly available information, it appears that Powell produced documents to the January 6 Committee and the *Dominion* Plaintiffs, but not in the *Coomer* litigation, which is stayed pending Powell's appeal of the court's denial of her motion to dismiss.

**Third**, Powell ignores that Smartmatic seeks discovery about the same types of transactions that courts have found relevant: (a) traveling into and out of D.C., especially between D.C. and Virginia, to attend meetings and execute transactions; (b) making "qualitatively significant" communications into D.C. to facilitate business transactions; (C) conducting research; (d) soliciting donations and using those funds in D.C.; and (e) accepting donations with the express or implied promise to perform acts in D.C. *See* ECF No. 42-1 at 11–20. Powell does not dispute that this information is relevant under D.C. Circuit law.

Rather, Powell maintains that the Court should confine discovery to the contacts that she prefers to disclose. (Opp. at 10). But that restriction helps no one but Powell. It does not enrich the jurisdictional discovery record. Nor does Powell provide any authority to support her proposed "guardrails" on jurisdictional discovery. The one case that she cites throughout her brief— *Cockrum v. Donald J. Trump for President, Inc.*, 319 F. Supp. 3d 158 (D.D.C. 2018)—shows that Smartmatic's discovery requests are reasonable. In *Cockrum*, the court criticized the plaintiffs' "wide-ranging discovery" requests because they sought, for instance, "depositions of *all persons* with [relevant] knowledge," including "Trump Campaign officials who are now high-level officials in the Executive Branch, possibly even the President." *Id.* at 189. Here, by contrast, Smartmatic seeks to depose one person: Powell. As the *Cockrum* court noted, "[a]n important factor" in considering a discovery request "is the burden imposed by the [requested] discovery order[]." *Id.* Powell has no burden in this case. In fact, she would be creating work for herself by removing documents from her existing productions instead of simply reproducing them.

Finally, the specific "guardrails" that Powell proposes underscore how much relevant information she is trying to withhold. *One*, Powell contends that Smartmatic should receive documents only about her media appearances that she concedes took place in D.C. But this

limitation would hinder Smartmatic's showing that Powell's statements were all part of the same "course of conduct," *Associated Producers*, 76 F. Supp. 3d at 164, and tortious "scheme." *IMAPizza*, 334 F. Supp. 3d at 114–115. Powell has testified that she was in D.C. on and after Election Night and that, during that timeframe, she worked with others to undermine the 2020 election and spread disinformation. *See* ECF No. 42-1 at 11–16. Smartmatic seeks discovery to connect Powell's contacts with the District—such as joining a conspiracy to defame and undertaking acts in furtherance of that conspiracy—to the statements she made on November 14, 15 and 16. That information would fill the gaps Powell has created through her incomplete interrogatory responses and document production.

*Two*, Powell seeks to restrict Smartmatic to documents showing when she stayed in D.C. hotels. But Powell's prior statements show why those documents are insufficient. For instance, Powell now claims that, despite boasting to others that she was "in DC nonstop" "working 24-7" after Election Day, she was allegedly not in D.C. (*Compare* Mot. to Compel Ex. 8 *with* Opp. at 12). Powell contends that "*she understood*" the District of Columbia "*to include Virginia*." (*Id.*) Powell cannot be serious. Even if we take her statement at face value, it places Powell in the crosshairs of precedent like *Quality Air Servs., L.L.C. v. Milwaukee Valve Co.*, 567 F. Supp. 2d 96, 100 (D.D.C. 2008) and *Manifold v. Wolf Coach, Inc.*, 231 F. Supp. 2d 58, 63 (D.D.C. 2002). Courts in this District routinely exercise jurisdiction over a defendant, like Powell, who traipses back and forth between D.C. and Virginia and stays in the latter to have close access to the former. Powell has no basis to withhold discovery that reveals her travel to and from D.C. and Virgina and the relevant communications Powell sent crisscrossing between them.

