UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SMARTMATIC USA CORP., *et al.*

    *Plaintiffs*,

v.

SIDNEY POWELL,

    *Defendant*.

Civil Action No. 1:21-cv-02995 (CJN)

**MEMORANDUM OPINION**

Smartmatic USA Corp., Smartmatic International Holding B.V., and SGO Corporation Limited (collectively, "Smartmatic") sued Sidney Powell for making allegedly defamatory statements about Smartmatic's role in the 2020 election. Powell moved to dismiss the complaint on several grounds. ECF 23. The Court previously concluded that it has personal jurisdiction over Smartmatic's claims. *See* ECF 38; ECF 55. For the reasons that follow, the Court rejects Powell's remaining arguments and denies her motion to dismiss.

**I.**     **Background**

Because the Court's earlier memorandum opinion lays out the underlying contentions in this case in detail, *see* ECF 38 at 2–5, the Court repeats only those allegations—which, of course, it assumes are true for purposes of the motion to dismiss—that are necessary to resolve Powell's remaining arguments. Smartmatic USA Corp. is an election technology and software company based in Florida and incorporated in Delaware. ECF 1 ¶ 1. Smartmatic International Holding B.V. is a Netherlands corporation that owns Smartmatic USA, among other Smartmatic brands. *Id.* ¶ 2. And SGO Corporation Limited is incorporated in the United Kingdom and owns Smartmatic B.V. *Id.* ¶ 3. These Smartmatic entities allege that Sidney Powell's "disinformation campaign"

1

following the 2020 election "irreparably tarnished the Smartmatic brand (corporate and product) in the United States and throughout the world." *Id.* ¶ 4. Smartmatic originally sued Powell, Rudy Giuliani, and other parties in New York state court, but it later brought this "materially identical" suit here against Powell alone. *Id.* at 1 (Preliminary Statement); ECF 27 at 2.

Powell moved to dismiss Smartmatic's complaint on numerous grounds. ECF 23-2. The Court previously addressed that portion of Powell's motion regarding personal jurisdiction. The Court initially concluded that it had personal jurisdiction over Powell's statements from a press conference on November 19 and an interview on December 10 because Smartmatic sufficiently pleaded that she made these statements from the District of Columbia. *See* ECF 38 at 6–7. It also held, however, that Smartmatic had not yet established that Powell had made the other statements cited in the complaint from the District. *Id.* at 7–8. The Court accordingly gave Smartmatic the option to amend its complaint or take jurisdictional discovery on Powell's contacts with the District. *Id.* at 9.

Smartmatic moved to compel jurisdictional discovery. ECF 42. In its motion, it contended for the first time that the Court had pendent personal jurisdiction over claims based on the other statements because they arose out of a common nucleus of operative facts. ECF 42-1 at 5–9. The Court agreed that it could exercise pendent personal jurisdiction over the other claims, so it denied the portion of Powell's motion to dismiss regarding personal jurisdiction. ECF 55. In a subsequent status report, Powell also withdrew her argument that the District of Columbia is not a proper venue for this case. *See* ECF 56 at 1. Powell's remaining arguments for dismissal are therefore that Smartmatic's complaint violates federal pleading standards, that Smartmatic B.V. and SGO lack standing, and that several claims run afoul of the substantive requirements for defamation and injurious falsehood. ECF 23-2 at 10–28.

## II. Federal Pleading Standards

Federal Rule of Civil Procedure 8(a) provides that a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "The burden imposed by the rule is by no means exacting," as "the provision generously accords the plaintiff wide latitude in framing his claims for relief." *Brown v. Califano*, 75 F.R.D. 497, 499 (D.D.C. 1977). And "[e]nforcing th[is] rule[] is largely a matter for the trial court's discretion." *Ciralsky v. CIA*, 355 F.3d 661, 669 (D.C. Cir. 2004).

