IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SMARTMATIC USA CORP., | ) | |
| SMARTMATIC INT'L HOLDING | ) | |
| B.V., and SGO CORP. LTD., | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | CIVIL ACTION FILE |
| v. | ) | NO.: 21-CV-02995-CJN |
| | ) | |
| SIDNEY POWELL, | ) | |
| | ) | |
|     Defendant. | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT**
**<u>SIDNEY POWELL'S MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

*ORAL ARGUMENT REQUESTED*

LEWIS BRISBOIS BISGAARD & SMITH LLP

Teresa M. Cinnamond (*admitted pro hac vice*)
Teresa.Cinnamond@lewisbrisbois.com
Bryan P. Sugar (*admitted pro hac vice*)
Bryan.Sugar@lewisbrisbois.com

1700 Lincoln Street, Suite 3500
Denver, Colorado 80203
Telephone: 720.292.2059

***Attorneys for Defendant Sidney Powell***

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................... iv

LEGAL STANDARD.................................................................................................................. 4

ARGUMENT ............................................................................................................................... 5

    I.    CLAIMS BY SMARTMATIC INTERNATIONAL HOLDING B.V. AND SGO
CORPORATION LIMITED SHOULD BE DISMISSED AS TO ALL COUNTS BECAUSE
THE STATEMENTS WERE NOT "OF AND CONCERNING" THOSE ENTITIES. ............ 5

        A.    The "Of and Concerning" Requirement Demands Specificity as to Each Plaintiff and
Statement.................................................................................................................................. 5

        B.    Statements Concerning Smartmatic's Software and U.S. Election Operations Do Not
Concern the Foreign Holding Companies............................................................................... 7

        C.    Application to Specific Causes of Action ........................................................................ 8

    II.    SMARTMATIC IS A LIMITED PURPOSE PUBLIC FIGURE AND THE
COMPLAINT FAILS TO ADEQUATELY PLEAD ACTUAL MALICE ............................ 10

        A.    Smartmatic Is a Limited Purpose Public Figure ............................................................. 11

            1.    Courts Have Already Found Smartmatic to Be a Limited Purpose Public Figure. .. 12

            2.    Smartmatic Satisfies the *Waldbaum* Test .................................................................. 14

        B.    The Complaint Fails to Adequately Plead Actual Malice. ............................................. 16

        C.    The Complaint Fails to Allege Express Malice .............................................................. 19

    III.    SMARTMATIC HAS NOT PLAUSIBLY ALLEGED MS. POWELL'S
STATEMENTS PROXIMATELY CAUSED INJURY AND DAMAGES ............................ 20

        A.    Smartmatic Has Not Adequately Pleaded Causation as a Matter of Law..................... 22

            1.    Ms. Powell's Statements Concerned the Same Topics of Venezuelan Ties and
Election Rigging that Already Had Impugned Smartmatic's Reputation for Nearly
Twenty Years ...................................................................................................................... 23

                a.    Publicly Published Media Pre-Dating Ms. Powell's Statements .......................... 23

                b.    Social Media Tweets, Re-Tweets, and Comments Pre-Dating Ms. Powell's At-
Issue Statements .......................................................................................................... 27

    IV.    The Injurious Falsehood Claims Should Be Dismissed Because the Complaint Fails to
Plead Special Damages with the Required Specificity .......................................................... 31

        A.    This Court and Others Have Held Injurious Falsehood Plaintiffs Must Plead a Causal
Connection Between a Defendant's Statements and Plaintiff's Specific Damages.............. 32

        B.    The Complaint Pleads No Damages Specific to Ms. Powell's Statements ................... 33

        C.    Smartmatic's Customers Are Government Entities That Make Decisions Based on
Objective Criteria................................................................................................................. 34

    V.    CLAIMS BASED ON STATEMENTS NON-ACTIONABLE AS A MATTER OF LAW
SHOULD BE DISMISSED .................................................................................................... 34

A.    Statements Expressing Subjective Belief or Concern Are Non-Actionable Opinion... 35

B.    Statements Made on Cable News Opinion Programs Are More Likely to Be Understood as Opinion. ................................................................................................ 37

C.    The Heated Political Context Further Supports a Finding of Non-Actionable Opinion 38

D.    Calls for Government Investigation Are Protected Advocacy ...................................... 38

E.    Rhetorical Hyperbole Is Not Actionable.................................................................... 39

F.    Statements That Do Not Concern Smartmatic Are Not Actionable by Smartmatic..... 40

VI.    CLAIMS FOR PUNITIVE DAMAGES MUST BE DISMISSED FOR FAILURE TO PLEAD ACTUAL AND COMMON LAW MALICE WITH SPECIFICITY......................... 40

A.    Punitive Damages Require Pleading and Proof of Actual Malice by Clear and Convincing Evidence ................................................................................................ 40

B.    Florida and New York Law Require an Additional Showing of Common Law Malice 41

C.    The Complaint's Conclusory Allegations of Malice Are Insufficient .......................... 41

RELIEF REQUESTED............................................................................................................. 42

## TABLE OF AUTHORITIES

*Cases* ................................................................................................................................... *Page*

*161 Ludlow Food, LLC v L.E.S. Dwellers, Inc.,* 60 Misc 3d 1221(A) (Sup. Ct, NY County 2018) 28, 29

*Afro-American Publ'g Co. v. Jaffe*, 366 F.2d 649 (D.C. Cir. 1966) ............................................. 43

*Alzamend Neuro, Inc. v. Biorasi, LLC*, 2026 U.S. Dist. LEXIS 20066 (S.D. Fla.). ..................... 39

*Arpaio v. Cottle*, 404 F. Supp. 3d 80 (D.D.C. 2019) ..................................................................... 23

*Bauman v. Butowsky*, 377 F. Supp. 3d 1 (D.D.C. 2019) ............................................................... 42

*Block v. Matesic*, 789 F. Supp. 3d 1131 (S.D. Fla. 2025) ............................................................. 26

*Bos v. Smith*, 556 S.W.3d 293 (Tex. 2018) ................................................................................... 39

*Brandenburg v. Ohio*, 395 U.S. 444 (1969) .................................................................................. 45

*Cable News Network, Inc. v. Black*, 374 So. 3d 811 (Fla. Dist. Ct. App. 2023) .......................... 47

*Cantwell v. Connecticut*, 310 U.S. 296 (1940) ............................................................................. 23

*Cape Publications, Inc. v. Reakes*, 840 So.2d 277 (Fla. 5th DCA 2003) ...................................... 27

*Cardillo v Doubleday & Co., Inc.*, 518 F.2d 638 (2d Cir. 1975) ................................................... 28

*Carpenter v. King*, 792 F. Supp. 2d 29 (D.D.C. 2011) ................................................................. 28

*Carroll v. Trump*, 151 F.4th 50 (2d Cir. 2025) ............................................................................. 47

*Church of Scientology International v. Time Warner, Inc.*, 903 F. Supp. 637 (S.D.N.Y. 1995). 23, 28

*Couch v. Verizon Commc'ns, Inc.*, 2022 WL 3016755 (D.D.C. July 29, 2022) ............................ 11

*Crestview Hosp. Corp. v. Coastal Anesthesia, P.A.*, 203 So. 3d 978 (Fla. 1st DCA 2016) ......... 26

*Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003) ...................................................................... 13

*Farah v. Esquire Magazine, Inc.*, 736 F.3d 528 (D.C. Cir. 2013) .......................................... 43, 46

*First Protective Insurance Company v. Weiss Group, LLC*, 2016 Fla. Cir. LEXIS 9741 (Fla. Cir. Ct. 2016) ................................................................................................................................... 18

*Flynn v. Cable News Network, Inc.*, 2024 WL 1765566 (S.D.N.Y. Apr. 24, 2024) ..................... 43

*Fowler v. Curtis Publ'g Co.*, 182 F.2d 377 (D.C. Cir. 1950)........................................................ 38

*Fridovich v. Fridovich*, 598 So. 2d 65 (Fla. 1992) ...................................................................... 26

*Frieder v. Prince*, 308 So. 2d 132 (Fla. 3d DCA 1975) ............................................................... 24

*Friedgood v. Peters Pub. Co.*, 521 So. 2d 236 (Fla. 4th DCA 1988) .......................................... 18

*Garrison v. State of La.*, 379 U.S. 64 (1964)......................................................................... 23, 45

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974) .............................................. 17, 18, 21, 22, 47

*Gottwald v. Sebert*, 193 A.D.3d 573 (N.Y. App. Div. 2021)....................................................... 18

*Greenbelt Cooperative Publishing Ass'n v. Bresler*, 398 U.S. 6 (1970) .......................... 41, 44, 45

*Guccione v Hustler Mag., Inc.*, 800 F.2d 298 (2d Cir. 1986)..................................................... 28

*Guilford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580 (D.C. 2000).......................................... 42

*Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657 (1989).................................... 22, 25

*Hindu Am. Found. v. Viswanath*, 646 F. Supp. 3d 78 (D.D.C. 2022) ........................................ 23

*Hunt v. Liberty Lobby*, 720 F.2d 631 (11th Cir. 1983) .............................................................. 48

*Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988)............................................................. 41

*Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576 (D.C. Cir. 2016)...................................................... 25

*Jimenez v. McAleenan*, 395 F. Supp. 3d 22 (D.D.C. 2019) ........................................................ 11

*Kindred v. Colby*, 2015 WL 12915686 (N.Y. Sup. Ct. May 15, 2015) ....................................... 42

*Kirch v. Liberty Media Corp.*, 449 F.3d 388 (2d Cir. 2006)........................................................ 13

*Klayman v. Politico LLC & Josh Gerstein*, 2022 2022 WL 1134304 (Fla. Cir. Ct. March 22, 2022) ................................................................................................................................... 24

*Landmark Commc'ns, Inc. v. Macione*, 334 S.E.2d 587 (Va. 1985)........................................... 14

*Liberty Lobby, Inc. v. Dow Jones & Co., Inc.*, 838 F.2d 1287 (D.C. Cir. 1988)......................... 42

*Logan v. District of Columbia*, 447 F. Supp. 1328 (D.D.C. 1978)............................................... 28

*Lohrenz v. Donnelly*, 350 F.3d 1272 (D.C. Cir. 2003) ......................................................... 22, 25

*Mar-Jac Poultry, Inc. v. Katz*, 773 F. Supp. 2d 103 (D.D.C. 2011)........................................... 43

*McLee v. Chrysler Corp.*, 38 F.3d 67 (2nd Cir. 1994)............................................................... 23

v

*Michalczyk v. Vesey*, 2025 WL 2935465  (N.Y. Sup. Ct. Oct. 14, 2025)....................................24

*Mile Marker, Inc. v. Petersen Publ'g, L.L.C.*, 811 So.2d 841 (Fla. Dist. Ct. App. 2002) ............19

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990) ........................................................41, 45, 46

*Moldea v. New York Times Co.*, 15 F.3d 1137 (D.C. Cir. 1994) .................................................41

*Myers v. Hodges*, 44 So. 357 (Fla. 1907).....................................................................................26

*New York Times Co. v. Sullivan*, 376 U.S. 254, 267 (1964) ................................ 12, 17, 22, 23, 47

*Nodar v. Galbreath*, 462 So.2d 803 (Fla. 1984 ..........................................................................26

*Norman v. Borison*, 994 A.2d 1019 (Md. App. 2010).................................................................14

*Old Dominion Branch No. 496, Nat. Ass'n of Letter Carriers, AFL-CIO v. Austin*, 418 U.S. 264 (1974)....................................................................................................................................45

