IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SMARTMATIC USA CORP., SMARTMATIC INTERNATIONAL HOLDING B.V., and SGO CORPORATION LIMITED, <br><br><br> Plaintiffs, <br><br> v. <br><br><br> SIDNEY POWELL, <br><br><br> Defendant. | No. 1:21-cv-02995-CJN <br><br><br><br> Judge Carl J. Nichols |

**<u>PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................. 1

OVERVIEW OF ARGUMENT ............................................................................................ 1

LEGAL STANDARD............................................................................................................ 4

ARGUMENT ......................................................................................................................... 5

    I.     The Complaint Sufficiently Alleges That Powell's Defamatory Statements Were "Of and Concerning" All Three Plaintiffs. ................................ 5

          A.     Powell's Challenge Against SGO and Smartmatic International Is Both Procedurally and Substantively Flawed. ........................................................................................ 5

          B.     Powell's Defamatory Publications Were "Of and Concerning" All Three Plaintiffs. ................................................. 6

               1.     Individuals Understood the Defamatory Publications to Be About Smartmatic International and SGO. ...................................................................... 7

               2.     Smartmatic USA, Smartmatic International and SGO All Make, Own and Sell Smartmatic Voting Machines and Software. ................................................. 9

               3.     Plaintiffs Are Part of a Small Group Such That a Listener Could Conclude That Powell's Publications Referred to Smartmatic International and SGO. .................................................................. 10

          C.     Each Cause of Action Satisfies the "Of and Concerning" Element. ............................................................................ 11

    II.     Smartmatic Has Sufficiently Alleged Fault. ............................................ 12

          A.     Smartmatic is Not a Limited Purpose Public Figure and Therefore Can Prevail by Showing Negligence. ..................................... 12

          B.     Smartmatic Sufficiently Alleges Actual Malice. .................................... 17

               1.     Powell Had No Support for Her Publications About Smartmatic. ................................................................. 18

               2.     Powell Purposefully Avoided the Truth About Smartmatic. ................................................................. 19

               3.     Powell Had Obvious Reasons to Doubt the Credibility of the "Sources" That She Used in Her Sham Lawsuits. ........................................................... 20

               4.     Powell Acted with Ulterior Motives. ......................................... 21

C.  Powell Erroneously Invokes an Inapplicable Florida
Privilege and Conflates It With Actual Malice. ....................................... 22

1.  D.C. Law, not Florida Law, Governs. ............................................ 22

2.  Even if Florida Law Applied, Powell is Not Entitled
to the Qualified Privilege. ................................................................ 24

III.  Smartmatic Sufficiently Alleges That Powell Caused Significant
Injury and Damages. ................................................................................... 25

A.  Smartmatic Is Not Required to Plead "Injury and Damages"
Because Powell's Statements Were Defamatory Per Se. .......................... 25

B.  Smartmatic Amply Alleges How Powell Caused Its "Injury
and Damages." ......................................................................................... 27

C.  Powell Has No Basis to Invoke the "Libel-Proof" Doctrine. ................... 29

IV.  Smartmatic Sufficiently Alleged Damages for Its Injurious
Falsehood Claims. ....................................................................................... 32

V.  All of Smartmatic's Claims Are Based on Actionable Statements
by Powell. .................................................................................................... 34

A.  Powell Published Provably False Statements and
Implications About Smartmatic. .............................................................. 35

B.  Powell's Other Asserted Defenses Do Not Exist. .................................... 37

VI.  Smartmatic is Entitled to Punitive Damages. ............................................. 41

CONCLUSION ............................................................................................................. 44

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Afro-Am. Pub. Co. v. Jaffe*,
366 F.2d 649 (D.C. Cir. 1966) ................................................................................................6

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ................................................................................................................17

*Baumann v. D.C.*,
744 F. Supp. 2d 216 (D.D.C. 2010) .........................................................................................4

*Bentley v. Bunton*,
94 S.W.3d 561 (Tex. 2002) .....................................................................................................18

*Caudle v. Thomason*,
942 F. Supp. 635 (D.D.C. 1996) ...............................................................................................7

*Competitive Enter. Inst. v. Mann*,
150 A.3d 1213, 1255 (D.C. 2016) .......................................................................18, 20, 21, 22

*Croixland Properties Ltd. P'ship v. Corcoran*,
174 F.3d 213 (D.C. Cir. 1999) ...........................................................................................9, 10

*Cunningham v. United Nat. Bank of Washington*,
710 F. Supp. 861 (D.D.C. 1989) ..........................................................................................7, 9

*Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n, AFL-CIO v. Liberty
Mar. Corp.*,
933 F.3d 751 (D.C. Cir. 2019) ...........................................................................................4, 11

*Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*,
194 F. Supp.3d 263 (S.D.N.Y. 2016) ......................................................................................16

*Flowers v. Carville*,
310 F.3d 1118 (9th Cir. 2002) .................................................................................................20

*Freeman v. Giuliani*,
2022 WL 16551323 (D.D.C. Oct. 31, 2022) ...........................................................................10

*Harte-Hanks Commc'ns. Inc. v. Connaughton*,
491 U.S. 657 (1989) ....................................................................................................20, 21, 22

*Harwood Pharmacal Co. v. Nat'l Broad. Co.*,
9 N.Y. 2d 460 (1961) ...........................................................................................................9, 10

iii

*Hutchinson v. Proxmire*,
    443 U.S. 111 (1979)............................................................................................15, 16, 17

*James v. Gannett Co.*,
    40 N.Y.2d 415 (N.Y. 1976) ...............................................................................................6

*Jankovic v. Int'l Crisis Grp*,
    822 F.3d 576 (D.C. Cir. 2016).........................................................................................21

*King v. Whitmer*,
    556 F. Supp. 3d 680 (E.D. Mich. 2021)...........................................................................19

*Kirch v. Liberty Media Corp.*,
    449 F.3d 388 (2d Cir. 2006).............................................................................................10

*Lohrenz v. Donnelly*,
    350 F.3d 1272 (D.C. Cir. 2003)........................................................................................16

*Marous Bros. Const. LLC v. Ala. State. Univ.*,
    2008 WL 370903 (M.D. Ala. Feb. 2008) .........................................................................12

*Milkovich v. Lorain Journal Co.*,
    497 U.S. 1 (1990)................................................................................................................3

*MiMedx Grp., Inc. v. DBW Partners LLC*,
    2018 WL 4681005 (D.D.C. Sept. 28, 2018) ......................................................................5

*Moss v. Stockard*,
    580 A.2d 1011 (D.C. 1990) .......................................................................................13, 15

*N.Y. Times Co. v. Sullivan*,
    376 U.S. 254 (1964).........................................................................................................12

*Nader v. de Toledano*,
    408 A.2d 31 (D.C. 1979) .................................................................................................18

*O'Boyle v. Sweetapple*,
    2015 WL 13574304 (S.D. Fla. June 2015) ......................................................................13

*Palin v. New York Times Co.*,
    940 F.3d 804 (2d Cir. 2019)............................................................................................20

*Provisional Gov't of the Republic of New Afrika v. American Broadcasting
    Companies*,
    609 F. Supp. 104 (D.D.C. 1985)........................................................................................7

*Prozeralik v. Cap. Cities Commc'ns, Inc.*,
    82 N.Y.2d 466 (N.Y. 1993) .............................................................................................18

iv

*Ramos v. U.S. Dep't of Just.*,
  588 F. Supp. 2d 38 (D.D.C. 2008) ..................................................................................6

*Rollins v. Wackenhut Servs., Inc.*,
  703 F.3d 122 (D.C. Cir. 2012) .......................................................................................4

*Salem Media Grp. v. Awan*,
  301 A.3d 633 (D.C. 2023) .......................................................................................15, 16

*Smartmatic USA Corp. v. Fox Corp.*,
  2022 WL 685407 (N.Y. Sup. Ct. Mar. 08, 2022) .......................................................19

*Smartmatic USA Corp. v. Fox Corp.*,
  213 A.D.3d 512 (1st Dep't 2023) ..............................................................................5, 17

*Smartmatic USA Corp. v. Newsmax Media, Inc.*,
  2024 WL 4165101 (Del. Super. Ct. Sept. 12, 2024)......................................................5

*Smartmatic USA Corp. v. Powell*,
  2026 WL 353018 (D.D.C. Feb. 9, 2026) ..............................................................1, 5, 6

*St. Amant v. Thompson*,
  390 U.S. 727 (1968).....................................................................................................18

*Time, Inc. v. Firestone*,
  424 U.S. 448 (1976).....................................................................................................14

*US Dominion, Inc. v. Powell*,
  554 F. Supp. 3d 42 (D.D.C. 2021) ...................................................................... *passim*

*van der Stelt v. Georgetown Univ.*,
  774 F. Supp. 3d 90 (D.D.C. 2025).....................................................................11, 12, 15

*Vasquez v. Whole Foods Mkt., Inc.*,
  302 F. Supp. 3d 36 (D.D.C. 2018).......................................................................7, 9, 10

*Waldbaum v. Fairchild Publications, Inc.*,
  627 F.2d 1287 (D.C. Cir. 1980).........................................................................13, 14, 15

*Willhite v. MainSource Bank*,
  2006 WL 8448497 (D.D.C. Feb. 1, 2006) .....................................................................6

*Wolston v. Reader's Dig. Ass'n*,
  443 U.S. 157 (1979).................................................................................................14, 16

*Zimmerman v. Al Jazeera Am., LLC*,
  246 F. Supp. 3d 257 (D.D.C. 2017)..............................................................................20

v

**Other Authorities**

Fed. R. Civ. P. 12 .................................................................................................1, 4, 5, 17

Fed. R. Civ. P. 60 ...............................................................................................................6

Restatement (Second) of Torts § 564A ..........................................................................10

**INTRODUCTION**

After the 2020 Presidential Election, Defendant Sidney Powell created and disseminated damaging falsehoods to undermine its legitimacy and advance her interests. She told the world, in publication after publication, that Smartmatic manipulated votes and participated in a criminal conspiracy to rig and steal the election. This Court has already determined that Smartmatic sufficiently pled claims arising from Powell's false, defamatory statements. The Court reached the same conclusion when denying the motion to dismiss Powell filed against U.S. Dominion, Inc. It brought defamation claims against her for substantially similar and, for some publications, identical statements that give rise to Smartmatic's Complaint. Powell's new motion for judgment on the pleadings should meet the same fate as her other pleading motions. Powell's Rule 12(c) motion raises nothing novel: Powell recycles the same arguments that this Court and other courts have rejected. Smartmatic's claims are well pled and should proceed toward trial.

**OVERVIEW OF ARGUMENT**

**Of and Concerning.** Powell's attempt to challenge whether her defamatory statements were "of and concerning" Plaintiffs Smartmatic International Holding B.V. ("Smartmatic International") and SGO Corporation Limited ("SGO") is procedurally improper and refuted by this Court's prior rulings. This Court already rejected Powell's argument that her defamatory statements were confined to Plaintiff Smartmatic USA Corp. when it denied her Rule 12(b) motion, finding that Powell spoke of "Smartmatic" generally in ways that could injure each Plaintiff. *Smartmatic USA Corp. v. Powell*, 2026 WL 353018 (D.D.C. Feb. 9, 2026) ("Dismissal Order"). Powell's publications were "of and concerning" all three Plaintiffs in several independent ways: individuals familiar with Smartmatic International and SGO understood Powell's statements about "Smartmatic" to refer to them; all three Plaintiffs make, own, and sell the same election technology products that Powell defamed; and all three Plaintiffs form a small group operating

1

under the "Smartmatic" brand, such that a reasonable listener could conclude that Powell's statements referred to each of them.

