**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SMARTMATIC USA CORP., | ) | |
| SMARTMATIC INT'L HOLDING | ) | |
| B.V., and SGO CORP. LTD., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION FILE |
| v. | ) | NO.: 21-CV-02995-CJN |
| | ) | |
| SIDNEY POWELL, | ) | |
| | ) | |
| Defendant. | ) | |

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANT SIDNEY POWELL'S MOTION FOR JUDGMENT ON THE PLEADINGS

## INTRODUCTION

Smartmatic's Opposition confirms what Ms. Powell's Motion established: the Complaint cannot satisfy the legal standards required to sustain the claims alleged. Rather than grapple with the discrete legal issues this Court identified as ripe for resolution, Smartmatic asks the Court to ignore binding precedent, defer every question to discovery and trial, and treat its conclusory allegations as established fact. Most fundamentally, Smartmatic is a limited purpose public figure that has failed to plead actual malice, and its Complaint does not plausibly allege that Ms. Powell's handful of media appearances, rather than the massive, two-decade chorus of identical criticism from thousands of other speakers, caused the multi-billion-dollar injury it claims.

This Court's February 9, 2026 Order identified several discrete legal issues now ripe for resolution, including the "of and concerning" inquiry, public figure status, proximate causation, special damages, and non-actionable statements. (ECF 58). Smartmatic's Opposition addresses none with the rigor and specificity the Court's inquiry demands. (ECF 76). As a preliminary matter, neither this Court's denial of Ms. Powell's Motion to Dismiss nor any decision in *US Dominion,*

1

*Inc. v. Powell*, 554 F. Supp. 3d 42 (D.D.C. 2021), forecloses the issues now presented. The law of the case doctrine applies only where the very point has been decided between the same parties in the same lawsuit. S*ee Pepper v. United States*, 562 U.S. 476, 506 (2011) and *Cobell v. Salazar*, 679 F.3d 909, 916-17 (D.C. Cir. 2012) ("the *same* issue presented a second time in the *same* case in the *same court* should lead to the *same result*.") (quoting *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (emphasis in original). Here, Ms. Powell's Motion presents issues this Court expressly reserved for further analysis. (ECF 69-1). *Dominion* involved different plaintiffs, a different complaint, different factual record, and different arguments.

At bottom, this case presents a simple question: whether the First Amendment permits a multi-billion-dollar corporation that has been the target of identical public criticism for twenty years to extract billions of dollars from a single citizen who, for a few weeks in late 2020, said the same things that thousands of others had been saying for decades. The answer, on these pleadings, is no. Smartmatic's contradictory positions confirm this conclusion: it accuses Ms. Powell of seeking "reconsideration" on the "of and concerning" issue while asking the Court to defer the public figure question to summary judgment; invokes defamation *per se* to attempt to avoid having to plausibly allege causation while conceding the need to allege special damages for injurious falsehood; and insists the Court evaluate statements only "as a whole" while refusing the statement-by-statement analysis the Court requested.

## ARGUMENT

**I.    THE COURT SHOULD DISMISS CLAIMS BY SMARTMATIC INTERNATIONAL AND SGO BECAUSE POWELL'S STATEMENTS WERE NOT "OF AND CONCERNING" THOSE ENTITIES.**

Ms. Powell is mindful that on a Rule 12(c) motion the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the non-movant's favor. *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *But this standard has limits*. The Court need not accept "legal conclusion[s] couched as factual allegation[s]," *Iqbal*, 556 U.S. at 678, nor must it draw inferences that are merely possible rather than plausible. *Id.* at 679. And the standard does not relieve the plaintiff of its obligation to plead every element of its claim with factual specificity. The Complaint's deficiencies are not matters of inference; they are matters of missing facts. No amount of favorable inference-drawing can supply the requisite factual allegations the Complaint omits, including: (1) specific facts supporting the conclusory allegation that Ms. Powell *subjectively doubted* the truth of statements major media outlets and others had published during the prior twenty years, and (2) specific customers, contracts, and opportunities Ms. Powell's statements caused Smartmatic to lose.

Smartmatic accuses Ms. Powell of filing an "improper motion to reconsider." (ECF 76 at 6), This is incorrect. The Motion does not challenge the Court's finding that the parent companies suffered "independent injuries"; rather, it presents the statement-by-statement "of and concerning" analysis that the Court's own Order acknowledged warranted further analysis that the Court did not undertake. (ECF 58 at 4-7). Smartmatic's attempt to invoke Rule 60(b) as a procedural barrier is equally unavailing. (ECF 76 at 6). A Rule 12(c) motion is a proper vehicle for raising issues not fully resolved on a motion to dismiss, and this Court itself flagged the "of and concerning" issue as warranting further analysis. (ECF 58 at 4-7).

On the merits, the Opposition contends that Powell's publications must be evaluated "as a whole," citing *Afro-Am. Pub. Co. v. Jaffe*, 366 F.2d 649, 655 (D.C. Cir. 1966), but that principle addresses how to interpret a statement's defamatory meaning not whether a particular statement references a particular plaintiff. The "of and concerning" requirement is a constitutional limitation demanding specificity as to each plaintiff. *Rosenblatt v. Baer*, 383 U.S. 75, 79–83 (1966). Ms.

Powell's statements concerned Smartmatic's U.S. operations, the province of Smartmatic USA Corp., not Dutch or British holding companies with no involvement in U.S. elections.

More specifically, Smartmatic advances three theories, none of which withstands scrutiny. As a threshold matter, not a single statement names Smartmatic International Holding B.V. or SGO Corporation Limited. Every statement refers generically to "Smartmatic" in the context of U.S. election technology, the exclusive province of Smartmatic USA Corp. Had Ms. Powell said, for example, "the Dutch holding company that controls Smartmatic directed the rigging from overseas" or "SGO Corporation in London ordered its subsidiaries to manipulate the vote," those statements would be "of and concerning" the parent entities. But she said nothing of the kind. She spoke of "Smartmatic" and its software in the context of the U.S. election, language a reasonable listener would understand to refer to the U.S. operating company that actually deployed that software.