*Three*, Powell seeks to restrict Smartmatic to donations she received from D.C. residents. But that limitation would deny Smartmatic discovery about the solicitations Powell made of non-

D.C. residents while in D.C. For example, Powell is coy about how she solicited $100,000 from Julia Fancelli. Powell's January 6 Committee testimony indicates that Powell used Michael Flynn to solicit Fancelli. (ECF No. 42-3 at 111:11-22). Here, Powell has averred that her representation of Flynn has no possible relevance to the Court's exercise of jurisdiction. (ECFF No. 23-3 ¶¶ 12–16). But if Powell was using Flynn to raise funds in D.C., that fundraising would inform her contacts. Powell also ignores the relevance of her agreements with her donors: Powell fulfilled her end of the bargain by "defending the republic," including through activities she conducted in D.C. Communications that Powell had with her donors will shed light on what she agreed to undertake. And, Powell admits that she used the funds she solicited to pay people to assist her election subversion efforts in D.C. (ECF No. 42-3 at 42:3–43:1, 52:15–20, 112:16–25). Those payments are relevant transactions. Powell has no basis to deny Smartmatic discovery into any of these jurisdictional contacts.

*Finally*, Powell seeks to limit Smartmatic's discovery to specific meetings she attended in D.C. before she made her defamatory statements on November 14, 15 and 16. (Opp. at 13–14). This limitation only helps Powell hide relevant jurisdictional information. As Powell acknowledges, "activities that occur after the injury occurred could be circumstantial evidence that conspiracies had existed." Opp. at 14 (citing *Cockrum*, 319 F. Supp. 3d at 178–79). Smartmatic is entitled to discovery regarding whatever meetings Powell attended in D.C. in the timeframes for the productions she has made. Again, Powell is trying to carve out documents from those productions to shrink the record. But she presents no privilege to withhold those documents. If the meetings have a "discernible relationship" to Powell's defamatory statements on November 14–16, they support the Court's exercise of personal jurisdiction and must be produced.

**III.    Powell Has No Basis to Withold Evidence That Informs the Court's Jurisdiction Under D.C. CODE § 13-423(a)(4).**

For all the ink the parties have spilled on Section 13-423(a)(1), Powell gives the Court an easy out on Section 13-423(a)(4): she does not dispute that this provision confers jurisdiction over her for engaging in a persistent course of conduct in D.C. Nor does Powell dispute that probative evidence of such conduct includes largely the same discovery Smartmatic seeks under Section 13-423(a)(1): evidence of (a) travel into and out of the District to attend meetings, (b) conducting research in the District to make defamatory statements, (c) participating in broadcasts that Powell knew would be aired in the District, (d) making purposeful communications into the District to accomplish objectives in the District, and (e) soliciting and/or receiving funds in the District and/or from D.C. residents. Powell ignores that *no causal relationship is necessary* between the defendant's contacts under Section 13-423(a)(4) and the plaintiff's claim for the contacts to be relevant. *See Etchebarne-Bourdin v. Radice*, 982 A.2d 752, 763 (D.C. 2009).

Instead, Powell hangs her hat on an argument that this Court has already rejected: that a voting machine company, like Smartmatic, that is not based in D.C. cannot suffer injury here. The Court dispatched this same argument when Powell tried it against Dominion. *See US Dominion, Inc. v. Powell*, 554 F. Supp. 3d 42, 66–67 (D.D.C. 2021). In *US Dominion*, Powell argued that Dominion did not suffer tortious injury "in the District of Columbia" because it failed to allege specific injuries in the District, and that a defamation plaintiff's injury "occurs [only] where the plaintiff lives and works." *See* Mem. of Law in Supp. of Mot. to Dismiss in *Powell* (filed Mar. 22, 2021), ECF No. 22-2, at 12. But the Court rejected this argument because:

> Dominion—a voting machine provider—certainly has an interest in maintaining its reputation with the federal government and the state governments that might be influenced by federal employees, and it has alleged that Powell caused injury to that reputation when she spoke to audiences here.

*Powell*, 554 F. Supp. 3d 42 at 66–67.