Powell contends that Smartmatic's complaint—at 544 paragraphs over 203 pages—is too long and repetitive to satisfy Rule 8(a). ECF 23-2 at 10–13. Rule 8, however, "does not require a 'short and plain *complaint*,' but rather a 'short and plain statement of the *claim*.'" *Ciralsky*, 355 F.3d at 670 (quoting Fed. R. Civ. P. 8(a)(2)). Powell focuses on "[t]he complaint's lack of clarity and brevity" and cites examples of lengthy allegations made in the factual allegations section. *See* ECF 23-2 at 12–13. But the causes of action portion—where the claims are located—is relatively concise, raising 12 claims over a total of just 26 pages. *See* ECF 1 at 171–96; *see also Ciralsky*, 355 F.3d at 670 (favorably discussing a claims section that "averaged only 2 pages per claim"). In addition, even if the complaint is long, it is entirely coherent and "give[s] fair notice of the claim[s] being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Brown*, 75 F.R.D. at 498. Given that statements made by non-parties like Rudy Giuliani and Fox News hosts provide context for understanding Powell's various statements, their inclusion is "certainly not so extreme as to render the allegations unintelligible, as would be needed to warrant dismissal." *T.M. v. District of Columbia*, 961 F. Supp. 2d 169, 175 (D.D.C. 2013).

Federal Rule of Civil Procedure 12(f) relatedly empowers the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The party seeking to strike material must make a "demanding showing" because "motions to strike are not favored." *D.C. Int'l Charter Sch. v. Lemus*, 660 F. Supp. 3d 1, 19 (D.D.C. 2023) (citation and internal quotation marks omitted); *see also Williams v. Spencer*, 883 F. Supp. 2d 165, 173 (D.D.C. 2012) ("[M]otions to strike under Rule 12(f) are generally strongly disfavored." (citation and internal quotation marks omitted)).

Powell argues that "a majority of the paragraphs alleged in Smartmatic's complaint are immaterial . . . [,] impertinent . . . [, and] redundant." ECF 23-2 at 13–15. But the complaint's references to statements from Giuliani and Fox News hosts are not "immaterial" nor "impertinent" because they contextualize Powell's statements. Fed. R. Civ. P. 12(f). And although Powell flags ten paragraphs as problematic for "restat[ing] statements allegedly made by . . . Powell or statements made by others and unrelated to her," ECF 23-2 at 14–15, the complaint's description of how Powell's statements were publicized and related to other statements provides relevant context beyond mere repetition of their content, *see, e.g.*, ECF 1 ¶ 101 (describing how Lou Dobbs "started his program by playing portions of a press conference held by . . . Powell"). It is therefore not the case that "the allegations in question can have no possible bearing on the subject matter of the litigation," as needed to overcome the strong presumption against motions to strike. *Nugent v. Unum Life Ins. Co. of Am.*, 752 F. Supp. 2d 46, 58 (D.D.C. 2010) (citation and internal quotation marks omitted).

### III.     Standing

Powell argues that Smartmatic International Holding B.V. and SGO Corporation Limited lack "standing" because of their status as parent companies of Smartmatic USA. ECF 23-2 at 15–

18. Relying on Florida law,[1] she contends that "a shareholder cannot sue in the shareholder's name for injuries suffered by a corporation 'unless there is a special duty between the wrongdoer and the shareholder, and the shareholder has suffered an injury separate and distinct from that suffered by other shareholders.'" *Id.* at 15 (quoting *Harrington v. Batchelor*, 781 So. 2d 1133, 1135–36 (Fla. Dist. Ct. App. 2001)). And she argues that "Smartmatic BV and SGO do not allege injury 'separate and distinct' from Smartmatic USA." *Id.* at 17.