*Ortiz v. Valdescastilla*, 102 A.D.2d 513 (N.Y. App. Div. 1984)..................................................25

*Passantino v. Weissman*, 752 F. Supp. 3d 168 (D.D.C. 2024) ...............................................38, 39

*Provisional Gov't of the Republic of New Afrika v. American Broadcasting Companies*, 609 F. Supp. 104 (D.D.C. 1985) ......................................................................................................12

*Prozeralik v. Cap. Cities Commc'ns, Inc.*, 82 N.Y.2d 466 (1993)................................................47

*Quercioli v. Miami Herald Media Co.*, 2018 Fla. Cir. LEXIS 11910 (Fla. Cir. Ct. 2018)..........25

*Rabren v. Straigis*, 498 So. 2d 1362 (Fla. Dist. Ct. App. 1986) .................................................47

*Rosenblatt v. Baer*, 383 U.S. 75 (1966) ...............................................................................11, 12

*Schaecher v. Bouffault*, 772 S.E.2d 589 (Va. 2015) ....................................................................14

*Schuchart v. La Taberna Del Alabardero, Inc.*, 365 F.3d 33 (D.C. Cir. 2004) ...........................10

*Sissel v. U.S. Dep't of Health & Human Servs.*, 760 F.3d 1 (D.C. Cir. 2014) .............................11

*Smartmatic USA Corp. v. Newsmax Media, Inc.*, 2023 WL 1525024 (Del. Super. Ct. Feb. 3, 2023) .................................................................................................................................8, 20

*Smartmatic USA Corp. v. Newsmax Media, Inc.*, 2024 WL 4165101, at *13-14 (Del. Super. Ct. Sept. 12, 2024) .................................................................................... 8, 18, 19, 21, 22

*Solers, Inc. v. Doe*, 977 A.2d 941 (D.C. 2009) ...........................................................................27

*St. Amant v. Thompson*, 390 U.S. 727 (1968)..............................................................22, 23, 25

*Thomas v. Tampa Bay Downs, Inc.*, 761 So. 2d 401 (Fla. 2d DCA 2000) ................................... 26

*Three Amigos SJL Rest., Inc. v. CBS News Inc.*, 28 N.Y.3d 82 (N.Y. 2016) ............................... 12

*Trump v. Clinton*, 161 F.4th 671 (11th Cir. 2025) ........................................................................ 39

*Trump v. Clinton*, 2023 U.S. Dist. LEXIS 246661 (S.D. Fla. Sept. 15, 2023) ............................. 39

*Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287 (D.C. Cir. 1980) ............................... 17

*Weyrich v. The New Republic, Inc.*, 235 F.3d 617 (D.C. Cir. 2001) ............................................ 43

*Zoological Wildlife Foundation, Inc. v. Humane Society of the United States, Inc.*, 2016 U.S. Dist. LEXIS 116635 (S.D. Fla. 2016) ..................................................................................... 12

***Rules*** ................................................................................................................................. ***Page***

Federal Rule of Civil Procedure Rule 12(c) ............................................................................ 10, 11

Rule 12(b)(6) ................................................................................................................................ 10

Federal Rule of Civil Procedure 9(g) ............................................................................................ 38

**INTRODUCTION**

On February 9, 2026, in its Order denying Defendant's motion to dismiss (ECF No. 58 "Order"), this Court identified discrete legal issues now ripe for decision on a motion for judgment on the pleadings. The correct resolution of these issues should resolve the case completely or substantially narrow the issues.

**First**, the Court acknowledged Ms. Powell's arguments regarding the overseas holding company plaintiffs raised questions warranting further analysis. *See* Order at 4-7.[1] The Court found the Complaint (ECF No. 1) adequately alleges the parent companies suffered "independent injuries" from Ms. Powell's statements, *id.* at 6-7, but it did not analyze whether each allegedly defamatory statement was "of and concerning" each Plaintiff entity. *Id*. This motion presents that statement-by-statement analysis[2] and demonstrates the overseas holding companies' claims should be dismissed because Ms. Powell's statements concerned only Smartmatic USA Corp.

**Second**, this Court may now determine Smartmatic is a limited purpose public figure. Two prior decisions in cases arising from the same underlying controversy in which Smartmatic was a party correctly decided this issue.[3] Smartmatic voluntarily subjected itself to public scrutiny about its voting machine technology by purchasing Sequoia Voting Systems, one of the largest providers of electronic voting systems in the U.S., and providing election technology to governmental entities, including in the United States. As a "limited public figure," Smartmatic must establish

---

[1] The overseas holding company plaintiffs are Smartmatic International Holding B.V. and SGO Corporation Limited.

[2] *See* Argument, Section I and **Appendix A** (subject of Defendant's Motion for Leave to File Excess Pages filed April 17, 2026).

[3] *See Smartmatic USA Corp. v. Newsmax Media, Inc.*, 2024 WL 4165101, at *13-14 (Del. Super. Ct. Sept. 12, 2024); *Smartmatic USA Corp. v. Newsmax Media, Inc.*, 2023 WL 1525024, at *12-14 (Del. Super. Ct. Feb. 3, 2023).

actual malice to prevail on its claims. The Complaint does not adequately plead actual malice, instead relying on deficient, conclusory allegations about Ms. Powell's subjective state of mind.

**Third**, the Court should address whether Smartmatic has plausibly alleged Ms. Powell proximately caused Smartmatic's purported injury and damages. The Complaint claims Ms. Powell made alleged defamatory statements during five media appearances in late 2020, which supposedly "were a proximate and substantial cause of Smartmatic's name and brand becoming synonymous with election fraud …." Compl. ¶ 368. This conclusory allegation ignores that for at least 15 years prior to Ms. Powell's statements, Smartmatic was the target of intense international controversy and criticism, in web news, television, print media, and on social media, for its ties to the Venezuelan government, technology designed to rig elections, and rigging of elections. Ms. Powell's limited remarks were a brief refrain amid a huge chorus of statements made over many years criticizing Smartmatic for the same traits Ms. Powell mentioned. This well-documented debate including allegations identical to Ms. Powell's statements about Smartmatic's Venezuelan ties, design of its software to rig elections, and its rigging of elections, defeats, as a matter of law, any argument that the Complaint sufficiently alleges "actual malice."

**Fourth**, the Order addressed Plaintiffs' injurious falsehood claims and found Plaintiffs adequately pleaded special damages of approximately $1.2 million in alleged expenses. Order at 10-11. The Court did not, however, address two critical issues: whether the Complaint (a) sufficiently alleges the expenses constitute actual lost business dealings as required for injurious falsehood; and (b) sufficiently alleges Smartmatic incurred the expenses because of Ms. Powell's statements, as distinguished from the same allegations by thousands of others, nationally and internationally, who spoke for nearly two decades before Ms. Powell and to far larger audiences. Thousands of others voiced a persistent theme: identical contentions of Smartmatic ties to the

Venezuelan government and Hugo Chávez, technology designed to rig elections, and election rigging. Injurious falsehood plaintiffs must specifically plead the amount of damages with particularity and facts showing such damages were the natural and direct result of the defendant's conduct. The Complaint fails to satisfy this standard.

**Fifth**, Ms. Powell's statements require a statement-by-statement analysis to determine which are actionable, if any. The Order, at 13, recognized this principle: "Powell raises a fair point that these statements, when read in isolation, do not directly assert that Smartmatic was hacked." This motion presents that analysis, demonstrating several categories of statements are non-actionable as a matter of law. For example, statements that do not specifically concern the Smartmatic Plaintiffs (such as statements about the volume of evidence Ms. Powell claimed to possess) cannot satisfy the "of and concerning" requirement. Similarly, calls for government investigation are protected advocacy that cannot form the basis of a defamation claim (*see, e.g.*, Compl. ¶ 149(h)) and rhetorical hyperbole, such as characterizing conduct as "brazen" (*see, e.g., id.* ¶¶ 140(k), 149(h), and 191(l)) is not actionable because no reasonable listener would understand the hyperbole as assertions of verifiable fact. Many of Powell's statements are historical and do not refer to Smartmatic at all.  They are not defamatory.

**Sixth**, the Order left open the legal issue of whether punitive damages have been adequately pleaded. Smartmatic's perfunctory claim of actual malice, a predicate for a punitive damages award, and broader assertion of punitive damages lack sufficient factual allegations to sustain the averments of damage.

All the above present questions of law are appropriate for resolution through this Motion. Accordingly, the Court should (1) dismiss claims by Smartmatic International Holding B.V. and SGO Corporation Limited, (2) find Smartmatic to be a limited purpose public figure, which has

not pled actual malice, (3) dismiss Smartmatic's defamation claims for failure to plausibly allege causation,[4] (4) dismiss Smartmatic's injurious falsehood claims (Causes of Action Eight through Twelve) for failure to plead special damages with the requisite particularity, (5) dismiss claims based on statements non-actionable as a matter of law, and (6) dismiss claims for punitive damages for failure to plead actual and common law malice with the required specificity.

## LEGAL STANDARD

Federal Rule of Civil Procedure Rule 12(c) allows for judgment on the pleadings after responsive pleadings have been filed but prior to trial. The standard for a motion for judgment under Rule 12(c) is essentially the same standard as a motion to dismiss under Rule 12(b)(6). *See Schuchart v. La Taberna Del Alabardero, Inc.*, 365 F.3d 33, 35 (D.C. Cir. 2004)

Parties may move for judgment on the pleadings after the pleadings are closed. Fed. R. Civ. P. 12(c). "When evaluating a motion for judgment on the pleadings, the [C]ourt may rely on the pleadings, the exhibits to the pleadings, and any judicially noticeable facts ...." *Jimenez v. McAleenan*, 395 F. Supp. 3d 22, 30 (D.D.C. 2019). While the Court must construe the factual allegations in the light most favorable to the non-moving party, it is not bound by that party's legal conclusions. *See Sissel v. U.S. Dep't of Health & Human Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014).

Where defamation claims are based on statements not actionable as a matter of law, dismissal at the pleading stage is appropriate. *Couch v. Verizon Commc'ns, Inc.*, 2022 WL 3016755, at *4 (D.D.C. July 29, 2022), *aff'd*, 105 F.4th 425 (D.C. Cir. 2024) (motion for judgment

---

[4] Ms. Powell concurrently has filed a Request for Judicial Notice in Support of Defendant's Motion for Judgment on the Pleadings, which seeks judicial notice of, inter alia, published media (**Exhibit A**), social media tweets (**Exhibits B, C, and E**), and a publicly available email from Smartmatic executive Lord Malloch Brown (**Exhibit F**).  The published media and tweets demonstrate the absence of causation and represent only a fraction of the thousands of public statements about Smartmatic, similar to Ms. Powell's but uttered as many as 15 years earlier.

on the pleadings granted where plaintiff failed to establish actual malice). A Rule 12(c) motion is a proper vehicle for raising issues that were not fully resolved on a motion to dismiss, including issues that require a more developed analysis of the pleadings. This allows the Court to consider the parties' positions as fully articulated in the pleadings and to resolve discrete legal issues before the parties incur the significant expense of discovery.

## ARGUMENT

**I.     CLAIMS BY SMARTMATIC INTERNATIONAL HOLDING B.V. AND SGO CORPORATION LIMITED SHOULD BE DISMISSED AS TO ALL COUNTS BECAUSE THE STATEMENTS WERE NOT "OF AND CONCERNING" THOSE ENTITIES.**

The Order acknowledged Ms. Powell's arguments regarding the foreign holding company Plaintiffs raised questions warranting further analysis. Order at 4-7. While the Court found the Complaint adequately alleges the parent companies suffered "independent injuries," *id.* at 6-7, the Court did not analyze if each allegedly defamatory statement was "of and concerning" each of the three Plaintiff entities. The "of and concerning" requirement must be satisfied as to each plaintiff and each statement. *Rosenblatt v. Baer*, 383 U.S. 75, 79-83 (1966).