**Actual Malice**. Powell tries—but fails—to argue that Smartmatic has not adequately alleged actual malice. The Complaint includes 160 paragraphs of detailed factual allegations supporting an actual malice finding, yet Powell ignores them. The Complaint's allegations show that Powell (a) had no support for the defamatory falsehoods she published about Smartmatic, (b) had access to contradictory information and purposefully avoided the truth, (c) had obvious reasons to doubt the credibility of her sources, and (d) acted with ill-motive to raise her profile and solicit money. This Court has already held that allegations like those in the Complaint are sufficient to support a finding of actual malice. Smartmatic's allegations show that Powell relied on inherently improbable sources, knew her statements were false, and purposefully avoided learning the truth (amounting to reckless disregard).

**Causation**. Powell's proximate causation arguments fail for three independent reasons. First, Powell ignores that her statements were defamatory per se, meaning damages are presumed and Smartmatic need not allege causation. Powell made the same error in her motion to dismiss Dominion's damages. *See US Dominion, Inc. v. Powell*, 554 F. Supp. 3d 42 (D.D.C. 2021). Second, Smartmatic amply pleads causation: Powell used Fox News as her platform to reach millions of people with fabricated accusations. The natural result was to destroy Smartmatic's reputation and endanger its personnel. Third, the "libel-proof" doctrine that Powell invokes is inapplicable because Smartmatic was a thriving, multi-billion-dollar enterprise with an established track record before Powell's campaign. Powell cannot identify any conviction or admission by Smartmatic to support her claim that its reputation was already "tarnished" with respect to her unprecedented accusations.

**Injurious Falsehood.** Powell seeks dismissal of Smartmatic's injurious falsehood claims on two grounds, both of which fail. First, Powell contends that Smartmatic inadequately alleged special damages with the particularity required by law—but this Court already rejected that identical argument when Powell moved to dismiss, finding that Smartmatic alleged "quintessential special damages," including over $400,000 in public relations and crisis management, $100,000 in cybersecurity, and $700,000 in personnel retention and recruitment costs. Second, Powell argues that she played an "infinitesimal part" in spreading disinformation about Smartmatic and cannot be shown to have caused its special damages. This argument fails both factually and legally: the Complaint alleges a "clear, logical, and factually grounded" timeline showing that Powell's statements were: read or watched by a significant worldwide audience; made Smartmatic's name synonymous with election fraud; and contributed to a crisis situation, including threats to officers and employees and physical and electronic attacks on operations.

**Opinion.**   Powell's attempt to shield her defamatory publications by characterizing selected fragments as protected "opinions" fails. First, Powell does not dispute that each of her publications, taken as a whole, contains actionable defamatory statements. Second, Powell misstates the applicable legal standard for what constitutes a protected opinion. Powell's contention that her statements are immunized merely because she "couched" them "in the language of subjective belief or concern rather than factual assertion" was rejected by the Supreme Court in *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990). When viewed in context, Powell's "opinion" statements contain verifiably false factual assertions about Smartmatic. Fourth, Powell's remaining defenses—that her statements are protected because they were made on cable news opinion programming; in the context of heated political debate; as calls for government

investigation; or as rhetorical hyperbole—are meritless. This Court rejected identical arguments by Powell in *US Dominion.*

**Punitive Damages**. Powell's challenge to Smartmatic's claim for punitive damages is procedurally improper and substantively meritless. There is no heightened pleading standard for defamation claims in the District of Columbia—plaintiffs are not required to "prove" malice or present "clear and convincing evidence" before discovery begins. Smartmatic is also entitled to punitive damages because it has alleged specific facts to show that Powell acted with actual malice and ill-will, and that her conduct was malicious, wanton, reckless, and in willful disregard for Smartmatic's rights.  Powell targeted Smartmatic by name, ignored publicly available evidence contradicting her statements, and knowingly published lies that continue to harm Smartmatic's reputation to this day.

## LEGAL STANDARD

A Rule 12(c) motion is functionally equivalent to a Rule 12(b)(6) motion, and the same pleading standards apply. *See Rollins v. Wackenhut Servs., Inc*., 703 F.3d 122, 130 (D.C. Cir. 2012).[1] Courts accept as true all allegations in the nonmoving party's pleadings and give "all reasonable inferences" to the nonmoving party before entering a judgment on the pleadings. *Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp*., 933 F.3d 751, 761 (D.C. Cir. 2019). Because a Rule 12(c) motion "would summarily extinguish litigation at the threshold and foreclose the opportunity for discovery and factual presentation," the Court must treat the motion "with the greatest of care" and deny it "if there are allegations in the complaint which, if proved, would provide a basis for recovery." *Baumann v. D.C.*, 744 F. Supp.

---

[1] All internal citations and quotation marks have been omitted and emphasis added unless otherwise noted.

2d 216, 221 (D.D.C. 2010). Additionally, "[n]o heightened pleading standard applies to defamation actions, and a court reviewing a motion to dismiss need only determine whether the factual allegations are sufficient to permit [a defendant] to respond to [plaintiffs'] claim of defamation and whether, construing the complaint in the light most favorable to [plaintiffs], it appears beyond doubt that [they] can prove no set of facts that would entitle [them] to recover." *MiMedx Grp., Inc. v. DBW Partners LLC*, 2018 WL 4681005, at *4 (D.D.C. Sept. 28, 2018).

## ARGUMENT

**I.     The Complaint Sufficiently Alleges That Powell's Defamatory Statements Were "Of and Concerning" All Three Plaintiffs.**

**A.     Powell's Challenge Against SGO and Smartmatic International Is Both Procedurally and Substantively Flawed.**

This Court effectively decided the "of and concerning" element when it denied Powell's Rule 12(b) motion. *See Smartmatic USA*, 2026 WL 353018, at *3-4. Although framing her argument in Article III standing law, Powell argued that the defamatory statements alleged in Smartmatic's Complaint were confined to Smartmatic USA Corp. *Id.* at *3 ("Smartmatic BV and SGO do not allege injury 'separate and distinct' from Smartmatic USA."). This Court rejected that argument and found that Powell's defamatory statements concerned each Smartmatic Plaintiff, including Smartmatic International and SGO. *Id.* at *4. ("It is evident that Powell spoke of 'Smartmatic' generally in a way that could negatively impact all three Smartmatic entities, not just Smartmatic USA.").

Other courts have agreed with this logic, finding that statements accusing "Smartmatic" of rigging the 2020 election were "of and concerning" all three Smartmatic Plaintiffs, including Smartmatic International and SGO. *See Smartmatic USA Corp. v. Newsmax Media, Inc.*, 2024 WL 4165101 at *19-20 (Del. Super. Ct. Sept. 12, 2024); *Smartmatic USA Corp. v. Fox Corp.*, 213

A.D.3d 512, 513-14 (1st Dep't 2023) (reversing trial court order that found Giuliani's statements about "Smartmatic" were not "of and concerning" Smartmatic International and SGO and reinstating those plaintiffs' claims).

Powell essentially seeks reconsideration of this Court's Dismissal Order by claiming that it "raised questions warranting further analysis" concerning SGO and Smartmatic International's standing. (ECF No. 69-1 ("Mot.") at 5). But Powell fails to identify *any* question that this Court asked her to address. Powell is simply trying to file an improper motion to reconsider under Fed. R. Civ. P. 60(b) by raising alternative grounds to dispute those Plaintiffs' standing. *See Ramos v. U.S. Dep't of Just.*, 588 F. Supp. 2d 38, 43 (D.D.C. 2008) (rejecting litigant's challenge to a prior ruling because his "arguments do not open any of the avenues of relief under Rule 60(b)"); *Willhite v. MainSource Bank*, 2006 WL 8448497, at *2 (D.D.C. Feb. 1, 2006) (same where litigant "offer[ed] no reason for his failure to raise [his] arguments earlier, and th[e] Court can fathom no reason for this failure"). The Court could reject Section I of Powell's motion for this failure alone.

## B. Powell's Defamatory Publications Were "Of and Concerning" All Three Plaintiffs.

All three Plaintiffs satisfy the "of and concerning" requirement. Powell argues that the Court must evaluate this requirement by analyzing every "allegedly defamatory statement" in isolation against each Plaintiff. But that is now how defamation law works. A defendant's "publication must be taken as a whole, and in the sense in which it would be understood by the readers to whom it was addressed." *Afro-Am. Pub. Co. v. Jaffe*, 366 F.2d 649, 655 (D.C. Cir. 1966); *accord James v. Gannett Co.*, 40 N.Y.2d 415, 419 (N.Y. 1976) ("In analyzing the words in order to ascertain whether a question of fact exists for resolution upon trial, the court will not pick out and isolate particular phrases but will consider the publication as a whole."). When read as a whole,

6

Powell's publications meet the "of and concerning" requirement for all three Plaintiffs in several independent ways. (*See* Compl. ¶¶ 17, 116; Compl. Exs. 3, 5, 15, 25, 38, 39).

### 1. Individuals Understood the Defamatory Publications to Be About Smartmatic International and SGO.

A defendant's defamatory statements are "of and concerning" a plaintiff "if a listener would reasonably believe that the statements referred to" the plaintiff. *Caudle v. Thomason*, 942 F. Supp. 635, 638 (D.D.C. 1996). This rule applies even if "the statements do not explicitly refer to" the plaintiff. *Id. See also Vasquez v. Whole Foods Mkt., Inc.*, 302 F. Supp. 3d 36, 64 (D.D.C. 2018) (finding that plaintiffs met the "of and concerning" element "even though none [were] specifically named" in defendant's defamatory statements). In such cases, courts should consider whether a "reasonable listener familiar, with" the situation could understand the statement to refer to the plaintiff. *Id. See also see Cunningham v. United Nat. Bank of Washington*, 710 F. Supp. 861, 863 (D.D.C. 1989) (finding "of and concerning" met at summary judgment "by the fact that the statements were specific enough so that *some* readers could precisely identify the person mentioned in the newspaper accounts as" plaintiff) (emphasis in original). Additionally, "[a] plaintiff can rely upon extrinsic evidence to show that listeners understood the statements to pertain to the plaintiff." *Vasquez*, 302 F. Supp. 3d at 64 (D.D.C. 2018).[2]

Here, the "of and concerning" requirement is met because individuals familiar with Smartmatic International and SGO understood the defamatory statements about "Smartmatic" to be about them. Powell exclusively used the term, "Smartmatic," in her defamatory statements. (*See*

---

[2] The authority that Powell cites, *Provisional Gov't of the Republic of New Afrika v. American Broadcasting Companies*, 609 F. Supp. 104, 108 (D.D.C. 1985), supports Smartmatic's position. There, the court found that a statement defaming an organization did not automatically concern its officers because "the surrounding circumstances [did] not implicate them in any fashion." *Id.* at 108. Unlike in *Provisional Government*, the "surrounding circumstances" of Powell's defamation campaign concern and implicate Smartmatic International and SGO.

*id.* ¶¶ 132, 140, 149, 166, 182, 191). The Complaint defines Smartmatic USA, Smartmatic International, and SGO as "Smartmatic" because they all operate under the "Smartmatic" brand to sell "Smartmatic" products. (Compl. ¶¶ 2-4, 368). Powell claimed that "*Smartmatic*" owned Dominion, "*Smartmatic*" was founded to fix elections, "*Smartmatic software*" was designed to switch votes, and "*Smartmatic*" rigged the 2020 U.S. Election and elections outside the U.S. (Compl. ¶¶ 140-43, 181-85, 190-94). Powell did not defame (or even use the term) "Smartmatic USA." She defamed "Smartmatic."

Nor were Powell's defamatory accusations limited to Smartmatic's U.S. operations. To the contrary, Powell highlighted Smartmatic's "foreign" ownership, dealings, and history to make her narrative more believable. For instance, Powell alleged "that there are George Soros connections to this entire endeavor" and that "Lord Malloch Brown [Chairman of SGO] was part of it…." (*Id.* ¶ 109). Powell also claimed that Smartmatic "was created for the express purpose of being able to alter votes and secure the re-election of Hugo Chávez. And then Maduro." (*Id.* ¶85). Powell further alleged that Smartmatic "can stick a thumb drive in the machine or upload software to it, even from the Internet. They can do it from Germany or Venezuela, even." **(***Id.* ¶ 149(j)). A listener, familiar with Smartmatic, would understand that Powell's allegations were not restricted to Smartmatic USA and encompassed SGO and Smartmatic International.