First, Smartmatic argues that individuals "understood the defamatory statements about 'Smartmatic' to be about them." (ECF 76 at 7-9). But the test is whether a "reasonable listener" would understand the statements to refer to the specific plaintiff, *Caudle v. Thomason*, 942 F. Supp. 635, 638 (D.D.C. 1996), and Ms. Powell's statements concerned software deployment in the 2020 U.S. election, a function performed exclusively by Smartmatic USA Corp.

Second, Smartmatic contends all three Plaintiffs "make, own and sell Smartmatic Voting Machines and Software." (ECF 76 at 9-10). But the cases Smartmatic cites involved plaintiffs that were direct manufacturers of the specific product at issue. Here, Smartmatic International and SGO are holding companies, and a parent corporation's activities cannot be imputed from its subsidiary without piercing the corporate veil. *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 474-75 (2003); *see also Norman v. Borison*, 994 A.2d 1019, 1029 (Md. App. 2010) (holding that the owner and

4

operator of a business did not have standing to bring defamation claim for alleged defamation against the business where he did not identify any defamatory statements made about him individually).

Third, Smartmatic invokes the "small group" doctrine. (ECF 76 at 10-11). But that doctrine involves individuals within an identifiable, limited cohort, *Vasquez v. Whole Foods Mkt., Inc.*, 302 F. Supp. 3d 36, 66 (D.D.C. 2018), not every entity in a corporate family sharing a brand name. Indeed, accepting this theory would eliminate the "of and concerning" requirement in any case involving a corporate group.

Finally, Smartmatic's incorporation-by-reference argument does not save its position. (ECF 76 at 11). Incorporating general background allegations does not transform cause-of-action-specific allegations about U.S. operations into claims "of and concerning" foreign holding companies.

## II.    SMARTMATIC IS A LIMITED PURPOSE PUBLIC FIGURE AND THE COMPLAINT FAILS TO PLEAD ACTUAL MALICE.

### A.  *Smartmatic Is a Limited Purpose Public Figure*

Smartmatic advances three arguments against public figure status, each of which fails.

### 1.  The Pleading-Stage Determination Is Appropriate.

Smartmatic urges deferral to summary judgment, citing non-binding, out-of-circuit decisions. (ECF 76 at 12-13). But the D.C. Court of Appeals expressly rejected the reasoning Smartmatic depends on. In *Fridman v. Orbis Business Intelligence Ltd.*, 229 A.3d 494, 505–06 (D.C. 2020) ("*Orbis*"), the court considered *Fridman v. Bean LLC*, 2019 WL 231751 (D.D.C. Jan. 15, 2019), and *MiMedx Grp., Inc. v. DBW Partners, LLC*, 2018 WL 4681005 (D.D.C. Sept. 28, 2018), which held that public figure status could not be resolved at the pleading stage. The D.C. Court of Appeals held those unpublished opinions were not binding and their reasoning was

"inapplicable" where early resolution was warranted, because deferral "would prolong the litigation process and render the special motion to dismiss ineffective." *Id.* at 506. Courts in this District have routinely resolved the public figure question at the pleading stage, and the Delaware Superior Court did so twice in cases involving Smartmatic arising from the same controversy. *See Smartmatic USA Corp. v. Newsmax Media, Inc.*, 2023 WL 1525024 (Del. Super. Ct. Feb. 3, 2023), 2024 WL 4165101 (Del. Super. Ct. Sept. 12, 2024). In *Orbis*, the court resolved public figure status at an early stage, finding three Russian businessmen to be limited-purpose public figures based on pre-existing prominence, closely analogous to Smartmatic's pre-existing prominence in electronic election technology and related election controversies. 229 A.3d at 507–09. The independent judgment rule reinforces early resolution: appellate courts exercise *independent judgment* on actual malice rather than deferring to the factfinder, *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 499 (1984), and this Court's own Order identified the public figure question as ripe for resolution on a Rule 12(c) motion.

### 2. The Public Controversy Is Properly Defined.

Smartmatic characterizes the controversy narrowly as "whether 'the 2020 U.S. election [was] rigged and stolen by Smartmatic' despite its simultaneous claim that Ms. Powell's statements caused billions in lost election technology business overseas. (ECF 76 at 13-14). In fact, the controversy concerns the integrity and security of electronic voting systems, a topic of public debate for nearly two decades both in the U.S. and abroad. While ignored in its opposition papers, for at least fifteen years, Smartmatic was the target of intense criticism for its ties to the Venezuelan government and alleged election rigging. (ECF 69-1 at 13, 18, 22).

Notably, this controversy included claims that Smartmatic had rigged U.S. elections (*See, e.g.*, ECF 69, Exhibit C-21 and C-22). Thus, the specific question Smartmatic insists arose only in

6

November 2020 – whether electronic voting software linked to Smartmatic was used to rig a United States election – was the subject of public discussion years before Ms. Powell spoke. For example, during 2016 and 2017 members of the public posted publicly on Twitter that Smartmatic software or machines "changed millions of votes to Hillary [Clinton]," condemned that result as "#voter fraud," and asserted that George Soros was "CONTROLLING VOTE WITH 16 STATES USING SMARTMATIC VOTING MACHINES." (*See* ECF 69, Exhibit C-21 and C-22)[1] Indeed, the Delaware Superior Court found a "pre-existing public controversy… regarding the accuracy and integrity of the [2020] Election, including [Smartmatic's] voting software." *Smartmatic USA,* 2023 WL 1525024 at *13.

Ms. Powell has not offered these statements for their truth, she offers them only for the fact that they existed, demonstrating that the public was already debating the question of whether Smartmatic software or machines rigged elections. *See Passantino v. Weissman*, 752 F. Supp. 3d 168, 173 (D.D.C. 2024) (*See also* ECF 69, Exhibit A, B and C).