Likewise, Smartmatic alleges that it suffered injury in the District because of Powell's defamatory statements. Smartmatic suffered injury in D.C. because it operates in the voting machine and software industry, and elected officials who operate in the District are positioned to influence its success. *See* Compl. ¶¶ 368 (Powell's statements were a "substantial cause of Smartmatic's name and brand becoming synonymous with election fraud with members of the general public and government officials"), 372 (government officials, including those "directly or indirectly involved in the selection of the voting system used in their jurisdiction," began to oppose the use of electronic voting systems, including Smartmatic's); *see also id.* ¶¶ 16–18, 77, 84, 86, 90, 101, 109, 365. These allegations show injury in the District, just as they did in *US Dominion* and other cases. *See Powell*, 554 F. Supp. 3d at 66–67; *see also Solers, Inc. v. Doe*, 977 A.2d 941, 949 (D.C. 2009) (plaintiff stated defamation claim where it alleged that it "has been deprived of its good commercial reputation, subject[ed] to contempt and . . . [that] others within [its] industry [have been deterred] from dealing with it"); *Lapointe v. Van Note*, 2004 WL 3609346 at *6 (D.D.C. Nov. 9, 2004) ("An injury by libel occurs at the site of publication."); *Howser v. Pearson*, 95 F. Supp. 936, 938 (D.D.C. 1951) ("Libel and slander take place where the defamatory statement is communicated."). Powell's argument that Smartmatic lacks injury in the District is meritless and no basis to deny jurisdictional discovery.

## IV.   Powell Must Provide a Privilege Log.

Smartmatic has given Powell every opportunity to preserve her privilege objections and provide a privilege log. It is confounding that she still refuses. Even worse, she failed to address Smartmatic's request in her opposition. In similar circumstances, where a party makes no effort to substantiate a boilerplate privilege objection, courts have found the objection waived. *See* ECF No.42-1 at 23–24. This Court should make a similar finding, overrule Powell's blanket privilege

objections, and make her produce all responsive documents. Or, at the very least, Powell must produce a log with specific objections "to assess whether the privilege applies." *U.S. ex rel. Pogue v. Diabetes Treatment Centers of America, Inc.,* 235 F.R.D. 521, 523 (D.D.C.2006); *DL v. D.C.*, 251 F.R.D. 38, 45 (D.D.C. 2008); *Lohrenz v. Donnelly,* 187 F.R.D. 1, 6–7 (D.D.C.1999).

### V.     Powell Must Sit for a Deposition.

Powell's request—an order prohibiting Smartmatic from deposing her—is as groundless as it is prejudicial. A complete prohibition of a deposition is a drastic remedy. Powell still cannot cite a single example where a court authorized jurisdictional discovery yet foreclosed a deposition.[7] It is a discovery tool that Federal Rules of Civil Procedure prescribe.

Here, a deposition is an appropriate and necessary means for jurisdictional discovery. *First*, Smartmatic will use the deposition to question Powell regarding the Declaration she presented in her motion to dismiss. The Court cited Powell's averments in that Declaration to distinguish this case from *US Dominion* and defer ruling on Powell's motion to dismiss. Mem. Op. at 6. Powell avers that she "was not in the District of Columbia or staying at a hotel in the District of Columbia on November 14-16, 2020" and was instead at her hotel in Virginia when she defamed Smartmatic on Fox. ECF No. 23-3 ¶19. Smartmatic must be allowed to test these averments, especially because Powell is less definitive in her interrogatory responses. She now swears that:

> [t]he only times Powell was in the District of Columbia in connection with her identified statements, *to the best of her recollection*, were the statements she made on November 19, 2020 at the RNC and statements she made from the Trump Hotel on the December 10, 2020 Lou Dobbs Fox broadcast.

ECF No. 42-5, Interrogatory No. 8.

---

[7] Every case that Powell cites to oppose a deposition denied jurisdictional discovery. None of Powell's cases support her effort to dodge a deposition.

Powell is also evasive regarding where she was during her Fox interview on November 19. *See* Opp. at 11. Powell's interrogatory responses indicate that she remained at the RNC after the press conference and conducted her Fox interview there. But Powell now asserts that her interrogatory response makes no such admission. (Opp. at 11 n. 4). Yet, she still refuses to disclose where she was. Deposing Powell is the only way Smartmatic can test Powell's representations.