As a threshold matter, Powell's framing of this argument is ambiguous as to what sort of "standing" she contests. She relies on cases applying Florida law, but state standing law is distinct from whether a federal court can address "[c]ases" or "[c]ontroversies" under Article III of the United States Constitution. *Cf. Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 262 n.8 (1977) ("State law of standing, however, does not govern such determinations in the federal courts."). The Florida cases Powell cites invoke "standing" only in passing and instead center around whether shareholders can bring suits in Florida individually or only as derivative actions. *See, e.g.*, *Harrington*, 781 So. 2d at 1135 (explaining that "[t]he defendants sought dismissal of the action, contending that the stated claims could only be brought by a derivative action on behalf of the corporation"); *Citizens Nat. Bank of St. Petersburg v. Peters*, 175 So. 2d

---

[1] Powell contends that Florida law governs this dispute because that state is Smartmatic USA's domicile. *See* ECF 23-2 at 10. Smartmatic, in contrast, argues that District of Columbia law applies by default, or, in the alternative, because the District has a more significant relationship to this case. *See* ECF 27 at 32–34. Throughout this opinion, the Court generally assumes without deciding that Florida law applies merely for the sake of evaluating Powell's arguments, many of which are based on Florida law. But given that Smartmatic raises a plausible argument that District law applies as the default because Powell has not identified a true conflict on several issues, *see Young Women's Christian Ass'n of the Nat'l Cap. Area, Inc. v. Allstate Ins. Co. of Can.*, 275 F.3d 1145, 1150 (D.C. Cir. 2002); *Krukas v. AARP, Inc.*, 376 F. Supp. 3d 1, 27 (D.D.C. 2019), the Court refrains at this stage from definitively deciding which jurisdiction's law applies. After all, there is substantial overlap in the relevant substantive law across both jurisdictions, and Powell cannot prevail at this stage even under her preferred Florida law.

54, 56 (Fla. Dist. Ct. App. 1965) (comparing "a derivative suit as an action in which a stockholder seeks to enforce a right of action *existing in the corporation*" versus "a direct action, or as some prefer, an individual action, [which] is a suit by a stockholder to enforce a right of action *existing in him*").  Powell also relies on a decision from this district that discusses "prudential standing principles," including "the 'shareholder standing rule,'" which commands that "a parent corporation cannot bring an action on behalf of its subsidiary."[2]  *Wash. Tennis & Educ. Found., Inc. v. Clark Nexsen, Inc.*, 270 F. Supp. 3d 158, 163–64 (D.D.C. 2017) (citation omitted).  But Powell does not expressly contend that she is making a prudential standing argument.

To the extent that Powell suggests that Smartmatic B.V. and SGO lack standing in the Article III sense, she is wrong.  To establish standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).  The complaint alleges that Smartmatic USA, Smartmatic B.V., and SGO each suffered independent injuries from Powell's statements.  *See, e.g.*, ECF 1 ¶ 4 (stating that "[e]ach of the companies owned by SGO . . . was injured as a result of Ms. Powell's and her co-conspirators' disinformation campaign that irreparably tarnished the Smartmatic brand (corporate and product) in the United States and throughout the world").  It is evident that Powell spoke of "Smartmatic" generally in a way that could negatively impact all three Smartmatic entities, not just Smartmatic USA.  *See, e.g.*, *id.* ¶ 149(v) (alleging that Powell falsely stated that "[w]e now have reams and reams of actual documents from Smartmatic and

---

[2] She similarly relies on an out-of-circuit decision for the proposition that "[o]ne well-established prudential-standing limitation is the principle that a litigant cannot sue in federal court to enforce the rights of third parties."  *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 757 (7th Cir. 2008).

Dominion, including evidence that they planned and executed all of this."). And Powell's statements about Smartmatic's foreign connections further confirm that the complaint's allegations of injuries are not limited to Smartmatic USA. *See, e.g.*, *id.* ¶ 182(b) ("It's either Symantec or Smartmatic or the two, there – one is a subsidiary of the other. It's all inexplicably intertwined. The money creating it came out of Venezuela and Cuba. It was created for the express purpose of being able to alter votes and secure the reelection of Hugo Chávez. And then Maduro."). Indeed, one of her alleged statements explicitly referred to SGO's former chairman. *See id.* ("Lord Malloch-Brown's name has been taken off the website for the company that he runs through the U.K. and Canada – that has a role in this."). In light of these allegations, Smartmatic has met its burden at this stage to plead that Smartmatic B.V. and SGO each suffered a concrete and particularized injury-in-fact caused by Powell's statements that could likely be redressed by judicial relief.