**A.     The "Of and Concerning" Requirement Demands Specificity as to Each Plaintiff and Statement.**

It is black-letter law that a plaintiff in a defamation action must prove that the allegedly defamatory statement was "of and concerning" the plaintiff. *New York Times Co. v. Sullivan*, 376 U.S. 254, 267, 288 (1964). This requirement serves to ensure that a defendant is held liable only for harm caused to the specific plaintiff bringing suit, not for generalized reputational harm to others. *Rosenblatt*, 383 U.S. at 79-83 (describing that the "of and concerning" requirement is a constitutional limitation on defamation liability).

5

A statement that defames one corporate entity does not automatically defame its parent or subsidiary companies; rather, there must be something in the statement itself that would cause a reasonable reader or listener to understand the statement as referring to the other entity. In *Provisional Gov't of the Republic of New Afrika v. American Broadcasting Companies*, 609 F. Supp. 104, 108 (D.D.C. 1985), three plaintiffs—the Provisional Government of the Republic of New Afrika and its two co-presidents—brought defamation claims based on the same set of statements. The court found the allegedly defamatory statements contained "no explicit references to the [co-presidents], and the surrounding circumstances [did] not implicate them in any fashion." *Id.* at 108.  In dismissing the co-presidents' claims, the Court noted "[a]llegations of defamation by an organization and its members are not interchangeable." *Id.*  Similarly, in *Three Amigos SJL Rest., Inc. v. CBS News Inc.*, 28 N.Y.3d 82, 87 (N.Y. 2016), the court emphasized that a statement made about an organization is not understood to refer to its individual members unless a specific individual is distinguished from the group. *See also Zoological Wildlife Foundation, Inc. v. Humane Society of the United States, Inc.*, 2016 U.S. Dist. LEXIS 116635, *11-13 (S.D. Fla. 2016) (explaining a plaintiff must show it is the person or entity to whom the defamatory statement referred).

In *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006), the Second Circuit reaffirmed a statement must be reasonably understood as being about the plaintiff. The court rejected claims by the exclusive agent of a media group, finding that statements about the media group's financial condition did not reasonably suggest the agency was implicated. *Id.* at 399-400. Mere affiliation between a plaintiff and the entity named in the statement is insufficient. *Id.* Moreover, a parent holding company and its operating subsidiaries are distinct legal entities and identities. *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003) ("A basic tenet of American

6

corporate law is that the corporation and its shareholders are distinct entities."). When a speaker refers to an operating company's products, services, or conduct, that reference does not automatically implicate the parent holding company unless the statement specifically references the parent or its officers or the context makes clear the parent is accused of wrongdoing.

### B.    Statements Concerning Smartmatic's Software and U.S. Election Operations Do Not Concern the Foreign Holding Companies

The Complaint identifies three Plaintiff entities: Smartmatic USA Corp., a Delaware corporation with its principal place of business in Florida, Compl. ¶ 1; Smartmatic International Holding B.V., a holding company incorporated in the Netherlands, *id.* ¶ 2; and SGO Corporation Limited, a holding company incorporated in the United Kingdom, *id.* ¶ 3. The Complaint alleges Plaintiff Smartmatic USA Corp. is "an election technology and software company" while "Plaintiff Smartmatic International Holding B.V. owns Smartmatic USA Corp. (100% ownership)" and "Plaintiff SGO Corporation Limited owns Smartmatic International Holding B.V. (100% ownership)." *Id.* ¶¶ 1-3.

According to the Complaint, Ms. Powell's alleged statements concern the functionality of Smartmatic software, its alleged use in U.S. elections, and its purported relationship with Dominion Voting Systems, Inc. ("Dominion"). *See*, *e.g.*, *id*. ¶¶ 132, 140, 149. Her statements did not identify the foreign holding companies, but rather the products and operations of Smartmatic USA Corp. – the only plaintiff that provides election technology, including software.

For example, statements such as "[a]ll kinds of different means of manipulating the Dominion and Smartmatic software," *id.* ¶¶ 84, 140(d), and 191(d), and "the software essentially was used by other election machines also," *id.* ¶¶ 90, 132(b), 140(k), 149(b), 149(h), and 191(l), refer to software products offered by Smartmatic USA Corp., not to the holding companies. A

7

holding company does not design, manufacture, or deploy software. A reasonable listener would understand that these statements concern an operating company, not its unmentioned corporate parents.

Courts have consistently held that statements about a subsidiary's products or operations do not support defamation claims by parent companies absent specific allegations connecting the parent to the allegedly defamatory conduct. *See Schaecher v. Bouffault*, 772 S.E.2d 589, 598 (Va. 2015) (citing *Landmark Commc'ns, Inc. v. Macione*, 334 S.E.2d 587, 589 (Va. 1985)); *Norman v. Borison*, 994 A.2d 1019, 1029-30 (Md. App. 2010) (concluding defamation of a business entity does not automatically defame its owners).

### C.    Application to Specific Causes of Action

Smartmatic's **First Cause of Action**, Compl. ¶¶ 381-394, alleges "Defamation for False Statements and Implications that Smartmatic Participated in a Criminal Conspiracy to Fix, Rig, and Steal the 2020 U.S. Election." The First Cause of Action is based on statements about election technology deployed in the United States—the province of Smartmatic USA Corp., the operating company – not Dutch or British holding companies.

Smartmatic's **Second Cause of Action**, *id*. ¶¶ 395-408, alleges "Defamation for False Statements and Implications that Smartmatic's Election Technology and Software were Widely Used in the 2020 U.S. Election, Including in Contested States." The statements upon which the Second Cause of Action is based are not defamatory.  They refer to the history of Sequoia, a former Smartmatic subsidiary with a large U.S. presence – later purchased by Dominion – and do not reference foreign holding companies.

The **Third Cause of Action**, *id*. ¶¶ 409-422, alleges "Defamation for False Statements and Implications that Smartmatic's Election Technology and Software were Used to Fix, Rig, and Steal

8

the 2020 U.S. Election." This cause of action is based on statements that do not reference or concern the foreign holding companies. Ms. Powell's alleged statements specifically reference Smartmatic's software, a product not offered by the holding companies, and its purported use in the United States. *Id*. ¶¶ 132(b), 132(d), 149(a),149(b), 149(g), 149(h), 149(j), 149(v). These statements could only refer to Smartmatic USA Corp.

The **Fourth Cause of Action**, *id.* ¶¶ 423-36, alleges "Defamation for False Statements and Implications that Smartmatic's Election Technology and Software were Compromised and Hacked during the 2020 U.S. Election." These allegations concern the technical functionality of software products-products designed, developed, and deployed by Smartmatic USA Corp., not by holding companies. A holding company does not create software backdoors; an operating company might.

The **Fifth Cause of Action**, *id.* ¶¶ 437-50, alleges "Defamation for False Statements and Implications that Smartmatic's Election Technology and Software were Used by Dominion during the 2020 U.S. Election." This cause of action is based on statements alleging Dominion used Smartmatic's election technology and software during the 2020 U.S. election. These statements concern dealings between two U.S. operating companies. They do not reference or implicate the foreign holding companies.

The **Sixth Cause of Action**, *id.* ¶¶ 451-64, alleges "Defamation for False Statements and Implications that Smartmatic was a Venezuelan Company Founded and Funded by Corrupt Dictators." The statements upon which this cause of action is based concern the corporate origins of Smartmatic USA, Inc., its dealings with the Venezuelan government since approximately 2004 and whether the Venezuelan government had an ownership interest in Smartmatic's business

9

venture. They do not reference or implicate Smartmatic's Dutch or British foreign holding companies.[5]

The **Seventh Cause of Action**, *id.* ¶¶ 465-78, alleges "Defamation for False Statements and Implications that Smartmatic's Election Technology and Software were Designed and Used to Fix, Rig, and Steal Elections." These allegations concern statements regarding Smartmatic's algorithm and its potential to change the outcome of elections in the 2020 U.S. election. The statements do not reference or implicate the foreign holding companies.

Smartmatic's **Eighth through Twelfth Causes of Action** are the injurious falsehood counts, which parallel the defamation counts. The same "of and concerning" analysis applies.

All Smartmatic's causes of action are based on statements concerning Smartmatic software and U.S. operations. The statements are not "of and concerning" the foreign holding companies.

## II.     SMARTMATIC IS A LIMITED PURPOSE PUBLIC FIGURE AND THE COMPLAINT FAILS TO ADEQUATELY PLEAD ACTUAL MALICE

Smartmatic is a limited purpose public figure and, as such, must plead and prove Ms. Powell made the allegedly defamatory statements with "actual malice," that is, with knowledge her statements were false or with reckless disregard of whether they were false or not. *New York Times Co.*, 376 U.S. at 279-80. The Complaint fails to plead actual malice with the requisite specificity, and therefore all claims should be dismissed.

---

[5] The Complaint, at note 2, alleges "Smartmatic International Holding B.V. owns election technology and software companies in the United States (Smartmatic USA Corp.), Barbados, Australia, United Kingdom, Panama, Haiti, Belgium, Singapore, Netherlands, Mexico, Ecuador, Brazil, Estonia, Taiwan, and the Philippines as well as branches in Colombia, Argentina, Honduras, Pakistan, Italy, Jamaica, and El Salvador." According to Smartmatic, Venezuela is not among the countries in which Smartmatic International Holding B.V. owns election technology and software companies.

### A.      Smartmatic Is a Limited Purpose Public Figure

The Supreme Court has recognized that limited purpose public figures, meaning individuals or entities who voluntarily inject themselves or are drawn into a particular public controversy, must satisfy a heightened standard in defamation actions. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974). The D.C. Circuit applies a three-part test to determine limited purpose public figure status: first, the court must "isolate the public controversy" at issue; second, the court must examine "the plaintiff's role [in the controversy];" and third, the alleged defamation must have been germane to plaintiff's participation in the controversy. *Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287, 1296-98 (D.C. Cir. 1980). In conducting this inquiry, the court considers if the plaintiff has regular and continuing access to the media, voluntarily assumed a role of special prominence in a public controversy, and purposely tried to influence the outcome or could realistically have been expected, because of its position in the controversy, to have an impact on its resolution. *Id.* at 1294-98. Smartmatic satisfies each element.

Courts applying New York and Florida law take similar approaches to Courts applying District of Columbia law when analyzing whether a person or company is a limited purpose public figure. *See, e.g., Gottwald v. Sebert*, 193 A.D.3d 573, 577 (N.Y. App. Div. 2021) (to determine whether a plaintiff is a limited purpose public figure the defendant must show the plaintiff has: (1) successfully invited public attention to his views in an effort to influence others prior to the incident that is the subject of litigation; (2) voluntarily injected himself into a public controversy related to the subject of the litigation; (3) assumed a position of prominence in the public controversy; and (4) maintained regular and continuing access to the media.); *Friedgood v. Peters Pub. Co.*, 521 So. 2d 236 (Fla. 4th DCA 1988) (Under Florida law, "[t]o determine whether a person is a public figure with reference to the published statements, there is a three part test that requires affirmative

11

responses to each of the following: (1) whether there is a public controversy; (2) whether the plaintiff played a sufficiently central role in that controversy; and (3) whether the alleged defamation was germane to plaintiff's involvement in that controversy. Under this test it may be possible for someone to become a public figure through no purposeful action of their own.") (citing *Gertz*, 418 U.S. at 347). *See also First Protective Insurance Company v. Weiss Group, LLC*, 2016 Fla. Cir. LEXIS 9741, *14-15 (Fla. Cir. Ct. 2016).