In fact, the reactions of persons familiar with Plaintiffs confirm that they understood that Powell was speaking about SGO and Smartmatic International. (*Id.* ¶¶ 372-375). This linkage caused SGO and Smartmatic International to suffer devastating injuries to their reputation in countries throughout the world. (*See id.* ¶ 373 (alleging that Smartmatic incurred over $1 million in out-of-pocket expenses, and its officers and employees were threatened); ¶ 375 (Powell's false statements caused Smartmatic to suffer "diminished business value and prospects" worldwide); *id.*

¶ 376 (Powell's false statements harmed Smartmatic's reputation worldwide). The fact that individuals understood Powell's defamatory publications to concern Smartmatic International and SGO shows that the publications were "of and concerning" them. *See Vasquez*, 302 F. Supp. 3d at 64; *Cunningham*, 710 F. Supp. at 863.

### 2. Smartmatic USA, Smartmatic International and SGO All Make, Own and Sell Smartmatic Voting Machines and Software.

The "of and concerning" requirement is separately met because Powell defamed a product owned, made, and sold by Smartmatic International and SGO. *See Croixland Properties Ltd. P'ship v. Corcoran*, 174 F.3d 213, 217 (D.C. Cir. 1999) (finding that plaintiff, a business owner, met the "of and concerning" requirement for defamatory statements about the business, even though plaintiff was not named in the publication, because the plaintiff "could be defamed in its status as the owner"); *Harwood Pharmacal Co. v. Nat'l Broad. Co.*, 9 N.Y. 2d 460, 462-63 (1961) (making the same finding for the plaintiff—which owned, made and sold an allegedly harmful product—because the defamatory statements "could readily be understood by the television audience as charging the [unnamed] manufacturer [of the product] with fraud and deceit").

Here, as in *Croixland* and *Harwood Pharmacal*, Powell charged Smartmatic and SGO "with fraud and deceit in putting on the market an unwholesome and dangerous product": "Smartmatic" election technology and software. *Croixland*, 174 F.3d at 216-17; *Harwood Pharmacal*, 9 N.Y. 2d at 462-63. Powell went even further than the defendants in *Croixland* and *Harwood Pharmacal* by specifically identifying "Smartmatic" as the purveyor of the product. (Compl. ¶¶ 131-35, 139-43, 190-94). Viewers and readers understood Powell's statements to mean that the election technology and software sold by Smartmatic International and SGO were (1) widely used during the 2020 U.S. election, (2) used to fix, rig, and steal the 2020 U.S. election, (3) compromised or hacked during the 2020 U.S. election, and (4) designed to fix, rig and steal

elections. (Compl. ¶¶ 140-43, 181-85, 190-94). Powell's accusations were "of and concerning" Smartmatic International and SGO because she charged them, as makers and sellers of "Smartmatic software," with dishonesty, fraud, and deception. *See Croixland*, 174 F.3d at 216-17; *Harwood Pharmacal*, 9 N.Y. 2d at 462-63.

3.      **Plaintiffs Are Part of a Small Group Such That a Listener Could Conclude That Powell's Publications Referred to Smartmatic International and SGO.**

The "of and concerning" requirement is further satisfied because the name Powell used in her defamatory statements—"Smartmatic"—is the brand name used by Smartmatic International and SGO. "When a statement refers to a group, a member of that group may claim defamation if the group's size or other circumstances are such that a reasonable listener could conclude the statement referred to each member or 'solely or especially' to the plaintiff." *Vasquez*, 302 F. Supp. 3d at 64 (citing Restatement (Second) of Torts § 564A)). "[T]o establish that the defamatory statement pertains to a plaintiff within a group, the plaintiff can prove the circumstances of publication reasonably give rise to the conclusion that there is a particular reference to the [plaintiff]." *See Vasquez*, 302 F. Supp. 3d at 64 (finding that nine former Whole Foods managers satisfied the "small-group theory of defamation" based on "their identification as [Whole Foods] 'store managers'" in D.C., Maryland, and Virginia); *Freeman v. Giuliani*, 2022 WL 16551323, at *7 (D.D.C. Oct. 31, 2022) (making the same finding for election workers who sued Rudy Giuliani for spreading false election fraud accusations that did "not mention [plaintiffs] by name").[3] Here, a jury could reasonably find that Powell's statements about "Smartmatic" were "of and

---

[3] Powell's reliance on *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006), is misplaced. In *Kirch*, the court found that defamatory statements about a German media group were not "of and concerning" its North American agent, which was "entirely separate from, and structurally independent of," the defamed entity. *Id.* Here, Plaintiffs are affiliates that operate under the same name; make, own and sell the same product; and were collectively defamed by Powell.

concerning" Smartmatic International and SGO—and not just Smartmatic USA—because all three use the brand name "Smartmatic." (Compl. ¶¶ 1–4).

### C.       Each Cause of Action Satisfies the "Of and Concerning" Element.

As a last resort, Powell focuses on the wording of Smartmatic's "Causes of Action" to attack the "of and concerning" requirement. But she misleadingly paraphrases their allegations to suggest that they are only about Smartmatic USA. In doing so, Powell violates black-letter pleading law, which requires all allegations to be accepted as true and inferences to be drawn in Plaintiffs' favor. *See Liberty Mar. Corp.*, 933 F.3d at 761. Every Count in the Complaint arises from Powell's: (1) statements concerning "Smartmatic," a name that all three Plaintiffs use and that individuals familiar with them understand to reference each Plaintiff; (2) statements concerning Smartmatic's software and voting machines, which were manufactured, owned and sold by Plaintiffs; and (3) statements that viewers believed concerned all three Plaintiffs because they form the small group, "Smartmatic." For these reasons, every Count in the Complaint satisfies the "of and concerning" element for each Plaintiff.

Powell's argument further fails because she overlooks that each Count "repeats, realleges, and incorporates by reference" Paragraphs 1-380 of the Complaint. (*See* Compl. ¶¶ 381, 395, 409, 423, 437, 451, 465, 479, 492, 505, 518, 531). Paragraphs 1-380 show how Powell made defamatory per se charges against "Smartmatic" that concerned and injured each Plaintiff and its products. Powell cannot rewrite Smartmatic's Complaint to write out two of its plaintiffs. Under the law of this Circuit and elsewhere, she is liable for the harm that her intentional conduct caused each Plaintiff, as this Court has already held.

11

**II.      Smartmatic Has Sufficiently Alleged Fault.**

   **A.      Smartmatic is Not a Limited Purpose Public Figure and Therefore Can Prevail by Showing Negligence.**

"The applicable fault standard under the third element of defamation turns upon whether the plaintiff is a public or a private figure." *van der Stelt v. Georgetown Univ.*, 774 F. Supp. 3d 90, 121 (D.D.C. 2025). "If the plaintiff is a private figure, he must plead that the defendant acted negligently." *Id.* "If he is instead a public figure, then the plaintiff must show that the challenged statement was made with actual malice—meaning 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Id.* (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964)). "There are two broadly recognized categories of 'public figures': (1) a general-purpose public figure, who 'achieve[s] such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts," and (2) a limited-purpose public figure, who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Id.*

Powell erroneously contends that Smartmatic meets the criteria of a limited purpose public figure. "To determine whether a plaintiff" qualifies for such a designation, "the court employs a three-prong test: (1) first, it identifies whether a public controversy exists and defines its scope; (2) second, if one exists, the court must decide if the plaintiff was shaping or was trying to shape the outcome of the public controversy; and (3) third, the court asks whether the alleged defamation was germane to the plaintiff's participation in the controversy." *van der Stelt*, 774 F. Supp. 3d at 122. "All three requirements must be met." *Id.*

Here, Powell fails to satisfy the elements necessary to transform Smartmatic into a limited-purpose public figure. Nor is this inquiry appropriate at the pleading stage. Whether a plaintiff is a private or limited purpose public figure should be evaluated at summary judgment based on

evidence, not pleadings. *See Marous Bros. Const. LLC v. Ala. State. Univ.*, 2008 WL 370903, at *3 (M.D. Ala. Feb. 2008) ("whether [counterclaim-plaintiffs] are limited-purpose public figures is more appropriate for resolution at the summary judgment stage on the basis of evidentiary facts"); *O'Boyle v. Sweetapple*, 2015 WL 13574304, at *5 (S.D. Fla. June 2015) (making same point). The Court should reject Powell's request to designate Smartmatic as a limited purpose public figure.

**Defining the Public Controversy.** "As the first step in its inquiry, the court must isolate the public controversy. A public controversy is not simply a matter of interest to the public; it must be a real dispute, the outcome of which affects the general public or some segment of it in an appreciable way." *Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287, 1296 (D.C. Cir. 1980). "To determine whether a controversy indeed existed and, if so, to define its contours, the judge must examine *whether persons actually were discussing some specific question*." *Id.* at 1297; *see also* Mot. at 11 (conceding that the Court must identify "a particular public controversy").

Here, the "specific question" that "affect[ed] the general public" was whether "the 2020 U.S. election [was] rigged and stolen by Smartmatic." *Id. See* ECF No. 1, Compl. ¶ 14. Powell posed that question in every defamatory publication and answered it by spreading toxic lies about Smartmatic and its technology. (*Id.* ¶¶ 83-121). In her 12(c) motion, however, Powell manipulates the "controversy" to capture Smartmatic's entire history and all hearsay about it that she could find. (*See* Mot. at 14-16). Powell's shape-shifting "controversy" ignores the strictures *Waldbaum* prescribed. *See* 627 F.2d at 1296-97; *Moss v. Stockard*, 580 A.2d 1011, 1031 (D.C. 1990) (rejecting attempt to "stretch[] matters considerably to say that there was a 'public controversy' about [the question at issue] at the time [defendant] made his statements"). Neither Smartmatic's past nor its limited role providing ballot-marking devices to Los Angeles County spawned the "specific question" to which Powell brought national and international attention: whether voting technology

13

shifted votes cast in swing states to steal the 2020 election. Powell's attempt to broaden the controversy fails and taints her analysis.

*Smartmatic's Role in the Controversy Powell Created.* Powell fails to show that Smartmatic thrust itself into the controversy at issue to become a limited purpose public figure. "Once the court has defined the controversy, it must analyze the plaintiff's role in it. Trivial or tangential participation is not enough." *Waldbaum*, 627 F.2d at 1297. "The language of Gertz is clear that plaintiffs must have 'thrust themselves to the forefront' of the controversies so as to become factors in their ultimate resolution." *Id.* (quoting *Gertz*, 418 U.S. at 345). Plaintiffs "must have achieved a 'special prominence' in the debate." *Id.* "The plaintiff either must have been purposely trying to influence the outcome or could realistically have been expected, because of his position in the controversy, to have an impact on its resolution." *Id.*

In this case, Powell fails to identify any participation by Smartmatic in the at-issue controversy. Smartmatic was minding its own business before Powell threw it into a controversy. (*See* Compl. ¶¶ 83-121). Before then, Smartmatic did nothing to attempt to influence the outcome of any debate over whether the Presidential Election had been rigged. *Waldbaum*, 627 F.2d at 1295 n. 19 (noting that courts "must examine" a plaintiff's public figure status "*before the defamation was published*"). Powell identifies no press release, public statement or interview from Smartmatic about the Presidential Election that preceded her defamation. Nor does Powell identify any evidence to suggest Smartmatic "thrust [itself] to the forefront" of the controversy "so as to become [a] factor[] in [its] ultimate resolution." *Gertz*, 418 U.S. at 345, 352 (affirming plaintiff's private figure status as he "plainly did not thrust himself into the vortex of this public issue, nor did he engage the public's attention in an attempt to influence its outcome"); *see also Wolston v. Reader's Dig. Ass'n*, 443 U.S. 157, 166 (1979) (reversing lower court finding plaintiff a private figure

14

because he did not "voluntarily thrust or inject[] himself into the forefront of the public controversy surrounding the investigation of Soviet espionage in the United States"); *Time, Inc. v. Firestone*, 424 U.S. 448, 454-56 (1976) (affirming plaintiff's private figure status because plaintiff had not "voluntarily exposed [himself] to increased risk of injury from defamatory falsehoods"); *van der Stelt*, 774 F.3d at 123 (holding that the plaintiff's "stature" in his field did "not make him a limited-purpose public figure for the purposes of the *relevant* public controversy") (emphasis in original); *accord Moss*, 580 A.2d at 1032.