### 3. Smartmatic Voluntarily Injected Itself Into the Controversy.

Smartmatic contends it "was minding its own business before Powell threw it into a controversy," invoking *Hutchinson v. Proxmire*, 443 U.S. 111 (1979), *Wolston v. Reader's Digest Ass'n*, 443 U.S. 157 (1979), and *Time, Inc. v. Firestone*, 424 U.S. 448 (1976); (*see* ECF 76 at 140). But each is factually inapposite. *Hutchinson* involved a research scientist whose only connection to public controversy was that a senator publicly criticized his government-funded research, a controversy manufactured entirely by the defendant. 443 U.S. at 134–36. *Wolston* involved a private individual dragged into a spy investigation who "never discussed this matter with the press"

---

[1] Exhibit C is a non-exhaustive compilation of public tweets. If the Court believes that additional examples of public statements accusing Smartmatic of fraud in connection with U.S. elections would be helpful in its analysis, Ms. Powell would be happy to provide such information.

and made no "attempt to influence the resolution." 443 U.S. at 166–68. And *Firestone* involved a socialite whose divorce proceeding was newsworthy but who had not "assumed any role of especial prominence in the affairs of society" beyond being involved in litigation. 424 U.S. at 453. None of these plaintiffs bore any resemblance to Smartmatic, a multinational election technology company that voluntarily bid on government contracts to supply voting systems in the U.S. and abroad, operated in dozens of countries, purchased one of the largest U.S. election technology firms, and was the subject of Congressional scrutiny and international media attention for nearly two decades before Ms. Powell spoke. (ECF 69-1 at 13, 18, 22). Smartmatic voluntarily purchased Sequoia Voting Systems, licensed its software to Dominion, publicly conceded that voter turnout results had been manipulated in a 2017 Venezuelan national election in which Smartmatic software tabulated votes, and contracted to provide voting systems for the 2020 U.S. presidential election in Los Angeles County. *Id*. at 22-26. By voluntarily assuming these roles, Smartmatic assumed "special prominence in the resolution of public questions" regarding whether electronic voting systems accurately tabulated votes. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323,351 (1974).

Examples of publicly published media and tweets pre-dating Ms. Powell's at-issue statements were annexed to her moving papers (ECF 69, Exhibits A, B and C). Ms. Powell has requested that the Court take judicial notice of the existence of items because, in addition to crippling Smartmatic's claim that it has plausibly alleged proximate causation, their existence confirms what *Waldbaum* requires: that "persons actually were discussing some specific question," *Waldbaum v. Fairchild Publications, Inc.* 627 F.2d 1287, 1297 (D.C. Cir. 1980).

Smartmatic's argument that Powell "identifies no press release" about the election that preceded her statements similarly falls flat. (ECF 76 at 17). *Waldbaum* does not require press releases about the *specific event at issue*; it requires "special prominence" in the controversy.

8

*Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287,1297 (D.C. Cir. 1980). Smartmatic achieved that prominence by providing election technology to governments worldwide, not by commenting on the 2020 election. The *Orbis* plaintiffs likewise achieved prominence through their *positions*, not press releases. 229 A.3d at 507–09.

Smartmatic further cites *Salem Media Grp. v. Awan*, 301 A.3d 633 (D.C. 2023), and *Van der Stelt v. Georgetown Univ.*, 774 F. Supp. 3d 90 (D.D.C. 2025), but those cases involved individuals with no pre-existing prominence. Public figure status depends on pre-existing prominence, not post-statement conduct. Smartmatic's status derives pre-existing prominence from its decades-long voluntary participation in the election technology market, its acquisition of Sequoia, its high-profile contract with Los Angeles County, its worldwide involvement in elections and election controversies, including in Venezuela, the Philippines, and Argentina, and the extensive public scrutiny it invited by performing a government function. As the Delaware court found, because "Smartmatic's customers are governments," it necessarily "understands it could be involved in a national public controversy." *Smartmatic USA,* \2024 WL 4165101, at *14. Smartmatic also cites *Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 288 (S.D.N.Y. 2016), for the proposition that having "millions of customers" and "worldwide sales" does not automatically confer public figure status. (ECF 76 at 14-17). But *Enigma* involved a computer security company whose product sales were purely commercial and unrelated to any government function. Smartmatic, by contrast, does not merely sell products to private consumers; it performs a quintessential government function by creating and operating the machinery of democratic elections. That distinction is dispositive. As the Delaware court found, because "Smartmatic's customers are governments" and it "must place a bid to obtain a contract with the government to offer its services," Smartmatic necessarily "understands it could be

involved in a national public controversy if its services become a matter of public concern." *Smartmatic USA Corp.*, 2024 WL at *14.

Smartmatic also wrongly asserts that Ms. Powell's brief "misrepresents" *Lohrenz v. Donnelly*, 350 F.3d 1272 (D.C. 2003). The case was properly cited in support of Ms. Powell's argument that limited purpose public figure status may be imposed upon plaintiffs who did not seek the spotlight. (ECF 69-1 at 15). In *Lohrenz*, limited purpose public figure status was applied to a woman serving in the military in a combat position with respect to a controversy involving women in combat roles. Such public figure status should equally apply to an international election technology supplier in a controversy over whether electronic voting machines flip votes. Even if neither plaintiff intended to seek the spotlight, limited purpose public figure status was (and is) appropriate because of the plaintiff's obvious relationship to the controversy.

Smartmatic's reliance on the New York Appellate Division's decision declining to find Smartmatic a limited purpose public figure in the *Fox* litigation does not control. (ECF 76 at 16-17). That court applied a different legal framework, and the Delaware Superior Court, applying a test functionally identical to the D.C. Circuit's *Waldbaum* analysis, reached the opposite conclusion on two separate occasions. *See Smartmatic USA,* 2023 WL 1525024 at *12-14, 2024 WL 4165101 at *13-14. This Court should apply *Waldbaum* independently and reach the conclusion the record compels: Smartmatic is a limited purpose public figure.

### B. *The Complaint Fails to Adequately Plead Actual Malice.*

Because Smartmatic is a limited purpose public figure, it must plead facts sufficient to establish Ms. Powell made the allegedly defamatory statements with actual malice, that is, "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co.*, 376 U.S. at 279–80. The Complaint fails to do so.