***Second***, Smartmatic needs a deposition to fill in the holes between the testimony that she and her alleged co-conspirators, including Rudy Giuliani, have given regarding her contacts with the District. When Powell testified before the January 6 Committee, it was not trying to understand her contacts with the District. That was not the Committee's objective. Rather, the Committee sought information from Powell to understand the events that culminated in the January 6 attack on the U.S. Capitol. Smartmatic, on the other hand, will depose Powell to explore her contacts with the District. A deposition will also clarify conflicting statements that Powell has made regarding her contacts. For instance, Powell asserts in a footnote that she did not talk to Giuliani. *See* Opp. at 14 n. 6 ("Ms. Powell and Giuliani didn't really talk."). But Powell testified before the January 6 Committee that she and Giuliani shared information in D.C. to support their election subversion efforts. *See* Ex. 1 at 37:15–24.

***Third***, Smartmatic needs a deposition to understand the documents Powell produced and gaps in the record. Powell's previous statements and testimony on her whereabouts and contacts with the District in November and December 2020 have been inconsistent. For instance, Powell sent an email on November 8, 2020 indicating that she was "***in DC nonstop***" and "***[w]orking 24-7.***" *See* Mot. to Compel, Ex. 8. In her testimony to the January 6 Committee, Powell confirmed that she had "***set up base in Washington***" after the November 8 meeting at the White House. But

Powell now claims that she meant to say that she was in "Virginia" nonstop. (Opp. at 12). Even if Powell misspoke, Smartmatic must examine the accuracy of her statement.

Last, Powell's track record of making misrepresentations and omissions—whether to the general public, a congressional committee, or a court—necessitates a deposition. This case stems from Powell knowingly spreading falsehoods about Smartmatic. Powell has been indicted for allegedly perjuring herself before the January 6 Committee. She has also been sanctioned for making misleading representations to the U.S. District Court for the Eastern District of Michigan in a case she filed alleging "massive election fraud" in the 2020 U.S. presidential election.[8] No person who so misleads should be allowed to rest on assertions her attorneys drafted to avoid this Court's jurisdiction. Powell must sit for a deposition, like every other litigant, and answer the questions Smartmatic has about her contacts with the District.

## CONCLUSION

Smartmatic has demonstrated the relevance of its jurisdictional discovery requests. Powell has shown no burden in answering them. Smartmatic is entitled to the discovery Powell is withholding and could readily produce. For these reasons, Smartmatic respectfully requests that the Court grant Smartmatic's Motion to Compel Jurisdictional Discovery and enter its Proposed Order (ECF No. 42-11).

---

[8] The court found that Powell and her co-counsel had submitted "nothing but speculation and conjecture that votes for President Trump were destroyed, discarded or switched to votes for Vice President Biden." *King v. Whitmer*, 505 F. Supp. 3d 720, 738 (E.D. Mich. 2020). The court sanctioned Powell and her co-counsel, stating that they "filed this lawsuit in bad faith and for an improper purpose…sanctions are required to deter the filing of future frivolous lawsuits designed primarily to spread the narrative that our election processes are rigged and our democratic institutions cannot be trusted." *King v. Whitmer*, 556 F. Supp. 3d 680, 735 (E.D. Mich. 2021).

Dated:  September 22, 2023

Respectfully submitted,

/s/  *J. Erik Connolly*

J. Erik Connolly
    D.C. Bar No. IL0099
    Email: econnolly@beneschlaw.com
Nicole E. Wrigley
    D.C. Bar No. IL0101
    Email: nwrigley@beneschlaw.com
Lee B. Muench (*admitted pro hac vice*)
    Illinois ARDC No. 6305846
    Email: lmuench@beneschlaw.com

BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: 312.212.4949

*Attorneys for the Plaintiffs Smartmatic USA*
*Corp., Smartmatic International Holding*
*B.V., and SGO Corporation Limited*

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of September, 2023, Smartmatic's Reply Memorandum in Support of Its Motion to Compel Jurisdictional Discovery was filed with the Clerk of the Court using the CM/ECF filing system, which I understand to have served counsel for the parties.


Dated:  September 22, 2023                              */s/  Lee B. Muench*                              
                                                       Lee B. Muench