To the extent that Powell asserts that Smartmatic B.V. and SGO cannot bring this suit under Florida law and/or prudential standing principles due to their status as parent companies, she is again incorrect. Because the complaint alleges that Smartmatic B.V. and SGO suffered distinct injuries themselves—not merely indirect injuries from the claimed defamation of Smartmatic USA—this case does not present a situation in which a parent company is impermissibly suing on behalf of a subsidiary. *See Citizens Nat. Bank*, 175 So. 2d at 56 ("[A] stockholder may bring a suit in his own right to redress an injury sustained directly by him, and which is separate and distinct from that sustained by other stockholders."); *Wash. Tennis*, 270 F. Supp. 3d at 164 (explaining that "the shareholder standing rule" applies where a plaintiff "bring[s] an action on behalf of its subsidiary"). Rules against derivative suits are therefore inapplicable here.

### IV.  Substantive Objections

Powell raises four categories of substantive challenges to Smartmatic's underlying claims. She contends that Florida's single publication/action rule bars Smartmatic from asserting claims for both defamation and injurious falsehood based on the same statements. ECF 23-2 at 18–21. She argues that the Court should dismiss Smartmatic's injurious falsehood claims for failing to plead special damages. *Id.* at 21–22. She contends that several of Smartmatic's defamation claims are deficient for not pleading special damages because they actually sound in injurious falsehood. *Id.* at 22–24. And she argues that the Court should dismiss certain claims that are supported only by statements made by individuals other than Powell. *Id.* at 24–28.

### A.  Single Publication/Action Rule

Powell argues that Smartmatic's injurious falsehood claims must be dismissed because they are based on the same statements that form the basis for its defamation claims. *Id.* at 18–21. She relies on Florida cases adopting a so-called single publication/action rule, which "does not permit multiple actions to be maintained when they arise from the same publication upon which a failed defamation claim is based." *Ovadia v. Bloom*, 756 So. 2d 137, 141 (Fla. Dist. Ct. App. 2000) (emphasis omitted); *see also Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208–10 (Fla. Dist. Ct. App. 2002). This contention, however, overlooks the role of federal procedural law in cases based on diversity jurisdiction and would require an extension of the single publication/action rule beyond where Florida courts have applied it.

The Federal Rules of Civil Procedure, not state law, govern pleading claims in the alternative. "[A] valid Rule of Civil Procedure displaces contrary state law even if the state law would qualify as substantive under *Erie*'s test." *Berk v. Choy*, No. 24-440, 2026 WL 135974, at *3 (U.S. Jan. 20, 2026). Here, the relevant federal rule is Rule 8(d)(2), which directs that "[a]

8

party may set out 2 or more statements of a claim . . . alternatively or hypothetically, either in a single count . . . or in separate ones" and confirms that "[i]f a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2). "Because Rule 8 is a procedural, rather than a substantive rule, the court will apply the federal rule in this . . . context," so "[w]hether [Smartmatic's] theories of liability are alternatives under [state] law, or constitute different torts that represent the same claim, the court will allow both at this stage." *Odom v. District of Columbia*, 248 F. Supp. 3d 260, 269 (D.D.C. 2017). That Powell does not respond in any way to Smartmatic's invocation of Rule 8(d)(2), *see* ECF 34 at 23, further confirms that she cannot prevail on this issue, *see Wimbish v. District of Columbia*, 381 F. Supp. 3d 22, 35 n.9 (D.D.C. 2019) (concluding that a moving party "conceded the argument by not responding to it" "[i]n its reply brief").