### 1. Courts Have Already Found Smartmatic to Be a Limited Purpose Public Figure.

In Smartmatic's litigation against others, arising from the same general controversy, the Delaware Superior Court has twice held Smartmatic is a limited purpose public figure. In *Smartmatic USA Corp. v. Newsmax Media, Inc.*, 2024 WL 4165101 (Del. Super. Ct. Sept. 12, 2024), the Delaware court applied Florida law to conduct a two-step analysis substantially similar to the D.C. Circuit's *Waldbaum* test. The framework is functionally identical: both tests require the court to (1) identify a public controversy and (2) examine the plaintiff's role in that controversy, including media access and voluntary assumption of a prominent role. *Id.* at *13-14.

With respect to the first step, the Delaware court found "'there was a pre-existing public controversy in a segment of the population' regarding the accuracy and integrity of the [2020] Election, including [Smartmatic's] voting software." *Id.* at *13 (quoting *Mile Marker, Inc. v. Petersen Publ'g, L.L.C.*, 811 So.2d 841, 845 (Fla. Dist. Ct. App. 2002)). As to the second step, the court found Smartmatic "played a sufficiently central role" in the controversy as part of the Voting Solutions for All People ("VSAP") initiative in Los Angeles County, which the court noted is "the largest voting jurisdiction in the United States." *Id*. The court emphasized Smartmatic had been subject to substantial public scrutiny long before the 2020 Election, including: (1) the 2006 Congressional request for a Committee on Foreign Investment in the United States ("CFIUS")

12

investigation into Smartmatic; (2) 2008 reports of miscounted votes in Illinois precincts using Sequoia equipment, which Smartmatic had previously owned; (3) President Duerte's 2019 recommendation that the Philippines replace Smartmatic; and (4) a March 2020 *Politico* report questioning Smartmatic's security. *Id.* at \*4-5.

This was merely a short list of Smartmatic's prior public scrutiny. Indeed, the role of Smartmatic and its technology in elections had been a subject of publicly documented widespread criticism, public concern, and outrage for nearly two decades prior to Ms. Powell's statements. *See* **Exhibit A**, **Exhibit B**, and **Exhibit C**.

The Delaware court also found Smartmatic satisfies the media access requirement, noting "Smartmatic had access to the media, including access to Newsmax; Newsmax invited Smartmatic to come on air to inform Newsmax viewers that the statements were false and tell its side of the story. Smartmatic chose not to accept the invitation." *Smartmatic USA Corp.*, 2024 WL 4165101 at \*14. The court reasoned that because "Smartmatic's customers are governments" and Smartmatic "must place a bid to obtain a contract with the government to offer its services," Smartmatic necessarily "understands it could be involved in a national public controversy if its services become a matter of public concern." *Id.* The court concluded, "[s]imilar to public figures and public officials, Smartmatic 'voluntarily expose[d] themselves to increased risk of injury from defamatory falsehoods concerning them.'" *Id.* Indeed, Smartmatic performs a government function and should have no more protection from the most egregious criticism than the government does.

An earlier decision in the same litigation reached the same conclusion. In *Smartmatic United States Corp. v. Newsmax Media, Inc.*, 2023 WL 1525024 (Del. Super. Ct. Feb. 3, 2023), the court stated: "Under the broad *Gertz* test, the Court finds that Smartmatic is a limited purpose

13

public figure." *Id.* at \*14. Thus, two separate decisions by the Delaware Superior Court found Smartmatic is a limited purpose public figure.

### 2.     Smartmatic Satisfies the *Waldbaum* Test

Independent application of the *Waldbaum* test to the facts of this case compels the same conclusion. The public controversy here is self-evident. It was the subject of national and international media attention for weeks. All presidential elections are matters of significant public interest, and the outcome of the 2020 presidential election was one of the most hotly contested public issues in recent American history, generating unprecedented public debate, litigation, and media coverage. This is the same controversy the Delaware Superior Court identified, *id.* at \*12-14, and Smartmatic cannot credibly dispute its existence.

With respect to the second prong, Smartmatic voluntarily injected itself into this controversy by purchasing Sequoia, a major provider of U.S. election technology, licensing its software to Dominion which was operating widely in the US, holding itself out as a premier election company worldwide, and contracting with government entities to provide voting systems, including for use in the 2020 election. The Complaint establishes these facts—alleging Smartmatic provides election technology to governments, operating in dozens of countries, Compl. ¶¶ 1-2, that its technology was used in the 2020 U.S. presidential election in Los Angeles County, *id.* ¶ 1, and that Smartmatic has provided election technology and services in countries including Venezuela, the Philippines, Brazil, Argentina, and elsewhere. *Id.* ¶¶ 29-43. By voluntarily assuming this role, Smartmatic assumed "special prominence in the resolution of public questions," namely, the integrity and security of elections. *Gertz*, 418 U.S. at 351.

As the Delaware court found, Smartmatic had been a subject of public debate for nearly two decades before the 2020 Election, including Congressional scrutiny, reports of voting

14

irregularities, and international controversies. *Smartmatic United States Corp.*, 2024 WL 4165101, at *3-5; *see also* **Exhibits A** through **A-45** (containing dozens of articles published by major news sources referencing Smartmatic's responses to extensive criticism of its ties to the Venezuelan government and the performance of its voting technology). In addition, the Complaint alleges Smartmatic affirmatively defended its technology and reputation in the public sphere, publishing information on its website and responding to email requests about its role in the election, including in response to the allegedly defamatory statements. Compl. ¶¶ 239-45. This conduct collectively demonstrates Smartmatic actively engaged in public discourse about its role in elections and sought that role in multiple countries—including the United States—to expand its business.

The Complaint itself demonstrates that Smartmatic can command media attention through its website publications and communications with media organizations. *Id.* ¶¶ 239-45. After the 2017 national Constituent Assembly election in Venezuela was conducted using Smartmatic technology and software, Smartmatic President Antonio Mugica proclaimed voter turnout figures had been "manipulated." *See* **Exhibits A** and **A-33.** Moreover, as the Delaware court found, Smartmatic was invited to appear on Newsmax to tell its story but declined. *Smartmatic USA Corp.*, 2024 WL 4165101 at *14. This access to media channels is a hallmark of public figure status. *See Gertz*, 418 U.S. at 344. Smartmatic is a limited purpose public figure even if it did not seek the spotlight. *See Lohrenz v. Donnelly*, 350 F.3d 1272, 1278-83 (D.C. Cir. 2003).

Finally, the alleged defamation was germane to Smartmatic's participation in the controversy. Ms. Powell's statements concerned the creation, history, and vulnerabilities of Smartmatic's election technology and software and Smartmatic's role in providing election technology and software. These are the very Smartmatic activities that placed it at the center of the ongoing public controversy over its ties to the Venezuelan government and whether its technology

15

was designed to and did rig elections. *See* **Exhibits A** through **A-45**, **Exhibit B** and **Exhibit C**. This is not a case where the alleged defamation concerned matters unrelated to a plaintiff's public role. Ms. Powell's alleged defamatory statements went to the heart of Smartmatic's participation in the 2020 presidential election.  Smartmatic is a limited purpose public figure.

### B.    The Complaint Fails to Adequately Plead Actual Malice.

Because Smartmatic is a limited purpose public figure, it must plead facts sufficient to establish Ms. Powell made the allegedly defamatory statements with actual malice. Actual malice requires proof that the defendant made the statement "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co.*, 376 U.S. at 279-80. This is a subjective standard that focuses on the defendant's state of mind at the time of publication. *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). To reach a conclusion that reckless disregard was present, "[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Id.* at 731. The plaintiff must show the defendant "actually had a 'high degree of awareness of . . . probable falsity.'" *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989) (quoting *Garrison v. State of La.*, 379 U.S. 64, 74 (1964)); *see also Church of Scientology International v. Time Warner, Inc.*, 903 F. Supp. 637, 640 (S.D.N.Y. 1995) ("Because the freedoms guaranteed by the First Amendment are designed to ensure that debate, not litigation, is vigorous, the subjective nature of the test of liability cannot create a bar to summary disposition of libel suits."); *McLee v. Chrysler Corp.*, 38 F.3d 67, 68 (2nd Cir. 1994).

In addition, the Court must "consider this case against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp

16

attacks." *New York Times Co.*, 376 U.S. at 270; *see also Cantwell v. Connecticut*, 310 U.S. 296, 310 (1940) ("[T]he people of this nation have ordained in the light of history, that, in spite of the probability of excesses and abuses, these liberties are, in the long view, essential to enlightened opinion and right conduct on the part of the citizens of a democracy."). Moreover, "[t]he speaker's belief in his statements, even his exaggerations, enhances, rather than diminishes, the likelihood that they are protected from libel attack by the First Amendment. Only where the speaker himself lacks this conviction, where the speaker entertains serious doubt as to the veracity of his statements, is the false statement actionable." *Church of Scientology*, 903 F. Supp. at 641 (citing *St. Amant*, 390 U.S. at 731).

The D.C. District Court has repeatedly emphasized conclusory allegations of actual malice are insufficient to survive a motion to dismiss. *See Arpaio v. Cottle*, 404 F. Supp. 3d 80, 84 (D.D.C. 2019) (pleading that "offers no more than 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action'" is insufficient); *Hindu Am. Found. v. Viswanath*, 646 F. Supp. 3d 78, 98-99 (D.D.C. 2022) (conclusory allegations essentially alleging the defendant "should have known better" are insufficient); *see also Michalczyk v. Vesey*, 2025 WL 2935465, at *2 (N.Y. Sup. Ct. Oct. 14, 2025); *Klayman v. Politico LLC & Josh Gerstein*, 2022 2022 WL 1134304, at *7 (Fla. Cir. Ct. March 22, 2022) (a public-figure plaintiff's failure to adequately plead actual malice is fatal to a complaint); *Frieder v. Prince*, 308 So. 2d 132, 134 (Fla. 3d DCA 1975) (dismissing complaint).

Here, the Complaint's allegations of actual malice are conclusory and insufficient. The Complaint makes bald allegations that Ms. Powell "knew" her statements were false or acted with "reckless disregard" for the truth, but these are textbook examples of legal conclusions. *See, e.g.,* Compl. ¶¶ 113, 139, 200, 201, 214, 219, 220, 249, 278, 284, 292, 301, 307, 313, 344, 349, 351,

17

356-58, 389, 403, and 417. Reciting the elements of the claim alone is insufficient as a matter of law. The Complaint fails to allege specific facts demonstrating Ms. Powell subjectively believed her statements were false or entertained serious doubts about their truth when made. Indeed, not one fact is alleged in the Complaint that Ms. Powell entertained any subjective doubt as to the truth of any of her statements.

Moreover, Ms. Powell's criticisms of Smartmatic's reputation for emerging from the Venezuelan government and for the purpose of rigging elections were not new. There was a fifteen-year history of major media and others publishing the same information. *See* **Exhibits A** through **A-45, Exhibit B,** and **Exhibit C**. This well-documented debate including allegations identical to Ms. Powell's statements about Smartmatic's Venezuelan ties, design of its software to rig elections, and its rigging of elections, defeats, as a matter of law, any argument that the Complaint sufficiently alleges "actual malice."