Smartmatic's Complaint and Powell's motion confirm that Smartmatic had no "special prominence in [any] debate" about whether the 2020 Presidential Election was rigged. *Waldbaum*, 627 F.2d at 1297. Smartmatic's role was limited to Los Angeles County. (Compl.¶ 3). Smartmatic solely provided ballot marking devices in Los Angeles County only—one of 6,460 voting jurisdictions for the national election. (Compl. ¶ 54, 243). Smartmatic provided no technology to any swing State. (*Id.* ¶¶ 63, 136). Smartmatic could hardly anticipate being thrust into a controversy about the **national election** being rigged based on its limited role as a vendor in a single undisputed county.

Because Smartmatic played such a limited role in the 2020 election, Powell relies on information Smartmatic made available *after* she defamed it. (*See* Powell Mot. at 15 (citing Compl. ¶¶239-245)). Namely, Powell cites fact-checking information Smartmatic posted on its website and gave to Fox responding to its inquiry. (*Id.*) These acts are insufficient to confer public figure status because Smartmatic was merely addressing the false allegations. *See Hutchinson v. Proxmire*, 443 U.S. 111, 112-13 (1979) ("[T]hose charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure."); *van der Stelt*, 774 F. Supp. 3d at 123 ("engagement with the media simply in order to respond to defamatory statements

15

is not enough to make [plaintiff] a limited-purpose public figure"); *accord Salem Media Grp. v. Awan*, 301 A.3d 633, 650-51 (D.C. 2023) (finding that comments "providing [plaintiffs'] side of the story in response to press inquiries are not sufficient to make [plaintiffs] voluntary limited-purpose public figures").

Nor does Smartmatic "automatically transform[] into a public figure just by becoming involved in or associated with a matter that attracts public attention." *Wolston*, 443 U.S. at 167. Plaintiffs are allowed to do business, including with government and public entities, without being transformed into limited purpose public figures. *See Hutchinson*, 443 U.S. at 112 (affirming plaintiff's status as a private figure even though he applied for and received grants from the federal government to conduct animal research, and speech was about a grant); *Salem Media*, 301 A.3d at 652 (same, "[e]ven though the [plaintiffs] worked for the government," because they "did not voluntarily engage *in the controversy giving rise to this defamation case*"); *Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp.3d 263, 288 (S.D.N.Y. 2016) (rejecting argument that plaintiff met the "successfully invited public attention" element merely because it had "millions of customers" and "enjoys worldwide sales of" a computer security product).[4]

Finally, Powell misleads the Court when she falsely claims that "*Courts* Have Already Found Smartmatic to Be a Limited Purpose Public Figure." (Mot. at 12). The only courts that have made this determination have disagreed. In New York, Smartmatic has sued Fox Corporation and Fox News Network LLC ("Fox") for, *inter alia*, broadcasting the smears that Powell and her co-

---

[4] Powell misrepresents *Lohrenz v. Donnelly*, 350 F.3d 1272 (D.C. Cir. 2003). The court there did not hold that a defamation plaintiff can become a limited purpose public figure "even if it did not seek the spotlight." (Mot. at 15). Rather, the court found that "it was [the plaintiff's] voluntary act of "cho[osing] combat aircraft," thereby assuming the risk of a combat assignment, followed by her 'suiting up' as one of the first two American women combat pilots, that gave her 'special prominence' in the controversy about women in combat and established her voluntary limited-purpose public figure status." *Id.* at 1282. Those unique circumstances are absent here.

16

conspirator, Rudy Giuliani, were disseminating about Smartmatic. Like Powell in this case, Fox argued that Smartmatic was a limited purpose public figure in its motion to dismiss. The New York Appellate Division rejected Fox's argument and "decline[d] to find that plaintiffs should be deemed limited purpose public figures required to" demonstrate actual malice. 213 A.D.3d 512, 514 (N.Y. 1st Dep't 2023). While the Delaware Superior Court differed, it did not apply D.C. precedent and made the same mistakes that Powell has repeated in her Rule 12(c) motion. This Court should conduct its own analysis and reject Powell's invitation to impose public figure status onto Smartmatic consistent with the New York Appellate Division's ruling.

### B.  Smartmatic Sufficiently Alleges Actual Malice.

Smartmatic has alleged extensive facts to show that Powell published her false statements with actual malice even if that standard applies. (*See* Compl. ¶¶ 200-318). The actual malice standard requires that Powell acted "with knowledge that [her statements and implications] were false or with reckless disregard of whether [they] were false or not." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 244 (1986). Reckless disregard requires pleadings sufficient to show that Powell made her false publication "with a high degree of awareness of…probable falsity" or "entertained serious doubts as to the truth of [her] publication[s]." *US Dominion*, 554 F. Supp. 3d at 60. Because "proof of actual malice calls a defendant's state of mind into question," actual malice "does not readily lend itself to summary disposition." *Hutchinson*, 443 U.S. at 120 n.9.

Here, Powell contends that Smartmatic's "allegations of actual malice are conclusory" (Mot. at 17), but she ignores the Complaint's 160 paragraphs that line up her conduct to the established hallmarks of actual malice. (*See* Compl. ¶¶ 200-360). Powell also repeats the same arguments that she raised in her motion to dismiss against Dominion and that this Court rejected. Nothing has changed; those arguments still fail. The Court should stand by its ruling in *US Dominion* and reject Powell's attempt to obtain dismissal.

### 1.     Powell Had No Support for Her Publications About Smartmatic.

Smartmatic alleges that Powell had no support for her false, defamatory statements. (Compl. ¶¶205-213). Where, as here, the defendant publishes false statements "without any basis or source whatsoever," the defendant acts with actual malice. *See Prozeralik v. Cap. Cities Commc'ns, Inc.*, 82 N.Y.2d 466, 475 (N.Y. 1993); *US Dominion*, 554 F. Supp. 3d at 60 (finding that Dominion adequately alleged actual malice against Powell, in part, because she "never produced" evidence "she claim[ed] to possess" to corroborate her allegations).

In response, Powell contends that her "belief in [her] statements" absolves her. (Mot. at 17). But a "defendant in a defamation action…cannot [] automatically insure a favorable verdict by testifying that he published with a belief that the statements were true[.]" *See St. Amant v. Thompson*, 390 U.S. 727, 732 (1968); *Competitive Enter. Inst.* v. Mann, 150 A.3d 1213, 1255 (D.C. 2016), as amended (Dec. 13, 2018) ("It is for the jury to determine the credibility of [defendants'] protestations of honest belief in the truth of their statements, and to decide whether such a belief, assuming it was held, was maintained in reckless disregard of its probable falsity."); *Bentley v. Bunton*, 94 S.W.3d 561, 596 (Tex. 2002) (noting that the U.S. Supreme Court has "stressed that proof of actual malice could not be defeated with simply the defendant's self-serving protestations of sincerity"); *Nader v. de Toledano*, 408 A.2d 31, 53-54 (D.C. 1979) (holding that defendant's "honest" belief in his publication raised "a triable issue of fact" regarding "whether the publication was indeed made in good faith").

Additionally, "[p]rofessions of good faith will be unlikely to prove persuasive…where a story is fabricated by the defendant" or "when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation." *St. Amant*, 390 U.S. at 732. That is the case here. Powell fabricated her allegations, and they were so inherently improbable that only a reckless person would have disseminated them. (Compl. ¶¶205-213).

18

Powell has even acknowledged that her allegations were fantastical in prior briefing she submitted—an admission that at least two courts cited in rulings. *See King v. Whitmer*, 556 F. Supp. 3d 680, 727 (E.D. Mich. 2021) (noting that "Powell latched onto the *Dominion* plaintiffs' assertion that her allegations amounted to 'wild accusations' and 'outlandish claims' and therefore, she argued, 'reasonable people would not accept' these alleged statements and allegations 'as fact'"); *Smartmatic USA Corp. v. Fox Corp.*, 2022 WL 685407, at *25 (N.Y. Sup. Ct. Mar. 08, 2022) (finding that Powell's assertion that "reasonable people would not accept" her statements about Smartmatic "as fact[,] in itself, reflects that the statements made by Powell, and repeated by Fox News, Dobbs, and Bartiromo, could be deemed by a jury to have been made with reckless disregard for the truth").

### 2.    Powell Purposefully Avoided the Truth About Smartmatic.

The Complaint details the widely reported information and documents that were available to Powell before and after she began defaming Smartmatic that refuted her allegations. Public information showed that: (1) Smartmatic's software was not widely used during the 2020 election; (2) Smartmatic's software was not used by Dominion in its voting machines during the 2020 election; (3) Smartmatic did not use its software to rig the 2020 election; (4) Smartmatic was not founded for and funded by communist countries/dictators; and (5) Smartmatic did not design its software to rig elections. (Compl. ¶¶219-318). Powell does not deny that this information was available to her or that it contradicted what she told national audiences about Smartmatic.

Given that Powell is a lawyer who was "investigating" the election and gathering "evidence," it is implausible that she was oblivious to the statements by federal, state and local government officials and agencies administering the election that contradicted what she published. If Powell reviewed any of that information, she either knew her statements were false or acted with reckless disregard for the truth. *See Palin v. New York Times Co.*, 940 F.3d 804, 815 (2d Cir.

2019) (denying motion to dismiss where defendant, in its article about plaintiff, included a hyperlink to an article that contradicted defendant's statements about plaintiff); *Flowers v. Carville*, 310 F.3d 1118, 1130 (9th Cir. 2002) ("[I]f someone knows that the news story is false, he can't sanitize his republication by purporting to rely on the news source. *Nor can he claim immunity if he has conflicting information from another source and recklessly disregards it*."); *Mann*, 150 A.3d at 1253 (citing public reports by governmental and academic institutions that refuted defendants' defamatory statements as actual malice evidence).

Alternatively, if Powell reviewed none of the publicly available information that contradicted her statements, notwithstanding her "investigation," that amounts to purposeful avoidance. *See Harte-Hanks Commc'ns. Inc. v. Connaughton*, 491 U.S. 657, 692 (1989) ("the purposeful avoidance of the truth is in a different category" than a failure to investigate). The actual malice standard—reckless disregard—can be satisfied by allegations showing that the defendant's failure to investigate "was a product of a deliberate decision not to acquire knowledge of facts that might confirm the probable falsity" of the information published. *Id.*; *see also Zimmerman v. Al Jazeera Am., LLC*, 246 F. Supp. 3d 257, 284 (D.D.C. 2017) (finding allegations "suffice[d] to support a plausible finding of actual malice" based on defendants' "fail[ure] to uncover a single reported piece of evidence corroborating [the] outlandish claims").

### 3. Powell Had Obvious Reasons to Doubt the Credibility of the "Sources" That She Used in Her Sham Lawsuits.

Powell argues that she did not act with actual malice because she "had 'evidence' supporting her claims, including affidavits, witness statements, expert reports, and documentary proof." (Mot. at 18). Powell made the same failed argument in *US Dominion*. *See* 554 F. Supp. 3d at 60. Like Dominion, Smartmatic alleges that Powell (a) filed sham lawsuits to give herself cover for her disinformation campaign, and (b) used "evidence" that she "falsified," "misrepresented and

cherry-picked" or that "was so obviously unreliable that she had to have known it was false or had acted with reckless disregard for the truth." *Id.* (*See* Compl. ¶¶319-360).