10

Smartmatic asserts the Complaint includes "160 paragraphs" supporting actual malice, citing *Palin v. New York Times Co.*, 940 F.3d 804 (2d Cir. 2019), *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657 (1989), and *Competitive Enterprise Institute v. Mann*, 150 A.3d 1213 (D.C. 2016).  But the plaintiff in *Palin* alleged facts which supported a plausible inference that the defendant (whose reporter allegedly edited previous articles that contradicted his statements, harbored personal hostility towards the plaintiff, and included in his article a hyperlink to a different article that contradicted his statements) recklessly disregarded the truth, 940 F.3d at 813-14, an inference that Smartmatic's Complaint against Ms. Powell does not support. *Harte-Hanks* found actual malice because the defendant deliberately refused to interview a key witness, 491 U.S. at 692, and the Complaint identifies no equivalent witness Ms. Powell deliberately avoided; and *Mann* addressed evidentiary sufficiency in an Anti-SLAPP case, not *Iqbal* pleading. Volume is not a substitute for substance. The Complaint's actual malice allegations are conclusory recitations of the elements, textbook examples of legal conclusions insufficient as a matter of law. Such pleading deficiencies cannot be excused.

Smartmatic identifies four categories of actual malice allegations: that Powell (a) had no support, (b) avoided the truth, (c) had reasons to doubt her sources, and (d) acted with ulterior motives. Each is inadequate. As a threshold matter, the Court should confront two issues that pervade all four categories.

First, Smartmatic contends Ms. Powell acknowledged her allegations were fantastical and that courts in *King v. Whitmer* and *Smartmatic v. Fox* cited her purported concession as evidence of actual malice. (ECF 76 at 19). But this argument takes litigation rhetoric out of context. Ms. Powell's legal characterization of her statements in those proceedings was made in support of a constitutional defense: that her statements were protected opinion. A litigant's legal argument

about the *constitutional status* of her speech is not an admission of subjective doubt about its *truth*. Every defamation defendant who argues her statements are non-actionable opinion necessarily characterizes those statements in terms that distinguish them from verified factual assertions; that is the nature of the defense, not evidence of actual malice. Actual malice requires proof of the speaker's state of mind *when she spoke*, not how her lawyers later characterized the statements to invoke constitutional protections. *See Herbert v. Lando*, 441 U.S. 153, 160 (1979). Smartmatic's attempt to use a litigation defense as evidence of the very fault the defense was designed to preclude is logically circular and legally unsound. Nor does this argument create any tension with Ms. Powell's reliance on identified sources. That Ms. Powell's lawyers later characterized the resulting allegations in terms designed to invoke constitutional protection does not undermine the factual record of source reliance; it reflects the distinct legal posture of a different proceeding in which the constitutional status of the speech, not the speaker's subjective belief, was at issue.

Even if the Court were to consider the characterization on its merits rather than as litigation rhetoric, the word "fantastical" does not establish subjective doubt about truth. A speaker may genuinely believe extraordinary claims while recognizing that others will find them difficult to credit. The actual malice standard asks whether *the speaker* doubted the truth, not whether *others* would find the claims surprising. Ms. Powell's use of "fantastical" in a legal brief filed months after her statements, in a different case, before a different court, and in support of a different legal argument, cannot retroactively establish her state of mind at the time of publication.

Second, actual malice must be assessed at the time of publication. *New York Times Co.*, 376 U.S. at 280. Much of Smartmatic's Opposition relies on post-publication knowledge: that courts subsequently rejected similar election fraud claims, that Ms. Powell's sources were later characterized as unreliable, and that investigations did not substantiate the assertions. But post-

publication knowledge is categorically irrelevant to the actual malice inquiry, which asks only what the speaker subjectively believed at the time she spoke. The Complaint does not allege that any court, agency, or authoritative body had rejected these claims *before* Ms. Powell's statements in November 2020. The Complaint's allegations must be evaluated against this temporal limitation, and when they are, the actual malice case collapses.

Similarly, Smartmatic's invocation of *St. Amant*'s "inherently improbable" standard, 390 U.S. at 732 (ECF 76 at 18-19), fails because allegations of Venezuelan government ties, election-rigging technology, and fraudulent election results are not "inherently improbable" when the same allegations had been published for nearly two decades by The New York Times, The Washington Post, CNN, and Reuters, and when Smartmatic's own president publicly acknowledged voter turnout results had been "manipulated" in a Venezuelan election conducted using Smartmatic technology. (ECF 69-1 at 22, 24, 26). A statement cannot be "inherently improbable" when it has been reported by credible news organizations and stated by others for twenty years. The "inherently improbable" category in *St. Amant* envisions claims so outlandish on their face that no reasonable person would credit them, not claims that mirror what major media outlets and others have reported during prior decades.

As to the first, the Complaint concedes Ms. Powell repeatedly stated she had evidence supporting her claims, including affidavits, witness statements, and expert reports. Reliance on sources, even sources that later prove unreliable, negates actual malice where the defendant had no reason to doubt them. *See Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 597 (D.C. Cir. 2016); *Fridman v. Orbis*, 229 A.3d at 510 ("reliance upon a single source, even an unverified and anonymous one, will amount to actual malice only if the defendant had obvious reason to doubt the statement's veracity") (additional citations and quotations omitted). In *Orbis*, the court found

no actual malice despite evidence that the researcher relied on anonymous sources, that the dossier might be only "70–90% accurate," and that the researcher was hired by political opponents, circumstances far more suggestive than anything here. *Id.* at 510–11. The Complaint admits Ms. Powell stated during interviews that she was reading from an affidavit of a military officer with relevant knowledge concerning Smartmatic's design. This reliance on identified sources belies any inference of actual malice.

As to the second, the "purposeful avoidance" theory conflates negligence with actual malice. "[F]ailure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard." *Harte-Hanks*, 491 U.S. at 688 (additional citations omitted). The standard requires proof the defendant "in fact entertained serious doubts as to the truth of his publication." *St. Amant*, 390 U.S. at 731. As *Orbis* emphasized, "[m]erely showing that the defendant should have known better" does not suffice, nor can a "[biased] motive ... provide a sufficient basis for finding actual malice." 229 A.3d at 509-10 (n. 6 citing *Harte-Hanks*, 491 U.S. at 665).

As to the third, characterizing evidence as deficient after the fact is not the same as demonstrating the speaker knew it was deficient at the time of publication. Smartmatic's argument that Powell "fabricated" her allegations is itself conclusory. It also is belied by the existence of the chorus of prior voices who had criticized Smartmatic and its electronic voting machine software for decades prior to Ms. Powell's first statement (*See* ECF 69, Exhibit A, B and C) and ignores the prominent non-party speakers who stated that the 2020 election was rigged prior to Ms. Powell's first statement. As to the fourth, motive evidence alone does not establish actual malice. *See Harte-Hanks*, 491 U.S. at 664–68.