In any event, Powell's reliance on the single publication/action rule is misplaced given how courts in Florida understand its contours. Although Florida courts have routinely applied this rule to dismiss or deny a claim based on the same publication, they have almost exclusively done so where the claim "ar[o]se from the same publication upon which a *failed* defamation claim is based." *Callaway*, 831 So. 2d at 208 (emphasis added); *accord Ovadia*, 756 So. 2d at 141. Indeed, Florida courts have emphasized that "[t]he rule is designed to prevent plaintiffs from circumventing a valid defense to defamation by recasting essentially the same facts into several causes of action all meant to compensate for the same harm." *Callaway*, 831 So. 2d at 208 (citation and internal quotation marks omitted); *see also Swedberg v. Goldfinger's S., Inc.*, 338 So. 3d 332, 335–36 (Fla. Dist. Ct. App. 2022). Powell's invocation of this rule therefore attempts to expand the doctrine in a new offensive manner. But precedent and respect for the rule's foundations counsel against such an extension. As a federal district court in Florida recently explained, "where

9

a defendant has not successfully invoked an affirmative defense to defamation, the single action rule presents no bar to a plaintiff's tortious interference claim premised on the same publication." *Emergency Recovery, Inc. v. Gov't Emps. Ins.*, 773 F. Supp. 3d 1304, 1320 (M.D. Fla. 2025). The court reached that conclusion after examining relevant decisions from Florida state courts, which revealed that the rule is concerned with "prevent[ing] evasions of affirmative defenses to defamation." *Id.* at 1319.

## B.  Special Damages for Injurious Falsehood Claims

To state a claim for injurious falsehood, "a plaintiff must specifically plead special damages."[3] *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 388 (Fla. Dist. Ct. App. 1999); *see also Passantino v. Weissmann*, 752 F. Supp. 3d 168, 182 (D.D.C. 2024) ("In order to plead injurious falsehood, a plaintiff must allege," among other things, "special damages." (citation and internal quotation marks omitted)). Rule 9(g) requires that "[i]f an item of special damage is claimed, it must be specifically stated." Fed. R. Civ. P. 9(g). And "[u]nder that rule, a defamation plaintiff must set 'forth the precise nature of its losses as well as the way in which the special damages resulted from the allegedly false publication.'" *US Dominion, Inc. v. Powell*, 554 F. Supp. 3d 42, 74 (D.D.C. 2021) (alteration adopted) (quoting *Schoen v. Wash. Post*, 246 F.2d 670, 672 (D.C. Cir. 1957)).

Powell argues that Smartmatic's "bald[] assert[ions]" that it went from being valued at over $3 billion to less than $1 billion and suffered $1.2 million in "unspecified out-of-pocket expenses" lack the requisite specificity to meet the pleading standard for special damages. ECF 23-2 at 22.

---

[3] Because both Florida and District of Columbia law require a plaintiff to plead special damages for injurious falsehood claims, there does not appear to be a true conflict of law here that would justify departure from the default of applying forum law. *See Krukas*, 376 F. Supp. 3d at 27 ("If there is no conflict, the law of the District of Columbia applies by default.").

Smartmatic, however, pleads several specific expense amounts that constitute special damages. Most notably, Smartmatic pleads that Powell's statements prompted it to spend more than "$400,000 on public relations and crisis management," "$100,000 on cybersecurity," and "$700,000 on retention and recruitment for personnel." ECF 1 ¶ 373. These sorts of specific pecuniary losses are quintessential special damages. *See Robertson v. McCloskey*, 680 F. Supp. 414, 415 (D.D.C. 1988) (comparing "[g]eneral damages," which "compensate a plaintiff for harm to his reputation or emotional well-being," with "special damages," which "are awarded for losses of an economic or pecuniary nature").