In addition, the Complaint concedes Ms. Powell repeatedly stated she had "evidence" supporting her claims, including affidavits, witness statements, expert reports, and documentary proof. *See*, *e.g.*, Compl. ¶¶ 84, 94, 103, 109, 122, 125, 128, 149, 191. The Complaint admits Ms. Powell stated, during interviews, she was reading from an affidavit of a military officer with relevant knowledge concerning Smartmatic's design. *Id.* ¶ 125(f) and 191(o). The fact that Ms. Powell told listeners she was reading directly from an affidavit and claimed to rely on evidence belie any inference of actual malice. Ms. Powell's statements were based on factual and expert sources and extensive information in the public domain. *See St. Amant*, 390 U.S. at 732.

The D.C. Circuit has held reliance on sources – even sources that later prove unreliable – negates an inference of actual malice where the defendant had no reason to doubt those sources at the time. *See Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 597 (D.C. Cir. 2016) ("despite weaknesses

18

in some sources," plaintiff failed to establish that defendant possessed subjective doubt and thus failed to show actual malice); *Lohrenz*, 350 F.3d at 1282-86 (stating that the failure to verify statements with the plaintiff and reliance upon some biased sources, in themselves, do not amount to reckless disregard of the truth); *Harte-Hanks*, 491 U.S. at 688 ("[F]ailure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard."); *see also Ortiz v. Valdescastilla*, 102 A.D.2d 513, 519 (N.Y. App. Div. 1984) (stating a publisher is privileged to publish information received from a source unless the publisher had, or should have had, substantial reasons to question the accuracy of the information or bona fides of the source; in such settings the publisher  cannot be deprived of the qualified privilege merely because the report is later determined to be without factual foundation); *Quercioli v. Miami Herald Media Co.*, 2018 Fla. Cir. LEXIS 11910, *21-22 (Fla. Cir. Ct. 2018) (stating facts cut against allegation of actual malice as publisher relied on official reports or sources (citations omitted)).

### C.    The Complaint Fails to Allege Express Malice

Smartmatic must also plead facts sufficient to establish Ms. Powell made statements with express malice.  Florida law provides for a qualified privilege "so that parties can honestly express opinions under reasonable circumstances to other people who need to hear those opinions." *Block v. Matesic*, 789 F. Supp. 3d 1131, 1183 (S.D. Fla. 2025) (citations omitted). The elements of the qualified privilege are: (1) good faith; (2) an interest in the subject by the speaker or a subject on which the speaker has a duty to speak; (3) a corresponding interest or duty in the listener or reader; (4) a proper occasion; and (5) publication in a proper manner. *Thomas v. Tampa Bay Downs, Inc.*, 761 So. 2d 401, 404 (Fla. 2d DCA 2000). The qualified privilege entitles statements otherwise actionable to a presumption of good faith. *Nodar v. Galbreath*, 462 So.2d 803, 810 (Fla. 1984). To

19

overcome this presumption, a plaintiff must plead facts, and then adduce evidence of, express malice. *Block*, 789 F. Supp. 3d at 1185.

The qualified privilege applies to Ms. Powell's statements. Smartmatic fails to overcome the presumption of good faith because its Complaint does not plead facts sufficient to show Ms. Powell made her statements with express malice. Express malice requires a showing "that the defendant's primary motive in making the statements was the intent to injure the reputation of the plaintiff." *Fridovich v. Fridovich*, 598 So. 2d 65, 69 (Fla. 1992); *see also Nodar*, 462 So. 2d at 812 ("Strong, angry, or intemperate words do not alone show express malice; rather, there must be a showing that the speaker used his privileged position to 'gratify his malevolence`'") (quoting *Myers v. Hodges*, 44 So. 357, 362 (Fla. 1907)); *Crestview Hosp. Corp. v. Coastal Anesthesia, P.A.*, 203 So. 3d 978, 982 (Fla. 1st DCA 2016) ("The mere fact that a statement is untrue and made with knowledge of its falsity, or made recklessly without regard to its truth or falsity is not the test."). Ms. Powell spoke from a deep-seated and evidence-based belief that Smartmatic has ties to the Venezuelan government, as reported time and again by major print and television news sources (**Exhibits A** through **A-45**) and stated on Twitter (**Exhibit B** and **C**) and that its software was designed to rig elections and had been used to rig elections. Smartmatic has not and cannot meet the controlling standard that Ms. Powell made her statements with express malice.

Accordingly, because Smartmatic is a limited purpose public figure, and the Complaint fails to adequately plead actual malice, all claims should be dismissed.

### III.   SMARTMATIC HAS NOT PLAUSIBLY ALLEGED MS. POWELL'S STATEMENTS PROXIMATELY CAUSED INJURY AND DAMAGES

The Complaint alleges Ms. Powell's alleged "defamatory" statements "were a proximate and substantial cause of Smartmatic's name and brand becoming synonymous with election fraud

20

with members of the general public and government officials, particularly those in the United States." Compl. ¶ 368. This conclusory contention ignores Smartmatic has a long and widely publicized history of significant controversy preceding Ms. Powell's statements by more than a decade. Claims of Smartmatic's ties to the Venezuelan government, alleged vote-flipping, and election rigging, have been made by major media outlets in print and on television. *See* **Exhibits A** through **A-45.** Ms. Powell's statements broke no new ground. For example, longstanding, wide-ranging accusations equated Smartmatic with Venezuelan dictators and their illegal attempts to remain in power by rigging elections, sometimes with success.

To recover for defamation, a "plaintiff must show that the damages were proximately caused by the defamatory statements." *Cape Publications, Inc. v. Reakes*, 840 So.2d 277, 281 (Fla. 5th DCA 2003); *see also Solers, Inc. v. Doe*, 977 A.2d 941, 948 (D.C. 2009) (to state the fourth element of a defamation claim, a plaintiff must allege and prove "either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm"). In addition, "when a particular plaintiff's reputation for a particular trait is sufficiently bad, further statements regarding that trait, even if false and made with malice, are not actionable because, as a matter of law, the plaintiff cannot be damaged in his reputation as to that trait." *Church of Scientology,* 932 F Supp at 593; *see Guccione v Hustler Mag., Inc.*, 800 F.2d 298, 303 (2d Cir. 1986); *Cardillo v Doubleday & Co., Inc.*, 518 F.2d 638, 639-40 (2d Cir. 1975); *161 Ludlow Food, LLC v L.E.S. Dwellers, Inc.,* 60 Misc 3d 1221(A), *4 (Sup. Ct, NY County 2018). *Logan v. District of Columbia*, 447 F. Supp. 1328, 1332 (D.D.C. 1978); *Carpenter v. King*, 792 F. Supp. 2d 29, 34 n. 2 (D.D.C. 2011) (collecting cases).

21

Here, Smartmatic's reputation had been so impugned prior to statements by Ms. Powell that Smartmatic cannot adequately plead, much less prove, she proximately caused it damage. *See* **Exhibits A** through **A-45, Exhibit B, Exhibit C, Exhibits E** through **E-4;** Compl. ¶¶ 79-82.

### A.    Smartmatic Has Not Adequately Pleaded Causation as a Matter of Law

When Ms. Powell commented publicly about Smartmatic and the 2020 presidential election on a handful of Fox News and Fox Business shows in the aftermath of the election, she quoted evidence she obtained while preparing four federal lawsuits, including publicly available information and she published supporting documents online. She was not "creating" a "story" in which she chose the innocent "Smartmatic" to be the "villain." *See, e.g.,* Compl. ¶¶ 75-76, 148, 202-203. She was merely the most recent citizen to speak following a long line of major media outlets, public officials, and others calling attention to Smartmatic's alleged ties to the Venezuelan government, vote-flipping and election rigging. *See* **Exhibits A, A-1** through **A-3, A-6** through **A-19, A-21** through **A-22, A-24** through **A-25, A-28** through **A-32,** and **A-34** through **A-45.**

For nearly two decades, journalists, politicians, and academics in print, television, web media, and on Twitter, in countries across the world, had publicized Smartmatic's ties to the Venezuelan government, involvement in rigged elections, and suspect and vulnerable voting systems. As set forth in **Exhibit A**, the publicly available record concerning Smartmatic's ties to the Venezuelan government, its provision of election technology, and questions about the integrity of its voting systems spans over two decades of coverage (2004–2026) across at least 29 separately identified publications from major U.S. and international media outlets - including The New York Times, The Washington Post, The Wall Street Journal, the Los Angeles Times, Reuters, The Guardian, CNN, and Fast Company—as well as congressional correspondence, government filings, expert commentary, Philippine media reporting on election fraud allegations, and

22

Smartmatic's own public website and YouTube statements, all of which were freely accessible online to a combined readership numbering at least hundreds of millions. Smartmatic has no legal basis to claim injury from alleged defamation on the same specific statements and topics that have followed Smartmatic and already tarnished the company's reputation from its first election in Venezuela.  *See, e.g.*, *161 Ludlow Food*, 60 Misc 3d at *5.

> **1.    Ms. Powell's Statements Concerned the Same Topics of Venezuelan Ties and Election Rigging that Already Had Impugned Smartmatic's Reputation for Nearly Twenty Years**
>
> > *a.    Publicly Published Media Pre-Dating Ms. Powell's Statements*

Smartmatic and the Venezuelan based software firm Bizta partnered with state-owned telecom CANTV to win the roughly $91 million dollar contract from Venezuela's National Electoral Council to supply the election hardware and software used in the 2004 presidential recall referendum against Hugo Chávez. **Exhibit A-1**. Two of the three owners and principals of Smartmatic (childhood friends Antonio Mugica and Alfredo Anzola) also were owners and principals of Bizta. *Id*. The Venezuelan government provided approximately $200,000 in exchange for a nearly thirty percent equity stake and a board seat at Bizta, filled by a government representative. *Id.*  Bizta was later folded into Smartmatic. *Id*.

The first election in which Smartmatic provided election services—the 2004 Venezuelan presidential recall election—resulted in widespread public reporting that Smartmatic was inappropriately affiliated with the Venezuelan government and Hugo Chávez, and that the election was rigged, corrupt, and fraudulent. *See* **Exhibit A**. Articles in the Miami Herald in 2004, 2005 and 2006 bore headlines including, "Venezuela owns stake in ballots; Key ballot firm ownership under fire," "Voting-system firm drops Venezuela as an investor," "Voting machines pose legal peril," and "Forget Dubai – worry about Smartmatic instead." **Exhibits A-1, A-2, A-3**.

23

In 2006, after Smartmatic entered the U.S. market through its purchase of Sequoia Voting System, letters from a U.S. Congresswoman to the U.S. Treasury Secretary demanded investigation into Smartmatic's Venezuelan ties—citing critical national security concerns. **Exhibits A-7** and **A-11**. A Los Angeles Times article informed readers, "Ballot Firm's Ties to Venezuela Criticized" and CNN Lou Dobbs Tonight featured multiple specific reports that Smartmatic had Venezuelan ties and was synonymous with rigging elections to benefit leaders in power. **Exhibits A-8, A-9, A-10**. Critical press reports continued for Smartmatic with major news stories published by the Washington Post ("Election Supplier's Links Probed: U.S. Looks into Whether Voting Machine Firm is Tied to Chávez") and New York Times (e.g., "U.S. Investigates Voting Machines' Venezuela Ties"), at least as early as 2006 on the same issues mentioned in Ms. Powell's at-issue statements. *See* **Exhibits A-13, A-14**. The bad press continued for Smartmatic in 2008, with Voter Action publishing "Sequoia Voting Systems Inc. uses Vote-Counting Software Developed, Owned, and Licensed by Foreign-Owned Smartmatic, a Company Linked to the Venezuelan Government of Hugo Chávez, " and in 2009, with articles including the Pacific Daily News report, "The Specter of Failed Polls," a Voter Action letter to the Technical Guidelines Committee stating that "Dominion…depends upon secret source code created and owned by Smartmatic, a foreign controlled company with ties to the Venezuelan government led by Hugo Chavez." *See* **Exhibits A-21, A-22, A-24**. In 2012, Verified Voting published "Belgian Region's Decision to Use Smartmatic Voting Machines Reignites E-voting Debate." **Exhibit A-25**.