For example, the Complaint alleges that Powell had obvious reasons to doubt the credibility of the "affidavits" she referenced. (*Id.* ¶¶340-360). Among other defects, the "affidavits" had statements that (1) were impossible unless time travel existed, (2) contradicted statements Powell made, (3) were speculative and exceeded the declarants' knowledge, (4) were false based on readily available information, (5) were self-contradictory concerning Smartmatic and its software, and (6) were inconsistent with each other. *Id.* Powell does not dispute any of these defects. The fact that the "affidavits" were so obviously unreliable supports the conclusion that Powell acted with actual malice. *See, e.g., Harte-Hanks*, 491 U.S. at 681-82; *US Dominion*, 554 F. Supp. 3d at 60 ("[N]o rule" exists "that a defendant cannot act in reckless disregard of the truth when relying on sworn affidavits—especially sworn affidavits that the defendant had a role in creating.").[5]

### 4. Powell Acted with Ulterior Motives.

A defendant's motive is relevant in an actual malice inquiry because it explains why the defendant made a defamatory statement. *See Harte–Hanks*, 491 U.S. at 664–668, 689 n.36 (stating that "it cannot be said that evidence concerning motive or care never bears any relation to the actual malice inquiry"); *Mann*, 150 A.3d at 1259. The Complaint alleges that Powell published false information about Smartmatic with ill-will and improper motives for self-promotion and financial and other gains. (Compl. ¶ 361). Powell used her appearances on Fox to raise her profile and standing with President Trump and his supporters by attacking Smartmatic and the election's legitimacy. (*Id.* ¶ 362). Powell also leveraged her defamatory statements and appearances on Fox

---

[5] *Jankovic v. Int'l Crisis Grp*, 822 F.3d 576, 595-97 (D.C. Cir. 2016) is inapposite. Unlike Powell, the defendant "honest[ly] misinterpret[ed]" a document that supported his reporting, and the plaintiff failed to identify other contradictory evidence the author could have "easily discovered."

to encourage people to visit her websites and donate money that she ultimately pocketed. (*Id.* ¶ 364-65). These allegations bolster an actual malice finding because they show that Powell spread falsehoods about Smartmatic not because she believed them, but to serve her own interests. *See Harte-Hanks*, 491 U.S. at 668; *US Dominion*, 554 F. Supp. 3d at 64; *Competitive Enter. Inst.*, 150 A.3d at 1259.

### C. Powell Erroneously Invokes an Inapplicable Florida Privilege and Conflates It With Actual Malice.

Powell improperly raises an affirmative defense that is unique to Florida law and has no application here. (*See* Mot. at 19). Powell contends that "Florida law provide[d]" her with "a qualified privilege" to "honestly express opinions under reasonable circumstances to who other people who need to hear those opinions." (*Id.*) *See Kieffer v. Atheists of Fla., Inc.*, 269 So. 3d 656, 660 (Fla. Dist. Ct. App. 2019) ("Qualified privilege is an affirmative defense, and the burden of proving it rests with the defendant."). Powell's assertion of Florida's qualified privilege is frivolous for several reasons.

### 1. D.C. Law, not Florida Law, Governs.

Florida law does not govern this case. Powell wants Florida law to apply—even though she is a Texas resident who defamed Smartmatic in this District and Virginia primarily to a news outlet located in New York—because "the law of Florida embraces a broad range of" privileges against defamation. *See Nodar v. Galbreath*, 462 So. 2d 803, 809 (Fla. 1984). Powell cannot invoke Florida's privileges against defamation because, under this jurisdiction's choice of law rules, D.C.'s law of privileges applies.

To resolve choice-of-law issues, D.C. Courts employ a two-part test. *Corp. Accountability Lab v. Sambazon, Inc.*, 340 A.3d 1277, 1285 (D.C. 2025). First, the court must determine whether a "conflict exists between the laws of the jurisdictions at issue." *Id.* There is no conflict "when the

22

laws of the different jurisdictions are identical or would produce the identical result on the facts presented." *Id.* (quoting *USA Waste of Maryland, Inc. v. Love*, 954 A.2d 1027, 1032 (D.C. 2008)). Here, Florida's defamation privileges and D.C.'s privileges conflict because Powell is asserting a qualified privilege unique to Florida. (Mot. at 19-20).[6]

If the laws conflict, D.C. Courts proceed to the second step and "assess whether there is a false conflict." *Corp. Accountability Lab*, 340 A.3d at 1285. A false conflict occurs "when the policy of one jurisdiction would be advanced by application of its law, and the policy of the other jurisdiction would not be advanced by application of its law." *Id.* (quoting *District of Columbia v. Coleman*, 667 A.2d 811, 816 (D.C. 1995)). "If there is a false conflict, we apply the law of the jurisdiction whose policy would be advanced by application of its law." *Id.* at 1286.

*Rong Yao Zhou v. Jennifer Mall Rest., Inc.*, presents a classic case of a false conflict. 534 A.2d 1268 (D.C. 1987). In *Rong Yao Zhou*, plaintiff sued a D.C. tavern owner for overserving a customer who caused an auto accident in Maryland. *Id.* at 1270. Under Maryland law, tavern owners were immunized from civil liability, while under D.C. law they were liable. *Id.* Even though the accident occurred in Maryland, the Court found that the case presented a false conflict because "Maryland's interest in protecting tavern owners from tort liability is not implicated where

---

[6] D.C. recognizes a "common-interest privilege" in defamation cases which has different elements than Florida's "qualified privilege." Compare *Blodgett v. Univ. Club*, 930 A.2d 210, 224 (D.C. 2007) ("To come within the protection of the 'common interest' privilege,  the statement must have been (1) made in good faith, (2) on a subject in which the party communicating has an interest, or in reference to which he has, or honestly believes he has, a duty to a person having a corresponding interest or duty, (3) to a person who has such a corresponding interest.") with *Thomas v. Tampa Bay Downs, Inc.*, 761 So. 2d 401, 404 (Fla. Dist. Ct. App. 2000) (elements of qualified privilege are "(1) good faith; (2) an interest in the subject by the speaker or a subject in which the speaker has a duty to speak; (3) a corresponding interest or duty in the listener or reader; (4) a proper occasion; and (5) publication in a proper manner.").

23

the negligent restaurant is situated in the District of Columbia and the unlawful conduct occurred therein." *Id.* at 1271.

Here, a false conflict exists between D.C.'s and Florida's law of defamation privileges. Powell, a Texas resident who published her defamatory statements in Virginia and D.C. through a television network based in New York, is attempting to assert Florida law to immunize herself from defamation liability. But Florida's defamation privileges are not implicated here. Florida's "affirmative defenses to defamation exist to protect speakers, not to provide Plaintiffs a remedy." *Nix v. ESPN, Inc.*, 2018 WL 8802885, at *5 (S.D. Fla. Aug. 30, 2018); *Miller v. Gizmodo Media Grp., LLC*, 2019 WL 1790248, at *6 (S.D. Fla. Apr. 24, 2019) (same) *See also Gubarev v. BuzzFeed, Inc.*, 2018 U.S. Dist. LEXIS 97246, at *14 (S.D. Fla. June 5, 2018) (selecting New York's law on fair reporting and neutral reporting privileges because "New York has a strong interest determining the applicability of the affirmative defenses"). Thus, just as Maryland's interest in protecting tavern owners did not extend to D.C., Florida's interest in protecting speakers from defamation lawsuits does not extend to speech by non-residents occurring outside its borders.

### 2.   Even if Florida Law Applied, Powell is Not Entitled to the Qualified Privilege.

Even if Florida's qualified privilege was available, Powell has no chance of satisfying it. The privilege requires, among other conditions, "mutuality of interest," which "can be lost when the defendant doesn't sufficiently tailor its audience to ensure that they *all* share the same particular property, business, professional, or civic interest."[7] *See* Mot. at 19 (citing *Block v. Matesic*, 789 F.Supp.3d 1131, 1191 (S.D. Fla. 2025) (emphasis in original)). Indeed, "[t]he existence of a qualified privilege vanishes if the statement is made with malice, or to too wide an audience."

---

[7] Smartmatic reserves its right to challenge Powell's satisfaction of every requirement of her so-called "qualified privilege" to spread defamatory lies.

*Kieffer*, 269 So. 3d at 660 n. 4; *see Scholz v. RDV Sports, Inc.*, 710 So. 2d 618, 626 (Fla. Dist. Ct. App. 1998) (rejecting qualified privilege because the defendant made the at-issue statements "to the press" and "had no common interest with those members of the media"). Powell could never meet this requirement because *she defamed Smartmatic on national television.* (Compl. ¶¶ 83-114)

Finally, Powell ignores that Florida courts disfavor resolving the qualified privilege at the pleading stage. *See Glickman v. Potamkin*, 454 So. 2d 612, 613 (Fla. Dist. Ct. App. 1984) ("In a defamation action, the affirmative defense[] of…qualified privilege present[s] factual questions for resolution by the jury."); *Glynn v. City of Kissimmee*, 383 So. 2d 774, 776 (Fla. Dist. Ct. App. 1980) ("Rarely is summary judgment appropriate in a defendant's favor where the existence of a qualified privilege for a defamatory statement is controverted."). Powell has no factual or legal basis to invoke this privilege, much less via a motion for judgment on the pleadings.

### III.   Smartmatic Sufficiently Alleges That Powell Caused Significant Injury and Damages.

#### A.   Smartmatic Is Not Required to Plead "Injury and Damages" Because Powell's Statements Were Defamatory Per Se.

The Court can reject every causation argument Powell makes because she ignores that her statements were defamatory per se—meaning that Smartmatic need not allege causation because damages are presumed. "Under D.C. law, defamation may be actionable as a matter of law irrespective of actual harm ('defamation *per se*')[.]" *US Dominion*, 554 F. Supp. 3d at 73 (rejecting Rudy Giuliani's argument that Dominion needed "to plead damages for its defamation claim" that arose from statements that mirror what Powell disseminated about Smartmatic). A statement is defamatory per se when it is "so likely to cause degrading injury to the subject's reputation that proof of that harm is not required to recover compensation." *MiMedx Grp., Inc. v. DBW Partners LLC*, 2018 WL 4681005, at *3 (D.D.C. Sept. 28, 2018). "Defamatory statements related to a plaintiff's fitness for the proper conduct of his lawful business, trade or profession generally

25

constitute defamation per se." *Id.* So do "false accusations of criminal conduct" and "fraud." *LaRue v. Johnson*, 2018 WL 1967128, at *6 (D.D.C. Feb. 22, 2018).

"[T]he doctrine of presumed damages in the common law of defamation *per se* is an oddity of tort law, for it allows recovery of purportedly compensatory damages *without evidence of actual loss.*" *Chandler v. Berlin*, 691 F. Supp. 3d 118, 128 (D.D.C. 2023) (emphasis in original). "The doctrine has been defended on the grounds that those forms of defamation that are actionable *per se* are virtually certain to cause serious injury to reputation, and that this kind of injury is extremely difficult to prove." *Id.* "Moreover, statements that are defamatory *per se* by their very nature are likely to cause mental and emotional distress, as well as injury to reputation, so there arguably is little reason to require proof of this kind of injury either." *Id.*

Here, Powell made several types of defamatory per se statements about Smartmatic. For example, she: falsely accused Smartmatic of participating in an international criminal conspiracy to fix, rig, and steal the 2020 U.S. election (Compl. ¶¶ 381–394); falsely stated that Smartmatic's election technology and software were used to fix, rig, and steal the election (*id.* ¶¶ 409–422); falsely stated that Smartmatic's election technology was compromised and hacked (*id.* ¶¶ 423–436); falsely stated that Smartmatic was a Venezuelan company founded and funded by corrupt dictators (*id.* ¶¶ 451–464); and falsely stated that Smartmatic's election technology and software were designed and used to fix, rig, and steal elections (*id.* ¶¶ 465–478). These statements "were defamatory per se since they charged Smartmatic with serious crimes and were of a nature tending to injure Smartmatic in its trade and profession. (*Id.* ¶¶ 388, 402, 416, 430, 444, 458, 472).