14

Smartmatic may argue that even if each category is individually insufficient, the cumulative weight of 160 paragraphs creates a plausible inference of actual malice. But *Iqbal* requires more than volume; it requires that the factual allegations, stripped of conclusory labels, plausibly support the specific mental state required. *Iqbal*, 556 U.S. at 678. Here, the Complaint's factual core reduces to four propositions: (1) Ms. Powell relied on sources, (2) those sources later proved unreliable, (3) she had a financial motive to speak, and (4) she did not independently verify her claims before publication. None of these, individually or collectively, establishes that Ms. Powell *subjectively doubted* the truth of her statements when she made them. They establish, at most, that she *should have* doubted them, which is a negligence standard, not actual malice. The distinction between "should have known" and "actually knew or suspected" is the entire point of the actual malice doctrine, and no amount of repetition across 160 paragraphs can transform the former into the latter.

Moreover, the fifteen-year history of identical criticisms of Smartmatic independently defeats actual malice. Ms. Powell's statements broke no new ground; they echoed what major media sources and others had reported or stated during the previous two decades. This extensive public record negates any inference of actual malice.

## C. The Express Malice/Qualified Privilege Argument Stands.

Smartmatic argues Florida's qualified privilege does not apply because D.C. law governs. But even assuming D.C. law applies, Smartmatic still bears the burden of pleading actual malice with specificity, and the Complaint fails to do so. The bare allegation that "Ms. Powell also acted with ill will towards Smartmatic" is a perfunctory recitation of an element with no factual basis. (Compl. ¶ 202).

15

### III.   SMARTMATIC HAS NOT PLAUSIBLY ALLEGED PROXIMATE CAUSATION.

Smartmatic advances three causation arguments, none of which rescue the Complaint.

#### A.   *The Defamation Per Se Doctrine Does Not Excuse Smartmatic's Failure to Allege Causation.*

Smartmatic contends that because Powell's statements were defamatory *per se*, "Smartmatic need not allege causation because damages are presumed." (ECF 76 at 25). But this conflates the presumption of damages with proximate causation. Defamation *per se* relieves a plaintiff of proving the quantum of harm; it does not excuse the plaintiff from demonstrating a causal connection between the defendant's statements and the claimed injuries. Smartmatic cites *US Dominion, Inc. v. Powell*, 554 F. Supp. 3d 42 (D.D.C. 2021), but *Dominion* involved a company whose entire business was U.S. election technology, making the causation allegation more straightforward. Here, Ms. Powell's five media appearances repeated allegations that thousands of other speakers had already been making for nearly two decades. The question is whether the Complaint plausibly alleges that *Ms. Powell's* statements, rather than the massive international pre-existing chorus of identical criticism, caused the multi-billion-dollar injury claimed. *Dominion* did not address that question.

#### B.   *The Complaint's Conclusory Causation Allegations Are Insufficient.*

Smartmatic argues it has "amply" alleged causation because Powell's statements were "read or watched by a significant, world-wide audience base." (ECF 76 at 33). But the Complaint's allegation that Ms. Powell's five media appearances "were a proximate and substantial cause" of Smartmatic's name becoming "synonymous with election fraud" is precisely the kind of conclusory contention that cannot survive scrutiny. (Compl. ¶ 368). For at least fifteen years prior, Smartmatic was the target of intense criticism for its Venezuelan ties, election-rigging technology,

16

and alleged rigging of elections. (*See* ECF 69, Exhibits A, B and C). Smartmatic wrongly ignores the existence of the non-exhaustive collection of publicly published media and tweets annexed to the moving papers, even ignoring tweets that allege the exact vote-flipping mechanism- Smartmatic machines that "changed millions of votes" – years before Ms. Powell's statements. (*See*, e.g., ECF 69, Exhibit C-21 and C-22). The rigor to be employed by this Court demands otherwise. Ms. Powell's remarks were a brief refrain amid a huge chorus of substantively identical criticism. Smartmatic cannot ignore the tens of thousands of speakers who voiced the same contentions, lump together a selected few American speakers who commented following the 2020 election, and then seek billions of dollars in damages from Ms. Powell alone.

Indeed, Smartmatic's own factual narrative defeats its causation theory. Smartmatic emphasizes that it was a commercially thriving enterprise before Powell's statements, winning major government contracts including the massive Los Angeles County contract, all *after* decades of the very same criticism Ms. Powell echoed. This fact cuts decisively against Smartmatic, not in its favor. If Smartmatic's reputation survived nearly twenty years of substantively identical criticism from the nation's leading newspapers, Congressional investigators, and tens of thousands of social media users without suffering the catastrophic business losses it now claims, the Complaint's conclusory assertion that Ms. Powell's handful of cable news appearances caused billions in damages is facially implausible. Smartmatic cannot simultaneously argue that two decades of the same criticism left its business thriving *and* that Ms. Powell's brief repetition of that criticism destroyed it. The internal contradiction in Smartmatic's own narrative is fatal to its causation theory.

Smartmatic's reliance on the "substantial factor" causation standard, arguing that "[w]here the acts of two or more persons 'cause the same harm,' each act 'that played a substantial part in

the harm is a cause,'" does not save its position. (ECF 76 at 34). Smartmatic cites no D.C. Circuit or Supreme Court authority applying the substantial factor test to excuse the pleading of causation in a defamation case involving decades of substantively identical prior criticism by thousands of other speakers. The cases applying the substantial factor test involve concurrent tortfeasors acting in close temporal proximity to produce an indivisible injury, not situations where one speaker's handful of cable news appearances merely echoes what thousands of others have been saying for nearly twenty years.

Smartmatic's implicit joint tortfeasor theory is equally unavailing. Joint tortfeasor liability under the Restatement (Second) of Torts § 876 requires either concerted action, a common plan, or substantial assistance, none of which the Complaint alleges as between Ms. Powell and the thousands of prior critics who, for nearly two decades, made identical accusations about Smartmatic's Venezuelan ties and election-rigging technology. For example, Ms. Powell did not coordinate with The New York Times, The Washington Post, the U.S. Congress, or the tens of thousands of social media users who voiced the same criticisms. Independent speakers who repeat common public criticisms are not joint tortfeasors, and the Complaint's effort to lump Ms. Powell together with a handful of other post-2020 speakers cannot manufacture the concerted action that joint liability requires.