### C.     Special Damages for Defamation Claims

Powell similarly requests that the Court dismiss five of Smartmatic's defamation claims for failing to plead special damages despite "sound[ing] in injurious falsehood." ECF 23-2 at 22. She argues that these claims are for injurious falsehood given that they concern Smartmatic's election technology and software, not the reputation of the companies themselves. But the Court need not decide at this stage whether these claims are based on defamation or injurious falsehood because even assuming that these claims should be considered injurious falsehood claims, Powell's underlying objection that Smartmatic failed to plead special damages for these claims lacks merit for all the reasons discussed above.[4]

### D.     Claims that Rely on Statements Made by Others

Powell takes issue with four counts because they rely on statements made by Giuliani or other Fox News hosts, not herself. Although the legal basis for this argument is not entirely clear

---

[4] The only basis for this argument appears to be Powell's speculation that "Smartmatic has dressed these claims as 'defamation' claims because it cannot plead special damages." ECF 23-2 at 24. Notably, Powell does not provide any other ground for dismissal even if her argument that these claims sound in injurious falsehood were correct. *See id.* at 22–24.

given her sparse reliance on caselaw, it appears that Powell contends that certain of Smartmatic's claims are based solely on statements from those non-parties. But Smartmatic's allegations are sufficient at this stage to support its claims.

Counts II and VIII allege defamation and injurious falsehood where "Ms. Powell, Mr. Giuliani, and Fox published and/or republished false statements and implications . . . that Smartmatic's election technology and software were widely used in the 2020 U.S. election including in contested states where claims of election fraud were made." ECF 1 ¶¶ 396, 480. These claims rely on two of Powell's statements: (1) "[T]his is a massive election fraud. And I'm very concerned it involved, not only Dominion and its Smartmatic software, but that the software essentially was used by other election machines also," and (2) "We're talking about the alteration and changes in millions of votes . . . . Computers being overwritten to ignore signatures. All kinds of different means of manipulating the Dominion and Smartmatic software, that of course we would not expect Dominion or Smartmatic to admit." *Id.* ¶ 132(b), (d). Powell contends that "neither involve the contention that Smartmatic's election technology and software were widely used." ECF 23-2 at 25. But a reasonable jury could conclude that Powell's statements amounted to defamation and injurious falsehood regarding the widespread use of Smartmatic's election technology and software in the 2020 election. In particular, Powell's statement about "the alteration and changes in millions of votes," including through "different means of manipulating the Dominion and Smartmatic software," ECF 1 ¶ 132(d), is sufficiently on point to substantiate these claims as "plausible on [their] face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Counts IV and X allege defamation and injurious falsehood where "Ms. Powell, Mr. Giuliani, and Fox published and/or republished false statements and implications . . . that Smartmatic's election technology and software were compromised and hacked during the 2020

U.S. election." ECF 1 ¶¶ 424, 506. These claims rely on two of Powell's statements: (1) "[T]he CIA and the FBI and other government organizations have received multiple reports of wrongdoing and failures and vulnerabilities in [Dominion's and Smartmatic's] product," and (2) "[E]very time there was a glitch, as they called it, or connection to the Internet, they also violated state laws that required the machines to be certified and nothing to be changed before the votes. There are any number of legal grounds on which the use of those machines has to be stopped and the votes invalidated." *Id.* ¶ 166(h), (j). Powell argues that these statements are insufficient because "[t]hey do not contend that Smartmatic's election technology and software was hacked during the 2020 election." ECF 23-2 at 26. Although Powell raises a fair point that these statements, when read in isolation, do not directly assert that Smartmatic was hacked, the remark that the government "received multiple reports of wrongdoing and failures and vulnerabilities in [Dominion's and Smartmatic's] product," ECF 1 ¶ 166(h), is enough to survive dismissal at this stage when considered with the surrounding context and related allegations.

## V.  Conclusion

Accordingly, Powell's motion to dismiss, ECF 23, is denied. An Order will be entered contemporaneously with this Memorandum Opinion.

DATE:  February 9, 2026

_____
CARL J. NICHOLS
United States District Judge