In 2016, Philippine authorities accused Smartmatic employees of making unauthorized changes to a server script during the transmission of election results—an incident that became a cornerstone for allegations that Smartmatic technology could be used to alter vote counts. **Exhibit A-28.** The Manila Times, on June 21, 2016, reported multiple examples of Smartmatic remotely

24

accessing live election results. *Id.* In 2017, the Philippine Department of Justice found probable cause to charge Smartmatic personnel with violating the Cybercrime Prevention Act. **Exhibit A-30.** In a resolution reversing the dismissal of the charges against Smartmatic by the Manila prosecutor's office, the Philippine Department of Justice found that Smartmatic's conduct "was not only against protocol but also patently illegal." **Exhibit A-31**.

Following the 2017 Venezuelan national Constituent Election, Antonio Mugica, the President of Smartmatic, appeared at a widely publicized news conference acknowledging that the voter turnout in the Constituent Election had been manipulated by one million votes.[6] **Exhibit A-32**. The Globe and Mail reported that the "voter turnout had been manipulated." **Exhibit A-36**. Reuters reported the "Venezuelan government stands by election count despite fraud allegation." **Exhibit A-34**. This was more than three years before any statement by Ms. Powell.

In April 2018, Lord Malloch-Brown, the chairman of Smartmatic's parent company, attributed Smartmatic's underwhelming growth to the fact that "Smartmatic is dogged by its history," and remarked that Smartmatic's "Venezuelan roots, the CFIUS investigation, continuing controversies around the Philippine elections, and speculation about ultimate ownership of the company have combined to overwhelm our attempts to rehabilitate our corporate image." *See* **Exhibit F.** In August 2018, former Filipino elected representative and attorney, Glenn Chong, appeared on UNTV News to "show [the] election transmission process that COMELEC, Smartmatic refused to comment on." **Exhibit A-37**. In that video Attorney Chong stated "the problem is, this is supposed to be a direct transmission to this laptop" and that there is an "illegal checkpoint" in the "queue servers" which causes a "single file" to "split into 11 to 13 tallies." *See id*., 6:5-7, 22; 7:1-9; 9:16-20.

---

[6] Caught with a 1 million vote discrepancy, Smartmatic CEO Mugica indicated at the press conference that there must be people auditing the Smartmatic system at all stages of an election for results to be accurate.

On July 20, 2019, the Philippine News Agency reported that as the "procuring entity, [Comelec] has the power to blacklist Smartmatic from joining the bidding as long as there is a legal basis." The report added that "President Rodrigo Duterte himself also stepped into the issue, calling for the removal of Smartmatic in favor of more fraud-proof elections." **Exhibit A-38**.

In the U.S. in 2019, it was publicly reported, "Two experts quit election accountability group over claims it has been endorsing untrustworthy machines; Verified Voting, a respected organization, has been giving election officials false confidence in their voting machines and providing cover for the companies that make and sell the devices, say the two academics." **Exhibit A-42**. In March 2020, the Washington Post reported about Smartmatic, "Los Angeles County's bold effort to improve voting leads to malfunctioning equipment, long lines and angry voters." **Exhibit A-43**.

It is difficult if not impossible to overstate the breadth and depth of the negative publicly-published media regarding Smartmatic that pre-dates Ms. Powell's at-issue statements. Even a brief foray into the public domain reveals a plethora of statements that Smartmatic is a Venezuelan company founded and/or funded by the Venezuelan government and Smartmatic electronic voting machines were designed to rig elections and have rigged elections. Smartmatic has not and cannot plausibly allege Ms. Powell's statements on five news programs in the immediate aftermath of the 2020 presidential election caused the injury and billions of dollars in damages as complaint in its Complaint. The news was relentless in impugning Smartmatic's reputation *prior to* Ms. Powell's

statements -- because of actions by Smartmatic[7] and others over whom Ms. Powell had no control. *See e.g*., **Appendix A**;[8] **Exhibits A** through **A-45**.

Smartmatic has not and cannot plausibly allege Ms. Powell caused the injury and damages in its Complaint and, therefore, the Complaint should be dismissed.

> b. *Social Media Tweets, Re-Tweets, and Comments Pre-Dating Ms. Powell's At-Issue Statements*

The Twitter universe was perhaps even more critical of Smartmatic and its electronic voting machines than major and other news outlets. Tweets pre-dating Ms. Powell's first statement on November 14, 2020 establish the topics and substance of her statements were nothing new. *See* **Exhibit B** and **Exhibit C**. Not only were the same allegations circulating *prior to* Ms. Powell's statements, they had been circulating globally for years from major media sources. The tweets proclaimed that Smartmatic had ties to Venezuela/Hugo Chavez, and that its machines were designed to rig elections and had rigged elections. *See id*. Discovery is not needed to establish Ms. Powell is not the originator of the tweets nor mentioned therein. It is plain from the public domain. Given this irrefutable fact, the Complaint should be dismissed for failure to plausibly allege that Ms. Powell's conduct caused Smartmatic any injury or damage.

Smartmatic's repeated scandals caused outrage on Twitter globally. For example, tweets in late 2019 and early 2020 identified Smartmatic as being responsible for fraudulent election results in Venezuela for several decades. *See, e.g.,* **Exhibit B** at Nos. 3 ("…fraud experts have shown that since 2006 Chavismo—and now Madurismo—won every election by CHEATING

---

[7] Smartmatic's reputation undoubtedly was damaged by the actions of Smartmatic's executives during 2015-2018, prior to Ms. Powell's 2020 statements. These actions led to investigations by the United States government and an indictment by the U.S. Attorney for the Southern District of Florida in August 2024.

[8] Subject to Motion for Leave to File Excess Pages filed April 17, 2026.

thanks to Smartmatic's software…"), 24 ("…Smartmatic is responsible for 25 fraudulent elections in Venezuela. Be very careful."), 26 ("…[Smartmatic's] owner is a Chavista, and he always did the same with the elections in Venezuela, FRAUD; he changed the results, raised them in favor of the one who paid him or miscounted votes always in favor of the nefarious government!"), 54 ("To use Smartmatic machines for a vote is to put at risk the truth of the vote. In Venezuela Smartmatic was sold to the Regime of Chavez and Maduro…") and 86 ("…In Venezuela, just like in Argentina, whoever counts the votes is bought off. Smartmatic gave Chavismo 18 years of life without having the support of the vote…").[9]

Other tweets published between 2012 and early 2020 accuse Smartmatic of stealing elections by fabricating millions of votes. *See, e.g*., **Exhibit C** at Nos. 4 ("AS OF TODAY, they have slipped in over 7 million fake voters. Those virtual votes are inserted from Havana through SMARTMATIC."), 9 ("…In Venezuela, they always use the Smartmatic machines, pump in millions of votes, and just like that, they win and never lose. They have been doing this for 20 years…"), 20 ("…it was proven that thirty million votes were stolen by Smartmatic's fraudulent voting machines…"), 25 ("…how did these criminals manage to get 2.5 million more votes than in the PASO? Smartmatic did it again.") *See* **Exhibit B** and **Exhibit C**.

In addition to claims of fraud by Smartmatic in foreign elections, claims that Smartmatic machines were being used in U.S. elections for fraudulent purposes were widely disseminated on Twitter years before the 2020 election.[10] For example, tweets lambasted Smartmatic's role in the

---

[9] Following the 2017 national Venezuelan Constituent Assembly Election, Smartmatic publicly accused the Venezuelan government of manipulating voter turnout figures. This extraordinary event – the company accusing its client of fraud – drove tweets discussing Smartmatic's connection to Venezuelan political figures and allegedly rigged election results.

[10] Ms. Powell is unaware of any lawsuit brought against any of the news outlets that reported or thousands of tweeters that tweeted, prior to Ms. Powell's statements, that Smartmatic had ties to

28

2016 U.S. presidential election stating that George Soros-owned Smartmatic voting machines were deployed in swing states to rig the election for Hillary Clinton. *See, e.g.,* **Exhibit C**, No. 21 ("…and what about the #SOROS smartmatic voting machines that changed millions of votes to Hillary !! #voterfraud." Multiple tweets asserted Soros controlled Smartmatic machines in 16 states and that they would be used to rig the election.

At bottom, the Venezuelan election fraud narrative was not a "story" that was "created" by Powell.  It originated and spread long before and was fed by Smartmatic itself through its public response to the 2017 Venezuelan Constituent Election. Tens of thousands of tweets were giving public voice to claims of corruption and fraud—including Smartmatic's ties to the Venezuelan government and claims of election fraud surrounding Smartmatic-facilitated elections. Each of these numerous political events resulted in tweets and, just like all the tweets that pre-date the 2020 U.S. presidential election, none originated with nor mention Ms. Powell.

Other Spanish-language tweets linked Smartmatic to election manipulation across Latin America. For example, on January 19, 2020, a tweet stated: "@veritatisPeru Unbelievable! The company that is organizing next Sunday's election has done the same thing in Venezuela, from 2004 until now. It has also done it for Correa in Ecuador, and in Brazil during Lula and Dilma's administrations…" *See* **Exhibit B** at No. 6 (translated from Spanish to English). In a December 13, 2019 tweet, the author states: "Talking about George Soros is talking about Smartmatic – the electronic voting company responsible for electoral frauds in Argentina, Brazil and Venezuela." *See id.* at No. 7. In 2019, Argentine elections also were plagued with voting controversies related to Smartmatic. In August 2019, Smartmatic conducted the Argentine PASO elections. An

---

the Venezuela government, that its election software was designed to rig elections, or that Smartmatic had flipped millions of votes in elections.

Argentine Deacon was said to have provided "irrefutable evidence" of fraud perpetrated with Smartmatic machines, describing Smartmatic as a "Cuban-Venezuelan company" that has been committing fraud for 20 years with Chavez and Maduro. *See id.* at No. 46. Among the thousands of tweets referencing Smartmatic prior to the 2020 U.S. presidential election, the following tweet illustrates how users independently connected Smartmatic's operations across Venezuela, the Philippines, and other jurisdictions to raise broader questions about election integrity: "Smartmatic coincided with all the triumphs of Chavismo. There were also irregularities in the services provided during the elections in the Philippines, El Salvador, Uganda, and suspicions in Belgium. So, why will this not happen in Argentina?" *See id.* at No. 16. Other tweets warned Smartmatic would manipulate Argentina's vote count citing the poor Venezuelan experience.

By 2019, the year before the 2020 U.S. election, Smartmatic already and irrefutably was the subject of a massive, exposé of alleged fraud on Twitter, driven by Latin American politics, with no connection to Ms. Powell.[11]  By the 2020 US presidential election, the criticisms of Smartmatic were already a massive, mature, multi-lingual Twitter conversation. It cannot be alleged Ms. Powell created this conversation or its content. Indeed, by the time Ms. Powell made her first alleged statement, the President of the United States, his personal attorney, and major news networks already had reported the election had been rigged. *See* **Exhibits E** through **E-4**; Compl. ¶ 79-82. Following the election, President Trump posted on Twitter to his approximately 88 million followers that "2.7 million votes" were flipped from Trump to Biden. **Exhibit E-1**. By using the "@" function to tag @seanhannity and @LouDobbs in his tweets, President Trump

---

[11]    The August 2017 Venezuelan Constituent Election, in which Smartmatic admitted "voter turnout figures" had been "manipulated" and the Venezuelan government accused Smartmatic of dishonesty, drove a plethora of engagement on social media. *See* **Exhibit A-32**. In October 2016, the same narrative—Smartmatic machines rigging a U.S. election—ran on Twitter, years before Ms. Powell uttered a word about elections.

ensured that each tagged individual received a notification of the tweet, created a clickable hyperlink to their profiles for Trump's tens of millions of followers, and signaled to Twitter's algorithm to surface the tweets to the followers of Hannity and Dobbs as well—thereby exponentially expanding the audience for these claims beyond even his own massive following. **Exhibits E-1** through **E-4**.