Because Smartmatic has alleged defamation per se, it need not plead or prove that Powell's statements caused specific damages—damages are presumed as a matter of law. Indeed, this Court already rejected the same argument that Powell is making when Rudy Giuliani moved to dismiss

26

Dominion's damages in *US Dominion, Inc. v. Powell*, 554 F. Supp. 3d 42 (D.D.C. 2021). He similarly disputed that the disinformation he and Powell were spreading could have caused Dominion's damages. Dominion's claims arose from similar and, in some instances, identical accusations that Powell made about Smartmatic. *Id.* at 51-54. The Court correctly found that Giuliani's damages arguments "rest[ed] on the premise that Dominion is required to plead damages for its defamation claim." *Id.* at 73. The Court further found that "there is no question that Giuliani's statements accusing Dominion of election fraud constitute defamation per se" and that damages were therefore presumed. *Id.* at 73-74. The Court's ruling in *Dominion* is consistent with the law in this District, which recognizes that defamation per se is "actionable without proof of special damages." *Id.* at 73; *accord Conejo v. Am. Fed'n of Gov't Emps., AFL-CIO*, 377 F. Supp. 3d 16, 32 (D.D.C. 2019) (holding that "libel per se [] requires no showing of special harm"). Smartmatic need not allege causation to proceed with its defamation claims.

B.    **Smartmatic Amply Alleges How Powell Caused Its "Injury and Damages."**

The Complaint provides Powell with more than sufficient notice to understand how her defamation campaign harmed Smartmatic. "[A] plaintiff may defeat a motion to dismiss a defamation claim where he pleads either that the statement[s] w[ere] actionable as a matter of law irrespective of special harm or that [their] publication caused the plaintiff special harm." *Id.* at 31-32. "Special harm" or "special damages" is "a term that refers to actual pecuniary loss." *KLEO AG v. Rivada Networks, Inc.*, 148 F.4th 741, 745 (D.C. Cir. 2025. "Special damages encompass those elements of damages that are the natural, but not the necessary or usual, consequence of the defendant's conduct." 5A *Wright & Miller's Federal Practice & Procedure* § 1310 (4th ed. Supp. May 2025).

In this case, Smartmatic's alleged damages are "natural," foreseeable consequences of Powell's conduct. Beginning on November 12, 2020—just nine days after the presidential

27

election—Powell embarked on a calculated disinformation campaign to undermine its results. (Compl. ¶¶ 83, 396, 410). Powell made Smartmatic and Dominion the villains in her story. (*Id.*) She told millions of Americans that Smartmatic's election technology was used to fix, rig, and steal the presidential election from the incumbent President. (*Id.* ¶ 115, 148–149). These were not "the same specific statements and topics" that Powell erroneously claims "followed Smartmatic" from over a decade earlier. (Mot. at 23). Powell placed Smartmatic at the center of a criminal conspiracy to defraud the United States and steal a presidential election.

Powell also lent authority to her fabrications by holding herself out as a member of President Trump's legal team. Fox News hosts introduced her as "Trump campaign attorney" and as "a member of President Trump's legal team," and she appeared alongside Giuliani—President Trump's personal lawyer—at a televised press conference in Washington, D.C. on November 19, 2020. (Compl. ¶¶ 77, 84, 94, 101). Powell knew that, as a lawyer purporting to represent the President, her ethical obligations barred her from making false statements to third parties. (*Id.* ¶ 126). Yet, she exploited viewers' trust to make her fabrications more credible. (*Id.* ¶ 127).

To ensure the widest possible dissemination of her falsehoods, Powell selected Fox News—one of the most powerful media organizations in the world—as her main platform. Powell repeatedly appeared on national Fox News broadcasts. (*Id.* ¶¶ 84-86, 90-93, 95, 101-103, 109-113). Fox News averaged millions of viewers during that timeframe, with over 2.5 billion multiplatform digital views. (*Id.* ¶¶ 7–8, 121). And, Powell's statements were republished on Fox's website, social media accounts, and by individuals who saw them, ensuring that billions of people across the world heard, read, and saw the disinformation about Smartmatic. (*Id.* ¶¶ 116–121).

The predictable and natural result of this campaign was to destroy Smartmatic's reputation. (*Id.* ¶ 366). Powell's defamatory statements were a proximate and substantial cause of

28

Smartmatic's name and brand becoming synonymous with election fraud among members of the public and government officials. (*Id*. ¶ 368). The Complaint unquestionably puts Powell on notice regarding how she caused harm to Smartmatic. She has no basis to seek dismissal on causation. *See US Dominion*, 554 F. Supp. 3d at 74–75 (D.D.C. 2021) (finding that Dominion adequately alleged damages that "it would not have incurred if not for Giuliani's alleged defamation"); *KLEO AG*, 148 F.4th at 750–51 (finding that damages causation was "clear, logical, logical, and factually grounded" where the defamatory statements were published on a podcast that "was then circulated on a well-respected platform for satellite-related news"); *Conejo*, 377 F. Supp. 3d 16, 32 (D.D.C. 2019) (same where plaintiff alleged damages suffered "[a]s a consequence of" defendant's statements); *Solers*, 977 A.2d at 948-49 (same).

### C.    Powell Has No Basis to Invoke the "Libel-Proof" Doctrine.

Powell contends that "Smartmatic's reputation had been so impugned" before she launched her defamation campaign "that Smartmatic cannot adequately plead, much less prove, she proximately caused it damage." (Opp. at 22). This concept, known as the "libel-proof doctrine," refers to a plaintiff whose "reputation with respect to a specific subject may be so badly tarnished that he cannot be further injured by allegedly false statements on that subject." *Guccione v. Hustler Mag., Inc*., 800 F.2d 298, 303 (2d Cir. 1986).  "Courts have noted, however, that the doctrine should be applied cautiously, since few plaintiffs will have so bad a reputation that they are not entitled to obtain redress for defamatory statements, even if their damages cannot be quantified and they receive only nominal damages." *Von Kahl v. Bureau of Nat. Affs., Inc.*, 934 F. Supp. 2d 204, 215 (D.D.C. 2013); *cf. Liberty Lobby, Inc. v. Anderson,* 746 F.2d 1563, 1568 (D.C. Cir.1984) ("[W]e cannot envision how a court would go about determining that someone's reputation had already been 'irreparably' damaged—*i.e.,* that *no* new reader could be reached by the freshest libel.") (emphasis in original), *vacated on other grounds,* 477 U.S. 242 (1986).

29

Powell is wasting the Court's time by invoking the libel-proof doctrine. *First*, Smartmatic was anything but "libel-proof" when Powell began defaming it. Before the 2020 U.S. Election, Smartmatic was a thriving, multi-billion-dollar enterprise with an unmatched reputation in election technology. (Compl. ¶¶ 24-26, 44, 47). It processed more than 5 billion secure votes in over 25 countries on five continents without a single security breach. (*Id.* ¶ 291). Smartmatic's reputation was validated by the Carter Center, the United Nations, the Organization of American States, and the European Union. (*Id*. ¶¶ 47, 291). That reputation was critical to Smartmatic's business model, which relied on case studies and referrals to attract new government clients who viewed selecting Smartmatic as a safe, unimpeachable choice. (*Id*. ¶¶ 45–46, 375). Heading into the 2020 Election, Smartmatic held the largest election technology contract in the United States—with Los Angeles County, the nation's most populous voting jurisdiction. (*Id*. ¶¶ 48–49). Smartmatic's flawless performance in the November 2020 general election there positioned the company for further growth. (*Id*. ¶¶ 48–49, 59–60). Based on its historical business and pipeline, Smartmatic's business was valued in excess of $3.0 billion. (*Id*. ¶ 379).

If its reputation had been severely damaged by the articles Powell cites, Smartmatic would not have continued winning contracts. (*Id*. ¶¶ 29-43). Smartmatic secured the Los Angeles County contract—the largest jurisdiction in the U.S.—*after* the articles Powell references were published. (*Id*. ¶¶ 48-60). Smartmatic underwent certification testing that is considered "the most rigorous in the country," leading to LA County officials selecting Smartmatic. (*Id*. ¶¶ 287-88). Their decision demonstrates that election officials did not consider its reputation problematic. The argument that Smartmatic's reputation was already dead before Powell destroyed it is historically inaccurate.

*Second*, Powell could never show that Smartmatic had a "tarnished" reputation *with respect to her false statements. Guccione*, 800 F.2d at 303; *Von Kahl*, 934 F. Supp. 2d at 215. Powell

30

accused Smartmatic of unprecedented crimes: rigging the 2020 U.S. Presidential election by manipulating votes. (Compl. ¶¶ 149). Powell has no basis to claim that Smartmatic had a "reputation" for such acts, which are not even contemplated in the articles Powell gathered. *See Arpaio v. Zucker*, 414 F. Supp. 3d 84, 91 (D.D.C. 2019) (rejecting argument that Sheriff Joe Arpaio was "libel-proof" because the "publication's erroneous claim—that Mr. Arpaio spent time in prison—is distinct from the fact that Mr. Arpaio was convicted of contempt of court"). Nothing suggests, much less proves, that Smartmatic had a reputation involving Powell's false statements.

*Third*, no court has applied the libel-proof doctrine to a case like this. *See Carpenter v. King*, 792 F. Supp. 2d 29, 34 (D.D.C. 2011) (The libel-proof "doctrine is most often applied to plaintiffs with criminal convictions and with extensive criminal histories."). Cases that Powell string-cites reflect that application[8] or other conduct *that the plaintiff admitted undertaking*.[9] Additional authority that Powell cites underscores that she is misapplying the libel-proof doctrine. *See* Mot. at 21 (citing *Church of Scientology Int'l v. Time Warner, Inc.*, 932 F. Supp. 589, 594 (S.D.N.Y. 1996) (rejecting "libel-proof plaintiff doctrine" because it "has been persuasively criticized" and "is not appropriate at [the pleading] stage of the litigation, because it requires the

---

[8] *See* Opp. at 21 (citing *Logan v. District of Columbia*, 447 F. Supp. 1328, 1332 (D.D.C. 1978) (dismissing drug use allegations as libelous against "an admitted drug user" who had an "extensive past criminal record" of "drug offenses"); *Cardillo v Doubleday & Co., Inc.*, 518 F.2d 638, 640 (2d Cir. 1975) (dismissing criminal accusations as libelous against inmate who was serving time "for assorted federal felonies")).

[9] *See* Opp. at 21 (citing *Guccione v Hustler Mag., Inc.*, 800 F.2d 298, 303 (2d Cir. 1986) (dismissing adultery allegations as libelous against a spouse who testified that "his relatives, friends and business associates knew that he was" openly having an affair and "never hit" it); *161 Ludlow Food, LLC v L.E.S. Dwellers, Inc.,* 60 Misc. 3d 1221(A), *4 (Sup. Ct, NY County 2018) (dismissing allegations that plaintiff operated without a required license as libelous because "plaintiff undisputedly operated without such licenses for a significant period of time")).

Court to make factual findings regarding plaintiff's reputation for a particular trait")).[10]

Smartmatic is unlike any of the plaintiffs in the cases Powell cites to illustrate the libel-proof doctrine. Those plaintiffs either (a) had a conviction for committing the same act described in the defamatory statements, or (b) admitted to engaging in such conduct. Smartmatic has no such conviction or admission, which forces Powell to rely on articles and Tweets to suggest that Smartmatic had a muddied reputation. Those documents prove nothing. Powell identifies no case where such hearsay renders a plaintiff libel-proof. Rather, courts reject treating plaintiffs as "libel-proof" where the purported proof is prior allegations. *Liberty Lobby*, 746 F2d at 1568 ("We see nothing to be said for the rule that a conscious, malicious libel is not actionable so long as it has been preceded by earlier assertions of the same untruth."); *Charles Atlas, Ltd. v. Time-Life Books, Inc.*, 570 F. Supp 150, 154 (S.D.N.Y. 1983) (refusing to extend the libel-proof doctrine to a case in which earlier publications had already said the same bad things about the plaintiff). The facts and the law foreclose the libel-proof doctrine from applying to this case.