The substantial factor test likewise does not eliminate the requirement of plausible pleading. As the Supreme Court has held, plaintiffs must demonstrate that their claimed damages are attributable to the defendant's conduct, not to some other cause. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) (requiring that damages correspond to a viable theory of injury). The Complaint does not identify a single customer, contract, or business opportunity lost because of

18

something Ms. Powell specifically said, as opposed to something said by President Trump, Rudy Giuliani, Fox News, or thousands of other speakers, often years earlier.

Smartmatic may respond that no court has dismissed defamation claims on this causation theory at the pleading stage. But no prior defamation case has presented these facts: a plaintiff seeking billions from a single speaker whose five television appearances merely repeated what thousands of other speakers had been saying for nearly two decades, while the plaintiff simultaneously admits its business thrived throughout that entire period of identical criticism. The absence of precedent reflects the absence of prior plaintiffs audacious enough to advance this theory, not the absence of legal authority to reject it. The requirement of proximate causation is not a novel invention; it is a bedrock element of every tort claim. And *Iqbal* requires plausible pleading of every element, including causation. 556 U.S. at 678. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Twombly*, 550 U.S. at 557. The Complaint's failure to plausibly allege that Ms. Powell's statements, rather than the massive pre-existing chorus, caused the claimed injury is a straightforward application of *Iqbal* to the causation element, not a novel doctrinal innovation.

### C. *The Libel-Proof Doctrine Applies.*

The libel-proof doctrine compels dismissal because Smartmatic's reputation regarding Venezuelan government ties and election rigging cannot be further damaged by Ms. Powell's statements as a matter of law. The doctrine asks whether the plaintiff's "reputation with respect to a specific subject" was "so badly tarnished" that it "cannot be further injured by allegedly false statements on that subject." *Guccione v. Hustler Mag., Inc.*, 800 F.2d 298, 303 (2d Cir. 1986).

Here, two decades of sustained criticism in the nation's most prominent newspapers, Congressional scrutiny, government investigations, and Smartmatic's own president's admission that voter turnout results were "manipulated" using Smartmatic technology, have thoroughly impugned Smartmatic's reputation on these precise topics. Smartmatic's own admission that it was "a thriving, multi-billion-dollar enterprise," (ECF 76 at 30), that continued winning contracts *despite* this criticism confirms the doctrine applies: if Smartmatic's reputation survived twenty years of identical criticism, Ms. Powell's marginal contribution could not have caused the catastrophic harm alleged.

To be clear, the libel-proof doctrine and the causation argument advanced in Section III (B) are complementary, not contradictory. Both rest on the same factual premise: that two decades of substantively identical criticism preceded Ms. Powell's statements. The causation argument holds that because Smartmatic *thrived despite* that criticism, Ms. Powell's repetition of it could not plausibly have caused the catastrophic *business* harm alleged. The libel-proof argument holds that because Smartmatic's reputation *on the specific subject of Venezuelan ties and election rigging* was already severely tarnished by that same criticism, Ms. Powell's repetition could not have caused incremental *reputational* harm. These are logically consistent: a company can remain commercially viable while having a badly damaged reputation on a specific topic, just as a politician can win elections while having a terrible reputation for honesty. Smartmatic may have continued winning contracts for reasons unrelated to its reputation on these topics (price, technical capability, incumbency), while its reputation regarding Venezuelan ties and election integrity was already in tatters.

Smartmatic cites *Arpaio v. Zucker*, 414 F. Supp. 3d 84, 91 (D.D.C. 2019), but *Arpaio* involved a factually *distinct* false claim (imprisonment versus contempt). Here, there is no daylight

between the subject matter of the prior criticism and Ms. Powell's statements. Smartmatic also invokes *Charles Atlas, Ltd. v. Time-Life Books, Inc.*, 570 F. Supp. 150, 154 (S.D.N.Y. 1983), for the proposition that "earlier publications" saying "the same bad things" do not make a plaintiff libel-proof. (ECF 76 at 32). But *Charles Atlas* is inapposite: it involved a handful of magazine articles about a single advertiser's marketing claims, not two decades of sustained international coverage by dozens of major media outlets, Congressional investigations, government enforcement actions, and the plaintiff's own president's public admission of voter turnout manipulation. The *volume, duration, and breadth* of the prior criticism here, spanning at least 29 identified publications from outlets with combined readerships in the hundreds of millions, plus Congressional correspondence and government enforcement, is categorically different from the limited prior coverage in *Charles Atlas*. *Carpenter v. King*, 792 F. Supp. 2d 29, 34 (D.D.C. 2011), describes the doctrine's most *common* application, not its exclusive scope. The decades of media scrutiny, social media criticism, and government investigation documented in judicially noticeable exhibits, including Congressional scrutiny, government filings, and presidential recommendations for Smartmatic's removal, go far beyond typical cases.

Smartmatic erroneously argues that a prior criminal conviction is required to invoke the libel proof doctrine (ECF 76 at2).[2] Courts have held otherwise. *See, e.g.*, *Guccione,* 800 F.2d at 303 (citing *Wynberg v. National Enquirer, Inc.* 564 F. Supp. 924, 928-29 (C.D. Cal. 1982)). The Second Circuit rejected Guccione's argument that the libel-proof doctrine may not be applied to him with respect to the subject of adultery because he was never convicted of adultery. *Id*. at 304. In *Wynberg,* the *National Enquirer* published an article stating that the plaintiff had used his

---

[2] Smartmatic argues that Powell's argument fails because "Powell cannot identify any conviction or admission by Smartmatic to support her claim that its reputation was already 'tarnished'…."

relationship with Elizabeth Taylor for financial gain. 564 F. Supp. at 925. In finding Wynberg libel-proof, the District Court first noted the plaintiff's string of convictions for crimes that damaged his reputation for his treatment of women in general. *Id.* at 928. The Court then relied equally on Wynberg's "specific reputation for taking financial advantage of Elizabeth Taylor," citing numerous articles, printed prior to the *National Enquirer* piece, that ascribed to Wynberg a profit motive in his relationship with Taylor. *Id.* at 928-29. No criminal convictions related to Wynberg's dealings with Taylor.