Smartmatic's international notoriety and the broad and deep criticisms of its reputation preceded Ms. Powell's statements. (*See e.g.,* **Exhibits A** through **A-45, Exhibits B, Exhibit C**). Smartmatic has not and cannot plausibly allege Ms. Powell proximately caused it the injury and damages alleged in the Complaint.[12] The Complaint should be dismissed with prejudice.

### IV.    THE INJURIOUS FALSEHOOD CLAIMS SHOULD BE DISMISSED BECAUSE THE COMPLAINT FAILS TO PLEAD SPECIAL DAMAGES WITH THE REQUIRED SPECIFICITY

Smartmatic's injurious falsehood claims should be dismissed for two independent reasons. First, the Complaint fails to plead special damages with the particularity required by law. Second, even if special damages were adequately pleaded, the Complaint fails to attribute any of those damages to Ms. Powell's statements, as distinguished from statements made by thousands of other speakers, including those with far larger platforms and audiences.

This argument is distinct from whether Smartmatic adequately pleaded special damages in general. The Court's prior Order found Smartmatic adequately pleaded approximately $1.2 million in specific expenses. The questions now before the Court are different: (1) whether those pleaded damages satisfy the heightened particularity requirement for injurious falsehood claims, which requires the plaintiff to specifically state the amount of damages with particularity; and (2) whether

---

[12]    Discovery will not change the facts established by **Exhibits A** through **A-45**, **B**, and **C** and Smartmatic cannot correct these deficiencies through amendment.

pled facts show such special damages were the natural and direct result of the defendant's conduct. *Passantino v. Weissman*, 752 F. Supp. 3d 168, 182 (D.D.C. 2024) (citing *Fowler v. Curtis Publ'g Co.*, 182 F.2d 377, 379 (D.C. Cir. 1950)) (internal quotation marks omitted). The answer to both questions is no, and that failure is fatal to the injurious falsehood claims.

### A. This Court and Others Have Held Injurious Falsehood Plaintiffs Must Plead a Causal Connection Between a Defendant's Statements and Plaintiff's Specific Damages.

The legal standard governing injurious falsehood claims in this District is clear and demanding. In *Passantino*, this Court held plaintiffs asserting injurious falsehood claims must state the amount of damages with particularity and specify facts showing such special damages were the natural and direct result of the defendant's conduct. 752 F. Supp. 3d at 182. The court emphasized Federal Rule of Civil Procedure 9(g) requires that if special damages are claimed, the amount of damages must be specifically stated with particularity. *Id.* (citing Fed. R. Civ. P. 9(g)). "Rote language" like that Smartmatic used here requires dismissal. *Passantino* at 182.[13]

Courts have also emphasized injurious falsehood claims require proof that the defendant's publication played a material and substantial part in inducing others not to deal with the plaintiff. *Trump v. Clinton*, 161 F.4th 671, 686 (11th Cir. 2025); *Alzamend Neuro, Inc. v. Biorasi, LLC*, 2026 U.S. Dist. LEXIS 20066, *25-26 (S.D. Fla.). In *Trump v. Clinton*, the Eleventh Circuit

---

[13]   The legal standard for injurious falsehood claims is also similar in New York and Florida. *See, e.g.*, *Farella v. Weldon House Inc.*, 2010 N.Y. Misc. LEXIS 2730, *6 (N.Y. Sup. Ct. June 24, 2010) (stating that special damages are a necessary element of an action for injurious falsehood that must be pleaded with particularity (citations omitted)); *Colon and Rectal Management Co. v. Garbus*, 2019 N.Y. Misc. LEXIS 11171, *16 (N.Y. Sup. Ct. 2019) (special damages is a necessary element of an action for injurious falsehood that must be pleaded with particularity); *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 388 (Fla. Dist. Ct. App. 1999) (holding that special damages are a "crucial element of injurious falsehood").

affirmed the dismissal of injurious falsehood claims because the plaintiff failed to plead special damages, which the district court called the "crucial element" of the tort. The district court held this failure "alone [was] fatal" to the injurious falsehood claims. *Trump v. Clinton*, 2023 U.S. Dist. LEXIS 246661, at *22 (S.D. Fla. Sept. 15, 2023).  Smartmatic fails on this crucial element.

### B. The Complaint Pleads No Damages Specific to Ms. Powell's Statements

The Complaint does not allege Smartmatic spent $400,000 on public relations because of something specific Ms. Powell said, as opposed to something President Trump, Rudy Giuliani, Fox News, or thousands of other speakers on Twitter said, prior to Ms. Powell's statements. Compl. ¶ 373. The Complaint does not allege that any specific customer, contract, or business opportunity was lost because of Ms. Powell's statements. Without facts showing such special damages were the natural and direct result of Ms. Powell's conduct, as *Passantino* requires, these expenses cannot support an injurious falsehood claim. 752 F. Supp. 3d at 182.

This is not a pleading technicality. It goes to the heart of whether Ms. Powell caused any cognizable harm. A defendant is liable only for harm caused by her own statements. *See, e.g., Bos v. Smith*, 556 S.W.3d 293, 307-08 (Tex. 2018) (concluding a defendant's statement did not proximately cause the plaintiff's injuries because it "was but a small part in the plethora of negative accusations" against plaintiff by other speakers). The same is true as to Ms. Powell. She played an infinitesimal part in a plethora of negative accusations that accumulated against Smartmatic for decades and around the time of the 2020 election – alleging ties to Venezuelan dictators, the design of election technology and software to rig elections, and the rigging of elections. Smartmatic cannot ignore the tens of thousands of speakers identified in **Exhibits A**, **B** and **C**, lump together a selected few American speakers who commented following the 2020 election, and then seek billions of dollars for injury and damages from Ms. Powell alone. *See, e.g.,* Compl. ¶ 4.

33

### C. Smartmatic's Customers Are Government Entities That Make Decisions Based on Objective Criteria

Government procurement decisions are governed by statutory and regulatory requirements, competitive bidding processes, and objective evaluation criteria, not by what an individual citizen said on television in the weeks following an election. The Complaint does not identify a single government contract Smartmatic lost because of Ms. Powell's statements. The Complaint does not identify a single government official who decided not to purchase Smartmatic's products because of something Ms. Powell said. If Ms. Powell's statements actually caused Smartmatic to lose specific contracts or customers, in the U.S. or abroad, the Complaint would identify them. It does not, because it cannot.

For these reasons, Smartmatic's injurious falsehood claims against Ms. Powell should be dismissed with prejudice.

### V. CLAIMS BASED ON STATEMENTS NON-ACTIONABLE AS A MATTER OF LAW SHOULD BE DISMISSED

A statement-by-statement analysis of Ms. Powell's statements demonstrates many statements are non-actionable as a matter of law.

The First Amendment provides robust protection for speech on matters of public concern. Not every statement a plaintiff finds objectionable is actionable as defamation. Courts have long recognized certain categories of speech—including expressions of opinion and rhetorical hyperbole—are constitutionally protected and cannot support a defamation claim. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19-20 (1990); *Greenbelt Cooperative Publishing Ass'n v. Bresler*, 398 U.S. 6, 13-14 (1970).

Whether a statement is actionable as defamation is a threshold question of law for the Court to decide. *Moldea v. New York Times Co.*, 15 F.3d 1137, 1142 (D.C. Cir. 1994). In making this

determination, the Court must examine the statement in context, considering the "general tenor" of the communication and whether a reasonable reader or listener would understand the statement as an assertion of verifiable fact. *Milkovich*, 497 U.S. at 21.

This Court should conduct a statement-by-statement analysis and dismiss claims based on statements within the following protected categories. *See* **Appendix A**.

### A.    Statements Expressing Subjective Belief or Concern Are Non-Actionable Opinion

The Complaint attributes to Ms. Powell certain statements couched in the language of subjective belief or concern rather than factual assertion. Under established First Amendment precedent, such statements are protected opinion and cannot support a defamation claim. In *Milkovich,* the Supreme Court held statements that "cannot reasonably be interpreted as stating actual facts" about an individual are protected by the First Amendment. 497 U.S. at 20 (*quoting Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50 (1988)). Several statements attributed to Ms. Powell in the Complaint fall squarely within this protection:

**Statement 1:** "I'm very concerned it involved not only Dominion and its Smartmatic software, but that the software essentially was used by other election machines also." Compl. ¶¶ 90, 140(k), 149(h), 191(l).

This statement is prefaced with the language "I'm very concerned," an explicit expression of subjective belief rather than factual assertion. The use of "concerned" signals Ms. Powell is expressing her personal worry or suspicion, not stating a verified fact. Courts have consistently held qualifying language renders a statement non-actionable. *See, e.g., Bauman v. Butowsky*, 377 F. Supp. 3d 1, 11 (D.D.C. 2019) (stating an expression of opinion cannot support a claim of defamation because the inclusion of cautionary language weighs in favor of treating the statement that follows as an expression of opinion) (citations omitted); *Kindred v. Colby*, 2015 WL

35

12915686, at *2 (N.Y. Sup. Ct. May 15, 2015) ("Expressions of opinion, as opposed to assertions of fact, are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation") (citations omitted); *Demby v. English*, 667 So. 2d 350, 355 (Fla. DCA 1995) (stating pure expression of opinion exists when an article states the facts on which the opinion is based, or assumes facts that the opinion is clearly based on) (citations omitted).

The D.C. Court of Appeals has similarly recognized statements framed as personal beliefs or concerns are non-actionable. *See Guilford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580, 596-97 (D.C. 2000) (holding statements framed as the speaker's subjective view, an interpretation, a theory, conjecture, or surmise, rather than as established fact, are protected opinion) (citations omitted); *see also Liberty Lobby, Inc. v. Dow Jones & Co., Inc.*, 838 F.2d 1287, 1300 (D.C. Cir. 1988) ("evaluative statements of taste and belief can never provide the basis for a defamation suit because such statements are incapable of being proved false") (citations omitted).

**Statement 2:** "It's either Symantec or Smartmatic or the two, there, one is a subsidiary of the other." Compl. ¶¶ 85, 182(b).

This statement demonstrates uncertainty about corporate structure through the use of "either...or" and "one is a subsidiary of the other." The expression of uncertainty indicates Ms. Powell was not asserting definitive facts but rather her imperfect understanding. Such statements of uncertain belief are non-actionable. *See Mar-Jac Poultry, Inc. v. Katz*, 773 F. Supp. 2d 103, 122 (D.D.C. 2011) (the stated need for further investigation due to uncertainty negated either or both prongs of Mar-Jac's defamation claim); *Flynn v. Cable News Network, Inc.*, 2024 WL 1765566, at *8 (S.D.N.Y. Apr. 24, 2024) ("Even if the statement is in some sense 'false' but the Flynns just can't prove it, that is the price of freedom: Requiring the plaintiff to show falsity will insulate from liability some speech that is false, but unprovably so. Where, as here, the evidence is at best

36

'ambiguous' or 'uncertain'—and far from 'conclusive'—the Constitution requires courts to tip the balance in favor of protecting true speech.") (citations omitted).