## IV.    Smartmatic Sufficiently Alleged Damages for Its Injurious Falsehood Claims.

Powell seeks dismissal of Smartmatic's injurious falsehood claims (Counts 8 through 12) citing "two independent reasons." (Mot. at 31). *First*, Powell asserts that Smartmatic inadequately alleged "special damages with the particularity required by law." (*Id.* at 31). If this assertion sounds familiar, Powell made the same argument in her Rule 12(b)(6) motion in this case. (*See* ECF No. 23-2 at 21-22). The Court rejected the argument in its Dismissal Order, finding that Smartmatic sufficiently alleged "specific pecuniary losses" and calling them "*quintessential special damages*." *Smartmatic*, 2026 WL 353018, at *5. The Court found that Smartmatic specified the losses that

---

[10] The court in *Church of Scientology* applied the subsidiary meaning doctrine from the Second Circuit. Powell makes no attempt to explain how that doctrine applies here.

Powell caused it to incur. *See id.* ("Most notably, Smartmatic pleads that Powell's statements prompted it to spend more than '$400,000 on public relations and crisis management,' '$100,000 on cybersecurity,' and '$700,000 on retention and recruitment for personnel.'"). The Court's determination that Smartmatic "specifically stated" its damages in accordance with Fed. R. Civ. P. 9(g) remains sound and refutes Powell's contention. *Id.*

*Second*, Powell argues that she "played an infinitesimal part" in spreading disinformation about Smartmatic and that Smartmatic cannot show that she, as opposed to someone else, caused its special damages. (Mot. at 33). This argument fails both factually and legally. Solely looking at the factual allegations in the Complaint (as Powell must do under Rule 12(c)), Smartmatic alleges more than a "plausible causal connection" between Powell's defamation campaign and Smartmatic's special damages. *See KLEO AG*, 148 F.4th at 748. Powell's statements were "read or watched by a significant, world-wide audience base through publication and republication." (Compl. ¶ 374). The campaign made Smartmatic's name "synonymous with election fraud with members of the general public and government officials." (*Id.* ¶ 368). People who viewed or read the statements "came to believe that Smartmatic's election technology and software was used to rig and steal elections." (*Id.* ¶ 370). Powell's defamatory statements "contributed to a crisis situation" for Plaintiffs. (*Id.* ¶ 370). Because of the anger Powell incited, "Smartmatic's officers and employees have been threatened. Smartmatic's operations have come under attack—physically and electronically." (*Id.* ¶ 373). These allegations set forth a "clear, logical, and factually grounded" timeline "giving rise to a natural inference" that Smartmatic's damages were the natural "consequence of [Powell's] conduct." *KLEO AG*, 148 F.4th at 748.

Powell's attempt to shift all blame onto other speakers fails under settled causation law. "D.C. law recognizes that there may be more than one cause of a plaintiff's harm." *See* 1 Civil

33

Jury Instructions for DC § 5.13, Comment (2026). Where the acts of two or more persons "cause the same harm," each act "that played a substantial part in the harm is a cause." 1 Civil Jury Instructions for DC § 5.13, Instruction. "This is true even if one of the acts or omissions contributed more than another to causing the harm, so long as each act or omission played a substantial part in the harm." *Id. Accord* Restatement (Second) of Torts § 632 (1977); Restatement (Second) of Torts § 622A (1977). These principles invalidate Powell's effort to insulate herself from liability for her defamatory publications. She played a central role, not an "infinitesimal part," in creating and spreading the lie that Smartmatic interfered with the 2020 election. (Compl. ¶¶ 72-78, 366-80). Indeed, a leading hornbook cites Powell's conduct as textbook defamation. *See* 1 Law of Defamation § 1:5.50 (2d ed.) (noting that Powell "took center stage in advancing the claims that the election was stolen from Trump"). Powell has no basis to seek judgment on the pleadings on Smartmatic's injurious falsehood claims.

**V.     All of Smartmatic's Claims Are Based on Actionable Statements by Powell.**

Powell cannot shield her defamatory publications by labeling selected fragments from them as "opinions." She does not dispute that each of her publications *as a whole* contains actionable (i.e., false and defamatory) statements. This Court has already found that the Complaint adequately alleges defamation claims. *See Smartmatic USA*, 2026 WL 353018, at *6. Powell's attempt to isolate sentences *within* certain publications contravenes settled law. The Court must consider each publication that Powell challenges in its entirety and determine whether it supports a claim. *See Jaffe*, 366 F.2d at 655; *James*, 40 N.Y.2d at 41. If the Court conducts that inquiry, Section V of Powell's motion founders because every publication has actionable statements. *See Smartmatic USA*, 2026 WL 353018, at *6 (finding that Powell's publications contain actionable statements "when considered with the surrounding context and related allegations"); *US Dominion*, 554 F.

34

Supp. 3d at 59 (rejecting Powell's argument that some of her statements were "opinions" because Dominion "adequately alleged that Powell made a number of statements that are actionable").

Section V of Powell's motion also fails because she misstates what constitutes a protected opinion. Indeed, the Court dispatched with many of the same opinion arguments by Powell in *US Dominion*. Powell repeats those arguments here without addressing the Court's Order in *US Dominion*. Powell presents no valid grounds to obtain judgment on the pleadings for any publication.

### A.    Powell Published Provably False Statements and Implications About Smartmatic.

Statements are actionable as defamation if they "express or imply a verifiably false fact about the plaintiff." *US Dominion*, 554 F. Supp. 3d at 57 (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19-20 (1990)). "[W]hile statements of opinion regarding matters of public concern cannot be defamatory if they do *not* contain or imply a provably false fact, they are actionable if they imply a provably false fact or rely upon stated facts that are provably false." *US Dominion*, 554 F. Supp. 3d at 57 (citing *Milkovich*, 497 U.S. at 20). "In deciding whether a reasonable factfinder could conclude that a statement expressed or implied a verifiably false fact about [the plaintiff], the court must consider the statement in context." *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 624 (D.C. Cir. 2001).

Powell contends that "certain statements" she made are "protected opinion" because she "couched [them] in the language of subjective belief or concern rather than factual assertion." (Mot. at 35). Even if the Court assesses the statements Powell lifted out of context, the very case she cites, *Milkovich*, 497 U.S. at 20, rejected her position. The U.S. Supreme Court provided the following seminal guidance on opinion law in *Milkovich*:

> If a speaker says, 'In my opinion John Jones is a liar,' he implies a knowledge of
> facts which lead to the conclusion that Jones told an untruth. Even if the speaker

35

> states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact.

*Id.* at 18–19. The Court added: "*Simply couching such statements in terms of opinion does not dispel these implications*; and the statement, 'In my opinion Jones is a liar,' can cause as much damage to reputation as the statement, 'Jones is a liar.'" *Id.* at 19.

*Milkovich* refutes Powell's claim that her "couched" statements are protected. When viewed in context, each of her "opinion" statements relies upon false facts about Smartmatic. For example, the first statement Powell cites comes from the November 15, 2020 broadcast of *Sunday Morning Futures with Maria Bartiromo*. Powell told millions of viewers the following:

> We have sworn witness testimony of why the software was designed. It was designed to rig elections. . . [T]his is a massive election fraud. And I'm very concerned it involved not only Dominion and its Smartmatic software, but that the software essentially was used by other election machines also. It's the software that was the problem." (Mot. at 35 (citing Compl. ¶ 90)).

Powell argues that her expression of "concern" is "qualifying language" which renders the statement non-actionable. (Mot. at 35-36). But the "couching" language she provided is meaningless. *See Milkovich*, 497 U.S. at 19. Powell predicated her "concern" on two factual assertions: (1) that Smartmatic designed its software to rig elections; and (2) that Smartmatic's software was widely used in the 2020 election. These assertions are actionable because they expressed verifiably false facts about Smartmatic. *See Smartmatic*, 2026 WL 353018, at *6; *US Dominion*, 554 F. Supp. 3d at 59. Powell also ignores other actionable statements she made within the same broadcast. (*See* Compl. Ex. 5; Compl. ¶¶ 87-92).

Powell makes a similarly flawed argument regarding expressions of "uncertainty." (Mot. at 36). She argues that "statements of uncertain belief are non-actionable" and cites a statement that she made on *Justice with Judge Jeanine* on November 14, 2020:

36

It's either Symantec or Smartmatic or the two, there one is a subsidiary of the other. It's all inextricably intertwined. The money creating it came out of Venezuela or Cuba. It was created for the express purpose of being able to alter votes and secure the re-election of Hugo Chávez. And then Maduro. They've used it in Argentina. There was an American citizen who has exported it to other countries. And it is one huge criminal conspiracy that should be investigated by military intelligence for its national security implications." (Mot. at 36 (citing Compl. ¶ 85)).

These statements contained provably false assertions, including that Smartmatic was founded by Venezuelan and Cuban money for the purpose of altering votes and rigging elections. Powell cannot immunize a few words while ignoring everything else she said. *See Ollman v. Evans*, 750 F.2d 970, 983 (D.C. Cir. 1984) ("When a statement is as 'factually laden' as the accusation of a crime…cautionary language is by and large unavailing to dilute the statement's factual implications."). Smartmatic has sufficiently alleged claims for every publication at issue.

## B.    Powell's Other Asserted Defenses Do Not Exist.

*Cable News Programming.* Powell argues that her statements are "protected" because she made them on "cable news political opinion programs during a period of intense political debate." (Mot. at 37). First, this statement is inaccurate and ignores Smartmatic's Complaint. It alleges that Powell, Giuliani and Fox "intentionally created the impression that the information they provided regarding Smartmatic was the only information that was accurate and truthful." (Compl. ¶ 127; *see also id.* ¶¶ 5, 9-13, 122-128). Powell's characterization of the Fox News programs as "opinion" ignores Smartmatic's well pled allegations and the broadcasts themselves—which the New York Appellate Division has refused to consider as opinion commentary. *See Smartmatic USA Corp. v. Fox Corp.*, 213 A.D.3d 512, 512 (1st Dep't 2023) (affirming trial court's denial of the Fox Defendants' motions to dismiss because Smartmatic's complaint arose from false, "defamatory statements about plaintiffs' involvement in the 2020 Presidential election" that Giuliani, Powell and certain Fox anchors published on Fox News).

37

Second, Powell is responsible for her statements even if she was appearing on "cable news opinion programs." (Mot. at 37). Statements made on such media are not immune from defamation liability. *See US Dominion*, 554 F. Supp. 3d at 57. Rather, the key question is "whether a reasonable juror could conclude that Powell's statements expressed or implied a verifiably false fact about" Smartmatic. *Id.* at 58. As in *US Dominion*, "[t]his is not a close call" considering the nature and volume of actionable statements Powell made. *Id.*

**Heated Political Context.** Powell argues that "the intense political environment in which [she] made her statements" supports "a finding that [they] are non-actionable." (Mot. at 38). Powell made the same flawed argument in her motion to dismiss against Dominion.  The Court properly found that "no blanket immunity" exists "for statements that are 'political' in nature: as the Court of Appeals has put it, the fact that statements were made in a political 'context' does not indiscriminately immunize every statement contained therein." *Dominion,* 554 F. Supp. 3d at 57. The Court added that "it is simply not the law that provably false statements cannot be actionable if made in the context of an election." *Id.* Powell's attempt to leverage the "political" climate to evade liability for defaming Smartmatic fails.

**Calls for Government Investigation.** Powell argues that some of her statements are "calls for government investigation" that "cannot form the basis of a defamation claim." (Mot. at 38). But she cites no authority to establish this privilege. Neither *Brandeburg v. Ohio*, 395 U.S. 444 (1969) nor *Garrison*, *v. State of La.*, 379 U.S. 64 (1964) makes "calls for investigation" protected regardless of whether they contain false, defamatory information.