## IV.   THE INJURIOUS FALSEHOOD CLAIMS FAIL FOR LACK OF ADEQUATELY PLEADED SPECIAL DAMAGES.

Smartmatic asserts the Court already "rejected" Powell's challenge to its special damages allegations. (ECF 76 at 1). But the Motion raises issues the Court did not address: whether those damages satisfy the heightened particularity requirement for injurious falsehood, and whether the Complaint establishes that Smartmatic incurred expenses because of *Ms. Powell's* statements.

In *Passantino v. Weissman*, 752 F. Supp. 3d 168, 182 (D.D.C. 2024), this Court held that injurious falsehood claims must state damages with particularity and specify facts showing they were the natural and direct result of the defendant's conduct. The Complaint does not allege Smartmatic spent $400,000 on public relations because of something specific Ms. Powell said, as opposed to something said by President Trump, Rudy Giuliani, Fox News, or thousands of other speakers on Twitter. Nor does the Complaint specify *when* these expenses were incurred relative to Ms. Powell's statements versus statements by other speakers. President Trump began making allegations about election fraud on November 5, 2020; Rudy Giuliani held press conferences on the topic beginning November 7, 2020; and Fox News hosts broadcast allegations throughout November and December 2020. Ms. Powell's first statement at issue was made on November 14, 2020. If Smartmatic retained crisis public relations firms or cybersecurity consultants *before* Ms.

22

Powell's first statement, in response to the earlier torrent of criticism from others, those expenses cannot be "the natural and direct result" of her conduct. *See Passantino*, 752 F.Supp.3d at 182. The Complaint's failure to specify this timeline is precisely the kind of pleading deficiency *Passantino* and Rule 9(g) are designed to prevent. The Complaint does not identify a single customer, contract, or business opportunity lost because of Ms. Powell's statements. The same causation deficiency that defeats Smartmatic's defamation claims (*see* Section III (B), *supra*) is independently fatal here, where the standard is even more demanding.

Smartmatic argues Ms. Powell played more than an "infinitesimal part," but this restates conclusory allegations without addressing the particularity requirement. Injurious falsehood requires proof the defendant's publication "play[ed] a material and substantial part in inducing others not to deal with the plaintiff, which proximately causes special damages." *Trump v. Clinton*, 161 F.4th 671, 686 (11th Cir. 2025) (internal quotations omitted). Here, Smartmatic was subjected to massive international criticism for its ties to the Venezuelan government, software designed to rig elections and the rigging of elections for nearly two decades prior to Ms. Powell's statements (ECF 69, Exhibit A, Exhibit B and Exhibit C). The Philippines News Agency had reported that President Rodrigo Duterte himself also stepped into the issue, calling for the removal of Smartmatic in favor of more fraud-proof elections. (ECF 69-1 at 13; *see also* ECF 69, Exhibit A-38), and, following the 2020 U.S. Presidential Election, the President of the United States and others publicly stated, including on social media, that the election had been rigged by electronic voting equipment. (*see, e.g.,* ECF 69, Exhibit E). The Complaint completely ignores any of this and also fails to identify a single government official who declined to purchase Smartmatic's products because of Ms. Powell. Potential concurrent causes do not eliminate the plaintiff's burden

23

to plead particularized causal connection with the named defendant, as *Passantino* and Rule 9(g) require. These claims should be dismissed with prejudice.

## V.    CLAIMS BASED ON NON-ACTIONABLE STATEMENTS SHOULD BE DISMISSED.

Smartmatic insists Ms. Powell's statements be evaluated only "as a whole." (ECF 76 at 3, 6-7, 34, 40). But this Court itself invited a statement-by-statement analysis, recognizing that "Powell raises a fair point that these statements, when read in isolation, do not directly assert that Smartmatic was hacked." (ECF 58 at 13). Whether a statement is actionable is a threshold question of law. *Moldea v. New York Times Co.*, 15 F.3d 1137, 1142 (D.C. Cir. 1994). Even under the "taken as a whole" approach under *Moldea*, the Court must determine whether *particular* statements imply verifiably false facts. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19–22 (1990). The Court must distinguish between (a) the *opinion component* of Ms. Powell's statements (expressions of concern, calls for investigation, characterizations such as "brazen") and (b) any *factual predicates* embedded within the same broadcasts (claims about software design or election manipulation). The Motion seeks dismissal of claims based on *specific statements* that are independently non-actionable, not dismissal of entire publications. (ECF 69-1 at 42-43). If Statement X is "I'm very concerned about Smartmatic," that statement is non-actionable regardless of whether Statement Y in the same broadcast makes a factual claim about Smartmatic's software. The "taken as a whole" principle as seen in *Moldea* does not transform every sentence in a publication into a factual assertion merely because *some* sentences in the same broadcast are factual.

To be sure, not every statement Ms. Powell made during her media appearances is non-actionable. Some statements may assert or imply verifiable facts about Smartmatic's software or its role in the 2020 election. Ms. Powell does not argue otherwise. The Motion seeks dismissal

24

only of claims *based on specific statements* that fall within recognized categories of protected speech: expressions of concern, calls for investigation, and rhetorical characterizations. The Court can and should dismiss claims based on those independently non-actionable statements while allowing claims based on any remaining actionable statements to proceed. This surgical approach is precisely what the Court's Order contemplated. (ECF 58).

**Opinion.** Ms. Powell identified statements prefaced with language such as "I'm very concerned" that constitute expressions of subjective belief. (ECF 69-1 at 35). Smartmatic overstates *Milkovich*'s holding. *Milkovich* did not eliminate the opinion defense (ECF 76 at 35-37); it clarified that a statement prefaced with a phrase such as "in my opinion" does not automatically immunize a statement that "implies a knowledge of facts which lead to the conclusion" of a defamatory assertion. 497 U.S. at 18–19. The Court expressly reaffirmed that statements which "cannot 'reasonably [be] interpreted as stating actual facts'" remain protected. *Id.* at 20. Ms. Powell's expressions of concern, made on cable news opinion programs known for conservative commentary, would not be understood by a reasonable viewer as assertions of verified fact. *See Guilford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580, 596–97 (D.C. 2000) (protecting "subjective view, an interpretation, a theory, conjecture, or surmise") (additional citations omitted).