### B.    Statements Made on Cable News Opinion Programs Are More Likely to Be Understood as Opinion

Context is critical in determining whether a statement is actionable as defamation. Ms. Powell's statements were made on cable news political opinion programs during a period of intense political debate.   The D.C. Circuit has repeatedly emphasized context is crucial in determining if a statement is actionable as defamation. In *Farah v. Esquire Magazine, Inc.*, 736 F.3d 528, 535 (D.C. Cir. 2013), the court held "'the First Amendment demands' that the court assess the disputed statements 'in their proper context,'" and that "the 'publication must be taken as a whole, and in the sense in which it would be understood by the readers to whom it was addressed.'" (quoting *Weyrich v. The New Republic, Inc.*, 235 F.3d 617, 625 (D.C. Cir. 2001)); *Afro-American Publ'g Co. v. Jaffe*, 366 F.2d 649, 655 (D.C. Cir. 1966) (*en banc*).

In *Weyrich*, the court found statements appearing in a context suggesting commentary or opinion–rather than hard news reporting–are less likely to be understood as factual assertions.  235 F.3d at 625. Ms. Powell's statements were made on cable news programs widely understood to feature opinion commentary rather than straight news reporting. The Complaint identifies the following programs as the source of Ms. Powell's allegedly defamatory statements: Lou Dobbs Tonight, Sunday Morning Futures with Maria Bartiromo, and Justice with Judge Jeanine. Compl. ¶¶ 9, 10, 11, 84, 94, 116. Each of these programs is known for featuring conservative opinion commentary and political debate. They are not objective news shows. Viewers of these programs would reasonably understand that guests, such as Ms. Powell, are expressing opinions and engaging in political advocacy.

37

### C.     The Heated Political Context Further Supports a Finding of Non-Actionable Opinion

Courts have recognized statements made during heated political discussion and debate are more likely to be understood as opinion or rhetorical hyperbole. *See Greenbelt Co-op. Pub. Ass'n*, 398 U.S. at 14 (holding word "blackmail" in context of heated public debate was rhetorical hyperbole, not actionable defamation). The intense political environment in which Ms. Powell made statements is relevant context supporting a finding that the statements are non-actionable.

### D.     Calls for Government Investigation Are Protected Advocacy

Several statements attributed to Ms. Powell are calls for government investigation.  Such opinion advocacy is at the core of First Amendment protection and cannot form the basis of a defamation claim.

**Statement:** "In fact, every state that bought Dominion, for sure, should have a criminal investigation or at least a serious investigation of the … officers in the States who bought the software." Compl. ¶ 149(h).

In addition to the fact that this statement is not "of and concerning" Smartmatic, this statement is quintessential protected advocacy. It does not assert Smartmatic committed a crime; rather, it advocates for government investigation. The Supreme Court has long recognized "the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation." *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969).

Calls for investigation are a form of political speech at the heart of First Amendment protection. *See Garrison,* 379 U.S. at 74-75 ("[S]peech concerning public affairs is more than self-expression; it is the essence of self-government."). A statement advocating officials "should" investigate does not assert as fact wrongdoing; it merely expresses the speaker's view that

38

investigation is warranted. Such statements are not actionable because they cannot be proven true or false-they express a normative judgment about what government should do. *See Milkovich*, 497 U.S. at 19 (statements on matters of public concern not "provable as false" are protected).

### E.    Rhetorical Hyperbole Is Not Actionable

The Supreme Court has recognized "rhetorical hyperbole" and "vigorous epithets" are protected speech that cannot form the basis of a defamation claim because no reasonable reader or listener would understand such statements as assertions of fact. *Greenbelt Co-op. Pub. Ass'n*, 398 U.S. at 13-14; *Old Dominion Branch No. 496, Nat. Ass'n of Letter Carriers, AFL-CIO v. Austin*, 418 U.S. 264, 284-86 (1974).

**Statement:** "It's absolutely brazen how people bought this system and why they bought this system." Compl. ¶ 140(k), 149(h), 191(l).

The word "brazen" is evaluative rhetoric, not a factual assertion. Ms. Powell is providing subjective assessment of the conduct of those who purchased voting systems. Such "vigorous epithets" and expressions of disapproval are protected rhetorical hyperbole. *See Greenbelt Co-op. Pub. Ass'n*, 398 U.S. at 13-14 (use of word "blackmail" in context of heated public debate was rhetorical hyperbole, not actionable defamation).

In *Farah v. Esquire Magazine, Inc.*, the D.C. Circuit applied this principle to hold statements containing "conjecture and strong language" in the context of political blogging were non-actionable. 736 F.3d at 540. The court emphasized the statements used "'the sort of loose, figurative or hyperbolic language which would negate the impression' that a factual statement was being made." *Id*. (quoting *Milkovich*, 497 U.S. at 21).

Many of Ms. Powell's statements are non-actionable rhetorical hyperbole and cannot sustain an action against her for defamation.

### F.    Statements That Do Not Concern Smartmatic Are Not Actionable by Smartmatic

Certain statements attributed to Ms. Powell do not concern Smartmatic at all but rather describe other matters, such as the quantity of evidence Ms. Powell claimed to have or her litigation plans:

**Statement:** "We have so much evidence I feel like it's coming in through a firehose." Compl. ¶¶ 149(a), 191(b), 191(k).

**Statement:** "[W]e're fixing to overturn the results of the election in multiple States." Compl. ¶¶ 90, 149(a), 149(g), 191(b), and 191(j).

These statements do not assert facts about Smartmatic. A plaintiff in a defamation case must establish the allegedly defamatory statement was "of and concerning" the plaintiff. *New York Times Co.*, 376 U.S. at 267, 288. Statements that do not reference or implicate the plaintiff cannot support a defamation claim, regardless of the context in which they appear. Claims based on these statements should be dismissed.

## VI.    CLAIMS FOR PUNITIVE DAMAGES MUST BE DISMISSED FOR FAILURE TO PLEAD ACTUAL AND COMMON LAW MALICE WITH SPECIFICITY.

For the same reasons Smartmatic's Complaint must be dismissed for its failure to plead actual malice with the requisite specifics, its claim for punitive damages must fail.

### A.    Punitive Damages Require Pleading and Proof of Actual Malice by Clear and Convincing Evidence

In defamation cases, punitive damages are available only where the plaintiff proves the defendant acted with "actual malice" as defined in *New York Times Co.*, 376 U.S. at 279-80—that is, with knowledge of falsity or reckless disregard for the truth. *See Gertz*, 418 U.S. at 349-50. Because punitive damages require a heightened showing, complaints seeking punitive damages in

40

defamation cases must plead facts to prove actual malice. *See id.* ("[T]he States may not permit recovery of presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth."); *see also Rabren v. Straigis*, 498 So. 2d 1362, 1363-64 (Fla. Dist. Ct. App. 1986) (if allegedly defamatory statements involve a matter of public concern, punitive damages can be recovered only if actual malice is shown).

### B.    Florida and New York Law Require an Additional Showing of Common Law Malice

Both Florida and New York impose an additional burden on defamation plaintiffs to plead and prove the defendant's conduct was "malicious, wanton, reckless, or in willful disregard for another's rights." *Carroll v. Trump*, 151 F.4th 50, 76 (2d Cir. 2025) (citations omitted); *see also Cable News Network, Inc. v. Black*, 374 So. 3d 811, 816 (Fla. Dist. Ct. App. 2023) (Florida law requires a defamation plaintiff to prove common law malice to recover punitive damages).

Unlike actual malice, "which focuses on the state of mind with respect to the truth or falsity of the defamatory statement(s), 'common-law malice focuses on the defendant's mental state *in relation to the plaintiff* and the motive in publishing the falsity.'" *Carroll*, 151 F.4th at 76 (quoting *Prozeralik v. Cap. Cities Commc'ns, Inc.*, 82 N.Y.2d 466 (1993) (internal citations omitted)). "[P]roof of this type of malice may come from two sources: the publication itself and extrinsic evidence concerning the defendant's feelings toward the plaintiff." *Hunt v. Liberty Lobby*, 720 F.2d 631, 651 (11th Cir. 1983).

### C.    The Complaint's Conclusory Allegations of Malice Are Insufficient

As discussed in Section II(B) above, the Complaint's allegations of actual malice are rote recitations of the elements, conclusory, and legally insufficient. The same deficiencies apply to Smartmatic's burden of proving common law malice. The Complaint does not allege specific facts

demonstrating Ms. Powell subjectively believed her statements were false. To the contrary, the Complaint acknowledges Ms. Powell claimed to have evidence supporting her statements, and read from such evidence during interviews, which undermines a claim of actual malice.

The same applies to any Smartmatic allegation of common law malice. The Complaint's allegation that "Ms. Powell also acted with ill will towards Smartmatic" is not a factual allegation. Compl. ¶ 202. Rather, it is another, improper perfunctory recitation of an element with no factual basis.

Accordingly, the Complaint's claims for punitive damages must be dismissed or stricken for failure to adequately plead actual or common law malice.

<strong>RELIEF REQUESTED</strong>

1. Dismiss claims by Smartmatic International Holding B.V. and SGO Corporation Limited with prejudice on the basis that the allegedly defamatory statements were not "of and concerning" those entities;

2. Find Smartmatic is a limited purpose public figure that must plead and prove requisite malice;

3. Dismiss all claims with prejudice for failure to adequately plead actual malice and express malice;

4. Take judicial notice of the publicly published media (**Exhibits A (A-1** through **A-45**) and tweets (**Exhibit B** and **Exhibit C**)**, and **Exhibits E** through **E-4**) and dismiss Smartmatic's defamation claims (First Cause of Action through Seventh Cause of Action) with prejudice finding that:

    (a) Smartmatic has not plausibly alleged Ms. Powell's statements proximately caused it the injury and multi-billion-dollar damages alleged in the Complaint; and

42

(b) Smartmatic's allegation that Ms. Powell's statements during five media appearances in late 2020 "were a proximate and substantial cause of Smartmatic's name and brand becoming synonymous with election fraud with members of the general public and government officials, particularly those in the United States," Compl. ¶ 368, is conclusory and insufficient, particularly given that for fifteen years prior to Ms. Powell's statements, Smartmatic was the target of intense national and international criticism aimed at its alleged (1) ties to the Venezuelan government, (2) technology designed to rig elections, and (3) rigging of elections;

5. Dismiss Smartmatic's injurious falsehood claims (Eighth Cause of Action through Twelfth Cause of Action) with prejudice for failure to plead special damages with the particularity required by law;

6. Dismiss claims based on specific statements that are non-actionable as a matter of law, with prejudice, because they constitute (a) expressions of subjective belief or concern, (b) protected advocacy calling for government investigation, (c) rhetorical hyperbole that no reasonable person would interpret as factual assertions; (d) not "of and concerning" Smartmatic, or (d) are not defamatory.

7. Dismiss or strike Plaintiffs' claims for punitive damages with prejudice for failure to plead actual malice and common law malice with sufficient specificity; and

8. Grant such other and further relief as this Court deems just and proper.

Dated: April 17, 2026

Respectfully submitted,
LEWIS BRISBOIS BISGAARD & SMITH LLP
By: */s/ Teresa M. Cinnamond*
Teresa M. Cinnamond (*pro hac vice*)
Bryan Sugar (*pro hac vice*)
Rebecca Stoddard Wiley (DC Bar No. 1780019)
*Attorneys for Defendant Sidney Powell*

43