The only example Powell furnishes to demonstrate her objection further shows it is meritless.  Powell extracts a single sentence from a paragraph wherein she defamed Smartmatic:

> First of all, I never say anything I can't prove. Secondly, the evidence is coming in
> so fast, I can't even process it all. Millions of Americans have written, I would say

by now, definitely hundreds of thousands have stepped forward with their different experiences of voter fraud. But this is a ***massive election fraud***. And I'm very concerned it involved not only Dominion and its Smartmatic software but that the software essentially was used by other election machines also. It's the software that was the problem. Even their own manual explains how votes can be wiped away. ***They can put, it's like drag-and-drop Trump votes to a separate folder and then delete that folder. It's absolutely brazen how people bought this system and why they bought this system.*** In fact, every state that bought Dominion, for sure, should have a criminal investigation or at least a serious investigation of the … officers in the States who bought the software. We've even got evidence from kickbacks, essentially."

(*See* Mot. at 38; Compl. ¶ 149(h) (emphasis in Complaint); Compl. Ex. 5). Powell seeks an order dismissing the second-to-last sentence of this passage, while ignoring all the statements that make the publication actionable. Powell cannot bowdlerize language within the publications that contextualize her defamatory statements. *See Jaffe*, 366 F.2d at 655; *James*, 40 N.Y.2d at 41; *Smartmatic USA*, 2026 WL 353018, at *6. Nor does Powell have any basis to challenge the statements she identifies. Powell's "call for an investigation" above asserts or implies that state officials should conduct a "criminal investigation" into Smartmatic software because it was designed to alter votes. That statement and implication is defamatory and provably false.

***Rhetorical Hyperbole.*** Powell makes similar errors when seeking dismissal of her "rhetorical hyperbole." First, this Court rejected an identical "rhetorical hyperbole" argument by Powell in *Dominion*. *See* 554 F. Supp. 3d 42 at 57. Nor do any of the cases Powell cites support her position. For instance, *Greenbelt Co-op. Pub. Ass'n v. Bresler* held that an accusation of "blackmail" at a zoning meeting was inactionable because a reasonable listener would know it was an exaggeration and that no one "thought [plaintiff] had been charged with a crime." 398 U.S. 6, 10 (1970). Here, the opposite is true: Powell accused Smartmatic of altering votes and rigging elections (*See*, e.g. Compl. ¶ 149(h)), and millions believed her. The other case Powell cites, *Farah v. Esquire Magazine*, 736 F.3d 528 (D.C. Cir. 2013) is also inapposite. There, the D.C. Circuit

39

held that statements in a satirical blog post were not actionable defamation because "the reasonable reader could not understand [the] article to be conveying 'real news.'" *Id.* at 537. Unlike the *Farah* defendant, Powell does not claim that her statements about Smartmatic were "satire." Rather, Powell presented herself as an advocate seeking to "overturn the results of the election" with "sworn witness testimony to support her claims." (Compl. ¶ 90).

Second, Powell improperly isolates statements to sanitize them. As her lone example of "rhetorical hyperbole," she cites one statement she made on November 15, 2020 on *Sunday Morning Futures with Maria Bartiromo*. (*See* Mot. at 39). But that statement fit into a paragraph wherein Powell made provably false, defamatory statements:

> First of all, I never say anything I can't prove. Secondly, the evidence is coming in so fast, I can't even process it all. Millions of Americans have written, I would say by now, definitely hundreds of thousands have stepped forward with their different experiences of voter fraud. But this is a ***massive election fraud***. And I'm very concerned it involved not only Dominion and its Smartmatic software but that the software essentially was used by other election machines also. It's the software that was the problem. Even their own manual explains how votes can be wiped away. ***They can put, it's like drag-and-drop Trump votes to a separate folder and then delete that folder. It's absolutely brazen how people bought this system and why they bought this system.*** In fact, every state that bought Dominion, for sure, should have a criminal investigation or at least a serious investigation of the … officers in the States who bought the software. We've even got evidence from kickbacks, essentially.

(Compl. ¶ 149(h) (emphasis in Complaint); Ex. 5). Before making the statement Powell claims is rhetorical hyperbole, she explained to viewers how Smartmatic's software allegedly shifted votes cast for Donald Trump into a "folder" for Joe Biden. Powell does not and cannot argue that the publication as a whole (Ex. 5) is purely "rhetorical hyperbole."

***Of and Concerning.*** Powell claims that some of her statements were not "of and concerning" Smartmatic. To illustrate her argument, she cites two statements she made within an interview she gave on November 15, 2020 on *Sunday Morning Futures with Maria Bartiromo*:

Yes. Well he is listed as it's former Admiral Peter Neffenger or retired Admiral Peter Neffenger. He is President and on the board of directors of Smartmatic, and it just so happens, he's on Mr. Biden's presidential transition team that's gonna be non-existent because *we're fixing to overturn the results of the election in multiple states*. And President Trump won by not just hundreds of thousands of votes, but by millions of votes that were shifted by this software that was designed expressly for that purpose. We have sworn witness testimony of why the software was designed. It was designed to rig elections…It was exported internationally for profit by the people that are behind Smartmatic and Dominion. They did this on purpose, it was calculated, they've done it before. We have evidence from 2016 in California. *We have so much evidence, I feel like it's coming in through a fire hose*. (Compl. Ex. 5 (emphasizing the words that Powell challenges)).

Powell's removal of the surrounding statements (i.e., the "isolate and conquer method") violates defamation law. *See* 1 Law of Defamation § 4:16 (2d ed. 2026) (explaining that "the proper methodology" is to consider "the overall impression of [a] broadcast" and not statements "in isolation"). Powell conveyed several actionable statements about Smartmatic in this publication. (Compl. Ex. 5). She identified Smartmatic by name and falsely accused it of, *inter alia*, designing software to rig elections and using it manipulate "millions of votes" cast in the 2020 election. The sentences that Powell isolates contextualize and convey these messages. A reasonable viewer would reasonably understand that Powell was representing she had "so much evidence" to prove her allegations against Smartmatic that it felt like the evidence was "coming in through a firehose." Powell offers no grounds to dismiss Smartmatic's claims that arise from her publications.

## VI.     Smartmatic is Entitled to Punitive Damages.

The Court should reject Powell's request to "dismiss" (i.e., strike) Smartmatic's punitive damages. To obtain punitive damages in a defamation case, a plaintiff must allege and subsequently prove both actual malice and common law malice. *Prozeralik*, 82 N.Y.2d at 479-80; *accord* Mot. at 41 (citing *Carroll v. Trump*, 151 F.4th 50 (2d Cir. 2025). Common law malice addresses "the defendant's mental state in relation to the plaintiff and the motive in publishing the falsity"—specifically targeting the "outrageous conduct which is malicious, wanton, reckless, or

in willful disregard for another's rights," which punitive damages are designed to punish. *Id.* at 479-80; *accord Robinson v. Sarisky*, 535 A.2d 901, 906 (D.C. 1988) ("[P]unitive damages may be awarded for tortious acts aggravated by evil motive, actual malice, deliberate violence or oppression, or for outrageous conduct…in willful disregard for another's rights."). "The requisite state of mind need not (and usually cannot) be proven by direct evidence, but may be inferred from all the facts and circumstances of the case." *Calvetti v. Antcliff*, 346 F. Supp. 2d 92, 109 (D.D.C. 2004). "[I]f the allegations in the complaint, if proven, would provide a basis for recovery" of punitive damages, "th[e] Court must deny the motion." *Id.*

Powell's request to strike Smartmatic's punitive damages is premature and meritless. ***First***, Powell cites no authority to support eliminating Smartmatic's damages at the pleading stage. This Court has already denied Powell's motion to dismiss, allowing Smartmatic's claims to proceed. Whether Smartmatic can support its prayer for punitive damages with evidence is a question for the jury, not a motion for judgment on the pleadings. *See George v. Molson Coors Beverage Co. USA, LLC*, 2021 WL 9510688, at *2 (D.D.C. May 20, 2021) (refusing to strike plaintiff's punitive damages allegations, even though they "appear[ed] conclusory," because plaintiff's claims were "proceeding," "the requisite state of mind can be inferred, and punitive damages is a question best left to summary judgment or trial"); *Calvetti v. Antcliff*, 346 F. Supp. 2d 92, 109–10 (D.D.C. 2004) (same because the court "already concluded that the plaintiffs' claim of fraud, an intentional tort, survives" dismissal); *McQueen v. Woodstream Corp.*, 672 F. Supp. 2d 84, 90 (D.D.C. 2009) (same "given that discovery" was "not yet complete," so "the court [could] not conclude that the plaintiff will be unable to recover punitive damages"); *accord Kim v. DP Cap. LLC*, 2024 WL 4253168, at *7 (D.D.C. Sept. 20, 2024); *Henson v. W.H.H. Trice & Co.*, 466 F. Supp. 2d 187, 193 (D.D.C. 2006).

***Second***, Powell's conduct satisfies both actual and common law malice. As set forth above, Smartmatic has alleged specific facts to demonstrate how Powell published false, defamatory statements with actual malice. Smartmatic alleges facts with similar particularity to demonstrate Powell's "outrageous conduct," "evil motive," and "willful disregard for [Smartmatic's] rights." *Robinson*, 535 A.2d at 906. To begin with, Powell knowingly disseminated criminal accusations against Smartmatic without any supporting evidence. (Compl. ¶¶ 76, 113, 200–201, 203–213). The charges were historic: Powell accused Smartmatic of designing its technology to rig elections and deploying its technology for that purpose in the 2020 election. (*Id*. ¶¶ 148–149, 190–191). These false, defamatory statements, alone, warrant punitive damages, which serve to "vindicate" a defamation plaintiff and "deter [the defendant] or others similarly situated from issuing further deliberate lies…." *Secord v. Schlachter*, 568 F. Supp. 56, 58 (D.D.C. 1983).

Such an award is especially appropriate against Powell, who aimed to depict Smartmatic as an enemy of the Republic and herself as its defender to ingratiate herself with President Trump and his supporters. (Compl. ¶¶ 74–77, 361–366). Nor were Powell's defamatory statements isolated incidents; she repeatedly made to sow doubt in the integrity of the 2020 election. *See Morris v. Flaig*, 511 F. Supp. 2d 282, 310 (E.D.N.Y. 2007) (noting that courts "weigh[] the degree of reprehensibility of the wrongful act" by considering whether "the conduct involved repeated actions or was an isolated incident") (citing *State Farm Mut. Aut. Ins. Co. v. Campbell,* 538 U.S. 408, 419 (2003)). Powell also used national media to disseminate her defamatory message as widely as possible. (Compl. ¶¶ 115–121, 367). And, at all times, Powell has showed complete indifference to the harm she caused. She has neither retracted her false accusations nor apologized for the harm she has inflicted. (*Id*. ¶¶ 380, 391).

The totality of Smartmatic's allegations shows that Powell engaged in "outrageous conduct" with an "evil motive" and "willful disregard for [Smartmatic's] rights." *Robinson*, 535 A.2d at 906.   Her actions embody the type of conduct that punitive damages aim to redress. Smartmatic anticipates that discovery will yield additional evidence to support their award. *See McQueen*, 672 F. Supp. 2d at 90. Powell's request to strike them is baseless and should be denied.

## CONCLUSION

For the foregoing reasons, this Court should deny Defendant Sidney Powell's Motion for Judgment on the Pleadings.

Dated: May 22, 2026

/s/ *J. Erik Connolly*
J. Erik Connolly (D.C. Bar No. IL0099)
Nicole E. Wrigley (D.C. Bar No. IL0101)
Lee B. Muench (admitted *pro hac vice*)
BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: 312.212.4949
econnolly@beneschlaw.com
nwrigley@beneschlaw.com
lmuench@beneschlaw.com

*Attorneys for the Plaintiffs Smartmatic USA Corp., Smartmatic International Holding B.V., and SGO Corporation Limited*

44

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of May, 2026, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which I understand to have served counsel for the Defendant.

/s/ *Lee B. Muench*

Lee B. Muench