**Cable News Context and Political Debate.** Smartmatic dismisses Ms. Powell's arguments about the cable news and political context as creating "blanket immunity" for political speech (ECF 76 at 38), citing this Court's observation in *US Dominion, Inc. v. Powell*, 554 F. Supp. 3d at 57, that "no blanket immunity" exists "for statements that are 'political' in nature." But neither Ms. Powell's Motion nor the governing precedent seeks blanket immunity. The

25

*Dominion* Court's statement was a rejection of a categorical rule; it did not hold that political context is irrelevant.

To the contrary, the D.C. Circuit has repeatedly held that "context is critical" and that the forum in which a statement is made bears on the reasonable listener's understanding. *Farah v. Esquire Magazine, Inc.*, 736 F.3d 528, 535–36 (D.C. Cir. 2013). Smartmatic also invokes the New York Appellate Division's refusal to treat the Fox programs as "opinion commentary," (ECF 76 at 37), but that court was evaluating the Fox defendants' liability as media broadcasters who presented the statements as news, *Smartmatic USA Corp. v. Fox Corp.*, 213 A.D.3d 512, 512-13 (1st Dep't 2023), a categorically different question from whether a *guest speaker's* statements on those programs would be understood by a reasonable viewer as verified assertions of fact. Ms. Powell does not argue for blanket immunity. She argues that context, including the nature of the programs on which she appeared and the heated political environment, is relevant to whether a reasonable viewer would understand her statements as assertions of verifiable fact. (ECF 69-1 at 37-38). The D.C. Circuit has repeatedly emphasized context is crucial in determining if a statement is actionable as defamation. *See, e.g., Farah*, 736 F.3d at 353 (additional citations omitted). That context weighs in favor of treating Ms. Powell's statements as protected opinion.

**Calls for Investigation.** The specific statement, "every state that bought Dominion, for sure, should have a criminal investigation," (ECF 76 at 39-40), expresses a normative judgment about what government officials *should do*, not a factual assertion about what Smartmatic *did*. A statement that investigation is warranted is not "provable as false" within the meaning of *Milkovich*, 497 U.S. at 19–20. Such advocacy for government action is at the core of First Amendment protection. *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969).

**Rhetorical Hyperbole.** Smartmatic conflates the legal test with the *audience's reaction*. (ECF 76 at 39-40). The doctrine asks whether a *reasonable listener* would understand the statement as an assertion of verifiable fact, not whether *some listeners* believed it. *See Farah*, 736 F.3d at 536–37. And Smartmatic's citation to *Farah* for the proposition that Powell did not claim her statements were "satire" is a straw man (ECF 76 at 39-40); the D.C. Circuit in *Farah* applied the broader principle that context determines whether a statement is understood as factual assertion, a principle that extends well beyond satire to all forms of rhetorical expression. *Id.* at 534–37. Characterizations such as "brazen" are classic rhetorical hyperbole (ECF 69-1 at 3, 39), constitutionally protected because they are not susceptible of being proved true or false. *Greenbelt Cooperative Publishing Ass'n v. Bresler*, 398 U.S. 6, 13–14 (1970).

## VI.   SMARTMATIC'S CLAIM FOR PUNITIVE DAMAGES MUST BE DISMISSED.

The punitive damages claim fails *a fortiori*. Both Florida and New York law require a showing of common law malice for punitive damages, a heightened mental state *beyond* even the demanding actual malice standard of *New York Times*. (ECF 69-1 at 40-42). If, as demonstrated in Section II (B), *supra*, the Complaint fails to plead even actual malice, it necessarily cannot support the more demanding showing required for punitive damages. (*See also* ECF 69-1 at 10-20). The logical progression is straightforward: if A (actual malice) is not adequately pleaded, then A + B (actual malice plus common law malice) necessarily fails.

Smartmatic's Opposition argues that the request to dismiss punitive damages is "premature and meritless" and that the claims should be left for summary judgment or trial. (ECF 76 at 42-43). But Smartmatic cites no authority for the proposition that a court cannot strike punitive damages at the pleading stage when the predicate showing of actual malice has not been adequately pleaded. Smartmatic contends there is "no heightened pleading standard" for defamation claims,

27

(*Id.* at 4-5), citing *MiMedx*. But as noted in Section II (A), *supra*, the D.C. Court of Appeals in *Orbis* expressly rejected *MiMedx*'s reasoning that public figure status, and the attendant actual malice standard, cannot be imposed at the pleading stage. 229 A.3d at 505–06. And the independent judgment rule of *Bose Corp.*, 466 U.S. at 499, further confirms that actual malice is not a question to be deferred to the jury; appellate courts independently review the evidence, making early resolution at the pleading stage not only appropriate but consistent with the constitutional framework.

The Complaint's allegations of actual malice are rote recitations of the elements, the paragraphs of the Complaint listed by Smartmatic in its opposition papers as satisfying its burden (Complaint ¶¶ 389, 403, 417, 431, 459, 473, 486, 499, 512, 525, and 538, referencing Complaint ¶¶ 200-365; *see also* EFC 76 at 17) fall far short of meeting the pleading standard, and the bare assertion that "Ms. Powell also acted with ill will towards Smartmatic," (Complaint ¶ 202), is a perfunctory recitation of an element with no factual basis. Because the Complaint fails to plead even actual malice with specificity, it *a fortiori* cannot satisfy the heightened common law malice standard. The failure to adequately plead either element is independently fatal to the punitive damages claim.

## CONCLUSION

For the foregoing reasons, this Court should grant Defendant Sidney Powell's Motion for Judgment on the Pleadings.

Dated: June 1, 2026

                                    Respectfully submitted,

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

By: */s/ Teresa M. Cinnamond*
Teresa M. Cinnamond (pro hac vice)
1700 Lincoln Street, Suite 3500
Denver, Colorado 80203
Telephone: 720.292.2059

Bryan Sugar (pro hac vice)
550 W. Adams Street, Suite 300
Chicago, Illinois 60661

Rebecca Stoddard Wiley (DC Bar No. 1780019)
212 Pennsylvania Ave. NW, Suite 500
Washington, DC 20037

*Attorneys for Defendant Sidney Powell*

29